# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION and FAIRCHILD (TAIWAN) CORPORATION, | : : : : |
| Plaintiffs, | : : |
| v. | : C.A. No. 12-540-LPS |
| POWER INTEGRATIONS, INC., | : : |
| Defendant. | : : : |

John G. Day, Lauren E. Maguire, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE

Blair M. Jacobs, Christina A. Ondrick, PAUL HASTINGS LLP, Washington, DC

Leigh J. Martinson, MCDERMOTT, WILL & EMERY LLP, Boston, MA

Patrick James Stafford, MCDERMOTT, WILL & EMERY LLP, Washington, DC

    Attorneys for Plaintiffs.

William J. Marsden, Jr., Joseph B. Warden, Jr., FISH & RICHARDSON P.C., Wilmington, DE

Frank E. Scherkenbach, FISH & RICHARDSON P.C., Boston, MA

Howard G. Pollack, Michael R. Headley, Neil Warren, FISH & RICHARDSON P.C., Redwood City, CA

    Attorneys for Defendant.

## MEMORANDUM OPINION

May 4, 2015
Wilmington, Delaware

*signature* P.

STARK, U.S. District Judge:

Pending before the Court are the following motions:

1. Fairchild's Motion for Summary Judgment (D.I. 193); and

2. Power Integrations' Motion for Summary Judgment (D.I. 196).

Prior opinions addressed aspects of these motions. (*See* D.I. 295, 329) Here the Court resolves the remaining issues raised by both motions.[1]

## I. BACKGROUND

On May 1, 2012, Plaintiffs Fairchild Semiconductor Corporation and Fairchild (Taiwan) Corporation (collectively, "Fairchild" or "Plaintiffs") filed a complaint against Power Integrations, Inc. ("PI" or "Defendant") alleging infringement of U.S. Patent Nos. 7,525,259 ("the '259 Patent"), 7,259,972 ("the '972 Patent"), 7,616,461 ("the '461 Patent"), and 7,286,123 ("the '123 Patent"). (D.I. 1) On June 21, 2012, Power Integrations counterclaimed against Fairchild, alleging infringement of U.S. Patent Nos. 6,229,366 ("the '366 Patent"), 7,876,587 ("the '587 Patent"), 8,115,457 ("the '457 Patent"), and 7,995,359 ("the '359 Patent").

Fact and expert discovery are complete, and a trial will begin on May 26, 2015. The Court heard oral argument on the pending motions on March 3, 2015. (D.I. 292, or "Tr.")

## II. LEGAL STANDARDS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

---

[1] Depending on how one counts, the parties filed approximately 23 pretrial motions.

1

U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed demonstrating the absence of must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be

2

granted." *Id.* at 249-50 (internal citations omitted); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Fairchild's Motion for Summary Judgment (D.I. 193)

#### 1. Infringement of Claims 8 and 13 of the '259 Patent

Fairchild argues that there are no genuine disputes of material fact with regard to infringement of independent claims 8 and 13 of Fairchild's '259 patent by PI's LinkSwitch-II and LinkSwitch-PH products. According to Fairchild, PI's expert, Dr. Kelley, incorrectly analyzed these claims as means-plus-function claims, when only independent claim 1 is in means-plus-function format. PI responds that Dr. Kelley appropriately analyzed the structural limitations of these apparatus claims and, moreover, that the opinions of Fairchild's expert, Dr. Collins, are internally inconsistent. In PI's view, there is at least a genuine dispute of material fact, making summary judgment inappropriate.

The Court concludes that summary judgment is not warranted. Dr. Collins' identification of the requisite "feedback circuit" (the limitation in claims 8 and 13 on which Fairchild's motion is based) in the accused products is at least arguably inconsistent, as it may be reasonably interpreted as opining that identical structure in different products both does and does not

3

infringe. (*See, e.g.*, D.I. 227, Ex. 1 at 208-13; *see also* D.I. 195, Ex. E at ¶ 185 (Dr. Kelley explaining that feedback circuitry identified by Dr. Collins for LinkSwitch-II product LNK632, which Dr. Collins opines *cannot* meet the feedback circuit limitation, is identical to corresponding circuitry of other LinkSwitch-II products, which Dr. Collins opines *can* meet the feedback circuit limitation)) Because this raises a genuine dispute of material fact, this portion of Fairchild's summary judgment motion will be denied.

