IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

Plaintiffs,

v.

POWER INTEGRATIONS, INC.,

Defendant.

C.A. No. 12-540 LPS

REDACTED

## OPENING BRIEF IN SUPPORT OF POWER INTEGRATIONS'
## MOTION FOR ENTRY OF A PERMANENT INJUNCTION

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
225 Franklin Street
Boston, MA  02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for**
**POWER INTEGRATIONS, INC.**

Dated:  August 12, 2015

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II.  NATURE AND STAGE OF PROCEEDINGS ......................................................2

III.  ARGUMENT ...........................................................................................................3

    A.  Legal Standard for Entry of a Permanent Injunction ...............................3

    B.  The Four *eBay* Factors Warrant Entry of a Permanent Injunction Against Fairchild ...................................................................................................4

        1.  Power Integrations Has Been Irreparably Harmed by Fairchild's Infringement ...............................................................................7

            a.  Fairchild's infringing competition with Power Integrations has irreparably harmed Power Integrations' position in the market ...........7

            b.  The reputational harm to Power Integrations and the eroded public perception of the value of Power Integrations' intellectual property warrant entry of an injunction against Fairchild ........................10

            c.  There is a causal nexus between the irreparable harm and Fairchild's use of the patented features ....................................................12

        2.  Remedies at Law Are Inadequate to Compensate Power Integrations for Harm Caused by Fairchild's Continued Infringement ................13

        3.  The Balance of Hardships Favors Entry of a Permanent Injunction Against Fairchild ............................................................................16

        4.  The Public Interest Will Be Served by Entry of a Permanent Injunction Against Fairchild ..............................................................18

    C.  The Court's Order Should Require Fairchild to Include Notice of the Permanent Injunction to All Customers with All Shipments Anywhere ...........................19

IV.  CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    551 F.3d 1323 (Fed. Cir. 2008)...............................................................................7, 8, 14

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    735 F.3d 1352 (Fed. Cir. 2013)........................................................................................12

*Black & Decker Inc. v. Robert Bosch Tool Corp.*,
    2006 WL 3446144 (N.D. Ill. 2006) ................................................................................10

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013)....................................................................................9, 19

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012).......................................................................................9, 10

*Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech., Inc.*,
    492 F. Supp. 2d 600 (E.D. Tex. 2007) ........................................................................17, 18

*Douglas Dynamics, LLC v. Buyers Products Co.*,
    717 F.3d 1336 (Fed. Cir. 2013)...............................................................................7, 10, 18

*eBay Inc. v. MercExchange, L.L.C.*,
    126 S.Ct. 1837 (2006)........................................................................................................3

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012)...........................................................................................3

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)......................................................................................3, 16

*MercExchange, L.L.C. v. eBay, Inc.*,
    500 F. Supp. 2d 556 (E.D. Va. 2007) ..............................................................................14

*MGM Well Servs., Inc. v. Mega Lift Sys., LLC*,
    505 F. Supp. 2d 359 (S.D. Tex. 2007) .............................................................................17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
    449 F. App'x 923 (Fed. Cir. 2011 ......................................................................................5

*Presidio Components, Inc. v. Am. Technical Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012)..........................................................................................7

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
   32 F.3d 1552 (Fed. Cir. 1994)...........................................................................................14

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011)............................................................................7, 8, 14, 17

*Smith & Nephew, Inc. v. Synthes (U.S.A.)*,
   466 F. Supp. 2d 978 (W.D. Tenn. 2006).......................................................................14, 19

*TruePosition Inc. v. Andrew Corp.*,
   568 F. Supp. 2d 500 (D. Del. 2008)...................................................................................11

**Statutes**

35 U.S.C. § 154(a)(1) (2000) ...................................................................................................7

35 U.S.C. § 283 .........................................................................................................................3

**Other Authorities**

U.S. Const. art. 1, § 8, cl. 8 .....................................................................................................19

## I.    INTRODUCTION

The salient facts relevant to this request for yet another injunction against Fairchild's continued infringement of Power Integrations' patent rights are fundamentally the same as they have been since 2004: Fairchild Semiconductor Corporation and System General Corporation (now Fairchild (Taiwan) Corporation) (collectively, "Fairchild") are adjudged to infringe valid Power Integrations' patents, Fairchild's infringement irreparably harms Power Integrations' competitive position in the marketplace as well as its reputation, and there are no countervailing considerations sufficient to decline entry of an injunction.  In each previous instance (twice before), this Court has issued an injunction against Fairchild because each time Power Integrations has been irreparably harmed by Fairchild's infringement in this highly competitive market for power supply controller design wins.  Each time, Fairchild's misappropriation of Power Integrations' patented technology—an outgrowth of what the Federal Circuit described as Fairchild's "corporate culture of copying"—has caused permanent price erosion, loss of customer access, and reputational harm for which there is no adequate remedy.  Although the number of infringing products is fewer this time, the harm is no different.

