## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION and FAIRCHILD (TAIWAN) CORPORATION | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 12-540-LPS |
| | : | |
| POWER INTEGRATIONS, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At Wilmington this **24th** day of **March, 2016**:

Pending before the Court are: (1) Fairchild Semiconductor Corporation and Fairchild

(Taiwan) Corporation's ("Fairchild" or "Plaintiff") Motion for a New Trial on infringement

under the doctrine of equivalents of claims 29 and 31 of U.S. Patent No. 7,995,359 ("the '359

patent") and invalidity of claims 1, 3, and 12 of U.S. Patent No. 8,115,457 ("the '457 patent")

("Fairchild's Motion") (D.I. 437); and (2) Power Integrations, Inc.'s ("Power Integrations" or

"Defendant") Motion for Judgment as a Matter of Law of no induced infringement of U.S. Patent

No. 7,259,972 ("the '972 patent") and Motion for a New Trial on induced infringement of the

'972 patent as well as direct and indirect infringement of the '457 patent ("Power Integrations'

Motion") (D.I. 466).  The Court held an eight-day jury trial beginning on May 26, 2015 (D.I. 416,

417, 418, 419, 420, 421, 422, 423, 424) (hereinafter, "Tr."), which resulted in a jury verdict of:

(1) induced infringement by Power Integrations of the '972 patent, for which the jury awarded

Fairchild damages of $2,385,000; (2) direct, induced, and contributory infringement under the

doctrine of equivalents by Fairchild of claims 29 and 31 of the '359 patent, for which the jury awarded Power Integrations damages of $100,000; (3) no infringement by Fairchild of claim 32 of the '359 patent; (4) no infringement by Fairchild of the '457 patent; and (5) no invalidity of the '457 patent. (D.I. 402) Having reviewed the parties' submissions with respect to their post-trial motions (D.I. 438, D.I. 467, D.I. 472, D.I. 474, D.I. 478, D.I. 479), and having heard oral argument on January 26, 2015 (D.I. 483) , IT IS HEREBY ORDERED that both Fairchild's Motion (D.I. 437) and Power Integrations' Motion (D.I. 466) are DENIED.

Legal Standards

1.      Federal Rule of Civil Procedure 59(a)(1)(A) provides that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence and a new trial must be granted to prevent a miscarriage of justice, *see Roebuck v. Drexel Univ.*, 852 F.2d 715, 717 (3d Cir. 1988); (2) newly discovered evidence exists that would likely alter the outcome of the trial, *see Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991); (3) improper conduct by an attorney or the court unfairly influenced the verdict, *see Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 363 (3d Cir. 1999); or (4) the jury's verdict was facially inconsistent, *see Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996). Where the ground for a new trial is that the jury's verdict was against the great weight of the evidence, the court should proceed cautiously, because such a ruling would necessarily substitute the court's judgment for that of the jury. *See Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). Although the standard for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law – in that the court need not view the evidence in the ligh

2

most favorable to the verdict winner – a new trial grounded on the verdict being against the great weight of evidence should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or the verdict "shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991). Moreover, "[w]here the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations." *Id.* at 1352.

2.      Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). "Entry of judgment as a matter of law is a sparingly invoked remedy," one "granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (internal quotation marks omitted). To prevail on a renewed motion for judgment as a matter of law following a jury trial, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (internal quotation marks omitted). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be acceptable by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

3.      In assessing the sufficiency of the evidence, the court must give the non-moving

3

party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson*, 926 F.2d at 1348; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) ("[T]he court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. . . . [The court must] disregard all evidence favorable to the moving party that the jury is not required to believe."); *Perkin-Elmer Corp.*, 732 F.2d at 893. The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893. Rather, the court must determine whether the evidence reasonably supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B Wright & Miller, *Federal Practice & Procedure* § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury properly could find a verdict for that party.").

