# EXHIBIT 5

## DEFENDANTS' STATEMENT OF ISSUES OF LAW

Defendants identify the below listed issues of law for trial, and a preliminary summary of the authorities on which they rely. To the extent that any issues of facts set forth in Exhibit 3 may be considered issues of law, Defendants incorporate those portions of Exhibit 3 by reference. In addition, Defendants make no admission that any of the issues listed herein are not factual, requiring trial by jury. These issues of law may change based on the Court's decisions on various motions, including pending *Daubert* motions, motions for summary judgment, and motions *in limine*, and Defendants reserve the right to modify, supplement, or change these issues of law.

1. In light of the Court's decision and order vacating the induced infringement verdict, as well as the Seventh Amendment, whether Power Integrations must demonstrate each element of induced infringement, including whether there was direct infringement by third parties, the scope of the direct infringement by third parties, and the remaining elements of inducement, such as specific intent, affirmative acts and causation.

*Legal Authority:*

A vacated judgment "is 'null and void, and the parties are left in the same situation as if no trial had ever taken place.'" *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (quoting *United States v. Ayres*, 76 U.S. 608, 610 (1869)); *see also O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect"). In this trial, PI must demonstrate each element of induced infringement, including whether there was direct infringement by third parties, the scope of the direct infringement by third parties, and the remaining elements of

inducement, such as specific intent, affirmative acts and causation. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331-32 (Fed. Cir. 2016) (elements of inducement).

The Seventh Amendment provides that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States." U.S. Const. amend. VII. The Seventh Amendment guarantees the "right to have juriable issues determined by the first jury impaneled to hear them . . . and not reexamined by another finder of fact." *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). Complete overlap is not necessary. Where two issues are "so interwoven" that they cannot be submitted to the jury independently "without confusion and uncertainty," they must be tried together. *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). Indeed, the Federal Circuit in its opinion in a related case recognized that the present posture creates a serious risk that "both the liability jury and the damages jury will be asked to determine which of Fairchild's customers were induced to infringe by Fairchild." *Power Integrations*, 843 F.3d at 1329 n.14.

2. Whether Power Integrations can rely on an alleged "class" of third-party direct infringers, whether they have provided sufficient notice regarding what any alleged "class" of third-party direct infringers is, what the alleged "class" of third-party direct infringers did, and whether reliance on a "class" of infringers for induced infringement requires Power Integrations to prove that every member of the class necessarily infringes.

<u>Legal Authority:</u>

*Dynacore Holdings Corporation v. U.S. Philips Corporation*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004), states that a patentee can rely on a "class" of infringers only where it can prove

that every member of the class necessarily infringes. *Id.* ("Dynacore must therefore either demonstrate that LANs compliant with the IEEE 1394 Standard necessarily infringe the [']732 Patent, or point to a specific instance of direct infringement and restrict its suit to liability stemming from that specific instance."). In *Dynacore*, the Federal Circuit never reached "the question of the defendants' vicarious liability for indirect infringement" because the patentee could not prove direct infringement by every IEEE 1394 compliant network and thus establish the requisite "class." *Id.* at 1277.

Further, Power Integrations' proof must be tailored to the specific group of direct infringers that it has identified because "issues and proofs regarding [the accused infringer's] inducement of the manufacturer customers (e.g., Dell) may be different from those regarding its inducement of end-use customers, and the outcome on remand may be different for these groups." *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008).

3. Whether Power Integrations must prove affirmative acts, successful communications with, and causation with respect to an alleged "class" of third-party direct infringers.

*Legal Authority:*

For an alleged class, the patentee must prove the remaining elements of its claims with respect to the whole class. To prove induced infringement, PI must prove all the following: (1) direct infringement by a third party; (2) specific intent by Fairchild to cause infringement; (3) affirmative acts by Fairchild to promote the third party's infringing conduct; and (4) that Fairchild's affirmative acts were the cause of the third party's direct infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330-33 (Fed. Cir.

2016); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement").

Induced infringement requires proof of "successful communication between the alleged inducer and the third-party direct infringer." *Power Integrations*, 843 F.3d at 1331.

Induced infringement also requires causation. The Federal Circuit has held that "[t]o prevail under a theory of indirect infringement, [plaintiff] must first prove that the defendants' actions led to direct infringement of the [patent-in-suit]." *Id.* (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004)).

