**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

POWER INTEGRATIONS, INC.,

        Plaintiff,

    v.

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

        Defendants.

C.A. No. 12-540-LPS

**[PROPOSED] FINAL JURY INSTRUCTIONS**

# 1. GENERAL INSTRUCTIONS

## 1.1 INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2    JURORS' DUTIES

You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you will see and hear in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.  Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3    BURDEN OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  In this case, Power Integrations has the burden to prove its claims for induced infringement and damages by a preponderance of the evidence.

A "preponderance of the evidence" means that a party with the burden of proof has to produce evidence that, when considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not.  To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claims of the party with the burden of proof must make the scales tip somewhat on its side.

Some of you may have heard the phrase "proof beyond a reasonable doubt."  That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one.  You should therefore not consider it in this case.

### 1.4    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, the stipulations to which the lawyers agreed, and the facts I have judicially noticed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These

things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.5  DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.6     CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.7 CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witnesses' biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time (including in prior testimony read to you or played by video for you at trial) the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**1.8    NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

### 1.9 EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training, education, or experience in that technical field-a person called an expert witness-is permitted to state an opinion on those technical matters. You are not required, however, to accept that opinion.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

**1.10    DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out-of-court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

## 1.11  DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  The remainder of the exhibits (including charts, PowerPoint presentations, and animations) were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, and are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**1.12    USE OF NOTES**

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is generally a tendency, I think, to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

## 2. THE PARTIES AND THEIR CONTENTIONS

### 2.1 THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict. The plaintiff in this case is Power Integrations, Inc., which I will refer to as "Power Integrations" or "PI". The defendants in this case are Fairchild Semiconductor Corporation and Fairchild (Taiwan) Corporation. I will refer to the defendants collectively as "Fairchild."

## 2.2    THE PARTIES' CONTENTIONS

There is one patent in this case, owned by Power Integrations: United States Patent Number 7,995,359.  I will refer to this patent as the as "the '359 patent" or the "patent-in-suit."

Power Integrations alleges that Fairchild has induced infringement of the '359 patent. Power Integrations seeks damages, or monetary compensation.

Fairchild denies that it has induced infringement and that Power Integrations is entitled to damages for induced infringement.

## 2.3    SUMMARY OF THE PATENT ISSUES

In this case, you must decide several things according to the instructions I give you.  You must decide:

1.    Whether Power Integrations has proven by a preponderance of the evidence that Fairchild has induced infringement of the '359 patent;

2.    The money damages to be awarded to Power Integrations.

As I will instruct you in more detail later, your job is not to decide whether Fairchild has directly infringed the '359 patent or whether Fairchild's FAN6756 products infringe the '359 patent if used, sold, or imported into the United States.  It was already determined that Fairchild's FAN6756 products directly infringe the '359 patent if used, sold, or imported into the United States, and that Fairchild has imported at least some of the FAN6756 products into the United States

Similarly, your job is not to decide whether the '359 patent is valid or invalid.  It has already been determined that the '359 patent is not invalid.

3.      **THE PATENT CLAIMS**

Before you can decide some of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The text in the rest of the patent provides a description and/or examples of the invention and provides a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

Because it has already been determined that Fairchild's FAN6756 products infringe the '359 patent if used, sold, or imported into the United States, it is not your job to decide whether the circuits within the Fairchild products fall within the scope of the '359 patent.  But understanding the role of the claims may help you understand other issues that it is your job to decide.

**4.      PATENT INFRINGEMENT**

**4.1      INFRINGEMENT GENERALLY**

A patent owner may enforce its right to stop others from making, using, selling, or offering to sell within the United States or importing into the United States a patented invention by filing a lawsuit for patent infringement.

There are several ways to infringe a patent.  One may directly infringe a patent.  One may also indirectly infringe a patent by inducing others to infringe a patent, in which case both the party that induced and the direct infringer are liable for infringement.

## 4.2    DIRECT INFRINGEMENT ALREADY DETERMINED

I just told you that one of the ways a patent may be infringed is if a person sells or imports into the United States, without the patent owner's permission, a product or method legally protected by at least one claim of a patent, before the patent expires.  To "import" simply means to bring goods into the United States from another country.

As noted previously, it has already been determined that Fairchild's FAN6756 products meet the limitations of the asserted claims of the '359 patent, and that Fairchild's FAN6756 products directly infringe the '359 patent when imported into or sold in the United States.

### 4.3    INDUCED INFRINGEMENT

Power Integrations alleges that Fairchild is liable for infringement by actively inducing third parties to directly infringe the '359 patent.

Induced infringement may be shown by direct or circumstantial evidence. Fairchild is liable for active inducement only if Power Integrations proves by a preponderance of the evidence each of the following four elements:

1.      That allegedly infringing acts were actually carried out by third parties that directly infringed one or more of the asserted claims of the '359 patent;

2.      That Fairchild took some affirmative action after the '359 patent issued—or that Fairchild continued to take an action that began before the '359 patent issued—specifically intending to cause the third parties to directly infringe by selling in or importing into the United States the FAN6756 products;

3.      That Fairchild was aware of the '359 patent—and that Fairchild knew that the infringing acts, if taken, would constitute direct infringement of the '359 patent by the third parties, or Fairchild believed that there was a high probability that the actions taken by third parties infringed the '359 patent and took deliberate steps to avoid learning of that infringement; and

4.      That Fairchild's alleged inducement actually caused the third parties to directly infringe.

I will now instruct you further as to the law for each of these elements.