### 2. Non-Obviousness of Claim 8 of the '123 Patent

Because PI has withdrawn its obviousness contention with respect to claim 8 of Fairchild's '123 patent (*see* D.I. 227, Ex. 2 at 2), this portion of Fairchild's motion will be granted. (*See* Tr. at 106)

### 3. Validity of the '259 Patent Under 35 U.S.C. § 112

Fairchild argues that PI has failed to show that it can prove, by clear and convincing evidence, invalidity of any of claims 1-4, 6, and 8-14 of the '259 patent due to lack of enablement, lack of written description, and/or indefiniteness.

Enablement and written description are required by the first paragraph of 35 U.S.C. § 112, which states:

> [t]he specification shall contain a written description of the invention, and the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.

Compliance with the enablement requirement is a question of law based on underlying factual findings, and to be satisfied, "[t]he scope of the claims must be less than or equal to the scope of enablement." *Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338, 1347 (Fed. Cir. 2014)

4

(internal quotation marks omitted). "Compliance with the written description requirement is a question of fact," *Scriptpro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1359 (Fed. Cir. 2014), and to be satisfied the patentee must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention," *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1295 (Fed. Cir. 2002).

Indefiniteness of claim terms, which is a question of law, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014), is prohibited by the second paragraph of 35 U.S.C. § 112, which requires that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

As explained below in connection with PI's motion, the Court has decided to grant summary judgment to PI of invalidity of Fairchild's '259 patent due to anticipation, based in large part on the Court's rejection of a ±10% limitation on the "substantially constant" current element of the feedback circuit limitation and its conclusion that Dr. Collins may not provide testimony on his ±10% opinion. *See infra* § III.B.2. Because PI does not point to any basis for invalidity under § 112 aside from Dr. Collins' excluded ±10% opinion (*see* D.I. 226 at 7-10), PI has not met its burden to show by clear and convincing evidence that claims 1-4, 6, and 8-11 are lacking in enablement or written description.

Additionally, PI appears to concede – by the silence of its briefs – that it cannot prove indefiniteness of any of these claims. (*See id.* at 6 (PI's brief addressing only written description and enablement))

Thus, Fairchild will be granted summary judgment of no invalidity of the '259 patent due

5

to lack of enablement, lack of written description, or indefiniteness.

### 4. Non-Infringement of the '366 Patent

Fairchild argues that it is entitled to summary judgment of non-infringement of PI's '366 patent because PI's expert, Dr. Kelley, does not identify a (1) a soft start latch, (2) a soft start AND-gate, (3) a frequency variation signal, (4) a pulse width modulation frequency signal, (5) a power up signal, or (6) a soft start signal, all of which are required by the Court's construction of the "soft start circuit means," which is a limitation in all of the asserted claims of the '366 patent. The Court's construction of this term provides, in relevant part: "[t]he corresponding structures related to the soft start circuit are shown in Figures 3, 6, and 9 of the '366 patent and described in the specification of the '366 patent at 6:7-17; 6:35-7:18; 11:40-50; and 12:5-10." (D.I. 87 at 14) More particularly, the following is a portion of the specification the Court incorporated in its claim construction:

> [t]he frequency variation signal 400 is provided to soft start circuit 410. During operation soft start circuit 410 is also provided with pulse width modulation frequency signal 415 and power up signal 420.... Soft start circuit 410 comprises a soft start latch 450 that at its set input receives the power up signal 420 and its reset input receives the soft start signal 440. Soft start enable signal 421 is provided to one input of soft start and-gate 455 while the other input of soft start and-gate 455 is provided with an output from soft start comparator 460.

(D.I. 203, Ex. K at 6:49-52, 7:9-15)

Despite PI's insistence to the contrary, the Court's claim construction does require a frequency variation signal. (*Compare* D.I. 87 at 14 (structure is described in '366 patent at, *inter alia*, 6:35-7:18) *with* '366 patent at 6:49-52 ("The frequency variation signal 400 is provided to soft start circuit 410.")) Additionally, dependent claims 14 and 21 claim "a frequency variation

6

circuit that provides a frequency variation signal." (D.I. 203, Ex. K at 14:14-17, reexamination certificate 2:63-64) Thus, dependent claims 14 and 21 further limit claim 9 to a particular *source* of the frequency variation signal. Hence, PI's argument that Fairchild's interpretation of the Court's claim construction would violate the canon of claim differentiation is unpersuasive. *See generally Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) (stating claim differentiation is "a guide, not a rule").