Inspired by evolving standards for energy conservation, Power Integrations long ago recognized that much of the demand in power supply design would be based on energy efficiency.  Thus, even in advance of the imposition of these standards, Power Integrations improved its line of power supply controllers to meet anticipated market demand for power supplies that are extremely energy efficient while still meeting strict performance standards. Fairchild, on the other hand, has followed a business model of simply infringing Power Integrations' technology rather than developing its own.  While this Court's prior permanent injunctions have ordered Fairchild to stop infringing, Fairchild continues to find new ways to infringe.  Unless the Court grants another permanent injunction against Fairchild in this case,

Fairchild will continue to irreparably harm Power Integrations' innovative reputation by misappropriating Power Integrations' newer zero standby power consumption technology. Therefore, Power Integrations respectfully requests that the Court enter a permanent injunction, as it has before, to prevent Fairchild from causing further harm with its continued infringement.

## II.     NATURE AND STAGE OF PROCEEDINGS

Fairchild initiated this lawsuit for patent infringement against Power Integrations on May 1, 2012, days after the parties' prior trial concluded (C.A. No. 08-309-LPS (D. Del.) ("*Fairchild II*")).  [D.I. 1.]  In this lawsuit, Fairchild asserted three new patents—U.S. Patent Nos. 7,286,123 ("'123 patent"), 7,525,259 ("'259 patent"), and 7,616,461 ("'461 patent")—and reasserted U.S. Patent No. 7,259,972 ("'972 patent") from the *Fairchild II* case, alleging that Power Integrations induced infringement of the '972 patent – an issue on which it lost in *Fairchild II*.  [*Fairchild II* D.I. 819 at 2-3.]  Power Integrations counterclaimed and asserted five patents against Fairchild— U.S. Patent Nos. 6,229,366 ("'366 patent"), 7,952,895 ("'895 patent"), 7,995,359 ("'359 patent"), 7,876,587 ("'587 patent"), and 8,115,457 ("'457 patent").  Only Fairchild's '972 patent and Power Integrations' '366, '359, and '457 remained in the case for trial, and Power Integrations conceded during trial it could not carry its burden of proving infringement with respect to the '366 patent in light of a ruling by the Court ruling at trial.  [Tr. at 1678:4-12.] Following a nine-day trial, the jury found that Power Integrations' '359 patent was valid, that Fairchild infringed the '359 patent under the doctrine of equivalents, that Fairchild induced others to infringe the '359 patent, and that Fairchild contributed to the infringement of the '359 patent.  The jury also found that Power Integrations' '457 patent was valid although not infringed, and that Power Integrations induced others to infringe Fairchild's '972 patent.[1]  [D.I.

---

[1]     Power Integrations is challenging the Jury verdict with regard to induced infringement of the '972 patent and seeking a new trial on the issue of infringement of the '457 patent.

402.]  Power Integrations now moves this Court to enter a permanent injunction against Fairchild

to prevent further infringement of Power Integrations' '359 patent.

## III.    ARGUMENT

### A.    Legal Standard for Entry of a Permanent Injunction

The Patent Act provides broad discretion for courts to provide injunctive relief to prevent

acts of patent infringement, specifying that "[t]he several courts having jurisdiction of cases

under this title may grant injunctions in accordance with the principles of equity to prevent the

violation of any right secured by patent, on such terms as the court deems reasonable."  35

U.S.C. § 283.  In *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837, 1839 (2006), the Supreme

Court explained that to receive an injunction a plaintiff must satisfy a four-factor test:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that
> remedies available at law, such as monetary damages, are inadequate to
> compensate for that injury; (3) that, considering the balance of hardships between
> the plaintiff and defendant, a remedy in equity is warranted; and (4) that the
> public interest would not be disserved by a permanent injunction.

Evidence of past irreparable harm is relevant to the test because "[p]ast harm to a patentee's

market share, revenues, and brand recognition is relevant for determining whether the patentee

'*has suffered* an irreparable injury." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed.

Cir. 2010) (emphasis in original).

The decision to grant a permanent injunction "rests within the equitable discretion of the

district courts, and . . . such discretion must be exercised consistent with traditional principles of

equity, in patent disputes no less than in other cases governed by such standards."  *eBay*, 126

S.Ct. at 1841; *see also ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 516 (Fed. Cir. 2012)

(noting that a district court's injunction decision is reviewed for abuse of discretion, and

affirming injunction); *see also eBay*, 126 S.Ct. at 1841-42 ("From at least the early 19th century,

courts have granted injunctive relief upon a finding of infringement in the vast majority of patent

cases.  This long tradition of equity practice is not surprising, given the difficulty of protecting a right to exclude through monetary remedies that allow an infringer to use an invention against the patentee's wishes--a difficulty that often implicates the first two factors of the traditional four-factor test. . . .  [T]here is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate. . . . When it comes to discerning and applying those standards, in this area as others, a page of history is worth a volume of logic.") (C.J. Roberts, concurring, internal quotations and citations omitted)).