Fairchild's Motion

4.      Fairchild is not entitled to a new trial on infringement under the doctrine of equivalents of claims 29 and 31 of the '359 patent. Under the circumstances, including that Fairchild's expert, Dr. Wei, was not permitted to provide a non-infringement opinion with

respect to claims 29 and 31[1] (Tr. at 1807; *see also* D.I. 396), the jury's implicit finding that both

the "render dormant the drive signal generator" element – construed by the Court to mean "to

place the drive signal generator into a reduced energy consumption state" – and the "for a first

time period" element are met by the FAN6756 is not contrary to the great weight of the

evidence.[2]  With regard to the first of these limitations, Power Integrations' expert, Dr. Kelley,

testified that the "sleep" signal "render[s] dormant the drive signal generator" (Tr. at 1706-11),

and the jury could reasonably have found that this opinion was corroborated by the testimony of

the FAN6756's lead designer, Mr. Huang (*id.* at 1628-29).[3]  The jury was free to reject Dr. Wei's

contrary opinion, which was offered only on Fairchild's re-direct examination of him.  (*Id.* at

2032-35)  With regard to the second limitation, Dr. Kelley testified that the "first time period"

---

[1]The Court excluded Dr. Wei's non-infringement opinions on claims 29 and 31 because, in response to Power Integrations' objection, Fairchild could not point to where Dr. Wei provided non-infringement positions specific to these claims, but instead could only point to non-infringement positions for claim 1.  Nowhere did Dr. Wei "expressly say for the reasons in claim 1, we also don't infringe claims 29 and 31."  (Tr. at 1803-04)  Although Dr. Wei had disclosed general opinions in his rebuttal report consistent with the non-infringement positions he wanted to present at trial (*e.g.*, D.I. 203, Ex. I at 54-55) ("Yet, it appears that Dr. Kelley relies on the reduction of mere switching losses to attempt to prove infringement.  More is required according [to] the '359 and '895 patents, claims, and prosecution history."), Fairchild directed the Court's attention to these portions of his report only belatedly, when seeking reconsideration of the earlier exclusion ruling.  (Tr. at 1876-77)  At that point, it was not unfairly prejudicial for the Court to have found that Fairchild had waived this argument, and the Court's ruling did not result in manifest injustice.

[2]There is no inherent contradiction with the jury's finding of no infringement of claim 32. Unlike claims 29 and 31, claim 32 includes the limitation "unresponsive to changes in an energy requirement of the load," which the jury reasonably could have found was not met, based on Dr. Wei's testimony that the drive signal generator is always immediately responsive to changes in the energy requirements of the load.  (*See* Tr. at 2019-22)

[3]Fairchild's contention that Mr. Huang's testimony merely explained what happens during "sleep" mode, as opposed to stating that the "sleep" signal renders dormant the drive signal generator, implicates a factual dispute the jury was free to resolve.

limitation is met through the use of a "timer" created by the "bypass capacitor." (*Id.* at 1709)

Dr. Kelley further opined that both of these limitations are also met under the doctrine of

equivalents. (*Id.* at 1710-11)

5.      Nor does the jury's verdict on claims 29 and 31 of the '359 patent result in any

manifest injustice by vitiating the "for a first time period" element in violation of the "all

elements" rule for infringement under the doctrine of equivalents. "Under the 'all elements rule,'

. . . if a court determines that a finding of infringement under the doctrine of equivalents would

entirely vitiate a particular claim element, then the court should rule that there is no infringement

under the doctrine of equivalents." *Bell Atl. Network Servs. Inc. v. Covad Commc'ns Grp., Inc.*,

262 F.3d 1258, 1279-80 (Fed. Cir. 2001) (internal quotation marks and citations omitted). Dr.

Kelley was not required to repeat his testimony regarding the use of a "timer" created by the

"bypass capacitor" (Tr. at 1709) during his discussion of the doctrine of equivalents. *See Power

Integrations. Inc. v. Fairchild Semiconductor Int'l Inc.*, 935 F. Supp. 2d 747, 755 (D. Del. 2013)

(explaining that expert need not "re-start his testimony at square one when transitioning to a

doctrine of equivalents analysis" but "may explicitly or implicitly incorporate his earlier

testimony into the DOE analysis") (internal quotation marks and citation omitted).

6.      Fairchild is not entitled to a new trial on invalidity of claims 1, 3, and 12 of the

'457 patent. The jury's finding of no invalidity does not "cry out to be overturned." Fairchild

had a high burden to prove invalidity by clear and convincing evidence, and the jury, which had

the prior art '429 Dell patent available for its own inspection, reasonably could have found Dr.