The patentee must provide evidence that the accused supplier communicated with the alleged class, and that the communications—and not other causes—led to the infringement, such as where a pharmaceutical company provides doctors with instructions specifically tailored to performing the patented invention. *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1377 (Fed. Cir. 2005) (affirming jury's induced infringement verdict where defendant distributed "sales literature" and "manuals" that instructed how to use product in an infringing manner).

Further, Power Integrations' proof must be tailored to the specific group of direct infringers that it has identified because "issues and proofs regarding [the accused infringer's] inducement of the manufacturer customers (e.g., Dell) may be different from those regarding its inducement of end-use customers, and the outcome on remand may be different for these groups." *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008).

4. Whether Power Integrations must prove that Defendants' actions, as opposed to other factors, caused the third-party direct infringement.

*Legal Authority:*

For each alleged class, the patentee must prove the remaining elements of its claims with respect to the whole class. To prove induced infringement, PI must prove all the following: (1) direct infringement by a third party; (2) specific intent by Fairchild to cause infringement; (3) affirmative acts by Fairchild to promote the third party's infringing conduct; and (4) that Fairchild's affirmative acts were the cause of the third party's direct infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330-33 (Fed. Cir. 2016); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement").

Induced infringement requires causation. The Federal Circuit has held that "[t]o prevail under a theory of indirect infringement, [plaintiff] must first prove that the defendants' actions led to direct infringement of the [patent-in-suit]." *Power Integrations*, 843 F.3d at 1331 (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004)).

The patentee must provide evidence that the accused supplier communicated with the alleged class, and that the communications—and not other causes—led to the infringement, such as where a pharmaceutical company provides doctors with instructions specifically tailored to performing the patented invention. *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1377 (Fed. Cir. 2005) (affirming jury's induced infringement verdict where defendant distributed "sales literature" and "manuals" that instructed how to use product in an infringing manner).

Power Integrations must prove "actual inducement." *Power Integrations*, 843 F.3d at 1332. It must prove that "[Fairchild's] alleged inducement, as opposed to other factors, actually

5

caused the [third parties] to directly infringe." *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 313 F. Supp. 3d. 582, 590 (D. Del. 2018).

"The Supreme Court has explained that the term induce as it is used in § 271(b) means [t]o lean on; to influence; to prevail on; to move by persuasion." *Power Integrations*, 843 F.3d at 1331 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011)) (quotation marks omitted).

Further, Power Integrations' proof must be tailored to the specific group of direct infringers that it has identified because "issues and proofs regarding [the accused infringer's] inducement of the manufacturer customers (e.g., Dell) may be different from those regarding its inducement of end-use customers, and the outcome on remand may be different for these groups." *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008).

5.    Whether Power Integrations can prove that Defendants' actions, as opposed to other factors, can be the cause of a third-party's direct infringement if there was no successful communication between Defendants and the third party regarding the products at issue.

*Legal Authority:*

Induced infringement requires proof of "successful communication between the alleged inducer and the third-party direct infringer." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016).

Even if a patentee shows that a class necessarily infringes, the patentee must still provide evidence that the accused supplier communicated with the alleged class, and that the communications—and not other causes—led to the infringement, such as where a pharmaceutical company provides doctors with instructions specifically tailored to performing

6

pa-1868211 v3

the patented invention. *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1377 (Fed. Cir. 2005) (affirming jury's induced infringement verdict where defendant distributed "sales literature" and "manuals" that instructed how to use product in an infringing manner).

Further, Power Integrations' proof must be tailored to the specific group of direct infringers that it has identified because "issues and proofs regarding [the accused infringer's] inducement of the manufacturer customers (e.g., Dell) may be different from those regarding its inducement of end-use customers, and the outcome on remand may be different for these groups." *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008).

6. Whether a royalty rate that captures more than all the value (in the form of profits) for a product can avoid the entire market value rule.

*Legal Authority:*

"The entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for consumer demand." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Nos. 2016-2691, 2017-1875, slip op. at 19 (Fed. Cir. Sept. 20, 2018) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009)). A royalty rate that captures essentially all the value of the products at issue is only permissible if the patentee can prove that the patented features are the sole basis for consumer demand. "The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology," unless it can "establish that its patented technology drove demand for the entire product." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014). "[I]t is not enough to merely show that the patented feature is viewed as essential, that a product would not be commercially viable

without the patented feature, or that consumers would not purchase the product without the patented feature." *Power Integrations*, slip op. at 22.

7. Whether in a multi-feature product in which the patented features do not drive demand, a royalty rate is properly apportioned to account solely for the contribution of the patented feature when it captures all of the value from the product (in the form of Defendants' profits).