### 4.3.1   DIRECT INFRINGEMENT BY THIRD PARTIES

As I mentioned, a finding of induced infringement requires a showing that someone has directly infringed.  This can be shown through direct or circumstantial evidence.  Power Integrations must prove by a preponderance of the evidence that a third party directly infringed the '359 patent.  I have already given you instructions on direct infringement; they apply as well to the direct infringement element of induced infringement.

### 4.3.2 AFFIRMATIVE ACTIONS SPECIFICALLY INTENDED TO CAUSE INFRINGEMENT

Power Integrations must prove by a preponderance of the evidence that Fairchild took actions after June 21, 2012 with the specific intent to cause third parties to import into or sell in the United States one or more of the FAN6756 products. This can be shown through direct or circumstantial evidence.

In order to establish active inducement of infringement, it is not sufficient that third parties directly infringe the '359 patent. Nor is it sufficient that Fairchild was aware of acts by third parties that would directly infringe. Rather, in order to find induced infringement, you must find that Fairchild took affirmative actions intending to induce third-party infringement by importation, use, or sale of the products-at-issue within the United States. Inducing infringement cannot occur unintentionally.

### 4.3.3   KNOWLEDGE THAT THE ACTS, IF TAKEN, WOULD CONSTITUTE INFRINGEMENT

Power Integrations must prove by a preponderance of the evidence that Fairchild was aware of the '359 patent.  Power Integrations must also prove by a preponderance of the evidence that Fairchild knew that the acts it induced third parties to take would, if taken, constitute infringement of the '359 patent; or that Fairchild believed that there was a high probability that the actions taken by third parties would infringe the '359 patent and took deliberate steps to avoid learning of that infringement.

### 4.3.4    INDUCEMENT MUST CAUSE DIRECT INFRINGEMENT

Finally, Power Integrations must prove that Fairchild's alleged inducement actually caused third parties to import into or sell in the United States the Fairchild FAN6756 products. This means that Power Integrations must prove that Fairchild's affirmative acts caused the direct infringement by the third party infringers.

### 4.4 ADDITIONAL INSTRUCTION AS TO INDUCED INFRINGEMENT

Power Integrations may present evidence of Fairchild's liability for induced infringement in two ways. One way is to present evidence of induced infringement based on identified individual acts of direct infringement. The alternative way is to present evidence of induced infringement by identifying a specific category of similarly-situated third party direct infringers, referred to as a "class" of direct infringers.

To prove induced infringement with respect to a "class" of third party direct infringers, Power Integrations must prove each of the elements of Instruction 4.3 with respect to the class.

**5.      PATENT DAMAGES**

**5.1      INTRODUCTION**

You must decide the issue of damages.  Specifically, you must determine what amount of damages to award Power Integrations for Fairchild's direct infringement.  Also, if you find that Fairchild induced infringement of the '359 patent, you must also decide what amount of damages to award Power Integrations for the induced infringement.

The damages you award must be adequate to compensate Power Integrations for the infringement.  They are not meant to punish Fairchild.  Your damages award should put Power Integrations in approximately the same financial position that it would have been in had the infringement not occurred.

Power Integrations has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Power Integrations establishes that it more likely than not suffered.  Power Integrations must prove the amount of damages with reasonable certainty, but it need not prove the amount of damages with mathematical precision.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

I will now give you more detailed instructions regarding damages.

## 5.2    DATE DAMAGES BEGIN AND END

The period over which Power Integrations seeks to recover damages is from June 21, 2012 to the present.

### 5.3 REASONABLE ROYALTY

In this case, Power Integrations seeks a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. That right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in the negotiations. You should assume that both parties to the hypothetical negotiation believed the patent to be valid and infringed and that both parties were willing to enter into a license. You should also assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

A reasonable royalty is typically made up of a royalty base and a royalty rate that is applied to that base. There may be more than one way to calculate a royalty base and a royalty rate.

Finally, although evidence of the profits an alleged infringer made may be relevant to your determination of the royalty rate, the royalty rate need not be limited to the amount of profits the alleged infringer made.

**5.4 REASONABLE ROYALTY IS LIMITED TO THE INCREMENTAL VALUE ATTRIBUTABLE TO THE INFRINGING FEATURE**

Power Integrations is only entitled to a reasonable royalty attributable to the infringing features. The ultimate reasonable royalty award must be based only on the incremental value that the patented invention adds to the end product.

**5.5     NO DAMAGES WHERE FAIRCHILD'S PRODUCTS DO NOT ENTER THE UNITED STATES**

Power Integrations is not seeking, and should not be awarded, a royalty or any

compensation with respect to products-at-issue that are not imported into the United States or

sold, offered for sale, made, or used in the United States.

**5.6      FACTORS TO CONSIDER FOR REASONABLE ROYALTY**

In determining the reasonable royalty, you should consider all the facts known or available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in determining a reasonable royalty are:

1)      The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2)      The rates paid by the licensee for the use of patents comparable to the patent-in-suit.

3)      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4)      The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5)      The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6)      The effect of selling the patented product in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales.

7)      The duration of the patent-in-suit and the term of the license.

8)      The established profitability of any product made under the patents, its commercial success, and its current popularity.

9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor and the benefits to those who have used the invention.

11) The extent to which the licensee has made use of the invention and any evidence probative of the value of that use.

12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13) The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the licensee.

14) The opinion testimony of qualified experts.

15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a business proposition, to obtain a license to manufacture and sell a particular product embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors

that in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**6.     DELIBERATION AND VERDICT**

**6.1     INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

## 6.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek truth from the evidence in the case.

A form of verdict has been prepared for you.  I will review it with you in a moment.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

### 6.3 DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**6.4     SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat, or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

## 6.5    COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.