In the alternative, PI argues that even if a frequency variation signal is required, it or a structural equivalent is present in Fairchild's accused product. Literal infringement of a means-plus-function limitation requires proof that the accused device performs the identical function and has a substantially similar structure. *See Gen. Protecht Grp., Inc. v. Int'l Trade Comm'n*, 619 F.3d 1303, 1312 (Fed. Cir. 2010) ("[S]tructure in the accused device constitutes an equivalent to the corresponding structure in the patent only if the accused structure performs the identical function in substantially the same way, with substantially the same result."). The scope of the structural equivalents of a means-plus-function element is a question of fact. *See Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010).

It is undisputed that Fairchild's accused products perform the identical function as the soft start circuit means; the sole dispute, then, is whether the function is performed in substantially the same way with substantially the same result as in the '366 patent. (*See* D.I. 194 at 11) The opinion of PI's Dr. Kelley, for which Dr. Kelley finds support in product testing and product datasheets, is provided in his Opening Expert Report:

> [J]ust like the '366 patent structures, the FAN6756 progressively increases duty cycle during startup, as described in the product datasheet, and therefore performs the function in the same way as

7

> the disclosed structure.... [I]t is my opinion that the FAN6756
> soft start functionality also achieves the same result as the
> disclosed structure. The '366 specification expressly states that the
> soft start function can be implemented using a counter output
> signal exactly as used by the FAN6756. ['366 patent at 6:44-48]
> In addition, the FAN6756 uses logic circuits like those shown in
> the '366 patent to limit the effect of its counter output so that it
> controls the duty cycle only during the soft start period. As such,
> the structure of the FAN6756 is, at the very least, an
> interchangeable structure as that disclosed in the '366 patent.

(D.I. 227, Ex. 4 at 12-16) Dr. Kelley further explains that "the FAN6756 uses logic circuits like those shown in the '366 patent to limit the effect of its counter output so that it controls the duty cycle only during the soft start period." (*See* D.I. 227, Ex. 4 at 16)[2] The Court finds that these opinions create a genuine dispute of material fact as to whether the accused products include structural equivalents for the various components of the soft start circuit means.

Accordingly, the Court will deny Fairchild's motion for summary judgment of non-infringement of the '366 patent.

### 5. Non-Infringement of the '587 Patent

Fairchild argues that it is entitled to summary judgment of non-infringement of PI's '587 patent because PI fails to identify how the accused products meet the "current input circuit" limitation of every asserted claim. The Court construed "current input circuit" as "a circuit that receives a current and produces or generates an output signal in response to the received current; a 'current input circuit' ***does not include voltage dividers and other circuits that monitor***

---

[2]Although unnecessary to defeat summary judgment, Dr. Kelley's opinion regarding the soft start latch and AND-gate (*see* D.I. 204, Ex. V at ¶¶ 74-75), which would otherwise support his infringement opinion, is unavailing as a result of PI's repeated representations that this opinion is not a part of Dr. Kelley's affirmative infringement opinions, but rather merely rebuttal to Fairchild's design around story (*see, e.g.*, D.I. 294 at 62; D.I. 305 at 5-6), which the Court has found to be inadmissible (*see* D.I. 331 at 3-4; *see also* Pretrial Conference Transcript).

8

***voltage***, although a 'current input circuit' may receive a current that is representative of a voltage." (D.I. 87 at 22) (emphasis added) Fairchild contends that, in contradiction to the Court's claim construction, PI's Dr. Kelley has relied in his infringement analysis exclusively on voltage dividers and circuits that monitor voltage.