### B.     The Four *eBay* Factors Warrant Entry of a Permanent Injunction Against Fairchild

The four *eBay* factors weigh in favor of granting a permanent injunction against Fairchild, just as in the prior cases before this Court.  [*See* Ex. A (06/16/14 *Fairchild II* Hearing Tr.) at 139:17-22 ("And there's the precedent that Judge Farnan entered an order granting very similar relief in the earlier case to what is sought here.  And I think, under the circumstances, that may be important to the Court's exercise of its equitable discretion as well.").]

In C.A. No. 04-1371-JJF ("*Fairchild I*"), a jury found that Fairchild had infringed four Power Integrations patents, including the '876, '851, and '366 patents.  [Ex. B (*Fairchild I* D.I. 415).]  The Court granted a permanent injunction because the four *eBay* factors were met under the facts of that case.  [Ex. C (*Fairchild I* D.I. 699).]  The Court noted the irreparable harm to Power Integrations in loss of market share, goodwill, and reputation because "Power Integrations practices the patents at issue, and Fairchild is a direct competitor in the relevant market."  [*Id.* at 2.]  The Court also concluded that Fairchild's continued infringement was not adequately compensated by monetary damages and that the harm to Power Integrations outweighs the harm to Fairchild because "Power Integrations is a specialized company and the sale of chips with the patented features accounts for approximately 90% of Power Integrations' revenue.  In contrast,

Fairchild is a large and diversified company selling over 20,000 different products with revenues in the billion dollar range." [*Id.* at 2-3.] Furthermore, it is "Fairchild's infringing conduct and not the enjoining of that conduct, that is the basis for any such harm" to Fairchild. [*Id.* at 3.] Finally, the Court concluded that public interest weighed in favor of granting the injunction and noted that no health or safety concerns were implicated by the injunction. [*Id.* at 3-4.]

In *Fairchild II*, the Court again granted the requested permanent injunction against Fairchild, this time on the '876, '851, and '605 patents, for many of the same reasons. For example, the Court explained that Power Integrations would be irreparably harmed by Fairchild's continued infringement because "Power practices the patents-in-suit [; . . .] Power has never licensed the patents-in-suit to any competitor[; . . . and] Power has been repeatedly praised and recognized as an innovator in its market." [Ex. D (*Fairchild II*, D.I. 793) at 2.] The Court also concluded that the incumbency effect from "design-win" contracts using infringing technology irreparably harmed Power Integrations because monetary damages could not provide full compensation for lost sales, price erosion, and reputational loss. [*Id.* at 3-4.] The Court also noted that the harm to Fairchild from an injunction would not be devastating since "[s]ales of Fairchild's infringing products account for only a fraction of Fairchild's more than $1.5 billion in annual revenue." [*Id.* at 4.] Finally, the Court concluded that the public interest favored entry of a permanent injunction because of the general interest in protecting property rights and because Power Integrations prevailed after a long-fought battle with Fairchild that began in 2004. [*Id.*]

Applying the four-factor *eBay* test to the facts of this case, particularly in view of the long history of competition and irreparable harm to Power Integrations, entry of a permanent injunction against Fairchild is again warranted. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 449 F. App'x 923, 932 (Fed. Cir. 2011) ("No relevant circumstances have

changed since the district court found in 2007 that O2 Micro and BiTEK are direct competitors and that BiTEK's infringement caused O2 Micro to lose market share. Thus, the district court's reliance on those findings was not an abuse of discretion.").  Power Integrations remains an innovator in the field of highly specialized power supply controller integrated circuits, and it uses the patented technology of the '359 patent.  [Tr. at 1529:16-1532:2, 1532:7-1534:13, and 1561:20-1562:19.]  As the Court noted in addressing the two prior permanent injunction requests, Fairchild is a direct competitor in the market for power supply controllers.  [Ex. C (*Fairchild I* D.I. 699); Ex. D (*Fairchild II*, D.I. 793).]  Power Integrations has provided no license to use the '359 patent, which is consistent with Power Integrations' long-standing policy of not licensing its patents to competitors.  [Tr. at 1157:8-10; Ex. E (2006-10-03 *Fairchild I* Trial Tr.) at 317:17-318:8.]  Moreover, as explained below, Fairchild's illicit use of Power Integrations' patented technology to undercut Power Integrations and steal Power Integrations' customers impacts not just Power Integrations' profits, but its entire operations, particularly when Fairchild encroaches on new, cutting-edge work like the '359 patent's zero standby power consumption technology.  Accordingly, Power Integrations seeks an injunction to protect its investment in research and development of new technologies that benefit the public and to protect the market share and goodwill Power Integrations built by selling those innovative patented products, the loss of which has caused and will continue to cause Power Integrations irreparable harm.  As discussed fully below, the equities of this case also warrant entry of permanent injunctive relief so Power Integrations' Motion for Entry of Permanent Injunction should be granted.