Wei's testimony on invalidity (Tr. at 2000-13, 2023-24) not to be credible. Fairchild's

contention that the jury may have been confused by Dr. Kelley's discussion of the '429 Dell

patent missing an x-capacitor that is not actually required by claims 1 and 3 – as Dr. Kelley's testimony was not expressly limited to claim 12, which was the only asserted claim requiring an x-capacitor (*see id*. at 2045-47) – is undermined by Fairchild's decision not to cross-examine Dr. Kelley on this issue (*see id*. at 2052). The jury reasonably could have credited Dr. Kelley's opinion that the '429 Dell patent did not disclose a "switch coupled to provide a starting current" as required by claim 3 of the '457 patent, as well as his conclusion that none of the claims of the '457 patent (including claim 1) were anticipated by the '429 Dell patent. (*Id.* at 2045-48) The jury also reasonably could have credited Dr. Kelley's opinion that the '457 patent claims were not rendered obvious given the amount of time it took to develop a solution despite the existence of relevant safety standards, as well as the safety regulators' slow approval of the invention. (*Id*. at 2049-50)

Power Integrations' Motion

7.    The Court will not grant Power Integrations judgment as a matter of law of no induced infringement of the '972 patent based on issue preclusion. As the Court has previously stated, Fairchild's inducement claim is not barred by issue preclusion. (*See* D.I. 327 at 4 n.1) ("Fairchild's inducement allegations against PI [Power Integrations] are not precluded by the *Fairchild II* finding of no induced infringement by PI because the inducement allegations in the instant case arise from different transactional facts arising only after the jury returned its verdict in *Fairchild II*.") Issue preclusion does not apply to the issue of induced infringement because there are new and different facts – occurring after the April 27, 2012 *Fairchild II* verdict – involved in Fairchild's inducement claim in this case. "[W]hen significant new facts grow out of a continuing course of conduct, the issues in a successive suit may fail to constitute the same

'issue' so as to merit preclusive effect." *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*,

126 F.3d 461, 477 (3d Cir. 1997). Where the material or "controlling" facts are different, there

are changed circumstances, and issue preclusion does not apply. *See Scooper Dooper, Inc. v.*

*Kraftco Corp.*, 494 F.2d 840, 846 (3d Cir. 1974). Although the mere passage of time may not

defeat issue preclusion, *see Vogelstein v. Nat'l Screen Serv. Corp.*, 204 F. Supp. 591, 596 (E.D.

Pa. 1962), *aff'd* 310 F.2d 738 (3d Cir. 1962), here the record demonstrates not merely a change in

time but also a change in controlling facts.

8.      The *Fairchild II* verdict of direct infringement and Power Integrations' knowledge

of that verdict constitute new controlling facts related to the intent element of induced

infringement. The *Fairchild II* verdict established that the accused LinkSwitch-II infringes when

used in a power supply with a transformer. Thus, there were significantly changed circumstances

with respect to Power Integrations' state of mind when it continued with its previous course of

conduct after the *Fairchild II* jury verdict of infringement was rendered.[4]  Conduct that may not

have constituted inducement before the *Fairchild II* infringement verdict, due to the lack of

intent (i.e., Power Integrations' good faith belief that its product did not infringe Fairchild's '972

patent), could have constituted inducement after the *Fairchild II* infringement verdict, as at this

later time Power Integrations **knew** that its LinkSwitch-II when used in a power supply with a

_____

[4]The Court disagrees with Power Integrations' statement that, due to issue preclusion, "it
was entitled to continue its adjudged non-inducing conduct without having to litigate its
propriety" (D.I. 467 at 4), a contention that overlooks the fact that Power Integrations' product
was found to directly infringe Fairchild's patent. To the contrary, the Court agrees with
Fairchild: "There is no support in the law for PI's contention that prior and separate non-inducing
acts somehow insulate all future conduct from a finding of inducement even if circumstances and
evidence change, especially where there is a jury verdict of direct infringement followed by new
post-verdict actions encouraging customers' infringement." (D.I. 474 at 9)