<u>Legal Authority</u>:

"A patentee is only entitled to a reasonable royalty attributable to the infringing features. The patentee 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features.'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Nos. 2016-2691, 2017-1875, slip op. at 18 (Fed. Cir. Sept. 20, 2018) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

8. Whether a royalty base to compensate for induced infringement is proper when it does not account in any way for the actual amount of third-party direct infringement in the United States.

<u>Legal Authority</u>:

Damages must be "adequate to compensate for the infringement." 35 U.S.C. § 284. Thus a royalty base must meaningfully reflect the actual amount of a defendant's infringement. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284); *see also Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014)

(citing *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 648 (1915)) ("[T]he use of the patented technology . . . measures the royalty."); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373-74 (Fed. Cir. 2013) (rejecting expert's damages analysis because it was not properly tailored to the amount of products infringing in the United States).

9. Whether a royalty base to compensate for induced infringement must account for and address the scope of the infringement that is actually caused by the Defendants actions and not just importation into the United States.

*Legal Authority*:

Damages must be "adequate to compensate for the infringement." 35 U.S.C. § 284. Thus a royalty base must meaningfully reflect the actual amount of a defendant's infringement. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284); *see also Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (citing *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 648 (1915)) ("[T]he use of the patented technology . . . measures the royalty."); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373-74 (Fed. Cir. 2013) (rejecting expert's damages analysis because it was not properly tailored to the amount of products infringing in the United States).

For each alleged class, the patentee must prove the remaining elements of its claims with respect to the whole class. To prove induced infringement, PI must prove all the following: (1) direct infringement by a third party; (2) specific intent by Fairchild to cause infringement; (3) affirmative acts by Fairchild to promote the third party's infringing conduct; and (4) that

Fairchild's affirmative acts were the cause of the third party's direct infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330-33 (Fed. Cir. 2016); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement").

Induced infringement requires causation. The Federal Circuit has held that "[t]o prevail under a theory of indirect infringement, [plaintiff] must first prove that the defendants' actions led to direct infringement of the [patent-in-suit]." *Power Integrations*, 843 F.3d at 1331 (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004)).

The patentee must provide evidence that the accused supplier communicated with the alleged class, and that the communications—and not other causes—led to the infringement, such as where a pharmaceutical company provides doctors with instructions specifically tailored to performing the patented invention. *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1377 (Fed. Cir. 2005) (affirming jury's induced infringement verdict where defendant distributed "sales literature" and "manuals" that instructed how to use product in an infringing manner).

Power Integrations must prove "actual inducement." *Power Integrations*, 843 F.3d at 1332. It must prove that "[Fairchild's] alleged inducement, as opposed to other factors, actually caused the [third parties] to directly infringe." *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 313 F. Supp. 3d. 582, 590 (D. Del. 2018).

"The Supreme Court has explained that the term induce as it is used in § 271(b) means [t]o lean on; to influence; to prevail on; to move by persuasion." *Power Integrations*, 843 F.3d at 1331 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011)) (quotation marks omitted).

Further, Power Integrations' proof must be tailored to the specific group of direct infringers that it has identified because "issues and proofs regarding [the accused infringer's] inducement of the manufacturer customers (e.g., Dell) may be different from those regarding its inducement of end-use customers, and the outcome on remand may be different for these groups." *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008).

10. Whether a royalty base that does not account for the actual amount of third-party direct infringement is proper merely because it is described as an option that two hypothetical negotiators could have implemented.

*Legal Authority*:

Damages may be proven by "just and reasonable inference," not "mere speculation or guess." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983). "Like all methodologies based on a hypothetical, there will be an element of uncertainty; yet, a court is not at liberty, in conducting the methodology, to abandon entirely the statutory standard of damages 'adequate to compensate' for the infringement. The royalty arrived at must be 'reasonable' under all the circumstances; i.e., it must be at least a close approximation of what would be 'adequate to compensate' for the 'use made of the invention by the infringer.'" *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (quoting 35 U.S.C. § 284); *see also AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015); *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (citing *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 648 (1915)) ("[T]he use of the patented technology . . . measures the royalty.");

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373-74 (Fed. Cir. 2013) (rejecting expert's damages analysis because it was not properly tailored to the amount of products infringing in the United States).