Fairchild's Dr. Wei explains that all of the accused current input circuits are actually voltage dividers or other circuits that monitor voltage. (D.I. 203, Ex. I at ¶¶ 124-40) With respect to Fairchild's FAN6756 product group, Dr. Kelley identifies the circuitry coupled to the HV input pin as the current input circuit (D.I. 204, Ex. V at ¶¶ 101, 108-17), even though the datasheet for the FAN6756 expressly identifies this circuit as a voltage divider (*see* D.I. 203, Ex. S at 11), as is confirmed by Fairchild's witnesses (*see* D.I. 204, Ex. V at ¶¶ 108-17). The Court's construction excludes "voltage dividers." Similarly, for Fairchild's SG6841 product group, Dr. Kelley identifies the circuitry coupled to the VIN input pin as the current input circuit (*see id.* at ¶¶ 102, 106-07), even though U.S. Patent No. 6,611,439 ("the '439 patent") – which Dr. Kelley agrees describes the accused circuitry in the SG6841 product group (*see id.* at ¶¶ 106-07; D.I. 204, Ex. W at 167) – states that "[t]he first comparator 30 will ***compare*** the ***voltage*** VS and the ***voltage*** Vlimit" (D.I. 204, Ex. X at 4:50-51 & Fig. 2) (emphasis added). The Court's construction excludes "other circuits that monitor voltage."

Dr. Kelley explains why he does not believe the accused circuits consist of voltage dividers or other circuits that monitor voltage; his view is, rather, that they consist of circuits that receive currents representative of a voltage. (*See* D.I. 204, Ex. V at ¶¶ 106-17) In doing so, Dr. Kelley relies on the final portion of the Court's construction, which provides "a 'current input circuit' may receive a current that is representative of a voltage." (D.I. 87 at 22) This is

9

unavailing. Dr. Kelley's infringement analysis impermissibly seeks to broaden the Court's claim construction to mean that a circuit that "receive[s] a current that is representative of a voltage" is not a voltage divider or a circuit that monitors voltage, and therefore satisfies the "current input circuit" limitation. This position was rejected by the International Trade Commission – whose construction of the "current input circuit" term formed the basis for this Court's construction. (*See* D.I. 87 at 2 (citing *In re Certain Power Supply Controllers*, 2008 ITC LEXIS 773, at *37-47 (USITC May 1, 2008)) Moreover, it is inconsistent with PI's representations during claim construction that this final element of the claim construction was simply "clarifying language" and not intended to override the other limitations in the construction. (*See* D.I. 69 at 14)

In short, neither Dr. Kelley nor PI provide a basis on which a reasonable finder of fact could find that what have been described – prior to the instant litigation – as voltage dividers or currents that monitor voltage are, in fact, not. Accordingly, the Court will grant Fairchild's motion for summary judgment that the accused products do not infringe the asserted claims of PI's '587 patent.[34]

---

[3]While the parties do not specifically address the FL6300A product group in their briefs, both experts address it in their infringement analyses. (*See* D.I. 203, Ex. I at ¶¶ 135-40; D.I. 204, Ex. V at ¶ 103; D.I. 227, Ex. 3 at Ex. 6) Because Dr. Kelley's infringement analysis for this product group does not address the evidence presented by Dr. Wei that the FL6300A uses a voltage divider (*see* D.I. 203, Ex. I at ¶¶ 135-40), but merely points to deposition testimony in support of his conclusion that "[t]he FL6300A includes a control circuit coupled to receive the current limit adjustment signal" (D.I. 227, Ex. 3 at Ex. 6 at 9-10, 12-19, 25-26)) – a conclusion that appears to be similarly based on an impermissibly broad reading of the Court's claim construction for "current input circuit" – the Court's conclusion applies equally to the FL6300A product group.

[4]Literally as this opinion was being printed and prepared for docketing, the Court became aware that this same afternoon PI submitted a letter, indicating that it has "decided not to go forward at trial on the '587 patent." (D.I. 337)

### 6. Invalidity of Claims 29 and 31 of the '359 Patent

Fairchild argues that independent claim 29 and dependent claim 31 of PI's '359 patent are invalid due to lack of written description support for a "response agnostic" controller. (D.I. 194 at 29) Fairchild further asserts that "PI disclaimed coverage for control circuits that lacked responsiveness." (*Id.* (citing D.I. 204, Ex. BB at 1:48-58))