### 1. Power Integrations Has Been Irreparably Harmed by Fairchild's Infringement

Fairchild's ongoing infringement has irreparably harmed and continues to irreparably harm Power Integrations in a manner for which Power Integrations has not been and cannot be compensated.  "The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent.  35 U.S.C. § 154(a)(1) (2000).  In view of that right, infringement may cause a patentee irreparable harm not remediable by a reasonable royalty." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008).  The Federal Circuit has identified numerous injuries that result from infringement and which may cause irreparable harm, including the loss of market share or position, *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011), permanent price erosion and loss of access to customers, *id.*, and reputational harm, *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013).  The weight of those factors, which were considered and identified in Power Integrations' previous two permanent injunction requests before this Court, heavily favors entry of a permanent injunction here, particularly since Fairchild has continued to infringe even after being enjoined, necessitating a contempt motion and imposition of 3rd party monitoring in the parties' prior litigation.  [*Fairchild I*, D.I. 871.]   Power Integrations is not aware of any other case where the same party was found to infringe so many of a patentee's patents, was subject to multiple injunctions, and yet continued to infringe.  To reward such behavior by forcing a compulsory license on Power Integrations' patents would be unconscionable.  An injunction is needed to stop the continued harm from Fairchild's infringement.

### a. Fairchild's infringing competition with Power Integrations has irreparably harmed Power Integrations' position in the market

Courts have recognized that patentees are likely to suffer irreparable harm when an infringing product is offered in direct competition with a patentee.  *See, e.g.*, *Presidio*

*Components, Inc. v. Am. Technical Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012)

("Direct competition in the same market is certainly one factor suggesting strongly the potential

for irreparable harm without enforcement of the right to exclude."); *Robert Bosch*, 659 F.3d at

1150-51 ("[T]he court committed a clear error of judgment when it concluded that Bosch failed

to demonstrate irreparable harm in the face of overwhelming evidence to the contrary. This is

particularly true in light of Bosch's evidence of: (1) the parties' direct competition . . . .").

Injunctive relief is used to prevent infringement by competitors because "[t]he essential attribute

of a patent grant is that it provides a right to exclude competitors from infringing the patent."

*Acumed*, 551 F.3d at 1328.

      Fairchild admits that it competes directly with Power Integrations in the market for the

integrated power supply controller chips at issue in this case and considers Power Integrations to

be a serious competitor in at least some segments of that market.  [Tr. at 448:23-449:9.]

Fairchild also admits that the power supply controller market is fiercely competitive.  [Tr. at

452:2-8.]  The significant level of direct competition between Fairchild and Power Integrations is

exacerbated in this case by Fairchild's repeated infringement of Power Integrations' patents,

which has effectively forced Power Integrations to compete with itself.  The resulting harm is

particularly significant because Fairchild's power conversion business competes directly with

Power Integrations' core business, since Power Integrations is specifically focused in this

technology area.  [Tr. at 437:22-438:7; *see also* Ex. F (Power Integrations 2010 Annual Report

from *Fairchild II* Trial Ex. DX-1186 excerpt) at 8 (noting that Power Integrations' power supply

controller products have historically comprised more than 95% of its business).]

Harm is often irreparable in this field, as well, because the designs for power supply controller chips have long product lifecycles.



The "design win" environment that permeates the competition between Power Integrations and Fairchild creates a situation particularly appropriate for the entry of injunctive relief. In *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1336 (Fed. Cir. 2013), the Court affirmed the entry of an injunction in a competitor case involving competition for design wins:

> suppliers who prevail in design-win competitions enjoy two benefits beyond merely making sales. First, a design-win effectively locks the OEM into using the winner's component part and thus temporarily immunizes the winner from competition. Second, winners enjoy an "incumbency effect" making them more likely to win subsequent design competitions because the OEM's familiarity with the winning supplier creates goodwill.

Because Power Integrations and Fairchild are competitors for design-wins, the harm that Power Integrations has suffered as a consequence of Fairchild's infringement is all the more damaging. Interference with those opportunities—as caused by Fairchild's infringement—has long been recognized as irreparable harm. *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (upholding an injunction when the district court had identified damage to customer relationships and loss of business opportunities as among the irreparable harms).

Finally, the harm to Power Integrations is particularly severe because Power Integrations largely offers only one type of product—integrated power supply controller chips.  Power Integrations cannot compensate for the loss of any particular customer by cross-selling additional products to its remaining customers or recapture lost customers by offering a broader range of products.  [*See, e.g.*, Ex. D (*Fairchild II* D.I. 793).][2]  The harm that Fairchild has caused to Power Integrations by selling infringing products cannot be repaired by money damages alone.