8

transformer does, indeed, infringe Fairchild's '972 patent.[5]  Fairchild presented substantial

evidence of inducing conduct by Power Integrations occurring after Power Integrations had

knowledge of the *Fairchild II* verdict, such as the manufacture of power supplies in infringing

configurations postdating the verdict (*e.g.*, PPX-9, PPX-10, PPX-12, PPX-13, PPX-131, Tr. at

759-64, 884-90), offers for sale on Power Integrations' website (*e.g.*, Tr. at 1223-63, 1272-75,

877-80, 1412-13), testimony from Power Integrations personnel about continued encouragement

of use of the LinkSwitch-II in infringing configurations (*e.g.*, Tr. at 581-84, 622-40, 704-10, 839-

41, 1170-72, 1223-63, 1272-75), numerous design examples of the LinkSwitch-II in infringing

configurations on Power Integrations' website (*e.g.*, *id.* at 640, 718-19), documentation on Power

Integrations' website showing customers infringing ways to integrate LinkSwitch-II into power

supplies (*e.g.*, *id.* at 840-41, 872-77, 1240, PX-1453, PX-2262R, PX-36, PX-1138, PX-1127,

PX-1132, PX-1134, PX-1135, PX-343, PX-2263), and post-verdict offers of indemnification

(*e.g.*, PX-10.1R, PX-144.1RR, PX-304R, Tr. at 651-57, 1157-59, 1507-16).  (*See* D.I. 474 at 4-6;

*see also* Tr. at 1978 (Power Integrations counsel stating he was not trying to preclude Fairchild

from arguing that 2011 document appearing on Power Integrations website after 2012 verdict

could be an action by Power Integrations taken in, for example, 2013))  The jury was free to – but

was not required to – find that these acts constituted inducement.

---

[5]The reality of the *Fairchild II* infringement verdict severely limited Power Integrations'
ability to argue lack of intent.  In light of the *Fairchild II* verdict, the Court found that the
minimal probative value of any evidence Power Integrations might have to show lack of intent –
including Power Integrations' good faith beliefs of (1) non-infringement and (2) invalidity based
on a final rejection (subject to appeal) of all the patent claims by the PTO – was far outweighed
by the prejudice of allowing the jury to hear about the *Fairchild II* case (including the verdict of
no inducement) and the ongoing reexamination and appeal proceedings; therefore, the Court
excluded this evidence.  (*See, e.g.*, D.I. 331, D.I. 340 at 25-26, 30-37, D.I. 351, D.I. 359)

9.      Nor is the Court persuaded that it should grant Power Integrations judgment as a

matter of law on induced infringement of the '972 patent based on the purported insufficiency of

the evidence.  Rather, substantial evidence, as outlined above, supports the verdict of induced

infringement of the '972 patent.  Contrary to Power Integrations' view that the verdict must be

supported by evidence that new post-*Fairchild II* conduct actually caused post-*Fairchild II*

infringement (D.I. 467 at 12-13), the jury was properly instructed that, "in order to find

inducement, you must find that the party accused of infringement intended others to use its products

in at least some ways that would infringe the asserted claims of the patent.  However, ***that***

***infringement need not have been actually caused by the party's actions***."  (D.I. 400 at 29)

(emphasis added)  *See also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318, 1323 (Fed.

Cir. 2009).  Fairchild offered substantial evidence (direct and circumstantial) from which a jury

could find both post-*Fairchild II* inducing conduct and post-*Fairchild II* infringement.[6]  The

mere similarity between conduct after the *Fairchild II* verdict and conduct before the *Fairchild I*

verdict does not make that conduct irrelevant in light of the changed circumstances.

10.      Similar reasoning leads to the conclusion that the Court should likewise deny

Power Integrations' request for a new trial on induced infringement of the '972 patent.  For all of

the reasons explained above, the jury's verdict is not against the great weight of the evidence.