11.     Whether a royalty can be awarded on products that never enter the United States, and thus never infringe.

<u>Legal Authority</u>:

Consistent with the Patent Act's provision of damages "to compensate for the infringement," 35 U.S.C. § 271(a), courts have confirmed that royalties are only available on products imported into or sold in the United States, *see*, *e.g.*, *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1329–31 (Fed. Cir. 2018) (affirming exclusion of 98.8% of accused units from royalty base, because those units "were manufactured, packaged, and tested abroad, and those units were shipped to manufacturers and distributors abroad"); *Carnegie Mellon v. Marvell*, 807 F.3d 1283, 1307-08 (Fed. Cir. 2015) (reversing award of royalties on worldwide sales and ordering a new trial to determine which sales occurred in the United States, and thus were properly subject to a royalty); and *France Telecom S.A. v. Marvell Semiconductor Inc.*, 39 F. Supp. 3d 1080, 1100–01 (N.D. Cal. 2014) ("France Telecom is not entitled to any damages or royalties based on infringement that occurred abroad.").

12.     Whether an electrical engineer can testify as an expert witness to the state of mind of defendant.

<u>Legal Authority</u>:

12

This court, in *Oxford Gene Technology Ltd. v. Mergen Ltd.*, excluded the opinions of a party's willfulness expert that opined on defendants' state of mind. 345 F. Supp. 2d 431, 443 (D. Del. 2004); *see also AstraZeneca LP v. TAP Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006) (finding "same kind of testimony on the intent of a party that was excluded in *Oxford*" and concluding that it would "not be permitted here"). Intent is not a proper topic for expert testimony—and certainly not for an expert in electrical engineering. *See Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co.*, No. 13-cv-324 (RGA), 2017 U.S. Dist. LEXIS 130430, at *11-12 (D. Del. Aug. 14, 2017); *see also Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 648 (E.D. Pa. 2004) (excluding two experts' statements regarding state of mind or scienter because "intent is not a proper subject for expert testimony . . . . '[t]he question of intent is a classic jury question and not one for experts'").

This court has excluded expert testimony opining on "state of mind and intent" of company employees because "[s]uch statements are improper legal conclusions based on unscientific interpretation." *Greatbatch Ltd. v. AVX Corp.*, No. 13-723-LPS, 2017 U.S. Dist. LEXIS 113316, at *6 (D. Del. July 20, 2017).

13. Whether it is proper for an expert to reinterpret and reexamine the evidence presented to and findings of a prior jury and further, whether it can do so without violating the Seventh Amendment.

*Legal Authority*:

Testimony of an expert that reflects the expert's personal belief as to the weight of the evidence invades the province of the fact-finder and provides legal—not technical—opinions. *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004). It is improper

13

for an expert to offer an opinion on the credibility of fact witnesses. *Withrow v. Spears*, 967 F. Supp. 2d 982, 998 (D. Del. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 653 (E.D. Pa. 2004).

In *Sonos, Inc. v. D&M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017), the court excluded multiple expert opinions in which the experts simply summarized evidence of defendants copying the patented technology. The experts had reviewed evidence of whether the defendants were aware of the patents and whether defendants sought to make similar products and had analyzed additional evidence like naming, branding, marketing, user experience, and industrial design. *Id.* Because the expert opinions were not based on specialized knowledge and would not help the jury understand the evidence, their "summaries of evidence and conclusory statements that imply [copying]" were excluded. *Id.*

Matters decided by a civil jury cannot be reexamined by this jury or by another witness without running afoul of the Seventh Amendment. *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1302-04 (7th Cir. 1995) (Posner, J.) ("The right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them (provided there are no errors warranting a new trial), and not reexamined by another finder of fact.")

This Court has held that "[f]actual questions resolved by one jury which could be reexamined by another jury, either directly or indirectly, violate[] the Seventh Amendment. *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 984 (D. Del. 1982), *aff'd*, 758 F.2d 668 (Fed. Cir. 1984); *see also In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1185 (3d Cir. 1993) (reversing and ordering retrial due to Seventh Amendment violation).

Further, reexamination of the same issue as a matter of degree also violates the Seventh Amendment. In *In re Rhone-Poulenc Rorer*, the Seventh Circuit found a Seventh Amendment violation where the first jury would determine whether defendants were negligent and the second jury would decide issues like comparative negligence and proximate cause because "[c]omparative negligence entails . . . a comparison of the degree of negligence" and "[b]oth issues overlap the issue of the defendants' negligence." 51 F.3d at 1303. Similarly, in *United Air Lines, Inc. v. Wiener*, the Ninth Circuit reversed the bifurcation of liability and damages because the jury deciding liability would be required to decide negligence, and the second jury deciding damages would be required to decide the degree of that negligence. 286 F.2d 302, 306 (9th Cir. 1961).