PI responds that the specification only references unresponsiveness once, in the context of the embodiment disclosed in Figure 1 of the patent. (*See* D.I. 226 at 22-23 (citing D.I. 204, Ex. BB at 6:49)) PI adds that "there are numerous other embodiments which are described elsewhere in the specification without mentioning unresponsiveness at all . . . . There is, thus, nothing in the specification that precludes the claimed invention of claim 29 from 'render[ing] dormant the drive signal generator' . . . without being unresponsive to the energy requirements of the load." (*Id.* at 23 (quoting D.I. 204, Ex. BB at 18:16))

Neither party cites any expert opinion or, indeed, any evidence other than the patent itself, as well as caselaw and attorney argument.[5] Under the circumstances, including the complexity of the technology, the Court concludes that a reasonable factfinder could find that Fairchild has proven invalidity by clear and convincing evidence – but, alternatively, could find that Fairchild has failed to meet this heavy burden. Hence, summary judgment is not warranted and the Court will deny Fairchild's motion with respect to invalidity of claims 29 and 31 of PI's '359 patent.

---

[5]As stated above, "[c]ompliance with the written description requirement is a question of fact," *Scriptpro*, 762 F.3d at 1359, requiring the patentee to "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention," *New Railhead Mfg.*, 298 F.3d at 1295.

11

## B. PI's Motion for Summary Judgment (D.I. 196)

### 1. No Infringement Under the Doctrine of Equivalents

PI argues that Fairchild is barred from asserting infringement by the doctrine of equivalents ("DOE") for any of its patents because Fairchild's DOE infringement contentions have been stricken by the Court as untimely. PI is correct. (*See* D.I. 162; D.I. 183) However, because the Court has also ruled that PI is barred from relitigating the direct infringement of the '972 patent by the LinkSwitch-II in a power supply with a transformer (D.I. 328), PI's motion is effectively moot with regard to the '972 patent. Accordingly, the Court will grant PI's motion for summary judgment of no infringement under the doctrine of equivalents as it relates to all of Fairchild's asserted patents except for the '972 patent.

### 2. Anticipation of Claims 1-4, 6, and 8-14 of the '259 Patent

PI argues that claims 1-4, 6, and 8-14 of Fairchild's '259 patent are invalid as anticipated by PI's LNK520 datasheet, and that claims 8-14 are also invalid as anticipated by Fairchild's own '972 patent. PI's arguments turn on the "substantially constant" current element of the "feedback circuit" limitation – "a feedback circuit coupled to the control circuit and the transformer, the feedback circuit operable to support regulation by the control circuit from the primary side so that the current provided to the load at the output terminal is *substantially constant*." (D.I. 195, Ex. D at 7:20-24) (emphasis added) Fairchild conceded at the hearing that the "substantially constant" current element of the "feedback circuit" limitation is the only element it disputes as missing from the prior art. (*See* Tr. at 162, 164) The Court finds that PI has established that no reasonable juror could reach any conclusion other than that all of the limitations of the '259 patent are found in a single prior art reference. (*See* D.I. 200, Ex. D at Ex. 5 (Dr. Kelley's

12

anticipation analysis for claims 1-4, 6, and 8-14 with regard to LNK520 datasheet); D.I. 200, Ex. D at Ex. 4 (Dr. Kelley's anticipation analysis for claims 8-14 with regard to '972 patent))

Dr. Collins opines that the feedback circuit limitation is not found in the prior art because "[o]ne of ordinary skill in the art at the time the '259 patent was invented would understand 'substantially constant current' to mean ±10% or less at the output terminal. . . . [And] Power Integrations' LNK520 was incapable of providing a constant current of ±10% or less at the output terminal." (D.I. 202, Ex. 3 at ¶ 45) In PI's view, Dr. Collins impermissibly narrows the "substantially constant" term. PI instead urges the Court to construe "the current . . . is substantially constant" to expressly exclude any numerical limitations.