> **b.      The reputational harm to Power Integrations and the eroded public perception of the value of Power Integrations' intellectual property warrant entry of an injunction against Fairchild**

Courts have also recognized that, in addition to market-related injuries, patentees may suffer irreparable harm to customer goodwill, brand recognition, or reputation as a consequence of infringement.  *See, e.g.*, *Douglas Dynamics*, 717 F.3d at 1344 ("Irreparable injury encompasses different types of losses that are often difficult to quantify, including . . . erosion in reputation and brand distinction."); *Celsis*, 664 F.3d at 930 ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *Black & Decker Inc. v. Robert Bosch Tool Corp.*, 2006 WL 3446144, at *4 (N.D. Ill. 2006) ("[H]arm to reputation . . . is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure.  Because [patentee] has presented evidence that its reputation as an innovator . . . may be harmed by the continued selling and marketing of [infringing products], this factor weighs in favor of a permanent injunction.") (internal citations and quotation marks omitted).

---

[2]   While Power Integrations' LinkZero technology sales right now are still relatively small, the technology has significant strategic importance as it allows Power Integrations to provide key differentiation and market leadership in a specific area of ultra-low power consumption.

Power Integrations is an innovator in the power supply industry and has built a market around its patented technology because the inventions protected by its patents provide significant improvements in energy efficiency over previous technologies.  [*See, e.g.*, Tr. at 1561:20-1562:19; 1527:20-1529:12.]  This claim is independently supported by the fact that Power Integrations has won numerous industry awards and has been recognized by government agencies for its contributions to the field of power supply technology.  [*See, e.g.*, Tr. at 1529:16-1530:29; Ex. H (Awards and Press Releases, Trial Ex. DX-588); Ex. I (Additional Awards and Praises).]  Power Integrations' status as an innovator is an important factor that district courts have considered relevant in granting injunctive relief.  *See TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 532 (D. Del. 2008) (granting a motion for a permanent injunction in part because "[d]efendant ha[d] taken from plaintiff not only this important business, but the recognition of being a technology innovator . . . .").  ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Since day one, Power Integrations has maintained this technical leadership and reputation by not licensing its patented technology to competitors, choosing instead to meet the market demand for its innovations with its own products.  [Tr. at 1157:8-11; Ex. D (*Fairchild II* D.I. 793).]  By infringing Power Integrations' patents and competing unfairly, Fairchild has intentionally usurped Power Integrations' goodwill and harmed its reputation as an innovator—damage that warrants entry of a permanent injunction.

**c.      There is a causal nexus between the irreparable harm and Fairchild's use of the patented features**

As part of showing irreparable harm, the patentee must demonstrate "that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 735 F.3d 1352, 1363-64 (Fed. Cir. 2013).  This does not require showing the patented feature is "the *exclusive reason* for customer demand"—the patentee must simply show that there is "some connection between the patented feature and demand" for the patented product.  *Id.*  The evidence in this case shows that there was customer demand for zero standby power consumption products of the type enabled by the '359 patent, and Fairchild's use of that technology caused the irreparable harm outlined above.

The '359 patent claims a "dormant mode" energy state that allows the power supply controller to enter a zero-milliwatt usage rate when the power supply enters a standby state.  [Tr. at 1561:24-1562:6.]  The technology was actually invented specifically in order to meet customer demand, from Nokia, to improve the efficiency of power supply controllers by eliminating power consumption when a phone is unplugged.  [*See* Tr. at 1532:14-19 ("At the time, they were the No. 1 cellphone company and they were using a lot of LinkSwitch products, and they gave this challenge out and say that we want a product that has zero, zero, no load consumption.  That is, if someone unplugs the phone, it shouldn't consume any power at all."); *id.* at 1534:2-5 ("Q.  So Nokia wanted zero standby power waste.  Did they get it?  A.  Yes.  We came up with LinkZero which cuts the energy waste to 0.00 watts.").]  This technology is particularly important for products that remain permanently plugged in but are used only a fraction of that time, e.g. cellphone chargers, TVs, microwaves, washing machines, and other home appliances.  [*Id.* at 1540:16-1541:5.]  Power Integrations' LinkZero products have been implemented in other products that benefit from zero power consumption in standby mode, e.g. Samsung televisions.

12

[*Id.* at 1561:13-19.]  There were no power supply controllers on the market prior to the LinkZero controller that achieved zero, no-load power consumption.  [*Id.* at 1561:20-23; 1494:9-1495:11.]

After Power Integrations developed its innovative "dormant mode" technology, Fairchild began offering and touting its infringing deep burst mode technology as a major feature of its "mWSaver Technology" on its datasheets for the infringing products.  [Ex. K (FAN6756 Datasheet, DX-131) at FSGV0016798; *see also* Ex. L ██████████████████████████ ████████████████████████████████████████  Fairchild also acknowledges that its deep burst mode is designed to achieve greater power savings for its customers.  [Tr. at 1926:9-12; Ex. M (Deep Burst Mode White Paper, DX-285) at 3 and 5-6.]