There is also no manifest injustice.  The Court's determination to prevent Power Integrations

from presenting its defense of a good-faith belief of non-infringement based on Dr. Kelley's

expert opinions followed from the results of prior stages of litigation between these parties and

---

[6]As just one example, the jury could have found inducing activity based on Power
Integrations' continued offerings for sale on its website and infringing activity based on the Ikea
and TP-Link designs with post-*Fairchild II* manufacturing dates.  (*See* PPX-9)

careful evaluation of the competing interests under Federal Rule of Evidence 403.  On summary judgment, the Court decided that Power Integrations was collaterally estopped from re-litigating the issue of infringement under the doctrine of equivalents of the '972 patent by the LinkSwitch-II when used in a power supply with a transformer.  (D.I. 327, 328)  There was, therefore, little or no probative value to Power Integrations' evidence of a good-faith belief in non-infringement in the period after the *Fairchild II* verdict, i.e., the pertinent time frame here.  Whatever minimal probative value such evidence may have had was substantially outweighed by the prejudice of allowing the jury to hear about the *Fairchild II* verdict – which would have opened the door to evidence and argument of the parties' competing interpretations of that verdict (*see* D.I. 351 at 4-6), as well as to the Federal Circuit's decision on appeal (which includes severely prejudicial statements regarding willful copying), *see Power Integrations, Inc. v. Fairchild Semiconductor Int'l. Inc.*, 711 F.3d 1348, 1369 (Fed. Cir. 2013) ("[T]he record indicates that Fairchild fostered a corporate culture of copying, which was not limited to the '876 patent.").  Similarly, the Court did not err in preventing Power Integrations from presenting its defense of a good-faith belief of no inducement based on the *Fairchild II* jury verdict of no inducement.  Given the significantly changed circumstances, as explained above, allowing the jury to hear about the *Fairchild II* verdict would have been highly prejudicial as well as confusing, especially in light of Power Integrations' continued insistence that the factual circumstances remain unchanged.  Finally, the Court did not err in preventing Power Integrations from presenting its defense of a good-faith belief of invalidity.  In *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015), the Supreme Court held that a good-faith belief of invalidity cannot serve as a basis for showing lack of intent necessary for inducement.  In light of the Rule 403 balancing underlying the Court's

11

evidentiary rulings, as well as the Court's efforts to carefully police these rulings throughout trial (*see, e.g.*, Tr. at 362-73), any prejudice resulting from Fairchild's statements suggesting that infringement or invalidity were not contested (*e.g.*, *id.* at 358, 939) was minimal and did not result in manifest injustice.

11.    Lastly, a new trial on infringement of the '457 patent is not warranted. With respect to literal infringement, there was evidence to support a reasonable jury's finding that Fairchild's accused products did not meet the "threshold voltage in less than a maximum period of time" limitation. Fairchild's expert, Dr. Wei, testified that this limitation was not met by the accused products. (*Id.* at 1995-2000) In light of this evidence on which the jury reasonably could have based its verdict, Fairchild's closing argument statement that "if it's not in the '915 patent, it's not in the products that practice the '915 patent" was not so misleading as to warrant a new trial; Fairchild made clear that "[Dr. Wei] testified about our product. And he testified that the products did not have this threshold." (*Id.* at 2141) Similarly, the Court will not hold a new trial on infringement of the '457 patent under the doctrine of equivalents because the jury's finding of no infringement under the doctrine of equivalents is not against the great weight of the evidence. Because it was Power Integrations' burden to prove infringement, Fairchild could prevail even without presenting expert testimony on the doctrine of equivalents. It is unlikely that Fairchild's objection during Power Integrations' closing argument – stating that Dr. Wei had "address[ed] the doctrine of equivalents" (*id.* at 2198-99), even though he had ***not*** addressed the doctrine of equivalents with respect to the '457 patent (*see id.* at 1931-43, 1991-2036) – served as the only basis on which the jury reached its verdict. *See generally Lucent*, 168 F. Supp. 2d at 260 (explaining that misleading statement warranting new trial must be "prejudicial in the sense

12

of affecting a substantial right in the context of the entire trial record").  It follows, given the

conclusions above, that the Court will not grant a new trial on contributory infringement or

induced infringement.

      IT IS FURTHER ORDERED that the parties shall meet and confer and shall submit a

joint status report, no later than March 30, 2016, advising the Court of any remaining order(s) it

should enter in this case and how, if at all, it should proceed.


                                                        _____

                                                         HONORABLE LEONARD P. STARK
                                                         UNITED STATES DISTRICT JUDGE