The Court agrees with PI that determining how one of ordinary skill in the art would understand "substantially constant current" in the '259 patent presents an issue of claim construction. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). The scope of the claims is a question of law for the Court to decide, not a jury. *See id.* The Court disagrees with Fairchild's contention that Dr. Collins is merely providing his expert opinion on a factual dispute; i.e., whether the "substantially constant" claim element of the '259 patent is present in the prior art. Instead, he is first construing that term narrowly, limited to ±10%, and then applying *that* construction to determine whether it is found in the prior art. (*See* D.I. 224 at 1-2 (Fairchild arguing in brief about "the plain and ordinary meaning of 'substantially constant current,'" i.e., an issue of claim construction); *id.* at 9 (attacking PI for purportedly "flawed and impermissibly broad reading of the '259 patent claims," i.e., an issue of claim

13

construction))[6]

Turning to the proper construction of "substantially constant," the Court again agrees with PI.[7] Dr. Collins arrived at the numerical limit because, from the perspective of "a person of ordinary skill in the art, [his] opinion is that the plus or minus 10 percent level is what one would assume something was inventive at the time of the '259 patent [and] would have felt to be substantially constant current." (D.I. 202, Ex. 9 at 21; *see also id.* at 16-17) Putting aside

---

[6]Fairchild analogizes the instant situation to one the Court confronted in earlier litigation between these parties, where the Court concluded a particular dispute was not merely one of claim construction but also a factual dispute that had to be presented to a jury. (*See* D.I. 224 at 14 (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 681-83 (D. Del. 2010) ("*Fairchild II*"))) The situation in *Fairchild II* was at least somewhat different because the Court was addressing cross-motions for summary judgment on the issue in dispute (after concluding that supplemental claim construction was required). In any event, regardless of the degree of similarity, the Court is not persuaded that how it handled the issue in *Fairchild II* requires or even strongly supports taking the same approach here.

[7]Fairchild argues that it is too late for PI to ask the Court to construe an additional claim term, but the Court disagrees. *See, e.g., Fairchild II*, 763 F. Supp. 2d at 681-82. Further, Fairchild suggests that it has not briefed the proper construction of "substantially constant," because the term was not in dispute during the claim construction process and because Fairchild rejects PI's view that Dr. Collins' opinion amounts to a claim construction (as opposed to invalidity) opinion. (*See, e.g.*, D.I. 224 at 9 ("But this is not a claim construction dispute as evidenced by both parties' failure to propose construction of this limitation during the exhaustive claim construction process in this case.")) Under the circumstances – including that Fairchild insists "the ordinary meaning of 'substantially constant current' is readily understood and thus not disputed" (D.I. 224 at 13) and, thus, presumably requires no additional briefing; that Fairchild has not expressly asked to file a claim construction brief (*see* D.I. 224 at 12 n.5 ("Fairchild will not brief this claim construction issue unless the Court determines that additional claim construction briefing is required")), relying instead on its position that the Court should not now construe the "substantially constant" term; that Fairchild had an opportunity to put its claim construction arguments in the extensive briefing on summary judgment; that the Court is basing its construction on the intrinsic evidence (which cannot change); and that Fairchild has presumably already put in the record its best extrinsic evidence (i.e., Dr. Collins' opinion) yet has failed to persuade the Court to adopt Dr. Collins' proposed construction – the Court concludes that it can construe "substantially constant" without now providing Fairchild leave to file a supplemental claim construction brief.

14

whether this is mere conclusory (and inadmissible) expert opinion, it is indisputably extrinsic evidence, and when weighed against the intrinsic evidence it does not persuade the Court to adopt a construction as precise or narrow as Fairchild proposes. As even Dr. Collins acknowledges, the ±10% limitation is not found anywhere in the '259 patent. (*See id.* at 14-15; *see also* D.I. 202, Ex. 18 at 198 (Dr. Kelley stating, "with regard to the plus or minus 10 percent, I don't see where Dr. Collins has provided really any basis for introducing that number")) Dr. Collins did not identify any evidence, other than his own opinion, to support his definition of "substantially constant." (*See* D.I. 202, Ex. 9 at 16-21)

The Court will adopt PI's proposed construction of "the current . . . is substantially constant": "an output current that is maintained largely but not wholly at a constant level and is not bounded by a specific numerical value." In the Court's view, this is the plain and ordinary meaning of the term at the time of the invention (and even Fairchild agrees "[t]here can be little doubt that words such as this that have a changing scope over time should be afforded their plain and ordinary meaning at the time of the invention") (D.I. 224 at 11) (emphasis omitted). *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1310-11 (Fed. Cir. 2003) ("[W]ords of approximation, such as . . . 'substantially,' are descriptive terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter.") (internal quotation marks omitted); *see also Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001).