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

The evidence thus establishes that the '359 patented technology was important to and actually spurred by customers.  Fairchild's later use of this technology in its infringing products has caused irreparable harm from loss of reputation as an innovator, as Power Integrations has been effectively forced to compete with itself, including loss of market share and customer access due to Fairchild design wins using the infringing technology.  The fact that this irreparable harm was caused by Fairchild's infringement weighs in favor of granting the permanent injunction.

> **2.   Remedies at Law Are Inadequate to Compensate Power Integrations for Harm Caused by Fairchild's Continued Infringement**

In addition to the irreparable harm discussed above, the evidence demonstrates that legal remedies are insufficient to repair the full impact of Fairchild's continued infringement. Irreparable injury is a basis for showing inadequacy of legal remedy, and the analysis of whether

there has been irreparable injury and whether there is an adequate remedy at law "inevitably

overlap[]." *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 582 (E.D. Va. 2007); *see

also Acumed*, 551 F.3d at 1327 ("Since the district court considered the first two factors,

irreparable harm and lack of an adequate remedy at law, in connection with each other, we will

address them in the same manner.").  Accordingly, Courts look at similar evidence to determine

both irreparable harm and inadequacy of any legal remedy. *See Robert Bosch*, 659 F.3d at 1154-

56 (looking at "lost market share, lost business opportunities, and price erosion" as factors

establishing both irreparable harm and lack of adequate legal remedies).  The insufficiency of

legal remedies to compensate Power Integrations for Fairchild's infringement is shown by the

same evidence demonstrating irreparable harm that Power Integrations has sustained as a

consequence of Fairchild's infringement, discussed above.

Courts also cite the threat of continued infringement as a significant consideration

showing the inadequacy of a remedy at law.  *See, e.g.*, *Robert Bosch*, 659 F.3d at 1155 (finding

legal remedies to be inadequate because "[t]here is no reason to believe that [defendant] will stop

infringing, or that the irreparable harms resulting from its infringement will otherwise cease,

absent an injunction"); *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 984

(W.D. Tenn. 2006) ("Relief in the form of monetary damages alone would not meet the ends of

justice here because this remedy would allow the infringement to continue.  Monetary damages

generally are not an adequate remedy against future infringement because the central value of

holding a patent is the right to exclude others from using the patented product."); *cf. Reebok Int'l

Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994) ("[F]uture infringement . . . may have

market effects never fully compensable in money.").

These factors strongly support injunctive relief here.  There is no reason to believe that Fairchild will stop infringing unless injunctive relief is granted: Fairchild was found to infringe in *Fairchild I* [*Fairchild I* D.I. 798], *II* [*Fairchild II* D.I. 819], *IV* [Ex. O (verdict)], and now in this case [D.I. 402].  In fact, given Fairchild's history, it is more likely Fairchild would reason that the better business decision is to bury its head in the sand, continue to infringe, and merely pay monetary damages inadequate to fully compensate Power Integrations.  [Tr. at 1866:17-20 (Fairchild's President Vijay Ullal testifying, "So I have not looked at their patents.  Have not looked at our patents.  I have a ton of things to do, and we can be a really superior company with me just focusing those things."); *id.* at 1866:7-12 ("I hear this stuff, and then I just blank it out of my mind. . . . I'm going to spend a minimum amount of time on patents, right?"); *id.* at 1868-69 ("And the thing I have been telling everybody is, forget about this stuff.").]

Additionally, as noted above, Power Integrations does not obtain patents to generate licensing fees.  Power Integrations has shown it is not willing to accept royalties or licensing fees in lieu of market exclusivity, and Power Integrations has never licensed its patented technology to a direct competitor.  [Tr. at 1157:8-11; Ex. D (*Fairchild II* D.I. 793).]

Monetary damages are thus inadequate to compensate Power Integrations for future infringement, and in any event, would not prevent further loss of market share, reputation, or goodwill.  In addition, difficulties of proof and the unavailability of evidence to establish the full extent of damages caused by Fairchild's infringement—as evidenced by prior and co-pending related disputes between these parties—further establishes that money damages are inadequate to compensate Power Integrations fully for the adverse effects of Fairchild's repeated infringement. Indeed, Fairchild has gone to great lengths to hide its sales and infringement even in the face of a Federal Circuit order requiring an accounting.  [*See Fairchild I* D.I. 818 (joint letter outlining

15

Fairchild's refusal to produce sales data) and *Fairchild I* D.I. 829 (detailing Fairchild's activities in violation of the Court's injunction, including sales reflected in the previously withheld data).] The absence of data necessary to completely and precisely assess monetary damages, in turn, establishes the inadequacy of any such damages, especially where Fairchild continues to infringe in the meantime.  Accordingly, legal remedies are inadequate to redress the harm that Power Integrations continues to sustain, which also favors granting a permanent injunction.