Given the Court's construction of the "substantially constant" term, the Court concludes that Fairchild has failed to raise a genuine dispute of material fact to avoid summary judgment of invalidity of claims 1-4, 6, and 8-14 of the '259 patent. On this record, including the opinion of

15

Dr. Collins, a reasonable jury could only find that the feedback circuit limitation, including its subsidiary "substantially constant" current limitation, was disclosed by either the LNK520 or the '972 patent. *See generally Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment.").

In particular, Dr. Collins does not dispute that the LNK520 datasheet is the commercial embodiment of U.S. Patent No. 6,480,399 ("the '399 patent"). (*See* D.I. 202, Ex. 3 at ¶ 131) It is further undisputed that during prosecution the Examiner rejected all of the original claims of the '259 patent as anticipated by the '399 patent. (*See* D.I. 202, Ex. 10 at 2-7) The Examiner found that all of the limitations of the original independent claims, including the requirement of a substantially constant current output, were present in the '399 patent. (*See id.*) The claims were ultimately allowed only after Fairchild amended each independent claim to require a three-winding transformer (*see* D.I. 202, Ex. 11), which the Examiner had noted that the prior art he had before him did not disclose (*see* D.I. 202, Ex. 10 at 8). Fairchild cannot genuinely dispute that the LNK520 datasheet, which was not before the Examiner, but undisputedly includes a three-winding transformer (*see* D.I. 197 at 11-12) (referring to D.I. 202, Ex. 6), discloses a substantially constant current.

With respect to the prior art '972 patent, the inventor of that patent, Mr. Yang, agreed that in the '972 patent, "[t]he feedback circuit is operable to support regulation by the control circuit from the primary side so that the current provided to the load at the output terminal is substantially constant." (D.I. 202, Ex. 15 at 235) Similarly, the inventor of the '259 patent, Mr. Weirich, testified that the '972 patent "refer[s] to providing a power converter having

16

substantially constant output current." (D.I. 202, Ex. 13 at 93-94) Mr. Weirich further explained that Figure 1 of the '972 patent shows that "one of the functionalities provided by the application circuit Figure 1 would be to be providing a substantially constant regulated current at its output 10." (*Id.* at 96-97)

Notwithstanding this unrebutted inventor testimony, Dr. Collins opines:

> Since the structures of the '972 patent do not have direct measurement of the output current and uses indirect measurement through feedback variables which are subject to error and tolerance, and there is no compensation for these potential sources of error, the system in the Yang '972 patent cannot regulate current to be substantially constant (±10% or less). . . . The Yang '972 patent does not disclose or suggest a circuit capable of achieving a substantially constant current at the output terminal being ±10% or less. In fact, the Yang '972 patent fails to disclose any specific value of constant current. As such, the Yang '972 patent fails to disclose the aforementioned claim limitations.

(D.I. 225, Ex. A at ¶¶ 90-91) However, given the Court's construction, the feedback circuit limitation does not require that the current remains constant within the range of ±10%.

Accordingly, the Court will grant PI's motion for summary judgment of invalidity of claims 1-4, 6, and 8-14 of the '259 patent as anticipated by the LNK520 datasheet, as well as of claims 8-14 as anticipated by the '972 patent.

### 3. No Literal Infringement of the '123 Patent by the Accused LinkSwitch-PH Products

Finally, PI seeks summary judgment of no literal infringement of Fairchild's '123 patent by the LinkSwitch-PH products because Fairchild's timely contentions do not identify an "output terminal" as required by the Court's claim construction. The Court construed "generating a LED current for controlling the LED" in claim 8 of the '123 patent as "producing at an output terminal

of the control circuit a current for controlling the LED." (D.I. 88) Fairchild only identifies the DRAIN pin as the output terminal, but this contention has been stricken as untimely. (*See* D.I. 162; D.I. 183) Accordingly, the Court will grant PI summary judgment of no literal infringement of Fairchild's '123 patent.

IV. CONCLUSION

An appropriate Order follows.