> ### 3.     The Balance of Hardships Favors Entry of a Permanent Injunction Against Fairchild

The balancing of hardships assesses the relative effect of granting or denying the injunction on the parties.  *i4i Ltd.*, 598 F.3d at 862.  Factors to consider include "the parties' sizes, products, and revenue sources."  *Id.*  Like the "irreparable harm" and "inadequate remedy at law" factors discussed above, and for many of the same reasons discussed above, the balance of hardships in this case strongly favors a grant of injunctive relief.

Power Integrations' business focuses on one type of product—integrated power supply controller chips—so any harm to that business will have a significant and lasting impact on Power Integrations' business as a whole.  By way of comparison, the harm that Fairchild faces if a permanent injunction is entered is significantly more limited.  Fairchild is a diversified semiconductor company that sells more than 20,000 different products in a wide-range of areas, and it will not endure significant harm if it is enjoined with respect to the products and circuits at issue in this case.  Sales of Fairchild's infringing products account for only a fraction of Fairchild's more than $1.4B in annual revenue.  [*See* Tr. at 2041:14-20 (Fairchild witness testifying that less than 3.3 million infringing units were sold).]  Sales of Power Integrations' patented zero-standby technology will undoubtedly grow as the technology of the '359 patent becomes more widely adopted, but at present it represents a small fraction of Fairchild's broadly-

diversified business; Fairchild's power conversion business *alone* generates $175-180 million. [Tr. at 437:25-436:7.]  Perhaps the best proof that Fairchild will not face any significant hardship is the growth of Fairchild's power conversion business despite the previous injunctions.  Not only is Fairchild not suffering hardships, it continues to profit handsomely.  [*See* Tr. at 437:22-438:11 (Gaurang Shah testifying that Fairchild's power conversion business is growing faster than the industry average).]

Because the infringing products represent only a small fraction of Fairchild's overall business, the hardship Fairchild will suffer as a result of an injunction is far outweighed by the harm that Power Integrations will suffer in the absence of one.  *See Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech., Inc.*, 492 F. Supp. 2d 600, 606 (E.D. Tex. 2007) (finding the balance of hardships weighed in favor of patentee because the infringing products "ma[de] up only eleven percent of [infringer's] business," and that the infringer's "hardship if it is precluded from making future [infringing] sales in the United States is far from catastrophic").

Lastly, that Fairchild will no longer be able to infringe Power Integrations' patents is a hardship "imposed by law, not by any peculiar circumstances of this case."  *See MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, 505 F. Supp. 2d 359, 379 (S.D. Tex. 2007).  Any "hardship to [Fairchild] of permanently enjoining its infringing conduct is limited to the injury ordinarily expected when an injunction is imposed."  *Commonwealth Scientific*, 492 F. Supp. 2d at 606. As the Federal Circuit has long recognized, "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."  *Robert Bosch*, 659 F.3d at 1156 (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)).  This is particularly true for a party that has a history of repeated infringement, and even willful infringement, like Fairchild.  [*See, e.g.*,

*Fairchild I* D.I. 798; *Fairchild II* D.I. 819; Ex O (*Fairchild IV* verdict).]  To reward such a company – one with a recognized "corporate culture of copying" – by allowing it to continue selling misappropriated technology would pervert the entire system and incentivize others to willfully infringe their competitors' patents.  We are now 11 years from the filing of the first case against Fairchild; it has been found to infringe nine Power Integrations patents (including willfulness findings); yet its "business model" is working.  Furthermore, Fairchild will not be precluded from selling other power supply components it offers that are not at issue in this case, which further tips the balance of hardships in Power Integrations' favor.  *See Douglas Dynamics*, 717 F.3d at 1345 (explaining that if a defendant "had a non-infringing alternative which it could easily deliver to the market, then the balance of hardships would suggest that [defendant] should halt infringement and pursue a lawful course of market conduct").

    **4.**    **The Public Interest Will Be Served by Entry of a Permanent Injunction Against Fairchild**

Although competition generally serves the public interest, when a defendant "is competing in the marketplace using a competitor's patented technology," it has the detrimental effect of "inhibiting innovation and incentive."  *Douglas Dynamics*, 717 F.3d at 1346.  Courts considering the public interest factor have also consistently acknowledged that the public's interest in a strong patent system and judicial protection of property rights weighs in favor of granting injunctions against patent infringers.  *Id.* ("Th[e] detrimental effect [of inhibiting innovation and incentive] coupled with the public's general interest in the judicial protection of property rights in inventive technology, outweighs any interest the public has in purchasing cheaper infringing products."); *Commonwealth Scientific*, 492 F. Supp. 2d at 607 ("The public maintains an interest in protecting the rights of patent holders as well as enforcing adequate remedies for patent infringement. Permanent injunctions serve that interest.").

Here "[a]ny minor disruption . . . of the infringing products will not negatively affect the public . . . because none of the data on the record establishes undisputed and enormous reliance on [Fairchild's] products and because other, similar products are available in the market." *Smith & Nephew*, 466 F. Supp. 2d at 985.  Power Integrations is the industry leader in the development of highly integrated power supply controller chips, and its innovations have been recognized as instrumental in reducing power consumption and fostering energy efficiency.  [*See, e.g.*, Tr. at 1561:20-1562:19; 1527:20-1529:12.]  Without intellectual property protections, including the right to exclude, companies like Power Integrations could not maintain their level of investment in research and development that has led to so many industry advancements.  "Patent property rights are especially difficult to protect with solely monetary relief because a calculating infringer may thus decide to risk a delayed payment to obtain use of valuable property without the owner's permission."  *Broadcom*, 732 F.3d at 1338 (internal quotations and citation omitted).  Innovation—epitomized by companies like Power Integrations that create and bring to market patented technologies that benefit society at large—is what the patent system is all about; encouragement of innovation is spurred by patent protection.  U.S. Const. art. 1, § 8, cl. 8.  Thus, the public interest will be served by the award of a permanent injunction and the protection it will afford Power Integrations' business.  This factor also weighs in favor of granting the permanent injunction.

### C.      The Court's Order Should Require Fairchild to Include Notice of the Permanent Injunction to All Customers with All Shipments Anywhere

Based on Fairchild's previous conduct, including selling directly in the U.S. in violation of this Court's injunction, there is significant risk that, even if this Court grants an injunction, Fairchild will continue to induce and contribute to infringement by making sales of products overseas that are – plausible deniability aside – destined for use in the U.S.  [Tr. at 1849:12-22

and 1850:17-21.]   Fairchild clearly recognizes that a significant percentage of the products in question are being imported into the United States – in this case, Fairchild's damages expert estimated that 33% of Power Integrations' chips were imported into the U.S. [Tr. at 974], ███

████████████████████████████████████████████████

█████████████████████████  As such, in addition to the preclusions against direct and induced infringement by Fairchild, and the general customer notice provisions provided in this Court's standard permanent injunction orders, Power Integrations requests that this Court grant here the same additional relief that this Court has granted previously [*Fairchild II* D.I. 794 ¶ 8], and order Fairchild to include a copy of the injunction or, in the alternative, a clear notice of the existence of the injunction with instructions on how to download a copy electronically, with every delivery of parts that infringe Power Integrations' dormant mode patent outside the U.S., to at least attempt to curtail Fairchild's wide-scale inducement of and contribution to infringement by others.

## IV.   CONCLUSION

For the foregoing reasons, Power Integrations respectfully requests that this Court grant its Motion for Entry of a Permanent Injunction barring further infringement of Power Integrations' '359 patent in the form of order filed herewith.

Dated:  August 12, 2015        FISH & RICHARDSON P.C.

By:  */s/ William J. Marsden, Jr.*
    William J. Marsden, Jr. (#2247)
    Joseph B. Warden (#5401)
    222 Delaware Avenue, 17th Floor
    P.O. Box 1114
    Wilmington, DE  19801
    Telephone: (302) 652-5070
    Facsimile:  (302) 652-0607
    Email:   marsden@fr.com; warden@fr.com

    Frank E. Scherkenbach
    225 Franklin Street
    Boston, MA 02110-2804
    Telephone: (617) 542-5070
    Facsimile:  (617) 542-8906

    Howard G. Pollack
    Michael R. Headley
    500 Arguello Street, Suite 500
    Redwood City, CA 94063
    Telephone: (650) 839-5070
    Facsimile:  (650) 839-5071

**ATTORNEYS FOR
POWER INTEGRATIONS, INC.**

**<u>CERTIFICATE OF SERVICE</u>**

Please take notice that on August 12, 2015, a true and correct copy of POWER

INTEGRATIONS' OPENING BRIEF IN SUPPORT OF POWER INTEGRATIONS' MOTION

FOR ENTRY OF A PERMANENT INJUNCTION was caused to be served by electronic mail

on the following attorneys of record.

| | |
|---|---|
| John G. Day | Blair M. Jacobs |
| Lauren E. Maguire | Christina A. Ondrick |
| Andrew C. Mayo | Charles J. Hawkins |
| Ashby & Geddes | Robert J. Walters |
| 500 Delaware Avenue, 8th Floor | Patrick J. Stafford |
| P.O. Box 1150 | PAUL HASTINGS LLP |
| Wilmington, DE 19899 | 875 15th Street, N.W. |
| jday@ashby-geddes.com | Washington, DC 20005 |
| lmaguire@ashby-geddes.com | blairjacobs@paulhastings.com |
| amayo@ashby-geddes.com | christinaondrick@paulhastings.com |
| | charleshawkins@paulhastings.com |
| | robertwalters@paulhastings.com |
| | patrickstafford@paulhastings.com |

   */s/ William J. Marsden, Jr.*
William J. Marsden, Jr.