IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION and FAIRCHILD (TAIWAN) CORPORATION, | ) ) ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiffs, | ) | C.A. No. 12-540-LPS |
| | ) | |
| v. | ) | |
| | ) | |
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED FINAL PRETRIAL ORDER**

ASHBY & GEDDES
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888

*Of Counsel:*

Blair M. Jacobs
Christina A. Ondrick
Charles J. Hawkins
Robert J. Walters
Patrick J. Stafford
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 551-1950

*Attorneys for Plaintiffs*

Dated: April 17, 2015

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070

*Of Counsel:*

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

*Attorneys for Defendant*

{00976261;v1 }

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.  All statements herein are joint statements unless otherwise noted in brackets below.

## I.      Nature of the Case

This is an action for patent infringement.  Fairchild Semiconductor Corp. and Fairchild (Taiwan) Corp. (collectively, "Fairchild") alleges that Power Integrations, Inc. ("PI") infringes U.S. Patent Nos. 7,525,259 ("the '259 patent"), 7,286,123 ("the '123 patent"), and 7,259,972 ("the '972 patent"), (collectively, "the Fairchild Patents").  Fairchild alleges that PI's infringement of the '972 patent is willful.  PI alleges that Fairchild infringes U.S. Patent Nos. 6,229,366 ("the '366 patent"), 7,995,359 ("the '359 patent"), 7,952,895 ("the '895 patent"), 7,876,587 ("the '587 patent"), and 8,115,457 ("the '457 patent"), (collectively, "the PI Patents"). PI alleges that Fairchild's infringement of the '366 patent is willful.

PI denies Fairchild's allegations of infringement, asserts various defenses, and seeks declaratory judgments that the Fairchild Patents are invalid and not infringed by Power Integrations.  Fairchild denies PI's allegations of infringement, asserts various defenses, and seeks declaratory judgments that the PI's Patents are invalid and not infringed by Fairchild.

The technology in this case concerns integrated circuits, also known as "ICs" or chips, for use in power supplies for LED lighting applications, cell phones, tablets, and computers to name a few examples.

The issues to be tried in this case are raised in the following pleadings:

- Fairchild's Amended Complaint [D.I. 9]

- PI's Answer to the First Amended Complaint and Counterclaims [D.I.11]

- Fairchild's Answer to PI's Counterclaims [D.I. 57]

- PI's Answer to Fairchild's Counterclaims [D.I. 65]

## II.    Jurisdiction

This action arises under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq*.

Plaintiff Fairchild Semiconductor Corp. is incorporated under the laws of the state of

Delaware, with its headquarters located at 3030 Orchard Parkway, San Jose, California 95134.

Plaintiff Fairchild (Taiwan) Corp. is incorporated under the laws of Taiwan, with its

headquarters located at 6F-1, 3 Yuanqu St., Nangang Dist., Taipei City, Taiwan.

Defendant Power Integrations, Inc. is incorporated under the laws of the state of

Delaware, and has a regular and established place of business at 5245 Hellyer Avenue, San Jose,

California 95138.

The jurisdiction of the Court is not disputed and is based on the provisions of 28 U.S.C.

§§ 1331 and 1338(a).  Neither party disputes personal jurisdiction or venue.

## III.    Facts

### A.    Uncontested Facts

The facts stated in **Exhibit 1** are not disputed or have been agreed to or stipulated to by

the parties.  Any party, with prior notice to all other parties, may read any or all of the

uncontested facts to the jury or Court, and will be charged for the time used to do so.

### B.    Contested Facts

Fairchild's statement of issues of fact that remain to be litigated and expected proof is

attached as **Exhibit 2A**.  PI's statement of issues of fact that remain to be litigated and expected

proof is attached as **Exhibit 2B**.

## IV.    Issues of Law and Citation of Authorities

Fairchild's statement of issues of law that remain to be litigated and citation of authorities

relied upon is attached as **Exhibit 3A**.  PI's statement of issues of law that remain to be litigated

and citation of authorities relied upon is attached as **Exhibit 3B**.

## V.     Witnesses

Unless the parties reach an alternative agreement, the order of the presentation of evidence will follow the burden of proof.  Any witness not listed on any party's witness list will be precluded from testifying, absent good cause shown.

No party shall be required to present live testimony from any witness on its list of live witnesses.  However, each party will provide the other with a final list of witnesses it intends to call live at the trial by May 19, one week before the start of trial, to provide the parties with sufficient time to provide designations of prior testimony for any witness originally identified for live testimony.  Once a party has identified a witness on its final list, the party must call the witness or otherwise make them available to be called by the other party.

### A.     Witness Lists

Fairchild's witness list, including (1) its list of expert witnesses and a brief statement of anticipated subject matter and (2) its list of non-expert witnesses, including whether those witnesses will be called live at trial or will instead testify by designation, is attached as **Exhibit 4A**.  PI's witness list, including (1) its list of expert witnesses and a brief statement of anticipated subject matter and (2) its list of non-expert witnesses, including whether those witnesses will be called live at trial or will instead testify by designation, is attached as **Exhibit 4B**.

### B.     Stipulated Procedures

Each party will provide the other party with a list, in order of presentation, of witnesses it intends to call live on direct examination by 7:00 p.m. two nights before those witnesses are intended to testify in court.  No deviations from this notice shall be permitted except by agreement of the parties or for good cause shown.

For those witnesses whose deposition or prior trial testimony will be played or read to the

jury, the parties shall be permitted to make transition statements to introduce the witnesses and their role in the litigation.  However, counsel shall not be permitted to argue or comment on the evidence during transition statements.

No witness called by a party in support of its direct case shall be permitted to testify at trial unless identified in this Order or unless the Court determines that in the interests of justice such witness should be called.

To the extent a party requests to present a witness only one time at trial due to limited availability **[Fairchild's proposal: and subject to agreement by the parties] / [PI's proposal:** or otherwise subject to agreement by the parties], the scope of cross-examination shall not be limited by the scope of the witness's direct testimony, and the witness can be examined on any issue relevant to the issues being tried to the jury.  However, if a party states its intention to call a witness again based on the order of presentation of proofs at trial, then cross-examination should be limited to the scope of the direct testimony.

**C.      Prior Testimony**

On April 15, 2015, the parties stipulated to the following dates to complete the process for designating prior testimony:

April 20, 2015: Parties to provide its deposition designations.

April 27, 2015: The parties exchange counter designations and objections.

May 1, 2015: Rebuttal designations (for completeness only) and objections to the counter designations.

May 4, 2015.  The foregoing submitted to the Court.

The May 4, 2015 submission shall contain the maximum universe of testimony designations, counter-designations, and objections to admission of testimony; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good

cause shown.  [**Fairchild's statement and proposal:** While Fairchild has identified more than 15 individuals whose testimony may be presented by designation, it fully intends to work to focus its list before trial.  At trial, each side will be limited to a total of fifteen designated witnesses from whom prior testimony may be introduced.  **PI's proposal**: Both parties' accompanying witness lists identify more than 15 individuals whose testimony may be presented by designation.  The parties will undoubtedly continue to work together to focus their proofs before trial, particularly once they receive the Court's guidance and rulings in the context of the pretrial conference, but Fairchild's demand for an arbitrary cap on witnesses at this point is unfounded and inconsistent with its own submissions.]

Each party will provide the other with a list of final designations (from the previously designated testimony) that it intends to introduce by 7:00 p.m. three days before the designations are intended to be used in court.  The parties will then meet and confer by 9:30 p.m. that same night to confirm the status with respect to any previously designated counter-designations and objections.  New materials may not be added without good cause.

Once the parties have met and conferred, they will submit any remaining disputed designations for the Court's consideration by 9:00 a.m. the following day: the party introducing the prior testimony shall submit, on behalf of all parties: (i) a copy of the entire testimony of the witness at issue, clearly highlighting the designations and counter-designations; and (ii) a cover letter clearly identifying any pending objections, as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the testimony or waiver of objection to the use of the testimony.

All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the testimony is read or viewed at trial.

The manner of using counter-designations at trial shall be in the same manner (video versus read transcripts) as that used for the designation sought to be rebutted, such that all designations, counter-designations, and cross-designations will be played or read to the jury, as the case may be, as one consecutive segment in the order the testimony appears in the transcript. If a party offers video testimony, that party shall be responsible for including video portions of counter-designated testimony that is designated as described in this section.  If a party does not offer video testimony, that party need not offer video of the other party's counter-designations.

At the time a witness is called to testify by designation, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter- designations that will be read or played.  The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

**D.     Impeachment with Prior Inconsistent Testimony**

The Court will allow objections to the use of deposition and other prior testimony for impeachment purposes, including objections based on lack of completeness and/or lack of inconsistency.

**E.     Objections to Expert Testimony**

**[Fairchild's proposal:** The Court will defer ruling on all objections to expert testimony as beyond the scope of prior expert disclosures unless renewed in writing following trial, subject to the proviso that a party prevailing on such a post-trial objection will be entitled to have all of its costs associated with a new trial paid for by the party that elicited the improper expert testimony at the earlier trial.  Notwithstanding the foregoing, nothing prevents the Court to rule

on the parties' demonstratives as otherwise stated herein.

PI's proposal: The Court should rule on objections to expert testimony as beyond the scope of prior expert disclosures in the context of resolving objections over the parties' proposed exhibits or demonstratives for that expert or, if necessary, in real time, and the party offering the testimony has the burden of showing where the testimony was previously disclosed.]

### F.    Sequestration of Witnesses

The parties agree that pursuant to Fed. R. Evid. 615, the Court should prevent fact witnesses from hearing the testimony of other witnesses.  The parties further agree that in accordance with provision (2) of Rule 615, this exclusion rule will not apply to the officer or employee designated by each party as its representative.  The parties further agree that expert witnesses not be excluded for either fact or expert testimony.

## VI.    Exhibits and Demonstrative Exhibits

### A.    Exhibits

Fairchild's list of pre-marked exhibits to be offered at trial is attached hereto as **Exhibit 5A**.  PI's list of pre-marked exhibits to be offered at trial is attached hereto as **Exhibit 5B**.  The parties shall exchange objections to exhibits on April 28, 2015.  The parties shall submit final exhibit lists and objections to exhibits on May 4, 2015.

[**Fairchild's proposal:** The May 4, 2015 submission will contain the maximum universe of exhibits to be used in any party's case-in-chief, as well as all objections to the admission of such exhibits, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown.]  [**PI's proposal:** A party may not use in its case-in-chief <u>or in its rebuttal case</u> any exhibit not identified on these exhibit lists, without approval of all parties or leave of the Court, on good cause shown.]

Exhibits not listed will not be admitted unless good cause is shown.  Exhibits not

objected to will be received into evidence without the need for additional foundation testimony, provided they are shown to a witness.

The parties will meet and confer in a further effort to refine and shorten their exhibit lists and to resolve objections without the Court's intervention. Each party's objections to the other party's exhibits will be noted in each final exhibit list, and any exhibit identified in any party's final exhibit list that is not objected to is deemed to be admissible, except that relevance, hearsay, and Fed. R. Evid. 105 and 403 objections are preserved. The parties stipulate to the authenticity of all exhibits in the final, filed exhibit lists with the exception of those identified (with specific reasons for the failure to so stipulate).

The parties will offer as exhibits at trial one or more of the exhibits set forth on their respective final exhibit lists. These lists will include the exhibit number to be used at trial and a description sufficient to identify the exhibit, i.e., by production number or citation. [**Fairchild's proposal:** These exhibit lists may include exhibits and potential rebuttal exhibits that may not necessarily be introduced into evidence.] In its direct case, a party may offer any exhibit appearing on either party's exhibit list.

To the extent it has not already done so, each party shall provide to the other party, for delivery on May 21, 2015 a copy of its exhibits with exhibit labels or make available for inspection any unique or physical exhibits.

On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

Legible photocopies of United States patents and the content of PTO file histories may be offered and received in evidence in lieu of certified copies thereof. The parties stipulate that, as to patents previously identified, the dates of filing and issuance shall be deemed to be shown on

the face of the patent, subject to the right of the party against whom it is offered to adduce evidence to the contrary.

Legible photocopies of printed publications (with agreed upon English translations thereof) may be offered and received in evidence in lieu of originals thereof.

The parties stipulate that a duplicate of any document or photograph may be marked for identification, and, if otherwise admissible, offered and received into evidence with the same force and effect as the original, subject to any and all objections as could be made to the original, and on condition that the original of any such duplicate, if within the custody or control of a party, be available for inspection at the trial upon reasonable notice.

Any documents or prior sworn testimony or portion thereof, not specifically identified herein or offered into evidence, may still be used at trial for purposes of cross-examination, impeachment or rehabilitation, if otherwise competent for such purposes, absent any order to the contrary (e.g. materials the Court has struck from the case).  [**Fairchild's proposal:** Purported impeachment material (e.g., a document or prior sworn testimony) may not be shown to the jury until after a proper showing of impeachment has been established. / **PI's Proposal:** Impeachment material (e.g., a document or prior sworn testimony) may be shown to the jury at the time of impeachment.]

Counsel shall be permitted to move, and the Court will admit if appropriate, evidence on the morning following use of the evidence.

The parties will exchange demonstratives to be used in opening statements by 8:00 p.m. two nights before opening statements.  An identification of any trial exhibits to be used in opening will be exchanged at the same time.  The parties will provide any objections to such demonstratives or trial exhibits by 12:00 p.m (noon) on the day before opening statements, and

the parties shall thereafter meet and confer and present any unresolved objections to the Court prior to opening statements.

Unless agreed to otherwise, each party will provide to the other party a written list of exhibits and copies of demonstratives, by number and witness(es) for whom the exhibits and demonstratives will be used, that it intends to use on direct examination in court, by 7:00 p.m. two nights before the trial day on which the exhibits and/or demonstratives are intended to be used and the witnesses are intended to be called.  The other party shall identify any objections to exhibits or demonstratives the following day by 9:00 a.m., and the parties will meet and confer regarding any unresolved objections by 7:00 p.m. that evening and will present any unresolved issues to the Court the morning of the proposed use of the disputed exhibit and/or demonstrative. The parties hereby agree that, once confirmed, the list of exhibits and demonstratives to be used in direct examination may not be supplemented absent good cause.

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form.  However, for video or animations, the party seeking to use the demonstrative will provide it to the other side either on a DVD or CD or electronically.  For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use.  In addition, blow-ups or highlights of exhibits or parts of exhibits are not required to be provided to the other side in advance of their use.

## VII.    Damages

Fairchild seeks reasonable royalty damages for PI's infringement of the Fairchild Patents, trebled damages for PI's willful infringement of Fairchild's '972 patent, an accounting to

determine the damages to be awarded to Fairchild—including an accounting for infringing sales not presented at trial, pre-judgment and post-judgment interest, taxable costs, and attorney's fees and nontaxable costs.

PI seeks reasonably royalty damages for Fairchild's infringement of the PI Patents, treble damages for Fairchild's willful infringement of PI's '366 patent, an accounting, pre- and post-judgment interest, attorneys' fees, and costs.

## VIII.   Bifurcated Trial

The parties do not seek a bifurcated trial.

## IX.   Motions *In Limine*

The briefing for the parties' motions *in limine* is attached hereto as follows:

- The briefing for Fairchild's Motion *in Limine* No. 1 is attached as **Exhibit 6A**

- The briefing for Fairchild's Motion *in Limine* No. 2 is attached as **Exhibit 6B**

- The briefing for Fairchild's Motion *in Limine* No. 3 is attached as **Exhibit 6C**

- The briefing for PI's Motion *in Limine* No. 1 is attached as **Exhibit 7A**

- The briefing for PI's Motion *in Limine* No. 2 is attached as **Exhibit 7B**

- The briefing for PI's Motion *in Limine* No. 3 is attached as **Exhibit 7C**

## X.   Discovery

Each party has completed fact discovery, with the exception of an outstanding deposition of a new Fairchild witness, Mr. Shah.  Fairchild reserves the right to supplement its exhibit list in view of that deposition.  PI does not believe Fairchild has any rights to reserve with respect to its new witness, but PI reserves the right to supplement its witness list, prior testimony designations, and exhibit list in view of the deposition of Mr. Shah.

Expert damages discovery is still under way; revised rebuttal reports will be served on

May 1, with expert damages depositions to be completed shortly thereafter.

## XI. Number of Jurors

There shall be eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.

## XII. Non-Jury Trial

This is a jury trial.

[**Fairchild's statement:** The only issue to be decided by the Court during trial is the objective prong of the willful infringement inquiry, which should be decided before the presentation of evidence on the subjective prong of willful infringement.  *See infra* Section XVI.A.  After trial, the Court will need to address the issues of enhanced damages, injunction, interests, taxable costs, attorney's fees, and non-taxable costs.

Fairchild has moved for summary judgment of no willful infringement.  (D.I. 193.)  Should the Court grant that motion, then Fairchild does not propose any pre-trial willfulness briefing.  Should the Court decline to grant that motion, then Fairchild proposes that the objective prong of PI's willful infringement claim be decided separately by the Court *before* the presentation of evidence on the subjective prong.  The case law is unequivocal that the judge, not the jury, determines the objective prong of willfulness and whether an "an accused infringer's reliance on a particular issue or defense is reasonable." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1006-07 (Fed. Cir. 2012); *see also id.* at 1008 (whether the objective threshold is met is a legal question which "should *always* be decided as a matter of law *by the judge*").  As a result, the subjective requirement of willfulness "must be addressed *only after* the objective requirement is satisfied." *Bard*, 682 F.3d 1006-07.

Allowing the presentation of evidence related to the subjective prong before any ruling

on the objective prong would permit the admission of irrelevant and prejudicial evidence that

would otherwise be excluded by Rules 402 and 403 of the Federal Rules of Civil Procedure.  By

deciding the objective prong prior to trial, the Court would dispose of such prejudicial evidence,

and thereby eliminate the disputes that would inevitably arise by their attempted introduction.

Allowing evidence related to the subjective prong only after a ruling from the Court that the jury

should hear evidence on the subjective prong thus saves judicial and party resources, as time will

not be wasted on issues the jury will never be asked to decide as the factfinder.

      **Fairchild's proposal:**

For the proposed pre-trial briefing on PI's and Fairchild's willful infringement claims,

Fairchild proposes the following schedule:

- Opening briefs shall be filed on May 8, 2015 and be no more than 10 pages.  Along with their Opening  Briefs, each party shall provide Proposed Findings of Fact, separately stated in numbered paragraphs, constituting a detailed listing of the relevant material facts the party believes it has proven, in a simple narrative form, along with citations to the record.  The proposed Findings of Fact shall be limited to a maximum of 10 pages. No separate Conclusions of Law shall be filed.

- Responsive briefs shall be filed on May 15, 2015 and be no more than 10 pages; and

- Hearing on the objective prong of each party's willfulness claim on: May 20, 2015.

      **Power Integrations' statement and proposal:** The jury should decide the issue of

willfulness on both parties' claims in the first instance after hearing their presentations on the

merits, and the Court can thereafter address the sufficiency of the evidence on JMOL.]

## XIII.   Length of Trial

The trial will be timed.   [**Fairchild's proposal:** Unless otherwise ordered, time will be

charged to a party for its opening statement, direct and redirect examinations of witnesses it

calls, cross-examination of witnesses called by any other party, closing argument, its argument

on any motions for judgment as a matter of law, and all sides' argument on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.] / [**PI's proposal:** Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, closing argument, and its argument on any motions for judgment as a matter of law.]

The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation.  Considering the Court's procedures for counting time, and considering the nature and extent of the parties' disputes, the parties request [**Fairchild's proposal:** 23 hours per side] / [**PI's proposal:** 20 hours per side] for their trial presentations.

## XIV.   Motions for Judgment as a Matter of Law

The parties agree that for motions for judgment as a matter of law (JMOL) generally, the party moving for JMOL will so move orally during a break at the close of all evidence, outside the presence of the jury.  The Court can then decide, based on the motions presented orally, whether to entertain argument or further briefing.  The parties also agree that any renewed JMOL motions will be addressed in connection with the schedule for post-trial briefing to be set by the Court, as proposed in Section XVI.B herein.

## XV.   Amendments of the Pleadings

Neither party intends to seek an amendment to the pleadings at this time.

## XVI.   Additional Matters

### A.      Order of Proof at Trial

The order of proof will be:

- Fairchild's case-in-chief on infringement, damages, and willfulness for the Fairchild

Patents;

- PI's response on non-infringement, damages, willfulness, and invalidity for the Fairchild Patents;

- Fairchild's response on validity and rebuttal on infringement, damages, and willfulness for the Fairchild patents;

- PI's case-in-chief on infringement and damages and for the PI Patents;

- Fairchild's response on non-infringement, damages, and invalidity for the PI Patents;

- PI's response on validity and rebuttal on infringement and damages of the PI patents.

**B.    Post-Trial Motions**

The briefing schedule for all post-trial motions, including renewed motions for judgment as a matter of law and motions for new trial, is as follows:

- Opening briefs shall be filed by August 12, 2015;

- Responsive briefs shall be filed by September 14, 2015; and

- Reply briefs shall be filed by October 5, 2015.

**C.    Jury Notes**

The parties agree that the jurors should be permitted to take handwritten notes during the presentations of the parties and that jurors be permitted to bring these handwritten notes, along with a notebook containing the asserted patents (as provided by the parties) into the deliberation room. The parties further propose that the jurors be instructed not to share the notebooks with each other (though they can discuss the contents of their notes) and that the notebooks be collected and destroyed after the verdict without review.

**D.    Handling of Confidential Information at Trial**

The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party requests that a particularly sensitive portion be sealed.  If a party makes such a request, subject to the Court's approval, the courtroom shall be cleared of those

individuals not qualified under the Protective Order entered in this case, except that each party

may designate one corporate representative who may remain in the courtroom throughout the

entirety of trial.  Each party must notify the opposing party of the identity of this representative

before trial.

### E.      Setup of Electronic and Computer Devices

The parties request that the Court grant access to the Courtroom on the day before trial

begins for the purposes of setting up electronic and computer devices.  To the extent both parties

are utilizing common equipment in the Courtroom, the parties will share the cost of that

equipment.

### F.      Federal Judicial Center Introduction to the Patent System Video

The parties stipulate that the Federal Judiciary Center video will be played as part of the

Court's preliminary jury instructions.

### G.      List of Other Matters for Resolution by the Court

**Fairchild's Statement:** Fairchild reserves the right to supplement its list of other matters

given PI's delay in providing its disclosures related to this Pretrial Order and the associated

disclosure rules, including designations and exhibits, and in view of other case developments.

When Fairchild receives PI's deposition designations, Fairchild may identify additional matters

for resolution by the Court.  Fairchild reserves the right to address in rebuttal to all of the issues

raised in PI's Statement of other matters for resolution by the Court.  Fairchild identifies the

following additional matters for resolution for the Court:

1.   The Court should preclude any reference to the findings and results of the parties'
     previous litigations, including district court cases, ITC proceedings, and appeals.
     These proceedings are irrelevant and highly prejudicial due to the high probability of
     jury confusion.

2.   The parties should not be permitted to make arguments or introduce evidence that
     runs contrary to the Court's claim construction rulings.

3. The Court should preclude PI and Dr. Kelley from making a blanket and unsupported assertion that PI's accused products do not infringe because they lack temperature compensation.  The Court's *Daubert* ruling only permitted such testimony if tied to the adjustment of LED current per claim element 8(c) of the '123 patent, and any broader arguments would impermissibly alter the inventive concept.

4. The Court should preclude PI's experts from testifying beyond the scope of their reports and contradicting the Court's previous orders.

5. PI should be precluded from presenting fact testimony on work allegedly performed during the gap periods or delay associated with its conception, reduction to practice, and ultimate filing of the application of the '457 patent.  Such information was not provided during the course of fact discovery and it would be prejudicial to Fairchild to permit PI to ambush Fairchild with such testimony at trial, particularly because such testimony could only be speculative and without evidentiary foundation.  Moreover, PI's expert, Dr. Kelley, was not aware of such evidence so no predicate exists for his speculative testimony concerning activities occurring during any gap period.

6. PI should be precluded from offering unsupported or hearsay testimony about what value customers give to the value of a patented invention.  PI failed to seek or obtain such evidence from customers during discovery, and should not now be permitted to bootstrap such evidence into the record through self-interested testimony by its own personnel.

7. PI should be precluded from raising doctrine equivalents of arguments for the following claim elements as prosecution history estoppel bars PI's assertion of equivalents for "soft start circuit means" in all asserted claims of the '366 patent; "current input circuit" in all asserted claims of the '587 patent; and "current limit" in all asserted claims of the '587 patent.

8. PI should be precluded from referencing past findings concerning alleged "copying" by Fairchild.  Such findings occurred with regard to different Fairchild products and are not related to any patent at issue in this case.  Power Integrations has a history of parading this contention out of context in a variety of forums, and such evidence lacks probative value and is extremely prejudicial under the circumstances unique to this case.

9. PI has included on its exhibit list documents that may contain the results of prior litigations or other information not relevant to this case. Fairchild reserves the right to present redacted versions of these documents at trial that omit references to irrelevant information.  Fairchild reserves the right to seek redaction from all documents containing any mention of prior litigations, those results, or other irrelevant information. If redactions cannot be made in a non-prejudicial manner, Fairchild reserves the right to seek exclusion of all such documents at trial.  Any

disputes that arise regarding redactions will be handled by the process set forth in handling disputes on use of trial exhibits and demonstratives set forth in Section VI.A of this document.  On the morning of the proposed use of such exhibits, Fairchild proposes submitting such documents to the Court for evaluation and a ruling on the extent of appropriate redactions.

10. The parties should not be permitted to reference the assertion and withdrawal of U.S. Patent No. 7,616,461 from this case. This patent is not being asserted at trial and any mention of the patent's assertion and withdrawal from this case would be irrelevant and prejudicial.

**PI's Statement**: PI reserves the right to supplement its submissions given Fairchild's

delays and repeated, last-minute supplementations of its pretrial disclosures, including

designations and exhibits.  PI identifies the following additional miscellaneous issues for

discussion with the Court during the pretrial conference:

1. Fairchild should not be permitted to introduce affirmative testimony taken from its own employees during the course of the parties' litigation except upon an affirmative showing of unavailability.

2. In view of the Court's ruling with respect to Fairchild's '915 patent (*i.e.*, that it is not prior art to PI's '457 patent), PI would like to confirm at the pretrial conference that Fairchild will not be offering evidence regarding work done overseas on what ultimately became the '915 patent, as such evidence is irrelevant, confusing, and might mislead jurors as to work that cannot and does not constitute prior art to Power Integrations' asserted '457 patent.

3. Nearly every one of Fairchild's allegedly embodying products in this case has been found to infringe one or more of PI's patents in prior litigation.  The fact that Fairchild's products incorporate PI's technology is thus relevant to damages in this case (due to the requirement of apportionment).  It will also likely be relevant to rebut attempts by Fairchild to paint itself as an "innovator" with products that have succeeded in the marketplace because of purported innovations by Fairchild (and its predecessor System General).  Given the sensitivity of placing before the jury prior infringement findings, PI would like to discuss this issue with the Court at the pretrial conference so there is an agreed procedure in place for handling this evidence.

4. Given the number of patents and claims at issue in this case, the parties and the Court should discuss an appropriate manner to streamline the parties' proofs, including a reduction in the number of claims to be tried to the Jury.

5. Fairchild's exhibit list suggests that Fairchild once again intends to seek to introduce testimony at trial regarding its predecessor System General's IPO and shopping itself

around prior to the ultimate acquisition by Fairchild, including SG's discussions with Power Integrations about a potential acquisition.  That recitation only tells half the story, however, as SG was embroiled in litigation with Power Integrations at the time, and SG was found to infringe as a result of that litigation.  If Fairchild is permitted to make use of its "acquisition" story or to suggest at trial that Power Integrations wanted to acquire SG, fairness dictates that Power Integrations should be able to respond with the complete sequence of events – that SG shopped itself to Power Integrations as part of an effort to resolve the parties' litigation, that SG was found to infringe Power Integrations' patents, and that Power Integrations thought SG's asking price was overinflated under the circumstances.

6.  Fairchild should be precluded from making any reference to Power Integrations' actions or practices regarding the filing of continuation patent applications, including any effort to elicit testimony or suggest anything regarding Power Integrations' motives in filing continuations.  During the parties' prior trial, Fairchild was successfully able to use such arguments and innuendo to convince the jury to rule against Power Integrations on an issue that Fairchild did not contest (the infringement of Power Integrations' '605 patent), which the Court ultimately had to correct in the context of post-trial motions.

7.  Fairchild's defenses to PI's claims of infringement overlap completely for a number of representative product groupings, which should allow for the streamlined proofs and a simplified verdict form at trial.  PI believes it would be appropriate to address the best manner in which to address the issue in view of the actual defenses at issue for the upcoming trial.

## XVII.  Settlement

The parties have engaged in a good faith effort to explore the resolution of the controversy by settlement, but have been unable to reach any agreement that would resolve this matter.  In particular, the business representatives from the parties most recently engaged in settlement discussions in March 2015, and such discussions are ongoing.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED: _____


_____
CHIEF, UNITED STATES DISTRICT JUDGE


ASHBY & GEDDES

/s/ Lauren E. Maguire
_____
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone:  (302) 654-1888

Of Counsel:

Blair M. Jacobs
Christina A. Ondrick
Charles J. Hawkins
Robert J. Walters
Patrick J. Stafford
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone:  (202) 551-1950


Attorneys for Plaintiffs


FISH & RICHARDSON P.C.

/s/ William J. Marsden, Jr.
_____
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070

Of Counsel:

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

Attorneys for Defendant

**Exhibit 1**

**Uncontested Facts**

1.      Fairchild Semiconductor Corporation (referred to as "Fairchild Semiconductor") is incorporated under the laws of the state of Delaware, and is headquartered in San Jose, California.

2.      Fairchild (Taiwan) Corp. (referred to as "Fairchild Taiwan") is incorporated under the laws of Taiwan, and is headquartered in Taipei, Taiwan.  Fairchild Taiwan is a wholly owned subsidiary of Fairchild Semiconductor.

3.      The Fairchild Patents in this case are United States Patent No. 7,525,259 (referred to as "the '259 patent"), United States Patent No. 7,286,123 (referred to as "the '123 patent"), and United States Patent No. 7,259,972 (referred to as "the '972 patent").

4.      The '259 patent is titled "Primary Side Regulated Power Supply System with Constant Current Output."  The '259 patent issued on April 28, 2009, names Michael Weirich as the inventor, and is based on a patent application filed on February 7, 2006.

5.      Fairchild Semiconductor is the owner of the '259 patent.

6.      The '123 patent is titled "LED Driver Circuit Having Temperature Compensation."  The '123 patent issued on October 23, 2007, names Ta-yung Yang as the inventor, and is based on a patent application filed on December 13, 2005.

7.      The '972 patent is titled "Primary-Side-Control Power Converter Having a Switching Controller Using Frequency Hopping and Voltage and Current Control Loops."  The '972 patent issued on August 21, 2007, names Ta-yung Yang as the inventor, and is based on an application filed on October 7, 2004.

8.      Fairchild Taiwan is the owner of the '123 and '972 patents.

9.      PI has been aware of the '259 patent since May 1, 2012, when Fairchild filed its complaint.

10.     PI has been aware of the '123 patent since May 1, 2012, when Fairchild filed its complaint.

11.     Power Integrations, Inc. (referred to as "PI") is incorporated under the laws of the state of Delaware, and is headquartered in San Jose, California.

12.     The PI Patents in this case are United States Patent No. 6,229,366 (referred to as "the '366 patent"), United States Patent No. 7,995,359 (referred to as "the '359 patent"), United States Patent No. 7,952,895 (referred to as "the '895 patent"), United States Patent No. 7,876,587 (referred to as "the '587 patent"), and United States Patent No. 8,115,457 (referred to as "the '457 patent").

13.     The '366 patent is titled "Off-Line Converter with Integrated Softstart and Frequency Jitter."  The '366 patent issued on May 8, 2001, names Balu Balakrishnan, Alex Djenguerian, and Leif Lund as the inventors, and is based on a patent application filed on May 18, 1998.

14.     The '359 patent is titled "Method and Apparatus for Implementing an Unregulated Dormant Mode with an Event Counter in a Power Converter."  The '359 patent issued on August 9, 2011, names Alex Djenguerian and Leif Lund as the inventors, and is based on a patent application filed on February 5, 2009.

15.     The '895 patent is titled "Method and Apparatus for Implementing an Unregulated Dormant Mode in a Power Converter."  The '895 patent issued on May 31, 2011, names Michael Matthews as the inventor, and is based on a patent application filed on May 29, 2008.

16.     The '587 patent is titled "Method and Apparatus Providing a Multi-Function Terminal for a Power Supply Controller."  The '587 patent issued on January 25, 2011, names Balu Balakrishnan, Alex Djenguerian, and Leif Lund as the inventors, and is based on a patent application filed on September 24, 1999.

17.     The '457 patent is titled "Method and Apparatus for Implementing a Power Converter Input Terminal Voltage Discharge Circuit."  The '457 patent issued on February 14, 2012, names Balu Balakrishnan, David Kung, Raymond Kenneth Orr, and Michael Matthews as the inventors, and is based on a patent application filed on July 31, 2009.

18.     PI is the owner of the '366, '359, '895, '587, and '457 patents.

**Exhibit 2A**

**Fairchild's Statement of Issues of Fact that
Remain to be Litigated and Expected Proof**

Fairchild expects that it will present the issues of fact listed below at trial. To the extent

that any issues of law set forth in Fairchild's statement of issues of law may be considered issues

of fact, Fairchild incorporates those portions by reference. These issues of fact may change based

on the Court's decisions on certain motions *in limine*.

## I.   THE FAIRCHILD PATENTS

### A.   PI's Infringement of the Fairchild Patents

The evidence presented by Fairchild will demonstrate that PI's accused products infringe

the asserted claims of the Fairchild Patents, U.S. Patent Nos. 7,525,259 ("the '259 patent"),

7,286,123 ("the '123 patent"), and 7,259,972 ("the '972 patent").  The following factual issues

with respect to PI's infringement of the Fairchild Patents remain to be determined at trial:

#### 1.   The '259 Patent

##### a.   Direct Infringement

1.   Whether Fairchild has proven by a preponderance of the evidence that PI directly,
literally infringes the '259 patent.

2.   Whether Fairchild has proven by a preponderance of the evidence that PI directly
infringes the '259 patent under the doctrine of equivalents.

##### b.   Indirect Infringement

3.   Whether Fairchild has proven by a preponderance of the evidence that a third
party has directly, literally infringed the '259 patent.

4.   Whether Fairchild has proven by a preponderance of the evidence that a third
party has directly infringed the '259 patent under the doctrine of equivalents.

5.   Whether Fairchild has proven by a preponderance of the evidence that PI
intentionally engaged in acts that actually induced any such direct infringement
by a third party.

6.      Whether Fairchild has proven by a preponderance of the evidence that PI was aware of the '259 patent.

7.      Whether Fairchild has proven by a preponderance of the evidence that PI induced infringement of the '259 patent.

8.      Whether Fairchild has proven by a preponderance of the evidence that PI is liable for contributory infringement of the '259 patent.

## 2.      The '123 Patent

### a.      Direct Infringement

9.      Whether Fairchild has proven by a preponderance of the evidence that PI directly, literally infringes the '123 patent.

10.     Whether Fairchild has proven by a preponderance of the evidence that PI directly infringes the '123 patent under the doctrine of equivalents.

### b.      Indirect Infringement

11.     Whether Fairchild has proven by a preponderance of the evidence that a third party has directly, literally infringed the '123 patent.

12.     Whether Fairchild has proven by a preponderance of the evidence that a third party has directly infringed the '123 patent under the doctrine of equivalents.

13.     Whether Fairchild has proven by a preponderance of the evidence that PI intentionally engaged in acts that actually induced any such direct infringement by a third party.

14.     Whether Fairchild has proven by a preponderance of the evidence that PI was aware of the '123 patent.

15.     Whether Fairchild has proven by a preponderance of the evidence that PI induced infringement of the '123 patent.

16.     Whether Fairchild has proven by a preponderance of the evidence that PI is liable for contributory infringement of the '123 patent.

## 3.      The '972 Patent

### a.      Direct Infringement

PI is precluded from re-litigating the issue of direct infringement, under the doctrine of

equivalents, of PI's LinkSwitch-II in a power supply with a transformer.  *See* D.I. 191*; see also*

Exhibit 1 (Uncontested Facts).  To the extent the Court finds otherwise, the following factual

issues would be determined at trial:

17.    Whether Fairchild has proven by a preponderance of the evidence that PI directly
       infringes the '972 patent under the doctrine of equivalents.

### b.    Indirect Infringement

18.    Whether Fairchild has proven by a preponderance of the evidence that a third
       party has directly infringed the '972 patent under the doctrine of equivalents.

19.    Whether Fairchild has proven by a preponderance of the evidence that PI
       intentionally engaged in acts that actually induced any such direct infringement
       by a third party.

20.    Whether Fairchild has proven by a preponderance of the evidence that PI was
       aware of the '972 patent.

21.    Whether Fairchild has proven by a preponderance of the evidence that PI induced
       infringement of the '972 patent.

### c.    Willfulness

22.    Whether Fairchild has proven by clear and convincing evidence that PI's
       infringement was willful.

## B.    <u>Validity of the Fairchild Patents</u>

The following factual issues with respect to the validity of the Fairchild Patents remain to

be determined at trial.

### 1.    The '259 Patent

1.    Whether PI has proven by clear and convincing evidence that the '259 patent is
      anticipated by U.S. Patent No. 6,862, 194 ("Yang '194").

2.    Whether PI has proven by clear and convincing evidence that the '259 patent is
      anticipated by the '972 patent.

3.    Whether PI has proven by clear and convincing evidence that the '259 patent is
      anticipated by U.S. Patent No. 7,352,595 ("Yang '595").

4.    Whether PI has proven by clear and convincing evidence that the '259 patent is
      anticipated by U.S. Patent No. 7,061,780 ("Yang '780").

5.      Whether PI has proven by clear and convincing evidence that the '259 patent is anticipated by the LinkSwitch 520 Datasheet ("LNK520").

6.      Whether PI has proven by clear and convincing evidence that the '259 patent is anticipated by the TEA1401T Datasheet ("TEA1401T").

7.      The level of ordinary skill in the art at the time of the invention of the '259 patent.

8.      The scope and content of the prior art asserted by PI.

9.      Whether PI has proven by clear and convincing evidence that the '259 patent is rendered obvious by Yang '194 in view of the knowledge of a person of ordinary skill in the art.

10.     Whether PI has proven by clear and convincing evidence that the '259 patent is rendered obvious by the '972 patent in view of the knowledge of a person of ordinary skill in the art.

11.     Whether PI has proven by clear and convincing evidence that the '259 patent is rendered obvious by Yang '595 in view of the knowledge of a person of ordinary skill in the art.

12.     Whether PI has proven by clear and convincing evidence that the '259 patent is rendered obvious by Yang '780 in view of the knowledge of a person of ordinary skill in the art.

13.     Whether PI has proven by clear and convincing evidence that the '259 patent is rendered obvious by LNK520 in view of the knowledge of a person of ordinary skill in the art.

14.     Whether PI has proven by clear and convincing evidence that the '259 patent is rendered obvious by TEA1401T in view of the knowledge of a person of ordinary skill in the art.

15.     Assuming that PI sets forth a prima facie case of obviousness, whether Fairchild can demonstrate the existence of any indicia that tend to show that the invention of the '259 patent was non-obvious, and if so, the extent of such evidence, and whether a nexus exists between such evidence and the claimed inventions.

16.     The differences between the '259 patent and the prior art asserted by PI as rendering the '259 patent obvious.

17.     Whether there is a reason that would have prompted a person of ordinary skill in the art to combine references relied on to assert invalidity under 35 U.S.C. § 103.

18.     Whether the references relied on to assert invalidity under 35 U.S.C. § 103 teach away from the invention of the '259 patent.

19. Whether there is a reason that would have prompted a person of ordinary skill in the art to modify the prior art asserted by PI to arrive at the invention claimed in the '259 patent.

### 2. The '123 Patent

20. Whether PI has proven by clear and convincing evidence that the '123 patent is anticipated by U.S. Patent No. 4,529,949 ("de Wit '949").

21. Whether PI has proven by clear and convincing evidence that the '123 patent is anticipated by U.S. Patent No. 4,952,949 ("Uebbing '949").

22. Whether PI has proven by clear and convincing evidence that the '123 patent is anticipated by U.S. Patent No. 6,362,578 ("Swanson '578").

### 3. The '972 Patent

PI is precluded from re-litigating the validity of the '972 Patent. *See* D.I. 191. To the extent the Court finds otherwise, the following factual issues would be determined at trial:

23. The level of ordinary skill in the art at the time of the invention of the '972 patent.

24. The scope and content of the prior art asserted by PI.

25. Whether PI has proven by clear and convincing evidence that the '972 patent is rendered obvious by TEA1401T in view of U.S. Patent No. 6,249,876 ("the '876 patent").

26. Whether PI has proven by clear and convincing evidence that the '972 patent is rendered obvious by the TEA1504 Datasheet ("TEA1504") in view of the '876 patent.

27. Assuming that PI sets forth a prima facie case of obviousness, whether Fairchild can demonstrate the existence of any indicia that tend to show that the invention of the '972 patent was non-obvious, and if so, the extent of such evidence, and whether a nexus exists between such evidence and the claimed inventions.

28. The differences between the '972 patent and the prior art asserted by PI as rendering the '972 patent obvious.

29. Whether there is a reason that would have prompted a person of ordinary skill in the art to combine references relied on to assert invalidity under 35 U.S.C. § 103.

30. Whether the references relied on to assert invalidity under 35 U.S.C. § 103 teach away from the invention of the '972 patent.

5

31.   Whether there is a reason that would have prompted a person of ordinary skill in the art to modify the prior art asserted by PI to arrive at the invention claimed in the '972 patent.

**C.    Relief Sought by Fairchild**

     **1.    Damages**

1.   The proper measure of damages due to Fairchild as result of PI's infringement.

2.   The amount of compensation, if any, to which Fairchild is entitled as a result of PI's infringement of the '259 patent.

3.   The amount of compensation, if any, to which Fairchild is entitled as a result of PI's infringement of the '123 patent.

4.   The amount of compensation, if any, to which Fairchild is entitled as a result of PI's infringement of the '972 patent.

**II.    THE PI PATENTS**

     **A.    Non-Infringement of the PI Patents**

The evidence presented by Fairchild will demonstrate that Fairchild's accused products do not infringe any asserted claim of the PI Patents, U.S. Patent Nos. 7,995,359, "("the '359 Patent"), 7,952,895 ("the '895 Patent"), 8,115,457 ("the '457 Patent"), 7,876,587 ("the '587 Patent"), and 6,229,366 ("the '366 Patent").  To that end, the following specific factual issues with respect to infringement remain to be determined at trial:

     **1.    No Direct Infringement**

1.   Whether PI has proven by a preponderance of the evidence that Fairchild has directly infringed the asserted claims of the PI Patents.

2.   Whether PI has proven by a preponderance of the evidence that Fairchild has directly infringed the asserted claims of the PI Patents under the doctrine of equivalents.

3.   If so, whether any such doctrine of equivalents position is barred by prosecution history estoppel.

## 2.      No Indirect Infringement

4.      Whether PI has proven by a preponderance of the evidence that a third party has directly infringed the asserted claims of the PI Patents by making, using, offering to sell, or selling in the United States, or importing into the United States, any product that literally meets each and every element of any asserted claim of the PI Patents.

5.      Whether PI has proven by a preponderance of the evidence that a third party has directly infringed the asserted claims of the PI Patents by making, using, offering to sell, or selling in the United States, or importing into the United States, any product that meets each and every element of any of the asserted claims of the PI Patents under the doctrine of equivalents.

6.      If so, whether any equivalents position is barred by prosecution history estoppel.

7.      Whether PI has proven by a preponderance of the evidence that Fairchild intentionally engaged in acts that actually induced direct infringement by a third party.

8.      Whether PI has proven by a preponderance of the evidence that Fairchild was aware of the PI Patents and, if determined to have been so aware, when Fairchild became so aware.

9.      Whether PI has proven by a preponderance of the evidence that Fairchild knew its actions would induce direct infringement the PI Patents.

10.     Whether PI has proven by a preponderance of the evidence that Fairchild offers to sell or sells within the United States or imports into the United States the accused Fairchild products for use in practicing the PI Patents.

11.     Whether PI has proven by a preponderance of the evidence that the accused Fairchild products constitute a material part of the inventions of the PI Patents.

12.     Whether PI has proven by a preponderance of the evidence that Fairchild knows that the accused Fairchild products are especially made or especially adapted for use in an infringement of the PI Patents.

13.     Whether PI has proven by a preponderance of the evidence that the accused Fairchild products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

## B.      <u>Invalidity of the PI Patents</u>

The following factual issues with respect to the invalidity of the PI Patents remain to be

determined at trial:

### 1.     The '366 Patent

14.     Whether the '366 patent is anticipated by the UCC 3800/1/2/3/4/5/BiCMOS CURRENT MODEL CONTROL ICs Application Note U-133 ("the U-133 application note").

15.     Whether the '366 patent is anticipated by the "A 5A 100KHZ Monolothic Bipolar DC/DC Converter" publication by F.J. DE Stasi et al. ("Stasi").

### 2.     The '359 Patent

16.     Whether the '359 patent is anticipated by U.S. Patent No. 7,498,788 ("the '788 patent").

17.     The level of ordinary skill in the art at the time of the invention of the '359 patent.

18.     The scope and content of the prior art.

19.     Whether the '359 patent is rendered obvious by the '788 patent in view of the knowledge of one of ordinary skill in the art.

20.     Assuming that Fairchild sets forth a prima facie case of obviousness, whether PI can demonstrate the existence of any indicia that tend to show that the invention of the '359 patent was non-obvious, and if so, the extent of such evidence, and whether a nexus exists between such evidence and the claimed inventions.

21.     The differences between the '359 patent and the prior art asserted by Fairchild as rendering the '359 patent obvious.

22.     Whether there is a reason that would have prompted a person of ordinary skill in the art to combine references relied on to assert invalidity under 35 U.S.C. § 103.

23.     Whether the references relied on to assert invalidity under 35 U.S.C. § 103 teach away from the invention of the '359 patent.

24.     Whether there is a reason that would have prompted a person of ordinary skill in the art to modify the prior art asserted by Fairchild to arrive at the invention claimed in the '359 patent.

25.     Whether claims 29 and 31 lack written description support under 35 U.S.C. § 112.

26.     Whether claims 29 and 31 are enabled under 35 U.S.C. § 112.

27.     Whether claims 29 and 31 are indefinite under 35 U.S.C. § 112.

28.     Whether the '359 patent is invalid as anticipated or obvious, as set forth in Fairchild's timely contentions and the Revised Expert Report of Dr. Wei.

### 3. The '895 Patent

29.     Whether the '895 patent is anticipated by U.S. Patent No. 7,498,788 ("the '788 patent").

30.     The level of ordinary skill in the art at the time of the invention of the '895 patent.

31.     The scope and content of the prior art.

32.     Whether the '895 patent is rendered obvious by the '788 patent in view of the knowledge of one of ordinary skill in the art.

33.     Assuming that Fairchild sets forth a prima facie case of obviousness, whether PI can demonstrate the existence of any indicia that tend to show that the invention of the '895 patent was non-obvious, and if so, the extent of such evidence, and whether a nexus exists between such evidence and the claimed inventions.

34.     The differences between the '895 patent and the prior art asserted by Fairchild as rendering the '895 patent obvious.

35.     Whether there is a reason that would have prompted a person of ordinary skill in the art to combine references relied on to assert invalidity under 35 U.S.C. § 103.

36.     Whether the references relied on to assert invalidity under 35 U.S.C. § 103 teach away from the invention of the '895 patent.

37.     Whether there is a reason that would have prompted a person of ordinary skill in the art to modify the prior art asserted by Fairchild to arrive at the invention claimed in the '895 patent.

38.     Whether the '895 patent is invalid as anticipated or obvious, as set forth in Fairchild's timely contentions and the Revised Expert Report of Dr. Wei.

### 4. The '457 Patent

39.     Whether the '457 patent is anticipated by U.S. Patent No. 8,461,915 ("the '915 patent").

40.     Whether the '457 patent is anticipated by the prior knowledge and/or prior invention by Wei-Hsuan Huang, Meng-Jen Tsai, Chien-Yuan Lin, Ming-Chang Tsou, and Chuan Chang Li (i.e., the '915 patent inventors).

41.     Whether the '457 patent is anticipated by U.S. Patent No. 5,999,429 ("the '429 patent").

42.     The level of ordinary skill in the art at the time of the invention of the '457 patent.

43. Whether there was a prior and/or near-simultaneous invention by Wei-Hsuan Huang, Meng-Jen Tsai, Chien-Yuan Lin, Ming-Chang Tsou, and Chuan Chang Li (i.e., the '915 patent inventors).

44. The scope and content of the prior art.

45. Whether the '457 patent is rendered obvious by the '915 patent in view of the knowledge of one of ordinary skill in the art.

46. Whether the '457 patent is rendered obvious by the '915 patent in view of the '429 patent.

47. Whether the '457 patent is rendered obvious by the '429 patent in view of the knowledge of one of ordinary skill in the art.

48. Whether the '457 patent is rendered obvious by the '429 patent in view of the '915 patent.

49. Assuming that Fairchild sets forth a prima facie case of obviousness, whether PI can demonstrate the existence of any indicia that tend to show that the invention of the '457 patent was non-obvious, and if so, the extent of such evidence, and whether a nexus exists between such evidence and the claimed inventions.

50. The differences between the '457 patent and the prior art asserted by Fairchild as rendering the '457 patent obvious.

51. Whether there is a reason that would have prompted a person of ordinary skill in the art to combine references relied on to assert invalidity under 35 U.S.C. § 103.

52. Whether the references relied on to assert invalidity under 35 U.S.C. § 103 teach away from the invention of the '457 patent.

53. Whether there is a reason that would have prompted a person of ordinary skill in the art to modify the prior art asserted by Fairchild to arrive at the invention claimed in the '457 patent.

54. Whether the '457 patent is invalid as anticipated or obvious, as set forth in Fairchild's timely contentions and the Revised Expert Report of Dr. Wei.

**5.     The '587 Patent**

55. Whether the '587 patent is anticipated by U.S. Patent No. 5,903,452 ("the '452 patent").

56. Whether the '587 patent is anticipated by the LT1070/LT1071 Datasheet ("LT1070 Datasheet").

57. The level of ordinary skill in the art at the time of the invention of the '587 patent.

58. The scope and content of the prior art.

59. Whether the '587 patent is rendered obvious by the '452 patent in view of the knowledge of one of ordinary skill in the art.

60. Whether the '587 patent is rendered obvious by the LT1070 Datasheet in view of the knowledge of one of ordinary skill in the art.

61. Assuming that Fairchild sets forth a prima facie case of obviousness, whether PI can demonstrate the existence of any indicia that tend to show that the invention of the '587 patent was non-obvious, and if so, the extent of such evidence, and whether a nexus exists between such evidence and the claimed inventions.

62. The differences between the '587 patent and the prior art asserted by Fairchild as rendering the '587 patent obvious.

63. Whether there is a reason that would have prompted a person of ordinary skill in the art to combine references relied on to assert invalidity under 35 U.S.C. § 103.

64. Whether the references relied on to assert invalidity under 35 U.S.C. § 103 teach away from the invention of the '587 patent.

65. Whether there is a reason that would have prompted a person of ordinary skill in the art to modify the prior art asserted by Fairchild to arrive at the invention claimed in the '587 patent.

66. Whether the claims lack written description support under 35 U.S.C. § 112.

67. Whether the claims are indefinite under 35 U.S.C. § 112.

68. Whether the '587 patent is invalid as anticipated or obvious, as set forth in Fairchild's timely contentions and the Revised Expert Report of Dr. Wei.

**C.**     **<u>Relief Sought by PI</u>**

      **1.**     **Damages**

Fairchild will demonstrate that PI is entitled to zero dollars at trial. To the extent damages are warranted, the following specific factual issues with respect to PI's damages claim with respect to the PI Patents remain to be determined at trial:

1. If infringement of any valid claim is found, the proper measure of any damages due to PI as a result of the alleged infringement.

2. If infringement of any valid claim is found, the amount of any damages to PI resulting from the alleged infringement.

3.      The damages time period, if any, for the PI Patents.

**EXHIBIT 2B**

**Power Integrations' Statement of Issues of Fact
Remaining to be Litigated**

Power Integrations expects that it will present the below listed issues of fact at trial.  To the extent that any issues of law set forth in Exhibit 3B of the Joint Pretrial Order may be considered issues of fact, Power Integrations incorporates those portions of Exhibit 3B by reference.  These issues of fact may change based on the Court's decisions on certain motions *in limine*.

    **A.**    **Infringement of Power Integrations' Patents**

Power Integrations will demonstrate that Fairchild's accused products infringe the asserted claims of the Power Integrations patents-in-suit.  To that end, the following specific factual issues with respect to infringement remain to be determined at trial:

    1.    Whether Power Integrations has proven by a preponderance of the evidence that Fairchild has directly infringed the asserted claims of the Power Integrations patents-in-suit.

    2.    Whether Power Integrations has proven by a preponderance of the evidence that Fairchild has induced infringement of the asserted claims of the Power Integrations patents-in-suit.

    3.    Whether Power Integrations has proven by a preponderance of the evidence that Fairchild has infringed any of the asserted claims of the Power Integrations patents-in-suit under the doctrine of equivalents.

    4.    Whether Power Integrations has proven by clear and convincing evidence that Fairchild's infringement was willful.

    **B.**    **Validity of Power Integrations' Patents**

The following specific factual issues with respect to the validity of the Power Integrations patents-in-suit remain to be determined at trial:

    1.    Whether any asserted claims of the Power Integrations patents-in-suit are anticipated by the prior art.

    2.    What the level of ordinary skill in the art was at the time of the invention of the Power Integrations patents-in-suit.

    3.    The content and scope of the prior art asserted by Fairchild as rendering the asserted claims of the Power Integrations patents-in-suit patent obvious.

1

4.    The differences between the asserted claims of the Power Integrations patents-in-suit and the prior art asserted by Fairchild as rendering those patents obvious.

5.    Whether any of the following objective evidence of non-obviousness tends to show that the asserted claims of the Power Integrations patents-in-suit are not obvious, the extent of any proffered objective evidence of non-obviousness, and whether a nexus exists between the evidence and the claimed inventions:

   a.    Commercial success of products covered by the Power Integrations patents-in-suit;

   b.    A long felt, unmet need in the art that was satisfied by the inventions;

   c.    The failure of others to make the inventions;

   d.    Copying of the inventions by others in the field;

   e.    Unexpected results achieved by the invention; and

   f.    Praise of the inventions by the infringer or others in the field.

6.    Where Fairchild is relying on a combination of references to assert invalidity under 35 U.S.C. §103, whether there is a reason that would have prompted a person of ordinary skill in the art to combine the references.

7.    Whether there is a reason that would have prompted a person of ordinary skill in the art to modify the prior art asserted by Fairchild to arrive at the invention claimed in the Power Integrations patents-in-suit.

## C.    Power Integrations' Damages

Power Integrations will demonstrate that it has suffered damages from Fairchild's infringement of the patents-in-suit and that Power Integrations is entitled to remedies as a result of that infringement.  To that end, the following specific factual issues with respect to Power Integrations' damages remain to be determined at trial:

1.    What is the proper measure of damages due to Power Integrations as a result of Fairchild's infringement?

2.    What is the amount of damage to Power Integrations resulting from Fairchild's infringement?

**D.      Non-Infringement of Fairchild's Patents**

Power Integrations will demonstrate that Power Integrations' accused products do not infringe the asserted claims of the Fairchild patents-in-suit.  To that end, the following specific factual issues with respect to infringement remain to be determined at trial:

1.      Whether Fairchild has proven by a preponderance of the evidence that Power Integrations has literally infringed the asserted claims of the Fairchild patents-in-suit.

2.      Whether Fairchild has proven by a preponderance of the evidence that Power Integrations has induced infringement of the asserted claims of the Fairchild patents-in-suit.

**E.      Invalidity of Fairchild's Patents**

The following specific factual issues with respect to the validity of the Fairchild patents-in-suit remain to be determined at trial:

1.      Whether any asserted claims of the Fairchild patents-in-suit are anticipated by the prior art.

2.      What the level of ordinary skill in the art was at the time of the invention of the Fairchild patents-in-suit.

3.      The content and scope of the prior art asserted by Power Integrations as rendering the asserted claims of the Fairchild patents-in-suit obvious.

4.      The differences between the asserted claims of the Fairchild patent-in-suit and the prior art asserted by Power Integrations as rendering the patents obvious.

5.      Where Power Integrations is relying on a combination of references to assert invalidity under 35 U.S.C. §103, whether there is a reason that would have prompted a person of ordinary skill in the art to combine the references.

6.      Whether there is a reason that would have prompted a person of ordinary skill in the art to modify the prior art asserted by Power Integrations to arrive at the inventions claimed in the Fairchild patents-in-suit.

7.      Whether Fairchild satisfied its obligations under 35 U.S.C. §112 with respect to the Fairchild patents-in-suit.

**F.       Fairchild's Damages Claim**

The following specific factual issues with respect to Fairchild's damages claim with respect to the Fairchild patents-in-suit remain to be determined at trial:

1.       If infringement of any valid claim is found, what is the proper measure of any damages due to Fairchild as a result of the alleged infringement?

2.       If infringement of any valid claim is found, what is the amount of any damage to Fairchild resulting from the alleged infringement?

**Exhibit 3A**

**Fairchild's Statement of Issues of Law that
<u>Remain to be Litigated and Citation of Authorities Relied Upon</u>**

Fairchild expects that it will present issues of law concerning infringement, willful

infringement, invalidity, and damages, as discussed further below. To the extent that any issues

of fact set forth in Fairchild's statement of issues of fact may be considered issues of law,

Fairchild incorporates those portions by reference. Certain defenses and claims are purely legal

and require resolution by the Court and not the jury. These purely legal issues are also described

below. By listing these issues, Fairchild does not admit that any legal issue can be properly

introduced at trial.  Moreover, the parties also believe that the issues raised in the motions *in

limine*, other pre-trial motions, and jury instructions also included disputed issues of law.

Fairchild reserves the right to modify, supplement, or change this Statement, including to the

extent necessary to fairly respond to issues which Power Integrations raises in its Statement of

Issues of Law.

**I.      <u>Infringement</u>**

    **A.      Issues of Law to Be Litigated**

    1.      Whether Fairchild has proven by a preponderance of the evidence that PI
infringes any of the asserted claims of the Fairchild Patents.

    2.      Whether Fairchild has proven by clear and convincing evidence that PI willfully
infringes any of the asserted claims of Fairchild's '972 patent.

    3.      Whether PI has proven by a preponderance of the evidence that Fairchild
infringes any of the asserted claims of the PI Patents.

    4.      Whether PI has proven by clear and convincing evidence that Fairchild willfully
infringes any of the asserted claims of PI's '366 patent.

    5.      Whether PI's infringement claims are barred by the doctrine of prosecution
history estoppel.

    6.      Whether PI's infringement claims are barred by the doctrine of judicial estoppel.

### B.  Authorities Relied Upon

#### 1.  Infringement Generally

35 U.S.C. § 271(a) states:

> Except as otherwise provided in this title, whoever without
> authority makes, uses, offers to sell, or sells any patented
> invention, within the United States, or imports into the United
> States any patented invention during the term of the patent
> therefor, infringes the patent.

To prevail on infringement, the patentee must establish that an accused device or process embodies each and every limitation of an asserted claim, either literally or by the doctrine of equivalents. *Amgen, Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1374 (Fed. Cir. 2009). Determining infringement entails a two-step analysis. Initially, the claims at issue are interpreted to define their scope. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc); *see generally Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). Claim construction is a matter of law, to be decided by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-81 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Whether the claims, as construed by the Court, are infringed is a question of fact to be determined by the jury. *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003). The jury must examine the evidence to determine whether the accused product infringes the properly construed claims. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 696 (Fed. Cir. 2008).

#### 2.  Literal Infringement

An accused product literally infringes when it literally contains each and every limitation of the claim. *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001) ("Literal infringement requires that every limitation of the patent claim be found in the accused [infringing] device." (citation omitted)). Infringement is thus examined on an element-

2

by-element basis; if an element of the claim is not present in the accused device, then the device

does not literally infringe the claims.  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,

424 F.3d 1293, 1310 (Fed. Cir. 2005).

### 3.    Means-Plus-Function Elements

35 U.S.C. § 112(f)—previously § 112, ¶ 6—states:

> An element in a claim for a combination may be expressed as a
> means or step for performing a specified function without the
> recital of structure, material, or acts in support thereof, and such
> claim shall be construed to cover the corresponding structure,
> material, or acts described in the specification and equivalents
> thereof.

"Under § 112, ¶ 6, an accused device with structure not identical to the structure

described in the patent will literally infringe the patent if the device performs the identical

function required by the claim with a structure equivalent to that described in the patent." *Cybor*,

138 F.3d at 1457.

The presumption of claim differentiation is "a guide, not a rule" that must give way to the

requirements of § 112, ¶ 6.  *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir.

1991) ("Simply stated, the judicially developed guide to claim interpretation known as 'claim

differentiation' cannot override the statute.  A means-plus-function limitation is not made open-

ended by the presence of another claim specifically claiming the disclosed structure which

underlies the means clause or an equivalent of that structure . . . one cannot escape that mandate

by merely adding a claim or claims specifically reciting such structure or structures.").

### 4.    Prosecution History Estoppel

"When the patentee responds to [a] rejection by narrowing his claims, this prosecution

history estops him from later arguing that the subject matter covered by the original, broader

claim was nothing more than an equivalent.  Competitors may rely on the estoppel to ensure that

3

their own devices will not be found to infringe by equivalence." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 727 (2002).

There is a "presumption that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F.3d 1359, 1367 (Fed. Cir. 2003).  "The patentee may rebut that presumption of total surrender by demonstrating that it did not surrender the particular equivalent in question," but "if the patentee fails to rebut [that] presumption, then prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element." *Id.*  In order to rebut the presumption of total surrender, "the patentee must demonstrate that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question, or that there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." *Id.* at 1368.

This is also applicable to means-plus-function elements, because "[c]lear assertions made in support of patentability . . . may affect the range of equivalents under § 112, ¶ 6.  The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Cybor*, 138 F.3d at 1457 (internal citation omitted).  "When a patentee advises the examiner (and the public after patent issuance) that a particular structure is not within his invention, the patentee is not permitted to assert in a subsequent infringement action that the same structure is equivalent to the structure described in the patentee's specification for purposes of section 112 paragraph 6." *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1359 (Fed. Cir. 2001).

### 5.    Infringement Under the Doctrine of Equivalents

"An accused device that does not literally infringe a claim may still infringe under the

4

doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently." *Cybor*, 138 F.3d at 1459.  It is well-settled that a party asserting infringement under the doctrine of equivalents must provide particularized evidence with respect to either (1) the insubstantiality of the differences between the claimed invention and the accused device or process, or (2) the function, way, result test.  *Aquatex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328-29 (Fed. Cir. 2007); *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1323 (Fed. Cir. 2003).

The jury must determine whether the differences between the accused products and the claim elements are insubstantial.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17, 39-40 (1997).  This analysis is performed on an element-by-element basis.  *Id.* at 29.  In other words, if one or more elements of the accused device performs the same function, in the same way, to achieve the same result as the corresponding element in the patent-in-suit, then that element is present under the doctrine of equivalents.  *Warner-Jenkinson Co.*, 520 U.S. at 40; *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320 (Fed. Cir. 1998).

One may not use the doctrine of equivalents to vitiate a claim limitation entirely.  *See Warner-Jenkinson Co.*, 520 U.S. at 39 n.8; *Ethicon Endo-Surgery, Inc.*, 149 F.3d at 1316-17. In addition, the doctrine of prosecution history estoppel prevents a patentee from using the doctrine of equivalents to recapture subject matter that was relinquished during prosecution of the patent. *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1103-04 (Fed. Cir. 2002).  If the claimed invention was limited during prosecution, and the patentee cannot overcome the presumption of estoppel, then the patentee is not entitled to the surrendered range of equivalents.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002).

## 6.    Induced Infringement

35 U.S.C. § 271(b) states that: "Whoever actively induces infringement of a patent shall

be liable as an infringer."  A patentee has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew that his actions would induce actual infringements. *Global-Tech Applicances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) ("deliberate indifference" does not satisfy the alleged infringer's knowledge required for section 271(b), but willful blindness may). The patentee must prove that the accused infringer knew of the patent and had a specific intent to induce infringement.  *Id.*

Evidence of an accused inducer's good-faith belief of invalidity may negate the requisite intent necessary to prove induced infringement.  *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1368 (Fed. Cir. 2013) (failure to instruct jury that competitor could not be liable for induced infringement without knowledge that the induced acts constituted infringement had a prejudicial effect), *cert. granted*, 135 S. Ct.752 (2014).  While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.  *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341-42 (Fed. Cir. 2008); *Water Techs. Corp. v. Calco Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988).  Inducement may be shown by an accused infringer's actions encouraging or instructing another on how to use an accused device in a way that infringes a patent, such as through the provision of user manuals or advertisements.  *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1361-64 (Fed. Cir. 2006).  Issues of inducement may be different on a customer-by-customer basis, and the outcome may be different for each customer or customer type.  *Ricoh Co.*, 550 F.3d at 1343.

### 7.      Contributory Infringement

35 U.S.C. § 271(c) states:

> Whoever offers to sell or sells within the United States or imports
> into the United States a component of a patented machine,
> manufacture, combination, or composition, or a material or
> apparatus for use in practicing a patented process, constituting a
> material part of the invention, knowing the same to be especially

> made or especially adapted for use in an infringement of such
> patent, and not a staple article or commodity of commerce suitable
> for substantial noninfringing use, shall be liable as a contributory
> infringer.

Under section 271(c), it must be shown that the alleged contributory infringer had knowledge that the accused component was especially made for or adapted for a particular use and knowledge of the patent that prescribes that use. *Golden Blount, Inc.*, 438 F.3d at 1361-64. In addition, it must be shown that the accused component is not a staple article suitable for substantial noninfringing use. *Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

### 8.    Willful Infringement

To prove willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and "that this objectively defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). The state of mind of the accused infringer is not relevant to this objective inquiry. *Id.* The threshold question of objective recklessness "is best decided by the judge as a question of law." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

Receiving notice of another's patent rights does not create an affirmative duty for the accused infringer to determine whether or not their conduct is infringing or create an affirmative obligation for the accused infringer to obtain an opinion of counsel on the matter. *In re Seagate Tech.*, 497 F.3d at 1368-69, 1371.

### 9.    Reexamined Patents

35 U.S.C. § 307(b) states that "[a]ny proposed amended or new claim determined to be

patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 for reissued patents," and section 252, ¶ 1 provides that "every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form." 35 U.S.C. § 252, ¶ 1.  Section 252 permits a reexamined patent to be enforceable prior to the reexamination certificate "in so far as the claims of the original and reissued patents are substantially identical."  *Id.*; *see also Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827 (Fed. Cir. 1984) ("With respect to new or amended claims, an infringer's liability commences only from the date the reissue patent is issued.").

### 10.    Judicial Estoppel

"The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed."  *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996).  "[T]he Supreme Court identified several factors guiding the decision to apply judicial estoppel: (1) the party's later position must be 'clearly inconsistent' with the earlier position; (2) the party must have succeeded in persuading a court to adopt the earlier position in the earlier proceeding; and (3) the courts consider 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'"  *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1290-91 (Fed. Cir. 2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

## II.    Invalidity

### A.    Issues of Law to Be Litigated

1.    Whether the asserted claims of the PI Patents are invalid, including whether they are anticipated by the prior art, rendered obvious in light of the prior art, lack enablement, lack sufficient written description, or are indefinite.

2.      Whether the asserted claims of Fairchild's '259 and '123 patents are invalid, including whether they are anticipated by the prior art, whether the asserted claims of Fairchild's '259 patent are rendered obvious in light of the prior art, or whether the asserted claims of Fairchild's '259 patent lack enablement, lack sufficient written description, or are indefinite.

PI is precluded from re-litigating the validity of the '972 Patent.  *See* D.I. 191.  To the extent the Court finds otherwise, the following legal issues would remain to be litigated.

3.      Whether the asserted claims of Fairchild's '972 patent are invalid, including whether they are anticipated by the prior art or rendered obvious in light of the prior art.

**B.     Authorities Relied Upon**

**1.      Invalidity Generally**

"A patent shall be presumed valid." 35 U.S.C. § 282(a).  "[T]he presumption of validity afforded a U.S. patent by 35 U.S.C. § 282 requires that the party challenging validity prove the facts establishing invalidity by clear and convincing evidence." *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252,1259 (Fed. Cir. 2000); *see also Voda v. Cordis Corp.*, 536 F.3d 1311, 1322 (Fed. Cir. 2008).  Clear and convincing evidence has been described as evidence which proves in the mind of the trier of fact "an abiding conviction that the truth of [the] factual contentions [is] 'highly probable.'" *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). Because of the presumption of validity, a patentee responding to a challenge to the patent's validity need only submit sufficient evidence to rebut any proof of invalidity offered by the challenger and, where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue. *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).  Further, "[e]ach claim of a patent (whether in  independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though

dependent upon an invalid claim."  35 U.S.C. § 282.

## 2.    Anticipation

Under 35 U.S.C. § 102(b), a patent is invalid if the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country more than one year prior to the date of the application for patent in the United States.  35 U.S.C. § 102(b); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318-19 (Fed. Cir. 1999).  To be considered prior art, whether the references are asserted as anticipatory art under §102(b) or obviousness art under §103, a reference must have been sufficiently accessible to the public interested in the art before the critical date.  *In re Omeprazole Patent Litig.*, 536 F.3d 1361, 1381 (Fed. Cir. 2008).  If there are no facts in dispute, whether a reference is a prior art "printed publication" within the meaning of 35 U.S.C. § 102(b) is a question of law.  *Id.* at 1332.

To constitute prior art, "the art must have existed as of the date of invention, presumed to be the filing date of the application until an earlier date is proved."  *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986).  To establish an earlier priority date, the patent holder must demonstrate "conception coupled with reasonable diligence in reducing the invention to practice."  *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003).  "A conception must encompass all limitations of the claimed invention and is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation."  *Id.* (internal quotation marks omitted).  To prove conception, the inventor "must provide independent corroborating evidence in addition to his own statements and documents."  *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1375 (Fed. Cir. 2009) (quotation omitted); *see also Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003).  In addition to establishing conception, the patent holder must show diligence from conception until reduction to practice by

the patentee. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996). The diligence

requirement is met only if "the alleged earlier inventor was diligent throughout the entire critical

period." *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001). "The

standards for finding reasonable diligence are harsh." *Liang & Joshi v. Borger, Hullmeine &

Voss*, 214 U.S.P.Q. 368, 372-73 (Pat. & Tr. Office Bd. App. 1981); *see also* 3A-10 *Chisum on

Patents* § 10.07 ("Diligence is a stringent standard."). And periods of inactivity and gaps in

documentation are fatal to a claim to earlier priority. *See In re Mulder*, 716 F.2d 1542, 1545

(Fed. Cir. 1983).

The first step in an invalidity analysis based on anticipation in view of a prior art

reference is to determine the meaning and scope of the pertinent claims. *Oakley, Inc. v. Sunglass

Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Each claim must be viewed as a whole, and it is

improper to ignore any element of the claim. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234

F.3d 14, 25-26 (Fed. Cir. 2000). Each claim element then must be compared to the reference to

determine whether the reference anticipates the claim. *Oakley*, 316 F.3d at 1339.

A patent claim is anticipated if all the elements or limitations of a given claim are found

within a single prior art reference as viewed through the eyes of a person with ordinary skill in

the field of invention. *Apple Computer, Inc.*, 234 F.3d at 20; *Atlas Powder Co. v. Ireco, Inc.*, 190

F.3d 1342, 1346 (Fed. Cir. 1999). Anticipation of a patent claim requires that the claim "read

on" a prior art reference. *Atlas Powder*, 190 F.3d at 1346; *Titanium Metals Corp. of Am. v.

Banner*, 778 F.2d 775, 781 (Fed. Cir. 1985). "In other words, if granting patent protection on the

disputed claim would allow the patentee to exclude the public from practicing the prior art, then

that claim is anticipated." *Atlas Powder*, 190 F.3d at 1346. Put another way, "that which would

literally infringe if later anticipates if earlier." *Bristol-Myers Squibb Co. v. Ben Venue Labs.*,

*Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001); *Peters v. Active Mfg. Co.*, 129 U.S. 530 (1889).  That truism holds for any claim, "regardless of whether it also covers subject matter not in the prior art." *Atlas Powder*, 190 F.3d at 1346.

In assessing whether the claim reads on the reference, the inherent teachings of the reference must be considered. *Id.* at 1347.  A claim element is inherent in a prior art reference if, although not expressly described therein, it is necessarily present in or performed by the thing described in the prior art reference. *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999).  Even where one or more elements are not present, a prior art reference still anticipates the claim if it would be within the knowledge of one of ordinary skill in the particular art. *Id.*

### 3.    Obviousness

The determination of whether an invention would have been obvious under 35 U.S.C. § 103 is a legal conclusion based on underlying findings of fact. *In re Sullivan*, 498 F.3d 1345, 1350 (Fed. Cir. 2007).  That determination requires a factual inquiry into: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art in the pertinent art; (3) the differences between the prior art and the claimed invention; and (4) extent of any objective indicia of non-obviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

Under § 103, a claim is obvious only where the differences between the claimed subject matter and the prior art are such that the claimed subject matter as a whole would have been obvious at the time of the invention to a person of ordinary skill in the relevant art.  35 U.S.C. § 103(a); *KSR Int'l*, 550 U.S. at 417.  Claimed combinations must be considered as a whole, and, thus, "when determining obviousness, there is no legally recognizable or protected 'essential,' 'gist,' or 'heart' of the invention." *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 875 (Fed. Cir.

1985). It is also improper to consider the difference between the claimed invention and the prior art as the invention. *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984).

Patented inventions often recite a combination of several elements, some of which may be separately known. *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000). Section 103, however, precludes hindsight discounting of the value of new combinations by requiring assessment of the invention as a whole. *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) ("simply retrac[ing] the path of the inventor with hindsight . . . is always inappropriate for an obviousness test . . . [which] requires the analysis to examine 'the subject matter as a whole' to ascertain if it 'would have been obvious at the time the invention was made.'" (orig. emphasis)). Moreover, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l*, 550 U.S. at 418.

An accused infringer asserting obviousness in view of a combination of references has the burden to show that a person of ordinary skill in the relevant field had a reason to combine the elements in the manner claimed. *Id.* at 418-19. "[A]ny need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 420. Also, obviousness can be, but need not be, demonstrated by a teaching, suggestion or motivation to combine found in the prior art references. However, such teaching, suggestion, or motivation may also be found within the knowledge, or ordinary creativity, of a person with ordinary skill in the art at the time of the invention. *Id.* at 419-21.

In addition to showing that a person of ordinary skill in the art would have had a reason to attempt to make the composition or device, or carry out the claimed process, an accused

13

infringer must also demonstrate that such a person would have had a reasonable expectation of success in doing so. *Noelle v. Lederman*, 355 F.3d 1343, 1351-52 (Fed. Cir. 2004). In other words, an accused infringer must demonstrate that the reference or combination of references results in the claimed invention from "the predictable use of prior art elements according to their established functions." *KSR Int'l*, 550 U.S. at 417.

A patent owner may rebut a prima facie case of obviousness with objective indicia of nonobviousness. *Id.* at 406. There must be a nexus between such indicia and the claimed invention. *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997).

"[T]he possibility of near simultaneous invention by two or more equally talented inventors working independently" can be "an indication of obviousness when considered in light of all the circumstances." *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000). Evidence of "'near-simultaneous'" invention is "'not determinative of statutory obviousness,'" but rather "'is strong evidence of what constitutes the level of ordinary skill in the art.'" *Id.* (quoting *Int'l Glass Co. v. United States*, 408 F.2d 395, 405 (Ct. Cl. 1969)).

### 4.    Written Description

35 U.S.C. § 112(a)—previously §112, ¶ 1—states:

> The specification shall contain a written description of the
> invention, and of the manner and process of making and using it, in
> such full, clear, concise, and exact terms as to enable any person
> skilled in the art to which it pertains, or with which it is most
> nearly connected, to make and use the same . . . .

The purpose of the written description requirement is to "ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Univ. of Rochester v. G. D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004). To satisfy the written description

requirement, a patent applicant must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention.  The invention is, for purposes of the 'written description' inquiry, whatever is now claimed." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).  Such description need not recite the claimed invention *in haec verba* but must do more than merely disclose that which would render the claimed invention obvious.  *Univ. of Rochester*, 358 F.3d at 923.

The written description issue is precipitated not only where the claims include *extra* limitations that are not supported by the specification, but also is where the claims *lack* limitations that would confine the scope of the claims to what the inventor actually possessed. "[A] patentee cannot always satisfy the requirements of section 112, in supporting expansive claim language, merely by clearly describing one embodiment of the thing claimed." *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005) (insufficient written description for "nonseamless" claims where the specification only describes "seamless" embodiments); *see also ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1378 (Fed. Cir. 2009) (insufficient written description for "spikeless" claims where the specification only describes embodiments with "spikes").

### 5.    Enablement

35 U.S.C. § 112(a)—previously § 112, ¶ 1—states:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . .

"To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997).  "The scope of the

claims must be less than or equal to the scope of the enablement to ensure that the public

knowledge is enriched by the patent specification to a degree at least commensurate with the

scope of the claims." *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008).

### 6. Indefiniteness

35 U.S.C. § 112(b)—previously § 112, ¶ 2—states:

> The specification shall conclude with one or more claims
> particularly pointing out and distinctly claiming the subject matter
> which the inventor or a joint inventor regards as the invention.

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134

S. Ct. 2120, 2124 (2014).

## III. Damages

### A. Issues of Law to Be Litigated

1. Whether Fairchild can prove that it should recover reasonable royalty damages for infringement of the Fairchild Patents.

2. Whether PI can prove that it should recover reasonable royalty damages for infringement of the PI Patents.

3. The applicable damages period for the asserted patents.

### B. Authorities Relied Upon

#### 1. Damages Generally

35 U.S.C. § 284 states:

> Upon finding for the claimant the court shall award the claimant
> damages adequate to compensate for the infringement but in no
> event less than a reasonable royalty for the use made of the
> invention by the infringer, together with interest and costs as fixed
> by the court

Patent damages are generally calculated under two basic—and distinct—conceptual frameworks: reasonable royalty and lost profits.  Reasonable royalty, as specified in 35 U.S.C. § 284, is the minimum recovery, while patentees are obligated to prove a number of additional elements to recover lost profits.

### 2.   Reasonable Royalty

A reasonable royalty is the amount that an infringer would have been willing to pay the patentee for a license in a hypothetical world "just before infringement began."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012).  In this hypothetical negotiation, the parties are presumed (1) to be willing to execute a license, and (2) to accept that the asserted patent claims are valid and infringed.  *See Lucent*, 580 F.3d at 1324-25.  The reasonable royalty calculation is a two-step process.  First, it requires the determination of a royalty base, "or the revenue pool implicated by the infringement."  *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286 (N.D.N.Y. 2009) (Rader, J., sitting by designation).  The second determination is the royalty rate, or "the percentage of that pool 'adequate to compensate' the plaintiff for that infringement."  *Id.*  To frame the royalty rate calculation, the Federal Circuit has sanctioned the use of the 15 factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  *See, e.g.*, *Uniloc v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).

The Federal Circuit has made clear that apportionment is a key aspect of reasonable royalty damages and must be correctly performed.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327, 1329 (Fed. Cir. 2014).  A patent holder must "take care to seek only those damages attributable to the infringing features."  *VirnetX*, 767 F.3d at 1326.  For products where one component may be

covered by an asserted patent while other components are not, the Federal Circuit has held that a patentee seeking a reasonable royalty may not obtain a royalty base equivalent to the "entire market value" of the accused product, unless the patentee proves "that the patent-related feature is the basis for customer demand." *Lucent*, 580 F.3d at 1336.  In the absence of evidence that "the patented feature creates the basis for customer demand or substantially creates the value of the component parts . . ., principles of apportionment apply." *VirnetX, Inc.*, 767 F.3d at 1326 (quoting *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 1013 (2014)).

The first step of apportionment is for the patent holder to identify "the smallest salable infringing unit with close relation to the claimed invention." *Id.* at 1327 (quoting *Cornell Univ.*, 609 F. Supp. 2d at 287-88).  But identifying the smallest salable unit "is simply a step toward meeting the requirement of apportionment." *Id.*  "Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature . . ., the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology." *Id.*  The patentee must properly apportion in order to limit its recovery to "only those damages attributable to the infringing features." *Id.* at 1326.

The Federal Circuit has rejected the use of so-called "rule of thumb" methodologies to approximate reasonable royalty rates as "arbitrary, unreliable, and irrelevant" when the expert does not specifically relate it to "the facts of the case." *Uniloc*, 632 F.3d at 1318-19.  "To be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place.'" *Id.* at 1317 (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)).  As the Federal Circuit

stated in *ResQNet*, "[a]ny evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *Id.* Ultimately, *Lucent* and its progeny reflect the Federal Circuit's efforts to rein in disproportionate damages awards by rejecting "expert opinion derived from unreliable data and built on speculation." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1374 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 900 (2014).

The proper date for the hypothetical negotiation is directly prior to the date on which infringement first occurred, and may precede the alleged infringer's liability date. *See LaserDynamics*, 694 F.3d at 75 (hypothetical negotiation date may precede inducement liability date, notice date, six-year statute of limitations date). In *LaserDynamics*, the alleged infringer became liable in 2006, but the Federal Circuit found that the hypothetical negotiation date occurred in 2003, when the underlying infringement began. *Id.* In any event, the choice between two potential dates of the hypothetical negotiation is not significant absent material facts showing that the circumstances or outcome of the hypothetical negotiation would have changed on the different dates. *See Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 994 (Fed. Cir. 1989).

### 3. Marking and Notice Limitation on Damages

35 U.S.C. § 287(a) states:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word 'patent' or the abbreviation 'pat.' together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of

them is contained, a label containing a like notice. In the event of
failure so to mark, no damages shall be recovered by the patentee
in any action for infringement, except on proof that the infringer
was notified of the infringement and continued to infringe
thereafter, in which event damages may be recovered only for
infringement occurring after such notice. Filing of an action for
infringement shall constitute such notice.

Under section 287, unless a patentee provides notice of its patent rights by marking its

product, the statue precludes recovery of any damages until actual notice to the accused

infringer.  The patentee has "the burden of pleading and proving at trial that [it] complied with

the statutory [marking] requirements."  *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir.

1996).

## IV.   Non-Jury Issues for the Court

### A.     Issues of Law to Be Litigated

1.     Whether Fairchild has proven by clear and convincing evidence that PI acted
despite an objectively high likelihood that its actions constituted infringement of
the asserted claims of Fairchild's '972 patent.

2.     Whether PI has proven by clear and convincing evidence that Fairchild acted
despite an objectively high likelihood that its actions constituted infringement of
the asserted claims of PI's '366 patent.

3.     Whether and to what extent Fairchild is entitled to enhanced damages for PI's
willful infringement.

4.     Whether and to what extent PI is entitled to enhanced damages for Fairchild's
alleged willful infringement.

5.     Whether PI should be enjoined from infringing the claims of the Fairchild Patents.

6.     Whether Fairchild should be enjoined from allegedly infringing the claims of the
PI Patents.

7.     Availability of interest, costs, and reasonable attorneys' fees.

8.     Whether this is an exceptional case.

### B.    Authorities Relied Upon

#### 1.    Willfulness (Objective Prong)

For a willful infringement claim, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech.*, 497 F.3d at 1371.  The threshold question of objective recklessness "is best decided by the judge as a question of law." *Bard Peripheral Vascular*, 682 F.3d at 1007.

#### 2.    Enhanced Damages

The court is authorized by statute to multiply infringement damages up to threefold.  35 U.S.C. § 284.  Enhanced damages may be granted on a "showing of willful infringement or other indicium of bad faith warranting punitive damages." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996).

#### 3.    Injunction

35 U.S.C. § 283 says:

> The several courts . . . may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

### 4.      Interest and Taxable Costs

35 U.S.C. § 284 states: "[u]pon finding for the claimant the court shall award the claimant damages . . . together with interest and costs as fixed by the court."  Fed. R. Civ. P. 54(d)(1) states: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."

### 5.      Exceptional Case, Attorneys' Fees, and Nontaxable Costs

35 U.S.C. § 285 states: "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness v. ICON Health & Fitness*, 134 S. Ct. 1749, 1756 (2014).  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Id.*  Fed. R. Civ. P. 54(d)(2)(A) permits claims for both attorneys' fees and nontaxable costs.  A finding of willful infringement is a basis for finding a case exceptional and awarding attorney fees.  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004).

**EXHIBIT 3B**

**Power Integrations' Statement of Issues of Law**

PI expects that it will present on the below listed issues of law as part of the upcoming trial.  To the extent that any issues of fact set forth in Exhibit 2B of the Joint Pretrial Statement may be considered issues of law, PI incorporates those portions of Exhibit 2B by reference.  These issues of fact may change based on the Court's decisions on certain motions *in limine*.

**I.  Invalidity of Fairchild's Patents**

    1.        Whether the asserted claims of the Fairchild patents-in-suit are invalid under 35 U.S.C. § 103 in light of the prior art.

- 35 U.S.C. § 103

- 35 U.S.C. § 282

- *Graham v. John Deere Co.*, 383 U.S. 1 (1966)

- *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007)

**II.  Validity of PI's Patents**

    2.        Whether Fairchild has proven by clear and convincing evidence that any of the asserted claims of the PI patents-in-suit are invalid under 35 U.S.C. § 103 in light of the prior art.

- 35 U.S.C. § 103

- 35 U.S.C. § 282

- *Graham v. John Deere Co.*, 383 U.S. 1 (1966)

- *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007)

**III. Willful Infringement**

    1.        Whether PI has proven that Fairchild's infringement was willful, and vice versa.

- *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) ("[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.").

**IV. Non-Jury/Equitable Issues for the Court**

1.    <u>Injunction</u>: The scope of the permanent injunction to which Power Integrations is entitled enjoining Fairchild from direct and indirect infringement of Power Integrations' patents-in-suit.

- 35 U.S.C. § 283 ("The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.").

- *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.").

2.    <u>Exceptional Case / Attorneys' Fees</u>: Whether this case is exceptional and Power Integrations is entitled to treble damages and recovery of its fees and costs.

- 35 U.S.C. § 284

- 35 U.S.C. § 285

- *Octane Fitness LLC v. Icon Health & Fitness Inc.*, 134 S.Ct. 1749 (2014).

- *Highmark Inc. v. Allcare Health Mgmt. Sys. Inc.*, 134 S.Ct. 1744 (2014).

**Exhibit 4A**

**Fairchild's Witness List**

Fairchild provides below (1) its list of expert witnesses and a brief statement of anticipated subject matter and (2) its list of non-expert witnesses, including whether those witnesses will be called live at trial or introduced by designation.  Fairchild reserves the right to call anyone appearing on PI's witness list, reserves the right to call any of the following witnesses to provide rebuttal testimony, and reserves the right to amend its list in view of events at trial.

**I.      Expert Witnesses**

- **Dr. Edward R. Collins, Jr.**

  Clemson University
  107 Riggs Hall, PO Box 340901
  Clemson, SC 29634-0901

  **Anticipated subject matter:** Background of the technology, the asserted Fairchild patents, PI's infringement, Fairchild's practice, validity, and value of U.S. Patent Nos. 7,286,123; 7,525,259; and 7,259,972.

- **Dr. Gu-Yeon Wei**

  Harvard University
  33 Oxford St, MD333,
  Cambridge, MA 02138

  **Anticipated subject matter:** Background of the technology, the asserted PI patents, PI's alleged practice, Fairchild's non-infringement, invalidity, and value of U.S. Patent Nos. 6,229,366; 7,995,359; 7,952,895; 7,876,587; and 8,115,457.

- **James E. Malackowski**

  Ocean Tomo, LLC
  200 West Madison, 37th Floor
  Chicago, Illinois 60606

  **Anticipated subject matter:** Issues relating to damages for U.S. Patent Nos. 7,286,123; 7,525,259; 7,259,972; 6,229,366; 7,995,359; 7,952,895; 7,876,587; and 8,115,457.

**II.     Non-Expert Witnesses**

Fairchild currently intends to call the following fact witnesses live at trial:

1

1.      Guarang Shah

2.      Steve Fu

3.      Aung Tu

4.      James Lee

5.      Wei-Hsuan ("W.H.") Huang

6.      Young-Bae ("Y.B.") Park

7.      Steve McGowan

8.      Brian Johnson

9.      Balu Balakrishnan

10.     Ben Sutherland

11.     David Michael Hughes Matthews

12.     Doug Bailey

13.     Roland Saint Pierre

Fairchild currently intends to present prior testimony from the following fact witnesses, subject to a later agreement as to the maximum number of witnesses for which prior testimony may be designated:

1.      Robert Blauschild

2.      Alex Djengeurian

3.      David Kung

4.      Eric Verity

5.      Jenn-Yu ("Gary") Lin

6.      John Tomlin

7.      Chen-Hui ("Kenny") Chan

8.      Marvin Espino

9.      Michael Weirich

10.     Richard Kim

11.     Stuart Hodge

12.     Andrew Smith

13.     Stefan Baeurle

14.     Ta-Yung ("Tom") Yang

15.     Vijay Ullal (to the extent a topic is not covered by Mr. Guarang Shah at trial)

16.     Cliff Walker

17.     Yu Shan ("Anthony") Wu

18.     Bruce Renouard

19.     Peter Vaughn

20.     Silvestri Fimiani

21.     Tiziano Pastore

**EXHIBIT 4B**

**Power Integrations' Witness List**

Power Integrations presently intends to call the following witnesses at the upcoming trial. The witnesses will testify live except where otherwise indicated. Power Integrations reserves the right to call anyone appearing on Fairchild's witness list, reserves the right to call any of the following witnesses to provide rebuttal testimony, and reserves the right to amend its list (including whether a witness will be called live or by designation) in view of events at trial.[1]

| Witness | Live/Designation | Witness | Live/Designation |
|---|---|---|---|
| Balu Balakrishnan | Live | KO Jang | Designation |
| Mike Matthews | Live | HK Kim | Designation |
| Ben Sutherland | Live | Richard Kim | Designation |
| Roland Saint-Pierre | Live | Allan Lam | Designation |
| Doug Bailey | Live | CS Lim | Designation |
| David Kung | Live | Gary Lin | Designation |
| Arthur Kelley (expert) | Live | Ruihong Lu | Designation |
| Mark Robinson (expert) | Live | Mark Norman | Designation |
| Kenny Chan | Designation | YB Park | Designation |
| HS Choi | Designation | Shawn Slayton | Designation |
| Richard Chung | Designation | Vijay Ullal | Designation |
| Bob Conrad | Designation | Michael Weirich | Designation |
| KE Hong | Designation | Robert Wiles | Designation |
| WH Huang | Designation | Tom Yang | Designation |
| ST Im | Designation | | |

**Arthur W. Kelley**
Subjects: Infringement and validity of Power Integrations' patents; non-infringement and invalidity of Fairchild's patents.
Address:
336 Deer Hollow Drive
Napa, CA 94558

**Mark Robinson**
Subjects: Damages issues related to the infringement claims at issue in this case.
Address:
3001 Plymouth Rd., Suite 205
Ann Arbor, MI 48105

---

[1] A few of the witnesses identified above have been identified by Fairchild as appearing live at trial; the parties are discussing the appropriate manner for addressing their testimony and may not need to present designations from such witnesses.

## Exhibit 5A

**Fairchild's Exhibit List**

The following list contains exhibits that Fairchild may use at trial.  Fairchild reserves the right to modify or supplement this list as circumstances may warrant.  Without limitation, Fairchild reserves the right to supplement its exhibit list in view of Power Integrations' disclosure of its trial exhibits.  In addition, Fairchild reserves the right to supplement its exhibit list with respect to prior art cited on the face of Power Integrations' patents.

To the extent documents on this list contain reference to products not accused of infringement in this case, findings of infringement against Fairchild in prior litigations, and other issues unrelated to this case, Fairchild reserves the right to object to Power Integrations' use of any such exhibits.  Fairchild also reserves the right to present redacted versions of these documents at trial to omit reference to prior litigations and findings against Fairchild.

The parties have agreed to exchange objections to exhibits on Tuesday, April 28, 2015, and to provide those objections to the Court on Monday, May 4.

| Ex. No. | Deponent | Deposition Date | Deposition Ex. No. | Prod. Beg. No. | Prod. End No. | Description |
|---------|----------|-----------------|--------------------|----------------|--------------|-------------|
| PX-1 | | | | FSGV0417759 | FSGV0417782 | U.S. Patent No. 7,259,972 |
| PX-1.1 | Collins, Edward | 1/7/2015 | 7 | | | U.S. Patent No. 7,259,972 |
| PX-1.2 | Kelley, Arthur | 1/12/2015 | 8 | FSGV0417759 | FSGV0417782 | U.S. Patent No, 7,259,972 |
| PX-1.3 | Walker, Cliff | 6/11/2014 | 19 | | | U.S. Patent No. 7,259,972 |
| PX-1.4 | Weirich, Michael | 12/11/2013 | 12 | PIF6 0001656 | PIF6 0001680 | U.S. Patent No. 7,259,972 |
| PX-1.5 | Yang, Ta-Yung | 12/12/2013 | 11 | | | U.S. Patent No. 7,259,972 |
| PX-1.6 | Yang, Ta-Yung | 12/13/2013 | 32 | | | U.S. Patent No. 7,259,972 |
| PX-2 | | | | FSGV0420598 | FSGV0420607 | U.S. Patent No. 7,286,123 |
| PX-2.1 | Collins, Edward | 1/7/2015 | 11 | | | U.S. Patent No. 7,286,123 |
| PX-2.2 | Kelley, Arthur | 1/12/2015 | 6 | FSGV0420598 | FSGV0420607 | U.S. Patent No. 7,286,123 |
| PX-2.3 | Walker, Cliff | 6/11/2014 | 20 | | | U.S. Patent No. 7,286,123 |
| PX-2.4 | Yang, Ta-Yung | 12/12/2013 | 2 | | | U.S. Patent No. 7,286,123 |
| PX-2.5 | Yang, Ta-Yung | 12/13/2013 | 31 | | | U.S. Patent No. 7,286,123 |
| PX-3 | | | | FSGV0391373 | FSGV0391380 | U.S. Patent No. 7,525,259 |
| PX-3.1 | Balakrishnan, Balu | 12/4/2013 | 23 | | | U.S. Patent No. 7,525,259 |
| PX-3.2 | Collins, Edward | 1/7/2015 | 3 | | | U.S. Patent No. 7,525,259 |
| PX-3.3 | Kelley, Arthur | 1/12/2015 | 7 | FSGV0391373 | FSGV0391380 | U.S. Patent No. 7,525,259 |
| PX-3.4 | Malackowski, James | 1/20/2015 | 4 | | | U.S. Patent No. 7,525,259 |
| PX-3.5 | Walker, Cliff | 6/11/2014 | 21 | | | U.S. Patent No. 7,525,259 |
| PX-3.6 | Weirich, Michael | 12/11/2013 | 1 | | | U.S. Patent No. 7,525,259 |
| PX-3.7 | Yang, Ta-Yung | 12/12/2013 | 19 | | | U.S. Patent No. 7,525,259 |
| PX-4 | | | | FSGV0000274 | FSGV0000422 | U.S. Patent No. 7,259,972 Prosecution |
| PX-5 | | | | FSGV0000001 | FSGV0000070 | U.S. Patent No. 7,286,123 Prosecution |
| PX-6 | | | | FSGV0000071 | FSGV0000162 | U.S. Patent No. 7,525,259 Prosecution |
| PX-6.1 | Collins, Edward | 1/7/2015 | 4 | FSGV0000071 | FSGV0000161 | Excerpt from file history |
| PX-6.2 | Weirich, Michael | 12/11/2013 | 9 | FSGV0000071 | FSGV0000162 | `259 File History Excerpt |
| PX-7 | | | | FSGV0549861 | FSGV0549864 | Conception and Reduction to Practice Documents for the '259 Patent |
| PX-8 | | | | FSGV3490501 | FSGV3490742 | Conception and Reduction to Practice Documents for the '259 Patent |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-9 | | | | FSGV3490743 | FSGV3490755 | Conception and Reduction to Practice Documents for the '259 Patent |
| PX-10 | Balakrishnan, Balu | 12/4/2013 | 13 | PIFIV0060756 | PIFIV0060761 | Email from Ben Sutherland to Cliff Walker re Kaga and Sony dated May |
| PX-10.1 | Walker, Cliff | 6/11/2014 | 12 | PIFIV0060756 | PIFIV0060761 | Email from Ben Sutherland to Cliff Walker re Kaga and Sony dated May |
| PX-11 | Hodge, Stuart | 5/6/2014 | 5 | PIFIV0443803 | PIFIV0443866 | Power Integrations Questions and Answers, Fairchild/SG Litigation |
| PX-11.1 | Balakrishnan, Balu | 12/4/2013 | 15 | PIFIV0443803 | PIFIV0443803 | Power Integrations Questions and Answers, Fairchild/SG Litigation |
| PX-11.2 | Sutherland, Ben | 11/6/2013 | 13 | PIFIV0443803 | PIFIV0443804 | Power Integrations Questions and Answers, Fairchild/SG Litigation |
| PX-11.3 | Walker, Cliff | 6/11/2014 | 8 | PIFIV0443803 | PIFIV0443803 | Power Integrations Questions and Answers, Fairchild/SG Litigation |
| PX-12 | | | | | | Power Integrations press release entitled "Power Integrations Reports Verdict in Patent Case Against |
| PX-13 | | | | FSGIV00140561 | FSGIV00140562 | Power Integrations Press Release, "Power Integrations Reports Verdict in |
| PX-14 | McGowan, Steve | 5/8/2014 | 1 | MCGOWAN0000032 | MCGOWAN0000034 | S. McGowan Retention Letter with McDermott Will & Emery LLP |
| PX-15 | McGowan, Steve | 5/8/2014 | 2 | FSGV3490962 | FSGV3491070 | S. McGowan Report on the Availability of Certain Power Integrations Integrated Circuits in the United States |
| PX-16 | McGowan, Steve | 5/8/2014 | 3 | FSGIV00209978 | FSGVIV00210124 | S. McGowan Report on the Availability of Certain Power Integrations |
| PX-17 | McGowan, Steve | 5/8/2014 | 4 | FSGV3490926 | FSGV3490931 | S. McGowan Report on the Availability of GE 62905 LED in the United States |
| PX-18 | McGowan, Steve | 5/8/2014 | 5 | FSGV3490932 | FSGV3490937 | S. McGowan Report on the Availability of Ledare E12 LED1203C4 in the |
| PX-19 | | | | FSGV3490944 | FSGV3490949 | S. McGowan Report on the Availability of Ledare E12 LED1208G4 in the |
| PX-20 | | | | FSGV3490950 | FSGV3490955 | S. McGowan Report on the Availability of Ledare E17 LED1213R4 in the |

| | | | | | |
|---|---|---|---|---|---|
| PX-21 | | | | FSGV3490956 | FSGV3490961 | S. McGowan Report on the Availability of Ledare E26 LED1208G4 in the |
| PX-22 | | | | FSGV3490938 | FSGV3490943 | S. McGowan Report on the Availability of Ledare E12 LED1206C4 in the |
| PX-23 | Hodge, Stuart | 5/6/2014 | 28 | PIF6 0876556 | PIF6 0876575 | LYT4221-4228/4321-4328 LYTSwitch-4 High Power LED Driver IC Family |
| PX-23.1 | Walker, Cliff | 6/11/2014 | 5 | PIF6 0876556 | PIF6 0876575 | LYT4221-4228/4321-4328 LYTSwitch-4 High Power LED Driver IC Family |
| PX-24 | | | | FSGV3558027 | FSGV3558042 | FAN102 Datasheet |
| PX-25 | | | | FSGIV00011024 | FSGIV00011842 | FAN102 Schematic |
| PX-26 | | | | FSGIV00017254 | FSGIV00018936 | FL7730 Schematic |
| PX-27 | | | | FSGIV00018937 | FSGIV00018949 | FL7730 Datasheet |
| PX-28 | | | | PIFIV0156801 | PIFIV0156818 | LinkSwitch-II Datasheet (LNK603-606) |
| PX-29 | | | | PIB 013821 | PIB 013853 | LinkSwitch-II Schematic |
| PX-30 | | | | PIF2184849 | PIF2184868 | LinkSwitch-II Application Note-44 |
| PX-31 | | | | PIF6 0000935 | PIF6 0000998 | LNK-PH OTS Report |
| PX-32 | | | | PIF6 0876576 | PIF6 0876614 | LTY4 Schematic |
| PX-32.1 | Pastore, Tiziano | 6/12/2014 | 23 | PIF6 0876576 | PIF6 0876614 | LTY4 Schematic |
| PX-33 | | | | PIF6 0876615 | PIF6 0876653 | LTY4 Schematic |
| PX-34 | | | | FSGV3561489 | FSGV3561529 | LinkSwitch-PH RDR-193 |
| PX-35 | | | | FSGV3561530 | FSGV3561569 | LinkSwitch-PH RDR-195 |
| PX-36 | | | | FSGV3559107 | FSGV3559146 | LNK-II RDR158 |
| PX-37 | | | | FSGV3559510 | FSGV3559559 | LNK-PH RDR290 |
| PX-38 | | | | FSGV3560468 | FSGV3560545 | LYT4 RDR347 |
| PX-39 | | | | | | Billings, Keith, Switch Mode Power |
| PX-40 | | | | | | Lenk, John D., Simplified Design of Switching Power Supplies (1995) |
| PX-41 | | | | | | Erickson, Robert W., Fundamentals of |
| PX-42 | | | | | | Collins Revised Infringement Report |
| PX-43 | | | | | | Collins Revised Infringement Report Exhibit B - Materials Considered |
| PX-44 | | | | | | Collins Revised Infringement Report |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-45 | | | | | | Collins Revised Infringement Report |
| PX-46 | | | | | | Collins Revised Infringement Report |
| PX-47 | | | | | | Collins Revised Infringement Report |
| PX-48 | | | | | | Collins Revised Infringement Report |
| PX-49 | | | | | | Collins Revised Infringement Report |
| PX-50 | | | | | | Collins Revised Infringement Report |
| PX-51 | | | | | | Collins Revised Infringement Report Exhibit M - Document Chart |
| PX-52 | | | | PIF60000915 | PIF60000934 | LinkSwitch-PH Datasheet |
| PX-53 | | | | PIF60006536 | PIF60006553 | LinkSwitch-PH Application Note |
| PX-54 | | | | FSGV0028445 | FSGV00228457 | FL7730MY Datasheet |
| PX-55 | | | | FSGV3490938 | FSGV3490943 | Ikea Ledare E12 LED1208G4 |
| PX-56 | | | | FSGV3490944 | FSGV3490949 | Ikea Ledare E17 LED1213R4 |
| PX-57 | | | | FSGV3490950 | FSGV3490955 | Ikea Ledare E26 LED1208G4 |
| PX-58 | | | | PIF2034426 | PIF2034461 | Fairchild Semiconductor  Design Guide, "AC/DC Switch Mode Power |
| PX-59 | | | | | | Power Integrations' Responses and Objections to Fairchild's Second Set of |
| PX-60 | | | | | | Excerpts from the trial transcript from April 16 and 24, 2012 |
| PX-61 | | | | FSGIV00159286 | 73598 | Design Center Project Request Form |
| PX-62 | | | | FSGV3558469 | FSGV3558475 | TechCrunch - The First Trillion Dollar |
| PX-63 | | | | FSGV0528429 | | Fairchild Semiconductor Overview |
| PX-64 | | | | FSGV3549516 | FSGV3549528 | LED Lighting Direction Meeting |
| PX-65 | | | | FSGV0528429 | | Fairchild Semiconductor Overview |
| PX-66 | | | | FSGV0200684 | | Power Conversion |
| PX-67 | | | | FSGV3508133 | | ISF - LED Lighting |
| PX-68 | | | | FSGV3508436 | | Fairchild LED Lighting Meeting |
| PX-69 | | | | FSGV3550428 | | LED Lighting Product |
| PX-70 | Kelley, Arthur | 1/13/2005 | 35 | FSG 02204115 | FSG 02204127 | U.S. Patent No. 5,903,452 |
| PX-70.1 | Wei, Gu-Yeon | 1/15/2015 | 25 | | | U.S. Patent No. 5,903,452 |
| PX-71 | Kelley, Arthur | 1/13/2005 | 36 | FSGIV00005012 | FSGIV00005023 | Linear technology, LT1070/LT1071 |
| PX-71.1 | Wei, Gu-Yeon | 1/15/2015 | 24 | | | Linear technology, LT1070/LT1071 |

| PX-72 | Kelley, Arthur | 1/13/2005 | 37 | FSGV3491147 | FSGV3491154 | U.S. Patent No. 8,461,915 |
|---|---|---|---|---|---|---|
| PX-72.1 | Wei, Gu-Yeon | 1/15/2015 | 8 | | | U.S. Patent No. 8,461,915 |
| PX-72.2 | Yang, Ta-Yung | 12/13/2013 | 38 | | | U.S. Patent No. 8,461,915 |
| PX-72.3 | Huang, WH | 12/13/2013 | 3 | | | U.S. Patent No. 8,461,915 |
| PX-73 | Kung, David | 10/10/2013 | 3 | PIF6 0566415 | PIF6 0566440 | Power Integrations, OTS X-Cap Discharge IC, June 2009, Revision B |
| PX-74 | Kung, David | 10/10/2013 | 5 | | | Provisional Application No. |
| PX-75 | Kung, David | 10/10/2013 | 6 | | | Certified Translation of portions of Provisional Application No. |
| PX-76 | Matthews, Michael | 10/11/2013 | 9 | | | Annex 2 - Working document on possible ecodesign requirements for standby and off-mode electric power comsumption of electrical and |
| PX-77 | Matthews, Michael | 10/11/2013 | 11 | PIFIV0117893 | PIFIV0117894 | Email chain from Mike Matthews to Doug Bailey regarding Competition in |
| PX-78 | Wei, Gu-Yeon | 1/15/2015 | 12 | BSTZ 010542 | BSTZ 010560 | Unitrode Application Note U-133, UCC 3800/1/2/3/4/5 BiCMOS Current |
| PX-79 | Wei, Gu-Yeon | 1/15/2015 | 15 | FCS0524438 | FCS0524445 | F.J. Stasi, T. Szepesi, A 5A 100 KHZ Monolithic Bipolar DC/DC Converter, |
| PX-80 | | | | FSGV0050559 | FSGV0050567 | "Off-Line Power Integrated Circuit for International Rated 60-watt Power Supplies" by Richard Keller, Applied Power Electronics conference and |
| PX-81 | | | | FSGV0050770 | FSGV0050779 | Unitrode Application Note U-133 ("U- |
| PX-82 | | | | | | U.S. Patent App. Pub. No. |
| PX-83 | | | | FSGV0050814 | FSGV0050819 | U.S. Patent No. 4,806,842 |
| PX-83.1 | Wei, Gu-Yeon | 1/15/2015 | 16 | FSGV0050814 | FSGV0050819 | U.S. Patent No. 4,806,842 |
| PX-84 | | | | FSGV0050865 | FSGV0050878 | U.S. Patent No. 5,999,429 |
| PX-84.1 | Kung, David | 10/10/2013 | 4 | | | U.S. Patent No. 5,999,429 |
| PX-85 | | | | FSGV0050525 | FSGV0050537 | U.S. Patent No. 7,498,788 |
| PX-85.1 | Kelley, Arthur | 1/13/2005 | 44 | FSGV0050525 | FSGV0050537 | U.S. Patent No. 7,498,788 |
| PX-85.2 | Wei, Gu-Yeon | 1/15/2015 | 23 | | | U.S. Patent No. 7,498,788 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-86 | | | | | | European Commission, "Working Document On Possible Ecodesign Requirements for Standby and Off-Mode Electric Power Consumption Of Electrical and Electronic Household And Office Equipment", |
| PX-87 | | | | | | Huber et al., Reducing Leaking Electricity to 1 Watt, |
| PX-88 | | | | FSGV0050751 | FSGV0050769 | Unitrode App Note U-133 |
| PX-89 | | | | FSGV0050688 | FSGV0050695 | A 5A 100 KHz Monolithic Bipolar DC DC Converter" by de Stasi and Szepesi, |
| PX-90 | | | | FSGV0050731 | FSGV0050741 | SGS-Thompson datasheet entitled "TEA2262, Switch Mode Power Supply |
| PX-91 | | | | | | Directive 2004/108/EC of the European Parliament and of the |
| PX-92 | | | | | | EN60950-1/UL60950-1 Standard |
| PX-93 | | | | | | European Commission Regulation No. 1275/2008 of December 17, 2008 |
| PX-94 | | | | | | CapZero Video from http://ac-dc.power.com/zh- |
| PX-95 | | | | FSGV0050655 | FSGV0050667 | PWR-SMP260 Datasheet |
| PX-96 | | | | FCS1686647 | FCS1686655 | SGS -Thomson Microelectronics, |
| PX-97 | | | | PIF60566405 | PIF60566411 | X-Cap Discharge IC |
| PX-98 | | | | PIF60566415 | PIF60566440 | OTS X-Cap Discharge IC |
| PX-99 | | | | | | U.S. Patent No. 5,841,313 |
| PX-100 | | | | FCS0000207 | FCS0000316 | U.S. Patent No. 6,229,366 Prosecution |
| PX-101 | | | | FSGV3562269 | FSGV3563119 | U.S. Patent No. 6,229,366 Reexam File |
| PX-102 | | | | PIF6 0000053 | PIF6 0000276 | U.S. Patent No. 7,876,587 Prosecution |
| PX-103 | | | | PIF6 0000296 | PIF6 0000467 | U.S. Patent No. 7,952,895 |
| PX-104 | | | | PIF6 0000489 | PIF6 0000686 | U.S. Patent No. 7,995,359 |
| PX-105 | | | | PIF6 0000712 | PIF6 0000914 | U.S. Patent No. 8,115,457 |
| PX-106 | | | | FSGV3563120 | FSGV3563401 | U.S. Patent No. 6,462,971 Prosecution |
| PX-107 | | | | FSGV3561634 | FSGV3561639 | U.S. Patent No. 5,266,884 |

| PX-108 | | | | FSGV3562016 | FSGV3562019 | May 30, 2011 Response to Office Action in U.S. Pat. App. No. |
|---|---|---|---|---|---|---|
| PX-109 | | | | FSGV3561997 | FSGV3562015 | July 10, 2008 Response to Office Action in Reexamination of U.S. Patent |
| PX-110 | | | | FSGV3561972 | FSGV3561996 | Jan. 30, 2009 Amendment in Reexamination of U.S. Patent No. |
| PX-111 | | | | FSGV3562064 | FSGV3562093 | September 21, 2009 Appeal Brief in Reexamination of U.S. Patent No. |
| PX-112 | | | | FSGV3562094 | FSGV3562111 | September 28, 2010 Office Action in Reexamination of U.S. Patent No. |
| PX-113 | | | | FSGV3562020 | FSGV3562063 | Nov. 29, 2010 Response to Office Action in Reexamination of U.S. Patent |
| PX-114 | | | | F1 - PD-1512 | | PD-1512 from the September 16–20, 2007 invalidity trial in Case No. 04-1371 |
| PX-115 | | | | F1 - PD-1511 | | PD-1511 from the September 16–20, 2007 invalidity trial in Case No. 04-1371 |
| PX-115.1 | Kelley, Arthur | 1/13/2005 | 29 | F1 - PD-1511 | | PD-1511 from the September 16–20, 2007 invalidity trial in Case No. 04-1371 |
| PX-116 | | | | | | Trial Volume 4 of the trial transcript from the September 16–20, 2007 invalidity trial in Fairchild |
| PX-117 | | | | | | Supplemental Rebuttal Expert Report of Robert Blauschild served by Power |
| PX-118 | | | | | | Application note for Fairchild's |
| PX-119 | | | | FSGV3490759 | FSGV3490800 | Testing Data for U.S. Patent No. |
| PX-120 | | | | F1 - PD-477 | | PD-477 from the October 2-6, 2006 infringement trial in Case No. 04-1371 ("Fairchild I") |
| PX-121 | | | | F1 - PD-485 | | PD-485 from the October 2-6, 2006 infringement trial in Case No. 04-1371 ("Fairchild I") |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-122 | | | | F1 - PD-486 | | PD-486 from the October 2-6, 2006 infringement trial in Case No. 04-1371 ("Fairchild I") |
| PX-123 | | | | F1 - PD-502 | | PD-502 from the October 2-6, 2006 infringement trial in Case No. 04-1371 ("Fairchild I") |
| PX-124 | | | | F1 - PD-531 | | PD-531 from the October 2-6, 2006 infringement trial in Case No. 04-1371 ("Fairchild I") |
| PX-125 | | | | FCS0026915 | FCS0026960 | FSD210 Schematic (PX-241 from the October 2-6, 2006 infringement trial in |
| PX-126 | | | | FCS0077092 | FCS0077124 | FSDx0365RNB Schematic (PX-246 from the October 2-6, 2006 infringement |
| PX-127 | | | | FSGV3561573 | | Dec. 10, 2013 Video of testing overseen by Fairchild engineer WH Huang, carried out by Eddie Chieh, |
| PX-128 | | | | F1 - PD-1547 | | PD-1547 from the September 16–20, 2007 invalidity trial in Fairchild I |
| PX-129 | | | | FSGV3490768 | FSGV3490795 | Series of Testing Plots |
| PX-129.1 | Kelley, Arthur | 1/13/2005 | 43 | FSGV3490768 | FSGV3490795 | Series of Testing Plots |
| PX-129.2 | Huang, WH | 12/13/2013 | 2 | FSGV3490768 | FSGV3490795 | Series of Testing Plots |
| PX-130 | Bailey, Doug | 10/16/2013 | 1 | | | Plaintiff's Notice of Deposition of Douglas Bailey Pursuant to Federal |
| PX-131 | Bailey, Doug | 10/16/2013 | 3 | | | Power Integrations' Designations and Objections in Response to Defendants' |
| PX-132 | Bailey, Doug | 10/16/2013 | 4 | | | Fairchild Semiconductor Corporation and System General Corporation's Initial Discovery Disclosures Pursuant |
| PX-133 | Bailey, Doug | 10/16/2013 | 11 | PIFIV0129804 | PIFIV0129830 | Power Integrations: Long Term Plan, |
| PX-134 | Bailey, Doug | 10/16/2013 | 12 | PIFIV0191185 | PIFIV0191231 | Power Integrations Marketing Strategy |
| PX-134.1 | Hodge, Stuart | 5/6/2014 | 4 | PIFIV0191185 | PIFIV0191231 | Power Integrations Marketing Strategy |
| PX-134.2 | Sutherland, Ben | 11/6/2013 | 11 | PIFIV0191185 | PIFIV0191231 | Power Integrations Marketing Strategy |
| PX-135 | Balakrishnan, Balu | 12/4/2013 | 1 | | | Power Integrations' Designations and Objections in Response to Defendants' |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-136 | Balakrishnan, Balu | 12/4/2013 | 2 | | | Letter from Michael Headley to Christina Ondrick, Rob Walters, Rose |
| PX-137 | Balakrishnan, Balu | 12/4/2013 | 4 | | | Power Integrations' Supplemental Responses and Objections to |
| PX-137.1 | Bailey, Doug | 10/16/2013 | 6 | | | Power Integrations' Supplemental Responses and Objections to |
| PX-137.2 | Tomlin, John | 10/29/2013 | 4 | | | Power Integrations' Supplemental Responses and Objections to |
| PX-137.3 | Walker, Cliff | 6/11/2014 | 16 | | | Power Integrations' Supplemental Responses and Objections to |
| PX-137.4 | Wu, Yu Shan | 11/6/2013 | 4 | | | Power Integrations' Supplemental Responses and Objections to |
| PX-138 | Balakrishnan, Balu | 12/4/2013 | 5 | | | U.S. Patent No. 7,876,587 |
| PX-139 | Balakrishnan, Balu | 12/4/2013 | 6 | PI 0081634 | PI 0081645 | Power Integrations' Invention |
| PX-139.1 | Djenguerian, A. | 10/11/2013 | 15 | PI00081634 | PI00081645 | Power Integrations' Invention |
| PX-140 | Balakrishnan, Balu | 12/4/2013 | 7 | | | U.S. Patent No. 8,115,457 |
| PX-141 | Balakrishnan, Balu | 12/4/2013 | 8 | | | U.S. Patent No. 7,995,359 |
| PX-142 | Balakrishnan, Balu | 12/4/2013 | 9 | | | U.S. Patent No. 7,952,895 |
| PX-143 | Balakrishnan, Balu | 12/4/2013 | 10 | | | Press Release titled "Power Integrations Reports Verdict in Patent Case Against Fairchild Semiconductor" |
| PX-144 | Balakrishnan, Balu | 12/4/2013 | 14 | PIFIV0061105 | PIFIV0061105 | Letter from Ben Sutherland to Whom It May Concern dated June 16, 2012 |
| PX-144.1 | Walker, Cliff | 6/11/2014 | 11 | PIFIV0061105 | PIFIV0061105 | Letter from Ben Sutherland to Whom It May Concern dated June 16, 2012 |
| PX-145 | Balakrishnan, Balu | 12/4/2013 | 16 | | | 2012 Quarter 1 Earnings Call |
| PX-146 | Balakrishnan, Balu | 12/4/2013 | 17 | | | Power Integration 2012 Annual Report |
| PX-147 | Balakrishnan, Balu | 12/4/2013 | 18 | | | 2010 Quarter 4 Earnings Call |
| PX-148 | Balakrishnan, Balu | 12/4/2013 | 19 | | | 2011 Quarter 3 Earnings Call |
| PX-149 | Balakrishnan, Balu | 12/4/2013 | 20 | | | 2011 Quarter 4 Earnings Call |
| PX-150 | Balakrishnan, Balu | 12/4/2013 | 21 | | | 2012 Quarter 2 Earnings Call |
| PX-151 | Balakrishnan, Balu | 12/4/2013 | 22 | | | 2012 Quarter 4 Earnings Call |
| PX-152 | Chan, Kenny | 5/16/2014 | 1 | | | Power Integrations' notice of |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-153 | Chan, Kenny | 5/16/2014 | 2 | | | Power Integrations' Notice of Deposition of Fairchild Semiconductor |
| PX-154 | Chan, Kenny | 5/16/2014 | 3 | | | Plaintiffs' Objections and Responses to Defendant's 30(b)(6) Notice of |
| PX-155 | Chan, Kenny | 5/16/2014 | 4 | FSGV0049298 | FSGC0049307 | Ming-Chang Tsou, Tim Lee, Kenny Chan, An Innovative Solution for |
| PX-155.1 | Huang, WH | 12/13/2013 | 14 | FSGV0049298 | FSGC0049307 | Ming-Chang Tsou, Tim Lee, Kenny Chan, An Innovative Solution for |
| PX-156 | Chan, Kenny | 5/16/2014 | 5 | FSGIV00091526 | FSGIV00091549 | Fairchild Power IC Presentation |
| PX-157 | Chan, Kenny | 5/16/2014 | 6 | FSGIV00128517 | FSGIV00128529 | Fairchild Semiconductor: 2012 SBP Computing & Communication |
| PX-158 | Chan, Kenny | 5/16/2014 | 9 | FSGIV00141031 | FSGIV00141061 | Weekly Update_W01 Computing and Communication by Kenny Chan |
| PX-159 | Chan, Kenny | 5/16/2014 | 10 | FSGV0183975 | FSGV0183979 | Fairchild "Green" Technology Brand |
| PX-160 | Collins, Edward | 1/7/2015 | 1 | | | CV of Dr. Edward Collins |
| PX-161 | Collins, Edward | 1/7/2015 | 2 | | | Rebuttal Report of Dr. Edward Collins |
| PX-162 | Collins, Edward | 1/7/2015 | 6 | PIF6 0001585 | PIF6 0001602 | U.S. Patent No. 6,862,194 |
| PX-162.1 | Kelley, Arthur | 1/12/2015 | 17 | PIF6 0001585 | PIF60001602 | U.S. Patent No. 6,862,194 |
| PX-162.2 | Weirich, Michael | 12/11/2013 | 13 | PIF6 0001585 | PIF6 0001602 | U.S. Patent No. 6,862,194 |
| PX-162.3 | Yang, Ta-Yung | 12/12/2013 | 18 | PIF6 0001585 | PIF6 0001602 | U.S. Patent No. 6,862,194 |
| PX-163 | Collins, Edward | 1/7/2015 | 9 | PIF6 0001506 | PIF6 0001527 | Philips Integrated Circuits Data Sheet, TEA1401T, Power Plug for the |
| PX-164 | Collins, Edward | 1/7/2015 | 10 | | | Transcript Excerpt of Deposition fo |
| PX-165 | Collins, Edward | 1/7/2015 | 12 | | | DI 87 - Court's Memorandum Opinion |
| PX-166 | Collins, Edward | 1/7/2015 | 13 | | | Revised Opening Expert Report of Dr. Edward R. Collins Regarding |
| PX-167 | Collins, Edward | 1/7/2015 | 15 | PIF6 0001528 | PIF6 0001536 | U.S. Patent No. 4,529,949 |
| PX-167.1 | Kelley, Arthur | 1/12/2015 | 12 | PIF6 0001528 | PIF6 0001536 | U.S. Patent No. 4,529,949 |
| PX-167.2 | Collins, Edward | 1/7/2015 | 16 | PIF6 0001537 | PIF6 0001543 | U.S. Patent No. 4,952,949 |
| PX-167.3 | Kelley, Arthur | 1/12/2015 | 13 | PIF6 0001537 | PIF6 0001543 | U.S. Patent No. 4,952,949 |
| PX-167.4 | Yang, Ta-Yung | 12/12/2013 | 6 | PIF6 0001537 | PIF6 0001543 | U.S. Patent No. 4,952,949 |
| PX-169 | Djenguerian, A. | 10/11/2013 | 14 | | | U.S. Patent No. 7,876,587 |
| PX-170 | Djenguerian, A. | 10/11/2013 | 16 | | | U.S. Patent No. 7,995,359 |
| PX-171 | Espino, Marvin | 10/31/2013 | 1 | PIFIV0133471 | PIFIV0133488 | Power Integrations, Inc. Org Chart as |

| PX-171.1 | Gaknoki, Gary | 10/29/2013 | 2 | PIFIV0133471 | PIFIV0133488 | Power Integrations, Inc. Org Chart as |
| PX-171.2 | Hodge, Stuart | 5/6/2014 | 2 | PIFIV0133471 | PIFIV0133488 | Power Integrations, Inc. Org Chart as |
| PX-171.3 | Pastore, Tiziano | 6/12/2014 | 1 | PIFIV0133471 | PIFIV0133488 | Power Integrations, Inc. Org Chart as |
| PX-171.4 | Wu, Yu Shan | 11/6/2013 | 1 | PIFIV0133471 | PIFIV0133488 | Power Integrations, Inc. Org Chart as |
| PX-172 | Espino, Marvin | 10/31/2013 | 2 | | | LED Drivers forIndustrial/Outdoor Lighting Gold LED Driver Reference |
| PX-173 | Espino, Marvin | 10/31/2013 | 3 | | | LED Drivers for Commercial Lighting, Silver LED Driver Reference Designs |
| PX-174 | Espino, Marvin | 10/31/2013 | 4 | | | LED Drivers for Residential Lighting, Bronze LED Driver Reference Designs |
| PX-175 | Espino, Marvin | 10/31/2013 | 7 | PIF6 0573457 | PIF6 0573504 | Power Integrations Design Example Report Document Number DER-315 |
| PX-176 | Fimiani, Silvestro | 10/17/2013 | 2 | PIF6 0313364 | PIF6 0313430 | Fairchild, LED 42 Lighting Solutions, |
| PX-176.1 | Bailey, Doug | 10/16/2013 | 17 | PIF6 0313364 | PIF6 0313430 | Fairchild, LED 42 Lighting Solutions, |
| PX-177 | Fimiani, Silvestro | 10/17/2013 | 5 | PIF6 0547064 | PIF6 0547077 | Fairchild, PSR 49 LED Lighting Driver |
| PX-178 | Fimiani, Silvestro | 10/17/2013 | 10 | | | Plaintiffs' Notice of Deposition of Silvestro Fimiani Pursuant To Federal |
| PX-179 | Fu, Steven | 5/30/2014 | 1 | | | Steven Fu LinkedIn Profile |
| PX-180 | Fu, Steven | 5/30/2014 | 2 | FSGV0222186 | FSGV0222197 | Fairchild, Porter Forces Analysis, |
| PX-181 | Fu, Steven | 5/30/2014 | 4 | FSGV3508019 | FSGV3508046 | Fairchild, ISF-LED Lighting, December |
| PX-182 | Fu, Steven | 5/30/2014 | 11 | | | Fairchild Semiconductor Form 10-K for the Fiscal Year Ended 12/29/13 |
| PX-183 | Fu, Steven | 5/30/2014 | 13 | | | Power Integrations' Notice of Deposition of Fairchild Semiconductor Corporation and System General |
| PX-184 | Fu, Steven | 5/30/2014 | 14 | | | Plaintiff Fairchild Semiconductor Corporation and System General's Response to Defendant Power |
| PX-185 | Gaknoki, Gary | 10/29/2013 | 1 | | | Power Integrations' Designations and Objections in Response to Defendants' |
| PX-186 | Gaknoki, Gary | 10/29/2013 | 3 | | | Power Integrations' Responses and Objections to Fairchild Semiconductor Corporation and System General |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-186.1 | Baeurle, Stefan | 10/30/2013 | 1 | | | Power Integrations' Responses and Objections to Fairchild Semiconductor Corporation and System General |
| PX-186.2 | Bailey, Doug | 10/16/2013 | 5 | | | Power Integrations' Responses and Objections to Fairchild Semiconductor Corporation and System General |
| PX-186.3 | St. Pierre, Roland | 12/5/2013 | 3 | | | Power Integrations' Responses and Objections to Fairchild Semiconductor Corporation and System General |
| PX-186.4 | Sutherland, Ben | 11/6/2013 | 3 | | | Power Integrations' Responses and Objections to Fairchild Semiconductor Corporation and System General |
| PX-186.5 | Tomlin, John | 10/29/2013 | | | | Power Integrations' Responses and Objections to Fairchild Semiconductor Corporation and System General |
| PX-186.6 | Wu, Yu Shan | 11/6/2013 | 3 | | | Power Integrations' Responses and Objections to Fairchild Semiconductor Corporation and System General |
| PX-187 | Hodge, Stuart | 5/6/2014 | 1 | | | Notice of Deposition |
| PX-188 | Hodge, Stuart | 5/6/2014 | 3 | PIFIV0426252 | PIFIV0426337 | Power Integrations, PI's Fundamental |
| PX-188.1 | Sutherland, Ben | 11/6/2013 | 10 | PIFIV0426252 | PIFIV0426337 | Power Integrations, PI's Fundamental |
| PX-189 | Hodge, Stuart | 5/6/2014 | 10 | PIFIV0497794 | PIFIV0497806 | Power Integrations, Proposed Operating Plan (Budget)for 2013, |
| PX-189.1 | Smith, Andrew | 10/31/2013 | 1 | PIFIV0497794 | PIFIV0497806 | Power Integrations, Proposed Operating Plan (Budget)for 2013, |
| PX-189.2 | Verity, Eric | 10/30/2013 | 12 | PIFIV0497794 | PIFIV0497806 | Power Integrations, Proposed Operating Plan (Budget)for 2013, |
| PX-190 | Huang, WH | 12/13/2013 | 1 | | | Power Integrations' Notice of Deposition of Fairchild Semiconductor Corporation Pursuant to Federal Rule |
| PX-191 | Huang, WH | 12/13/2013 | 4 | | | Plaintiffs Fairchild Semiconductor Corporation and System General's Response to Defendant Power |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-192 | Huang, WH | 12/13/2013 | 6 | | | Start-up Circuit to Discharge EMI Filter for Power Saving of Power Supplies |
| PX-193 | Huang, WH | 12/13/2013 | 11 | FSGV0016881 | FSGV0016955 | PowerPoint Presentation of FAN6756 |
| PX-194 | Huang, WH | 12/13/2013 | 13 | FSGV0015232 | FSGV0015236 | PowerPoint Presentation of FAN6756 |
| PX-195 | Huang, WH | 12/13/2013 | 15 | | | Power Integrations' Notice of Deposition of WH Huang Pursuant to |
| PX-196 | Huang, WH | 6/19/2014 | 22 | | | Plaintiffs' Second Supplemental Objections and Responses to |
| PX-197 | Johnson, Brian | 10/23/2013 | 2 | FSGV0216116 | FSGV0216123 | LED Lighting Business Plan by Brian |
| PX-198 | Johnson, Brian | 10/23/2013 | 13 | FSGV018330 | FSGV0183355 | Fairchild Presentation: "IC-Bench" Web Design Tool: Program Review |
| PX-199 | Kelley, Arthur | 1/12/2015 | 1 | | | Rebuttal Expert Report of Dr. Arthur W. Kelley Regarding Non-Infringement of Fairchild's U.S. Patent Nos. |
| PX-200 | Kelley, Arthur | 1/12/2015 | 2 | | | Opening Expert Report of Dr. Arthur W. Kelley Regarding Invalidity of Fairchild's U.S. Patent Nos. 7,252,259, |
| PX-201 | Kelley, Arthur | 1/12/2015 | 3 | | | Opening Expert Report of Dr. Arthur W. Kelley Regarding Infringement of Power Integrations' U.S. Patent Nos. |
| PX-202 | Kelley, Arthur | 1/12/2015 | 4 | | | Rebuttal Expert Report of Dr. Arthur Kelley Regarding Validity of the U.S. |
| PX-203 | Kelley, Arthur | 1/12/2015 | 5 | | | Revised Expert Report of Dr. Arthur W. Kelley Regarding Infringement of U.S. Patent Nos. 7,286,123, 7,525,259, and |
| PX-204 | Kelley, Arthur | 1/12/2015 | 9 | | | Declaration of Arthur W. Kelley |
| PX-205 | Kelley, Arthur | 1/12/2015 | 10 | | | Memorandum Opinion |
| PX-206 | Kelley, Arthur | 1/12/2015 | 16 | FSG00205311 | FSG00205330 | LinkSwitch Design Guide Application |
| PX-207 | Kelley, Arthur | 1/12/2015 | 18 | PIF6 0001508 | PIF6 0001527 | Philips Integrated Circuits Data Sheet, TEA1401T, Power Plug for the |
| PX-207.1 | Weirich, Michael | 12/11/2013 | 14 | PIF6 0001508 | PIF6 0001527 | Philips Integrated Circuits Data Sheet, TEA1401T, Power Plug for the |

| PX-208 | Kelley, Arthur | 1/13/2005 | 19 | | | Rebuttal Expert Report of Dr. Arthur W. Kelley Regarding Validity of Power Integrations' U.S. Patent Nos. |
| PX-209 | Kelley, Arthur | 1/13/2005 | 20 | | | Supplemental Expert Report of Dr. Arthur W. Kelley Regarding Validity of Power Integrations' U.S. Patent Nos. |
| PX-210 | Kelley, Arthur | 1/13/2005 | 21 | | | Revised Opening Expert Report of Gu-Yeon Wei Regarding U.S. Patent Nos. 7,995,359, 7,952,895, 8,115,457, |
| PX-211 | Kelley, Arthur | 1/13/2005 | 22 | | | Rebuttal Expert Report of Dr. Arthur W. Kelley Regarding Noninfringement of U.S. Patent Nos. 6,229,366, |
| PX-212 | Kelley, Arthur | 1/13/2005 | 23 | PFI6 000001 | PIF6 0000022 | U.S. Patent No. 6,229,366 |
| PX-212.1 | Balakrishnan, Balu | 12/4/2013 | 3 | | | U.S. Patent No. 6,229,366 |
| PX-212.2 | Park, YB | 5/19/2014 | 4 | | | U.S. Patent No. 6,229,366 |
| PX-212.3 | Walker, Cliff | 6/11/2014 | 17 | | | U.S. Patent No. 6,229,366 |
| PX-213 | Kelley, Arthur | 1/13/2005 | 28 | F1 - PD-1507 | | 366 Soft Start is Separate from the |
| PX-214 | Kelley, Arthur | 1/13/2005 | 30 | | | Power Integrations v. Fairchild Semiconductor, Case No. 04-1371, |
| PX-215 | Kelley, Arthur | 1/13/2005 | 31 | | | SMP240/260 is Missing Elements of '366 Patent Claim 9 - PD-1533 |
| PX-216 | Kelley, Arthur | 1/13/2005 | 32 | | | Transcript of Deposition of W. H. |
| PX-217 | Kelley, Arthur | 1/13/2005 | 33 | FSGV3561640 | FSGV3561921 | Certificate of Corrections, U.S. Patent |
| PX-218 | Kelley, Arthur | 1/13/2005 | 34 | | | SG6841 - 'Limit 5' Schematic - PD-362 |
| PX-219 | Kelley, Arthur | 1/13/2005 | 38 | PIFIV0052798 | PIFIV0052958 | Mike Matthews Composition Book |
| PX-219.1 | Matthews, Michael | 10/11/2013 | 10 | PIFIV0052798 | PIFIV0052798 | Mike Matthews Composition Book |
| PX-220 | Kelley, Arthur | 1/13/2005 | 39 | PIFIV0117115 | PIFIV0117122 | PowerPoint titled "Power Integrations, COG Planning - New Product Interim |
| PX-221 | Kelley, Arthur | 1/13/2005 | 40 | PIF6 0566405 | PIF6 0566411 | X Cap Discharge IC Overview |
| PX-221.1 | Matthews, Michael | 10/11/2013 | 12 | PIF6 0566405 | PIF6 0566411 | X Cap Discharge IC Overview |
| PX-222 | Kelley, Arthur | 1/13/2005 | 41 | PIF6 0566448 | PIF6 0566472 | Power Integrations, OTS Xcap Discharge IC, June 2009, Revision A |
| PX-223 | Kelley, Arthur | 1/13/2005 | 42 | PIF6 0590663 | PIF6 0590678 | X-Cap Bleeder Preliminary Design |
| PX-223.1 | Kung, David | 10/10/2013 | 2 | PIF6 0590663 | PIF6 0590678 | X-Cap Bleeder Preliminary Design |

| PX-224 | Kim, Richard | 5/20/2014 | 1 | | | Power Integrations Notice of |
| PX-225 | Kim, Richard | 5/20/2014 | 2 | | | Power Integrations Notice of Deposition of Fairchild Semiconductor |
| PX-226 | Kim, Richard | 5/20/2014 | 3 | | | Plaintiffs' Objections and Responses to Defendant's 30(b)(6) Notice of |
| PX-227 | Kim, Richard | 5/20/2014 | 4 | | | CD Containing native Excel |
| PX-228 | Kim, Richard | 5/20/2014 | 5 | | | Plaintiff's Fairchild Semiconductor Corporation and System General's Second Supplemental Response to |
| PX-229 | Kung, David | 10/10/2013 | 1 | | | U.S. Patent No. 8,115,457 |
| PX-230 | Lee, James | 5/19/2014 | 1 | | | Power Integrations' Notice of Deposition of Fairchild Semiconductor |
| PX-231 | Lee, James | 5/19/2014 | 2 | | | Plaintiffs' First Supplemental Objections and Responses to |
| PX-232 | Lee, James | 5/19/2014 | 3 | | | Plaintiffs Fairchild Semiconductor Corporation and System General's Second Supplemental Response to |
| PX-233 | Lin, Gary | 12/12/2013 | 1 | | | Power Integrations' Notice of Deposition of Fairchild Semiconductor Corporation and System General |
| PX-234 | Lin, Gary | 12/12/2013 | 2 | | | Plaintiffs' Objections and Responses to Defendant's 30(b)(6) Notice of |
| PX-235 | Lin, Gary | 12/12/2013 | 3 | | | Power Integrations' Notice of Deposition of Gary Lin Pursuant to |
| PX-236 | Lin, Gary | 12/12/2013 | 4 | FSGV0540689 | FSGV0540761 | October 19th, 2012 Power Conversion |
| PX-237 | Lin, Gary | 12/12/2013 | 5 | | | Plaintiffs Fairchild Semiconductor Corporation and System General's Response to Defendant Power |
| PX-238 | Lin, Gary | 12/12/2013 | 6 | FSGV0548102 | FSGV0548191 | July 20, 2010 Power Conversion 2010 |
| PX-239 | Lin, Gary | 12/12/2013 | 8 | FSGV0209953 | FSGV0209973 | June 19th, 2012 Power Conversion 12 |
| PX-240 | Lin, Gary | 12/12/2013 | 9 | FSGV0198357 | FSGV0198448 | October 21, 2011 2012 AOP Power |
| PX-241 | Lin, Gary | 12/12/2013 | 10 | | | Document re Wafer IDs |
| PX-242 | Lin, Gary | 12/12/2013 | 14 | FSGIV00104867 | FSGIV00104893 | August 4, 2011, Fairchild,Top 5 Project |
| PX-243 | Malackowski, James | 1/20/2015 | 1 | | | Affirmative Expert Report of James E. |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-244 | Malackowski, James | 1/20/2015 | 2 | | | Spreadsheet Summary of Revised Infringing Units & Reasonable Royalty |
| PX-245 | Malackowski, James | 1/20/2015 | 3 | | | Rebuttal Expert Report of James E. |
| PX-246 | Malackowski, James | 1/20/2015 | 6 | | | Appendix C to Robinson Opening |
| PX-247 | Matthews, Michael | 10/11/2013 | 7 | | | U.S. Patent No. 7,952,895 |
| PX-248 | Matthews, Michael | 10/11/2013 | 8 | | | Power Integrations' Responses and Objections to Fairchild Semiconductor Corporation and System General |
| PX-249 | Matthews, Michael | 10/11/2013 | 13 | | | Power Integrations Press Release, Power Integrations' New CAPZero™ Ics Automatically and Safely Discharge X |
| PX-250 | McGowan, Steve | 5/8/2014 | 6 | MCGOWAN0000035 | MCGOWAN0000035 | Excel Spreadsheet |
| PX-251 | Park, YB | 5/19/2014 | 1 | | | Power Integrations' Notice of Deposition of Fairchild Semiconductor Corporation and System General |
| PX-252 | Park, YB | 5/19/2014 | 2 | | | Plaintiffs' Objections and Responses to Defendant's 30(b)(6) Notice of |
| PX-253 | Park, YB | 5/19/2014 | 3 | | | Power Integrations' Notice of Deposition of Y.B, Park Pursuant to |
| PX-254 | Park, YB | 5/19/2014 | 5 | | | Power Integrations Inc. v. Fairchild Semiconductor Int'l, Case No. 04-1371, Declaration of Gu-Yeon Wei in |
| PX-255 | Park, YB | 5/19/2014 | 6 | | | U.S. Patent No. 7,876,587 |
| PX-256 | Park, YB | 5/19/2014 | 7 | | | U.S. Patent No. 8,242,755 |
| PX-257 | Park, YB | 5/19/2014 | 8 | | | U.S. Patent No. 7,848,124 |
| PX-258 | Park, YB | 5/19/2014 | 9 | | | U.S. Patent App. No. 13/027,013 |
| PX-259 | Park, YB | 5/19/2014 | 22 | | | Power Integrations, Inc. v. Fairchild Semicondcutor Int'l, Case No. 04- |
| PX-260 | Pastore, Tiziano | 6/12/2014 | 19 | PIF6 0519889 | PIF6 0519889 | Spreadsheets |
| PX-261 | Pastore, Tiziano | 6/12/2014 | 21 | PIF6 0549266 | PIF6 0549283 | Power Integrations, ApplicationNote AN-49 LinkSwitch-PH Family Design |
| PX-261.1 | St. Pierre, Roland | 12/5/2013 | 6 | PIF6 0549266 | PIF6 0549283 | Power Integrations, ApplicationNote AN-49 LinkSwitch-PH Family Design |

| PX-262 | Robinson, Mark | 1/21/2015 | 1 | | | Initial Expert Report of Mark A. |
|--------|----------------|-----------|---|---|---|---------------------------------|
| PX-263 | Robinson, Mark | 1/21/2015 | 2 | | | Correction to Mark Robinson Report |
| PX-264 | Robinson, Mark | 1/21/2015 | 3 | | | Rebuttal Expert Report of Mark A. |
| PX-265 | St. Pierre, Roland | 12/5/2013 | 1 | PIF6 011460 | PIF6 0114699 | Power Integrations, Product Concept/OTS Project Code Name |
| PX-266 | St. Pierre, Roland | 12/5/2013 | 2 | | | Plaintiffs' First Notice of Deposition Pursuant to Federal Rule of Civil |
| PX-266.1 | Bailey, Doug | 10/16/2013 | 2 | | | Plaintiff's First Notice of Deposition Pursuant to Federal Rule of Civil |
| PX-266.2 | Sutherland, Ben | 11/6/2013 | 1 | | | Plaintiffs' First Notice of Deposition Pursuant to Federal Rule of Civil |
| PX-266.3 | Tomlin, John | 10/29/2013 | 1 | | | Plaintiffs' First Notice of Deposition Pursuant to Federal Rule of Civil |
| PX-266.4 | Verity, Eric | 10/30/2013 | 1 | | | Plaintiffs' First Notice of Deposition Pursuant to Federal Rule of Civil |
| PX-267 | Sutherland, Ben | 11/6/2013 | 2 | | | Power Integrations'Designations and Objections in Response to Defendants' |
| PX-268 | Sutherland, Ben | 11/6/2013 | 14 | PIFIV0156336 | PIFIV0156336 | CD labeled "Fairchild Semiconductor Corporation and System General Corporation v. Power Integrations, Inc. |
| PX-269 | Sutherland, Ben | 11/6/2013 | 15 | PIFIV0195617 | PIFIV0195617 | CD labeled "FairchildSemiconductor Corporation and System General Corporation v. Power Integrations, Inc. |
| PX-270 | Sutherland, Ben | 11/6/2013 | 16 | PIF6 0255316 | PIF6 0255405 | Power Integrations, Marketing |
| PX-270.1 | Hodge, Stuart | 5/6/2014 | 7 | PIF6 0255316 | PIF6 0255405 | Power Integrations, Marketing |
| PX-271 | Sutherland, Ben | 11/6/2013 | 17 | PIF6 0400006 | PIF6 0400012 | Power Integrations, Marketing Metrics |
| PX-271.1 | Hodge, Stuart | 5/6/2014 | 6 | PIF6 0400006 | PIF6 0400012 | Power Integrations, Marketing Metrics |
| PX-272 | Sutherland, Ben | 11/6/2013 | 21 | PIFIV0063885 | PIFIV0063893 | Power Integrations, Q4 Sales Update Board of Directors Meeting - Ben |
| PX-272.1 | Hodge, Stuart | 5/6/2014 | 8 | PIFIV0063885 | PIFIV0063893 | Power Integrations, Q4 Sales Update Board of Directors Meeting - Ben |
| PX-273 | Sutherland, Ben | 11/6/2013 | 22 | PIFIV0064409 | PIFIV0064420 | Power Integrations, Sales Director Call - Ben Sutherland - Feb 20 2013 |

| PX-273.1 | Hodge, Stuart | 5/6/2014 | 9 | PIFIV0064409 | PIFIV0064409 | Power Integrations, Sales Director Call - Ben Sutherland - Feb 20 2013 |
|---|---|---|---|---|---|---|
| PX-274 | Sutherland, Ben | 11/6/2013 | 24 | PIFIV00497794 | PIFIV00497806 | Power Integrations, Proposed Operating Plan (Budget) for 2013 |
| PX-275 | Tomlin, John | 10/29/2013 | 2 | | | Power Integrations' Designations and Objections in Response to Defendants' |
| PX-276 | Tomlin, John | 10/29/2013 | 9 | PIFIV0023186 | PIFIV0023186 | Disc (Bates PIFIV0023186) |
| PX-277 | Tomlin, John | 10/29/2013 | 10 | PIFIV0028609 | PIFIV0028609 | Disc (Bates PIFIV0028609) |
| PX-278 | Tomlin, John | 10/29/2013 | 11 | PIFIV0035196 | PIFIV0035196 | Disc (Bates PIFIV0035196) |
| PX-279 | Tu, A. | 6/5/2014 | 2 | FSGV0549151 | FSGV0549185 | Fairchild, Low-Power Flyback Solutions and Corss Reference Products, July |
| PX-280 | Tu, A. | 6/5/2014 | 4 | FSGV3535811 | FSGV3535870 | Fairchild, FAN301HL OTP |
| PX-281 | Tu, A. | 6/5/2014 | 6 | FSGV3556425 | FSGV3556432 | Fairchild, LG Smart ighting Tear Down, |
| PX-282 | Tu, A. | 6/5/2014 | 7 | | | David Marsh, Linnear Regulators Face |
| PX-283 | Tu, A. | 6/5/2014 | 13 | FSGV3525422 | FSGV3525440 | Fairchild, mWSaver Technology Solutions for Ultra Low Standby Power and Higher Average Efficiency, |
| PX-284 | Tu, A. | 6/5/2014 | 17 | | | Fairchild, Comments on Draft 1 Version 2.0 Energy Star External |
| PX-285 | Ullal, Vijay | 5/29/2014 | 1 | | | Vijay Ullal LinkedIn Profile |
| PX-286 | Ullal, Vijay | 5/29/2014 | 2 | | | BusinessWeek Executive Profile of |
| PX-287 | Ullal, Vijay | 5/29/2014 | 3 | FSGV2808302 | FSGV2808325 | Fairchild, Make Samsung More |
| PX-288 | Ullal, Vijay | 5/29/2014 | 14 | | | Fairchild Litigation Update |
| PX-289 | Ullal, Vijay | 5/29/2014 | 15 | | | Letter from Vijay Ullal and Chris |
| PX-290 | Ullal, Vijay | 5/29/2014 | 17 | | | Letter from Dongyhe Cho to |
| PX-291 | Ullal, Vijay | 5/29/2014 | 20 | FSGV0469671 | FSGV0469726 | Fairchild, Employee Engagement Survey Feedback Resultsm December |
| PX-292 | Ullal, Vijay | 5/29/2014 | 21 | | | Interview of Vijay Ullal by EE Times |
| PX-293 | Ullal, Vijay | 5/29/2014 | 22 | | | Fairchild Press Release, Fairchild Semiconductor Announces New No |
| PX-294 | Verity, Eric | 10/30/2013 | 2 | | | Power Integrations' Designations and Objection in Response to Defendants' |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-295 | Verity, Eric | 10/30/2013 | 3 | | | Fairchild Semiconductor Corporation and System General Corporation's Initial Discovery Disclosures Pursuant |
| PX-296 | Verity, Eric | 10/30/2013 | 4 | | | Power Integrations' Responses and |
| PX-297 | Verity, Eric | 10/30/2013 | 5 | PFIV0497781 | PIFIV0497806 | Power Integrations Proposed Operation Plan (Budget) for 2012 |
| PX-298 | Verity, Eric | 10/30/2013 | 11-Jun | PIFIV0443947, PIFIV0444027, PIFIV0497807, PIFIV0497821, PIFIV0397822, PIFIV0497825 | PIFIV0443947, PIFIV0444027, PIFIV0497807, PIFIV0497821, PIFIV0397822, PIFIV0497825 | CD of native files |
| PX-299 | Walker, Cliff | 6/11/2014 | 1 | | | Plaintiffs' Amended Notice ofDeposition of C. Walker Pursuant to |
| PX-300 | Walker, Cliff | 6/11/2014 | 2 | | | Power Integrations' Designations and Objections in Response to Defendants' |
| PX-301 | Walker, Cliff | 6/11/2014 | 3 | | | Letter dated November 6, 2013 to C. Ondrick, R. Walters, and R. Whelan |
| PX-302 | Walker, Cliff | 6/11/2014 | 15 | PIFIV0351234 | PIFIV0351337 | Power Integrations 2012 Annual |
| PX-303 | Walker, Cliff | 6/11/2014 | 18 | | | U.S. Patent No. 7,876,587 |
| PX-304 | Walker, Cliff | 6/11/2014 | 22 | PIFIV0061104 | PIFIV0061105 | Letter dated June 5, 2012 to Kaga from Benjamin Sutherland |
| PX-305 | Walker, Cliff | 6/11/2014 | 23 | PIF1413024 | PIF1413025 | Letter dated February 7, 2009 to Intelbras S.A. from Clifford Walker |
| PX-306 | Walker, Cliff | 6/11/2014 | 24 | PIF554718 | PIF554719 | Power Integrations Questions & |
| PX-307 | Walker, Cliff | 6/11/2014 | 25 | | | U.S. Patent No. 7,952,895 |
| PX-308 | Walker, Cliff | 6/11/2014 | 26 | | | U.S. Patent No. 7,995,359 |
| PX-309 | Walker, Cliff | 6/11/2014 | 27 | | | U.S. Patent No. 8,115,457 |
| PX-310 | Wei, Gu-Yeon | 1/15/2015 | 1 | | | Wei Rebuttal Report |
| PX-311 | Wei, Gu-Yeon | 1/15/2015 | 2 | | | Wei Revised Opening Report |
| PX-312 | Wei, Gu-Yeon | 1/15/2015 | 7 | | | Fairchild, User Guide for FEBFAN6756MR_T03U065A |
| PX-313 | Wei, Gu-Yeon | 1/15/2015 | 9 | | | U.S. Patent No. 6,999,429 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-314 | Wei, Gu-Yeon | 1/15/2015 | 13 | | | Claim Chart - '366 Patent Anticipated or Rendered Obvious by Unitrode App |
| PX-315 | Weirich, Michael | 12/11/2013 | 3 | | | Fairchild, Prototype Report AC/DC Converter (Power Supply) using |
| PX-316 | Weirich, Michael | 12/11/2013 | 4 | FSGV3490704 | FSGV3490705 | Bill of Materials Charger Revised: |
| PX-317 | Weirich, Michael | 12/11/2013 | 6 | FSGV3490712 | FSGV3490720 | Fairchild, Primary Side Regulated Charger with Fairchild Power Switch |
| PX-318 | Weirich, Michael | 12/11/2013 | 7 | FSGV3490491 | FSGV3490500 | Stephen Klier, Current Source for LED |
| PX-319 | Weirich, Michael | 12/11/2013 | 8 | FSGV3490470 | FSGV3490490 | Fairchild, Current Source for LED drive with FPS by Stephen Klier |
| PX-320 | Wu, Yu Shan | 11/6/2013 | 2 | | | Fairchild Semiconductor Corporation and System General Corporation's Initial Discovery Disclosures Pursuant |
| PX-321 | Yang, Ta-Yung | 12/12/2013 | 1 | | | Plaintiffs' Objections and Responses to Defendant's 30(b)(6) Notice of |
| PX-322 | Yang, Ta-Yung | 12/12/2013 | 12 | | | System General Web Page - News & |
| PX-323 | Yang, Ta-Yung | 12/13/2013 | 30 | | | Photos of Awards |
| PX-324 | | | | | | Power Integrations Second Supplemental Response to Fairchild's |
| PX-325 | | | | | | Power Integrations Responses to Fairchild's Third Set of Interrogatories |
| PX-326 | | | | | | Wei Revised Invalidity Report Exhibit A - Curriculem Vitae of Gu-Yeon Wei |
| PX-327 | | | | | | Wei Revised Invalidity Report Exhibit B - Articles Written by Gu-Yeon Wei |
| PX-328 | | | | | | Wei Revised Invalidity Report Exhibit C - Material Considered by Gu-Yeon Wei |
| PX-329 | | | | | | Wei Revised Invalidity Report Exhibit G - Invalidity Claim Chart for U.S. Patent |
| PX-330 | | | | | | Wei Revised Invalidity Report Exhibit H - Invalidity Claim Chart for U.S. Patent |
| PX-331 | | | | | | Wei Revised Invalidity Report Exhibit I - Invalidity Claim Chart for U.S. Patent |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-332 | | | | | | Wei Revised Invalidity Report Exhibit J - Invalidity Claim Chart for U.S. Patent |
| PX-333 | | | | | | Wei Revised Invalidity Report Exhibit K - Invalidity Claim Chart for U.S. Patent |
| PX-334 | | | | | | Wei Revised Invalidity Report Exhibit L - Invalidity Calim Chart for U.S. Patent |
| PX-334.1 | Wei, Gu-Yeon | 1/15/2015 | 14 | | | Wei Revised Invalidity Report Exhibit L - Invalidity Calim Chart for U.S. Patent |
| PX-335 | | | | FSGV3561570 | FSGV3561572 | Wiley Electrical and Electronics |
| PX-336 | | | | | | U.S. Patent App. No. 13/786,746 |
| PX-337 | | | | FSGV3558797 | FSGV3558799 | LEDinside, Power Integrations Introduces Driver Reference Designs |
| PX-338 | | | | FSGV3558816 | FSGV3558819 | LEDs Magazine, Power Integrations delivers single-stage LED driver IC for |
| PX-339 | | | | FSGV355801 | FSGV355814 | XLAMP® CXA1507 LED PAR30 |
| PX-340 | | | | FSGV3558820 | FSGV3558836 | XLAMP® MT-G2 EASYWHITE® LED PAR38 REFERENCE DESIGN (CREE) |
| PX-341 | | | | FSGV3558800 | FSGV3558801 | CREE website screenshot |
| PX-342 | | | | FSGV3558815 | FSGV3558815 | Power Integrations website |
| PX-343 | | | | FSGV3561488 | FSGV3561488 | Power Integrations LinkSwitch-II |
| PX-344 | | | | FSGV3558025 | FSGV3558025 | Power Integrations LinkSwitch-PH |
| PX-345 | | | | | | http://www.powerint.com/en/design-support/reference-designs/reference- |
| PX-346 | | | | | | http://www.powerint.com/en/design- |
| PX-347 | | | | | | http://www.powerint.com/design-support/reference-designs/design- |
| PX-348 | | | | | | http://www.powerint.com/en/products/linkswitch-family/linkswitch-ii |
| PX-349 | | | | | | https://www.powerint.com/products/lytswitch-family/lytswitch-4 |
| PX-350 | | | | | | https://www.powerint.com/en/products/linkswitch-family/linkswitch-ph |
| PX-351 | | | | | | http://www.powerint.com/design- |

| | | | | | |
|---|---|---|---|---|---|
| PX-352 | | | | | http://www.powerint.com/en/design-support/technical-support-contacts |
| PX-353 | | | | | Collins Revised Infringement Report Exhibit N - '123 Patent Claim Charts |
| PX-354 | | | | | Collins Revised Infringement Report Exhibit O - '123 Patent Claim Charts |
| PX-355 | | | | | Collins Revised Infringement Report Exhibit P - '259 Patent Claim Chart |
| PX-356 | | | | | Collins Revised Infringement Report Exhibit Q - '259 Patent Claim Chart |
| PX-357 | | | | | Collins Revised Infringement Report Exhibit R - '259 Patent Claim Chart |
| PX-358 | | | | | Collins Revised Infringement Report Exhibit S - '972 Patent Claim Chart |
| PX-359 | | | | | U.S. Patent No. 6,239,716 |
| PX-360 | | | | | U.S. Patent No. 6,841,947 |
| PX-361 | | | | | U.S. Patent App. No. 06/022,916 |
| PX-362 | | | | | U.S. Patent App. No. 06/043,911 |
| PX-363 | | | | | U.S. Patent No. 5,551,289 |
| PX-364 | | | | | U.S. Patent No. 6,118,228 |
| PX-365 | | | | | U.S. Patent No. 6,879.494 |
| PX-366 | | | | | Collins Validity Rebuttal Report Exhibit A - Materials Considered |
| PX-367 | | | | | Power Integrations' Supplemental Response to Interrogatory No. 13 |
| PX-368 | | | FCS1350208 | FCS1350224 | License Agreement between International Business Machines and |
| PX-369 | | | FCS1689452 | FCS1689462 | Intellectual Property License Agreement between Samsung |
| PX-370 | | | FSGIV00008024 | FSGIV00008122 | Intellectual Property License Agreement between Micro Linear |
| PX-371 | | | FSGIV00147099 | FSGIV00147119 | License Agreement between International Business Machines (IBM) and Fairchild Semiconductor |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-372 | | | | FSGIV00147120 | FSGIV00147142 | License Agreement between International Business Machines (IBM) and Fairchild Semiconductor |
| PX-373 | | | | FSGIV00147143 | FSGIV00147175 | Settlement and Patent Cross License Agreement between Infineon Technologies AG and Fairchild |
| PX-374 | | | | FSGIV00173599 | FSGIV00173619 | License and Development Agreement between Fairchild Semiconductor Corporation and Champion |
| PX-375 | | | | FSGIV00206366 | FSGIV00206404 | Asset Purchase Agreement between Fairchild Semiconductor Corporation |
| PX-376 | | | | FSGIV00206430 | FSGIV00206505 | Schedule 1.1(a) - Contracts - to Micro |
| PX-377 | | | | FSGV0530139 | FSGV0530157 | Fairchild Semiconductor,New LED |
| PX-378 | | | | FSGV3504739 | FSGV3504739 | Fairchild Accused Product Spreadsheet |
| PX-379 | | | | PIB 013499.1 | PIB 013499.3 | Native Spreadsheet |
| PX-380 | | | | PIB 102296 | PIB 102318 | Maximized PI Value with LNK-II by S. |
| PX-381 | | | | PIB 214001 | PIB 214020 | LinkSwitch-CV - Redcude Complexity and Improve Reliability in Accurate CV |
| PX-382 | | | | PIF 022638 | PIF 022667 | Licensing and Wafer Supply Agreement between OKI Electric |
| PX-383 | | | | PIF 023494 | PIF 023501 | License Agreement between Magnetek Inc. and Power Integrations, |
| PX-384 | | | | PIF 023502 | PIF 023506 | License Agreement between Magnetek Inc. and Power Integrations |
| PX-385 | | | | PIF 023511 | PIF 023546 | Magnetek Inc. and Power Integrations Inc. Development and License |
| PX-386 | | | | PIF 023640 | PIF 023664 | Technology License Agreement between Power Integrations Inc. and |
| PX-387 | | | | PIF 023708 | PIF 023720 | Patent License Agreement between AT&T and Power Integrations Inc. |
| PX-388 | | | | PIF 1804455 | PIF 1804494 | Cost Optimization Primary Side |
| PX-389 | | | | PIF 203506_1 | PIF 203506_1 | Native Spreadsheet |
| PX-390 | | | | PIF 203506_2 | PIF 203506_2 | Native Spreadsheet |
| PX-391 | | | | PIF 203506_3 | PIF 203506_3 | Native Spreadsheet |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-392 | | | | PIF 203506_4 | PIF 203506_4 | Native Spreadsheet |
| PX-393 | | | | PIF 219036 | PIF 219036 | Native Spreadsheet |
| PX-394 | | | | PIF 2280625 | PIF 2280640 | Exclusive License Agreement between Qspeed Semiconductor, Inc. and |
| PX-395 | | | | PIF 2280802 | PIF 2280814 | Technology License Agreement between Power Integrations, Inc. and |
| PX-396 | | | | PIF 2291682 | PIF 2291682 | Native Spreadsheet |
| PX-397 | | | | PIF 748354 | PIF 748354 | Native Spreadsheet |
| PX-398 | | | | PIF6 0001388 | PIF6 0001388 | Native Spreadsheet |
| PX-399 | | | | PIF6 0001392 | PIF6 0001392 | Native Spreadsheet |
| PX-400 | | | | PIF6 0001393 | PIF6 0001393 | Native Spreadsheet |
| PX-401 | | | | PIF6 0013746 | PIF6 0013771 | LED Drivers for Dimming, December |
| PX-402 | | | | PIF6 0285634 | PIF6 0285644 | Vestel Digital Meeting, May 20, 2008 |
| PX-403 | | | | PIF6 0350677 | PIF6 0350748 | Power Integrations, LinkSwitch-PH, New LED Driver IC Family Featuring |
| PX-404 | | | | PIF6 0353892 | PIF6 0353914 | Power Integrations, LED Lighting Solutions from Power Integrations |
| PX-405 | | | | PIF6 0408288 | PIF6 0408315 | Power Integrations, LED Lighting, |
| PX-406 | | | | PIF6 0426979 | PIF6 0426983 | Waveforms Presentation |
| PX-407 | | | | PIF6 0465388 | PIF6 0465390 | Memorandum from PI-APPS HQ to PI FAE Team Leaders, PI-Apps HQ, Apps Flash (AF-10) regarding LinkSwitch-PH |
| PX-408 | | | | PIF6 0778245 | PIF6 0778245 | Native Spreadsheet |
| PX-409 | | | | PIF6 0843542 | PIF6 0843542 | Native Spreadsheet |
| PX-410 | | | | PIF6 0876655 | PIF6 0876655 | Native Spreadsheet |
| PX-411 | | | | PIF6 0876656 | PIF6 0876656 | Native Spreadsheet |
| PX-412 | | | | PIFIV0002192 | PIFIV0002205 | Power Integrations, Q1 Marketing Update, Board of Directors Meeting, |
| PX-413 | | | | PIFIV0002831 | PIFIV0002843 | Power Integrations, GEO Update, |
| PX-414 | | | | PIFIV0009583 | PIFIV0009599 | Power Integrations, LYTSwitch-3 |
| PX-415 | | | | PIFIV0019460 | PIFIV0019483 | Renesas Business Review, Thrid |
| PX-416 | | | | PIFIV0030210 | PIFIV0030218 | 2011 5 Year Business Forecast and |
| PX-417 | | | | PIFIV0053540 | PIFIV0053545 | Maximizing the Energy Efficiency Benefits of LED Lighting, by Silvestro |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-418 | | | | PIFIV0060185 | PIFIV0060186 | Email from B. Sutherland to M. Jones re: Meeting Notes 3/26/2012 |
| PX-419 | | | | PIFIV0114142 | PIFIV0114185 | Power Integrations, Product Concept / OTS / Project Code Name: "LinkSwitch- |
| PX-420 | | | | PIFIV0116334 | PIFIV0116335 | LinkSwitch-II ED China |
| PX-421 | | | | PIFIV0131347 | PIFIV0131379 | Power Integrations, LinkSwitch-PH Most Integrated Solution for High Power Factor and Phase Dimmable |
| PX-422 | | | | PIFIV0138539 | PIFIV0138587 | Hjigh Efficiency Drivers for High Efficacy LED Lighting, EETimes Virtual |
| PX-423 | | | | PIFIV0165031 | PIFIV0165043 | LinkSwitch-PL Code Beta Product |
| PX-424 | | | | PIFIV0183437 | PIFIV0183462 | Power Integrations, Long Term Plan, |
| PX-425 | | | | PIFIV0200819 | PIFIV0200830 | Power Integrations, LinkSwitch-HP |
| PX-426 | | | | PIFIV0209107 | PIFIV0209131 | The Role of Capacitor Derating in the Life Expectancy of High-Brightness LED |
| PX-427 | | | | PIFIV0209447 | PIFIV0209463 | Meeting Energy Star Lifetime for LED |
| PX-428 | | | | PIFIV0315201 | PIFIV0315213 | Power Integrations, CORE: Selling and |
| PX-429 | | | | PIFIV0417533 | PIFIV0417866 | Power Integrations, LinkSwitch-PH Solutions for LED Lighting, Field |
| PX-430 | | | | PIFIV0419395 | PIFIV0419407 | Power Integrations, Discovery, Pricing & Negotiating, December 2011 |
| PX-431 | | | | PIFIV0435546 | PIFIV0435565 | Power Integrations, PI Terminology, |
| PX-432 | | | | PIFIV0462111 | PIFIV0462115 | Piper Jaffray, Company Note on Power |
| PX-433 | | | | PIFIV0473008 | PIFIV0473008 | Native Spreadsheet |
| PX-434 | | | | PIFIV0497780 | PIFIV0497780 | Native Spreadsheet |
| PX-435 | | | | PIFIV0497813 | PIFIV0497821 | Native Spreadsheet |
| PX-436 | | | | PIFIV0497814 | PIFIV0497814 | Native Spreadsheet |
| PX-437 | | | | PIFIV0497815 | PIFIV0497815 | Native Spreadsheet |
| PX-438 | | | | PIFIV0497816 | PIFIV0497816 | Native Spreadsheet |
| PX-439 | | | | PIFIV0497817 | PIFIV0497817 | Native Spreadsheet |
| PX-440 | | | | PIFIV0497818 | PIFIV0497818 | Native Spreadsheet |
| PX-441 | | | | PIFIV0497819 | PIFIV0497819 | Native Spreadsheet |
| PX-442 | | | | PIFIV0497820 | PIFIV0497820 | Native Spreadsheet |
| PX-443 | | | | PIFIV0497821 | PIFIV0497821 | Native Spreadsheet |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-444 | | | | PIFIV0497829 | PIFIV0497830 | Native Spreadsheet |
| PX-445 | | | | PIFIV0497892 | PIFIV0497900 | Native Spreadsheet |
| PX-446 | | | | PIF6 0001389 | PIF6 0001389 | Native Spreadsheet |
| PX-447 | | | | PIF6 0001390 | PIF6 0001390 | Native Spreadsheet |
| PX-448 | | | | PIF6 0001391 | PIF6 0001391 | Native Spreadsheet |
| PX-449 | | | | PIFIV0497893 | PIFIV0497893 | Native Spreadsheet |
| PX-450 | | | | | | Power Integrations, Inc. SEC Form 10-K for the fiscal year ended December |
| PX-451 | | | | | | Power Integrations, Inc. SEC Form 10-K for the fiscal year ended December |
| PX-452 | | | | | | Power Integrations, Inc. SEC Form 10-Q for thequarterly period ended June |
| PX-453 | | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-K For the fiscal year |
| PX-454 | | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-K For the fiscal year |
| PX-455 | | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-K For the fiscal year |
| PX-456 | | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-K For the fiscal year |
| PX-457 | | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-K For the fiscal year |
| PX-458 | | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-Q For the fiscal year |
| PX-459 | | | | | | "Global Market for Power Semiconductors," Frost & Sullivan, |
| PX-460 | | | | | | "World Switch Mode Power Supplies Markets," Frost & Sullivan, 2003 |
| PX-461 | | | | | | "Energy Savings Potential of Solid-State Lighting in General Illumination Applications," U.S. Department of Energy, January 2012, p. 2. http://apps1.eere.energy.gov/building |

| | | | | | |
|---|---|---|---|---|---|
| PX-462 | | | | | "World LED Lighting Markets (2012 Update)," Frost & Sullivan, 2012 |
| PX-463 | | | | | "Power Integrations' New LinkSwitch(R)-PH and LinkSwitch(R)-PL LED Driver ICs Deliver Flicker-Free TRIAC Dimming in Solid-State Lighting |
| PX-464 | | | | | "Adoption of Light-Emitting Diodes in Common Lighting Applications," U.S. Department of Energy, Revised May |
| PX-465 | | | | | "Why SSL," U.S. Department of Energy – Solid State Lighting, March 18, 2013, http://www1.eere.energy.gov/buildin gs/ssl/sslbasics_whyssl.html. |
| PX-466 | | | | | "Frequently Asked Questions: Lighting Choices to Save You Money," U.S. Department of Energy, http://energy.gov/energysaver/article |
| PX-467 | | | | | "Learn About LEDs," Energy Star, http://www.energystar.gov/index.cfm ?c=lighting.pr_what_are#why_choose |
| PX-468 | | | | | "Fairchild Set To Buy System General," EETimes, January 2, 2007, http://www.eetimes.com/electronics- |
| PX-469 | | | | | "Company," Power Integrations, http://www.powerint.com/en/compa |
| PX-470 | | | | | "Power play - Finalist - Technology," SmartBusiness, June 26, 2009, http://www.sbnonline.com/2009/06/ power- play-how-balu-balakrishnan- |
| PX-471 | | | | | Notohamiprodjo, Hubie, "Power Factor and Solid State Lighting - Implications, Complications and Resolutions" April, 2013, http://www.ledlighting- |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-472 | | | | | | LinkSwitch™-PL," Power Integrations, http://www.powerint.com/en/products/linkswitch-family/linkswitch-pl. |
| PX-473 | | | | | | LYTSwtich-4," Power Integrations, http://www.powerint.com/products/lytswitch-family/lytswitch-4. |
| PX-474 | | | | | | Power Integrations' New LinkSwitch-HP ICs Introduce Primary-Side Regulation to Power Supplies Up to 90 Watts," Power Integrations, http://investors.power.com/files/doc_news/Power-Integrations-New- |
| PX-475 | | | | | | "Power Integrations Reports Second-Quarter Financial Results," GlobalNewswire, http://investors.powerint.com/files/d |
| PX-476 | | | | | | "LinkSwitch-II," Power Integrations, http://www.powerint.com/en/products/linkswitch-family/linkswitch-ii. |
| PX-477 | | | | | | "LinkSwitch-PH," Power Integrations, http://www.powerint.com/en/products/linkswitch-family/linkswitch-ph. |
| PX-478 | | | | | | "Power Integrations, Inc. Q2 2008 Earnings Call Transcript, Seeking Alpha, p. 3, http://seekingalpha.com/article/9022 |
| PX-479 | | | | | | Klier, Stephan, "Low Cost, Isolated Current Source for LED Strings," Fairchild White Paper, http://www.fairchildsemi.com/suppor |
| PX-480 | | | | | | Malackowski Affirmative Report Exhibit 1 - James E. Malackowski CV |
| PX-481 | | | | | | Malackowski Affirmative Report Exhibit 2 - Documents Considered |

| | | | | | |
|---|---|---|---|---|---|
| PX-482 | | | | | Malackowski Affirmative Report Exhibit 3 - Summary - Reasonable |
| PX-483 | | | | | Malackowski Affirmative Report Exhibit 4 - Summary - Royalty Base By |
| PX-484 | | | | | Malackowski Affirmative Report Exhibit 5 - Year 2008 Royalty Base Adjustment For The '972 Patent |
| PX-485 | | | | | Malackowski Affirmative Report Exhibit 6 -Year 2008 Royalty Base Adjustment For The '972 Patent |
| PX-486 | | | | | Malackowski Affirmative Report Exhibit 7 - Power Integrations |
| PX-487 | | | | | Malackowski Affirmative Report Exhibit 8 - Power Integrations U.S. Accused Direct & Distributor |
| PX-488 | | | | | Malackowski Affirmative Report Exhibit 9 - Power Integrations Worldwide Profitability For Products |
| PX-489 | | | | | Malackowski Affirmative Report Exhibit 10 - Power Integrations U.S. Direct & Distributor Average Unit Cost |
| PX-490 | | | | | Malackowski Affirmative Report Exhibit 11 - Power Integrations |
| PX-491 | | | | | Malackowski Affirmative Report Exhibit 12 - Power Integrations Accused U.S. Direct & Distributor For |
| PX-492 | | | | | Malackowski Affirmative Report Exhibit 13 - Power Integrations Accused Worldwide Products' Avergae |
| PX-493 | | | | | Malackowski Affirmative Report Exhibit 14 - Power Integrations Accused U.S. Direct & Distributor Unit |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-494 | | | | | | Malackowski Affirmative Report Exhibit 15 - Power Integrations Accused Worldwide Unit Sales By |
| PX-495 | | | | | | Malackowski Affirmative Report Exhibit 16 - Power Integrations |
| PX-496 | | | | | | Malackowski Affirmative Report Exhibit 17 - Power Integrations |
| PX-497 | | | | | | Malackowski Affirmative Report Exhibit 18 - Power Integrations |
| PX-498 | | | | | | Malackowski Affirmative Report Exhibit 19 - Fairchild Semiconductor Practicing Products Family Profitability |
| PX-499 | | | | | | Malackowski Affirmative Report Exhibit 20 - Fairchild Semiconductor Practicing Products U.S. Gross Profit |
| PX-500 | | | | | | Malackowski Affirmative Report Exhibit 21 - Fairchild Semiconductor Practicing Products Worldwide Gross |
| PX-501 | | | | | | Malackowski Affirmative Report Exhibit 22 - Fairchidl Practicing |
| PX-502 | | | | | | Malackowski Affirmative Report Exhibit 23 - Fairchild Semiconductor |
| PX-503 | | | | FSG00291490 | FSG00291504 | FAN6300 Datsheet |
| PX-504 | | | | FSG02144179 | FSG02144182 | Amendment No. 1 to Technology Licensing and Transfer Agreement between National Semiconductor |
| PX-505 | | | | FSGV3558476 | FSGV3558476 | Native Spreadsheet |
| PX-506 | | | | PI 0055657 | PI 0055659 | Spreadsheet - SG6841 vs TOP246Y |
| PX-507 | | | | PI 0055684 | PI 0055692 | Spreadsheet - SPI TOP256F vs SG6842 for Samsung LCD Monitor (2004 |
| PX-508 | | | | PI 0095703 | PI 0095725 | Amtran 60W LCD Monitor LIPS Power |
| PX-509 | | | | PIFIV0431845 | PIFIV0431862 | Power Integrations, AMN Update, by |

| | | | | | |
|---|---|---|---|---|---|
| PX-510 | | | | | "Energy Star," Power Integrations, http://www.powerint.com/green-room/regulations-agency/energy-star- |
| PX-511 | | | | | Fairchild Form 10-K for the Fiscal Year |
| PX-512 | | | | | Fairchild Form 10-K for the Fiscal Year |
| PX-513 | | | | | On-Bright Electronics, OB2273 Series, http://www.on- |
| PX-514 | | | | | Malackowski Rebuttal Report Exhibit 2 |
| PX-515 | | | | | Malackowski Rebuttal Report Exhibit 3 -Summary of Reasonable Royalty |
| PX-516 | | | | | Malackowski Rebuttal Report Exhibit 4 - Summary of Reasonable Royalty |
| PX-517 | | | | | Malackowski Rebuttal Report Exhibit 5 - Summary of Alternative Reasonable Royalty Compensation - Royalty Base |
| PX-518 | | | | | Malackowski Rebuttal Report Exhibit 6 - Summary of Reasonable Royalty |
| PX-519 | | | | | Malackowski Rebuttal Report Exhibit 7 - Calculation of Robisnon Effective |
| PX-520 | | | | | Malackowski Rebuttal Report Exhibit 8 -Summary of Royalty Bases By |
| PX-521 | | | | | Malackowski Rebuttal Report Exhibit 9 - Summary of Royalty Bases by |
| PX-522 | | | | | Malackowski Rebuttal Report Exhibit 10 - Fairchild U.S. Units Sold Of Accused Products Allegedly Infringing |
| PX-523 | | | | | Malackowski Rebuttal Report Exhibit 11 - Fairchild Worldwide Units Sold Of Accused Products Allegedly Infringing |
| PX-524 | | | | | Malackowski Rebuttal Report Exhibit 12 - Fairchild U.S. Units Sold Of |
| PX-525 | | | | | Malackowski Rebuttal Report Exhibit 13 - Fairchild Worldwide Units Sold Of Accused Products Allegedly Infringing |

| | | | | | |
|---|---|---|---|---|---|
| PX-526 | | | | | Malackowski Rebuttal Report Exhibit 14 - Fairchild U.S. Sales & Profitability |
| PX-527 | | | | | Malackowski Rebuttal Report Exhibit 15 - Fairchild U.S. Sales & Profitability |
| PX-528 | | | | | Malackowski Rebuttal Report Exhibit 16 - Fairchild Worldwide Sales & Profitabilty Summary of Accused |
| PX-529 | | | | | Malackowski Rebuttal Report Exhibit 17 - Accused Products By Asserted |
| PX-530 | | | | | Malackowski Rebuttal Report Exhibit 19 - Fairchild |
| PX-531 | | | | | Malackowski Rebuttal Report Exhibit 20 - Power Integrations Worldwide Sales & Profitability Summary of |
| PX-532 | | | | | Malackowski Rebuttal Report Exhibit 21 - Power Integrations Worldwide |
| PX-533 | | | | | Malackowski Rebuttal Report Exhibit 22 - Power Integrations Worldwide |
| PX-534 | | | | | Malackowski Rebuttal Report Exhibit 23 - Power Integrations Standard To |
| PX-535 | | | | | Malackowski Rebuttal Report Exhibit 24 - Part Numbers Of The Power |
| PX-536 | | | | | Malackowski Rebuttal Report Exhibit 25 - Power Integrations Incremental |
| PX-537 | | | | | Malackowski Rebuttal Report Exhibit 26 - Percent of Mr. Robinson's Royalty |
| PX-538 | | | | | "LinkSwitch™-PL," Power Integrations, http://www.powerint.com/en/products/linkswitch-family/linkswitch-pl. |
| PX-539 | | | | | "LYTSwtich-4," Power Integrations, http://www.powerint.com/products/lytswitch-family/lytswitch-4. |

| | | | | | |
|---|---|---|---|---|---|
| PX-540 | | | | | "Power Integrations Announces Second-Quarter Financial Results," Power Integrations, July 24, 2008, http://investors.powerint.com/files/d |
| PX-541 | | | | | "Power Integrations' New LinkSwitch-HP ICs Introduce Primary-Side Regulation to Power Supplies Up to 90 Watts," Power Integrations, http://investors.powerint.com/compa ny/press-releases/press- |
| PX-542 | | | | | 217 PI 1997 Form S-1 |
| PX-543 | | | | | An-556 Introduction to Power Supplier, Texas Instruments |
| PX-544 | | | PIFIV0030075 | PIFIV0030075 | Email from T. Roesler to J. Tomlin |
| PX-545 | | | | | Fairchild Semiconductor Internationa, Inc. SEC Form 10-Q for the quarterly |
| PX-546 | | | | | Fairchild Semiconductor International, Inc. Form 10-K, Fiscal Year Ended |
| PX-547 | | | | | Fairchild Semiconductor International, Inc. Form 10-K, Fiscal Year Ended |
| PX-548 | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-Q for the quarterly |
| PX-549 | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-Q for the quarterly |
| PX-550 | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-Q for the quarterly |
| PX-551 | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-Q for the quarterly |
| PX-552 | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-Q for the quarterly |
| PX-553 | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-Q for the quarterly |
| PX-554 | | | | | Fairchild Semiconductor International, Inc. SEC Form 10-Q for the quarterly |

| PX-555 | | | | PIFIV0008573 | PIFIV0008611 | PI OTS - Omniswitch |
|--------|--------------|------------|----|--------------|--------------|----------------------------------------|
| PX-556 | | | | | | Power Integrations, Inc. Form 10-K, Fiscal Year Ended December 31, 2004 |
| PX-557 | | | | | | Power Integrations, Inc. Form 10-K, Fiscal Year Ended December 31, 2008 |
| PX-558 | Baeurle, Stefan | 10/30/2013 | 3 | PIF6 0466085 | PIF6 0466085 | Email string from Andrew Smith to Stefan Baeurle re New Fairchild |
| PX-558.1 | Smith, Andrew | 10/31/2013 | 10 | PIF6 0466085 | PIF6 0466085 | Email string dated 2/17/12 from Andrew Smith to Stefan Baeurle, Subject: regarding New Fairchild |
| PX-559 | Baeurle, Stefan | 10/30/2013 | 4 | PIF6 0540520 | PIF6 0540522 | Email from Stefan Baeurle to Mike Matthews re Weekly Report 2012 |
| PX-560 | Baeurle, Stefan | 10/30/2013 | 5 | PIF6 0618572 | PIF6 0618573 | Email from Stefan Baeurle to Mike Matthews re Weekly Report 2012 |
| PX-561 | Baeurle, Stefan | 10/30/2013 | 6 | PIF6 06186574 | PIF6 0618575 | Email from Stefan Baeurle to Mike Matthews re Weekly Report 2007 6/4 - |
| PX-562 | Baeurle, Stefan | 10/30/2013 | 7 | PIF6 0634745 | PIF6 0634746 | Email from Roland St. Pierre to Mike Matthews re Dialight Meeting Notes |
| PX-563 | Baeurle, Stefan | 10/30/2013 | 8 | PIFIV0003386 | PIFIV0003387 | Email from Stefan Baeurle to Joe Shiffler re Small Question on |
| PX-564 | Baeurle, Stefan | 10/30/2013 | 9 | PIFIV0191232 | PIFIV0191232 | Email from Stefan Baeurle to Mike Matthews re Summary Customer |
| PX-565 | Baeurle, Stefan | 10/30/2013 | 10 | PIFIV040679 | PIFIV0404681 | Email from Stefan Baeurle to Mike Matthews re Weekly Report 2011 |
| PX-566 | Bailey, Doug | 10/16/2013 | 7 | PIF6 0462900 | PIF6 0462908 | Email chain from Andrew Smith to Doug Bailey re LNK414EG Price |
| PX-567 | Bailey, Doug | 10/16/2013 | 8 | PIFIV0157054 | PIFIV0157056 | Email chain from Marvin Espino to Bill Weiss, Andrew Smith and Doug Bailey re TPV Visit Report LCD Monitor LED |
| PX-568 | Bailey, Doug | 10/16/2013 | 9 | PIFIV0157038 | PIFIV0157040 | Email chain from Bill Weiss to Doug Bailey re TPV Visit Report LCD Monitor |
| PX-569 | Bailey, Doug | 10/16/2013 | 10 | PIFIV0157051 | PIFIV0157053 | Email chain from Chris Lee to Doug Bailey, Bill Weiss re TPV Visit Report |

| PX-570 | Bailey, Doug | 10/16/2013 | 13 | PIFIV0006488 | PIFIV0006492 | Email chain from Giao Pham to Tiziano pastore, Peter Vaughan re Link-PH |
| PX-571 | Bailey, Doug | 10/16/2013 | 14 | PIF6 0218469 | PIF6 0218470 | Email from Doug Bailey to Silvestro Fimiani re Link-HP Price List Prototype |
| PX-572 | Bailey, Doug | 10/16/2013 | 15 | PIFIV0120227 | PIFIV0120227 | Email chain from Derek Bell to Doug Bailey, Balu Balakrishnan re Buck PFC |
| PX-572.1 | Fimiani, Silvestro | 10/17/2013 | 3 | PIFIV0120227 | PIFIV0120227 | Email chain from Derek Bell to Doug Bailey, Balu Balakrishnan re Buck PFC |
| PX-573 | Bailey, Doug | 10/16/2013 | 18 | PIFIV0265713 | PIFIV0265756 | Email chain from Silvestro Fimiani to Mike Matthews re Buck PFC for |
| PX-574 | Balakrishnan, Balu | 12/4/2013 | 11 | PIFIV0062005 | PIFIV0062008 | Email chain from Ben Sutherland to Lionel Davenport re GE's use of Power |
| PX-574.1 | Walker, Cliff | 6/11/2014 | 9 | PIFIV0062005 | PIFIV0062008 | Email chain to Lionel Davenport from Ben Sutherland regarding GE's Use of |
| PX-575 | Balakrishnan, Balu | 12/4/2013 | 12 | PIFIV0063710 | PIFIV0063712 | Email chain from Ben Sutherland to Gerald Duffy re Power Integrations |
| PX-575.1 | Sutherland, Ben | 11/6/2013 | 12 | PIFIV0063710 | PIFIV0063712 | Email chain from Ben Sutherland to Gerald Duffy re Power Integrations |
| PX-575.2 | Walker, Cliff | 6/11/2014 | 10 | PIFIV0063710 | PIFIV0063712 | Email chain from Ben Sutherland to Gerald Duffy re Power Integrations |
| PX-576 | Chan, Kenny | 5/16/2014 | 7 | FSGV0083309 | FSGV0083313 | Email from Vivek Arora to Sandy Chang re FAN6922MRM OOB Material |
| PX-577 | Chan, Kenny | 5/16/2014 | 8 | FSGV0155324 | FSGV0155343 | Email from Todd Moyer to Aziz Kishani |
| PX-578 | Chan, Kenny | 5/16/2014 | 11 | FSGV0471597 | FSGV0471606 | Email from Daniel Hsu to Hangseok Choi re Please update me the status of |
| PX-579 | Espino, Marvin | 10/31/2013 | 5 | PIFIV0225390 | PIFIV0225414 | Email string from Marvin Espino to Mark Youmans, Peter Vaughan re Collaboration between Power |
| PX-580 | Espino, Marvin | 10/31/2013 | 6 | PIFIV032216 | PIFIV030222 | Email string from Marvin Espino to Augusto Xu, Anthony Wu re GE new |
| PX-581 | Espino, Marvin | 10/31/2013 | 8 | PIFIV0158222 | PIFIV0158225 | Email stringfrom Jill Chao to Andrew Smith, et al. regarding TPV:Con-call on 1/28/10 SJ 16:30 pm (8:30 13 am TW |

| PX-582 | Espino, Marvin | 10/31/2013 | 9 | PIFIV029863 | PIFIV029874 | Email string from Marvin Espino to Peter Vaughan regardingWW49:LED |
| PX-583 | Espino, Marvin | 10/31/2013 | 10 | PIFIV0156954 | PIFIV0156955 | Email chain from Marvin Espino to Bill Weiss regarding TPV Visit Report |
| PX-584 | Espino, Marvin | 10/31/2013 | 14 | PIF6 0007590 | PIF6 0007593 | Email string dated 9/5/12 from Anthony Wu to Andrew Smith, Marvin Espino, Subject: FW: Elevation, Need |
| PX-585 | Espino, Marvin | 10/31/2013 | 15 | PIFIV0288821 | PIFIV0288846 | Email string dated 11/1/12 from Marvin Espino to Peter Vaughan, Subject: Fairchild FLl7730 Value |
| PX-586 | Espino, Marvin | 10/31/2013 | 16 | PIF6 0330257 | PIF6 0330274 | Email string dated 11/10/09 from Marvin Espino to Christian Angles, Andrew Smith, Subject: FW: Fairchild |
| PX-587 | Espino, Marvin | 10/31/2013 | 17 | PIFIV0240554 | PIFIV0240555 | Email string dated 1/14/02 from Marvin Espino to Art Odell, et al., |
| PX-588 | Espino, Marvin | 10/31/2013 | 18 | PIFIV0188836 | PIFIV0188857 | Email string dated 10/15/10 From Marvin Espino to Peter Vaughan, |
| PX-589 | Espino, Marvin | 10/31/2013 | 19 | PIFIV0135415 | PIFIV0135419 | Email string from James Harrington to Silvestro Fimiani, et al., Subject: |
| PX-590 | Espino, Marvin | 10/31/2013 | 20 | PIF6 0335113 | PIF6 0335120 | Email string from Bill Weiss to Michael Hsu, Subject: regarding TPV/LCD |
| PX-591 | Fimiani, Silvestro | 10/17/2013 | 1 | PIF6 0313363 | PIF6 0313363 | Email from S. Fimiani to M. Matthews regarding Buck PFC for Fairchild |
| PX-591.1 | Bailey, Doug | 10/16/2013 | 16 | PIF6 0313363 | PIF6 0313363 | Email from S. Fimiani to M. Matthews regarding Buck PFC for Fairchild |
| PX-592 | Fimiani, Silvestro | 10/17/2013 | 6 | PIFIV0155239 | PIFIV0155240 | Email from B. Weiss to D. Bailey regarding New Energy Efficient LED |
| PX-593 | Fimiani, Silvestro | 10/17/2013 | 7 | PIFIV0156430 | PIFIV0156431 | Email from B. Renouard to D. Bailey regarding New Energy Efficient LED |
| PX-594 | Fimiani, Silvestro | 10/17/2013 | 8 | PIFIV0119174 | PIFIV0119182 | Email A. Wu to S. Fimianiregarding Support Needs for LinkSwitch-PH |
| PX-595 | Fimiani, Silvestro | 10/17/2013 | 9 | PIFIV0168620 | PIFIV0168626 | Email from D. Kang to S. Fimiani |
| PX-596 | Fu, Steven | 5/30/2014 | 3 | FSGV0224050 | FSGV0224082 | Email chain From Jay Lee to James Lee, Brian Johnson, Shawn Back |

| PX-597 | Fu, Steven | 5/30/2014 | 5 | FSGV3544552 | FSGV3544558 | Email from Gang Lui to Steven Fu regarding Chronicle of China/Taiwan |
| PX-598 | Fu, Steven | 5/30/2014 | 6 | FSGV3534507 | FSGV3534528 | Email from Donghye Cho to Steven Fu |
| PX-599 | Fu, Steven | 5/30/2014 | 7 | FSGV3534623 | FSGV3534646 | Email from Kenney Chan to Steven Fu regarding Computing Strategy |
| PX-600 | Fu, Steven | 5/30/2014 | 8 | FSGV3536481 | FSGV3536500 | Email chain from Steve Fu to Wei-Chuung Wang regarding BOD |
| PX-601 | Fu, Steven | 5/30/2014 | 9 | FSGV3543997 | FSGV3544029 | Email from Gary Lin to Mark Thompson regarding Power |
| PX-602 | Fu, Steven | 5/30/2014 | 10 | FSGV3534145 | FSGV3534148 | Email chain from Vijay Ullal to Steve Fu regarding Materials from Yesterday |
| PX-603 | Fu, Steven | 5/30/2014 | 12 | FSGV3531971 | FSGV3532063 | Email chain from Pete Groth to Steven Fu regarding Info You Wanted |
| PX-604 | Gaknoki, Gary | 10/29/2013 | 8 | PIF6 0038015 | PIF6 0038019 | Email chain from Jose del Carmen to Yury Gaknoki, Mingming Mao re |
| PX-605 | Gaknoki, Gary | 10/29/2013 | 9 | PIF6 0037970 | PIF6 0037970 | Email from Tiziano Pastore to Kevin Majeski re LinkSwitch-PL Datasheet |
| PX-606 | Hodge, Stuart | 5/6/2014 | 11 | PIF6 038523 | PIF6 038524 | Email chain from Stuart Hodge to Andrew Smith regarding 6W LED |
| PX-607 | Hodge, Stuart | 5/6/2014 | 12 | PIF6 0391239 | PIF6 0391240 | Email chain from Stuart Hodge to Ehsan Chitsazan, Andrew Smith regarding Luxeon H 120VAC in, 96VDC |
| PX-608 | Hodge, Stuart | 5/6/2014 | 13 | PIF6 0002845 | PIF6 0002849 | Email chain from Stuart Hodge to Andrew Smith, Igor Shuikh, Marvin |
| PX-609 | Hodge, Stuart | 5/6/2014 | 14 | PIF6 9992824 | PIF6 0002826 | Email chain from Stuart Hodge to Andrew Smith regarding OSRAM for |
| PX-610 | Hodge, Stuart | 5/6/2014 | 15 | PIF6 0425418 | PIF6 0425418 | Email chain from Stuart Hodge to Adnrew Smith regarding GE Lighting |
| PX-611 | Hodge, Stuart | 5/6/2014 | 16 | PIF6 0426907 | PIF6 0426910 | Email chain from Stuart Hodge to Ben Sutherland regarding |
| PX-612 | Hodge, Stuart | 5/6/2014 | 17 | PIF6 0429254 | PIF6 0429254 | Email chain from Stuart Hodge to |
| PX-613 | Hodge, Stuart | 5/6/2014 | 18 | PIF6 0815137 | PIF6 0815137 | Email chain from Stuart Hodge to Stuart Hodge regarding Report: |

| PX-614 | Hodge, Stuart | 5/6/2014 | 19 | PIF6 0825616 | PIF6 0825616 | Email chain from Stuart Hodge to Stuart Hodge regardingReport: |
|--------|---------------|----------|----|--------------|--------------|---------------------------------------------------------------|
| PX-615 | Hodge, Stuart | 5/6/2014 | 20 | PIF6 0837050 | PIF6 0837051 | Email chain from Stuart Hodge to Cindy Mulqueeney regarding Another |
| PX-616 | Hodge, Stuart | 5/6/2014 | 21 | PIF6 0838019 | PIF6 038020 | Email chain from Stuart Hodge to Jodil Zimmerman regarding LinkSwithch-PH |
| PX-617 | Hodge, Stuart | 5/6/2014 | 22 | PIF6 0839019 | PIF6 0839024 | Email chain from Stuart Hodge to Andrew Smith, Igor Shikh regarding |
| PX-618 | Hodge, Stuart | 5/6/2014 | 23 | PIF6 0839347 | PIF6 0839349 | Email chain from Stuart Hodge to Igor Shikh regarding Greenhouse: |
| PX-619 | Hodge, Stuart | 5/6/2014 | 24 | PIF6 0841111 | PIF6 0841111 | Email from Stuart Hodge to Mike |
| PX-620 | Hodge, Stuart | 5/6/2014 | 25 | PIFIV0214929 | PIFIV0214933 | Email chain from Stuart Hodge to David Lim, Doug Bailey regarding Need to Check Your Action Item After the |
| PX-621 | Hodge, Stuart | 5/6/2014 | 26 | PIFIV0277389 | PIFIV0277391 | Email chain from Stuart Hodge to Peter Vaughan, Andrew Smith, Marvin |
| PX-622 | Johnson, Brian | 10/23/2013 | 1 | FSGV0216115 | FSGV0216115 | Brian Johnson email to Jay Lee regarding LED Lighting Biz |
| PX-623 | Johnson, Brian | 10/23/2013 | 3 | FSGIV00126542 | FSGIV00126547 | Email from Jason Tao to Brian Johnson regarding LOA Porjects Update |
| PX-624 | Johnson, Brian | 10/23/2013 | 4 | FSGV00126542 | FSGV00126547 | Brian Johnson email to Chris Cheonwith regarding FCS LED Lighting |
| PX-625 | Johnson, Brian | 10/23/2013 | 5 | FSGV2818682 | FSGV2818687 | Email chain from Brian Johnson to Jay Lee regarding Power Integrations 4Q |
| PX-626 | Johnson, Brian | 10/23/2013 | 6 | FSGV0214440 | FSGV0214441 | Email chain from Dan Peck to Brian Johnson regarding Power Integrations |
| PX-627 | Johnson, Brian | 10/23/2013 | 7 | FSGV0214368 | FSGV0214369 | Email chain from John Purtell to Chris Chenowith regarding Power |
| PX-628 | Johnson, Brian | 10/23/2013 | 8 | FSGV0214438 | FSGV0214439 | Email chain from Brian Johnson to John Pellerin regarding Power |
| PX-629 | Johnson, Brian | 10/23/2013 | 9 | FSGV0181156 | FSGV0181156 | Email chain from Van Niemela to Richard Chung regarding Green Room |
| PX-630 | Johnson, Brian | 10/23/2013 | 10 | FSGV0198094 | FSGV0198095 | Email from Brian Johnson to Duane |

| PX-631 | Johnson, Brian | 10/23/2013 | 11 | FSGV0186074 | FSGV0186076 | Email chain from Brain Johnson to Van Niemela regarding K Factor Plot |
| PX-632 | Johnson, Brian | 10/23/2013 | 12 | FSGV0219670 | FSGV0219673 | Email chain from Brian Johnson to Carl Walding regarding Fairchild Visit |
| PX-633 | Johnson, Brian | 10/23/2013 | 14 | FSGV0188256 | FSGV0188257 | Email chain from Brian Johnson to Van Niemela regarding Board Meeting |
| PX-634 | Johnson, Brian | 10/23/2013 | 15 | FSGV2817957 | FSGV2817958 | Email chain from Brian Johnson to Michael Pena regarding Fairchild - |
| PX-635 | Johnson, Brian | 10/23/2013 | 16 | FSGV0216641 | FSGV0216641 | Email from Duane Hughes to Brian Johnson regarding Are You Sure |
| PX-636 | Johnson, Brian | 10/23/2013 | 17 | FSGV2819240 | FSGV2819242 | Email from Frank Greco to Cynthia Zhang regarding News Release: Fairchild Semiconductor Reports |
| PX-637 | Johnson, Brian | 10/23/2013 | 18 | FSGV0182384 | FSGV0182386 | Email chain from Brian Johnson to Nichael Petraskiewicz regarding New |
| PX-638 | Johnson, Brian | 10/23/2013 | 19 | FSGV0217123 | FSGV0217129 | Email from Brian Johnson to Jay Lee regarding Updates - LOA - BR30 EMI |
| PX-639 | Johnson, Brian | 10/23/2013 | 20 | FSGIV00144269 | FSGIV00144273 | Email chain from Alex Craig to Richard Chung regarding AC/DC Devices |
| PX-640 | Johnson, Brian | 10/23/2013 | 21 | FSGVIV00143648 | FSGIV00143651 | Email from Richard Chung to Brian Johnson regarding FL7730 - Big Delay |
| PX-641 | Johnson, Brian | 10/23/2013 | 22 | FSGIV00100357 | FSGIV00100361 | Email from Alex Craig to Brian Johnson regarding FL7730 Demoboards |
| PX-642 | Johnson, Brian | 10/23/2013 | 23 | FSGV0198650 | FSGV0198653 | Email from Suzanne Bowser to Brian Johnson regarding FL7730-FL7732 Key |
| PX-643 | Johnson, Brian | 10/23/2013 | 24 | FSGV0187692 | FSGV0187694 | Email from Brian Johnson to James Lee regarding PI LinkSwitch-PH |
| PX-643.1 | Lee, James | 5/19/2014 | 7 | FSGV0187692 | FSGV0187693 | Email from Brian Johnson to James Lee regarding PI LinkSwitch-PH |
| PX-644 | Johnson, Brian | 10/23/2013 | 25 | FSGV0503863 | FSGV0503868 | Email from Jim Friedrich to Dan Peck regarding Cree and Request for a |
| PX-645 | Johnson, Brian | 10/23/2013 | 26 | FSGV0510268 | FSGV0510270 | Email from Brian Johnson to Jon Sheburne regarding Soraa Meeting |

| PX-646 | Kim, Richard | 5/20/2014 | 6 | FSGIV00104055 | FSGV00104056 | Email from Richard Kim to Jongwoo Lee regarding SEMCO LED MNT (30W) |
| PX-647 | Kim, Richard | 5/20/2014 | 7 | FSGV0222101 | FSGV0222104 | Email from Jay Lee to Brian Johnson regarding PCIA Staff Package Week 24 |
| PX-648 | Kim, Richard | 5/20/2014 | 8 | FSGIV00140112 | FSGIV00140120 | Email from Jacky Chan to Richard Kim regarding LED Opp Review for SAP |
| PX-649 | Kim, Richard | 5/20/2014 | 9 | FSGIV00130988 | FSGIV00130992 | Email from Richard Kim to Donghye Cho, Jian Wang regarding Direction to Digital Video Broadcasting Business |
| PX-650 | Lee, James | 5/19/2014 | 4 | FSGV0184753 | FSGV0184757 | Email chain from Richard Chung to Brian Johnson regarding FL7730 |
| PX-651 | Lee, James | 5/19/2014 | 5 | FSGV0185318 | FSGV0185319 | Email chain from Richard Chung to Jason Gao, Brian Johnson, Yaxiao Qin regarding PI's Web Course for a Family |
| PX-652 | Lee, James | 5/19/2014 | 6 | FSGV0187644 | FSGV0187646 | Email chain from James Lee to Richard Chung, Carl Walding, Jay Lee regarding |
| PX-653 | Lee, James | 5/19/2014 | 8 | FSGV0189746 | FSGV0189746 | Email chain from James Lee to Jay Lee |
| PX-654 | Lee, James | 5/19/2014 | 9 | FSGV0253102 | FSGV0253103 | Email chain from James Lee to Wesley Hsu regarding The Presentation File of |
| PX-655 | Lee, James | 5/19/2014 | 10 | FSGV0254674 | FSGV0254701 | Email from Seongchui Choi to Michael Jangm Sang Tae Im, Chris Yeo, Kyunghee Jang, Seungpil Yoo, Jay Lee, |
| PX-656 | Lee, James | 5/19/2014 | 11 | FSGV0209951 | FSGV0209952 | Email chain from Jay Lee to Brian Johnson, James Lee, Soonjong Park, |
| PX-657 | Lee, James | 5/19/2014 | 12 | FSGV0253981 | FSGV0254004 | Email chain from James Lee to Jay Lee |
| PX-658 | Lee, James | 5/19/2014 | 13 | FSGV0250676 | FSGV0250681 | Email chain from Jay Lee to James Lee regarding SBP Warming Up |
| PX-659 | Lee, James | 5/19/2014 | 14 | FSGV2824970 | FSGV2824971 | Email chain from Henry Shen to Jacky Chan, CH Yeam regarding AECO |
| PX-660 | Lee, James | 5/19/2014 | 15 | FSGV0533437 | FSGV0533452 | Email chain from Jacky Chan to Pavan Balachandra regarding Benstar Status |
| PX-661 | Lee, James | 5/19/2014 | 16 | FSGV0201673 | FSGV0201682 | Email chain from Jay Lee to Brian Johnson, Sonnjong Park, Shawn Black |

| PX-662 | Lee, James | 5/19/2014 | 17 | FSGV2825775 | FSGV2825778 | Email chain from James Lee to SE Han regarding GE Meeting Minutes |
| PX-663 | Lin, Gary | 12/12/2013 | 7 | FSGV0083611 | FSGV0083615 | Email from G. Lin to S. Chang (1-13-2012) regarding FAN6922MRM OOB |
| PX-664 | Lin, Gary | 12/12/2013 | 11 | FSGIV00121766 | FSGIV00121768 | Email from G. Lin to T. Yang (5-9-2011) regarding Considerations for new |
| PX-664.1 | Yang, Ta-Yung | 12/13/2013 | 50 | FSGIV00121766 | FSGIV00121768 | Email from G. Lin to T. Yang (5-9-2011) regarding Considerations for new |
| PX-665 | Lin, Gary | 12/12/2013 | 12 | FSGIV00102659 | FSGIV00102660 | Email from G. Lin to T. Yang (2-5-2011) |
| PX-665.1 | Yang, Ta-Yung | 12/13/2013 | 49 | FSGIV00102659 | FSGIV0012660 | Email from G. Lin to T. Yang (2-5-2011) |
| PX-666 | Lin, Gary | 12/12/2013 | 13 | FSGIV00115796 | FSGIV00115804 | Email from G. Lin to J. Lee (7-29-2011) |
| PX-667 | Lin, Gary | 12/12/2013 | 15 | FSGIV00082552 | FSGIV00082557 | Email from G. Lin to Jay Lee (7-28-2011) regarding "Urgent" request your |
| PX-668 | Lin, Gary | 12/12/2013 | 16 | FSGV0184774 | FSGV0184778 | Email from A. Craig to B. Johnson (10-25-2010) re FL7730 demo boards |
| PX-669 | Lin, Gary | 12/12/2013 | 17 | FSGV0068067 | FSGV0068070 | Email from Jay Lee to G. Lee (9-6-2010) regarding FL7700 Project |
| PX-670 | Lin, Gary | 12/12/2013 | 18 | FSGV0064271 | FSGV0064273 | Email from I. Sandtae to G. Lin (6-17-2010) re FAN7346 pricing strategy |
| PX-671 | Lin, Gary | 12/12/2013 | 19 | FSGIV00144329 | FSGIV144329 | Email from Justin Chiang to Gary Lin regarding Feedback from NA |
| PX-672 | Lin, Gary | 12/12/2013 | 20 | FSGIV00110238 | FSGIV00110240 | Email from J Chiang to G. Lin (5-20-2010) regarding Discussion on LED |
| PX-673 | Lin, Gary | 12/12/2013 | 21 | FSGIV00195471 | FSGIV0019475 | Email from G. Lin to D. Janson (8-9-2012) regarding chain re POWI: Mixed |
| PX-674 | Pastore, Tiziano | 6/12/2014 | 2 | PIFIV0010421 | PIFIV0010422 | Email chain to Mike Matthews, Stefan Baeurle, and Tiziano Pastore from |
| PX-675 | Pastore, Tiziano | 6/12/2014 | 3 | PIFIV011999 | PIFIV0120066 | Email chain to Mike Matthews from Silvestro Fimiani regarding Buck PFC |
| PX-676 | Pastore, Tiziano | 6/12/2014 | 4 | PIFIV0138211 | PIFIV0138212 | Email chain to Doug Bailey and Mike Matthews from Tiziano Pastore |
| PX-677 | Pastore, Tiziano | 6/12/2014 | 5 | PIFIV0230469 | PIFIV0230471 | Email chain to Mike Matthews, Andrew Smith, and Anthony Wu from |

| PX-678 | Pastore, Tiziano | 6/12/2014 | 6 | PIF6 0011753 | PIF6 0011754 | Email chain to Donnie Saturno and Marvin Espino from Andrew Smith |
| PX-679 | Pastore, Tiziano | 6/12/2014 | 7 | PIF6 0141625 | PIF6 0141626 | Email chain from Doug Bailey to Bill Weiss, John Lin, Jill Chao, Gary Lee, Michael Hsu, Andrew Smith, Tiziano Pastore, Marvin Espino, Chris Lee, |
| PX-680 | Pastore, Tiziano | 6/12/2014 | 8 | PIF6 0489243 | PIF6 0489243 | Email chain to Tiziano Pastore, Iain Mosely, Alessandro Squeri, Bernhard Weinberger, and Chris Muir from Ben |
| PX-681 | Pastore, Tiziano | 6/12/2014 | 9 | PIF6 0530499 | PIF6 0530503 | Email chain to John Lin, Andrew Smith, Bill Weiss, Tiziano Pastore, Gary Lee, and Michael Hsu from Jill Chao |
| PX-682 | Pastore, Tiziano | 6/12/2014 | 10 | PIF6 0540700 | PIF6 0540705 | Email chain to Tiziano Pastore from Fairchild Semiconductor regarding |
| PX-683 | Pastore, Tiziano | 6/12/2014 | 11 | PIF6 0541273 | PIF6 0541275 | Email chain to Tiziano Pastore from Fairchild Semiconductor regarding Design Ready: Mobile and Power |
| PX-684 | Pastore, Tiziano | 6/12/2014 | 12 | PIF6 0544987 | PIF6 0545012 | Email chain to Tiziano Pastore from Mike Matthews regarding LG Selects PI for Both Low Power and High Power |
| PX-685 | Pastore, Tiziano | 6/12/2014 | 13 | PIF6 0545446 | PIF6 0545522 | Email chain to Ben Sutherland, Stefan Baeurle, and Tiziano Pastore from Mike Matthews with attachments |
| PX-686 | Pastore, Tiziano | 6/12/2014 | 14 | PIF6 0547063 | PIF6 0547077 | Email chain to Mike Matthews, Tiziano Pastore, Roland Saint Pierre, and Stefan Baeurle from Silvestro Fimiani |
| PX-686.1 | Fimiani, Silvestro | 10/17/2013 | 4 | PIF6 0547063 | PIF6 0547063 | Email chain to Mike Matthews, Tiziano Pastore, Roland Saint Pierre, and Stefan Baeurle from Silvestro Fimiani |
| PX-687 | Pastore, Tiziano | 6/12/2014 | 15 | PIF6 0547283 | PIF6 0547283 | Email chain to Tiziano Pastore and Stefan Baeurle from Mike Matthews |

| PX-688 | Pastore, Tiziano | 6/12/2014 | 16 | PIF6 0562442 | PIF60562517 | Email chain to Stefan Baeurle, Ray Orr, Roland Saint Pierre, and Tiziano Pastore from Mike Matthews with attachments regarding Fairchild |
| PX-689 | Pastore, Tiziano | 6/12/2014 | 17 | PIF6 0595190 | PIF6 0595190 | Email chain to Tiziano Pastore, Mike Matthews, and Silvestro Fimiani from Stefan Baeurle regarding 5% CV 5%CC |
| PX-690 | Pastore, Tiziano | 6/12/2014 | 18 | PIF6 0519888 | PIF6 0519888 | Email dated to Mike Matthews from Tiziano Pastore regarding LNK-PH |
| PX-691 | St. Pierre, Roland | 12/5/2013 | 7 | PIF6 0462048 | PIF6 0462049 | Email string from Andrew Smith to Roland Saint Pierre Dated 10/21/11, |
| PX-691.1 | Smith, Andrew | 10/31/2013 | 9 | PIF6 0462048 | PIF6 0462049 | Email string dated 10/21/11 from Andrew Smith to Roland Saint Pierre, |
| PX-692 | St. Pierre, Roland | 12/5/2013 | 8 | PIFIV0376880 | PIFIV0376880 | Email string from Roland Saint Pierre to Silvestro Fimiani dated 5/2/09 |
| PX-693 | St. Pierre, Roland | 12/5/2013 | 9 | PIFIV0171858 | PIFIV0171868 | Email string from Daniel Kang Bill Weiss, et al., dated 6/6/10, Subject: Request the Conference for Samsung |
| PX-694 | St. Pierre, Roland | 12/5/2013 | 10 | PIFIV0268620 | PIFIV0268626 | Email string from Daniel Kang to Silvestro Fimiani, et al., dated 5/2/10, |
| PX-695 | St. Pierre, Roland | 12/5/2013 | 11 | PIFIV0001832 | PIFIV0001833 | Email string from Roland Saint Pierre to Mike Matthews dated 6/6/12, |
| PX-696 | Smith, Andrew | 10/31/2013 | 2 | PIFIV0226962 | PIFIV0227009 | Email string dated 9/15/11 from Marvin Espino to Andrew Smith, Peter Vaughan, Subject: DER-297 4.5W Buck |
| PX-697 | Smith, Andrew | 10/31/2013 | 3 | PIF6 0488776 | PIF6 0488789 | Email string dated 6/24/13 from Andrew Smith to Doug Baily, Subject: |
| PX-698 | Smith, Andrew | 10/31/2013 | 4 | PIF6 0304283 | PIF6 0304284 | Email string dated 1/8/09 from Andrew Smith to Andrew Smith, et al., |
| PX-699 | Smith, Andrew | 10/31/2013 | 5 | PIF6 0470685 | PIF6 0470693 | Email string dated 6/28/12 from Andrew Smith to Anthony Wu, |
| PX-700 | Smith, Andrew | 10/31/2013 | 6 | PIF6 0476736 | PIF6 0476736 | Email dated 12/12/12 from Andrew Smith to Anthony Wu, Subject: |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-701 | Smith, Andrew | 10/31/2013 | 7 | PIF6 0478743 | PIF6 0478744 | Email string dated 3/7/13 from Andrew Smith to Anthony Wu, |
| PX-701.1 | Sutherland, Ben | 11/6/2013 | 26 | PIF6 0478743 | PIF6 0478744 | Email string dated 3/7/13 from Andrew Smith to Anthony Wu, |
| PX-702 | Smith, Andrew | 10/31/2013 | 8 | PIF6 0478815 | PIF6 0478817 | Email string dated 3/11/13 from Andrew Smith to Jackie Yin, Anthony Wu, Subject: regarding China Call |
| PX-703 | Sutherland, Ben | 11/6/2013 | 4 | PIFIV0007134 | PIFIV0007136 | Email string, the topmost dated November 1, 2012 to Mike Matthews from Ben Sutherlandregarding |
| PX-704 | Sutherland, Ben | 11/6/2013 | 5 | PIFIV0008633; PIFIV0007634 | PIFIV0008633; PIFIV0007634 | Email dated November 17, 2012 to Joon Ho Kim from Ben Sutherland |
| PX-705 | Sutherland, Ben | 11/6/2013 | 6 | PIFIV0021502 | PIFIV0021505 | Email string, the topmost datedMarch 13, 2012 to DL-VP Staff from Ben Sutherland regarding RF Tech Visit |
| PX-706 | Sutherland, Ben | 11/6/2013 | 7 | PIFIV0061475 | PIFIV0061479 | Email dated July 9, 2012 tomultiple addressees from Ben Sutherland regarding Sales Weekly Report for |
| PX-707 | Sutherland, Ben | 11/6/2013 | 8 | PIFIV0062989 | PIFIV0062992 | Email dated November 14, 2012 to multiple addressees from Ben Sutherland regarding Weekly Sales |
| PX-708 | Sutherland, Ben | 11/6/2013 | 9 | PIFIV0064194 | PIFIV0064207 | Email chain to Joon Ho Kim from Ben Sutherland regarding Biannual Price |
| PX-709 | Sutherland, Ben | 11/6/2013 | 19 | PIFIV0059482 | PIFIV0059482 | Email dated January 5, 2012 to DL-VP Staff from Ben Sutherland regarding |
| PX-710 | Sutherland, Ben | 11/6/2013 | 20 | PIFIV0061710 | PIFIV0061711 | Email chain to Won-Il Kim from Ben Sutherland regarding RFQ from |
| PX-711 | Sutherland, Ben | 11/6/2013 | 23 | PIFIV0060114 | PIFIV0060117 | Email chain to Mike Matthews from Ben Sutherlandregarding Meeting |
| PX-712 | Sutherland, Ben | 11/6/2013 | 25 | PIFIV0059229 | PIFIV0059230 | Email chain to Balu Balakrishnan, Douglas Bailey,Mike Matthews, and Silvestro Fimiani from Ben |
| PX-713 | Tomlin, John | 10/29/2013 | 5 | PIFIV024916 | PIFIV0240918 | Email string dated 1/17/12 from Derek Bell to John Tomlin, Subject: |

| PX-714 | Tomlin, John | 10/29/2013 | 6 | PIFIV0044318 | PIFIV0044321 | Email string dated 7/12/12 from John Tomlin to Ron Hunt, Subject: |
| PX-715 | Tomlin, John | 10/29/2013 | 7 | PIFIV0039046 | PIFIV0039047 | Email string dated 4/1/2010 from John Tomlin to Bruce Renouard, Subject: Updated Forecast analysis with LNK-II |
| PX-716 | Tomlin, John | 10/29/2013 | 8 | PIFIV0040106 | PIFIV0040108 | Email string dated 10/14/10 from John Tomlin to Ron Hunt and John |
| PX-717 | Tu, A. | 6/5/2014 | 1 | FSGV0420748 | FSGV0420751 | Email chain from Aung Tu to Kenny Chan, Gary Lin, Cho Donghye |
| PX-718 | Tu, A. | 6/5/2014 | 3 | FSGV3535809 | FSGV3535810 | Email chain from Aug Tu to Hang Seok Choi regarding 0417 OTP Material |
| PX-719 | Tu, A. | 6/5/2014 | 5 | FSGV3556419 | FSGV3556423 | Email chain from James Lee to Aung Tu, Yong Ann Ang regarding And Now Samsung Turns an Ordinary Litghtbulb |
| PX-720 | Tu, A. | 6/5/2014 | 8 | FSGV3523323 | FSGV3523332 | Email chain from Aung Tu to Hang Seok Choi regarding FAN6756 Material |
| PX-721 | Tu, A. | 6/5/2014 | 9 | FSGV3522705 | FSGV3522077 | Email chain from Kenny Chan to Hang Seok Choi regarding PI CAPZero |
| PX-722 | Tu, A. | 6/5/2014 | 12 | FSGV3525417 | FSGV3525421 | Email chain from Han Seok Choi to David Pan regarding Feedback on |
| PX-723 | Tu, A. | 6/5/2014 | 14 | FSGV3539558 | FSGV3539583 | Email chain from Augn Tu to Jon Harper regarding IC Chip ProposalTest |
| PX-724 | Tu, A. | 6/5/2014 | 15 | FSGV3547356 | FSGV3547369 | Email chain from Pierfranco Vanelli to Aung Tu regarding Quasi-resonant |
| PX-725 | Tu, A. | 6/5/2014 | 16 | FSGIV00141103 | FSGVIV99141193 | Email chain from Michael Petraskiewicz to Steven Mappus |
| PX-726 | Tu, A. | 6/5/2014 | 18 | FSGV00100452 | FSGV00100455 | Email chain from Aung Tu to Richard Chung regarding Energy Efficient |
| PX-727 | Tu, A. | 6/5/2014 | 19 | FSGV00194789 | FSGV00194789 | Email chain from Aung Tu to Stephen Jensen, Roya Colwell, Duane Hughes, Carl Walding, Robert Kirch regarding |
| PX-728 | Tu, A. | 6/5/2014 | 20 | FSGV3509215 | FSGV3509215 | Email from S. Mappus to A. Tu regarding Power Integrations Wins |

| PX-728.1 | Tu, A. | 6/5/2014 | 21 | FSGV3509215 | FSGV3509215 | Email from A. Tu to S. Mappus regarding Power Integrations Wins |
| PX-729 | Ullal, Vijay | 5/29/2014 | 4 | FSGV0471429 | FSGV0471429 | Email from Dae Young Jung to Vijay Ullal regarding MWC Meeting Minutes |
| PX-730 | Ullal, Vijay | 5/29/2014 | 5 | FSGV3534542 | FSGV3534545 | Email from Vijay Ullal to Matt Johnson regarding MWC Meeting Minutes - |
| PX-731 | Ullal, Vijay | 5/29/2014 | 6 | FSGV0099998 | FSGV0100002 | Email from Justin Chiang to Vijay Ullal regarding Korea Sales Bi-Weekly |
| PX-732 | Ullal, Vijay | 5/29/2014 | 7 | FSGV3545078 | FSGV3545078 | Email chain from Vijay Ullal to Gary Lin, Michael Dube, Seomeng Goh, Barry O'Connell, Srinath Athur |
| PX-733 | Ullal, Vijay | 5/29/2014 | 8 | FSGV3546691 | FSGV3546694 | Email chain from KE Hong from Vijay Ullal regarding Daily Progress Report for |
| PX-734 | Ullal, Vijay | 5/29/2014 | 9 | FSGV3596658 | FSGV3506673 | Email chain from Vijay Ulla to Manisha Pandya regarding FAN301 History |
| PX-735 | Ullal, Vijay | 5/29/2014 | 10 | FSGV3550472 | FSGV3550472 | Email from Vijay Ullal to Steve Fu, David Kunst, Donghye Cho regarding Power Integrations' CEO Discusses Q4 |
| PX-736 | Ullal, Vijay | 5/29/2014 | 11 | FSGIV00097533 | FSGIV00097541 | Email chain from Denny Kim to Richard Kim regarding KNPR - Next |
| PX-737 | Ullal, Vijay | 5/29/2014 | 12 | FSGV0094925 | FSGV0094928 | Email chain from Donghye Cho to Gary Lin regarding FL7734 Concept |
| PX-738 | Ullal, Vijay | 5/29/2014 | 13 | FSGV0217076 | FSGV0217076 | Email from Salesforce Chatter to Brian Johnson regarding Your Dailey Chatter |
| PX-739 | Ullal, Vijay | 5/29/2014 | 18 | FSGV3536950 | FSGV3536956 | Email from Vijay Ullal to Justin Chiang and Claudia Innes regarding Dashboard: Opportunities |
| PX-740 | Ullal, Vijay | 5/29/2014 | 19 | FSGV0469629 | FSGV0469629 | Email from Andrew Forbes to Vijay Ullal regarding Sales and Marketing |
| PX-741 | Walker, Cliff | 6/11/2014 | 13 | PIFIV0061128 | PIFIV0061129 | Email chain to Jerry Yang and Jacky Sun from Ben Sutherland regarding |
| PX-742 | Walker, Cliff | 6/11/2014 | 14 | PIFIV0061297 | PIFIV0061297 | Email chain to Cliff Walker from Ben Sutherland regarding Ningbo Self |

| PX-743 | Weirich, Michael | 12/11/2013 | 19 | FSGV0388482 | FSGV0388485 | Email from J. Andre to J. Harperregarding CR et actions |
| PX-744 | Weirich, Michael | 12/11/2013 | 20 | FSGV0388514 | FSGV0388516 | Email from J. Andre to M. Weirich regarding SMPS Status at SOMFY (And |
| PX-745 | Weirich, Michael | 12/11/2013 | 21 | FSGV0403935 | FSGV0403949 | Email from C. Walding to M. Weirich regarding Dimmable led controller for |
| PX-746 | Weirich, Michael | 12/11/2013 | 22 | FSGV0405869 | FSGV0405876 | Email from P. Vanelli to J. Ryuregarding Low Standby FPS |
| PX-747 | Weirich, Michael | 12/11/2013 | 23 | FSGV0408438 | FSGV0408442 | Email from M. Feldstrdt to M. Weirich regarding Ferryster - transformer and |
| PX-748 | Weirich, Michael | 12/11/2013 | 24 | FSGV0382863 | FSGV0382864 | Email from: M. Weirich to J. Grulich regarding New design projects |
| PX-749 | Weirich, Michael | 12/11/2013 | 25 | FSGV0383235 | FSGV0383236 | Email from M. Weirich to G. Williams regarding Landis and Gyr Transformer |
| PX-750 | Weirich, Michael | 12/11/2013 | 26 | FSGV0384704 | FSGV0384707 | Email from M. Weirich to J. Bailey regarding Transformer ringing / good |
| PX-751 | Weirich, Michael | 12/11/2013 | 27 | FSGV0388414 | FSGV0388417 | Email from M. Weirich to R. Dunipace regarding Demo board for Metering |
| PX-752 | Wu, Yu Shan | 11/6/2013 | 5 | PIF6 0360541 | PIF6 0360543 | Email string dated 11/22/11 from Anthony Wu to Andrew Smith, |
| PX-753 | Wu, Yu Shan | 11/6/2013 | 6 | PIF6 0429994 | PIF6 0429996 | Email string dated 6/10/13 from Anthony Wu to Andrew Smith, Subject: regarding Meeting summary |
| PX-754 | Wu, Yu Shan | 11/6/2013 | 7 | PIFIV0260459 | PIFIV0260459 | Email dated 6/7/12 from Anthony Wu to Jerry Yang, Chun Ming Guo, Subject: Q2 LED business and technical review - |
| PX-755 | Wu, Yu Shan | 11/6/2013 | 8 | PIFIV0300573 | PIFIV0300574 | Email string dated 3/7/13 from Andrew Smith to Anthony Wu, |
| PX-756 | Wu, Yu Shan | 11/6/2013 | 9 | PIFIV0236004 | PIFIV-236004 | Email string dated 11/23/11 from Anthony Wu to Doug Bailey, Subject: |
| PX-757 | Wu, Yu Shan | 11/6/2013 | 10 | PIFIV0211302 | PIFIV0211303 | Email string dated 5/6/11 from Anthony Wu to Doug Bailey, Subject: |
| PX-758 | Wu, Yu Shan | 11/6/2013 | 11 | PIFIV0234834 | PIFIV0234840 | Email string dated 11/12/11 from Anthony Wu to Randy Yang, Subject: |

| PX-759 | Wu, Yu Shan | 11/6/2013 | 12 | PIF6 0020872 | PIF6 0020878 | Email string dated 4/26/13 from Anthony Wu to Andrew Smith, |
| PX-760 | Wu, Yu Shan | 11/6/2013 | 13 | PIFIV0229248 | PIFIV0229254 | Email string dated 10/3/11 from Anthony Wu to Andrew Smith, Tiziano Pastore, Subject: regarding China |
| PX-760.1 | Wu, Yu Shan | 11/6/2013 | 15 | PIFIV0229248 | PIFIV0229254 | Email string dated 10/3/11 from Anthony Wu to Andrew Smith, Tiziano Pastore, Subject: regarding China |
| PX-760.2 | Wu, Yu Shan | 11/6/2013 | 14 | PIFIV0220248 | PIFIV0229254 | Email string dated 10/3/11 from Anthony Wu to Andrew Smith, Tiziano Pastore, Subject: regarding China |
| PX-762 | Yang, Ta-Yung | 12/12/2013 | 10 | FSGV0420596 | FSGV0420597 | Email from T. Yang to C. Hangseok regarding Congratulation for the |
| PX-763 | Yang, Ta-Yung | 12/13/2013 | 51 | FSGV0051912 | FSGV0051912 | Email from T. Yang to C. Carinalli (5/19/2010) regarding IP/Patent |
| PX-764 | | | | PIB 031101 | PIB 031103 | Email from Bruce Renouard to Balu Balakrishna regarding Meeting Memo |
| PX-765 | | | | PIB 069613 | PIB 069624 | Email from Dog Bailey to Won-Il Kin, Bruce Renouard, Peter Vaughan |
| PX-766 | | | | PIF 513637 | PIF 513638 | Email chain from Alex Djengeurian to David Kung regarding Big Challenge |
| PX-767 | | | | PIFIV0002017 | PIFIV0002017 | Email chain from Robert Mayell to Mike Matthews, Roland Saint Pierre |
| PX-768 | | | | PIFIV0022077 | PIFIV0022081 | Email chain fromJohn Tomlin to Tom Roesler, Brad Hawthorne, Ron Hunt regarding Sales Weekly Report as of |
| PX-769 | | | | PIFIV0058835 | PIFIV0058840 | Email chain from Ben Sutherland to Mike Matthews regarding Fairchild Claiming New Cellphone Design Win - |
| PX-769.1 | Sutherland, Ben | 11/6/2013 | 18 | PIFIV0058835 | PIFIV0058839 | Email chain from Ben Sutherland to Mike Matthews regarding Fairchild Claiming New Cellphone Design Win - |
| PX-770 | | | | PIFIV0473007 | PIFIV0473007 | Email from Ying Ye to Eric Verity regarding 'StdCost 200802011.xlsx' |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-771 | | | | PIF 322775 | PIF 322776 | Email chain from Alex Djengeurian to David Kung regarding Big Challenge |
| PX-772 | | | | FSGV0076711 | FSGV0076716 | Email from Aziz Kishani to K.E. Hong, Kamil Madoo regarding Meeting With |
| PX-773 | | | | PIF6 0192508 | PIF6 0192517 | Email from Hsu to Lee & Chao regarding Cyberpower and TOP256EN |
| PX-774 | | | | PIF6 0260334 | PIF6 0260336 | Email from Chriss Lee to Doug Bailey regarding Qixing TOP250YN Elevation |
| PX-775 | | | | PIFIV0060372 | PIFIV0060374 | Email from Ben Sutherland to Bob Feng regarding Meeting Minutes - TP- |
| PX-776 | | | | FSGV3561574 | FSGV3561578 | Letter to Taipei re SG Name Change |
| PX-777 | | | | FSGV3561579 | FSGV3561584 | Translation of Letter to Taipei |
| PX-778 | | | | FSGV3561585 | FSGV3561608 | SG Application for Change of |
| PX-779 | | | | FSGV3561609 | FSGV3561633 | Translation. of SG Application for |
| PX-780 | | | | FSGV3561959 | FSGV3561971 | PTO Fairchild Taiwain Name Change |
| PX-781 | | | | | | Assignment for U.S. Patent No. |
| PX-782 | | | | | | Assignment for U.S. Patent No. |
| PX-783 | | | | | | Assignment for U.S. Patent No. |
| PX-784 | Weirich, Michael | 12/11/2013 | 10 | PI 0171021 | PI 0171036 | U.S. Patent No. 6,480,399 |
| PX-784.1 | Collins, Edward | 1/7/2015 | 5 | | | U.S. Patent No. 6,480,399 |
| PX-785 | Yang, Ta-Yung | 12/12/2013 | 7 | PIF6 0001565 | PIF6 0001574 | U.S. Patent No. 6,362,578 |
| PX-786 | Yang, Ta-Yung | 12/12/2013 | 13 | | | U.S. Patent No. 6,674,656 |
| PX-787 | Yang, Ta-Yung | 12/12/2013 | 14 | | | U.S. Patent No. 6,721,192 |
| PX-788 | Yang, Ta-Yung | 12/13/2013 | 34 | | | U.S. Patent No. 7,940,035 |
| PX-789 | Yang, Ta-Yung | 12/13/2013 | 35 | | | U.S. Patent No. 7,855,899 |
| PX-790 | Yang, Ta-Yung | 12/13/2013 | 37 | | | U.S. Patent No. 6,906,934 |
| PX-790 | Huang, WH | 12/13/2013 | 5 | | | U.S. Patent No. 6,906,934 |
| PX-790 | Yang, Ta-Yung | 12/12/2013 | 17 | | | U.S. Patent No. 6,906,934 |
| PX-791 | Yang, Ta-Yung | 12/13/2013 | 45 | | | U.S. Patent No. 6,661,679 |
| PX-792 | Yang, Ta-Yung | 12/13/2013 | 47 | | | U.S. Patent No. 7,834,605 |
| PX-793 | | | | FSGV0050555 | FSGV0050558 | "Off-Line PWM Switching Regulator IC Handles 3W" by Frank Goodenough, Electronic Design, March 22, 1990 (pp. |

| | | | | | |
|---|---|---|---|---|---|
| PX-794 | | | PIFIV0000352 | PIFIV0000383 | Linear Technology Corporation, Data Sheet: LT1074/LT1076 Step-Down |
| PX-795 | | | FSGV0050742 | FSGV0050750 | Unitrode Application Note U-128 ("U- |
| PX-796 | | | | | U.S. Patent App. Pub. No. |
| PX-797 | | | FSGV0050887 | FSGV0050893 | U.S. Patent No. 4,293,902 |
| PX-798 | | | FSGV0050804 | FSGV0050807 | U.S. Patent No. 4,598,351 |
| PX-799 | | | FSG01315360 | FSG01315363 | U.S. Patent No. 4,638,417 |
| PX-800 | | | FSG 02203731 | FSG 02203736 | U.S. Patent No. 4,672,518 |
| PX-801 | | | FSGV0050808 | FSGV0050813 | U.S. Patent No. 4,716,510 |
| PX-802 | | | FSGV0050820 | FSGV0050846 | U.S. Patent No. 4,823,070 |
| PX-803 | | | FSGV0050847 | FSGV0050864 | U.S. Patent No. 5,742,494 |
| PX-804 | | | FSGV0050894 | FSGV0050901 | U.S. Patent No. 5,841,642 |
| PX-805 | | | FSGV0050487 | FSGV0050509 | U.S. Patent No. 7,272,018 |
| PX-806 | | | FSGV0050510 | FSGV0050524 | U.S. Patent No. 7,272,025 |
| PX-807 | | | | | U.S. Patent No. 7,616,461 |
| PX-808 | | | FSGV0000163 | | U.S. Patent No. 7,616,461 Prosecution |
| PX-809 | | | FSGV3558477 | FSGV3558625 | Certified translation of Japanese |
| PX-810 | | | FSGV3558626 | FSGV3558796 | Certified translations of Japanese |
| PX-811 | | | | | U.S. Patent No. 5,523,665 |
| PX-812 | | | | | U.S. Patent No. 5,995,386 |
| PX-813 | | | | | U.S. Patent No. 6,424,125 |
| PX-814 | | | | | U.S. Patent No. 7,719,860 |
| PX-815 | | | | | U.S. Patent No. 7,957,162 |
| PX-816 | | | | | U.S. Patent No. 8,004,866 |
| PX-817 | | | | | U.S. Patent No. 8,643,222 |
| PX-818 | | | FSGV3504710 | FSGV02504738 | Maxim Integrated Products datasheet, "Multi-Output, Low-Noise Power-Supply Controllers for Notebook |
| PX-819 | | | | | Revised Opening Expert Report of G. |
| PX-820 | | | | | G. Wei Rebuttal Expert Report on |
| PX-821 | | | | | Revised Opening Expert Report of R. |
| PX-822 | | | | | E. Collins Rebuttal Expert Report |
| PX-823 | | | | | Affirmative Expert Report of James E. |
| PX-824 | | | | | J. Malackowski Rebuttal Report |

| PX-825 | Baeurle, Stefan | 10/30/2013 | 2 | PIF6 0001037 | PIF6 0001060 | Datasheet for LinkSwitch-HP Family |
|--------|-----------------|------------|---|--------------|--------------|-----------------------------------|
| PX-825.1 | Espino, Marvin | 10/31/2013 | 12 | PIF6 0001037 | PIF6 0001060 | Datasheet for the LinkSwitch-HP |
| PX-825.2 | Gaknoki, Gary | 10/29/2013 | 4 | PIF6 0001037 | PIF6 0001060 | Datasheet for the LinkSwitch-HP |
| PX-825.3 | Weirich, Michael | 12/11/2013 | 16 | PIF6 0001037 | PIF6 0001060 | LinkSwĩtch-HP Datasheet, August 2012 |
| PX-826 | Balakrishnan, Balu | 12/4/2013 | 24 | | | Datasheet for the TopSwitch-FX- |
| PX-827 | Balakrishnan, Balu | 12/4/2013 | 25 | | | Datasheet for the TopSwitch-HX |
| PX-828 | Collins, Edward | 1/7/2015 | 8 | PIF6 0001417 | PIF6 0001436 | LNK520 LinkSwitch Family Datasheet, |
| PX-828.1 | Kelley, Arthur | 1/12/2015 | 15 | PIF6 0001417 | PIF6 0001436 | LNK520 LinkSwitch Family Datasheet, |
| PX-828.2 | Weirich, Michael | 12/11/2013 | 11 | PIF6 0001417 | PIF6 0001436 | LNK520 LinkSwitch Family Datasheet, |
| PX-828.3 | Yang, Ta-Yung | 12/12/2013 | 5 | PIF6 0001417 | PIF6 0001436 | LNK520 LinkSwitch Family Datasheet, |
| PX-829 | Collins, Edward | 1/7/2015 | 14 | PIF6 0000915 | PIF6 0000934 | LNK403-414/413-420 LinkSwitch-PH LED Driver IC Family Datasheet, May |
| PX-829.1 | Hodge, Stuart | 5/6/2014 | 29 | PIF6 0000915 | PIF6 0000934 | LNK403-414/413-420 LinkSwitch-PH LED Driver IC Family Datasheet, May |
| PX-829.2 | Pastore, Tiziano | 6/12/2014 | 26 | PIF6 0000915 | PIF6 0000934 | LNK403-414/413-420 LinkSwitch-PH LED Driver IC Family Datasheet, May |
| PX-829.3 | St. Pierre, Roland | 12/5/2013 | 4 | PIF6 0000915 | PIF6 0000934 | LNK403-414/413-420 LinkSwitch-PH LED Driver IC Family Datasheet, May |
| PX-829.4 | Walker, Cliff | 6/11/2014 | 6 | PIF6 0000915 | PIF6 0000934 | LNK403-414/413-420 LinkSwitch-PH LED Driver IC Family Datasheet, May |
| PX-829.5 | Weirich, Michael | 12/11/2013 | 17 | PIF6 0000915 | PIF6 0000934 | LNK403-414/413-420 LinkSwitch-PH LED Driver IC Family Datasheet, May |
| PX-830 | Collins, Edward | 1/7/2015 | 17 | PIF6 0001370 | PIF6 0001387 | LNK603-606/613-616, LinkSwitch-II Family Datasheet, January 2012 |
| PX-830.1 | Gaknoki, Gary | 10/29/2013 | 10 | PIF6 0001370 | PIF6 0001387 | LNK603-606/613-616, LinkSwitch-II Family Datasheet, January 2012 |
| PX-830.2 | Hodge, Stuart | 5/6/2014 | 27 | PIF6 0001370 | PIF60001387 | LNK603-606/613-616, LinkSwitch-II Family Datasheet, January 2012 |
| PX-830.3 | Walker, Cliff | 6/11/2014 | 4 | PIF6 0001370 | PIF6 0001387 | LNK603-606/613-616, LinkSwitch-II Family Datasheet, January 2012 |
| PX-830.4 | Weirich, Michael | 12/11/2013 | 18 | PIF6 0001370 | PIF6 0001387 | LNK603-606/613-616, LinkSwitch-II Family Datasheet, January 2012 |
| PX-831 | Collins, Edward | 1/7/2015 | 18 | FSGIV00214532 | FSGIV0021454 | LNK632DG, LinkSwitch-II Family |

| PX-832 | Espino, Marvin | 10/31/2013 | 11 | PIF6 000915 | PIF6 000934 | Datasheet for the LNK403-410,413-420, LinkSwitch-PH product family, |
|--------|----------------|------------|----|-------------|-------------|---------------------------------------------------------------------|
| PX-833 | Espino, Marvin | 10/31/2013 | 13 | | | Datasheet for TOP252-262, the TOPSwitch-HX product family, June |
| PX-834 | Gaknoki, Gary | 10/29/2013 | 6 | PIF6 0001212 | PIF6 0001231 | Datasheet for the LINK454/456-458/460 LinkSwitch-PL Family, |
| PX-834.1 | Hodge, Stuart | 5/6/2014 | 30 | PIF6 0001212 | PIF6 0001231 | LNK454/456-459/460 LinkSwitch-PL Family Datasheet, October 2011 |
| PX-834.2 | Pastore, Tiziano | 6/12/2014 | 25 | PIF6 0001212 | PIF6 0001231 | LNK454/456-458/460 LinkSwitch-PL Family Datasheet, October 2011 |
| PX-834.3 | Walker, Cliff | 6/11/2014 | 7 | PIF6 0001212 | PIF6 0001231 | LNK454/456-458/460 LinkSwitch-PL Family Datasheet, October 2011 |
| PX-835 | Gaknoki, Gary | 10/29/2013 | 7 | PIF6 0001300 | PIF6 0001369 | LinkSwitch-PL Schematics |
| PX-836 | Huang, WH | 12/13/2013 | 10 | | | FAN6755W and FAN755UW Datasheet |
| PX-837 | Huang, WH | 12/13/2013 | 12 | FSGIV0212868 | FSGIV0212972 | FSB137HL Schematic |
| PX-838 | Huang, WH | 12/13/2013 | 16 | FSGIV0212855 | FSGIV0212867 | FSB137HL Datasheet, May 2013 |
| PX-839 | Huang, WH | 12/13/2013 | 18 | FSGV0043139 | FSGV0043152 | SG6841 Datasheet, May 22, 2003 |
| PX-840 | Kelley, Arthur | 1/12/2015 | 11 | PIF6 0431454 | PIF6 0431473 | LNK403-410/413-420 LinkSwitch-PH LED Driver IC Family Datasheet |
| PX-841 | Kelley, Arthur | 1/12/2015 | 14 | FSGIV00053509 | FSGIV00053526 | LNK603-606/613-616 LinkSwitch-II Family Datasheet, January 2010 |
| PX-842 | Malackowski, James | 1/20/2015 | 5 | | | Power Integrations LYT4211-4218/4311-4318, LYTSwitch-4 |
| PX-843 | Park, YB | 5/19/2014 | 14 | FCS026915 | FCS026960 | Schematics with handwritten notes of |
| PX-844 | Park, YB | 5/19/2014 | 18 | FCS0077092 | FCS0077124 | Schematics |
| PX-845 | Park, YB | 5/19/2014 | 19 | FSGV0000722 | FSGV0000762 | Schematics |
| PX-846 | Park, YB | 5/19/2014 | 20 | FSGV0000674 | FSGV0000721 | Schematics |
| PX-847 | Pastore, Tiziano | 6/12/2014 | 22 | PIF6 0114640 | PIF6 0114699 | LYT4221-4228/4321-4328 LYTSwitch-4 High Power LED Driver IC Family |
| PX-847.1 | Pastore, Tiziano | 6/12/2014 | 20 | PIF6 0114640 | PIF6 0114699 | LYT4221-4228/4321-4328 LYTSwitch-4 High Power LED Driver IC Family |
| PX-848 | Pastore, Tiziano | 6/12/2014 | 24 | PIF6 0876536 | PIF6 0876555 | LYT4211-4218/4311-4318 LYTSwitch-4 High Power LED Driver IC Family |
| PX-849 | St. Pierre, Roland | 12/5/2013 | 5 | PIF6 0000999 | PIF6 0001036 | LinkSwitch-PH Schematics |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-850 | Tu, A. | 6/5/2014 | 10 | FSGV3522078 | FSGV3522085 | Power Integrations, Application Note AN-48, CAPZero Family Datasheet, |
| PX-851 | Tu, A. | 6/5/2014 | 11 | FSGV3522086 | FSGV3522093 | CAPZero Family Datasheet, June 2010 |
| PX-852 | Ullal, Vijay | 5/29/2014 | 16 | | | FAN6756-mWSaver tm PWM |
| PX-853 | Wei, Gu-Yeon | 1/15/2015 | 6 | FSGIV00212855 | FSGIV00212867 | FSB137HL Datasheet |
| PX-854 | Weirich, Michael | 12/11/2013 | 2 | PIF 2030681 | PIF 2036100 | Fairchild, FSDH321, FSDL321 |
| PX-855 | Weirich, Michael | 12/11/2013 | 5 | FSGV3490708 | FSGV3490708 | Schematics |
| PX-856 | Weirich, Michael | 12/11/2013 | 15 | FSGIV00209451 | FSGIV00209468 | LNK623-626 LinkSwitch-CV Family |
| PX-857 | Yang, Ta-Yung | 12/12/2013 | 9 | FSGV0028445 | FSGV0028457 | Datasheet - FL7730MY - Single-State Primary-Side-Regulation PWM Controller or PFC and LED Dimmable |
| PX-858 | Yang, Ta-Yung | 12/12/2013 | 20 | FSGIV00076219 | FSGIV00076237 | Datasheet - FAN302UL - PWM Controller for Low Standby Power |
| PX-859 | Yang, Ta-Yung | 12/13/2013 | 46 | | | SG6841 Datasheet |
| PX-860 | Yang, Ta-Yung | 12/13/2013 | 48 | | | LNK562-564 Datasheet, October 2005 |
| PX-861 | | | | FSGV0050546 | FSGV0050554 | Cherry Semiconductor datasheet entitled "High Performance Dual |
| PX-862 | | | | FSGV0001831 | FSGV0001844 | FAN6300 Datasheet |
| PX-863 | | | | FSGV0010135 | FSGV0010145 | FAN6751MRMY datasheet |
| PX-864 | | | | FSGV0009707 | FSGV0010122 | FAN6751MRMY schematics |
| PX-865 | | | | FSGIV00035761 | FSGIV00035773 | LTA703S Datasheet |
| PX-866 | | | | FSGV0050538 | FSGV0050545 | National Semiconductor Application Note AN-918 and Related Datasheets |
| PX-867 | | | | FCS0095453 | FCS0095456 | National Semiconductor datasheet entitled "LM1577/LM2577 Series |
| PX-868 | | | | FSGV0050645 | FSGV0050654 | Power Integrations datasheet entitled "PWR-SMP3 PWM Power Supply IC 120 VAC Input Isolated, Regulated DC |
| PX-869 | | | | FSGV0050668 | FSGV0050687 | Power Integrations Datasheet entitled "SMP211 PWM Power Supply IC 85-265 VAC Input Isolated, Regulated DC |
| PX-870 | | | | FSGV0050696 | FSGV0050730 | SGS-Thomson Application Note AN-376 and related datasheets for |
| PX-871 | | | | FSGV0050780 | FSGV0050786 | Unitrode Datasheets UC3823 |

| PX-872 | | | | FSGV0050787 | FSGV0050794 | Unitrode Datasheets |
|---|---|---|---|---|---|---|
| PX-873 | | | | FSGV0050795 | FSGV0050803 | Unitrode Datasheets UC3828 |
| PX-874 | | | | FSGV0001677 | FSGV0001728 | DAP024 Schematics |
| PX-875 | | | | FSG02205783 | FSG02205834 | DAP024 Schematics |
| PX-876 | | | | FSGV0001632 | FSGV0001646 | DAP02A Datasheet |
| PX-877 | | | | FSGV0001647 | FSGV0001661 | DAP02A Datasheet |
| PX-878 | | | | FSGV0001662 | FSGV0001676 | DAP02A Datasheet |
| PX-879 | | | | FSGV0046835 | FSGV0461878 | DAP02A Schematics |
| PX-880 | | | | FSGV0002658 | FSGV0002670 | FAN6300 Datasheet |
| PX-881 | | | | FSGV0002632 | FSGV0002644 | FAN6300 Datasheet |
| PX-882 | | | | FSGV0001867 | FSGV0001951 | FAN6300 Schematics |
| PX-883 | | | | FSGV0004505 | FSGV0004519 | FAN6300A Datasheet |
| PX-884 | | | | FSGV0002093 | FSGV0002107 | FAN6300A Datasheet |
| PX-885 | | | | FSGV0046879 | FSGV0046953 | FAN6300A Schematics |
| PX-886 | | | | FSGV0004544 | FSGV0004618 | FAN6300H Schematics |
| PX-887 | | | | FSGV0006419 | FSGV0006430 | FAN6747 Datasheet |
| PX-888 | | | | FSGV0006431 | FSGV0006442 | FAN6747 Datasheet |
| PX-889 | | | | FSGV0006445 | FSGV0006456 | FAN6747 Datasheet |
| PX-890 | | | | FSGV0006407 | FSGV0006418 | FAN6747 Datasheet |
| PX-891 | | | | FSGV0006457 | FSGV0006471 | FAN6747 Datasheet |
| PX-892 | | | | FSGV0005461 | FSGV0006372 | FAN6747 Schematics |
| PX-893 | | | | FSG002094790 | FSG002094862 | FAN6747 Schematics |
| PX-894 | | | | FSGIV00076238 | FSGIV00076252 | FAN6747WA Datasheet |
| PX-895 | | | | FSGV0044329 | FSGV0045305 | FAN6747WA Schematics |
| PX-896 | | | | FSGV0007498 | FSGV0007512 | FAN6747W Datasheet |
| PX-897 | | | | FSGV0006521 | FSGV0007497 | FAN6747W Schematics |
| PX-898 | | | | FSGV0046977 | FSGV0046991 | FAN6747WALMY Datasheet |
| PX-899 | | | | FSGV0008132 | FSGV0008146 | FAN6749 Datasheet |
| PX-900 | | | | FSGV0008162 | FSGV0008176 | FAN6749 Datasheet |
| PX-901 | | | | FSGV0009621 | FSGV0009636 | FAN6749 Datasheet |
| PX-902 | | | | FSGV0009691 | FSGV0009706 | FAN6749 Datasheet |
| PX-903 | | | | FSGIV00076253 | FSGIV00076268 | FAN6749 Datasheet |
| PX-904 | | | | FSGV0008216 | FSGV0009620 | FAN6749 Schematics |
| PX-905 | | | | FSGV0010123 | FSGV0010132 | FAN6751 Datasheet |

| PX-906 | | | | FSGV0045393 | FSGV0045401 | FAN6751 Datasheet |
|--------|--|--|--|-------------|-------------|-------------------|
| PX-907 | | | | FSG00441017 | FSG00441027 | FAN6751 Datasheet |
| PX-908 | | | | FSGV0010146 | FSGV0010157 | FAN6751MR Datasheet |
| PX-909 | | | | FSGV0010171 | FSGV0010183 | FAN6751MR Datasheet |
| PX-910 | | | | FSGIV003571 | FSGIV003619 | FAN6751MR Schematics |
| PX-911 | | | | FSGV0010471 | FSGV0010483 | FAN6752 Datasheet |
| PX-912 | | | | FSGV0010533 | FSGV0010548 | FAN6752 Datasheet |
| PX-913 | | | | FSGV0010485 | FSGV0010499 | FAN6752 Datasheet |
| PX-914 | | | | FSGV0010350 | FSGV0010365 | FAN6752 Datasheet |
| PX-915 | | | | FSGV0010409 | FSGV0010470 | FAN6752 Schematics |
| PX-916 | | | | FSGV0010549 | FSGV0010560 | FAN6753 Datasheet |
| PX-917 | | | | FSGV0010561 | FSGV0010572 | FAN6753 Datasheet |
| PX-918 | | | | FSGV0010573 | FSGV0010584 | FAN6753 Datasheet |
| PX-919 | | | | FSGV0047088 | FSGV0047136 | FAN6753 Schematics |
| PX-920 | | | | FSGV0010668 | FSGV0010681 | FAN6754 Datasheet |
| PX-921 | | | | FSGV0010734 | FSGV0010747 | FAN6754 Datasheet |
| PX-921.1 | Huang, WH | 12/13/2013 | 19 | FSGV0010734 | FSGV0010747 | FAN6754 Datasheet |
| PX-922 | | | | FSGV0010717 | FSGV0010733 | FAN6754 Datasheet |
| PX-923 | | | | FSGV0010596 | FSGV0010667 | FAN6754 Schematics |
| PX-924 | | | | FSGIV00076269 | FSGIV00076282 | FAN6754A Datasheet |
| PX-925 | | | | FSGV0010787 | FSGV0010800 | FAN6754A Datasheet |
| PX-926 | | | | FSGV0010801 | FSGV0010814 | FAN6754A Datasheet |
| PX-927 | | | | FSGV0010854 | FSGV0010867 | FAN6754A Datasheet |
| PX-928 | | | | FSGV0010772 | FSGV0010786 | FAN6754A Datasheet |
| PX-929 | | | | FSGV0010838 | FSGV0010853 | FAN6754A Datasheet |
| PX-930 | | | | FSGV0047137 | FSGV0048048 | FAN6754A Schematics |
| PX-931 | | | | FSGV0011815 | FSGV0011828 | FAN6754B Datasheet |
| PX-932 | | | | FSGV0010877 | FSGV0010888 | FAN6754B Datasheet |
| PX-933 | | | | FSGV0010889 | FSGV0010902 | FAN6754B Datasheet |
| PX-934 | | | | FSGV0010903 | FSGV0011814 | FAN6754B Schematics |
| PX-934.1 | Huang, WH | 12/13/2013 | 20 | FSGV0010903 | FSGV0011806 | FAN6754B Schematics |
| PX-934.2 | Huang, WH | 12/13/2013 | 21 | FSGV0010903 | FSGV0011814 | FAN6754B Schematics |
| PX-935 | | | | FSGV0011992 | FSGV0012006 | FAN6754WA Datasheet |
| PX-936 | | | | FSGV0012022 | FSGV0012035 | FAN6754WA Datasheet |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-937 | | | | FSGV0012007 | FSGV0012021 | FAN6754WA Datasheet |
| PX-938 | | | | FSG02206614 | FSG02206627 | FAN6754WA Datasheet |
| PX-939 | | | | FSGV0012036 | FSGV0013012 | FAN6754WA Schematics |
| PX-940 | | | | FSGV0014242 | FSGV0014257 | FAN6755 Datasheet |
| PX-941 | | | | FSGV0014284 | FSGV0014299 | FAN6755 Datasheet |
| PX-942 | | | | FSGV0014300 | FSGV0014315 | FAN6755 Datasheet |
| PX-943 | | | | FSGV0014353 | FSGV0014368 | FAN6755 Datasheet |
| PX-944 | | | | FSGV0013535 | FSGV0014215 | FAN6755 Schematics |
| PX-945 | | | | FSGIV150968 | FSGIV151648 | FAN6755 Schematics |
| PX-946 | | | | FSGV0015198 | FSGV0015214 | FAN6755UW Datasheet |
| PX-947 | | | | FSGV0015215 | FSGV0015231 | FAN6755UW Datasheet |
| PX-948 | | | | FSGV0014387 | FSGV0015197 | FAN6755UW Schematics |
| PX-949 | | | | FSGIV00151649 | FSGIV00152459 | FAN6755W Schematics |
| PX-950 | | | | FSGV0015246 | FSGV0015256 | FAN6756 Datasheet |
| PX-950.1 | Yang, Ta-Yung | 12/13/2013 | 33 | FSGV0015246 | FSGV0015256 | FAN6756 Datasheet |
| PX-951 | | | | FSGV0015257 | FSGV0015272 | FAN6756 Datasheet |
| PX-952 | | | | FSGV0017031 | FSGV0017047 | FAN6756 Datasheet |
| PX-952.1 | Huang, WH | 12/13/2013 | 9 | FSGV0017031 | FSGV0017047 | FAN6756 Datasheet |
| PX-952.2 | Yang, Ta-Yung | 12/12/2013 | 16 | FSGV0017031 | FSGV0017047 | FAN6756 Datasheet |
| PX-953 | | | | FSGV0016780 | FSGV0016797 | FAN6756 Datasheet |
| PX-953.1 | Wei, Gu-Yeon | 1/15/2015 | 4 | FSGV0016780 | FSGV0016797 | FAN6756 Datasheet, Rev. 1.0.4 |
| PX-954 | | | | FSGV0016798 | FSGV0016816 | FAN6756 Datasheet |
| PX-955 | | | | FSGV0015273 | FSGV0016678 | FAN6756 Schematics |
| PX-955.1 | Huang, WH | 12/13/2013 | 7 | FSGV0015273 | FSGV0016675 | FAN6756 Schematics |
| PX-955.2 | Huang, WH | 12/13/2013 | 8 | FSGV0015273 | FSGV0016678 | FAN6756 Schematics |
| PX-955.3 | Wei, Gu-Yeon | 1/15/2015 | 21 | FSGV0015273 | FSGV0016671 | FAN6756 Schematics |
| PX-956 | | | | FSGV0017507 | FSGV0017516 | FAN6861 Datasheet |
| PX-957 | | | | FSGV0017048 | FSGV0017506 | FAN6861 Schematics |
| PX-958 | | | | FSGV0017521 | FSGV0017535 | FAN6862 Datasheet |
| PX-959 | | | | FSGV0017558 | FSGV0017573 | FAN6862 Datasheet |
| PX-960 | | | | FSGV0017615 | FSGV0017630 | FAN6862 Datasheet |
| PX-961 | | | | FSGV0017653 | FSGV0017669 | FAN6862 Datasheet |
| PX-962 | | | | FSGV0017595 | FSGV0017614 | FAN6862 Datasheet |
| PX-963 | | | | FSGV0018936 | FSGV0019394 | FAN6862 Schematics |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-964 | | | | FSGV0018743 | FSGV0018757 | FAN6862H Datasheet |
| PX-965 | | | | FSGV0018774 | FSGV0018788 | FAN6862H Datasheet |
| PX-966 | | | | FSGV0018758 | FSGV0018773 | FAN6862H Datasheet |
| PX-967 | | | | FSGV0048050 | FSGV0048101 | FAN6862H Schematics |
| PX-968 | | | | FSGV00018936 | FSGV00019394 | FAN6862/HR Schematics |
| PX-969 | | | | FSGV0019395 | FSGV0019410 | FAN6862/L Datasheet |
| PX-970 | | | | FSGIV00002709 | FSGIV00003167 | FAN6862/L Schematics |
| PX-971 | | | | FSGIV0003168 | FSGIV00003183 | FAN6862/R Datasheet |
| PX-972 | | | | FSGV0017670 | FSGV0017685 | FAN6862/R Datasheet |
| PX-973 | | | | FSGIV00064052 | FSGIV00064067 | FAN6863 Datasheet |
| PX-974 | | | | FSGIV00064068 | FSGIV00064136 | FAN6863 Schematics |
| PX-975 | | | | FSG02206909 | FSG02206977 | FAN6863 Schematics |
| PX-976 | | | | FSGV0019411 | FSGV0019426 | FAN6863W Datasheet |
| PX-977 | | | | FSGV0019427 | FSGV0019442 | FAN6863W Datasheet |
| PX-978 | | | | FSGV0019442 | FSGV0019458 | FAN6863W Datasheet |
| PX-979 | | | | FSGV0019686 | FSGV0019701 | FAN6863W Datasheet |
| PX-980 | | | | FSGV0019476 | FSGV0019545 | FAN6863W Schematics |
| PX-981 | | | | FSGV0019718 | FSGV0019741 | FAN6920MR Datasheet |
| PX-982 | | | | FSGV0019742 | FSGV0019881 | FAN6920MR Schematics |
| PX-983 | | | | FSGV0023730 | FSGV0023744 | FAN6921 Datasheet |
| PX-984 | | | | FSGV0022593 | FSGV0022616 | FAN6921 Datasheet |
| PX-985 | | | | FSGV0021593 | FSGV0021731 | FAN6921 Schematics |
| PX-986 | | | | FSGV0021827 | FSGV0021840 | FAN6921AMR Datasheet |
| PX-987 | | | | FSGV0021801 | FSGV0021824 | FAN6921AMR Datasheet |
| PX-988 | | | | FSGV0021980 | FSGV0022003 | FAN6921AMR Datasheet |
| PX-989 | | | | FSGV0021841 | FSGV0021979 | FAN6921AMR Schematics |
| PX-990 | | | | FSGV0022248 | FSGV0022268 | FAN6921ML Datasheet |
| PX-991 | | | | FSGV0022193 | FSGV0022215 | FAN6921ML Datasheet |
| PX-992 | | | | FSGV0022004 | FSGV0022027 | FAN6921ML Datasheet |
| PX-993 | | | | FSGV0022028 | FSGV0022051 | FAN6921ML Datasheet |
| PX-994 | | | | FSGV0022052 | FSGV0022192 | FAN6921ML Schematics |
| PX-995 | | | | FSGV0021732 | FSGV0021755 | FAN6921MR Datasheet |
| PX-996 | | | | FSGV0023189 | FSGV0023212 | FAN6921MR Datasheet |
| PX-997 | | | | FSGV0023213 | FSGV0023351 | FAN6921MR Schematics |

| PX-998 | | | | FSGV0046574 | FSGV0046586 | FL6300A Datasheet |
|---|---|---|---|---|---|---|
| PX-998.1 | Huang, WH | 6/19/2014 | 23 | FSGV0046574 | FSGV0046586 | FL6300A Datasheet |
| PX-998.2 | Park, YB | 5/19/2014 | 10 | FSGV0046574 | FSGV0046586 | FL6300A Datasheet |
| PX-998.3 | Wei, Gu-Yeon | 1/15/2015 | 22 | FSGV0046574 | FSGV0046586 | FL6300A Datasheet |
| PX-999 | | | | FSGV0046587 | FSGV0046661 | FL6300A Schematics |
| PX-999.1 | Huang, WH | 6/19/2014 | 24 | FSGV0046587 | FSGV0046661 | FL6300A Schematics |
| PX-999.2 | Park, YB | 5/19/2014 | 11 | FSGV0046587 | FSGV0046661 | FL6300A Schematics |
| PX-1000 | | | | FSGV0028524 | FSGV0028541 | FSB117H Datasheet |
| PX-1001 | | | | FSGV0028542 | FSGV0028559 | FSB117H Datasheet |
| PX-1002 | | | | FSGIV00153428 | FSGIV00155231 | FSB117H Schematics |
| PX-1003 | | | | FSG02207005 | FSG02208806 | FSB127H Schematics |
| PX-1004 | | | | FSG02208367 | FSG022083168 | FSB127H Schematics |
| PX-1005 | | | | FSGV0001237 | FSGV0001287 | FSB137H Schematics |
| PX-1006 | | | | FSGIV00212868 | FSGIV00212972 | FSB137HL Schematics |
| PX-1007 | | | | FSGIV00155232 | FSGIV00157035 | FSB147H Schematics |
| PX-1008 | | | | FSGV0038973 | FSGV0038988 | FSBH0170 Datasheet |
| PX-1009 | | | | FSG00018987 | FSG00019408 | FSBH0170 Schematics |
| PX-1010 | | | | FSGV00389889 | FSGV00389039 | FSBH0170 Schematics |
| PX-1011 | | | | FSGV0039387 | FSGV0039402 | FSBH0170_F116 Datasheet |
| PX-1012 | | | | FSGV0039195 | FSGV0039208 | FSBH0170_F116 Datasheet |
| PX-1013 | | | | FSGIV00157036 | FSGIV00157091 | FSBH0170_F116 Schematics |
| PX-1014 | | | | FSGV0039139 | FSGV0039194 | FSBH0170A Schematics |
| PX-1015 | | | | FSGV0048628 | FSGV0048686 | FSBH0170W Schematics |
| PX-1016 | | | | FSG00019409 | FSG00019830 | FSBH0270 Schematics |
| PX-1017 | | | | FSGV0039403 | FSGV0039453 | FSBH0270 Schematics |
| PX-1018 | | | | FSGV0039481 | FSGV0039536 | FSBH0270A Schematics |
| PX-1019 | | | | FSGV0048715 | FSGV0048773 | FSBH0270W Schematics |
| PX-1020 | | | | FSGV0039573 | FSGV0039623 | FSBH0370 Schematics |
| PX-1021 | | | | FSG00003989 | FSG00004410 | FSBH0F70 Schematics |
| PX-1022 | | | | FSGV0039860 | FSGV0039910 | FSBH0F70A Schematics |
| PX-1023 | | | | FSGIV00157092 | FSGIV00157147 | FSBH0F70A_F116 Schematics |
| PX-1024 | | | | FSGV0039911 | FSGV0039966 | FSBH0F70A_F116 Schematics |
| PX-1025 | | | | FSGV0048774 | FSGV0048832 | FSBH0F70WA Schematics |
| PX-1026 | | | | FSGV0000672 | FSGV0000721 | FSFM0260N Schematics |

| PX-1027 | | | | FSGIV00047197 | FSGIV00047208 | FSFM0300N Datasheet |
|---------|---------|-----------|----|---------------|---------------|----------------------|
| PX-1028 | | | | FSGV0041526 | FSGV0041542 | FSQ0170RNA Datasheet |
| PX-1028.1 | Park, YB | 5/19/2014 | 17 | FSGV0041526 | FSGV0041542 | FSQ0170RNA Datasheet |
| PX-1029 | | | | FSGV0001431 | FSGV0001460 | FSQ0170RNA Schematics |
| PX-1029.1 | Park, YB | 5/19/2014 | 15 | FSGV0001431 | FSGV0001460 | FSQ0170RNA Schematics |
| PX-1030 | | | | FSGV0041543 | FSGV0041560 | FSQ0370RLA Datasheet |
| PX-1031 | | | | FSGV0001405 | FSGV0001430 | FSQ0370RLA Schematics |
| PX-1032 | | | | FSGV0041652 | FSGV0041663 | FSQ100 Datasheet |
| PX-1032.1 | Park, YB | 5/19/2014 | 12 | FSGV0041652 | FSGV0041663 | FSQ100 Datasheet |
| PX-1033 | | | | FSGV0001493 | FSGV0001516 | FSQ100 Schematics |
| PX-1033.1 | Park, YB | 5/19/2014 | 13 | FSGV0001493 | FSGV0001516 | FSQ100 Schematics |
| PX-1034 | | | | FSGV0041664 | FSGV0041675 | FSQ110 Datasheet |
| PX-1035 | | | | FSGV0001517 | FSGV0001545 | FSQ110 Schematics |
| PX-1035.1 | Park, YB | 5/19/2014 | 21 | FSGV0001517 | FSGV0001545 | FSQ110 Schematics |
| PX-1036 | | | | FSGV0041676 | FSGV0041688 | FSQ211 Datasheet |
| PX-1037 | | | | FSGV0041738 | FSGV0041752 | FSQ510 Datasheet |
| PX-1038 | | | | FSGV0001546 | FSGV0001576 | FSQ510 Schematics |
| PX-1038.1 | Park, YB | 5/19/2014 | 16 | FSGV0001546 | FSGV0001576 | FSQ510 Schematics |
| PX-1039 | | | | FSGV0041820 | FSGV0041832 | LTA805 Datasheet |
| PX-1040 | | | | FSG02210106 | FSG02210154 | LTA805 Schematics |
| PX-1041 | | | | FSG02211468 | FSG02211516 | LTA805 Schematics |
| PX-1042 | | | | FSG0041846 | FSG0041858 | LTA809FA Datasheet |
| PX-1043 | | | | FSG02211277 | FSG02211290 | LTA809FA Datasheet |
| PX-1044 | | | | FSGV001577 | FSGV001631 | LTA809FA Schematics |
| PX-1045 | | | | FSG002211291 | FSG002211303 | LTA810FA Datasheet |
| PX-1046 | | | | FSGV0041859 | FSGV0041871 | LTA811FA Datasheet |
| PX-1047 | | | | FSGV0041900 | FSGV0041914 | PO268 Datasheet |
| PX-1048 | | | | FSGV0041884 | FSGV0041899 | PO268 Datasheet |
| PX-1049 | | | | FSGV004295 | FSGV004610 | PO268 Datasheet |
| PX-1050 | | | | FSGV0041915 | FSGV0419594 | PO268 Schematics |
| PX-1051 | | | | FSGV0042648 | FSGV0042660 | PO368 Datasheet |
| PX-1052 | | | | FSGV0042661 | FSGV0042709 | PO368 Schematics |
| PX-1053 | | | | FSGV0042758 | FSGV0042804 | SG6742A Schematics |
| PX-1054 | | | | FSGIV00057031 | FSGIV00057041 | SG6742/HL Datasheet |

| PX-1055 | | | | FSGV0042902 | FSGV0042950 | SG6742/HL Schematics |
|---------|---|---|---|-------------|-------------|----------------------|
| PX-1056 | | | | FSGV0042875 | FSGV0042888 | SG6742/HR Datasheet |
| PX-1057 | | | | FSGV0042890 | FSGV0042901 | SG6742ML Datasheet |
| PX-1058 | | | | FSGV0042805 | FSGV0042853 | SG6742ML Schematics |
| PX-1059 | | | | FSG00437315 | FSG00437325 | SG6742/MR Datasheet |
| PX-1060 | | | | FSGV0042974 | FSGV0042988 | SG6840 Datasheet |
| PX-1061 | | | | FSGV0043030 | FSGV0043044 | SG6840 Datasheet |
| PX-1062 | | | | FSGV0042989 | FSGV0043029 | SG6840 Schematics |
| PX-1063 | | | | FSGV0043116 | FSGV0043129 | SG6841 Datasheet |
| PX-1063.1 | Wei, Gu-Yeon | 1/15/2015 | 18 | FSGV0043116 | FSGV0043129 | SG6841 Datasheet |
| PX-1064 | | | | SG0202583 | SG0202611 | SG6841 Datasheet |
| PX-1065 | | | | FSGIV0000053 | FSGIV0000093 | SG6841 Schematics |
| PX-1065.1 | Wei, Gu-Yeon | 1/15/2015 | 19 | FSGIV00000053 | FSGIV00000093 | SG6841 Schematics |
| PX-1066 | | | | FSGIV00147179 | FSGIV00147219 | SG6841 Schematics |
| PX-1067 | | | | FSGV0043153 | FSGV0043193 | SG6841 Schematics |
| PX-1067.1 | Huang, WH | 12/13/2013 | 17 | FSGV0043153 | FSGV0043193 | SG6841 Schematics |
| PX-1068 | | | | FSGV0043266 | FSGV0043278 | SG6841x3 Datasheet |
| PX-1069 | | | | FSGV0043279 | FSGV0043291 | SG6841x3 Datasheet |
| PX-1070 | | | | FSGIV0003633 | FSGIV00003678 | SG6841x3 Schematics |
| PX-1071 | | | | FSGV0043394 | FSGV0043407 | SG6842 Datasheet |
| PX-1072 | | | | FSGV0043966 | FSGV0043980 | SG6842 Datasheet |
| PX-1073 | | | | FSGV0044003 | FSGV0044047 | SG6842 Schematics |
| PX-1074 | | | | FSGV0044117 | FSGV0044128 | SG6842J Datasheet |
| PX-1075 | | | | FSGV0044212 | FSGV0044223 | SG6842J Datasheet |
| PX-1076 | | | | FSGV0044050 | FSGV0044062 | SG6842J Datasheet |
| PX-1077 | | | | FSGV0044167 | FSGV0044211 | SG6842J Schematics |
| PX-1078 | | | | FSGV0044224 | FSGV0044235 | SG6843 Datasheet |
| PX-1079 | | | | FSGV0044257 | FSGV0044301 | SG6843 Schematics |
| PX-1080 | | | | FSGV00043095 | FSGV00043115 | Demo Board Manual SG6841 |
| PX-1081 | | | | FSGIV00011010;<br>FSGIV00011827;<br>FSGIV00011844;<br>FSGIV00011860;<br>FSGIV00011874; | FSGIV00011023;<br>FSGIV00011843;<br>FSGIV00011859;<br>FSGIV00011873;<br>FSGIV00011887; | FAN102 Datasheets |

| PX-1082 | | | | FSGIV00011888 | FSGIV00011903 | FAN103 Datasheet |
|---------|---|---|---|----------------|----------------|-------------------|
| PX-1082.1 | Yang, Ta-Yung | 12/12/2013 | 3 | FSGIV00011888 | FSGIV00011903 | FAN103 Datasheet |
| PX-1083 | | | | FSGIV00011904 | FSGIV00012869 | FAN103 Schematic |
| PX-1084 | | | | FSGIV00147220 | FSGIV00148186 | FAN104 Schematic |
| PX-1085 | | | | FSGIV00014586 | FSGIV00014602 | FAN104 Datasheet |
| PX-1086 | | | | FSGIV00015944 | FSGIV00017233 | FAN302HL-UL Datasheet |
| PX-1087 | | | | FSGIV00017234 | FSGIV00017253 | FAN302HL-UL Schematic |
| PX-1088 | | | | FSGV0363447 | | FL103 Datasheet |
| PX-1089 | | | | FSGIV00152460 | FSGIV00153427 | FL103 Schematics |
| PX-1090 | | | | FSGV0028458 | FSGV0028470 | FL7732 Datasheet |
| PX-1091 | | | | FSGIV00018971 | FSGIV00020653 | FL7732 Schematics |
| PX-1092 | | | | FSGV3558301 | FSGV3558314 | FL7733 Datasheet |
| PX-1093 | | | | FSGV3558358 | FSGV3558371 | FLS3217/FLS3247 Datasheet |
| PX-1094 | | | | FSG00084086 | FSG00084102 | FSEZ1016 Datasheet |
| PX-1095 | | | | FSGIV00020654 | FSGIV00020666 | FSEZ1016A Datasheet |
| PX-1096 | | | | FSG02208874 | FSG02209678 | FSEZ1016A Schematic |
| PX-1097 | | | | FSGIV00020668 | FSGIV00020681 | FSEZ1216 Datasheet |
| PX-1098 | | | | FSGIV00020682 | FSGIV00020695 | FSEZ1216 Datasheet |
| PX-1099 | | | | FSGIV00020696 | FSGIV00021498 | FSEZ1216 Schematic |
| PX-1100 | | | | FSGIV00021515 | FSGIV00021529 | FSEZ1216B Datasheet |
| PX-1101 | | | | FSGIV00021530 | FSGIV00021544 | FSEZ1216B Datasheet |
| PX-1102 | | | | FSGIV00022348 | FSGIV00022362 | FSEZ1216B Datasheet |
| PX-1103 | | | | FSGIV00021545 | FSGIV00022347 | FSEZ1216B Schematic |
| PX-1104 | | | | FSG00069983 | FSG00069993 | FSEZ1307 Datasheet |
| PX-1105 | | | | FSGIV00023347 | FSGIV00023357 | FSEZ1307/S Datasheet |
| PX-1106 | | | | FSGIV00064320 | FSGIV00065287 | FSEZ1307/S Schematic |
| PX-1107 | | | | FSG00070552 | FSG00070560 | FSEZ1317 Datasheet |
| PX-1108 | | | | FSGV3558437 | FSGV3558452 | FSEZ1317A Datasheet |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1109 | | | | FSGIV00157148 | FSGIV00158115 | FSEZ1317A Schematic |
| PX-1110 | | | | FSGIV00026671 | FSGIV00026686 | FSEZ1317WA Datasheet |
| PX-1111 | | | | FSGIV00024378 | FSGIV00024391 | SGP100 Datasheet |
| PX-1112 | | | | FSGIV00024392 | FSGIV00024416 | SGP100 Datasheet |
| PX-1113 | | | | FSGIV00024417 | FSGIV00024428 | SGP101 Datasheet |
| PX-1114 | | | | FSG00113652 | FSG00113663 | FSEZ1116 Datasheet |
| PX-1115 | | | | FSG00065687 | FSG00065792 | FSEZ1116 Schematic |
| PX-1116 | | | | FSGIV00053509 | FSGIV00053526 | LinkSwitch-II Datasheet (LNK603-606) |
| PX-1117 | | | | FSG01324336 | FSG01324345 | LinkSwitch-II Datasheet (LNK632DG) |
| PX-1118 | | | | PIF 203507 | PIF 203539 | LinkSwitch-II Schematic |
| PX-1119 | | | | PIF6 0006536 | PIF6 0006553 | LNK-PH Application Note-49 |
| PX-1120 | | | | PIF6 0001232 | PIF6 0001299 | LNK-PL OTS Report |
| PX-1121 | | | | FSG01322653 | FSG01322692 | LinkSwitch-II RDR-157 |
| PX-1122 | | | | FSG01322693 | FSG01322732 | LinkSwitch-II RDR-158 |
| PX-1123 | | | | FSG01449941 | FSG01449980 | LinkSwitch-II RDR-159 |
| PX-1124 | | | | PIF6 0585023 | PIF6 0585062 | LNK-PH RDR-257 |
| PX-1125 | | | | PIF6 0574072 | PIF6 0574121 | LNK-PH RDR-290 |
| PX-1126 | | | | FSGV5660468 | FSGV5660545 | LTY4 RDR-347 |
| PX-1127 | | | | FSGV3558837 | FSGV3558875 | LNK-II DER207 |
| PX-1128 | | | | FSGV3558876 | FSGV3558809 | LNK-II DER261 |
| PX-1129 | | | | FSGV3558910 | FSGV3558946 | LNK-II DER265 |
| PX-1130 | | | | FSGV3558947 | FSGV3558987 | LNK-II DER267 |
| PX-1131 | | | | FSGV3558988 | FSGV3559026 | LNK-II DER279 |
| PX-1132 | | | | FSGV3559027 | FSGV3559058 | LNK-II DER351 |
| PX-1133 | | | | FSGV3559059 | FSGV3559060 | LNK-II DI157 |
| PX-1134 | | | | FSGV3559061 | FSGV3559062 | LNK-II DI158 |
| PX-1135 | | | | FSGV3559063 | FSGV3559064 | LNK-II DI159 |
| PX-1136 | | | | FSGV3559065 | FSGV3559066 | LNK-II DI206 |
| PX-1137 | | | | FSGV3559067 | FSGV3559106 | LNK-II RDR157 |
| PX-1138 | | | | FSGV3559147 | FSGV3559186 | LNK-II RDR159 |
| PX-1139 | | | | FSGV3559187 | FSGV3559221 | LNK-PH DER256 |
| PX-1140 | | | | FSGV3559222 | FSGV3559269 | LNK-PH DER263 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1141 | | | | FSGV3559270 | FSGV3559306 | LNK-PH DER273 |
| PX-1142 | | | | FSGV3559307 | FSGV3559342 | LNK-PH DER284 |
| PX-1143 | | | | FSGV3559343 | FSGV3559380 | LNK-PH DER286 |
| PX-1144 | | | | FSGV3559381 | FSGV3559416 | LNK-PH DER288 |
| PX-1145 | | | | FSGV3559417 | FSGV3559469 | LNK-PH DER298 |
| PX-1146 | | | | FSGV3559470 | FSGV3559509 | LNK-PH RDR257 |
| PX-1147 | | | | FSGV3559560 | FSGV3559601 | LYT4 DER338 |
| PX-1148 | | | | FSGV3559602 | FSGV3559657 | LYT4 DER350 |
| PX-1149 | | | | FSGV3559658 | FSGV3559731 | LYT4 DER353 |
| PX-1150 | | | | FSGV3559732 | FSGV3559781 | LYT4 DER357 |
| PX-1151 | | | | FSGV3559782 | FSGV3559825 | LYT4 DER359 |
| PX-1152 | | | | FSGV3559826 | FSGV3559869 | LYT4 DER360 |
| PX-1153 | | | | FSGV3559870 | FSGV3559923 | LYT4 DER364 |
| PX-1154 | | | | FSGV3559924 | FSGV3559970 | LYT4 DER365 |
| PX-1155 | | | | FSGV3559971 | FSGV3560031 | LYT4 DER366 |
| PX-1156 | | | | FSGV3560032 | FSGV3560072 | LYT4 DER370 |
| PX-1157 | | | | FSGV3560073 | FSGV3560122 | LYT4 DER395 |
| PX-1158 | | | | FSGV3560123 | FSGV3560184 | LYT4 DER396 |
| PX-1159 | | | | FSGV3560185 | FSGV3560278 | LYT4 DER404 |
| PX-1160 | | | | FSGV3560279 | FSGV3560323 | LYT4 DER405 |
| PX-1161 | | | | FSGV3560324 | FSGV3560368 | LYT4 DER407 |
| PX-1162 | | | | FSGV3560369 | FSGV3560417 | LYT4 DER409 |
| PX-1163 | | | | FSGV3560418 | FSGV3560467 | LYT4 DER412 |
| PX-1164 | | | | PIF 1429611 | PIF 1429654 | LinkSwitch-II OTS |
| PX-1165 | | | | PIF 326931 | PIF 326966 | LinkSwitch-LP2 OTS |
| PX-1166 | | | | PIF 331219 | PIF 331234 | LNK-TN-HF OTS |
| PX-1167 | | | | PIF 333829 | PIF 333835 | OTS and NPBA Low-side LinkSwitch |
| PX-1168 | | | | PIF6 0019898 | PIF6 0019944 | LinkSwitch-II OTS Revision H |
| PX-1169 | | | | FSG01322553 | FSG01322588 | Engineering Prototype Report for EP- |
| PX-1170 | | | | FCS0008033 | FCS0008072 | Engineering Prototype Report for EP- |
| PX-1171 | | | | FSGIV00008529 | FSGIV00009628 | AS1000 Schematic |
| PX-1172 | | | | FSGIV00009629 | FSGIV00009641 | AS1000 Datasheet |
| PX-1173 | | | | FSGIV00009642 | FSGIV00010929 | AS1003 Schematic |
| PX-1174 | | | | FSGIV00010930 | FSGIV00010942 | AS1003 Datasheet |

| PX-1175 | | | | FSGIV00010943 | FSGIV00010952 | AS1017 Datasheet |
|---------|--|--|--|---------------|---------------|-------------------|
| PX-1176 | | | | FSGIV00060102 | FSGIV00060117 | AS1207 Datasheet |
| PX-1177 | | | | FSGIV00022904 | FSGIV00023869 | AS1217 Schematics |
| PX-1178 | | | | FSG01168033 | FSG01168166 | FAN100 Schematic |
| PX-1179 | | | | FSGIV00010969 | FSGIV00010982 | FAN100 Datasheet |
| PX-1180 | | | | FSGIV00010997 | FSGIV00011009 | FAN100 Datasheet |
| PX-1181 | | | | FSGIV00010953 | FSGIV00010968 | AS1207 Datasheet |
| PX-1182 | | | | FSGIV00010983 | FSGIV00010996 | FAN100 Datasheet |
| PX-1183 | | | | FSGIV00011827 | FSGIV00011843 | FAN102 Datasheet |
| PX-1184 | | | | FSGIV00023331 | FSGIV00023346 | FSEZ1307 Datasheet |
| PX-1185 | | | | FSGIV00054448 | FSGIV00054483 | TOP232-234, TopSwitch-FX Family |
| PX-1186 | | | | FSGIV00059999 | FSGIV00060011 | AS1000 Datasheet |
| PX-1187 | | | | FSGIV00062077 | FSGIV00062092 | FAN103 Datasheet |
| PX-1188 | | | | FSGIV00063836 | FSGIV00063846 | FAN104 Datasheet |
| PX-1189 | | | | FSGIV00065365 | FSGIV00065381 | FSEZ1317 Datasheet |
| PX-1190 | | | | FSGIV00076339 | FSGIV00076351 | FL7730 Datasheet |
| PX-1191 | | | | FSGIV00076352 | FSGIV00076364 | FL7732 Datasheet |
| PX-1192 | | | | FSGIV00209470 | FSGIV00209493 | TNY274-280, TinySwitch-III Family |
| PX-1193 | | | | FSGV3552457 | FSGV3552470 | FL7733 Datasheet |
| PX-1194 | | | | FSGV3558122 | FSGV3558137 | FAN103W Datasheet |
| PX-1195 | | | | PIB 137278 | PIB 137301 | TNY375-380 TinySwitch-PK Family |
| PX-1196 | | | | PIF 2061816 | PIF 2061839 | PKS603-607 PeakSwitch Family |
| PX-1197 | | | | PIF 342301 | PIF 342348 | TOP252-262, TopSwitch-HX Family |
| PX-1198 | | | | PIF 876292 | PIF 876315 | TNY263-268 TinySwitch-II Family |
| PX-1199 | | | | PIF6 0198731 | PIF6 0198738 | CAPZero Family Datasheet |
| PX-1200 | | | | PIFIV0025975 | PIFIV0025990 | LYT4211-4218/4311-43418 LYTSwitch |
| PX-1201 | | | | PIFIV0313838 | PIFIV0313877 | TOP264-271 TOPSwitch-JX Family |
| PX-1202 | | | | | | LCS704-729EG HiperPFS Datasheet |
| PX-1203 | | | | FSGIV00141117 | FSGIV00141140 | PLC810PG HiperPLC Datasheet |
| PX-1204 | | | | PIF6 0172531 | PIF6 0172566 | TFS757-764HG HiperTFS Datasheet |
| PX-1205 | | | | | | LNK500 Datasheet |
| PX-1206 | | | | | | LNK501 Datasheet |
| PX-1207 | | | | | | LNK520 Datasheet |

| PX-1208 | | | | | LNK353/354 LinkSwitch-HF Datasheet |
|---------|---|---|---|---|---|
| PX-1209 | | | | | LNK562-564 LinkSwitch-LP Datasheet |
| PX-1210 | | | PIF6 0567108 | PIF6 0567108 | LNK584-586 LinkZero-AX Datasheet |
| PX-1211 | | | PIF6 0590601 | PIF6 0590616 | LNK574 LinkZero-LP Datasheet |
| PX-1212 | | | | | QH03TZ600, QH03BZ600 Q-Speed H- |
| PX-1213 | | | | | LQA03TC600 Qspeed Q-Series |
| PX-1214 | | | | | LQA05TC600 Qspeed Q-Series |
| PX-1215 | | | | | LQA06T300 Qspeed Q-Series |
| PX-1216 | | | | | LQA08TC600 Qspeed Q-Series |
| PX-1217 | | | | | LQA10T300 Qspeed Q-Series |
| PX-1218 | | | | | LQA12T300C Qspeed Q-Series |
| PX-1219 | | | | | LQA16T300 Qspeed Q-Series |
| PX-1220 | | | | | LQA20T300C, LQA20B300C Qspeed Q- |
| PX-1221 | | | | | LQA30A300C Qspeed Q-Series |
| PX-1222 | | | | | LQA30T300 Qspeed Q-Series Datasheet LQA32T300C Series |
| PX-1223 | | | | | LXA08T600, LXA08B600, LXA08FP600 Q-speed X-Series Datasheet |
| PX-1224 | | | | | LXA08T600, LXA08B600, LXA08FP600 Q-speed X-Series Datasheet |
| PX-1225 | | | | | LXA08T600C Q-speed X-Series |
| PX-1226 | | | | | LXA10T600, LXA10FP600 Q-speed X- |
| PX-1227 | | | | | LXA12T600C Q-speed X-Series |
| PX-1228 | | | | | LXA15T600 Q-speed X-Series |
| PX-1229 | | | | | LXA16T600C Q-speed X-Series |
| PX-1230 | | | | | LXA20T600 Q-speed X-Series |
| PX-1231 | | | PIF6 0147859 | PIF6 0147842 | SEN012-013 SENZero Datasheet |
| PX-1232 | | | PIF6 0804240 | PIF6 0804260 | TNY253/254/255 TinySwitch |
| PX-1233 | | | | | TNY253/254 TinySwitch Datasheet |
| PX-1234 | | | PIF6 0260606 | PIF6 0260627 | TNY174-180 TinySwitch-LT Datasheet |
| PX-1235 | | | PI 0014832 | PI 0014851 | TNY256 TinySwitch Plus Datasheet |
| PX-1236 | | | PIF6 0196187 | PIF6 0196210 | TNY284-290 TinySwitch-4 Datasheet |
| PX-1237 | | | PIF6 0321816 | PIF6 0321833 | TOP100-4 TOPSwitch Datasheet |
| PX-1238 | | | PIB 002887 | PIB 002902 | TOP209/210 TOPSwitch Datasheet |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1239 | | | | PIF6 0454157 | PIF6 0454172 | TOP200-4/14 TOPSwitch Datasheet |
| PX-1240 | | | | | | TOP412/414 TOPSwitch Datasheet |
| PX-1241 | | | | PI 0051708 | PI 0051759 | TOP242-250 TOPSwitch-GX Datasheet |
| PX-1242 | | | | PIF6 0267356 | PIF6 0267375 | TOP221-227 TOPSwitch-II Datasheet |
| PX-1243 | | | | PIF6 0825320 | PIF6 0825325 | CHY100 Datasheet |
| PX-1244 | | | | PIFIV0326472 | PIFIC00326501 | LCS700-708 HiperLCS Datasheet |
| PX-1245 | | | | PIF6 0510235 | PIF6 0510254 | LNK302/304-306 LinkSwitch-TN |
| PX-1246 | | | | PIF6 0505161 | PIF6 0505172 | LNK362-364 LinkSwitch-XT Datasheet |
| PX-1247 | | | | PIF6 0567155 | PIF6 0567170 | LNK584-586 LinkZero-AX Datasheet |
| PX-1248 | | | | | | LNK64x7-64x8 LinkSwitch-3 Datasheet |
| PX-1249 | | | | | | LQA12T300C, LQA12B300C Qspeed |
| PX-1250 | | | | PIF6 0779663 | PIF6 0779680 | LYT0002/0004-0006 LYTSwitch-0 |
| PX-1251 | | | | PIF6 0427784 | PIF6 0427795 | LYT2001-2005 LYTSwitch-2 Datasheet |
| PX-1252 | | | | PIF6 0431474 | PIF6 0431493 | LYT4211-4218/4311-4318 LYTSwitch-4 |
| PX-1253 | | | | PIFIV0294721 | PIFIV0294740 | PFS7323-7329 HiperPFS-2 Datasheet |
| PX-1254 | | | | | | QH03TZ600 Qspeed-H Datasheet |
| PX-1255 | | | | PIF6 0063259 | PIF6 0063300 | TFS7701-7708 HiperTFS-2 Datasheet |
| PX-1256 | | | | FSG00034544 | FSG00034555 | SG6842J Datasheet |
| PX-1257 | | | | FSG00153023 | FSG00153039 | FSQ0170RNA, FSQ0270RNA, |
| PX-1258 | | | | FSG00224884 | FSG00224893 | FSBH0F70, FSBH0170, FSBH0270, |
| PX-1259 | | | | FSG00331124 | FSG00331134 | FAN6751 Datasheet |
| PX-1260 | | | | FSGIV00000120 | FSGIV00000134 | FAN6747 Datasheet |
| PX-1261 | | | | FSGIV00047238 | FSGIV00047250 | FSQ110 Datasheet |
| PX-1262 | | | | FSGIV00166699 | FSGIV00166711 | SG6742ML/MR Datasheet |
| PX-1263 | | | | FSGIV00166969 | FSGIV00166992 | FAN6921 Datasheet |
| PX-1264 | | | | FSGIV00167245 | FSGIV00167257 | SG6742HL/HR Datasheet |
| PX-1265 | | | | FSGIV00170361 | FSGIV00170377 | FAN6755W / FAN6755UW Datasheet |
| PX-1266 | | | | FSGV0001758 | FSGV0001771 | DAP02A Datasheet |
| PX-1267 | | | | FSGV0041833 | FSGV0041845 | LTA809FA Datasheet |
| PX-1268 | | | | FSGV0041846 | FSGV0041858 | LTA810FA Datasheet |
| PX-1269 | | | | FSGV0041872 | FSGV0041883 | PO168 Datasheet |
| PX-1270 | | | | FSGV0363112 | FSGV0363124 | FAN6753 Datasheet |
| PX-1271 | | | | FSGV0364938 | FSGV0364955 | FSFM260N / FSFM261N / FSFM300N |
| PX-1272 | | | | FSGV3526635 | FSGV3526652 | FSB117H / FSB127H / FSB147H |

| PX-1273 | | | | PIF6 0326695 | PIF6 0326707 | FAN6752 Datasheet |
|---------|--|--|--|--------------|--------------|-------------------|
| PX-1274 | | | | | | Malackowski Rebuttal Report Exhibit 18 - Accused Products Datasheet |
| PX-1275 | | | | PIFIV0112931 | PIFIV0112919 | LNK632DG Datasheet |
| PX-1276 | | | | PI 0014511 | PI 0014585 | DPA423-426 Datasheet |
| PX-1277 | | | | PIFIV0000114 | PIFIV0000137 | DC33DZ1 Schematics |
| PX-1278 | | | | PI 0184463 | PI 0184481 | PS64D Schematics |
| PX-1279 | | | | PI 0185368 | PI 0185403 | TOP 232-234 Datasheet |
| PX-1280 | | | | PIFIV0000074 | PIFIV0000093 | Top-FX (TOP 232) Schematics |
| PX-1281 | | | | PI 0184444 | PI 0184462 | DC020011 Schematics |
| PX-1282 | | | | PI 0014641 | PI 0014759 | Top 242-250 Datasheet |
| PX-1283 | | | | PIF203162 | PIF203196 | DS51CH1 Schematics |
| PX-1284 | | | | PIF60549296 | PIF60549299 | CapZero Schematics |
| PX-1285 | | | | PIF60549300 | PIF60549317 | LinkZero-LP Schematics |
| PX-1286 | | | | PIF60549318 | PIF60549335 | LinkZero-AX Schematics |
| PX-1287 | | | | PIF60590316 | PIF60590323 | CapZero Datasheet |
| PX-1288 | | | | PIF60590601 | PIF60590616 | LinkZero-LP Datasheet |
| PX-1289 | | | | PIF60590585 | PIF60590600 | LinkZero-AX Datasheet |
| PX-1290 | | | | PIB13521 | PIB 013853 | LinkSwitch-II Schematics (PX-38) - |
| PX-1291 | | | | PIF203017 | PIF203064 | LinkSwitch-CV Schematics |
| PX-1292 | | | | PIF60000999 | PIF60001036 | LinkSwitch-PH Schematics |
| PX-1293 | | | | PIF60001127 | PIF60001211 | LinkSwitch-HP Schematics |
| PX-1294 | | | | PIF60001370 | PIF60001387 | LinkSwitch-II Datasheet |
| PX-1295 | | | | FSG0203998 | FSG02040017 | LinkSwitch-CV Datasheet (DX-602) |
| PX-1296 | | | | PIF60001212 | PIF60001231 | LinkSwitch-PL Datasheet |
| PX-1297 | | | | PIF60001037 | PIF60001060 | LinkSwitch-HP Datasheet |
| PX-1298 | | | | FSGV0001632 | 1646 | DAP024 Datasheet |
| PX-1299 | | | | FSGIV0003138 | 3183 | FAN6862R Datasheet |
| PX-1300 | | | | FSGV0026696 | 6712 | FAN7602 Datasheet |
| PX-1301 | | | | FSGV0026713 | 6729 | FAN7602B Datasheet |
| PX-1302 | | | | FSGV0026730 | 6748 | FAN7602C Datasheet |
| PX-1303 | | | | FSGV0026749 | 6761 | FL7701 Datasheet |
| PX-1304 | | | | FSGV0028444 | 8457 | FL7730 Datasheet |
| PX-1305 | | | | FSGV0028471 | 8483 | FLS0116 Datasheet |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1306 | | | | FSGV0040070 | FSGV0040088 | FSGM0465R Datasheet |
| PX-1307 | | | | FSGV0040200 | FSGV0040217 | FSGM0565R Datasheet |
| PX-1308 | | | | FSGV0040249 | | 266 FSGM0765R Datasheet |
| PX-1309 | | | | FSGV0040314 | | 329 FSGM300N Datasheet |
| PX-1310 | | | | FSGV0040371 | | 383 FSL106HR Datasheet |
| PX-1311 | | | | FSGV0040415 | | 427 FSL106MR Datasheet |
| PX-1312 | | | | FSGV0040444 | | 456 FSL116HR Datasheet |
| PX-1313 | | | | FSGV0040526 | | 538 FSL116LR Datasheet |
| PX-1314 | | | | FSGV0040539 | | 553 FSL117MRIN Datasheet |
| PX-1315 | | | | FSGV0040554 | | 566 FSL126HR Datasheet |
| PX-1316 | | | | FSGV0040629 | | 641 FSL126MR Datasheet |
| PX-1317 | | | | FSGV0040662 | | 674 FSL126MRT Datasheet |
| PX-1318 | | | | FSGV0040715 | | 729 FSL127H Datasheet |
| PX-1319 | | | | FSGV0040744 | | 756 FSL128MRT Datasheet |
| PX-1320 | | | | FSGV0040781 | | 793 FSL136HR Datasheet |
| PX-1321 | | | | FSGV0040847 | | 859 FSL136MR Datasheet |
| PX-1322 | | | | FSGV0040932 | | 944 FSL136MRT Datasheet |
| PX-1323 | | | | FSGV0040990 | | 1004 FSL137H Datasheet |
| PX-1324 | | | | FSGV0041048 | | 1070 FSL138MRT Datasheet |
| PX-1325 | | | | FSGV0041138 | | 1153 FSL146MRBN Datasheet |
| PX-1326 | | | | FSGV0041197 | | 1212 FSL156MRBN Datasheet |
| PX-1327 | | | | FSGV0041213 | | 1227 FSL156MRIN Datasheet |
| PX-1328 | | | | FSGV0041405 | | 1420 FSL176MRT Datasheet |
| PX-1329 | | | | FSGV0041421 | FSGV0041434 | FSL206MR Datasheet |
| PX-1330 | | | | FSG0041471 | | 1549 FSQ0165 Datasheet |
| PX-1331 | | | | FSGV0041526 | | 1542 FSQ0270RNA Datasheet |
| PX-1332 | | | | FSGV0041561 | | 1583 FSQ0465RS/RB Datasheet |
| PX-1333 | | | | FSGV0041584 | | 1606 FSQ0565RS/RQ Datasheet |
| PX-1334 | | | | FSGV0041633 | | 1651 FSQ0765RQ Datasheet |
| PX-1335 | | | | FSG02211278 | | 1290 LTA809FA Datasheet |
| PX-1336 | | | | FSGV0018936 | | 9394 FAN6862 Schematics |
| PX-1337 | | | | FSGV00018936 | | 9394 FAN6862HR Schematics |
| PX-1338 | | | | FSGVIV00002709 | | 3167 FAN6862L Schematics |
| PX-1339 | | | | FSGV0048254 | | 8318 FAN7602C Schematics |

| PX-1340 | | | | FSGV0048319 | | 8380 | FL7701 Schematics |
|---|---|---|---|---|---|---|---|
| PX-1341 | | | | FSGV0026762 | | 8444 | FL7730 Schematics |
| PX-1342 | | | | FSGIV157092 | | 7147 | FSBH0F70A-F116 Schematics |
| PX-1343 | | | | FSGV0000763 | FSGV0000802 | | FSGM0465R Schematics |
| PX-1344 | | | | FSGV0000803 | | 853 | FSGM300N Schematics |
| PX-1345 | | | | FSGV0000854 | FSGV00008891 | | FSL106HR Schematics |
| PX-1346 | | | | FSGV0000892 | | 929 | FSL106MR Schematics |
| PX-1347 | | | | FSGV0000930 | | 967 | FSL116LR Schematics |
| PX-1348 | | | | FSGV0000968 | | 1026 | FSL117MRIN Schematics |
| PX-1349 | | | | FSGV0001027 | | 1064 | FSL126HR Schematics |
| PX-1350 | | | | FSGV0001065 | FSGV0001102 | | FSL126MR Schematics |
| PX-1351 | | | | FSGV0001103 | | 1158 | FSL127H Schematics |
| PX-1352 | | | | FSGV0001159 | | 1198 | FSL136HR Schematics |
| PX-1353 | | | | FSGV0001199 | | 1236 | FSL136MR Schematics |
| PX-1354 | | | | FSGV0048833 | | 8896 | FSL136MRT Schematics |
| PX-1355 | | | | FSGV0001237 | | 1287 | FSL137H Schematics |
| PX-1356 | | | | FSGV0048898 | | 8964 | FSL138MRTSchematics |
| PX-1357 | | | | FSGV0001288 | | 1357 | FSL146MRBN Schematics |
| PX-1358 | | | | FSGV0001288 | FSGV0001357 | | FSL156MRBN Schematics |
| PX-1359 | | | | FSGV0048965 | | 29 | FSL156MRIN Schematics |
| PX-1360 | | | | FSGV0001358 | FSGV0001404 | | FSL206MR Schematics |
| PX-1361 | | | | FSGV0001431 | FSGV0001460 | | FSQ170RNA Schematics |
| PX-1362 | | | | FSGV0001405 | | 1430 | FSQ0265 Schematics |
| PX-1363 | | | | FSGV0001461 | FSGV0001492 | | FSQ0465RS/RB Schematics |
| PX-1364 | | | | FSGV0001546 | | 1576 | FSQ510M Schematics |
| PX-1365 | | | | FSGV0043326 | FSGV0043371 | | SG6841X3 Schematics |
| PX-1366 | | | | PIF6 0001725 | PIF6 0001744 | | TEA1504 Datasheet |
| PX-1367 | | | | FSGIV00011024 | FSGIV00011826 | | FAN102 Schematics |
| PX-1368 | | | | FSGV0050596 | FSGV0050616 | | Power Integrations PS03 schematics |
| PX-1369 | | | | FSGV0050617 | FSGV0050644 | | Power Integrations PS07 schematics |
| PX-1370 | | | | PIF6 0001468 | PIF6 0001507 | | PI Datasheet Engineering Prototype Report for EP-54 – 2.75 W |
| PX-1371 | | | | PIF6 0001437 | PIF6 0001452 | | Linear Technology Datasheet LT1942 |
| PX-1372 | | | | PIF6 0001453 | PIF6 0001467 | | MAXI16801AB Datasheet Oct. 2005 |

| PX-1372.1 | Yang, Ta-Yung | 12/12/2013 | 8 | PIF6 0001453 | PIF6 0001467 | MAXI16801AB Datasheet Oct. 2005 |
|---|---|---|---|---|---|---|
| PX-1373 | | | | FSGIV00209417 | FSGIV00209450 | DPASwitch Datasheet |
| PX-1374 | | | | PIF203506 | PIF203506 | CD PIF003 |
| PX-1375 | | | | PIF219036 | PIF219036 | CD PIF007 |
| PX-1376 | | | | PIF748354 | PIF748354 | CD PIF406 |
| PX-1377 | | | | PIF203197 | PIF203504 | Management Color Key: Good News, Bad News, Significant PI Interest |
| PX-1378 | | | | PIF 517557 | PIF 517747 | Weekly Status Reports |
| PX-1379 | | | | PIEM 0258820 | PIEM 0258821 | E-mail from S. Baeurle to: M. |
| PX-1380 | | | | PIEM 0258818 | PIEM 0258819 | E-mail from M. Powell to M. |
| PX-1381 | | | | PIEM 0258817 | PIEM 0258817 | E-mail from A. Squeri to M. Matthews |
| PX-1382 | | | | PIEM 0258815 | PIEM 0258816 | E-mail from B. Balakrishnan to M. |
| PX-1383 | | | | PIF6 0548152 | PIF6 0549227 | LNK-Zero Design Binder |
| PX-1384 | | | | PIFIV0115239 | PIFIV0115321 | New Prod to COG PowerPoint |
| PX-1385 | | | | PIFIV0322150 | PIFIV0322156 | Memo From M. Matthews to D. Bailey |
| PX-1386 | | | | PIFIV0322158 | PIFIV0322164 | Memo From M. Matthews to D. Bailey |
| PX-1387 | | | | PIFIV0322166 | PIFIV0322171 | Memo From M. Matthews to D. Bailey |
| PX-1388 | | | | PIF60590638 | PIF60590644 | X Cap Discharge IC Overview |
| PX-1389 | | | | PIFIV0322189 | PIFIV0322195 | Memo From M. Matthews to D. Bailey |
| PX-1390 | | | | PIF60566448 | PIF60566472 | OTS Xcap Discharge IC |
| PX-1391 | | | | PIF60317237 | PIF60317297 | E-mail J. Srihar to M. Matthews |
| PX-1392 | | | | PIFIV0322254 | PIFIV0322260 | Memo From M. Matthews to D. Bailey |
| PX-1393 | | | | PIFIV0322262 | PIFIV0322268 | Memo From M. Matthews to D. Bailey |
| PX-1394 | | | | PIFIV0128774 | PIFIV0128776 | E-mail from M. Manley to: Group Re: Process Technology Weekly Report |
| PX-1395 | | | | PIFIV0322291 | PIFIV0322297 | Memo From M. Matthews to D. Bailey |
| PX-1396 | | | | PIF60566726 | PIF60566738 | X Cap Discharge IC Kick Off |
| PX-1397 | | | | PIFIV0322466 | PIFIV0322472 | Memo From M. Matthews to D. Bailey |
| PX-1398 | | | | PIFIV0165239 | PIFIV0165284 | Product Strategy |
| PX-1399 | | | | PIF60566415 | PIF60566440 | OTS Xcap Discharge IC |
| PX-1400 | | | | PIF60876654 | PIF60876654 | Active X Cap Bleed Circuit |
| PX-1401 | | | | DX-374 | | DX-374 (Fairchild II) AN-44 LinkSwitch- |
| PX-1402 | | | | PIF202969 | PIF202988 | DX-1417 (Fairchild II) AN-45 LinkSwitch- |
| PX-1403 | | | | FSGV0420060 | FSGV0420077 | U.S. Patent No. 6,107,851 |

| PX-1404 | | | | PIF19959 | PIF20110 | PX-33 from the PI-Fairchild I Trial; PX- |
|---------|--|--|--|----------|----------|-------------------------------------------|
| PX-1405 | | | | PIF 77019 | PIF 77037 | PX-36 from the Fairchild I Trial |
| PX-1406 | | | | PIF60590324 | PIF60590331 | CapZero Application Note |
| PX-1407 | | | | PIF60549228 | PIF60549247 | LinkSwitch-II Application Note |
| PX-1408 | | | | PIF60549248 | PIF60549265 | LinkSwitch-CV Application Note |
| PX-1409 | | | | PIF60549266 | PIF60549283 | LinkSwitch-PH Application Note |
| PX-1410 | | | | PIF6 0549284 | PIF6 0549295 | LinkSwitch-PL Application Note |
| PX-1411 | | | | FSGIV00147053 | FSGIV00147053 | Sales Force Summary Spreadsheet |
| PX-1412 | | | | FSGIV00165741 | FSGIV00165741 | FSCIV Products Opps Spreadsheet |
| PX-1413 | | | | FSGIV00165742 | 73598 | Opp Attachment Spreadsheet |
| PX-1414 | | | | FSGIV00206534 | FSGIV00206534 | Fairchild IV Practicing Products |
| PX-1415 | | | | FSGIV00173619 | FSGIV00173619 | Fairchild IV Accused Products Sales |
| PX-1416 | | | | FSGIV00202634 | 2839 | Avnet Agreement |
| PX-1417 | | | | FSGIV00203048 | 3727 | Amendment to the Distribution Agreement Between All American |
| PX-1418 | | | | FSG00324170 | 209 | Fairchild Litigation Update Letter |
| PX-1419 | | | | FSG00324193 | 99 | Fairchild Litigation Update Letter |
| PX-1420 | | | | FSG00324200 | 4 | Fairchild Litigation Update Letter |
| PX-1421 | | | | FSG00205791 | 95 | Fairchild Litigation Update Letter |
| PX-1422 | | | | FSG00210254 | 65 | Fairchild Litigation Update Letter |
| PX-1423 | | | | FSGIV00080509 | FSGIV00080510 | Fairchild Litigation Update Letter |
| PX-1424 | | | | FSGIV00080511 | FSGIV00080515 | Fairchild Litigation Update Letter |
| PX-1425 | | | | FSGV0417783 | FSGV0417801 | U.S. Patent No. 7,352,595 |
| PX-1426 | | | | FSGV0420226 | FSGV0420247 | U.S. Patent No. 7,061,780 |
| PX-1427 | | | | FSGV0418661 | FSGV0418678 | U.S. Patent No. 7,362,593 |
| PX-1427.1 | Yang, Ta-Yung | 12/13/2013 | 36 | | | U.S. Patent No. 7,362,593 |
| PX-1428 | | | | FSGIV00044481 | FSGIV00044488 | U.S. Patent No. 7,592,790 |
| PX-1428.1 | Yang, Ta-Yung | 12/13/2013 | 39 | | | U.S. Patent No. 7,592,790 |
| PX-1429 | | | | FSGIV00120122 | FSGIV00120128 | U.S. Patent No. 6,611,439 |
| PX-1429.1 | Wei, Gu-Yeon | 1/15/2015 | 20 | | | U.S. Patent No. 6,611,439 |
| PX-1429.2 | Yang, Ta-Yung | 12/13/2013 | 40 | | | U.S. Patent No. 6,611,439 |
| PX-1430 | | | | FSGV3491212 | FSGV3491220 | U.S. Patent No. 7,983,061 |
| PX-1430.1 | Yang, Ta-Yung | 12/13/2013 | 44 | | | U.S. Patent No. 7,983,061 |
| PX-1431 | | | | FSGV0419313 | FSGV0419327 | U.S. Patent No. 7,778,051 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1431.1 | Yang, Ta-Yung | 12/13/2013 | 41 | | | U.S. Patent No. 7,778,051 |
| PX-1432 | | | | FSG02041706 | FSG02041717 | U.S. Patent No. 6,768,655 |
| PX-1432.1 | Yang, Ta-Yung | 12/13/2013 | 42 | | | U.S. Patent No. 6,768,655 |
| PX-1433 | | | | FSG02050682 | FSG02050696 | U.S. Patent No. 7,116,090 |
| PX-1433.1 | Yang, Ta-Yung | 12/12/2013 | 4 | | | U.S. Patent No. 7,116,090 |
| PX-1433.2 | Yang, Ta-Yung | 12/13/2013 | 43 | | | U.S. Patent No. 7,116,090 |
| PX-1434 | | | | PIF6 0001544 | PIF6 0001548 | U.S. Patent No. 5,012,162 |
| PX-1435 | | | | PIF6 0001549 | PIF6 0001564 | U.S. Patent No. 5,661,645 |
| PX-1436 | | | | PIF6 0001575 | PIF6 0001575 | U.S. Patent No. 6,586,890 |
| PX-1437 | | | | PIF6 0001603 | PIF6 0001633 | U.S. Patent No. 7,038,399 |
| PX-1438 | | | | PIF6 0001700 | PIF6 0001710 | US Pat. App. 2004/0105283 |
| PX-1439 | | | | PIF6 0001394 | PIF6 0001405 | HV9903 Initial Release – Supertex |
| PX-1440 | | | | PIF6 0001406 | PIF6 0001416 | HV9906 Flex Switch (Simple Off- |
| PX-1441 | | | | | | Excerpts from The Authoritative Dictionary of IEEE Standards Terms |
| PX-1442 | | | | | | Excerpts from the transcript of Balu Balakrishnan's January 18, 2006 testimony before the United States |
| PX-1443 | Bailey, Douglas | 5/15/2013 | 1 | | | Defendants' Notice of Deposition of Douglas Bailey Pursuant to Federal |
| PX-1444 | Bailey, Douglas | 5/15/2013 | 10 | | | Seminar archive from Power Integrations website, design seminar |
| PX-1445 | Bailey, Douglas | 5/15/2013 | 11 | PIFIV0191185 | PIFIV0191231 | Power Integrations' Marketing |
| PX-1446 | Bailey, Douglas | 5/15/2013 | 12 | PIFIV0165659 | PIFIV0165661 | E-mail thread between D. New and W. Chao re Meeting Notes on Microsoft |
| PX-1447 | Bailey, Douglas | 5/15/2013 | 13 | PIFIV0113744 | PIFIV0113747 | Email thread between M. Matthews and D. Bailey re: Apple Visit Report |
| PX-1448 | Bailey, Douglas | 5/15/2013 | 14 | PIFIV0255894 | PIFIV0255899 | Email thread between F. Silvestro and B. Sutherland re Salcom Meeting |
| PX-1449 | Bailey, Douglas | 5/15/2013 | 15 | PIFIV0129804 | PIFIV0129830 | Long Term Plan, July 2009 Update |
| PX-1450 | Bailey, Douglas | 5/15/2013 | 16 | PIFIV0172878 | PIFIV0172880 | Meeting minutes - Dong Yang, Date: |
| PX-1451 | Bailey, Douglas | 5/15/2013 | 17 | PIFIV0059481 | PIFIV0059481 | Email thread between B. Sutherland and D. Bailey re Apple Cube Delay |
| PX-1452 | Bailey, Douglas | 5/15/2013 | 2 | PIFIV0133471 | PIFIV0133488 | Power Integrations, Inc.'s Org Chart |

| PX-1453 | Bailey, Douglas | 5/15/2013 | 3 | PIF 2184849 | PIF 2184868 | Application Note AN-44 LinkSwitch-II |
| PX-1454 | Bailey, Douglas | 5/15/2013 | 4 | | | Power Integrations website |
| PX-1455 | Bailey, Douglas | 5/15/2013 | 5 | | | Design Example Report, 5W, 5V |
| PX-1456 | Bailey, Douglas | 5/15/2013 | 6 | PI 0050964 | PI 0050995 | Engineering Prototype Report - 5W, Universal Input, Dual Output, Isolated TNY266 (EP9); Target Application, The |
| PX-1457 | Bailey, Douglas | 5/15/2013 | 7 | | | Reference design report for 2.4-watt charger using the LNK603DG |
| PX-1458 | Bailey, Douglas | 5/15/2013 | 8 | PIF 1925968 | PIF 1925969 | Design idea DI-69 DPA-Switch 15-watt multi-output DC-DC converter |
| PX-1459 | Bailey, Douglas | 5/15/2013 | 9 | | | Snapshot of design examples portion of the Power Integrations website |
| PX-1460 | Balakrishnan, Balu | 4/30/2013 | 1 | FSGIV00209536 | FSGIV00209567 | U.S. Patent No. 6,538,908 |
| PX-1461 | Balakrishnan, Balu | 4/30/2013 | 10 | PIFIV0019247 | PIFIV0019247 | E-mail string, B. Balakrishnan between B. Sutherland re Flextronicis Meeting |
| PX-1462 | Balakrishnan, Balu | 4/30/2013 | 11 | PIFIV0013780 | PIFIV0013781 | E-mail to Mr. Balakrishnan, Mr. Bailey, Mr. Sutherland and Mr. Loch re |
| PX-1463 | Balakrishnan, Balu | 4/30/2013 | 12 | | | Investors presentation by Power |
| PX-1464 | Balakrishnan, Balu | 4/30/2013 | 13 | PIFIV0016988 | PIFIV0016989 | Email thread between M. Mathews and E. Quek re Apple and Samsung |
| PX-1465 | Balakrishnan, Balu | 4/30/2013 | 14 | PIFIV0049960 | PIFIV0049960 | Email thread between B. Balakrishnan and D. Bailey re Visit at Apple |
| PX-1466 | Balakrishnan, Balu | 4/30/2013 | 15 | PIFIV0014567 | PIFIV0014583 | E-mail from M. Matthews to B. Balakrishnan re Product planning |
| PX-1467 | Balakrishnan, Balu | 4/30/2013 | 16 | PIFIV0006530 | PIFIV0006530 | E-mail thread between B. Balakrishnan and D. Bailey re News on iWatt and |
| PX-1468 | Balakrishnan, Balu | 4/30/2013 | 17 | PIFIV0001846 | PIFIV0001846 | Email thread between D. Bailey to B. Balakrishnan, et al. re Sales Status |
| PX-1469 | Balakrishnan, Balu | 4/30/2013 | 18 | PIFIV0059229 | PIFIV0059230 | Email thread between B. Sutherland and B. Balakrishnan, et al. re RFT |
| PX-1470 | Balakrishnan, Balu | 4/30/2013 | 19 | PIFIV0012383 | PIFIV0012410 | Email thread between M. Matthews and D. Bailey, et al. re: 5V/2A |
| PX-1471 | Balakrishnan, Balu | 4/30/2013 | 2 | FSG01424597 | FSG01424609 | U.S. Patent No. 6,212,079 |
| PX-1472 | Balakrishnan, Balu | 4/30/2013 | 20 | BSTZ 001537 | BSTZ 001544 | U.S. Patent No. 5,313,381 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1473 | Balakrishnan, Balu | 4/30/2013 | 21 | FSGIV00206326 | FSGIV00206338 | Article entitled "Three Terminal Off-line Switching Regulator Reduces Cost |
| PX-1474 | Balakrishnan, Balu | 4/30/2013 | 22 | FSGIV00204707 | FSGIV00205408 | Reexamination of the '908 patent |
| PX-1475 | Balakrishnan, Balu | 4/30/2013 | 23 | | | Deposition transcript of Mr. Balakrishnan taken in Inv. No. 337-TA- |
| PX-1476 | Balakrishnan, Balu | 4/30/2013 | 24 | PIFIV0014615 | PIFIV0014617 | Email thread between M. Mathews and B. Balakrishnan, et al. re Lite-on |
| PX-1477 | Balakrishnan, Balu | 4/30/2013 | 25 | PIFIV0057424 | PIFIV0057434 | Handwritten notes, e-mail between J. yin and J. Wang and a report, all |
| PX-1478 | Balakrishnan, Balu | 4/30/2013 | 26 | PIFIV0051485 | PIFIV0051486 | Email thread between S. Baeurle and M. Matthews re Quickchange effort |
| PX-1479 | Balakrishnan, Balu | 4/30/2013 | 27 | PIFIV0021751 | PIFIV0021752 | E-mail from B. Balakrishnan to D. Bailey containing a document entitled |
| PX-1480 | Balakrishnan, Balu | 4/30/2013 | 3 | | | Power Integrations' Third Supplemental Disclosure of Asserted |
| PX-1481 | Balakrishnan, Balu | 4/30/2013 | 4 | FSGIV00026689 | FSGIV00026700 | U.S. Patent No. 8,179,700 |
| PX-1482 | Balakrishnan, Balu | 4/30/2013 | 5 | FCS0732022 | FCS0732030 | U.S. Patent No. 5,747,977 |
| PX-1483 | Balakrishnan, Balu | 4/30/2013 | 6 | PIFIV0043487 | PIFIV0043503 | PowerPoint presentation for Renesas |
| PX-1484 | Balakrishnan, Balu | 4/30/2013 | 7 | PIFIV0022960 | PIFIV0023055 | Power Integrations' 2011 annual |
| PX-1485 | Balakrishnan, Balu | 4/30/2013 | 8 | | | Power Integrations' 2012 annual |
| PX-1486 | Balakrishnan, Balu | 4/30/2013 | 9 | PIFIV0015958 | PIFIV0015961 | Series of e-mails between M. Matthews and A. Smith attaching a |
| PX-1487 | Bailey, Douglas | 1/7/2010 | 2010 | PIF 293812 | PIF 294834 | Power Integrations Long Term Plan |
| PX-1488 | Bailey, Douglas | 1/7/2010 | 2011 | PIF 1909262 | PIF1909304 | Power Integrations Strategic Planning |
| PX-1489 | Bailey, Douglas | 1/7/2010 | 2012 | PIF 1863148 | PIF 1863168 | Power Integrations Marketing, January |
| PX-1490 | Bailey, Douglas | 1/7/2010 | 2013 | | | Plaintiff's Third Amended Answer and |
| PX-1491 | Bailey, Douglas | 1/7/2010 | 2014 | PIF 1775332 | PIF 1775343 | LNK603-606/613-616 Data sheet, |
| PX-1492 | Bailey, Douglas | 1/7/2010 | 2015 | PIF 1950262 | PIF 1950264 | Power Integrations' New LinkSwitch-II Exceeds Global Energy-Efficiency Standards; Eliminates All Secondary |
| PX-1493 | Bailey, Douglas | 1/7/2010 | 2016 | PIF 1934864 | PIF 1934864 | Email re: Flex and HP Pritners |
| PX-1494 | Bailey, Douglas | 1/7/2010 | 2017 | | | Wikipedia, Fear, uncertainty and |
| PX-1495 | Bailey, Douglas | 1/7/2010 | 2018 | | | Document clawed back |
| PX-1496 | Bailey, Douglas | 1/7/2010 | 2019 | PIF 1867700 | PIF 1867702 | Email re: New Fairchild products |

| PX-1497 | Bailey, Douglas | 1/7/2010 | 2020 | PIF 1428952 | PIF 142 9054 | D. Bailey Marketing Notebook |
|---------|-----------------|----------|------|-------------|--------------|------------------------------|
| PX-1498 | Bailey, Douglas | 1/7/2010 | 2021 | PIF 1429055 | PIF 1429062 | D. Bailey Notebook |
| PX-1499 | Balakrishnan, Balu | 10/28/2011 | 2048 | | | Reexamination application 90/009,393 file history of United States Patent |
| PX-1500 | Balakrishnan, Balu | 10/28/2011 | 2049 | | | Declaration filed with USPTO as related to reexamination 90/009,393 |
| PX-1501 | Balakrishnan, Balu | 10/28/2011 | 2050 | | | U.S. Patent 8,013,584 |
| PX-1502 | Balakrishnan, Balu | 10/28/2011 | 2051 | PIF 2291990 | PIF 2292016 | Application no. 12/904,015, Related |
| PX-1503 | Balakrishnan, Balu | 10/28/2011 | 2052 | | | Continuity data of 12/581,054 |
| PX-1504 | Balakrishnan, Balu | 10/28/2011 | 2053 | | | Power Integrations Nasdaq: POWI, |
| PX-1505 | Balakrishnan, Balu | 10/14/2009 | 1000 | | | U.S. Patent 7,352,595 |
| PX-1506 | Balakrishnan, Balu | 10/14/2009 | 1001 | | | U.S. Patent 7,061,780 |
| PX-1507 | Balakrishnan, Balu | 10/14/2009 | 1002 | | | U.S. Patent 7,259,972 |
| PX-1508 | Balakrishnan, Balu | 10/14/2009 | 1003 | PIF 554718 | PIF 554719 | Power Integrations Questions & |
| PX-1509 | Balakrishnan, Balu | 10/14/2009 | 1004 | PIF 290530 | PIF 290555 | Power Integrations Form 10-K filed 3-2-09 |
| PX-1510 | Balakrishnan, Balu | 10/14/2009 | 1005 | | | Master Supply Agreement revised 4- |
| PX-1511 | Balakrishnan, Balu | 10/14/2009 | 1006 | PIF 554869 | PIF554886 | "Management Color Key:  Good news, Bad News, Significant PI Interest," 11- |
| PX-1512 | Balakrishnan, Balu | 10/14/2009 | 1007 | PIF 553431 | PIF 553436 | E-mail 12-3-05, Subject: "Q&A from SG meeting - Confidential, Do not |
| PX-1513 | Balakrishnan, Balu | 10/14/2009 | 1008 | FSG00211894 | FSG00211898 | E-mail chain, top one dated 9-29-05, Subject: "RE: SG - Confidential" |
| PX-1514 | Balakrishnan, Balu | 10/14/2009 | 1009 | FSG00203393 | FSG00203394 | E-mail chain, top one dated 10-11-05, Subject: "RE: SG - Confidential" |
| PX-1515 | Balakrishnan, Balu | 10/14/2009 | 1010 | PIF 211279 | PIF211296 | U.S. Patent 6,107,851 |
| PX-1516 | Balakrishnan, Balu | 10/14/2009 | 1011 | FCS171507 | FCS171555 | Response to Apr. 7, 2008 Office Action, dated June 6, 2008, re '851 |
| PX-1517 | Balakrishnan, Balu | 10/14/2009 | 1012 | FCS168647 | FCS168655 | SGS-Thomson TEA2262 "Switch Mode Power Supply Controller" Data Sheet |
| PX-1518 | Balakrishnan, Balu | 10/14/2009 | 1013 | FCS1718310 | FCS1718348 | Final Office Action, dated Dec. 4, 2008, re '851, Control No. 90/008.324 |

| PX-1519 | Balakrishnan, Balu | 10/14/2009 | 1014 | FCS1718349 | FCS 1718355 | Reexamination Interview Summary for interview on Jan. 23, 2009, Patent |
| PX-1520 | Balakrishnan, Balu | 10/14/2009 | 1015 | FCS1718357 | FCS1718379 | PTO Amendment and Response Pursuant to 37 CFR 1.116 and 37 CFR 1.530 and Patent Owner's Statement of Interview Pursuant to 37 CFR 1.560, |
| PX-1521 | Balakrishnan, Balu | 10/14/2009 | 1016 | FCS1725171 | FCS1725186 | PTO Second Amendment and Response After Final, May 19, 2009, re |
| PX-1522 | Balakrishnan, Balu | 10/14/2009 | 1017 | FCS1722485 | FCS1722488 | Ex Parte Reexamination Interview Summary, Jan. 26, 2009, re '851 and |
| PX-1523 | Balakrishnan, Balu | 10/14/2009 | 1018 | PIF 211265 | PIF 211278 | U.S. Patent 6,249,876 |
| PX-1524 | Balakrishnan, Balu | 10/14/2009 | 1019 | PIB 003399 | PIB003399 | Power Integrations document |
| PX-1525 | Balakrishnan, Balu | 10/14/2009 | 1020 | | | Product Engineering Product |
| PX-1526 | Balakrishnan, Balu | 10/14/2009 | 1021 | PI 0119204 | PI 0119213 | "Management Color Key: Good news, Bad News, Significant PI Interest" 11- |
| PX-1527 | Balakrishnan, Balu | 10/14/2009 | 1022 | PIF 513637 | PIF 513638 | E-mail chain, top one dated 11-4-05, Subject:  "FW: Big Challenge from |
| PX-1528 | Balakrishnan, Balu | 10/14/2009 | 1023 | | | Power Integrations "LNK603-606/613/616 LinkSwitch-II Family" |
| PX-1529 | Balakrishnan, Balu | 10/14/2009 | 1024 | PIB 013821 | PIB 013868 | Various schematics with cover sheet titled "Product Family: Link-II, Product |
| PX-1530 | Balakrishnan, Balu | 10/14/2009 | 1025 | | | U.S. Patent 7,110,270 |
| PX-1531 | Balakrishnan, Balu | 10/14/2009 | 1026 | PIF 200739 | PIF 200750 | Power Integrations Invention |
| PX-1532 | Justin, Chiang | 12/17/2009 | 1 | FSG00324210 | FSG0032412 | Fairchild organization chart |
| PX-1533 | Justin, Chiang | 12/17/2009 | 10 | | | Letter from Mr. Lam to customers re: |
| PX-1534 | Justin, Chiang | 12/17/2009 | 2 | | | Slides from 2008 "Analyst Day" |
| PX-1535 | Justin, Chiang | 12/17/2009 | 3 | FSG01436685 | FSG01436693 | Weekly report from September 2008 |
| PX-1536 | Justin, Chiang | 12/17/2009 | 4 | | | 30(b)(6) Notice |
| PX-1537 | Justin, Chiang | 12/17/2009 | 5 | FSG01244521 | FSG012445423 | Emails re: analyst downgrade of PI |
| PX-1538 | Justin, Chiang | 12/17/2009 | 6 | FSG01244495 | FSG01244499 | Email re: Reports Q1 Upside, a Strong Q2 Guide and New Product Design |
| PX-1539 | Justin, Chiang | 12/17/2009 | 7 | FSG02140383 | FSG02140479 | Documents relating to acquisition of |
| PX-1540 | Justin, Chiang | 12/17/2009 | 8 | | | Fairchild press release re: completion |
| PX-1541 | Justin, Chiang | 12/17/2009 | 9 | FSG01244543 | FSG01244550 | Email from Mr. Lam to customers re: |

| PX-1542 | | | | PIF 211279 | PIF 211296 | F2 - DX-1 - U.S. Patent No. 6,107,851 |
|---------|--|--|--|------------|------------|---------------------------------------|
| PX-1543 | | | | F2 - DX-11 | | File History US Patent 7,259,972 |
| PX-1544 | | | | F2 - DX-111 | | Chart of sales |
| PX-1545 | | | | FSG02159706 | FSG02159709 | F2 - DX-1118 - U.S. Patent No, |
| PX-1546 | | | | F2 - DX-115 | | Fairchild presentation - SVP & GM Power Conversion, industrial & Automotive Group (PCIA) - Analyst |
| PX-1547 | | | | F2 - DX-1170 | | U.S. Patent No. 7,764,520 |
| PX-1548 | | | | FSG00057483 | FSG00057629 | F2 - DX-1189 - FAN 103 Schematics |
| PX-1549 | | | | F2 - DX-121R | | Press Release: Fairchild Announces Successful Completion of Tender Offer |
| PX-1550 | | | | PIF 203818 | PIF 203835 | F2 - DX-1255 - LNK-II datasheet Rev D |
| PX-1551 | | | | F2 - DX-1266 | | U.S. Patent No. 5,498,995 ("Szepesi") |
| PX-1552 | | | | FSG02203691 | FSG02203697 | F2 - DX-1270 - U.S. Patent No. |
| PX-1553 | | | | FSG00047041 | FSG00047041 | F2 - DX-1272 - SGP100 Product |
| PX-1554 | | | | FSG02203799 | FSG02203804 | F2 - DX-1275 - U.S. Patent No. |
| PX-1555 | | | | PIF 1357843 | PIF 1357843 | F2 - DX-1348 - Email chain from Jonathan Shieh to Bruce Renouard regarding "SG6849 Demo Board Test |
| PX-1556 | | | | PIF 2031000 | PIF 2031001 | F2 - DX-1354 - Email chain from Jonathan Shieh to Bruce Renouard |
| PX-1557 | | | | PI 0194743 | PI 0194744 | F2 - DX-1358 - Email chain from Jonathan Shieh to Bruce Renouard |
| PX-1558 | | | | PI0194758 | PI0194759 | F2 - DX-1366 - Email chain from Stefan Baeurle to Dan Selleck regarding "SG6849 Demo Board Test Result ver. |
| PX-1559 | | | | PI0089610 | PI0089610 | F2 - DX-1375 - Email from Bruce Renouard to DL-VP Staff regarding |
| PX-1560 | | | | F2 - DX-1421 | | Fairchild presentation: Analyst Day by Justin Chiang dated September 16, |
| PX-1561 | | | | F2 - DX-145 | | FAN103 Rev. 1.0.0 Datasheet (August |
| PX-1562 | | | | F2 - DX-146 | | FAN102 Datasheet Rev. 1.0.1 (August |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1563 | | | | PIF 1936467 | PIF 1936468 | F2 - DX-1481 - Email chain from John Lin to Bruce Renouard regarding "Fairchild Semiconductor to Launch |
| PX-1564 | | | | PIF 1936484 | PIF 1936496 | F2 - DX-1484R2 - Fairchild Semiconductor Acquisition Conference |
| PX-1565 | | | | FSG01432541 | FSG01432600 | F2 - DX-1534 - Fairchild presentation: Company Overview dated October |
| PX-1566 | | | | PIF 1909262 | PIF 1909304 | F2 - DX-17 - Power Integrations Presentation: Strategic Planning |
| PX-1567 | | | | F2 - DX-1706 | | U.S. Patent No. 5,335,162 ("Martin- |
| PX-1568 | | | | PIF 326492 | PIF 326536 | F2 - DX-173 - LinkSwitch-II Strategic Marketing Department Manual Rev. F |
| PX-1569 | | | | PIB 013821 | PIB 013853 | F2 - DX-178 - LNK603, LNK613 |
| PX-1570 | | | | FSG00007788 | FSG00007811 | F2 - DX-198 - ICE2AS01 Datasheet, |
| PX-1571 | | | | PIF 211265 | PIF 211278 | F2 - DX-2 - U.S. Patent No. 6,249,876 |
| PX-1572 | | | | PIF 1775332 | PIF 1775343 | F2 - DX-20 - LNK603-606/613-616 LinkSwitch-II Family Datasheet |
| PX-1573 | | | | PIF 1950262 | PIF 1950264 | F2 - DX-21 - Press Release: Power Integrations' New LinkSwitch-II |
| PX-1574 | | | | F2 - DX-3 | | U.S. Patent No. 7,110,270 |
| PX-1575 | | | | PIF 513637 | PIF 513638 | F2 - DX-329 - Email chain from Alex Djenguerian to David Kung regarding |
| PX-1576 | | | | F2 - DX-336 | | U.S. Patent No. 4,763,238 ("Maige") |
| PX-1577 | | | | PIF 1312357 | PIF 1312361 | F2 - DX-346 - Power Integrations presentation: 2009 Sales "Crush Campaign" Higher Margin Ideas/Plans |
| PX-1578 | | | | PI 0039644 | PI 0039648 | F2 - DX-350 - Email chain from Bruce Renouard to Cliff Walker regarding "SG received a US patent on primary |
| PX-1579 | | | | PIF 1984562 | PIF 1984564 | F2 - DX-352 - Email from Bruce Renouard to Balu Balakrishnan regarding VP Update on BYD after 5 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1580 | | | | PIB 031101 | PIB 031103 | F2 - DX-354 - Email chain from Bruce Renouard to Balu Balakrishnan regarding "Meeting Memo for Visit to |
| PX-1581 | | | | F2 - DX-374 | | Power Integrations Application Note AN-44 - LinkSwitch II Family (January |
| PX-1582 | | | | PIB 069613 | PIB 069624 | F2 - DX-384 - Email chain from Doug Bailey to Won-Il Kim, Bruce Renouard and Peter Vaughan regarding "New |
| PX-1583 | | | | PIF 972973 | PIF 972974 | F2 - DX-394 - Email chain from Peter Vaughan to Doug Bailey regarding |
| PX-1584 | | | | PIF 1019990 | PIF 1019997 | F2 - DX-395 - Email chain from Robert Mayell to Peter Vaughan and Jason Cuadra regarding "Siemens: Friwo: |
| PX-1585 | | | | PIF 962203 | PIF 962205 | F2 - DX-396 - Memorandum from Bill Smith to John Tomlin regarding |
| PX-1586 | | | | PIF 972966 | PIF 972966 | F2 - DX-398 - Email from Peter Vaughan to Doug Bailey regarding |
| PX-1587 | | | | F2 - DX-4 | | U.S. Patent No. 7,259,972 |
| PX-1588 | | | | PIB 180129 | PIB 180130 | F2 - DX-431 - Email chain from Bruce Renouard to Cliff Walker regarding |
| PX-1589 | | | | PIF176652 | PIF176654 | F2 - DX-439 - Email chain from Cliff Walker to Mike Matthews regarding |
| PX-1590 | | | | F2 - DX-460 | | U.S. Patent No. 6,665,197 ("Gong") |
| PX-1591 | | | | F2 - DX-47 | | LNK603-606/613-616 Datasheet (June |
| PX-1592 | | | | F2 - DX-472 | | Andrew C. Wang and Seth R. Sanders, Programmed Pulsewidth Modulated Waveforms for Electromagnetic Interference Mitigation in DC-DC |
| PX-1593 | | | | FSG00005285 | FSG00005329 | F2 - DX-473 - SG6842J Schematic |
| PX-1594 | | | | PIB 013821 | PIB 013868 | F2 - DX-48 - LNK 603, LNK613 |
| PX-1595 | | | | F2 - DX-492 | | U.S. Patent No. 6,674,656 |
| PX-1596 | | | | F2 - DX-5 | | U.S. Patent No. 7,352,595 |
| PX-1597 | | | | PIF2292017 | PIF2292017 | F2 - DX-507 - Email from Cliff Walker to James Go and Bradley Bereznak |

| PX-1598 | | | | FSG00000331 | FSG00000381 | F2 - DX-59 - SG5841J Schematics |
| PX-1599 | | | | FCS1703438 | FCS1703449 | F2 - DX-597 - Unitrode (Texas Instruments) Datasheet, Part No. |
| PX-1600 | | | | F2 - DX-6 | | U.S. Patent No. 7,834,605 |
| PX-1601 | | | | FSG01315360 | FSG01315363 | F2 - DX-61 - U.S. Patent No. 4,638,417 |
| PX-1602 | | | | FSG00034544 | FSG00034555 | F2 - DX-675 - SG6842J Specification |
| PX-1603 | | | | FCS1685478 | FCS1685496 | F2 - DX-74 - SMP211 Datasheet |
| PX-1604 | | | | FSG00009014 | FSG00009022 | F2 - DX-75 - U.S. Patent No. 5,729,443 |
| PX-1605 | | | | FSG00007812 | FSG00007826 | F2 - DX-77 - CoolSET TDA 16822 Datasheet, Version 1.0 (April 2000) |
| PX-1606 | | | | FSG00008023 | FSG00008046 | F2 - DX-805 - Philips Datasheet, Part No. TEA1566: Green Chip SMPS |
| PX-1607 | | | | FSG02211692 | FSG02211701 | F2 - DX-860 - SG6849 Application Note AN6849, March 7, 2004, Version 1.0 |
| PX-1608 | | | | F2 - DX-87 | | Sales chart |
| PX-1609 | | | | FSG00035082 | FSG00035096 | F2 - DX-90 - System General presentation - Printer solutions |
| PX-1610 | | | | FSG00068414 | FSG00068464 | F2 - DX-92 - Fairchild presentation - |
| PX-1611 | | | | FSG00357771 | FSG00357772 | F2 - DX-94 - Email chain from Erick Wu regarding "SG6846F spec. and |
| PX-1612 | | | | F2 - DX-975 | | SG5841/J Application Note AN-5841 |
| PX-1613 | Fimiani, Silvestro | 5/14/2013 | 1 | | | POWI's Supplemental Responses and Objections to Defendants' Rogs (Nos. |
| PX-1614 | Fimiani, Silvestro | 5/14/2013 | 10 | PIFIV0255894 | PIFIV0255899 | Emails between S. Fimiani and J. Yin re Meeting Minutes with Salom |
| PX-1615 | Fimiani, Silvestro | 5/14/2013 | 11 | PIFIV0001585 | PIFIV0001599 | Adapters/Charger Challenges and |
| PX-1616 | Fimiani, Silvestro | 5/14/2013 | 12 | PIFIV0002186 | PIFIV0002188 | Emails between S. Fimiani and M. Matthews re 5V/2A enclosure tracking |
| PX-1617 | Fimiani, Silvestro | 5/14/2013 | 13 | PIFIV0013283 | PIFIV0013284 | Emails between M. Matthews and S. Fimiani re Tech visiting report on Aug. |
| PX-1618 | Fimiani, Silvestro | 5/14/2013 | 14 | PIFIV0007298 | PIFIV0007299 | Emails between S. Fimiani and R. |
| PX-1619 | Fimiani, Silvestro | 5/14/2013 | 15 | PIFIV0008573 | PIFIV0008611 | OTS - Project Code Name Omni Switch Summary and Features, Rev. B |

| PX-1620 | Fimiani, Silvestro | 5/14/2013 | 16 | PIFIV0009122 | PIFIV0009123 | Emails between E. Quek and M. Matthews re Apple and Samsung |
| PX-1621 | Fimiani, Silvestro | 5/14/2013 | 2 | PIFIV0134345 | PIFIV0134346 | Emails between D. New and D. Bailey re Solution to Apple for 36W Adapter |
| PX-1622 | Fimiani, Silvestro | 5/14/2013 | 3 | PIFIV0167620 | PIFIV0167622 | Emails between J. Harrington and S. Fimiani re Apple 5w presentation |
| PX-1623 | Fimiani, Silvestro | 5/14/2013 | 4 | PIFIV0042388 | PIFIV0042389 | Emails between J. Tomlin and E. Herrera re Apple Meeting Summary |
| PX-1624 | Fimiani, Silvestro | 5/14/2013 | 5 | PIFIV0058835 | PIFIV0058839 | Emails between B. Sutherland and M. Matthews re Fairchild claiming new |
| PX-1625 | Fimiani, Silvestro | 5/14/2013 | 6 | PIFIV0067646 | PIFIV0067647 | Emails between S. Fimiani and J. Shiffler re Cellphone Market Share |
| PX-1626 | Fimiani, Silvestro | 5/14/2013 | 7 | PIFIV0060114 | PIFIV0060117 | Emails between B. Sutherland and M. Matthews re Meeting Minutes |
| PX-1627 | Fimiani, Silvestro | 5/14/2013 | 8 | PIFIV0060185 | PIFIV0060186 | Emails between B. Sutherland and M. Jones re Meeting Notes with Emerson |
| PX-1628 | Fimiani, Silvestro | 5/14/2013 | 9 | PIFIV0022077 | PIFIV0022081 | Emails between J. Tomlin and T. Roesler re Sales Weekly Report as of |
| PX-1629 | Renouard, Bruce | 8/8/2013 | 1 | | | Subpoena to Bruce Renouard |
| PX-1630 | Renouard, Bruce | 8/8/2013 | 10 | PIFIV0314286 | PIFIV0314287 | Email from Bruce Renouard to DL-VP Staff regarding "Red Flag: Report for lost 5V/2A TNY280GN_TL SEMCO |
| PX-1631 | Renouard, Bruce | 8/8/2013 | 13 | | | Identified Lost Buiness April to |
| PX-1632 | Renouard, Bruce | 8/8/2013 | 2 | PIFIV0311749 | PIFIV0311760 | Email string between Dennis Hsu, Claudia Tafoy, Rolane Rodrigues and |
| PX-1633 | Renouard, Bruce | 8/8/2013 | 3 | PIFIV0311273 | PIFIV0311273 | Email between Bruce Renouard and DL-CP Staff regarding COG Agenda |
| PX-1634 | Renouard, Bruce | 8/8/2013 | 4 | | | Fairchild II Trial Transcript pages 603 - |
| PX-1635 | Renouard, Bruce | 8/8/2013 | 5 | PIF 1357843 | PIF 1357843 | Email from Joanthan Shieh to Bruce Renouard regarding SG6849 demo |
| PX-1636 | Renouard, Bruce | 8/8/2013 | 6 | PIB 069613 | PIB 069624 | Email from Doug Bailey to Won-Il Kim, Bruce Renoaurd, and Peter Vaughan regarding New proposal for SC1092DN |

| PX-1637 | Renouard, Bruce | 8/8/2013 | 7 | PIFIV0312925 | PIFIV0312926 | Email from Bruce Renoaurd to Sandeep Nayyar and Balu Balakrishan regarding Draft Agenda for COG |
| PX-1638 | Renouard, Bruce | 8/8/2013 | 8 | PIFIV0313083 | PIFIV0313084 | Email from Bruce Renoaurd to Doug Bailey regarding "We will lose 20M$' |
| PX-1639 | Renouard, Bruce | 8/8/2013 | 9 | PIFIV0313413 | PIFIV0313417 | Email from Bruce Renoaurd to DL-VP Staff regarding Trip Executive |
| PX-1640 | Renouard, Bruce | 8/8/2013 | 1 | | | POWI's Designations and Objections in Response to Defendants' 30(b)(6) |
| PX-1641 | Sutherland, Benjamin | 5/16/2013 | 10 | PIFIV0006530 | PIFIV0006530 | Emails between B. Balakrishnan and M. Matthews re News on iWatt and |
| PX-1642 | Sutherland, Benjamin | 5/16/2013 | 11 | PIFIV0009122 | PIFIV0009123 | Emails between E. Quek and M. Matthews re Apple and Samsung |
| PX-1643 | Sutherland, Benjamin | 5/16/2013 | 12 | PIFIV0063885 | PIFIV0063893 | Q4 Sales Update Presentation to |
| PX-1644 | Sutherland, Benjamin | 5/16/2013 | 13 | PIFIV0060114 | PIFIV0060117 | Emails between B. Sutherland and M. Matthews re Meeting Minutes |
| PX-1645 | Sutherland, Benjamin | 5/16/2013 | 14 | PIFIV0059229 | PIFIV0059230 | Emails between B. Sutherland and B. Balakrishnan re RFT Meeting Notes |
| PX-1646 | Sutherland, Benjamin | 5/16/2013 | 15 | PIFIV0001834 | PIFIV0001838 | Emails between S. Baeurle and M. Matthews re UL conference call |
| PX-1647 | Sutherland, Benjamin | 5/16/2013 | 16 | PIFIV0061584 | PIFIV0061588 | Emails between B. Sutherland and B. Balakrishnan re 5V/2A enclosure |
| PX-1648 | Sutherland, Benjamin | 5/16/2013 | 17 | PIFIV0024274 | PIFIV0024280 | Emails between T. Giao and A. Lee re RM Activities and WSR for week |
| PX-1649 | Sutherland, Benjamin | 5/16/2013 | 18 | PIFIV0057378 | PIFIV0057397 | Emails between D. New and D. Bailey |
| PX-1650 | Sutherland, Benjamin | 5/16/2013 | 19 | PIFIV0056509 | PIFIV0056529 | Emails between W. Chang and D. Bailey re Meeting Notes and Test Data |
| PX-1651 | Sutherland, Benjamin | 5/16/2013 | 2 | | | Fairchild's Supplemental Disclosure of Asserted Claims and Infringement |
| PX-1652 | Sutherland, Benjamin | 5/16/2013 | 20 | PIF6 0001370 | PIF6 0001387 | LNK603-606/613-616 LinkSwitch-II |
| PX-1653 | Sutherland, Benjamin | 5/16/2013 | 21 | PIFIV0120973 | PIFIV0120975 | Emails between C. Webb and R. Fassler re POWI's Energy Efficiency Calculator Navigates the Maze of |
| PX-1654 | Sutherland, Benjamin | 5/16/2013 | 22 | PIFIV0064409 | PIFIV0064420 | Sales Director call Presentation |

| PX-1655 | Sutherland, Benjamin | 5/16/2013 | 23 | PIFIV0426252 | PIFIV0426337 | POWI's Fundamental Product |
|---------|---------------------|-----------|-----|--------------|--------------|----------------------------|
| PX-1656 | Sutherland, Benjamin | 5/16/2013 | 24 | PIFIV0426469 | PIFIV0426481 | POWI's Fundamental Product |
| PX-1657 | Sutherland, Benjamin | 5/16/2013 | 25 | PIFIV0419154 | PIFIV0419163 | January Sales Directors Conference |
| PX-1658 | Sutherland, Benjamin | 5/16/2013 | 26 | PIFIV0419183 | PIFIV0419191 | March Sales Directors Conference Call |
| PX-1659 | Sutherland, Benjamin | 5/16/2013 | 27 | PIFIV0093321 | PIFIV0093321 | Emails between J. Sridhar and J. Tomlin re SOX Approval Distribution |
| PX-1660 | Sutherland, Benjamin | 5/16/2013 | 28 | PIFIV0060056 | PIFIV0060057 | Emails between B. Sutherland and D. Bell re Preliminary Sales Director |
| PX-1661 | Sutherland, Benjamin | 5/16/2013 | 29 | PIFIV0067646 | PIFIV0067647 | Emails between S. Fimiani and J. Shiffler re Cellphone Market Share |
| PX-1662 | Sutherland, Benjamin | 5/16/2013 | 3 | | | POWI's Third Supplemental Disclosure of Asserted Claims and Infringement |
| PX-1663 | Sutherland, Benjamin | 5/16/2013 | 30 | PIFIV0038959 | PIFIV0038959 | Emails between J. Tomline and B. Renouard re LNK-11 Updated Needs |
| PX-1664 | Sutherland, Benjamin | 5/16/2013 | 31 | PIFIV0037820 | PIFIV0037828 | Emails between J. Tomlin and B. Balakrishnan re Innolux TOP246YN |
| PX-1665 | Sutherland, Benjamin | 5/16/2013 | 32 | PIFIV0443838 | PIFIV0443863 | Wafer Supply Agreement between |
| PX-1666 | Sutherland, Benjamin | 5/16/2013 | 33 | PIF6_0001393 | PIF6_0001393 | Disk |
| PX-1667 | Sutherland, Benjamin | 5/16/2013 | 4 | PIFIV0191185 | PIFIV0191231 | POWI's Marketing Strategy Report |
| PX-1668 | Sutherland, Benjamin | 5/16/2013 | 5 | PIFIV0058835 | PIFIV0058839 | Emails from B. Sutherland to M. Matthews re Fairchild Claiming new |
| PX-1669 | Sutherland, Benjamin | 5/16/2013 | 6 | PIFIV0001585 | PIFIV0001599 | Adapters/Charger Challenges and |
| PX-1670 | Sutherland, Benjamin | 5/16/2013 | 7 | PIFIV0042388 | PIFIV0042389 | Emails between J. Tomlin and B. Sutherland re Apple Meeting |
| PX-1671 | Sutherland, Benjamin | 5/16/2013 | 8 | PIFIV0022077 | PIFIV0022081 | Emails between J. Tomlin and T. Roesler re Sales Weekly Report as of |
| PX-1672 | Sutherland, Benjamin | 5/16/2013 | 9 | PIFIV0129664 | PIFIV0129668 | Emails between M. Matthews and S. Fimiani re New Nokia Project for |
| PX-1673 | Tomlin, John | 4/29/2013 | 1 | | | POWI's Objections and Response to Defendants' 30(b)(6) Deposition |
| PX-1674 | Tomlin, John | 4/29/2013 | 10 | PIF 384253 | PIF 384263 | POWI's Q2 Operations Update for |
| PX-1675 | Tomlin, John | 4/29/2013 | 11 | PIFIV0032203 | PIFIV0032203 | D. Bell memo to P. Chien, et al re TOP-HX inventory & WIP in PDIP package |
| PX-1676 | Tomlin, John | 4/29/2013 | 12 | PIF 482007 | PIF 482010 | Draft POWI's Minutes of Meeting of |

| PX-1677 | Tomlin, John | 4/29/2013 | 13 | PIFIV0043683 | PIFIV0043689 | Emails between J. Tomlin and T. Roesler re Weekly Sales Report for |
| PX-1678 | Tomlin, John | 4/29/2013 | 14 | PIFIV0037708 | PIFIV0037711 | Email from J. Tomlin re Weekly Sales Report for week ending Jun. 12, 2009 |
| PX-1679 | Tomlin, John | 4/29/2013 | 15 | PIFIV0036702 | PIFIV0036735 | Summary Finish Goods - HK & SJ (All |
| PX-1680 | Tomlin, John | 4/29/2013 | 16 | PIFIV0064816 | PIFIV0064818 | POWI's Minutes of a Meeting of the |
| PX-1681 | Tomlin, John | 4/29/2013 | 2 | | | Defendants' Amended Deposition |
| PX-1682 | Tomlin, John | 4/29/2013 | 3 | | | Fairchild's Supplemental Disclosure of Asserted Claims and Infringement |
| PX-1683 | Tomlin, John | 4/29/2013 | 4 | | | POWI's Third Supplemental Disclosure of Asserted Claims and Infringement |
| PX-1684 | Tomlin, John | 4/29/2013 | 5 | PIFIV0021585 | PIFIV0021587 | M. Khan memo to D. Bailey, et al re Minutes from Quality Management |
| PX-1685 | Tomlin, John | 4/29/2013 | 6 | PIFIV0035664 | PIFIV0035666 | X-Fab PI QBR/QTR Executive Summary |
| PX-1686 | Tomlin, John | 4/29/2013 | 7 | PIFIV0033644 | PIFIV0033670 | POWI's Quality Management System |
| PX-1687 | Tomlin, John | 4/29/2013 | 8 | PIFIV0038478 | PIFIV0038481 | Emails between J. Tomlin and R. Hunt, et al re Samsung washing machine line |
| PX-1688 | Tomlin, John | 4/29/2013 | 9 | | | Emails between J. Tomlin and R. Hunt re Delta lines down improvement |
| PX-1689 | Vaughan, Peter | 5/22/2013 | 1 | PIFIV0133471 | PIFIV0133488 | POWI's Org. Chart |
| PX-1690 | Vaughan, Peter | 5/22/2013 | 10 | | | POWI's Website Printout of Reference |
| PX-1691 | Vaughan, Peter | 5/22/2013 | 11 | | | Video Bringing Up a Power Supply |
| PX-1692 | Vaughan, Peter | 5/22/2013 | 12 | | | POWI's Website Printout of Technical |
| PX-1693 | Vaughan, Peter | 5/22/2013 | 13 | PIFIV0270861 | PIFIV0270870 | Emails between P. Vaughan and A. Kim re 15KHZ-Meeting Notes from |
| PX-1694 | Vaughan, Peter | 5/22/2013 | 14 | PIFIV0213462 | PIFIV0213499 | Emails between M. Espino and D. Bailey, et al re RF Tec and D. Yang |
| PX-1695 | Vaughan, Peter | 5/22/2013 | 15 | PIFIV0007142 | PIFIV0007143 | Emails between C. Lee and P. Vaughan re Loop gain performance is difference when PSU is with TNY279P and |
| PX-1696 | Vaughan, Peter | 5/22/2013 | 16 | PIFIV0113744 | PIFIV0113747 | Emails between M. Matthews and D. Bailey re Apple Visit Report |
| PX-1697 | Vaughan, Peter | 5/22/2013 | 17 | PIFIV0275801 | PIFIV0275806 | Emails between S. Fimiani and P. Vaughan re 5V/2A Fairchild Solution |

| PX-1698 | Vaughan, Peter | 5/22/2013 | 18 | PIFIV0275826 | PIFIV0275838 | POWI's Fairchild FAN302 Analysis |
|---------|----------------|-----------|----|--------------|--------------|----------------------------------|
| PX-1699 | Vaughan, Peter | 5/22/2013 | 19 | PIFIV0301130 | PIFIV0301131 | Emails between A. Wu and M. Espino, et al re PIV Analysis for SEE bulb |
| PX-1700 | Vaughan, Peter | 5/22/2013 | 2 | | | POWI's Responses and Objections to Defendants' Fourth Set of Rogs (Nos. |
| PX-1701 | Vaughan, Peter | 5/22/2013 | 20 | PIFIV0275909 | PIFIV0275911 | Emails between S. Banerjee and A. Smith re New Off-line LED Switch |
| PX-1702 | Vaughan, Peter | 5/22/2013 | 21 | PIF32065 | PIF32116 | TOP242-250 TopSwitch-GX Family |
| PX-1703 | Vaughan, Peter | 5/22/2013 | 22 | PIFIV0146282 | PIFIV0146329 | TOP252-262, TOPSwitch-HX Family |
| PX-1704 | Vaughan, Peter | 5/22/2013 | 23 | | | Defendants' Amended Notice of |
| PX-1705 | Vaughan, Peter | 5/22/2013 | 3 | | | Fairchild's Supplemental Disclosure of Asserted Claims and Infringement |
| PX-1706 | Vaughan, Peter | 5/22/2013 | 4 | | | POWI's Third Supplemental Disclosure of Asserted Claims and Infringement |
| PX-1707 | Vaughan, Peter | 5/22/2013 | 5 | FSGIV00122355 | FSGIV00122384 | Application Note AN-47 TOPSwitch-JX |
| PX-1708 | Vaughan, Peter | 5/22/2013 | 6 | PIFIV0191185 | PIFIV0191231 | POWI's Marketing Strategy Report |
| PX-1709 | Vaughan, Peter | 5/22/2013 | 7 | | | Video PI Expert |
| PX-1710 | Vaughan, Peter | 5/22/2013 | 8 | | | Video LinkSwitch II |
| PX-1711 | Vaughan, Peter | 5/22/2013 | 9 | | | Reference Design Report for a 5W Charger Using LNK616PG, Rev. 1.1 |
| PX-1712 | Yang, Ta-Yung | 5/9/2013 | 1 | | | USP 8,179,700 |
| PX-1713 | Yang, Ta-Yung | 5/9/2013 | 10 | | | USP 6,862,194 |
| PX-1714 | Yang, Ta-Yung | 5/9/2013 | 11 | | | USP 7,855,899 |
| PX-1715 | Yang, Ta-Yung | 5/9/2013 | 12 | | | USP 7,940,035 |
| PX-1716 | Yang, Ta-Yung | 5/9/2013 | 13 | | | USP 6,545,882 |
| PX-1717 | Yang, Ta-Yung | 5/9/2013 | 14 | | | USP 5,747,977 |
| PX-1718 | Yang, Ta-Yung | 5/9/2013 | 15 | | | USP 6,538,908 |
| PX-1719 | Yang, Ta-Yung | 5/9/2013 | 16 | | | USP 6,674,656 |
| PX-1720 | Yang, Ta-Yung | 5/9/2013 | 17 | | | Print out of System General Website - Press Release for Primary-Side PWM |
| PX-1721 | Yang, Ta-Yung | 5/9/2013 | 18 | FSGV0006457 | FSGV0006471 | FAN6747 Datasheet |
| PX-1722 | Yang, Ta-Yung | 5/9/2013 | 19 | SG0302773 | SG0302807 | Non-Infringement Analysis for USP |
| PX-1723 | Yang, Ta-Yung | 5/9/2013 | 2 | | | Fairchild's Supplemental Disclosure of Asserted Claims and Infringement |

| PX-1724 | Yang, Ta-Yung | 5/9/2013 | 3 | | | SGP100 Product Specification |
| PX-1725 | Yang, Ta-Yung | 5/9/2013 | 4 | | | USP 7,362,593 |
| PX-1726 | Yang, Ta-Yung | 5/9/2013 | 5 | | | USP 5,418,410 |
| PX-1727 | Yang, Ta-Yung | 5/9/2013 | 6 | | | USP 6,144,245 |
| PX-1728 | Yang, Ta-Yung | 5/9/2013 | 7 | | | USP 6,219,262 |
| PX-1729 | Yang, Ta-Yung | 5/9/2013 | 8 | | | USP 7,151,679 |
| PX-1730 | Yang, Ta-Yung | 5/9/2013 | 9 | | | USP 7,161,816 |
| PX-1731 | Lin, Gary | 12/17/2009 | 1 | | | Combined Declaration and Power of Attorney - Switching Control  Circuit with Variable Switching Frequency for |
| PX-1732 | Lin, Gary | 12/17/2009 | 10 | FSG01322128 | FSG01322130 | Email re: power conversion group |
| PX-1733 | Lin, Gary | 12/17/2009 | 11 | FSG01295234 | FSG01295237 | Emails re: Fairchild efforts to sell |
| PX-1734 | Lin, Gary | 12/17/2009 | 12 | | | Fairchild 2009 investor presentation |
| PX-1735 | Lin, Gary | 12/17/2009 | 13 | FSG00156665 | FSG00156665 | New product schedule spreadsheet |
| PX-1736 | Lin, Gary | 12/17/2009 | 14 | FSG01252109 | FSG01252110 | Email re: Technical Analysis of |
| PX-1737 | Lin, Gary | 12/17/2009 | 15 | FSG00250321 | FSG00250321 | Invoice from SG to Emerson Network |
| PX-1738 | Lin, Gary | 12/17/2009 | 16 | FSG01240568 | FSG01240573 | Email re: Potential for over 100-200 million PWM controllers/power |
| PX-1739 | Lin, Gary | 12/17/2009 | 17 | FSG01244524 | FSG01244542 | Email re: Potential for over 100-200 million PWM controllers/power switches for metering (feasibility of |
| PX-1740 | Lin, Gary | 12/17/2009 | 18 | FSG00173456 | FSG00173477 | Email re: Charger Market Survey |
| PX-1741 | Lin, Gary | 12/17/2009 | 19 | FSG01244552 | FSG01244561 | Email re: NDA Process (inquiry from Phihong about Fairchild/PI litigation) |
| PX-1742 | Lin, Gary | 12/17/2009 | 2 | FSG00049853 | FSG00049864 | SG584x Replacement Solutions for |
| PX-1743 | Lin, Gary | 12/17/2009 | 20 | FSG01244551 | FSG01244551 | Email re: Fairchild filing suit against |
| PX-1744 | Lin, Gary | 12/17/2009 | 21 | FSG01244543 | FSG01244550 | Letter to D. Zeng re: Fairchild FSBH Series & Power Integrations Lawsuit |
| PX-1745 | Lin, Gary | 12/17/2009 | 22 | FSG01244500 | FSG01244520 | Email re: Border line datasheet |
| PX-1746 | Lin, Gary | 12/17/2009 | 3 | | | Power Integrations TopTOP323-234 |
| PX-1747 | Lin, Gary | 12/17/2009 | 4 | | | TNY256 datasheet, July 2001 |
| PX-1748 | Lin, Gary | 12/17/2009 | 5 | | | U.S. Patent 7,110,270 |
| PX-1749 | Lin, Gary | 12/17/2009 | 6 | FSG00149035 | FSG00149156 | SG primary-side control chip versus |
| PX-1750 | Lin, Gary | 12/17/2009 | 7 | | | 30(b)(6) notice |

| PX-1751 | Lin, Gary | 12/17/2009 | 8 | FSG00194073 | FSG00194080 | SG/FCS Merger Update |
|---------|-----------|------------|---|-------------|-------------|---------------------|
| PX-1752 | Lin, Gary | 12/17/2009 | 9 | FSG00177597 | FSG00177599 | Email re: Korea (LG Charger) |
| PX-1753 | Renouard | 12/16/2009 | 1122 | | | Power Integrations's Supplemental Responses and Objections to |
| PX-1754 | Renouard | 12/16/2009 | 1123 | PIF 1316734 | PIF 1316848 | Competition Review AC/DC Power |
| PX-1755 | Renouard | 12/16/2009 | 1124 | PIF 2279232 | PIF 2279337 | Power Integrations Competition Review AC/DC Power Supplies, |
| PX-1756 | Renouard | 12/16/2009 | 1125 | PIF 1312357 | PIF 1312361 | Power Integrations 2009 Sales "Crushing Campaign" Higher Margin |
| PX-1757 | Renouard | 12/16/2009 | 1126 | PIF 312763 | PIF 312780 | Power Integrations Q2 Sales Director's |
| PX-1758 | Renouard | 12/16/2009 | 1127 | PIF 1813991 | PIF 1814057 | Power Integrations Strategic Planning |
| PX-1759 | Renouard | 12/16/2009 | 1128 | PIF 1314298 | PIF 1314314 | Power Integrations Sales - Q1 2009 |
| PX-1760 | Renouard | 1/6/2010 | 2000 | PIF 1984562 | PIF 1984564 | Email re: VP Updated on BYD after 5 |
| PX-1761 | Renouard | 1/6/2010 | 2001 | PI 0039644 | PI 0039648 | Email re: SG received a U.S. patent on primary sided feedback controller |
| PX-1762 | Renouard | 1/6/2010 | 2002 | PIF 1985317 | PIF 1985325 | Power Integrations M&A Activities, |
| PX-1763 | Renouard | 1/6/2010 | 2003 | PIF 817427 | PIF 817427 | Email re: Thoughts on SG situtation |
| PX-1764 | Renouard | 1/6/2010 | 2004 | PIF 1059173 | PIF 1059173 | Email re: Weekly report question |
| PX-1765 | Renouard | 1/6/2010 | 2005 | PIB 031101 | PIB 031103 | Email re: Meeting Memo for Visit to |
| PX-1766 | Renouard | 1/6/2010 | 2006 | PIF 1069553 | PIF 1069554 | Email re: LINK-II Prices needed |
| PX-1767 | Renouard | 1/6/2010 | 2007 | PIF 1668996 | PIF 1669024 | Email re: 5 LINK-II programs to track |
| PX-1768 | Renouard | 1/6/2010 | 2008 | PIF 1719044 | PIF 1719044 | Email re: Potential Questions to you when you have meeting with |
| PX-1769 | Renouard | 1/6/2010 | 2009 | PIB 226343 | PIB 226551 | Email re: MOAs and Forecast July 2, |
| PX-1770 | Vaughan | 11/20/2009 | 1058 | PIF 1077944 | PIF 1077971 | Document entitled "Elevating Sales in |
| PX-1771 | Vaughan | 11/20/2009 | 1059 | | | LNK632DG LinkSwitch-II Family |
| PX-1772 | Vaughan | 11/20/2009 | 1060 | | | LNK562-564 LinkSwitch-LP datasheet, |
| PX-1773 | Vaughan | 11/20/2009 | 1061 | | | Application Note AN-44, LinkSwitch-II |
| PX-1774 | Vaughan | 11/20/2009 | 1062 | | | Design Example report |
| PX-1775 | Vaughan | 11/20/2009 | 1063 | | | Power Integrations Product Selector |
| PX-1776 | Vaughan | 11/20/2009 | 1064 | | | LinkSwitch-II Introductory Video CD |
| PX-1777 | Vaughan | 11/20/2009 | 1065 | | | LinkSwitch-II Introductory Video |
| PX-1778 | Vaughan | 11/20/2009 | 1066 | PIF 861817 | PIF 861817 | Email re: China Day 1 |
| PX-1779 | Vaughan | 11/20/2009 | 1067 | PIF 873185 | PIF 873186 | Email re: Phihong: LNK616PN HTC |

| PX-1780 | Vaughan | 11/20/2009 | 1068 | PIB 069613 | PIB 069624 | Email re: New proposal for SC1092DN |
|---------|---------|------------|------|------------|------------|-------------------------------------|
| PX-1781 | Vaughan | 11/20/2009 | 1069 | PIB 173006 | PIB 173008 | Email re: Nokia Meeting Notes, June |
| PX-1782 | Vaughan | 11/20/2009 | 1070 | PIB 108904 | PIB 108907 | Email re: Apps Weekly |
| PX-1783 | Vaughan | 11/20/2009 | 1071 | PIF 972912 | PIF 972913 | Email re: Apps Weekly, January 11, |
| PX-1784 | Vaughan | 11/20/2009 | 1072 | PIF 853904 | PIF 853905 | Email re: Astec update, AC03/4/5 |
| PX-1785 | Vaughan | 11/20/2009 | 1073 | PIB 125718 | PIB 125721 | Email re: Need information of new |
| PX-1786 | Vaughan | 11/20/2009 | 1074 | PIF 323673 | PIF 323675 | Email re: LNKII |
| PX-1787 | Vaughan | 11/20/2009 | 1075 | PIF 656024 | PIF 656024 | Email re: DS36BPN engineering report |
| PX-1788 | Vaughan | 11/20/2009 | 1076 | PIF 866502 | PIF 866512 | Email re: iWatt Foxlink tests |
| PX-1789 | Vaughan | 11/20/2009 | 1077 | PIF 972973 | PIF 972974 | Email re: Weekly report |
| PX-1790 | Vaughan | 11/20/2009 | 1078 | PIF 1019990 | PIF 1019997 | Email re: Siemens: Friwo: charger |
| PX-1791 | Vaughan | 11/20/2009 | 1079 | PIF 962203 | PIF 962205 | Memo from Bill Smith to John Tomlin |
| PX-1792 | Vaughan | 11/20/2009 | 1080 | PIB 154086 | PIB 154090 | Email re: Transient KP |
| PX-1793 | Vaughan | 11/20/2009 | 1081 | PIF 972966 | PIF 972966 | Email re: Apps Weekly |
| PX-1794 | Vaughan | 11/20/2009 | 1082 | PIF 600685 | PIF 600686 | Email re: SGP100 for primary control |
| PX-1795 | Vaughan | 11/20/2009 | 1083 | PIF 974554 | PIF 974574 | Competition Review AC/DC Power |
| PX-1796 | Vaughan | 11/20/2009 | 1084 | PIF 1316734 | PIF 1316848 | Competition Review, AC/DC Power |
| PX-1797 | Vaughan | 11/20/2009 | 1085 | PIF 886660 | PIF 886666 | Email re: Competitor Analysis |
| PX-1798 | Vaughan | 11/20/2009 | 1086 | PIB 148257 | PIB 148272 | Email re: 2.5 W USB Travel Charger |
| PX-1799 | Vaughan | 11/20/2009 | 1087 | PIB 143270 | PIB 143295 | Email re: BCD power supply eval, final |
| PX-1800 | Vaughan | 11/20/2009 | 1088 | PIB 147347 | PIB 147364 | Email re: Competitor Analysis: 3.8W Charger Using BCD Combo Parts |
| PX-1801 | Walker | 11/24/2009 | 1089 | | | Power Integrations customer letter re announcing Power Integrations initiated lawsuit against Fairchild and |
| PX-1802 | Walker | 11/24/2009 | 1090 | PIF 1316734 | PIF 1316806 | Competition Review AD/DC Power |
| PX-1803 | Walker | 11/24/2009 | 1091 | PI 0170858 | PI 0170863 | Email re: System General Lawsuit |
| PX-1804 | Walker | 11/24/2009 | 1092 | PIF 678933 | PIF 678935 | Sales Team Q & A, Fairchild Lawsuit |
| PX-1805 | Walker | 11/24/2009 | 1093 | PI 0170868 | PI 0170871 | Email re: Q & A for ITC Action Against |
| PX-1806 | Walker | 11/24/2009 | 1094 | PIF 562132 | PIF 562135 | Email re: Fairchild injunction officially confirmed/reinstated by District Court |
| PX-1807 | Walker | 11/24/2009 | 1095 | PIF 1177696 | PIF 1177703 | Email re: PI IP Litigation Update July |
| PX-1808 | Walker | 11/24/2009 | 1096 | PIF 550051 | PIF 550059 | Power Integrations Q2 Sales Director's |

| PX-1809 | Walker | 11/24/2009 | 1097 | PIF 023640 | PIF 023664 | Technology License Agreement between Power Integrations and |
|---|---|---|---|---|---|---|
| PX-1810 | Walker | 11/24/2009 | 1098 | PI 0016287 | PI 0016385 | Master Definitive Agreement |
| PX-1811 | Walker | 11/24/2009 | 1099 | PI 0019430 | PI 0019432 | Contract Approval Form for |
| PX-1812 | Walker | 11/24/2009 | 1100 | PIF 555954 | PIF 555960 | Email re: PI Goodwill and Other |
| PX-1813 | Walker | 11/24/2009 | 1101 | PI 0028867 | PI 0028887 | Power Integrations Valuation of Patents as of December 22, 2004 |
| PX-1814 | Walker | 11/24/2009 | 1102 | PIF 2107716 | PIF 2107717 | Power Integrations draft customer letter with regards to Fairchild and System General's patent infringement |
| PX-1815 | Walker | 11/24/2009 | 1103 | PIB 180129 | PIB 180130 | Email re: Nokia/Phihong |
| PX-1816 | Walker | 11/24/2009 | 1104 | PIF 2107718 | PIF 2107719 | Power Integrations letter agreement |
| PX-1817 | Walker | 11/24/2009 | 1105 | PIF 835609 PIF 835605 | PIF 835610 PIF 835608 | Power Integrations Undertaking |
| PX-1818 | Walker | 11/24/2009 | 1106 | PIF 817296 | PIF 817298 | Email re: Liteon request PI sign back the indemnification agreement |
| PX-1819 | Walker | 11/24/2009 | 1107 | PIF 1413023 | PIF 1413030 | Email re: Power Integrations Intelbras |
| PX-1820 | Walker | 11/24/2009 | 1108 | PIF 272806 | PIF 272816 | Email re: TPV standard contract |
| PX-1821 | Walker | 11/24/2009 | 1109 | PIF 203289 | PIF 203305 | Management Color Key: Good news, Bad News, Significant PI Interest, |
| PX-1822 | Walker | 11/24/2009 | 1110 | PIF 1388387 | PIF 1388405 | Management Color Key: Good news, Bad News, Significant PI Interest, |
| PX-1823 | Walker | 11/24/2009 | 1111 | PIF 547699 | PIF 547721 | PI Weekly Report, Taiwan House |
| PX-1824 | Walker | 11/24/2009 | 1112 | PI 0176652 | PI 1076654 | Email re: SG Press Release |
| PX-1825 | Walker | 11/24/2009 | 1113 | PIF 1936447 | PIF 1936452 | Email re: Q&A from SG meeting |
| PX-1826 | Walker | 11/24/2009 | 1114 | PIF 1936460 | PIF 1936460 | Email re: Follow up SG |
| PX-1827 | Walker | 11/24/2009 | 1115 | PIF 1936461 | PIF 1936466 | Email re: Meeting on Nov. 10 |
| PX-1828 | Walker | 11/24/2009 | 1116 | PIF 1936397 | PIF 1936405 | Power Integrations, M&A Update, Board of Directors, October 29, 2007 |
| PX-1829 | Walker | 10/26/2011 | 2046 | PIF 2291830 | PIF 2291917 | Intellectual Property Indemnity Agreement between Astec and Sytem |
| PX-1830 | Yang | 12/11/2009 | 1 | | | Rahkala, et al, Effects of Switching Frequency Modulation on EMI Performance of a Converter Using |

| PX-1831 | Yang | 12/11/2009 | 2 | | | TNY256 Data sheet, July 2001 |
|---------|------|-----------|---|---|---|------------------------------|
| PX-1832 | Yang | 12/11/2009 | 3 | | | U.S. Patent 6,480,399 |
| PX-1833 | Yang | 12/11/2009 | 4 | | | U.S. Patent 6,862,194 |
| PX-1834 | Yang | 12/11/2009 | 5 | | FSG00146006 | Email re: New Patent |
| PX-1835 | Yang | 12/11/2009 | 6 | | | Email re: Revised 0001 Patent |
| PX-1836 | Yang | 12/11/2009 | 7 | | | 10/959,188, Reply to Office Action |
| PX-1837 | Yang | 12/11/2009 | 8 | FSG00146139 | FSG00146176 | Email re: An important patent |
| PX-1838 | Yang | 6/11/2009 | 1 | | | TOP200-4/14 Data sheet, July 1996 |
| PX-1839 | Yang | 6/11/2009 | 10 | | | SG6848 Product Specification |
| PX-1840 | Yang | 6/11/2009 | 11 | | | SG6849 Product Specification |
| PX-1841 | Yang | 6/11/2009 | 12 | | | SG6849A/B Preliminary Specification |
| PX-1842 | Yang | 6/11/2009 | 13 | | | SGP400 Product Specification |
| PX-1843 | Yang | 6/11/2009 | 14 | | | SG6858 Product Specification |
| PX-1844 | Yang | 6/11/2009 | 15 | | | SG6859 Product Specification |
| PX-1845 | Yang | 6/11/2009 | 16 | | | SG5701 Product Specification |
| PX-1846 | Yang | 6/11/2009 | 17 | | | SG5841/J Product Specification |
| PX-1847 | Yang | 6/11/2009 | 18 | | | SGP100 Product Specification |
| PX-1848 | Yang | 6/11/2009 | 19 | | | FSEZ1016 Data sheet, March 2009 |
| PX-1849 | Yang | 6/11/2009 | 2 | | | LNK501 Data sheet, April 2003 |
| PX-1850 | Yang | 6/11/2009 | 20 | | | FSEZ1216 Data sheet, September 2008 |
| PX-1851 | Yang | 6/11/2009 | 21 | | | U.S. Patent 6,674,656 |
| PX-1852 | Yang | 6/11/2009 | 22 | | | Application Data Sheet for 10/065,532 |
| PX-1853 | Yang | 6/11/2009 | 23 | | | Combined Declaration and Power of Attorney - PWM Controller Having A Saw-Limiter For Output Power Limit |
| PX-1854 | Yang | 6/11/2009 | 24 | FSG00000331 | FSG00000381 | Schematics |
| PX-1855 | Yang | 6/11/2009 | 25 | | | U.S. Patent 6,611,439 |
| PX-1856 | Yang | 6/11/2009 | 26 | | | U.S. Patent 7,026,851 |
| PX-1857 | Yang | 6/11/2009 | 27 | | | U.S. Patent 7,203,079 |
| PX-1858 | Yang | 6/11/2009 | 28 | | | U.S. Patent 7,184,283 |
| PX-1859 | Yang | 6/11/2009 | 29 | | | 10/898,389 Claims |
| PX-1860 | Yang | 6/11/2009 | 3 | | | LNK603-606/613-616 LinkSwitch-II |
| PX-1861 | Yang | 6/11/2009 | 30 | | | U.S. Patent 7,061,780 |
| PX-1862 | Yang | 6/11/2009 | 31 | | | U.S. Patent 6,249,876 |

| PX-1863 | Yang | 6/11/2009 | 32 | | | U.S. Patent 6,229,366 |
|---------|------|-----------|----|----|----|--------------------------|
| PX-1864 | Yang | 6/11/2009 | 33 | | | U.S. Patent 7,259,972 |
| PX-1865 | Yang | 6/11/2009 | 34 | | | U.S. Patent 7,352,595 |
| PX-1866 | Yang | 6/11/2009 | 4 | | | FSD210 Data sheet |
| PX-1867 | Yang | 6/11/2009 | 5 | | | TEA1401T Data sheet, March 7,1997 |
| PX-1868 | Yang | 6/11/2009 | 6 | | | SG6741 Product Specification |
| PX-1869 | Yang | 6/11/2009 | 7 | | | SG6741A Data sheet |
| PX-1870 | Yang | 6/11/2009 | 8 | | | SG6742 Product Specification |
| PX-1871 | Yang | 6/11/2009 | 9 | | | SG6742HL/HR Data sheet |
| PX-1872 | | | | SG0185347 | SG0185356 | F4 - DX-2000 - U.S. Patent No. |
| PX-1873 | | | | FSGIV00005611 | FSGIV00005764 | F4 - DX-2002 - File History for U.S. |
| PX-1874 | | | | FSGIV00209417 | FSGIV00209450 | F4 - DX-2004 - DPA422-426, DPA- |
| PX-1875 | | | | PIFIV0000074 | PIFIV0000093 | F4 - DX-2007.1 - TOP-FX (TOP232) |
| PX-1876 | | | | PIFIV0313838 | PIFIV0313877 | F4 - DX-2008 - TOP264-271, |
| PX-1877 | | | | PIF 343933 | PIF 343980 | F4 - DX-2010 - Datasheet for TOP252- |
| PX-1878 | | | | PIB 013521 | PIB 013556 | F4 - DX-2011 - Schematic for TOP252 |
| PX-1879 | | | | FSGIV00209470 | FSGIV00209493 | F4 - DX-2012 - TNY274-280, |
| PX-1880 | | | | PIFIV0000094 | PIFIV0000113 | F4 - DX-2013 - TNY III (TNY274) |
| PX-1881 | | | | PIF 203017 | PIF 203049 | F4 - DX-2021 - Link-CV, LNK623 |
| PX-1882 | | | | PIFIV0156801 | PIFIV0156818 | F4 - DX-2022 - Datasheet for LNK603-606/613-616, LinkSwitch-II Family |
| PX-1883 | | | | F4 - DX-2037 | | Huang SG5841 Application Note |
| PX-1884 | | | | PIFIV0001585 | PIFIV0001599 | F4 - DX-2041.1 - Adapters/Charger Challenges and Opportunities |
| PX-1885 | | | | FSGIV00122355 | FSGIV00122384 | F4 - DX-2170.1 - Application Note AN- |
| PX-1886 | | | | FSGIV00003552 | FSGIV00003570 | F4 - DX-2202 - BiCMOS green mode PWM Controllers, SG3842G/SG3843G |
| PX-1887 | | | | F4 - DX-2220 | | Champion 6800 Low Start-Up Current PFC/PWM Controller Combo, dated |
| PX-1888 | | | | PI 0014555 | PI 0014574 | F4 - DX-2433 - DPA-Switch/AN-31 |
| PX-1889 | | | | PI 0194743 | PI 0194744 | F4 - DX-2450 - Email chain from Jonathan Shieh to Bruce Renouard |
| PX-1890 | | | | PIF 513637 | PIF 513638 | F4 - DX-2458 - E-mail chain, top one dated 11-4-05, Subject: "FW: Big |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1891 | | | | PIFIV0473007 | PIFIV0473007 | F4 - DX-2469 - Email dated 1/8/2013 from Y. Ye to E. Verity re StdCost 2008-2011 and enclosing StdCost 2008-2011 |
| PX-1892 | | | | PIFIV0063290 | PIFIV0063297 | F4 - DX-2483 - Email dated 11/28/2012 from B. Sutherland to A. |
| PX-1893 | | | | PIFIV0001846 | PIFIV0001846 | F4 - DX-2514 - Email dated 6/12/2012 from D. Bailey to B. Balakrishnan re |
| PX-1894 | | | | FSG02042733 | FSG02042735 | F4 - DX-2544 - Email from G. Lin to B. Conrad re Power Conversion Taiwan |
| PX-1895 | | | | FSGIV00081775 | FSGIV00081799 | F4 - DX-2545 - Email from G. Lin to B. Tan, et al encl POWI SWOT Analysis |
| PX-1896 | | | | FSGIV00116766 | FSGIV00116767 | F4 - DX-2548 - Email from KE Hong to G. Lin re US plan on expanding |
| PX-1897 | | | | FSGIV00100824 | FSGIV00100824 | F4 - DX-2550 - Email from M. Mandracchia and G. Lin re Oki Wafer |
| PX-1898 | | | | PIF 866502 | PIF 866512 | F4 - DX-2604 - Email re: iWatt Foxlink |
| PX-1899 | | | | FSG00177591 | FSG00177593 | F4 - DX-2605 - Email re: Korea (LG |
| PX-1900 | | | | FSGIV00217170 | FSGIV00217170 | F4 - DX-2706 - Email sent 7/24/2013 from G. Wei to C. Ondrick et al. re |
| PX-1901 | | | | PIFIV0059229 | PIFIV0059230 | F4 - DX-2733.1 - Email thread between B. Sutherland and B. Balakrishnan, et |
| PX-1902 | | | | PIFIV0016988 | PIFIV0016989 | F4 - DX-2743 - Email thread between M. Mathews and E. Quek re Apple and |
| PX-1903 | | | | FSGIV00100481 | FSGIV00100506 | F4 - DX-2749 - Emails between A. Chu and G. Lin re Slides on Customer |
| PX-1904 | | | | PIFIV0060114 | PIFIV0060117 | F4 - DX-2756.2 - Emails between B. Sutherland and M. Matthews re |
| PX-1905 | | | | PIFIV0167620 | PIFIV0167622 | F4 - DX-2768 - Emails between J. Harrington and S. Fimiani re Apple 5w |
| PX-1906 | | | | PIFIV0022077 | PIFIV00220781 | F4 - DX-2779.1 - Emails between J. Tomlin and T. Roesler re Sales Weekly |
| PX-1907 | | | | PIFIV0022077 | PIFIV00220781 | F4 - DX-2779.2 - Emails between J. Tomlin and T. Roesler re Sales Weekly |

| | | | | | |
|---|---|---|---|---|---|
| PX-1908 | | | PIFIV0013283 | PIFIV0013284 | F4 - DX-2798 - Emails between M. Matthews and S. Fimiani re Tech |
| PX-1909 | | | FSGIV00099814 | FSGIV00099829 | F4 - DX-2814 - Emails between S. IM and G. Lin re POWI Comparison |
| PX-1910 | | | FSG01244521 | FSG01244523 | F4 - DX-2822 - Emails re: analyst |
| PX-1911 | | | FSGIV00178485 | FSGIV00178559 | F4 - DX-2898 - Fairchild 2009 SBP Power Conversion Presentation |
| PX-1912 | | | FSGIV00084453 | FSGIV00084482 | F4 - DX-2908 - Fairchild Consumer Power Conversion 2011 SBP |
| PX-1913 | | | FSG01432541 | FSG01432600 | F4 - DX-2955 - Fairchild presentation: Company Overview dated October |
| PX-1914 | | | FSGIV00011888 | FSGIV00011903 | F4 - DX-3107 - FAN103 Datasheet |
| PX-1915 | | | FSGIV00038025 | FSGIV00038052 | F4 - DX-3291 - FEB315-001 Evaluation Board of 5W for Charger (FAN103) |
| PX-1916 | | | F4 - DX-3485R | | Huang Huang Declaration ISO Opp. to Mot. to Excl. Expert Testimony |
| PX-1917 | | | F4 - DX-3488 | | Identified Lost Buiness April to |
| PX-1918 | | | F4 - DX-3503 | | Investors presentation by Power |
| PX-1919 | | | FSGIV00173599 | FSGIV00173618 | F4 - DX-3614 - License and Development Agreement between |
| PX-1920 | | | PIB 013821 | PIB 013853 | F4 - DX-3620 - Link-II, LNK603 and |
| PX-1921 | | | FSGIV00053509 | FSGIV00053526 | F4 - DX-3654.1 - LNK603-606/613-616 |
| PX-1922 | | | FSG02039998 | FSG02040017 | F4 - DX-3662 - LNK623-626, LinkSwitch- |
| PX-1923 | | | PIFIV0113209 | PIFIV0113209 | F4 - DX-3784 - Power Integrations |
| PX-1924 | | | PIFIV0000001 | PIFIV0000137 | F4 - DX-3826 - November 2, 2010 Production Letter from Michael Headley to Jeremy Elman enclosing |
| PX-1925 | | | PIFIV0144358 | PIFIV0144415 | F4 - DX-3923 - Power Integrations marketing document titled: Product Concept / OTS, Project Code name |
| PX-1926 | | | FSGIV0006607 4 | FSGIV00066099 | F4 - DX-4048 - Demo Board PS06012-04 SG5841 12V/5A (FSGIV00066074- |
| PX-1927 | | | PIFIV0063885 | PIFIV0063893 | F4 - DX-4057 - Q4 Sales Update Presentation to Board of Directors |

| | | | | | |
|---|---|---|---|---|---|
| PX-1928 | | | FSGIV00215284 | FSGIV00215915 | F4 - DX-4174 - Reexamination File History 90-007771 for U.S. Patent No. |
| PX-1929 | | | F4 - DX-4181 | | Reference Design Report for a 5W Charger Using LNK616PG, Rev. 1.1 |
| PX-1930 | | | F4 - DX-4573 | | Set of Slides of AIPLA Spring Meetings |
| PX-1931 | | | FSG00028127 | FSG00028141 | F4 - DX-4606 - Huang SG5841/J |
| PX-1932 | | | F4 - DX-4681 | | Huang SG6841 Product Specification |
| PX-1933 | | | F4 - DX-4872 | | Calculation of U.S. share of worldwide |
| PX-1934 | | | PIF 023640 | PIF 023664 | F4 - DX-4911 - Technology License Agreement between Power |
| PX-1935 | | | FSGIV00054267 | FSGIV000542900 | F4 - DX-4929.1 - TNY274-280, |
| PX-1936 | | | FSG00205844 | FSG00205879 | F4 - DX-4995.1 - TOP232-234, |
| PX-1937 | | | FSGIV00008141 | FSGIV00008150 | F4 - DX-5053 - U.S. Patent No. |
| PX-1938 | | | FSGIV00008157 | FSGIV00008167 | F4 - DX-5085 - U.S. Patent No. |
| PX-1939 | | | F4 - DX-5123 | | U.S. Patent No. 6,462,971 File History (Application No. 09/405,209) |
| PX-1940 | | | F4 - DX-5354 | | U.S. Patent No. 7,940,035 |
| PX-1941 | | | F4 - DX-5442.26 | | Screenshot from Wei Rebuttal Expert Report - Exhibit D (FAN103 test |
| PX-1942 | | | F4 - DX-5443.18C | | Screenshot from Wei Rebuttal Expert Report - Exhibit E (SG5841 test results) |
| PX-1943 | | | F4 - DX-5443.18D | | Screenshot from Wei Rebuttal Expert Report - Exhibit E (SG5841 test results) |
| PX-1944 | | | F4 - DX-5443.19A | | Screenshot from Wei Rebuttal Expert Report - Exhibit E (SG5841 test results) |
| PX-1945 | | | F4 - DX-5443.19B | | Screenshot from Wei Rebuttal Expert Report - Exhibit E (SG5841 test results) |
| PX-1946 | | | F4 - DX-5443.19C | | Screenshot from Wei Rebuttal Expert Report - Exhibit E (SG5841 test results) |
| PX-1947 | | | F4 - DX-5444.19D | | Screenshot from Wei Rebuttal Expert Report - Exhibit F (SG5841J test |
| PX-1948 | | | F4 - DX-5444.20A | | Screenshot from Wei Rebuttal Expert Report - Exhibit F (SG5841J test |

| | | | | | |
|---|---|---|---|---|---|
| PX-1949 | | | | F4 - DX-5444.20B | | Screenshot from Wei Rebuttal Expert Report - Exhibit F (SG5841J test |
| PX-1950 | | | | F4 - DX-5444.20C | | Screenshot from Wei Rebuttal Expert Report - Exhibit F (SG5841J test |
| PX-1951 | | | | F4 - DX-5444.20D | | Screenshot from Wei Rebuttal Expert Report - Exhibit F (SG5841J test |
| PX-1952 | | | | F4 - DX-5444.21A | | Screenshot from Wei Rebuttal Expert Report - Exhibit F (SG5841J test |
| PX-1953 | | | | F4 - DX-5444.21B | | Screenshot from Wei Rebuttal Expert Report - Exhibit F (SG5841J test |
| PX-1954 | | | | FSG02145315 | FSG02145322 | F4 - DX-5455 - Xunwei Zhou, Mauro Donati, Luca Amoroso and Fred C. Lee, |
| PX-1955 | | | | PIFIV0155283 | PIFIV0155283 | F4 - DX-5465 - Native excel file containing financial data and Power |
| PX-1956 | | | | FSGIV00206366 | FSGIV00206404 | F4 - DX-5472 - Asset purchase agreement between Fairchild and |
| PX-1957 | | | | PIF 203506_1.000001 | PIF 203506_1.000001 | F4 - DX-5482 - Power Integrations' Sales Data |
| PX-1958 | | | | F4 - DX-5642 | | Power Integrations 2004 10-K |
| PX-1959 | | | | F4 - DX-5675 | | Receipts for Purchase of Products from Mouser (Exhibit J to Wood's July 19, 2013 Report)7Case3:09-cv-05235- |
| PX-1960 | | | | F4 - DX-5677 | | Excerpts from Fundamental of Power Electronics by Robert W.Erickson |
| PX-1961 | | | | F4 - DX-5678 | | Micro Linear, ML4802 Datasheet, PFC/PWM Controller Combo with |
| PX-1962 | | | | F4 - DX-5679 | | U.S. Patent No. 6,233,161 |
| PX-1963 | | | | F4 - DX-5680 | | U.S. Patent No. 7,215,107 |
| PX-1964 | | | | F4 - DX-5681 | | Revised Exhibit 3 (version 1) from Putnam Corrected Affirmative |
| PX-1965 | | | | F4 - DX-5682 | | Revised Exhibit 3 (version 2) from Putnam Corrected Affirmative |
| PX-1966 | | | | F4 - DX-5683 | | Revised Exhibit 3 (version 1) from Putnam Corrected Affirmative |

| | | | | | |
|---|---|---|---|---|---|
| PX-1967 | | | F4 - DX-5684 | | Revised Exhibit 3 (version 2) from Putnam Corrected Affirmative |
| PX-1968 | | | F4 - DX-5685 | | Schedule from Dr. Putnam's July 19, |
| PX-1969 | | | F4 - DX-5686 | | Schedule from Dr. Putnam's July 30, 2013 Corrected Expert Report |
| PX-1970 | | | F4 - DX-5709 | | Collection of screenshots from the oscilloscope saved on  Chueh's hard drive that he relied upon at depo, not |
| PX-1971 | | | F4 - DX-5710 | | Figure 1. Test circuit schematic from "Test Report Regarding Testing of TOP232PN (TopSwitch-FX) Performed inApril2012," Jonathan R. Wood, April |
| PX-1972 | | | F4 - DX-5723 | | Figure 15. Oscilloscope recording at a load of 0.00 mA (0 mW)from "Test Report Regarding Testing of TOP232PN(TopSwitch-FX) Performed in April 2012," by Jonathan R. Wood, |
| PX-1973 | | | F4 - DX-5724 | | Figure 16. Oscilloscope recording at a load of 2.23 mA (37.7mW) from "Test Report Regarding Testing of TOP232PN(TopSwitch-FX) Performed |
| PX-1974 | | | F4 - DX-5739 | | Figure 15. Oscilloscope recording at a load of 4.82 mA (63mW) from "Test Report Regarding Testing of TOP264VG(TopSwitch-JX) Performed |
| PX-1975 | | | F4 - DX-5740 | | Figure 16. Oscilloscope recording at a load of 3.33 mA (43mW) from "Test Report Regarding Testing of TOP264VG(TopSwitch-JX) Performed in January and March 2012," by Jonathan R. Wood, March 16, 2012 |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1976 | | | | F4 - DX-5757 | | Figure 15. Oscilloscope recording at a load of 0.00 mA (0 mW)from "Test Report Regarding Testing ofDPA423GN (DPASwitch)Performed |
| PX-1977 | | | | F4 - DX-5758 | | Figure 16. oscilloscope recording at a load of 1.89 mA (29.6mW) from "Test Report Regarding Testing ofDPA423GN(DPA-Switch) Performed |
| PX-1978 | | | | F4 - DX-5806 | | Figure 17. Oscilloscope recording at a load of 12.51 mA Test Report for TinySwitch-PK, TNY376 (Exhibit G to |
| PX-1979 | | | | F4 - DX-5807 | | Figure 18. Oscilloscope recording at a load of 4.12 mA Test Report for TinySwitch-PK, TNY376 (Exhibit G to |
| PX-1980 | | | | F4 - DX-5808 | | Figure 19. Oscilloscope recording at a load of 2.23 mA Test Report for TinySwitch-PK, TNY376 (Exhibit G to |
| PX-1981 | | | | F4 - DX-5809 | | Figure 20. Oscilloscope recording at a load of 0.63 mA Test Report for TinySwitch-PK, TNY376 (Exhibit G to |
| PX-1982 | | | | F4 - DX-5843 | | Malackowski Malackowski Affirmative Report Damages Schedules |
| PX-1983 | | | | F4 - DX-5844 | | Malackowski Malackowski Supplemental Rebuttal Report |
| PX-1984 | | | | MCGOWAN0000006 | MCGOWAN0000229 | F4 - DX-5845 - Wood DigiKey Invoice |
| PX-1985 | | | | F4 - DX-5846R | | Wood Summary Table of schematics & |
| PX-1986 | | | | F4 - DPX-12 | | Wood GE 62905 LED (contains Power |
| PX-1987 | | | | F4 - DPX-46 | | Wood TNY263PN (purchased from |
| PX-1988 | | | | F4 - DPX-56 | | Wood TNY375PN (purchased from |
| PX-1989 | | | | F4 - DPX-160 | | Wood RDK-91 (purchased from Digi- |
| PX-1990 | | | | F4 - DPX-176 | | Wood Test Circuit for TOP232PN (TopSwitch-FX), described in Exhibit E |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-1991 | | | | F4 - DPX-178 | | Wood Test Circuit for TNY376PN (TinySwitch-PK), described in Exhibit G |
| PX-1992 | Renouard, Bruce | 10/13/2005 | 1 | | | Third Notice of Deposition Pursuant to |
| PX-1993 | Renouard, Bruce | 10/13/2005 | 2 | | | Fourth Notice of Deposition Pursuant |
| PX-1994 | Renouard, Bruce | 10/13/2005 | 3 | PIF39342 | PIF39440 | "Competition Review, Version 1.7" |
| PX-1995 | Renouard, Bruce | 10/13/2005 | 4 | PIEM0000813 | | Document bearing Bates Number |
| PX-1996 | Renouard, Bruce | 10/13/2005 | 5 | PIEM0000814 | 850 | Fairchild Update.xls file bearing Bates Numbers PIEM0000814 through -850 |
| PX-1997 | Renouard, Bruce | 10/13/2005 | 6 | PIEM0005972 | 5982 | Report bearing Bates Numbers |
| PX-1998 | Renouard, Bruce | 10/13/2005 | 7 | PIEM0006695 | | E-mail bearing Bates Number |
| PX-1999 | Renouard, Bruce | 10/13/2005 | 8 | | | Document entitled "Plaintiff Power Integrations, Inc.'s Second Supplemental Response to |
| PX-2000 | Renouard, Bruce | 10/13/2005 | 9 | PIF45250 | 261 | Document bearing Bates Numbers |
| PX-2001 | Renouard, Bruce | 10/13/2005 | 10 | PIF52943 | 52971 | Document bearing Bates Numbers |
| PX-2002 | Renouard, Bruce | 10/13/2005 | 11 | PIF54205 | 54212 | Document bearing Bates Numbers |
| PX-2003 | Renouard, Bruce | 10/13/2005 | 12 | PIF53236 | | Document bearing Bates Number |
| PX-2004 | Renouard, Bruce | 10/13/2005 | 13 | PIF54193 | 54195 | Document bearing Bates Numbers |
| PX-2005 | Renouard, Bruce | 10/13/2005 | 14 | PIF54140 | 54145 | Document bearing Bates Numbers |
| PX-2006 | Renouard, Bruce | 10/13/2005 | 15 | PIF53131 | 53218 | Document bearing Bates Numbers |
| PX-2007 | Renouard, Bruce | 10/13/2005 | 16 | PIF52725 | 52759 | Document bearing Bates Numbers |
| PX-2008 | Renouard, Bruce | 10/13/2005 | 17 | PIF52575 | 52724 | Document bearing Bates Numbers |
| PX-2009 | Renouard, Bruce | 10/13/2005 | 18 | PIF55078 | 55088 | Document bearing Bates Numbers |
| PX-2010 | Renouard, Bruce | 12/8/2005 | 19 | PIF 88460 | 503 | Document with production Nos. PIF |
| PX-2011 | Renouard, Bruce | 12/8/2005 | 20 | PIF 93057 | 93064 | Document with production Nos. PIF |
| PX-2012 | Renouard, Bruce | 12/8/2005 | 21 | PIEM0161336 | PIEM0161342 | Document with production Nos. PIEM0161336 through PIEM0161342 |
| PX-2013 | Renouard, Bruce | 12/8/2005 | 22 | PIF 94996 | 999 | Document with production Nos. PIF |
| PX-2014 | Renouard, Bruce | 12/8/2005 | 23 | | | Power Integrations' Supplemental Responses to Fairchild's Second and Third Set of Interrogatories dated |
| PX-2015 | Verity, R. Eric | 5/30/2013 | 1 | | | POWI's Designations and Objections in Response to Defendants' 30(b)(6) |
| PX-2016 | Verity, R. Eric | 5/30/2013 | 10 | PIFIV0497808 | PIFIV0497808 | Spread Sheet - Revenue Information |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-2017 | Verity, R. Eric | 5/30/2013 | 11 | PIFIV0497809 | PIFIV0497809 | Spread Sheet Revenue for Key Applications (Q.2 2010) and |
| PX-2018 | Verity, R. Eric | 5/30/2013 | 12 | PIFIV0497824 | PIFIV0497824 | Spread Sheet Cost Information |
| PX-2019 | Verity, R. Eric | 5/30/2013 | 13 | PIFIV0497646 | PIFIV0497728 | POWI's Final Budget for 2012 Slides |
| PX-2020 | Verity, R. Eric | 5/30/2013 | 14 | PIFIV0497645 | PIFIV0497645 | Spread Sheet Annual Income Statement and Quarterly Income |
| PX-2021 | Verity, R. Eric | 5/30/2013 | 15 | PIFIV0497829 | PIFIV0497830 | Spread Sheet Sales Information |
| PX-2022 | Verity, R. Eric | 5/30/2013 | 2 | PIFIV0113209_HCAEO | PIFIV0113209_HCAEO | Spread Sheet - Income Statement, Balance Sheet, Headcount with |
| PX-2023 | Verity, R. Eric | 5/30/2013 | 3 | | | Spread Sheet - Product Revenue from |
| PX-2024 | Verity, R. Eric | 5/30/2013 | 4 | PIFIV0443947 | PIFIV0443947 | Spread Sheet - Market Growth and |
| PX-2025 | Verity, R. Eric | 5/30/2013 | 5 | PIFIV0444027 | PIFIV0444027 | Spread Sheet - Product Revenue from |
| PX-2026 | Verity, R. Eric | 5/30/2013 | 6 | PIFIV0133471 | PIFIV0133488 | POWI's Org. Chart |
| PX-2027 | Verity, R. Eric | 5/30/2013 | 7 | PIFIV0462367 | PIFIV0462367 | Spread Sheet - POWI's U.S. Revenue |
| PX-2028 | Verity, R. Eric | 5/30/2013 | 8 | PIFIV0497769 | PIFIV0497769 | Spread Sheet t- Fiscal Year 2010 |
| PX-2029 | Verity, R. Eric | 5/30/2013 | 9 | PIFIV0497780 | PIFIV0497780 | Spread Sheet - Revenue Details for |
| PX-2030 | Bailey, Doug | 11/22/2005 | 1 | | | Notice of Deposition |
| PX-2031 | Bailey, Doug | 11/22/2005 | 2 | | | The California Energy Commission's Energy Efficiency Regulations |
| PX-2032 | Bailey, Doug | 11/22/2005 | 3 | | | Email from J. Parkinson re Care t Make Me An Offer for a Couple of |
| PX-2033 | Bailey, Doug | 11/22/2005 | 4 | | | 2006 Revenue Drivers |
| PX-2034 | Bailey, Doug | 11/22/2005 | 5 | | | Board of Directors, Marketing 2005 |
| PX-2035 | Bailey, Doug | 11/22/2005 | 6 | | | CEC Project Report |
| PX-2036 | Bailey, Doug | 11/22/2005 | 7 | | | China 5 Project |
| PX-2037 | Bailey, Doug | 11/22/2005 | 8 | | | Power Integration Power Supply Design and Manufacturing Proposal |
| PX-2038 | Bailey, Doug | 11/22/2005 | 9 | | | PI Expert Suite Demystifies |
| PX-2039 | Bailey, Doug | 11/22/2005 | 10 | | | PI Introduction Feb. 2005 |
| PX-2040 | Bailey, Doug | 11/22/2005 | 11 | | | GC Strategy Discussion 2005 |
| PX-2041 | Bailey, Doug | 11/22/2005 | 12 | | | Internet Sample Store Discussion |
| PX-2042 | Bailey, Doug | 11/22/2005 | 13 | | | Email from V. Cardinale re CEC |
| PX-2043 | Bailey, Doug | 11/22/2005 | 14 | | | Marcon and Media Strategy 2005 |
| PX-2044 | Bailey, Doug | 11/22/2005 | 15 | | | Marcom Spend Analysis 2005 |

| PX-2045 | Bailey, Doug | 11/22/2005 | 16 | | | Salcomp's Coming to Samsung – PI |
|---|---|---|---|---|---|---|
| PX-2046 | Bailey, Doug | 11/22/2005 | 17 | | | Product Concept / OTS / TopSwitch-HX |
| PX-2047 | Balakrishnan, Balu | 11/17/2005 | 1 | | | Notice of Deposition |
| PX-2048 | Balakrishnan, Balu | 11/17/2005 | 2 | | | 30(b)(6) Notice of Deposition |
| PX-2049 | Balakrishnan, Balu | 11/17/2005 | 3 | | | Second 30(b)(6) Notice of Deposition |
| PX-2050 | Balakrishnan, Balu | 11/17/2005 | 4 | | | Third 30(b)(6) Notice of Deposition |
| PX-2051 | Balakrishnan, Balu | 11/17/2005 | 5 | | | Fourth 30(b)(6) Notice of Deposition |
| PX-2052 | Balakrishnan, Balu | 11/17/2005 | 6 | | | Fifth 30(b)(6) Notice of Deposition |
| PX-2053 | Balakrishnan, Balu | 11/17/2005 | 7 | | | '876 patent |
| PX-2054 | Balakrishnan, Balu | 11/17/2005 | 8 | | | '366 Patent |
| PX-2055 | Balakrishnan, Balu | 11/17/2005 | 9 | | | '851 Patent |
| PX-2056 | Balakrishnan, Balu | 11/17/2005 | 10 | | | SMP211 Datasheet |
| PX-2057 | Balakrishnan, Balu | 11/17/2005 | 11 | | | Press Release – Power Integrations Files Patent Infringement Suit Against |
| PX-2058 | Balakrishnan, Balu | 11/17/2005 | 12 | | | Press Release – Power Integrations Announces Third-Quarter Financial |
| PX-2059 | Balakrishnan, Balu | 11/17/2005 | 13 | | | California Energy Commission's Energy |
| PX-2060 | Balakrishnan, Balu | 11/17/2005 | 14 | | | Sales Team Q& A – Fairchild Lawsuit |
| PX-2061 | Balakrishnan, Balu | 11/17/2005 | 15 | | | PI Responses to Firchild's First Set of |
| PX-2062 | Balakrishnan, Balu | 11/17/2005 | 16 | | | Invention Disclosure Form |
| PX-2063 | Balakrishnan, Balu | 11/17/2005 | 17 | | | Invention Disclosure Form |
| PX-2064 | Balakrishnan, Balu | 11/23/2005 | 18 | | | Handwritten Notes |
| PX-2065 | Balakrishnan, Balu | 11/23/2005 | 19 | | | Schematics |
| PX-2066 | Balakrishnan, Balu | 11/23/2005 | 20 | | | PWR-SMP211 Datasheet |
| PX-2067 | Balakrishnan, Balu | 11/23/2005 | 21 | | | Schematics |
| PX-2068 | Balakrishnan, Balu | 11/23/2005 | 22 | | | PWR-SMP240 Datasheet |
| PX-2069 | Balakrishnan, Balu | 11/23/2005 | 23 | | | PWR-SMP260 Datasheet |
| PX-2070 | Balakrishnan, Balu | 11/23/2005 | 24 | | | APEC '92 Materials |
| PX-2071 | Balakrishnan, Balu | 11/23/2005 | 25 | | | PWR-SMP240 Datasheet |
| PX-2072 | Balakrishnan, Balu | 11/23/2005 | 26 | | | PWR-SMP240 Datasheet |
| PX-2073 | Balakrishnan, Balu | 11/23/2005 | 27 | | | PWR-SMP260 Datasheet |
| PX-2074 | Balakrishnan, Balu | 11/23/2005 | 28 | | | PWR-SMP260 Datasheet |
| PX-2075 | Balakrishnan, Balu | 11/23/2005 | 29 | | | PWR-SMP260 Datasheet |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-2076 | Balakrishnan, Balu | 11/23/2005 | 30 | | | Memo from Richard Keller to Balu |
| PX-2077 | Balakrishnan, Balu | 11/23/2005 | 31 | | | Balakrishnan regarding Clarification to |
| | | | | | | PWR-SMP3 Datasheet |
| PX-2078 | Balakrishnan, Balu | 11/23/2005 | 32 | | | Article – Off-Line PWM Switching |
| | | | | | | Regaulator IC Handles 3W, Frank |
| PX-2079 | Balakrishnan, Balu | 11/23/2005 | 33 | | | Schematics |
| PX-2080 | Balakrishnan, Balu | 11/23/2005 | 34 | | | Project PS03 Index |
| PX-2081 | Balakrishnan, Balu | 11/23/2005 | 35 | | | Project SMP1A Index |
| PX-2082 | Balakrishnan, Balu | 11/23/2005 | 36 | | | Schematics |
| PX-2083 | Balakrishnan, Balu | 11/23/2005 | 37 | | | Schematics |
| PX-2084 | Balakrishnan, Balu | 11/23/2005 | 38 | | | SMP212/220 Task List |
| PX-2085 | Balakrishnan, Balu | 11/23/2005 | 39 | | | PWR-SMP212 Datasheet |
| PX-2086 | Balakrishnan, Balu | 3/15/2006 | 40 | | | PI 2003 Annual Report |
| PX-2087 | Balakrishnan, Balu | 3/15/2006 | 41 | | | PI 2004 Annual Report |
| PX-2088 | Balakrishnan, Balu | 3/15/2006 | 42 | | | PI Form 10-Q for the Perido Ending |
| PX-2089 | Balakrishnan, Balu | 3/15/2006 | 43 | | | '075 Patent |
| PX-2090 | Balakrishnan, Balu | 3/15/2006 | 44 | | | PI, Solid Q4 Results With Outlook |
| PX-2091 | Balakrishnan, Balu | 3/15/2006 | 45 | | | Article – Spread Spectrum Clocks |
| PX-2092 | Balakrishnan, Balu | 3/15/2006 | 46 | | | PI Company Information |
| PX-2093 | Balakrishnan, Balu | 3/15/2006 | 47 | | | PTO Web Page Search for Patents |
| PX-2094 | Balakrishnan, Balu | 3/15/2006 | 48 | | | '851 Patent |
| PX-2095 | Balakrishnan, Balu | 3/15/2006 | 49 | | | Wafer Supply Agreement between |
| | | | | | | Power Integrations and Matsushita |
| PX-2096 | Balakrishnan, Balu | 3/15/2006 | 50 | | | '366 Patent |
| PX-2097 | Balakrishnan, Balu | 3/15/2006 | 51 | | | '876 Patent |
| PX-2098 | Balakrishnan, Balu | 3/15/2006 | 52 | | | U.S. Patent 4,638,417 |
| PX-2099 | Blauschild, Robert | 3/9/2007 | 10 | | | Supplemental Expert Report |
| PX-2100 | Blauschild, Robert | 3/9/2007 | 11 | | | USP 4,638,417 |
| PX-2101 | Blauschild, Robert | 3/9/2007 | 12 | | | Programmed Pulsewidth Modulated |
| | | | | | | Waveforms for Electromagnetic |
| PX-2102 | Blauschild, Robert | 3/9/2007 | 13 | | | Accoustic Noise Reduction in |
| | | | | | | Sinusoidal PWM Drives Using a |
| PX-2103 | Blauschild, Robert | 3/9/2007 | 14 | | | TEA2262 Datasheet |
| PX-2104 | Blauschild, Robert | 3/9/2007 | 15 | | | Power MOSFETs Take the Load Off |

| PX-2105 | Blauschild, Robert | 3/9/2007 | 16 | | | PWR-SMP240 Datasheet |
|---|---|---|---|---|---|---|
| PX-2106 | Blauschild, Robert | 3/9/2007 | 17 | | | PWR-SMP260 Datasheet |
| PX-2107 | Blauschild, Robert | 3/9/2007 | 18 | | | Fairchild I Order re Claim Construction |
| PX-2108 | Blauschild, Robert | 3/9/2007 | 19 | | | PWO Office Action |
| PX-2109 | Blauschild, Robert | 3/9/2007 | 20 | | | PTO Office Action |
| PX-2110 | Blauschild, Robert | 3/9/2007 | 21 | | | PTO Office Action |
| PX-2111 | | | | PIF6 0000001 | PIF6 0000022 | U.S. Patent No. 6,229,366 |
| PX-2111.1 | Wei, Gu-Yeon | 1/15/2015 | 11 | PIF6 0000001 | PIF6 0000022 | U.S. Patent No. 6,229,366 |
| PX-2111.2 | Yang, Ta-Yung | 12/12/2013 | 15 | PIF6 0000001 | PIF6 0000022 | U.S. Patent No. 6,229,366 |
| PX-2112 | | | | PIF6 0000022 | PIF6 0000052 | U.S. Patent No. 7,876,587 |
| PX-2112.1 | Kelley, Arthur | 1/13/2005 | 24 | PIF6 0000023 | PIF6 0000052 | U.S. Patent No. 7,876,587 |
| PX-2112.2 | Wei, Gu-Yeon | 1/15/2015 | 17 | PIF6 0000023 | PIF6 0000052 | U.S. Patent No. 7,876,587 |
| PX-2113 | | | | PIF6 0000277 | PIF6 0000295 | U.S. Patent No. 7,952,895 |
| PX-2113.1 | Kelley, Arthur | 1/13/2005 | 25 | PIF6 0000277 | PIF6 0000295 | U.S. Patent No. 7,952,895 |
| PX-2114 | | | | PIF6 0000468 | PIF6 0000488 | U.S. Patent No. 7,995,359 |
| PX-2114.1 | Kelley, Arthur | 1/13/2005 | 26 | PIF6 0000468 | PIF6 0000488 | U.S. Patent No. 7,995,359 |
| PX-2114.2 | Wei, Gu-Yeon | 1/15/2015 | 3 | PIF6 0000468 | PIF6 0000488 | U.S. Patent No. 7,995,359 |
| PX-2115 | | | | PIF6 0000687 | PIF6 0000711 | U.S. Patent No. 8,115,457 |
| PX-2115.1 | Kelley, Arthur | 1/13/2005 | 27 | PIF6 0000687 | PIF6 0000711 | U.S. Patent No. 8,115,457 |
| PX-2115.2 | Wei, Gu-Yeon | 1/15/2015 | 5 | PIF6 0000687 | PIF6 0000711 | U.S. Patent No. 8,115,457 |
| PX-2116 | Gaknoki, Gary | 10/29/2013 | 5 | PIF6 0001127 | PIF6 0001207 | LinkSwitch-HP Schematics |
| PX-2117 | | | | FSGV0365032 | FSGV0365049 | FSGM0465RB datasheet |
| PX-2118 | | | | FSGV0365068 | FSGV0365085 | FSGM0565RB datasheet |
| PX-2119 | | | | FSGV0041058 | FSGV0041070 | FSL138MRT datasheet |
| PX-2120 | | | | FSGV0041421 | FSGV0041434 | FSL206MRBN datasheet |
| PX-2121 | | | | FSGV0041471 | FSGV0041491 | FSQ0165 datasheet; FSQ0265 |
| PX-2122 | | | | FSGV0365397 | FSGV0365418 | FSQ0465RU datasheet |
| PX-2123 | | | | FSGV0028471 | FSGV0028483 | FLS0116 datasheet |
| PX-2124 | | | | | | FSL137H datasheet |
| PX-2125 | | | | FSGIV00111416 | FSGIV00111430 | FSL127H datasheet |
| PX-2126 | | | | FSGV0000763 | FSGV0000802 | FSGM0465R schematic; FSGM0465RB schematic; FSGM0565R schematic; |
| PX-2127 | | | | FSGV0000892 | FSGV0000929 | FSL106MR schematic |
| PX-2128 | | | | FSGV0000854 | FSGV0000891 | FSL116HR schematic |

| | | | | | |
|---|---|---|---|---|---|
| PX-2129 | | | | | FSL136MR schematic |
| PX-2130 | | | FSGV0171580 | FSGV0171580 | FSL138MRT schematic |
| PX-2131 | | | FSGV0001288 | FSGV0001357 | FSL176MRT schematic |
| PX-2132 | | | | | FSL206MR schematic; FSL206MRBN |
| PX-2133 | | | FSGV0001405 | FSGV0001430 | FSQ0165 schematic; FSQ0365 |
| PX-2134 | | | FSGV0002010 | FSGV0002041 | FSQ0465RS/RB schematic; FSQ0465RU schematic; FSQ0565RS/RQ schematic; |
| PX-2135 | | | FSGV0001237 | FSGV0001287 | FSL137H Schematic |
| PX-2136 | | | FSGIV00000108 | FSGIV00000119 | AN-XXXX Applying Fairchild Power Switch (FPStm) FSL-1x7 to Low Power |
| PX-2137 | | | FSGIV00003168 | FSGIV00003183 | FAN6862R/FAN6862L Highly Integrated Green-Mode PWM |
| PX-2138 | | | FSGIV00003184 | FSGIV00003199 | FAN6862 Highly Integrated Green- |
| PX-2139 | | | FSGIV00006695 | FSGIV00006710 | FAN6982 CCM Power Factor |
| PX-2140 | | | FSG00163453 | FSG00163473 | Green mode PFC/PWM Controller |
| PX-2141 | | | FCS0275958 | FCS0275982 | FSCQ1565RP Green Mode Fairchild Power Switch (FPStm) for Quasi- |
| PX-2142 | | | FCS0299976 | FCS0299987 | FSDM0565R demo board (APP-735) |
| PX-2143 | | | FCS0305735 | FCS0305756 | Application Note AN4146 Design guidelines for Quasi-resonant |
| PX-2144 | | | FCS0328121 | FCS0328139 | Application Note 42030 Theory and Application of the ML4821 Average |
| PX-2145 | | | FCS0339253 | FCS0339262 | Application Note AN4141 Troubleshooting and Design Tips for |
| PX-2146 | | | FCS0343831 | FCS0343844 | Application Note AN4107 Design of Power Factor Correction Circuit Using |
| PX-2147 | | | FCS0406195 | FCS0406210 | L4981A L4981B Power Factor |
| PX-2148 | | | FCS0603209 | FCS0603218 | Application Note AN4141 Troubleshooting and Design Tips for |
| PX-2149 | | | FCS0004351 | FCS0004370 | LM2642 Two-Phase Synchronous Step-Down Switching Controller |
| PX-2150 | | | FCS0713970 | FCS0713981 | FSDM0565R demo board (APP-735) |
| PX-2151 | | | FCS1084363 | FCS1084381 | Application Note 42030 Theory and Application of the ML4821 Average |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-2152 | | | | FSGIV00011827 | FSGIV00011843 | FAN102 Primary-Side-Control PWM |
| PX-2153 | | | | FSGIV00014586 | FSGIV00014602 | AN-6093 Design Guideline for Flyback Charger Using FAN104WMX |
| PX-2154 | | | | FSGIV00015906 | FSGIV00015923 | FAN302HLMY_F117 PWM Controller for Low Standby Power Battery - |
| PX-2155 | | | | FSGV0001647 | FSGV0001661 | DAP024 Highly Integrated Green- |
| PX-2156 | | | | FSGV0383043 | FSGV0383067 | Prototype Report European Input LED Ballast using FAN7527BM, |
| PX-2157 | | | | FSGV0384830 | FSGV0384863 | LED Lighting Solution based on High Efficiency Resonant Converter Design |
| PX-2158 | | | | FSGV0385244 | FSGV0385273 | Resonant and Soft-Switching Solutions |
| PX-2159 | | | | FSGV0385827 | FSGV0385827 | Asymmetrical Half-Bridge Converter Design Tool for FSFA series by Fairchild |
| PX-2160 | | | | FSGV0386372 | FSGV0386396 | Emitter-Switched Bipolar/MOSFET Cascode (ESBC) -- 80 watt, Wide Input Range, Quasi-Resonant Power Supply |
| PX-2161 | | | | FSGV0386556 | FSGV0386580 | Prototype Report European Input LED Ballast using FAN7527BM, |
| PX-2162 | | | | FSGV0386908 | FSGV0386930 | Input Voltage Sensing Technique Without additional power loss |
| PX-2163 | | | | | | Fairchild Semiconductor Receives Two Prestigious Awards in China |
| PX-2164 | | | | | | Fairchild Semiconductor's FAN6756 Single-Chip PWN Solution Receives |
| PX-2165 | | | | | | Celestica Recognizes Fairchild Semiconductor With Third Year Global |
| PX-2166 | | | | | | Celestica recognizes select suppliers with Partners in Performance awards |
| PX-2167 | | | | | | Fairchild Semiconductor Earns Award From Top International Component |
| PX-2168 | | | | | | Fairchild Semiconductor Honored by Celestica with Global Supplier Award |
| PX-2169 | | | | | | Fairchild Semiconductor Named a Winner of EP China's 2005 Top 10 DC- |

| | | | | | |
|---|---|---|---|---|---|
| PX-2170 | | | | | Fairchild Semiconductor Receives 'Best Supplier Award' From LG Electronics |
| PX-2171 | | | | | Fairchild Semiconductor Receives Best Supplier Award from Samsung |
| PX-2172 | | | | | Fairchild Semiconductor Receives Highly-Regarded Stack International |
| PX-2173 | | | | | Fairchild Semiconductor Wins 2005 |
| PX-2174 | | | | | Fairchild Semiconductor Wins Best |
| PX-2175 | | | | | Fairchild Semiconductor's IntelliMAX(TM) Wins EDN China |
| PX-2176 | | | | | Fairchild Semiconductor's SPM(TM), Cited as a Vital Element in an Award- |
| PX-2177 | | | | | Fairchild Semiconductor Earns |
| PX-2178 | | | | | Fairchild Semiconductor Receives Assodel's Best Semiconductor Vendor |
| PX-2179 | | | | | Fairchild Semiconductor Receives Best Supplier Performance Award from |
| PX-2180 | | | | | Fairchild Semiconductor Receives EDAW's 2006 Best Product Award in |
| PX-2181 | | | | | Fairchild Semiconductor Receives Hisense Strategic Supplier Award |
| PX-2182 | | | | | Fairchild Semiconductor Tapped as a Leadeing Supplier in China Market |
| PX-2183 | | | | | Fairchild Semiconductor Wins EDN China's Leading Product Innovation |
| PX-2184 | | | | | Fairchild Semiconductor Wins Excellent Supplier Award for Contribution to Mobile Handset |
| PX-2185 | | | FSG00337232 | FSG00337233 | Fairchild Semiconductor Wins Two EDN China Leading Products |
| PX-2186 | | | | | Fairchild Semiconductor's Green FPS Power Switch Wins E-Legacy Award |
| PX-2187 | | | FSG00973948 | FSG00973948 | Fairchild Semiconductor's Motion-SPM(TM) and USB Switch Earn |

| | | | | | |
|---|---|---|---|---|---|
| PX-2188 | | | | | Fairchild Semiconductor's Ultra Low Power FIN324C μSerDes(TM) SerializerDeserializer Receives Best |
| PX-2189 | | | | | Fairchild Semiconductor's System General Subsidiary Wins Prestigious |
| PX-2190 | | | | | Fairchild Takes EDAW-NEC 2007 'Best Innovative Product Award' |
| PX-2191 | | | | | i2 Customers Essar Steel, Fairchild Semiconductor and Kimberly-Clark |
| PX-2192 | | | FSG00973973 | FSG00973974 | Three Fairchild Semiconductor Devices Named Ultimate Products by EETimes |
| PX-2193 | | | | | Battery Switching Charger from Fairchild Semiconductor an EPC Top- |
| PX-2194 | | | | | Celestica Awards Fairchild Semiconductor as a 2012 Total Cost of |
| PX-2195 | | | | | China,United States Fairchild Semiconductor Wins Prestigious |
| PX-2196 | | | | | Fairchild Gets Partnership Supplier |
| PX-2197 | | | | | Fairchild Receives 2011 Quality Award |
| PX-2198 | | | | | Fairchild Semiconductor Awarded Core Supplier Performance Award by |
| PX-2199 | | | | | Fairchild Semiconductor Earns Sixth Electronic Products China Top-10 DC- |
| PX-2200 | | | | | Fairchild Semiconductor Gets Electronic Product Design's 2011 e- |
| PX-2201 | | | | | Fairchild Semiconductor Named 2013 Best Supplier by Yulong Computer |
| PX-2202 | | | | | Fairchild Semiconductor Receives 'Best Supplier Award' for Excellent |
| PX-2203 | | | | | Fairchild Semiconductor Receives Best Supplier Award from Eaton Asia Pacific |
| PX-2204 | | | | | Fairchild Semiconductor Receives Celestica's 2009 Total Cost of |

| | | | | | |
|---|---|---|---|---|---|
| PX-2205 | | | | | Fairchild Semiconductor Receives Core Supplier Award from Hisense-Kelon |
| PX-2206 | | | | | Fairchild Semiconductor Receives Eaton's Best Supplier Award for |
| PX-2207 | | | | | Fairchild Semiconductor Receives Excellent Supplier Award for Third |
| PX-2208 | | | | | Fairchild Semiconductor Receives Supplier of the Year Award from |
| PX-2209 | | | | | Fairchild Semiconductor Wins Best Reference Design Award from |
| PX-2210 | | | | | Fairchild Semiconductor Wins EEPW Power Products Award for Innovation |
| PX-2211 | | | | | Fairchild Semiconductor Wins Elektra's Power Systems Product of the Year |
| PX-2212 | | | | | Fairchild Semiconductor Wins |
| PX-2213 | | | | | Fairchild Semiconductor Wins Two EEPW Power Products Awards for |
| PX-2214 | | | | | Fairchild Semiconductor's High Performance Optocoupler Wins |
| PX-2215 | | | | | Fairchild Semiconductor's Shorted-Anode IGBTs an EPC Top-10 Power |
| PX-2216 | | | | | Fairchild Semiconductor's Ultra FRFET MOSFETS Win ACE Power Productof |
| PX-2217 | | | | | Fairchild Semiconductor's USB Accessory Switch Receives 20th |
| PX-2218 | | | | | Fairchild Semiconductor's PSR Controller and Ultra FRFET MOSFET Selected as Finalists in the 2010 |
| PX-2219 | | | | | Fairchild's P-Channel PowerTrench® MOSFET Wins Electronic Product |
| PX-2220 | | | | | FCS, a leading global supplier of high-performance power and mobile semiconductor solutions has been |
| PX-2221 | | | | | Supplier receives award from power |

| | | | | | |
|---|---|---|---|---|---|
| PX-2222 | | | | | | Three of Fairchild Semiconductor's Devices are Finalists for EDN's |
| PX-2223 | | | | | | United States Fairchild Semiconductor Receives Strategic Supplier Award |
| PX-2224 | | | | FSG02154264 | FSG02154267 | Fairchild Semiconductor's High-Voltage Gate Driver Wins Product of |
| PX-2225 | | | | FSGIV00075996 | FSGIV00076004 | Fairchild Product Awards |
| PX-2226 | | | | FSG00337234 | FSG00337235 | Press Release--Fairchild Semiconductor Wins EPC's Top-10 DC- |
| PX-2227 | | | | FSG00973975 | FSG00973975 | Fairchild Semiconductor Listed as One of the 100 Best Corporate Citizens |
| PX-2228 | | | | FSG00975426 | FSG00975426 | Fairchild Semiconductor s Green FPS Power Switch was Selected as the Best |
| PX-2229 | | | | FSG02141752 | FSG02141752 | Fairchild Semiconductor's High-Voltage Gate Driver Wins Product of |

| Ex. No. | Description |
|---------|-------------|
| PPX-1 | RDK-158 |
| PPX-2 | RDK-193 |
| PPX-3 | RDK-195 |
| PPX-4 | RDK-290 |
| PPX-5 | RDK-347 |
| PPX-6 | FAN102 |
| PPX-7 | FL7730 |
| PPX-8 | GE 62905 LED |
| PPX-9 | Ledare E12 LED1203C4 |
| PPX-10 | Ledare E12 LED1206C4 |
| PPX-11 | Ledare E12 LED1208G4 |
| PPX-12 | Ledare E17 LED1213R4 |
| PPX-13 | Ledare E26 LED1208G4 |
| PPX-14 | LNK403EG |
| PPX-15 | LNK404EG |
| PPX-16 | LNK405EG |
| PPX-17 | LNK406EG |
| PPX-18 | LNK407EG |
| PPX-19 | LNK408EG |
| PPX-20 | LNK409EG |
| PPX-21 | LNK410 |
| PPX-22 | LNK413EG |
| PPX-23 | LNK414EG |
| PPX-24 | LNK415EG |
| PPX-25 | LNK416EG |
| PPX-26 | LNK417EG |
| PPX-27 | LNK418EG |
| PPX-28 | LNK419EG |
| PPX-29 | LNK420LG |
| PPX-30 | LNK454DG |
| PPX-31 | LNK456DG |
| PPX-32 | LNK457DG |
| PPX-33 | LNK457KG |
| PPX-34 | LNK457VG |
| PPX-35 | LNK458KG |
| PPX-36 | LNK458VG |
| PPX-37 | LNK460KG |
| PPX-38 | LNK460VG |
| PPX-39 | LNK603DG |
| PPX-40 | LNK603PG |
| PPX-41 | LNK604PG |
| PPX-42 | LNK605PG |
| PPX-43 | LNK606DG |
| PPX-44 | LNK606GG |
| PPX-45 | LNK606PG |
| PPX-46 | LNK613DG |

| | |
|---|---|
| PPX-47 | LNK613PG |
| PPX-48 | LNK614PG |
| PPX-49 | LNK615DG |
| PPX-50 | LNK615PG |
| PPX-51 | LNK616DG |
| PPX-52 | LNK616GG |
| PPX-53 | LNK616PG |
| PPX-54 | LNK623DG |
| PPX-55 | LNK623PG |
| PPX-56 | LNK624DG |
| PPX-57 | LNK624PG |
| PPX-58 | LNK625DG |
| PPX-59 | LNK625PG |
| PPX-60 | LNK626DG |
| PPX-61 | LNK626PG |
| PPX-62 | LNK632DG |
| PPX-63 | LNK6663E |
| PPX-64 | LNK6663V |
| PPX-65 | LNK6664E |
| PPX-66 | LNK6664V |
| PPX-67 | LNK6665E |
| PPX-68 | LNK6665V |
| PPX-69 | LNK6666E |
| PPX-70 | LNK6666V |
| PPX-71 | LNK6667E |
| PPX-72 | LNK6667V |
| PPX-73 | LNK6763E |
| PPX-74 | LNK6763V |
| PPX-75 | LNK6764E |
| PPX-76 | LNK6764V |
| PPX-77 | LNK6765E |
| PPX-78 | LNK6765V |
| PPX-79 | LNK6766E |
| PPX-80 | LNK6766V |
| PPX-81 | LNK6767E |
| PPX-82 | LNK6767V |
| PPX-83 | LNK6773E |
| PPX-84 | LNK6773V |
| PPX-85 | LNK6774E |
| PPX-86 | LNK6774V |
| PPX-87 | LNK6775E |
| PPX-88 | LNK6775V |
| PPX-89 | LNK6776E |
| PPX-90 | LNK6776V |
| PPX-91 | LNK6777E |
| PPX-92 | LYT0005D |
| PPX-93 | LYT4211E |

PPX-94    LYT4212E
PPX-95    LYT4213E
PPX-96    LYT4214E
PPX-97    LYT4215E
PPX-98    LYT4216E
PPX-99    LYT4217E
PPX-100   LYT4218E
PPX-101   LYT4218L
PPX-102   LYT4221E
PPX-103   LYT4222E
PPX-104   LYT4223E
PPX-105   LYT4224E
PPX-106   LYT4225E
PPX-107   LYT4226E
PPX-108   LYT4227E
PPX-109   LYT4228E
PPX-110   LYT4311E
PPX-111   LYT4312E
PPX-112   LYT4313E
PPX-113   LYT4314E
PPX-114   LYT4315E
PPX-115   LYT4316E
PPX-116   LYT4317E
PPX-117   LYT4318E
PPX-118   LYT4318L
PPX-119   LYT4321E
PPX-120   LYT4322E
PPX-121   LYT4323E
PPX-122   LYT4324E
PPX-123   LYT4325E
PPX-124   LYT4326E
PPX-125   LYT4327E
PPX-126   LYT4328E
PPX-127   RDK-251
PPX-128   RDK-257
PPX-129   RDK-268
PPX-130   RDK-271
PPX-131   TP-Link TL-MR3040 Portable Battery
          Powered 3G Wireless N Router

EXHIBIT 5B
Power Integrations' Exhibit List

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0001 | U.S. Patent No. 6,229,366 B1 | PIF6 0000001 | PIF6 0000022 | Kelley, Arthur | | | |
| DX-0001.1 | U.S. Patent No. 6,229,366 B1 | | | Park, YB | 4 | 5/19/2014 | F6 |
| DX-0001.2 | U.S. Patent No. 6,229,366 B1 | PIF6 0000001 | PIF6 0000022 | Wei, Gu-Yeon | 11 | 1/15/2015 | F6 |
| DX-0001.3 | U.S. Patent No. 6,229,366 B1 | | | Yang, Ta-Yung | 15 | 12/12/2013 | F6 |
| DX-0002 | U.S. Patent No. 6,229,366 B1 Prosecution File History | PIF000212 | PIF000316 | Kelley, Arthur | | | |
| DX-0003 | U.S. Patent No. 7,876,587 B2 | PIF6 0000023 | PIF6 0000052 | Kelley, Arthur | | | |
| DX-0003.1 | U.S. Patent No. 7,876,587 B2 | PIF6 0000023 | PIF6 0000052 | Wei, Gu-Yeon | 17 | 1/15/2015 | F6 |
| DX-0003.2 | U.S. Patent No. 7,876,587 B2 | | | Park, YB | 6 | 5/19/2014 | F6 |
| DX-0004 | U.S. Patent No. 7,876,587 B2 Prosecution File History | PIF6 0000053 | PIF6 0000276 | Kelley, Arthur | | | |
| DX-0005 | U.S. Patent No. 7,952,895 B2 | PIF6 0000277 | PIF6 0000295 | Kelley, Arthur | | | |
| DX-0006 | U.S. Patent No. 7,952,895 B2 Prosecution File History | PIF6 0000296 | PIF6 0000467 | Kelley, Arthur | | | |
| DX-0007 | U.S. Patent No. 7,995,359 B2 | PIF6 0000468 | PIF6 0000488 | Kelley, Arthur | | | |
| DX-0007.1 | U.S. Patent No. 7,995,359 B2 | PIF6 0000468 | PIF6 0000488 | Wei, Gu-Yeon | 3 | 1/15/2015 | F6 |
| DX-0008 | U.S. Patent No. 7,995,359 B2 Prosecution File History | PIF6 0000489 | PIF6 0000686 | Kelley, Arthur | | | |
| DX-0009 | U.S. Patent No. 8,115,457 B2 | PIF6 0000687 | PIF6 0000711 | Kelley, Arthur | | | |
| DX-0009.1 | U.S. Patent No. 8,115,457 B2 | PIF6 0000687 | PIF6 0000711 | Wei, Gu-Yeon | 5 | 1/15/2015 | F6 |
| DX-0010 | U.S. Patent No. 8,115,457 B2 Prosecution File History | PIF6 0000712 | PIF6 0000914 | Kelley, Arthur | | | |
| DX-0011 | U.S. Patent No. 7,616,461 B2 | | | Kelley, Arthur | | | |
| DX-0012 | U.S. Patent No. 7,616,461 B2 Prosecution File History | FSGV0000163 | FSGV0000273 | Kelley, Arthur | | | |
| DX-0013 | U.S. Patent No. Application No. 13/786,746 | | | Kelley, Arthur | | | |
| DX-0014 | U.S. Patent No. 6,249,876 to Balakrishnan | PIF00320 | PIF00333 | Kelley, Arthur | | | |
| DX-0015 | U.S. Patent No. 4,529,949 to de Wit | PIF6 0001528 | PIF6 0001536 | Kelley, Arthur | | | |
| DX-0015.1 | U.S. Patent No. 4,529,949 to de Wit | PIF6 0001528 | PIF6 0001536 | Collins, Edward | 15 | 1/7/2015 | F6 |
| DX-0016 | U.S. Patent No. 4,952,949 to Uebbing | PIF6 0001537 | PIF6 0001543 | Kelley, Arthur | | | |
| DX-0016.1 | U.S. Patent No. 4,952,949 to Uebbing | PIF6 0001537 | PIF6 0001543 | Collins, Edward | 16 | 1/7/2015 | F6 |
| DX-0016.2 | U.S. Patent No. 4,952,949 to Uebbing | PIF6 0001537 | PIF6 0001543 | Yang, Ta-Yung | 6 | 12/12/2013 | F6 |
| DX-0017 | U.S. Patent No. 6.362.578 to Swanson | PIF6 0001565 | PIF6 0001574 | Kelley, Arthur | | | |
| DX-0017.1 | U.S. Patent No. 6.362.578 to Swanson | PIF6 0001565 | PIF6 0001574 | Yang, Ta-Yung | 7 | 12/12/2013 | F6 |
| DX-0018 | U.S. Patent No. 6,862,194 to Yang | PIF6 0001585 | PIF6 0001602 | Kelley, Arthur | | | |
| DX-0018.1 | U.S. Patent No. 6,862,194 to Yang | PIF6 0001585 | PIF6 0001602 | Collins, Edward | 6 | 1/7/2015 | F6 |
| DX-0018.2 | U.S. Patent No. 6,862,194 to Yang | PIF6 0001585 | PIF6 0001602 | Weirich, Michael | 13 | 12/11/2013 | F6 |
| DX-0018.3 | U.S. Patent No. 6,862,194 to Yang | PIF6 0001585 | PIF6 0001602 | Yang, Ta-Yung | 18 | 12/12/2013 | F6 |
| DX-0019 | U.S. Patent No. 7,061,780 to Yang | PIF6 0001634 | PIF6 0001655 | Kelley, Arthur | | | |
| DX-0020 | U.S. Patent No. 7,532,595 to Yang | PIF6 0001681 | PIF6 0001689 | Kelley, Arthur | | | |
| DX-0021 | U.S. Patent No. 7,259,972 B2 | PIF6 0001656 | PIF6 0001680 | Kelley, Arthur | | | |
| DX-0021.1 | U.S. Patent No. 7,259,972 B2 | PIF6 0001656 | PIF6 0001680 | Weirich, Michael | 12 | 12/11/2013 | F6 |
| DX-0021.2 | U.S. Patent No. 7,259,972 B2 | | | Yang, Ta-Yung | 11 | 12/12/2013 | F6 |
| DX-0021.3 | U.S. Patent No. 7,259,972 B2 | | | Collins, Edward | 7 | 1/7/2015 | F6 |
| DX-0021.4 | U.S. Patent No. 7,259,972 B2 | | | Yang, Ta-Yung | 32 | 12/13/2013 | F6 |
| DX-0022 | U.S. Patent No. 7,259,972 B2 Prosecution File History | FSGV0000274 | FSGV0000422 | Kelley, Arthur | | | |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0023 | U.S. Patent No. 7,259,972 B2 Reexamination File History | | | Kelley, Arthur | | | |
| DX-0024 | U.S. Patent No. 7,286,123 B2 | | | Kelley, Arthur | | | |
| DX-0024.1 | U.S. Patent No. 7,286,123 B2 | | | Collins, Edward | 11 | 1/7/2015 | F6 |
| DX-0024.2 | U.S. Patent No. 7,286,123 B2 | | | Yang, Ta-Yung | 2 | 12/12/2013 | F6 |
| DX-0024.3 | U.S. Patent No. 7,286,123 B2 | | | Yang, Ta-Yung | 31 | 12/13/2013 | F6 |
| DX-0025 | U.S. Patent No. 7,286,123 B2 Prosecution File History | FSGV0000001 | FSGV0000070 | Kelley, Arthur | | | |
| DX-0026 | U.S. Patent No. 7,525,259 B2 | | | Kelley, Arthur | | | |
| DX-0026.1 | U.S. Patent No. 7,525,259 B2 | | | Collins, Edward | 3 | 1/7/2015 | F6 |
| DX-0026.2 | U.S. Patent No. 7,525,259 B2 | | | Malackowski, James | 4 | 1/20/2015 | F6 |
| DX-0026.3 | U.S. Patent No. 7,525,259 B2 | | | Weirich, Michael | 1 | 12/11/2013 | F6 |
| DX-0026.4 | U.S. Patent No. 7,525,259 B2 | | | Yang, Ta-Yung | 19 | 12/12/2013 | F6 |
| DX-0027 | U.S. Patent No. 7,525,259 B2 Prosecution File History | FSGV0000071 | FSGV0000162 | Kelley, Arthur | | | |
| DX-0027.1 | U.S. Patent No. 7,525,259 B2 Prosecution File History (excerpt) | FSGV0000071 | FSGV0000161 | Collins, Edward | 4 | 1/7/2015 | F6 |
| DX-0027.2 | U.S. Patent No. 7,525,259 B2 Prosecution File History (excerpt) | FSGV0000071 | FSGV0000162 | Weirich, Michael | 9 | 12/11/2013 | F6 |
| DX-0028 | U.S. Patent No. Application 2004/0105283 (6,940,733 to "Shie") | PIF6 0001700 | PIF6 0001710 | Kelley, Arthur | | | |
| DX-0029 | U.S. Patent No. 6,586,890 to Min | PIF6 0001575 | PIF6 0001584 | Kelley, Arthur | | | |
| DX-0030 | U.S. Patent No. 5,012,162 to Chun | PIF6 0001544 | PIF6 0001548 | Kelley, Arthur | | | |
| DX-0031 | U.S. Patent No. 5,661,645 to Hochstein | PIF6 0001549 | PIF6 0001564 | Kelley, Arthur | | | |
| DX-0032 | U.S. Patent No. 7,038,399 to Lys | PIF6 0001603 | PIF6 0001633 | Kelley, Arthur | | | |
| DX-0033 | U.S. Patent No. 6,212,079 | | | Kelley, Arthur | | | |
| DX-0034 | Exhibit not used | | | | | | |
| DX-0035 | Exhibit not used | | | | | | |
| DX-0036 | U.S. Patent No. 7,940,035 | | | Kelley, Arthur | | | |
| DX-0036.1 | U.S. Patent No. 7,940,035 | | | Yang, Ta-Yung | 34 | 12/13/2013 | F6 |
| DX-0037 | U.S. Patent No. 7,855,899 | | | Kelley, Arthur | | | |
| DX-0037.1 | U.S. Patent No. 7,855,899 | | | Yang, Ta-Yung | 35 | 12/13/2013 | F6 |
| DX-0038 | U.S. Patent No. 7,362,593 | | | Kelley, Arthur | | | |
| DX-0038.1 | U.S. Patent No. 7,362,593 | | | Yang, Ta-Yung | 36 | 12/13/2013 | F6 |
| DX-0039 | U.S. Patent No. 5,956,242 | | | Kelley, Arthur | | | |
| DX-0040 | TEA1401T Data Sheet, Dated Mar. 7, 1997 ("TEA1401T Data Sheet") | PIF6 0001508 | PIF6 0001527 | Kelley, Arthur | | | |
| DX-0040.1 | Philips Integrated Circuits Data Sheet, TEA1401T, Power Plug for the Universal Mains | PIF6 0001508 | PIF6 0001527 | Weirich, Michael | 14 | 12/11/2013 | F6 |
| DX-0041 | TEA1504 Data Sheet, Dated Dec. 7, 1999 ("TEA1504 Data Sheet") | PIF6 0001725 | PIF6 0001744 | Kelley, Arthur | | | |
| DX-0042 | LinkSwitch LNK520 Data Sheet, Rev. C, Dated March 2004 ("LNK520 Data Sheet") | PIF6 0001417 | PIF6 0001436 | Kelley, Arthur | | | |
| DX-0042.1 | LNK520 LinkSwitch Family Datasheet, March 2004 | PIF6 0001417 | PIF6 0001436 | Collins, Edward | 8 | 1/7/2015 | F6 |
| DX-0042.2 | LNK520 LinkSwitch Family Datasheet, March 2004 | PIF6 0001417 | PIF6 0001436 | Weirich, Michael | 11 | 12/11/2013 | F6 |
| DX-0042.3 | LNK520 LinkSwitch Family Datasheet, March 2004 | PIF6 0001417 | PIF6 0001436 | Yang, Ta-Yung | 5 | 12/12/2013 | F6 |
| DX-0043 | Linear Technology LT1942 Datasheet | PIF6 0001437 | PIF6 0001452 | Kelley, Arthur | | | |
| DX-0044 | Supertex HV9903 datasheet | PIF6 0001394 | PIF6 0001405 | Kelley, Arthur | | | |
| DX-0045 | Supertex HV9906 datasheet | PIF6 0001406 | PIF6 0001416 | Kelley, Arthur | | | |
| DX-0046 | Maxim MAX16801A Datasheet | PIF6 0001453 | PIF6 0001467 | Kelley, Arthur | | | |
| DX-0046.1 | MAXI16801AB Datasheet Oct. 2005 | PIF6 0001453 | PIF6 0001467 | Yang, Ta-Yung | 8 | 12/12/2013 | F6 |
| DX-0047 | Power Integrations Engineering Prototype Report for EP-54 (LinkSwitch) | PIF6 0001468 | PIF6 0001507 | Kelley, Arthur | | | |
| DX-0048 | DAP024 Schematics | FSG02205783 - 5834 | | Kelley, Arthur | | | |
| DX-0049 | DAP024 Schematics | FSGV0001677 - 1728 | | Kelley, Arthur | | | |
| DX-0050 | DAP02A Datasheet | FSGV0001632 - 1646 | | Kelley, Arthur | | | |
| DX-0051 | DAP02A Datasheet | FSGV0001647 - 1661 | | Kelley, Arthur | | | |
| DX-0052 | DAP02A Datasheet | FSGV0001662 - 1676 | | Kelley, Arthur | | | |
| DX-0053 | DAP02A Schematics | FSGV0046835 - 1878 | | Kelley, Arthur | | | |
| DX-0054 | Demo Board Manual SG6841 | FSGV0043095-115 | | Kelley, Arthur | | | |
| DX-0055 | FAN6300 Datasheet | FSGV0002632 - 2644 | | Kelley, Arthur | | | |
| DX-0056 | FAN6300 Datasheet | FSGV0002658 - 2670 | | Kelley, Arthur | | | |
| DX-0057 | FAN6300 Datasheet / DAP024 Datasheet | FSGV0001831 - 1844 | | Kelley, Arthur | | | |
| DX-0058 | FAN6300 Schematics | FSGV0001867 - 1951 | | Kelley, Arthur | | | |
| DX-0059 | FAN6300A Datasheet / FAN6300H Datasheet | FSGV0002093 - 2107 | | Kelley, Arthur | | | |
| DX-0060 | FAN6300A Datasheet / FAN6300H Datasheet | FSGV0004505 - 4519 | | Kelley, Arthur | | | |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0061 | FAN6300A Schematics | FSGV0046879 - 6953 | | Kelley, Arthur | | | |
| DX-0062 | FAN6300H Schematics | FSGV0004544 - 4618 | | Kelley, Arthur | | | |
| DX-0063 | FAN6747 Datasheet | FSGV0006407 - 6418 | | Kelley, Arthur | | | |
| DX-0064 | FAN6747 Datasheet | FSGV0006419 - 6430 | | Kelley, Arthur | | | |
| DX-0065 | FAN6747 Datasheet | FSGV0006431 - 6442 | | Kelley, Arthur | | | |
| DX-0066 | FAN6747 Datasheet | FSGV0006445 - 6456 | | Kelley, Arthur | | | |
| DX-0067 | FAN6747 Datasheet | FSGV0006457 - 6471 | | Kelley, Arthur | | | F4 |
| DX-0068 | FAN6747 Schematics | FSG002094790 - 4862 | | Kelley, Arthur | | | |
| DX-0069 | FAN6747 Schematics | FSGV0005461 - 6372 | | Kelley, Arthur | | | |
| DX-0070 | FAN6747W Datasheet | FSGV0007498 - 7512 | | Kelley, Arthur | | | |
| DX-0071 | FAN6747W Schematics | FSGV0006521 - 7497 | | Kelley, Arthur | | | |
| DX-0072 | FAN6747WA Datasheet | FSGIV00076238 - 6252 | | Kelley, Arthur | | | |
| DX-0073 | FAN6747WA Schematics FAN6747WALMY Schematics | FSGV0044329 - 5305 | | Kelley, Arthur | | | |
| DX-0074 | FAN6747WALMY Datasheet | FSGV0046977 - 6991 | | Kelley, Arthur | | | |
| DX-0075 | FAN6749 Datasheet | FSGIV00076253 - 6268 | | Kelley, Arthur | | | |
| DX-0076 | FAN6749 Datasheet | FSGV0008132 - 8146 | | Kelley, Arthur | | | |
| DX-0077 | FAN6749 Datasheet | FSGV0008162 - 8176 | | Kelley, Arthur | | | |
| DX-0078 | FAN6749 Datasheet | FSGV0009621 - 9636 | | Kelley, Arthur | | | |
| DX-0079 | FAN6749 Datasheet | FSGV0009691 - 9706 | | Kelley, Arthur | | | |
| DX-0080 | FAN6749 Schematics | FSGV0008216 - 9620 | | Kelley, Arthur | | | |
| DX-0081 | FAN6751 Datasheet | FSG00441017 - 1027 | | Kelley, Arthur | | | |
| DX-0082 | FAN6751 Datasheet | FSGV0010123 - 0132 | | Kelley, Arthur | | | |
| DX-0083 | FAN6751 Datasheet | FSGV0045393 - 5401 | | Kelley, Arthur | | | |
| DX-0084 | FAN6751 Schematics FAN6751MR Schematics PO168 Schematics | FSGV0009707 - 10122 | | Kelley, Arthur | | | |
| DX-0085 | FAN6751MR Datasheet | FSGV0010135 - 0145 | | Kelley, Arthur | | | |
| DX-0086 | FAN6751MR Datasheet | FSGV0010146 - 0157 | | Kelley, Arthur | | | |
| DX-0087 | FAN6751MR Datasheet | FSGV0010171 - 0183 | | Kelley, Arthur | | | |
| DX-0088 | FAN6751MR Schematics | FSGIV003571 - 3619 | | Kelley, Arthur | | | |
| DX-0089 | FAN6752 Datasheet | FSGV0010350 - 0365 | | Kelley, Arthur | | | |
| DX-0090 | FAN6752 Datasheet | FSGV0010471 – 0483 | | Kelley, Arthur | | | |
| DX-0091 | FAN6752 Datasheet | FSGV0010485 - 0499 | | Kelley, Arthur | | | |
| DX-0092 | FAN6752 Datasheet | FSGV0010533 - 0548 | | Kelley, Arthur | | | |
| DX-0093 | FAN6752 Schematics | FSGV0010409 - 0470 | | Kelley, Arthur | | | |
| DX-0094 | FAN6753 Datasheet | FSGV0010561 - 0572 | | Kelley, Arthur | | | |
| DX-0095 | FAN6753 Datasheet | FSGV0010573 - 0584 | | Kelley, Arthur | | | |
| DX-0096 | FAN6753 Datasheet PO368 Datasheet | FSGV0010549 - 0560 | | Kelley, Arthur | | | |
| DX-0097 | FAN6753 Schematics | FSGV0047088 - 7136 | | Kelley, Arthur | | | |
| DX-0098 | FAN6754 Datasheet | FSGV0010668 - 0681 | | Kelley, Arthur | | | |
| DX-0099 | FAN6754 Datasheet | FSGV0010717 - 0733 | | Kelley, Arthur | | | |
| DX-0100 | FAN6754 Datasheet | FSGV0010734 - 0747 | | Kelley, Arthur | | | F4 |
| DX-0101 | FAN6754 Schematics | FSGV0010596 - 0667 | | Kelley, Arthur | | 10/18/2009 | F4 |
| DX-0102 | FAN6754A Datasheet | FSGIV00076269 - 6282 | | Kelley, Arthur | | | |
| DX-0103 | FAN6754A Datasheet | FSGV0010772 - 0786 | | Kelley, Arthur | | | |
| DX-0104 | FAN6754A Datasheet | FSGV0010787 - 0800 | | Kelley, Arthur | | | |
| DX-0105 | FAN6754A Datasheet | FSGV0010801 - 0814 | | Kelley, Arthur | | | |
| DX-0106 | FAN6754A Datasheet | FSGV0010838 - 0853 | | Kelley, Arthur | | | |
| DX-0107 | FAN6754A Datasheet | FSGV0010854 - 0867 | | Kelley, Arthur | | | |
| DX-0108 | FAN6754A Schematics | FSGV0047137 - 8048 | | Kelley, Arthur | | | |
| DX-0109 | FAN6754B Datasheet | FSGV0010877 - 0888 | | Kelley, Arthur | | | |
| DX-0110 | FAN6754B Datasheet | FSGV0010889 - 0902 | | Kelley, Arthur | | | |
| DX-0111 | FAN6754B Datasheet | FSGV0011815 - 1828 | | Kelley, Arthur | | | |
| DX-0112 | FAN6754B Schematics | FSGV0010903 - 1814 | | Kelley, Arthur | | | |
| DX-0112.1 | FAN6754B Schematics | FSGV0010903 | FSGV0011814 | Huang, WH | 21 | 12/13/2013 | F6 |
| DX-0113 | FAN6754WA Datasheet | FSG02206614 - 6627 | | Kelley, Arthur | | | |
| DX-0114 | FAN6754WA Datasheet | FSGV0011992 - 2006 | | Kelley, Arthur | | | |
| DX-0115 | FAN6754WA Datasheet | FSGV0012007 - 2021 | | Kelley, Arthur | | | |
| DX-0116 | FAN6754WA Datasheet | FSGV0012022 - 2035 | | Kelley, Arthur | | | |
| DX-0117 | FAN6754WA Schematics | FSGV0012036 - 3012 | | Kelley, Arthur | | | |
| DX-0118 | FAN6755 Datasheet | FSGV0014242 - 4257 | | Kelley, Arthur | | | |
| DX-0119 | FAN6755 Datasheet | FSGV0014284 - 4299 | | Kelley, Arthur | | | |
| DX-0120 | FAN6755 Datasheet | FSGV0014300 - 4315 | | Kelley, Arthur | | | |
| DX-0121 | FAN6755 Datasheet | FSGV0014353 - 4368 | | Kelley, Arthur | | | |
| DX-0122 | FAN6755 Datasheet | FSGIV150968 - 1648 | | Kelley, Arthur | | | |
| DX-0123 | FAN6755 Schematics | FSGV0013535 - 4215 | | Kelley, Arthur | | | |
| DX-0124 | FAN6755UW Schematics FAN6755W Datasheet | FSGV0015198 - 5214 | | Kelley, Arthur | | | |
| DX-0125 | FAN6755UW Schematics FAN6755W Datasheet | FSGV0015215 - 5231 | | Kelley, Arthur | | | |
| DX-0126 | FAN6755UW Schematics | FSGV0014387 - 15197 | | Kelley, Arthur | | | |
| DX-0127 | FAN6755W Schematics | FSGIV0015649 - 2459 | | Kelley, Arthur | | | |
| DX-0128 | FAN6756 Datasheet | FSGV0015246 - 5256 | | Kelley, Arthur | | | |
| DX-0129 | FAN6756 Datasheet | FSGV0015257 - 5272 | | Kelley, Arthur | | | |
| DX-0130 | FAN6756 Datasheet | FSGV0016780 - 6797 | | Kelley, Arthur | | | |
| DX-0130.1 | FAN6756 Datasheet, Rev. 1.0.4 | FSGV0016780 | FSGV0016797 | Wei, Gu-Yeon | 4 | 1/15/2015 | F6 |
| DX-0131 | FAN6756 Datasheet | FSGV0016798 - 6816 | | Kelley, Arthur | | | |
| DX-0131.1 | FAN6756 Datasheet | FSGV0017031 - 7047 | | Kelley, Arthur | | | |
| DX-0131.2 | FAN6756 Datasheet | FSGV0017031 | FSGV0017047 | Huang, WH | 9 | 12/13/2013 | F6 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0131.3 | FAN6756 Datasheet | FSGV0017031 | FSGV0017047 | Yang, Ta-Yung | 16 | 12/12/2013 | F6 |
| DX-0132 | FAN6756 Schematics | FSGV0015273 - 6678 | | Kelley, Arthur | | | |
| DX-0132.1 | FAN6756 Schematics | FSGV0015273 | FSGV0016678 | Huang, WH | 8 | 12/13/2013 | F6 |
| DX-0132.2 | FAN6756 Schematics | FSGV0015273 | FSGV0016671 | Wei, Gu-Yeon | 21 | 1/15/2015 | F6 |
| DX-0133 | FAN6861 Datasheet | FSGV0017507 - 7516 | | Kelley, Arthur | | | |
| DX-0134 | FAN6861 Schematics | FSGV0017048 - 7506 | | Kelley, Arthur | | | |
| DX-0135 | FAN6862 Datasheet | FSGV0017521 - 7535 | | Kelley, Arthur | | | |
| DX-0136 | FAN6862 Datasheet | FSGV0017558 - 7573 | | Kelley, Arthur | | | |
| DX-0137 | FAN6862 Datasheet | FSGV0017595 - 7614 | | Kelley, Arthur | | | |
| DX-0138 | FAN6862 Datasheet | FSGV0017615 - 7630 | | Kelley, Arthur | | | |
| DX-0139 | FAN6862 Datasheet | FSGV0017653 - 7669 | | Kelley, Arthur | | | |
| DX-0140 | FAN6862 Schematics | FSGV0018936 - 9394 | | Kelley, Arthur | | | |
| DX-0141 | FAN6862/HR Datasheet FAN6862H Datasheet | FSGV0018758 - 8773 | | Kelley, Arthur | | | |
| DX-0142 | FAN6862/HR Schematics | FSGV00018936 - 9394 | | Kelley, Arthur | | | |
| DX-0143 | FAN6862/L Datasheet FAN6862/R Datasheet | FSGV0019395 - 9410 | | Kelley, Arthur | | | |
| DX-0144 | FAN6862/L Schematics FAN6862/R Schematics | FSGIV00002709-3167 | | Kelley, Arthur | | | |
| DX-0145 | FAN6862/R Datasheet | FSGIV00003168 - 3183 | | Kelley, Arthur | | | |
| DX-0146 | FAN6862/R Datasheet | FSGV0017670 - 7685 | | Kelley, Arthur | | | |
| DX-0147 | FAN6862H Datasheet FAN6862/HR Datasheet | FSGV0018743 - 8757 | | Kelley, Arthur | | | |
| DX-0148 | FAN6862H Datasheet FAN6862/HR Datasheet | FSGV0018774 - 8788 | | Kelley, Arthur | | | |
| DX-0149 | FAN6862H Schematics FAN6862/HR Schematics | FSGV0048050-101 | | Kelley, Arthur | | | |
| DX-0150 | FAN6863 Datasheet FAN6863L/R Datasheet | FSGIV00064052 - 4067 | | Kelley, Arthur | | | |
| DX-0151 | FAN6863 Schematics FAN6863L/R Schematics | FSG02206909 - 6977 | | Kelley, Arthur | | | |
| DX-0152 | FAN6863 Schematics FAN6863L/R Schematics | FSGIV00064068 - 64136 | | Kelley, Arthur | | | |
| DX-0153 | FAN6863W Datasheet | FSGV0019411 - 9426 | | Kelley, Arthur | | | |
| DX-0154 | FAN6863W Datasheet | FSGV0019427 - 9442 | | Kelley, Arthur | | | |
| DX-0155 | FAN6863W Datasheet | FSGV0019442 - 9458 | | Kelley, Arthur | | | |
| DX-0156 | FAN6863W Datasheet | FSGV0019686 - 9701 | | Kelley, Arthur | | | |
| DX-0157 | FAN6863W Schematics | FSGV0019476 - 9545 | | Kelley, Arthur | | | |
| DX-0158 | FAN6920MR Datasheet | FSGV0019718 - 9741 | | Kelley, Arthur | | | |
| DX-0159 | FAN6920MR Schematics | FSGV0019742 - 9881 | | Kelley, Arthur | | | |
| DX-0160 | FAN6921 Datasheet | FSGV0022593 - 2616 | | Kelley, Arthur | | | |
| DX-0161 | FAN6921 Datasheet | FSGV0023730 - 3744 | | Kelley, Arthur | | | |
| DX-0162 | FAN6921 Schematics | FSGV0021593 - 1731 | | Kelley, Arthur | | | |
| DX-0163 | FAN6921AMR Datasheet | FSGV0021801 - 1824 | | Kelley, Arthur | | | |
| DX-0164 | FAN6921AMR Datasheet | FSGV0021827 - 1840 | | Kelley, Arthur | | | |
| DX-0165 | FAN6921AMR Datasheet | FSGV0021980 - 2003 | | Kelley, Arthur | | | |
| DX-0166 | FAN6921AMR Schematics | FSGV0021841 - 1979 | | Kelley, Arthur | | | |
| DX-0167 | FAN6921ML Datasheet | FSGV0022004 - 2027 | | Kelley, Arthur | | | |
| DX-0168 | FAN6921ML Datasheet | FSGV0022028 - 2051 | | Kelley, Arthur | | | |
| DX-0169 | FAN6921ML Datasheet | FSGV0022193 - 2215 | | Kelley, Arthur | | | |
| DX-0170 | FAN6921ML Datasheet | FSGV0022248 - 2268 | | Kelley, Arthur | | | |
| DX-0171 | FAN6921ML Schematics | FSGV0022052 - 2192 | | Kelley, Arthur | | | |
| DX-0172 | FAN6921MR Datasheet | FSGV0021732 - 1755 | | Kelley, Arthur | | | |
| DX-0173 | FAN6921MR Datasheet | FSGV0023189 - 3212 | | Kelley, Arthur | | | |
| DX-0174 | FAN6921MR Schematics | FSGV0023213 - 3351 | | Kelley, Arthur | | | |
| DX-0175 | FL6300A Datasheet | FSGV0046574 - 6586 | | Kelley, Arthur | | | |
| DX-0176 | FL6300A Datasheet | FSGV0046574 | FSGV0046586 | Huang, WH | 23 | 6/19/2014 | F6 |
| DX-0176.1 | FL6300A Datasheet | FSGV0046574 | FSGV0046586 | Park, YB | 10 | 5/19/2014 | F6 |
| DX-0176.2 | FL6300A Datasheet | FSGV0046574 | FSGV0046586 | Wei, Gu-Yeon | 22 | 1/15/2015 | F6 |
| DX-0177 | FL6300A Schematics | FSGV0046587 - 6661 | | Kelley, Arthur | | | |
| DX-0177.1 | FL6300A Schematics | FSGV0046587 | FSGV0046661 | Huang, WH | 24 | 6/19/2014 | F6 |
| DX-0177.2 | FL6300A Schematics | FSGV0046587 | FSGV0046661 | Park, YB | 11 | 5/19/2014 | F6 |
| DX-0178 | FSB117H Datasheet FSB127H Datasheet FSB147H Datasheet | FSGV0028524 - 8541 | | Kelley, Arthur | | | |
| DX-0179 | FSB117H Datasheet FSB127H Datasheet FSB147H Datasheet | FSGV0028542 - 8559 | | Kelley, Arthur | | | |
| DX-0180 | FSB117H Schematics | FSGIV00153428-5231 | | Kelley, Arthur | | | |
| DX-0181 | FSB127H Schematics | FSG02207005 - 8806 | | Kelley, Arthur | | | |
| DX-0182 | FSB127H Schematics | FSG02208367 - 0168 | | Kelley, Arthur | | | |
| DX-0183 | FSB137H Schematics | FSGV0001237 - 1287 | | Kelley, Arthur | | | |
| DX-0184 | FSB137HL Datasheet | FSGIV00212855-2867 | | Kelley, Arthur | | | |
| DX-0185 | FSB137HL Schematics | FSGIV00212868-2972 | | Kelley, Arthur | | | |
| DX-0186 | FSB147H Schematics | FSGIV00155232 - 7035 | | Kelley, Arthur | | | |
| DX-0187 | FSBH0170 Schematics | FSGV038989 - 9039 | | Kelley, Arthur | | | |
| DX-0188 | FSBH0170 Schematics FSBH0170_F116 Schematics | FSG00018987 - 4078 | | Kelley, Arthur | | | |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0189 | FSBH0170_F116 Datasheet<br>FSBH0170W Datasheet<br>FSBH0270W Datasheet<br>FSBH0F70WA Datasheet | FSGV0039195 - 9208 | | Kelley, Arthur | | | |
| DX-0190 | FSBH0170_F116 Datasheet<br>FSBH0F70A_F116 Datasheet | FSGV0039387 - 9402 | | Kelley, Arthur | | | |
| DX-0191 | FSBH0170_F116 Schematics | FSGIV00157036 - 7091 | | Kelley, Arthur | | | |
| DX-0192 | FSBH0170A Schematics | FSGV0039139 - 9194 | | Kelley, Arthur | | | |
| DX-0193 | FSBH0170W Schematics | FSGV0048628 - 8686 | | Kelley, Arthur | | | |
| DX-0194 | FSBH0270 Schematics | FSG00019409 - 9830 | | Kelley, Arthur | | | |
| DX-0195 | FSBH0270 Schematics | FSGV0039403 - 9453 | | Kelley, Arthur | | | |
| DX-0196 | FSBH0270A Schematics | FSGV0039481 - 39536 | | Kelley, Arthur | | | |
| DX-0197 | FSBH0270W Schematics | FSGV0048715 - 8773 | | Kelley, Arthur | | | |
| DX-0198 | FSBH0370 Datasheet<br>FSBH0170 Datasheet<br>FSBH0170A Datasheet<br>FSBH0270 Datasheet<br>FSBH0270A Datasheet<br>FSBH0F70A Datasheet | FSGV0038973 - 8988 | | Kelley, Arthur | | | |
| DX-0199 | FSBH0370 Schematics | FSGV0039573 - 9623 | | Kelley, Arthur | | | |
| DX-0200 | FSBH0F70 Schematics | FSG00003989 - 4410 | | Kelley, Arthur | | | |
| DX-0201 | FSBH0F70A Schematics<br>FSBH0F70A_F116 Schematics | FSGV0039860 - 9910 | | Kelley, Arthur | | | |
| DX-0202 | FSBH0F70A_F116 Schematics | FSGIV00157092 - 7147 | | Kelley, Arthur | | | |
| DX-0203 | FSBH0F70A_F116 Schematics | FSGV0039911 - 9966 | | Kelley, Arthur | | | |
| DX-0204 | FSBH0F70WA Schematics | FSGV0048774 - 8832 | | Kelley, Arthur | | | |
| DX-0205 | FSFM0260N Schematics<br>FSFM0261N Schematics | FSGV0000672 - 0721 | | Kelley, Arthur | | | |
| DX-0206 | FSFM0260N Schematics<br>FSFM0261N Schematics | FSGV0000674 | FSGV0000721 | Park, YB | 20 | 5/19/2014 | F6 |
| DX-0207 | FSFM0300N Datasheet | FSGIV00047197 - 7208 | | Kelley, Arthur | | | |
| DX-0208 | FSFM0300N Schematics | FSGV0000722 - 0762 | | Kelley, Arthur | | | |
| DX-0208.1 | Schematics | FSGV0000722 | FSGV0000762 | Park, YB | 19 | 5/19/2014 | F6 |
| DX-0209 | FSQ0170RNA Datasheet<br>FSQ0270RNA Datasheet | FSGV0041526 - 1542 | | Kelley, Arthur | | | |
| DX-0209.1 | FSQ0170RNA Datasheet | FSGV0041526 | FSGV0041542 | Park, YB | 17 | 5/19/2014 | F6 |
| DX-0210 | FSQ0170RNA Schematics<br>FSQ0370RNA Schematics | FSGV0001431 - 1460 | | Kelley, Arthur | | | |
| DX-0210.1 | FSQ0170RNA Schematics | FSGV0001431 | FSGV0001460 | Park, YB | 15 | 5/19/2014 | F6 |
| DX-0211 | FSQ0370RLA Datasheet<br>FSQ0370RNA Datasheet | FSGV0041543 - 1560 | | Kelley, Arthur | | | |
| DX-0212 | FSQ0370RLA Schematics | FSGV0001405 - 1430 | | Kelley, Arthur | | | |
| DX-0213 | FSQ100 Datasheet | FSGV0041652 - 1663 | | Kelley, Arthur | | | |
| DX-0213.1 | FSQ100 Datasheet | FSGV0041652 | FSGV0041663 | Park, YB | 12 | 5/19/2014 | F6 |
| DX-0214 | FSQ100 Schematics<br>FSQ211 Schematics | FSGV0001493 - 1516 | | Kelley, Arthur | | | |
| DX-0214.1 | FSQ100 Schematics | FSGV0001493 | FSGV0001516 | Park, YB | 13 | 5/19/2014 | F6 |
| DX-0215 | FSQ110 Datasheet | FSGV0041664 - 1675 | | Kelley, Arthur | | | |
| DX-0216 | FSQ110 Schematics | FSGV0001517 - 1545 | | Kelley, Arthur | | | |
| DX-0216.1 | FSQ110 Schematics | FSGV0001517 | FSGV0001545 | Park, YB | 21 | 5/19/2014 | F6 |
| DX-0217 | FSQ211 Datasheet | FSGV0041676 - 1688 | | Kelley, Arthur | | | |
| DX-0218 | FSQ510 Datasheet<br>FSQ510H Datasheet<br>FSQ510M Datasheet | FSGV0041738 - 1752 | | Kelley, Arthur | | | |
| DX-0219 | FSQ510 Schematics<br>FSQ510H Schematics<br>FSQ510M Schematics | FSGV0001546 - 1576 | | Kelley, Arthur | | | |
| DX-0219.1 | FSQ510 Schematics | FSGV0001546 | FSGV0001576 | Park, YB | 16 | 5/19/2014 | F6 |
| DX-0220 | LTA805 Datasheet | FSGV0041820 - 1832 | | Kelley, Arthur | | | |
| DX-0221 | LTA805 Schematics<br>LTA810FA Schematics<br>LTA811FA Schematics | FSG02210106 - 0154 | | Kelley, Arthur | | | |
| DX-0222 | LTA805 Schematics<br>LTA810FA Schematics<br>LTA811FA Schematics | FSG02211468 - 1516 | | Kelley, Arthur | | | |
| DX-0223 | LTA809FA Datasheet | FSG0041846 - 1858 | | Kelley, Arthur | | | |
| DX-0224 | LTA809FA Datasheet | FSG02211277 - 1290 | | Kelley, Arthur | | | |
| DX-0225 | LTA809FA Schematics | FSGV001577 - 1631 | | Kelley, Arthur | | | |
| DX-0226 | LTA810FA Datasheet | FSG002211291 - 1303 | | Kelley, Arthur | | | |
| DX-0227 | LTA811FA Schematics | FSGV0041859 - 1871 | | Kelley, Arthur | | | |
| DX-0228 | PO168 Datasheet | FSGV0041872 - 1883 | | Kelley, Arthur | | | |
| DX-0229 | PO268 Datasheet | FSGV0041884 - 1899 | | Kelley, Arthur | | | |
| DX-0230 | PO268 Datasheet | FSGV0041900 - 1914 | | Kelley, Arthur | | | |
| DX-0231 | PO268 Datasheet | FSGV0042595 - 4610 | | Kelley, Arthur | | | |
| DX-0232 | PO268 Schematics | FSGV0041915 - 594 | | Kelley, Arthur | | | |
| DX-0233 | PO368 Datasheet | FSGV0042648 - 2660 | | Kelley, Arthur | | | |
| DX-0234 | PO368 Schematics | FSGV0042661 - 2709 | | Kelley, Arthur | | | |
| DX-0235 | SG6742/HL Datasheet | FSGIV00057031 - 7041 | | Kelley, Arthur | | | |
| DX-0236 | SG6742/HL Schematics<br>SG6742/HR Schematics | FSGV0042902 - 2950 | | Kelley, Arthur | | | |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0237 | SG6742/HR Datasheet | FSGV0042875 - 2888 | | Kelley, Arthur | | | |
| DX-0238 | SG6742/MR Datasheet | FSG00437315 - 7325 | | Kelley, Arthur | | | |
| DX-0239 | SG6742A Schematics SG6742/AML Schematics SG6742/AMR Schematics | FSGV0042758 - 2804 | | Kelley, Arthur | | | |
| DX-0240 | SG6742ML Datasheet | FSGV0042890 - 2901 | | Kelley, Arthur | | | |
| DX-0241 | SG6742ML Schematics SG6742/MR Schematics | FSGV0042805 - 2853 | | Kelley, Arthur | | | |
| DX-0242 | SG6840 Datasheet | FSGV0042974 - 2988 | | Kelley, Arthur | | | |
| DX-0243 | SG6840 Datasheet | FSGV0043030 - 3044 | | Kelley, Arthur | | | |
| DX-0244 | SG6840 Schematics | FSGV0042989 - 3029 | | Kelley, Arthur | | | |
| DX-0245 | SG6841 Datasheet | FSGV0043116 - 3129 | | Kelley, Arthur | | | |
| DX-0245.1 | SG6841 Datasheet | FSGV0043116 | FSGV0043129 | Wei, Gu-Yeon | 18 | 1/15/2015 | F6 |
| DX-0246 | SG6841 Datasheet | SG0202583 - 2611 | | Kelley, Arthur | | | |
| DX-0247 | SG6841 Schematics | FSGIV00000053-93 | | Kelley, Arthur | | | |
| DX-0247.1 | SG6841 Schematics | FSGIV00000053-93 | | Wei, Gu-Yeon | 19 | 1/15/2015 | F6 |
| DX-0248 | SG6841 Schematics | FSGIV00147179 - 7219 | | Kelley, Arthur | | | |
| DX-0249 | SG6841 Schematics | FSGV0043153 - 3193 | | Kelley, Arthur | | | |
| DX-0249.1 | SG6841 Schematics | FSGV0043153 | FSGV0043193 | Huang, WH | 17 | 12/13/2013 | F6 |
| DX-0250 | SG6841 Schematics SG6841x3 Schematics | FSGIV00003633 - 3678 | | Kelley, Arthur | | | |
| DX-0251 | SG6841x3 Datasheet | FSGV0043266 - 3278 | | Kelley, Arthur | | | |
| DX-0252 | SG6841x3 Datasheet | FSGV0043279 - 3291 | | Kelley, Arthur | | | |
| DX-0253 | SG6841x3 Schematics | FSGIV00003633 - 3678 | | Kelley, Arthur | | | |
| DX-0254 | SG6842 Datasheet | FSGV0043394 - 3407 | | Kelley, Arthur | | | |
| DX-0255 | SG6842 Datasheet | FSGV0043966 - 3980 | | Kelley, Arthur | | | |
| DX-0256 | SG6842 Schematics | FSGV0044003 - 4047 | | Kelley, Arthur | | | |
| DX-0257 | SG6842J Datasheet | FSGV0044049 - 4062 | | Kelley, Arthur | | | |
| DX-0258 | SG6842J Datasheet | FSGV0044117 - 4128 | | Kelley, Arthur | | | |
| DX-0259 | SG6842J Datasheet | FSGV0044212 - 4223 | | Kelley, Arthur | | | |
| DX-0260 | SG6842J Schematics | FSGV0044167 - 4211 | | Kelley, Arthur | | | |
| DX-0261 | SG6843 Datasheet | FSGV0044224 - 4235 | | Kelley, Arthur | | | |
| DX-0262 | SG6843 Schematics | FSGV0044257 - 4301 | | Kelley, Arthur | | | |
| DX-0263 | DPA Schematics | PI 0058430-453 | | Kelley, Arthur | | | |
| DX-0264 | TOP-JX Schematics | PIFIV0000001-73 | | Kelley, Arthur | | | |
| DX-0265 | TOP-FX Schematics | PIF 19959-20110 | | Kelley, Arthur | | | |
| DX-0266 | TOP-GX Schematics | PIF 077019-037 | | Kelley, Arthur | | | |
| DX-0267 | TOP-HX Schematics | PIB 013521-556 | | Kelley, Arthur | | | |
| DX-0268 | TOP GX datasheet Nov2005 | PIF 342249-300 | | Kelley, Arthur | | | |
| DX-0269 | TOPSwitch-HX February 2008 datasheet | PIF 1061999-2046 | | Kelley, Arthur | | | |
| DX-0270 | DPA422-426 datasheet feb07 | PIF 1734085-120 | | Kelley, Arthur | | | |
| DX-0271 | TOPswitch-FX Datasheet PX-017 | PIF 37480-515 | | Kelley, Arthur | | | |
| DX-0272 | TOPswitch-GX Datasheet PX-018 | PIF37516-563 | | Kelley, Arthur | | | |
| DX-0273 | TOPswitch-JX Family Rev A 12-17-09 | PIFIV0154689-720 | | Kelley, Arthur | | | |
| DX-0274 | Purchase Agreement between Fairchild Semiconductor Corp. and Rochester Electronics Inc. | ROCH000001-ROCH0000012 | | Kelley, Arthur | | | F4 |
| DX-0275 | Purchase Agreement between Fairchild Semiconductor Corp. and Rochester Electronics Inc. | ROCH000001-ROCH0000012 | | Wiles, Robert | | 12/28/2005 | F4 |
| DX-0276 | Rochester Inventory report of part numbers (NATIVE) | ROCH000013 | | Kelley, Arthur | | | F4 |
| DX-0277 | Rochester Inventory report of part numbers | ROCH000013 | | Wiles, Robert | | | F4 |
| DX-0278 | Rochester Sales spreadsheet by product (NATIVE) | ROCH000014 | | Kelley, Arthur | | | F4 |
| DX-0279 | Rochester Sales spreadsheet by product | ROCH000014 | | Wiles, Robert | | | F4 |
| DX-0280 | Rochester Spreadsheet 'FCS Inventory PI Final' | ROCH0000015 | | Kelley, Arthur | | | F4 |
| DX-0281 | Astec document production in response to subpoena | ASTEC000003 | | Kelley, Arthur | | | F4 |
| DX-0282 | Astec Declaration re document production in response to subpoena | ASTEC000004-8 | | | | | F4 |
| DX-0283 | Jabil document production in response to subpoena | JABIL73 | | Kelley, Arthur | | | F4 |
| DX-0284 | FSB127AH Datasheet (April 2014) | | | Kelley, Arthur | | | |
| DX-0285 | Fairchildsemi.com whitepaper - Deep Burst Mode Operation with Feedback Impedance Modulation for Reducing Standby Power Consumption of Switched-Mode Power Supplies | | | Kelley, Arthur | | | |
| DX-0286 | Fairchildsemi.com - Evaluation Boards / Design Kits page | | | Kelley, Arthur | | | |
| DX-0287 | Fairchildsemi.com - FAN6300A PDF Datasheet Highly Integrated Quasi-Resonant Current Mode PWM Controller | | | Kelley, Arthur | | | |
| DX-0288 | Fairchildsemi.com - FAN6300A Product Availability Screenshot | | | Kelley, Arthur | | | |
| DX-0289 | Digikey.com - FAN6300AMY Product Page | | | Kelley, Arthur | | | |
| DX-0290 | Fairchildsemi.com - FEBFAN6756 PDF Datasheet Evaluation Board Featuring the FAN6756 | | | Kelley, Arthur | | | |
| DX-0291 | Mouser.com - FEBFAN6754WAMR_CP450V1 Product Page | | | Kelley, Arthur | | | |
| DX-0292 | Mouser.com - FEBFAN6756MR_T03U065A Product Page | | | Kelley, Arthur | | | |
| DX-0293 | Fairchildsemi.com - FEBFAN6756MR_T03U065A Eval Board User Guide | | | Kelley, Arthur | | | |
| DX-0294 | Fairchildsemi.com - FSB137HL PDF Datasheet Green-Mode Fairchild Power Switch (FPS™) | | | Kelley, Arthur | | | |
| DX-0295 | Fairchildsemi.com - FSB137HLN Orderable Parts Page | | | Kelley, Arthur | | | |
| DX-0296 | Fairchildsemi.com - FSQ0170RNA PDF Datasheet SMPS Power switch | | | Kelley, Arthur | | | |
| DX-0297 | Fairchildsemi.com - FSQ170RNA Orderable Parts page | | | Kelley, Arthur | | | |
| DX-0298 | Fairchildsemi.com - FSQ170RNA Product Availability page | | | Kelley, Arthur | | | |
| DX-0299 | Digikey.com - FSQ0170RNA-ND  Product Page | | | Kelley, Arthur | | | |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0300 | Fairchildsemi.com - FSQ510 PDF Datasheet SMPS Power Switch(QRC) | | | Kelley, Arthur | | | |
| DX-0301 | Fairchildsemi.com - FSQ510 Product Availability page | | | Kelley, Arthur | | | |
| DX-0302 | Digikey.com - FSQ510 Product Page | | | Kelley, Arthur | | | |
| DX-0303 | Fairchildsemi.com - FSQ510 Orderable Parts Page | | | Kelley, Arthur | | | |
| DX-0304 | Fairchildsemi.com - RD-FAN6756 | | | Kelley, Arthur | | | |
| DX-0305 | Fairchildsemi.com - Reference Design Page | | | Kelley, Arthur | | | |
| DX-0306 | Fairchildsemi.com - home page | | | Kelley, Arthur | | | |
| DX-0307 | Fairchildsemi.com - Application Notes Family Page | | | Kelley, Arthur | | | |
| DX-0308 | Fairchildsemi.com - AN-6756 | | | Kelley, Arthur | | | |
| DX-0309 | Document Entitled: Field Test With FSD210 | FCS0273256-267 | | Robinson, Mark | | | |
| DX-0310 | Document Entitled: Weltrend Semiconductor, Inc., HP1005W(A) PC Power Supply Supervisor Data Sheet Rev. 1 | FCS0340719-730 | | Robinson, Mark | | 6/23/2000 | |
| DX-0311 | Document Entitled: Fairchild Power Switch - Sep, 2004 - Power Conversion | FCS0389879-390320 | | Robinson, Mark | | Sep-04 | F1 |
| DX-0312 | FSDM07652R Fairchild Power Switch (FPS) Preliminary Specification Rev. 0.9.0 | FCS0398880-886 | | Robinson, Mark | | 2002 | |
| DX-0313 | Document Entitled: PDD Analog Green FPS & PWM Motor IC - Y.I Yoo - PD Analog Team | FCS0468433-449 | | Robinson, Mark | | | F1 |
| DX-0314 | Document Entitled: Development Plan for GFPS Product - 2005. 01 - Process Development | FCS0468450-470 | | Robinson, Mark | | Jan-05 | F1 |
| DX-0315 | Document Entitled: The Global Market for Power Supply and Power Management Integrated Circuits, Fourth Edition - Volume 1: Market Analysis  - December 2003 | FCS0481038-255 | | Robinson, Mark | | 1-Dec | |
| DX-0316 | Document Entitled: PD Analog Business Review - March. 10th, 2003 - Y.I Yoo - PD Analog Team | FCS0507189-223 | | Robinson, Mark | | 3/10/2003 | F1 |
| DX-0317 | Document Entitled: FPS Solution for Charger/Adapter (Internal Only) | FCS0513771-789 | | Robinson, Mark | | | F1 |
| DX-0318 | Deutche Bank Article Entitled: *Power Integrations - All Charged Up* January 5, 2005 | FCS0520731-768 | | Robinson, Mark | | 1/5/2005 | F1 |
| DX-0319 | Document Entitled: Power Conversion Biz. Review - January 12th, 2004 - Power Conversion | FCS0608236-287 | | Robinson, Mark | | 1/12/2004 | F1 |
| DX-0320 | Document Entitled: PDD Analog - FY03 Q2 QBR (Jul.2003) Charlie. Lee | FCS0610280-337 | | Robinson, Mark | | Jul-03 | F1 |
| DX-0321 | Document Entitled: Strategic Business Plan - Power Conversion - HK Kim | FCS0613756-789 | | Robinson, Mark | | Oct-03 | F1 |
| DX-0322 | E-mail from Seunghwan Lee to SooYoung Lee and Others dated 12/17/2003 forwarding a letter from Enrique Rodriguez at Fairchild and a document entitled "HC3652X-FPS Fairchild Power Switch for PC Aux. Power Supply use Product Development Project Business Case PROD-2003-0421 Rev. 1. 0" | FCS0673656-671 | | Robinson, Mark | | 12/17/2003 | F1 |
| DX-0323 | Document Entitled: PDD Analog Strategic Direction for Q4 2003' September 2003 PDD Analog | FCS0674491-505 | | Robinson, Mark | | Sep-03 | F1 |
| DX-0324 | Document Entitled: Product Strategy Fairchild Power Switch Aug 2001 PDD Analog FPS Marketing | FCS1097612-29 | | Robinson, Mark | | | F1 |
| DX-0325 | Document Entitled: Green FPS - Fairchild Power Switch (FPS) for Switch Mode Power Supplies Sales Training - April 2004 | FCS1104208-253 | | Robinson, Mark | | Apr-04 | F1 |
| DX-0326 | Patent License Agreement between Agere Systems Inc. and Fairchild Semiconductor Corporation Effective September 19, 2002 Relating to Silicon Semiconductor Manufacturing Inventions and Silicon Semiconductor Devices | FCS1350193-207 | | Robinson, Mark | | 9/19/2002 | |
| DX-0327 | License Agreement between IBM and Fairchild dated July 13, 2000 | FCS1350208-227 | | Robinson, Mark | | 7/13/2000 | |
| DX-0328 | Untitled Fairchild Spreadsheet re Products | FCS1681735-741 | | Robinson, Mark | 4 | | F1 |
| DX-0329 | Intellectual Property Assignment and License Agreement between Internsil Corporation and Fairchild dated March 16, 2001 | FCS1686041-115 | | Robinson, Mark | | 3/16/2001 | |
| DX-0330 | Fairchild spreadsheet Entitled: Accused Products Sales Information 12-11-05 (NATIVE) | FCS1688278-322 (CD) | | Robinson, Mark | | | |
| DX-0331 | Fairchild Spreadsheet Entitled: Revenue & SM% FCST vs. ACT (NATIVE) | FCS1688278-322 (CD) | | Robinson, Mark | | | |
| DX-0332 | Fairchild Spreadsheet Entitled: Green FPS 05 Proforma P&L  (NATIVE) | FCS1688278-322 (CD) | | Robinson, Mark | | | |
| DX-0333 | Fairchild / Samsung IP license Agreement | FCS1689452-462 | | Robinson, Mark | | 4/13/1999 | |
| DX-0334 | Fairchild / IBM license Agreement | FCS1689463-484 | | Robinson, Mark | | 12/27/2005 | |
| DX-0335 | Fairchild / National Semiconductor  Technology Licensing and Transfer Agreement | FSG02144160-82 | | Robinson, Mark | | 3/11/1997 | |
| DX-0336 | Amendment No. 1 to Fairchild / National Semiconductor  Technology Licensing and Transfer Agreement | FSG02144179-182 | | Robinson, Mark | | 4/1/2004 | |
| DX-0337 | Fairchild / Raytheon Acquisition Agreement | FSG02144183-200 | | Robinson, Mark | | 12/29/1997 | |
| DX-0338 | CD containing FCS updated sales data (NATIVE) | FSG02220489.xls | | Robinson, Mark | | | |
| DX-0339 | Intellectual Property License Agreement between Micro Linear Corporation and Fairchild Semiconductor Corporation | FSGIV00008024-122 | | Robinson, Mark | | | |
| DX-0340 | Document Entitled: AC/DC Power IC Market Overview By Kenny Chan | FSGIV00045228-254 | | Robinson, Mark | | 7/20/2010 | |
| DX-0341 | Document Entitled: Power Conversion 2010 SBP | FSGIV00081809-898 | | Robinson, Mark | | | |
| DX-0342 | Email from KE Hong re: Visit Foxlink H.K...by Aeco Henry | FSGIV00092716-731 | | Robinson, Mark | | 8/29/2011 | |
| DX-0342.1 | Email from KE Hong re: Visit Foxlink H.K...by Aeco Henry | FSGIV00092716-731 | | Robinson, Mark | | 8/29/2011 | F4 |
| DX-0343 | Document Entitled: Power Conversion 2011 SBP | FSGIV00092775-847 | | Robinson, Mark | | 6/27/2011 | |
| DX-0344 | Document Entitled: Communication Meeting - Presented by Gary Lin | FSGIV00101003-057 | | Robinson, Mark | | 3/5/2010 | |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0345 | Native Spreadsheet Entitled: omparison table_10P05_rev1.xlsx | FSGIV00126817 | | Robinson, Mark | | | |
| DX-0346 | Document Entitled: Bi-weekly (PSR/Adaptor) (Jan/20/2012) Power Conversion - KE Hong | FSGIV00132426-438 | | Robinson, Mark | | 1/20/2012 | F4 |
| DX-0347 | Fairchild Sales Spreadsheet Entitled: 'Sales Force Summary' (NATIVE) | FSGIV00147053 | | Robinson, Mark | | | F4 |
| DX-0348 | License Agreement between IBM and Fairchild Semiconductor Corp. | FSGIV00147099-119 | | Robinson, Mark | | 6/23/2009 | |
| DX-0349 | License Agreement between IBM and Fairchild Semiconductor Corp. | FSGIV00147120-FSGIV00147142 | | Robinson, Mark | | 12/27/2005 | |
| DX-0350 | Settlement and Patent Cross License Agreement between Infineon Technologies AG and Fairchild Semiconductor Int'l | FSGIV00147143-FSGIV00147175 | | Robinson, Mark | | | |
| DX-0351 | Fairchild Sales Spreadsheet Entitled: 'FSC_IV_Products'- (NATIVE) | FSGIV00165741 | | Robinson, Mark | | | F4 |
| DX-0352 | Fairchild Sales Spreadsheet Entitled: 'Opp Attachment 2&3' (NATIVE) | FSGIV00165742 | | Robinson, Mark | | | F4 |
| DX-0353 | License and Development Agreement between Fairchild Semiconductor Corp. and Champion Microelectronic Corp. | FSGIV00173599-FSGIV00173618 | | Robinson, Mark | | | F4 |
| DX-0354 | Fairchild Sales Spreadsheet Entitled: 'Fairchild IV Accused Products Spreadsheet' (NATIVE) | FSGIV00173619 | | Robinson, Mark | | | F4 |
| DX-0355 | Avnet Agreement with Fairchild | FSGIV00202634-660 | | Robinson, Mark | | 1/1/2006 | |
| DX-0356 | AV Concept Agreement with Fairchild | FSGIV00202661-680 | | Robinson, Mark | | 12/24/2010 | |
| DX-0357 | AV Concept Singapore Agreement with Fairchild | FSGIV00202681-700 | | Robinson, Mark | | | |
| DX-0358 | 2nd Amendment to Future Electronics & Fairchild Semiconductor Corp Worldwide Distributor Agreement | FSGIV00202701-702 | | Robinson, Mark | | 1/28/2000 | |
| DX-0359 | SPT Technology Agreement with Fairchild | FSGIV00202703 -722 | | Robinson, Mark | | 2/1/2011 | |
| DX-0360 | WPG Electronics (South Asia) PTE Ltd. Agreement with Fairchild | FSGIV00202723-742 | | Robinson, Mark | | 12/27/2010 | |
| DX-0361 | World Peace Industrial Co., Agreement with Fairchild | FSGIV00202743-763 | | Robinson, Mark | | 12/27/2010 | |
| DX-0362 | WT Microelectronics Agreement with Fairchild | FSGIV00202764-786 | | Robinson, Mark | | 12/27/2010 | |
| DX-0363 | Yosun Singapore PTE Ltd., Agreement with Fairchild | FSGIV00202787 -806 | | Robinson, Mark | | 12/27/2010 | |
| DX-0364 | Yosun Industrial Corp. Agreement with Fairchild | FSGIV00202807-827 | | Robinson, Mark | | 12/27/2010 | |
| DX-0365 | Element14 PTE Ltd., Catalog Supplier Agreement with Fairchild | FSGIV00202828 -839 | | Robinson, Mark | | 9/28/2011 | |
| DX-0366 | Micro Linear Corp. Asset Purchase Agreeement with Fairchild | FSGIV00206366-404 | | Robinson, Mark | | 9/6/2000 | |
| DX-0367 | Schedule 1.1(a) - Contracts - to Micro Linear Agreement with Fairchild | FSGIV00206430-505 | | Robinson, Mark | | 4/28/2000 | |
| DX-0368 | Fairchild Sales Spreadsheet Entitled: 'Fairchild IV Practicing Products spreadsheet 4.4.13' (NATIVE) | FSGIV00206534 | | Robinson, Mark | | 4/4/2013 | F4 |
| DX-0369 | Fairchild Sales Spreadsheet | FSGIV00209806 | | Robinson, Mark | | | |
| DX-0370 | Fairchild Sales Spreadsheet | FSGIV00209811 | | Robinson, Mark | | | |
| DX-0371 | Fairchild Sales Spreadsheet | FSGIV00210147 | | Robinson, Mark | | | |
| DX-0372 | Fairchild Sales Spreadsheet | FSGIV00212973 | | Robinson, Mark | | | |
| DX-0373 | Fairchild Accused Product Spreadsheet (NATIVE) | FSGV3504739 | | Robinson, Mark | | | |
| DX-0374 | Fairchild Sales Spreadsheet (NATIVE) | FSGV3558476 | | Robinson, Mark | | | |
| DX-0375 | PI POSC data 2001-Sept. 2005 | PIF 0095910-PIF 0125226 | | Robinson, Mark | | | |
| DX-0376 | PI POSC data Q4 2005 | PIFIV0497892 | | Robinson, Mark | | | |
| DX-0377 | PI POSC data 2006- Q1 2008 | PIB 013499 | | Robinson, Mark | | | |
| DX-0378 | PI 2008 POSC data, phone sales through 2008 (4 spreadsheets) | PIF203506 (CD PIF003) | | Robinson, Mark | | | |
| DX-0379 | PI POS data Q1-Q2 2009 | PIF219036 (CD PIF007) | | Robinson, Mark | | | |
| DX-0380 | PI POS data Q3 2009 | PIF748354 (CD PIF046) | | Robinson, Mark | | | |
| DX-0381 | PI POS data Q4 2009 | PIF2291682 (CD PIF130) | | Robinson, Mark | | | |
| DX-0382 | PI POSC 2010 H1 | PIF6_0001388 | | Robinson, Mark | | | |
| DX-0383 | PI POSC 2010 H2 | PIF6_0001389 | | Robinson, Mark | | | |
| DX-0384 | PI POSC 2011 H1 | PIF6_0001390 | | Robinson, Mark | | | |
| DX-0385 | PI POSC 2011 H2 | PIF6_0001391 | | Robinson, Mark | | | |
| DX-0386 | PI POSC 2012 H1 | PIF6_0001392 | | Robinson, Mark | | | |
| DX-0387 | PI POSC 2012 Q3 | PIF6_0001393 | | Robinson, Mark | | | |
| DX-0388 | PI POSC 2012 Q4 | PIFIV0497829 | | Robinson, Mark | | | |
| DX-0389 | PI POSC 2013 Q1 | PIFIV0497830 | | Robinson, Mark | | | |
| DX-0390 | PI POSC 2013 Q1 – May 2013 | PIFIV0497843 | | Robinson, Mark | | | |
| DX-0391 | PI POSC 2013 June thru Q3 | PIF6 0843542 | | Robinson, Mark | | | |
| DX-0392 | All Ops rpt Oct 1 2013 | PIF6 0843543 | | Robinson, Mark | | | |
| DX-0393 | PI POS data Q4 2013 | PIF6 0876655 | | Robinson, Mark | | | |
| DX-0394 | PI POS data Q1 Q2 2014 | PIF6 0876656 | | Robinson, Mark | | | |
| DX-0395 | Fairchild 2003 10-k Report | | | SEC Filings | | | |
| DX-0396 | Fairchild 2004 10-k Report | | | SEC Filings | | | |
| DX-0397 | Fairchild 2005 10-k Report | | | SEC Filings | | | |
| DX-0398 | Fairchild 2006 10-k Report | | | SEC Filings | | | |
| DX-0399 | Fairchild 2007 10-k Report | | | SEC Filings | | | |
| DX-0400 | Fairchild 2008 10-k Report | | | SEC Filings | | | |
| DX-0401 | Fairchild 2009 10-k Report | | | SEC Filings | | | |
| DX-0402 | Fairchild 2010 10-k Report | | | SEC Filings | | | |
| DX-0403 | Fairchild 2011 10-k Report | | | SEC Filings | | | |
| DX-0404 | Fairchild 2012 10-k Report | | | SEC Filings | | | |
| DX-0405 | Fairchild 2013 10-k Report | | | SEC Filings | | | |
| DX-0406 | Fairchild 2014 10-k Report | | | SEC Filings | | | |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0407 | POWI 2010 10-k Report | | | SEC Filings | | | |
| DX-0408 | POWI 2011 10-k Report | | | SEC Filings | | | |
| DX-0409 | POWI 2012 10-k Report | | | SEC Filings | | | |
| DX-0410 | POWI 2013 10-k Report | | | SEC Filings | | | |
| DX-0411 | POWI 2014 10-k Report | | | SEC Filings | | | |
| DX-0412 | PIF 203506_1.000001 Spreadsheet | PIF 203506_1.000001 | | Robinson, Mark | | | |
| DX-0413 | Spreadsheet - SG6841 vs TOP246Y Design | PI 0055657 | PI 0055659 | Robinson, Mark | | | |
| DX-0414 | Spreadsheet - SPI TOP256F vs SG6842 for Samsung LCD Monitor (2004 Model) | PI 0055684 | PI 0055692 | Robinson, Mark | | | |
| DX-0415 | CAPZero OTS "X-Cap Discharge IC" - June 2009 Rev. C | PIF6 0566415 | PIF6 0566440 | Robinson, Mark | | Jun-09 | |
| DX-0416 | Amtran 60W LCD Monitor LIPS Power Supply | PI 0095703 | PI 0095725 | Robinson, Mark | | | |
| DX-0417 | BOM Comparison - TOP247Y v SG6841 | PI 0190442-46 | | Robinson, Mark | | | |
| DX-0418 | LinkSwitch-CV - Redcude Complexity and Improve Reliability in Accurate CV Power Supply, August 2008 | PIB 214001 | PIB 214020 | Robinson, Mark | | Aug-08 | |
| DX-0419 | Power Integrations Valuation of Patents as of December 22, 2004 - Financial Strategies Consulting Group, LLC | PIF55013-37 | | Robinson, Mark | | 12/22/2004 | |
| DX-0420 | OKI Electric  Amendment No. 1 to Licensing and Wafer Supply Agreement with Power Integrations | PIF22624-37 | | Robinson, Mark | | 9/21/1995 | |
| DX-0421 | Licensing and Wafer Supply Agreement between OKI Electric Industry Company and Power Integrations, Inc., June 1993 | PIF 022638 | PIF 022667 | Robinson, Mark | | Jun-93 | |
| DX-0422 | License Agreement between Magnetek Inc. and Power Integrations, Inc. | PIF 023494 | PIF 023501 | Robinson, Mark | | 12/22/2004 | |
| DX-0423 | License Agreement between Magnetek Inc. and Power Integrations Inc. | PIF 023502 | PIF 023506 | Robinson, Mark | | 12/22/2004 | |
| DX-0424 | Magnetek Inc. and Power Integrations Inc. Development  License Agreement | PIF 023511 | PIF 023546 | Robinson, Mark | | 2/19/1993 | |
| DX-0425 | Magnetek Inc. and Power Integrations Inc. Development Termination Agreement | PIF 023562-66 | | Robinson, Mark | | 12/22/2004 | |
| DX-0426 | Technology License Agreement between Power Integrations Inc. and Matsushita Electronics Corporation | PIF 023640 | PIF 023664 | Robinson, Mark | | 6/29/2000 | |
| DX-0427 | Patent License Agreement between AT&T and Power Integrations Inc. | PIF 023708 | PIF 023720 | Robinson, Mark | | Jun-92 | |
| DX-0428 | Document Entitled: Competition Review v1.70 | PIF39342 – 440 | | Robinson, Mark | | | F1 |
| DX-0429 | ITC Transcript of testimony of Mr. Atkins taken January 20, 2006 | PIF51486-92 | | Robinson, Mark | | 1/20/2006 | ITC |
| DX-0430 | Weekly Sales Report | PIF 87821-36 | | Robinson, Mark | | 10/22/2004 | F1 |
| DX-0431 | Weekly Sales Report | PIF 88046-PIF 88058 | | Robinson, Mark | | 2/20/2004 | F1 |
| DX-0432 | Weekly Sales Report | PIF 88093-104 | | Robinson, Mark | | 3/5/2004 | F1 |
| DX-0433 | Press Release, "Power Integrations Introduces the Highest Level of System Integration with TOPSwitch-FX® Power Conversion ICs" | PIF131300 | | | | 3/20/2000 | F2 |
| DX-0434 | Press Release, "First Monolithic High-Voltage Power Conversion IC Family to Deliver Up to 250 Watts" | PIF131300 | | | | 11/20/2000 | F2 |
| DX-0435 | Press Release, "Power Integrations Selected as Finalist in 1999 Discover Awards for Technological Innovation" | PIF131300 | | | | 4/29/1999 | F2 |
| DX-0436 | Press Release, "Power Integrations Gives 'Vampire' Demonstration to President George W. Bush" | PIF131300 | | | | 6/28/2001 | F2 |
| DX-0437 | Updated Fairchild Sales Data through 2014 | FSGIV0219782 | | | | | F4 |
| DX-0438 | Intellectual Property Indemnity Agreement between Astec Int'l Ltd and System General Corp. | SG0225084 | | | | | |
| DX-0438.1 | Intellectual Property Indemnity Agreement between Astec Int'l Ltd and System General Corp. | SG0225084 | | Lin, Gary | 9 | 7/2/2004 | F4 |
| DX-0439 | Exclusive License Agreement between Qspeed Semiconductor, Inc. and Power Integrations, Inc. | PIF 2280625 | PIF 2280640 | Robinson, Mark | | 5/19/2009 | F1 |
| DX-0440 | Technology License Agreement between Power Integrations, Inc. and Oki Electric Industry Co., Ltd. | PIF 2280802 | PIF 2280814 | Robinson, Mark | | 8/11/2004 | |
| DX-0441 | Email chain from Robert Mayell to Mike Matthews, Roland Saint Pierre regarding Message from an Unidentified Caller | PIFIV0002017 | | Robinson, Mark | | 7/5/2012 | |
| DX-0442 | Power Integrations, Q1 Marketing Update, Board of Directors Meeting, by Douglas Biley | PIFIV0002192 | PIFIV0002205 | Robinson, Mark | | 5/7/2012 | |
| DX-0443 | Power Integrations, GEO Update, Anericas, by Stuart Hodge | PIFIV0002831 | PIFIV0002843 | Robinson, Mark | | 7/19/2012 | |
| DX-0444 | Power Integrations presentation TOPSwitch-FX - Cell Phone Charger utilising a TOP232 - A special Case Example: Motorola Mini-RAE Fast charger | PIFIV0003576-83 | | Robinson, Mark | | | |
| DX-0445 | OTS - Project Code Name Omni Switch Summary and Features, Rev. B | PIFIV0008573 | PIFIV0008611 | Robinson, Mark | 15 | 12/26/2012 | F6 |
| DX-0446 | Power Integrations, LYTSwitch-3 non-isolated LED drivers: kickoff presentation | PIFIV0009583 | PIFIV0009599 | | | 1/31/2013 | |
| DX-0447 | E-mail to Mr. Balakrishnan, Mr. Bailey, Mr. Sutherland and Mr. Loch re Conference call with Salcomp Salo | PIFIV0013780 | PIFIV0013781 | Robinson, Mark | 11 | 9/11/2012 | F6 |
| DX-0448 | Renesas Business Review, Thrid Quarter, 2011 - Japan | PIFIV019460-83 | | Robinson, Mark | | 11/16/2011 | |
| DX-0449 | E-mail from John Tomlin re: Sales weekly report as of April 9, 2012 - Depressed wires | PIFIV0022077-PIFIV0022081 | | Robinson, Mark | 8 | | F6 |
| DX-0450 | Email thread between B. Balakrishnan and D. Bailey re Visit at Apple discussing iPhone adapter' | PIFIV0049960 | PIFIV0049960 | Robinson, Mark | 14 | 2/6/2009 | F6 |
| DX-0451 | Emails between B. Sutherland and M. Matthews re Fairchild claiming new cell phone design win | PIFIV0058835 | PIFIV0058839 | Robinson, Mark | 5 | 9/22/2011 | F6 |
| DX-0452 | Emails between B. Sutherland and M. Matthews re Meeting Minutes Phihong Mar. 15, 2012 | PIFIV0060114 | PIFIV0060117 | Robinson, Mark | 7 | 3/16/2012 | F6 |
| DX-0453 | Emails between B. Sutherland and M. Jones re Meeting Notes with Emerson Phils Mar. 26, 2012 | PIFIV0060185 | PIFIV0060186 | Robinson, Mark | 8 | 3/26/2012 | F6 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0454 | Gartner Market Share Analysis: Mobile Devices, Worldwide 2Q12 | PIFIV0073948-PIFIV0073958 | | Robinson, Mark | | 8/13/2012 | |
| DX-0455 | Gartner PCs 2Q12 | PIFIV0073959-PIFIV0073959 | | Robinson, Mark | | | |
| DX-0456 | Global Mobile Handsets 2012 | PIFIV0076214-PIFIV0076227 | | Robinson, Mark | | 1/16/2012 | |
| DX-0457 | Gartner Cell Phones 1Q12 | PIFIV0076923-PIFIV0076923 | | Robinson, Mark | | Dec-12 | |
| DX-0458 | Gartner PCs 2010 | PIFIV0076924-PIFIV0076924 | | Robinson, Mark | | | |
| DX-0459 | IMS Research 2010 WW Mkt | PIFIV0078874-PIFIV0078994 | | Robinson, Mark | | 5/14/2010 | |
| DX-0460 | Gartner forecasts 1Q12x | PIFIV0078996-PIFIV0078996 | | Robinson, Mark | | | |
| DX-0461 | Gartner mobile devices by market | PIFIV0078997-PIFIV0078997 | | Robinson, Mark | | | |
| DX-0462 | Gartner 4Q12 Prelim PC Report | PIFIV0078998-PIFIV0079009 | | Robinson, Mark | | | |
| DX-0463 | Gartner 4Q12 Printers | PIFIV0079074-PIFIV0079074 | | Robinson, Mark | | | |
| DX-0464 | Gartner 3Q11 PC | PIFIV0085864-PIFIV0085864 | | Robinson, Mark | | | |
| DX-0465 | Gartner PC 1Q12 | PIFIV0085865-PIFIV0085865 | | Robinson, Mark | | | |
| DX-0466 | Gartner PC 2Q12 | PIFIV0085866-PIFIV0085866 | | Robinson, Mark | | | |
| DX-0467 | Merrill Lynch 1Q12 IDC PC | PIFIV0089730-PIFIV0089736 | | Robinson, Mark | | | |
| DX-0468 | Gartner Set Top Boxes 2011 | PIFIV0091796-PIFIV0091806 | | Robinson, Mark | | | |
| DX-0469 | Power Integrations, Product Concept / OTS / Project Code Name: "LinkSwitch-II", Revision G | PIFIV0114142 | PIFIV0114185 | Robinson, Mark | | 2/23/2009 | |
| DX-0470 | LinkSwitch-II ED China | PIFIV0116334 | PIFIV0116335 | Robinson, Mark | | | |
| DX-0471 | PI Presentation: Solutions For Low No-Load Applications | PIFIV0124831-60 | | Robinson, Mark | | May-09 | |
| DX-0472 | Power Integrations Long Term Plan, July 2009 Update | PIFIV0129804-PIFIV0129830 | | Robinson, Mark | 15 | Jul-09 | F4 |
| DX-0473 | TOPSwitch-JX Product Concept / OTS Rev. C | PIFIV0134955-972 | | Robinson, Mark | | Sep-09 | |
| DX-0474 | PI Presentation: Competition Review AC/DC Power Supplies v3.0 | PIFIV0136601 | | Robinson, Mark | | Sep-09 | |
| DX-0475 | Product Concept/OTS TOPSwitch-HX Rev. G - Marketing Report | PIFIV0144358-415 | | Robinson, Mark | | 6/16/2008 | |
| DX-0476 | Emails between J. Harrington and S. Fimiani re Apple Sw presentation | PIFIV0167620 | PIFIV0167622 | Robinson, Mark | 3 | 4/22/2010 | F6 |
| DX-0477 | POWI's Marketing Strategy Report 2011 | PIFIV0191185 | PIFIV0191231 | Robinson, Mark | 4 | | F6 |
| DX-0478 | PI Spreadsheet re Lost Revenue | PIFIV0314806 | | Robinson, Mark | | | |
| DX-0479 | Identified Lost Business April to September 2003 by Competitor | PIFIV0314807 | | Robinson, Mark | | | F4 |
| DX-0480 | Competition Review AC/DC Power Supplies V2.15 | PIFIV0426057-170 | | Robinson, Mark | | | |
| DX-0481 | MOAS Mar 5 2013 | PIFIV0429485 | | Robinson, Mark | | 5/5/2013 | |
| DX-0482 | Marketing Metrics 2013 | PIFIV0429486-PIFIV0429575 | | Robinson, Mark | | | |
| DX-0483 | Piper Jaffray, Company Note on Power Integrations, Inc. | PIFIV0462111 | PIFIV0462115 | Robinson, Mark | | 9/19/2011 | |
| DX-0484 | Email from Ying Ye to Eric Verity regarding 'StdCost 200802011.xlsx' | PIFIV0473007 | | Robinson, Mark | | 1/8/2013 | |
| DX-0485 | Native Spreadsheet "StdCost 2008-2011.xlsx" | PIFIV0473008 | | Robinson, Mark | | | |
| DX-0486 | POWI Historical Financials Q 1 2013 | PIFIV0497645 | | Robinson, Mark | | | |
| DX-0487 | Spread Sheet - Revenue Details for 2009-2011 | PIFIV0497780 | | Robinson, Mark | 9 | | F6 |
| DX-0488 | Native spreadsheet "2010-Q4 Gross Margin Analysis Q410_For Deloitte.xls" | PIFIV0497813 | | Robinson, Mark | | | |
| DX-0489 | Native spreadsheet "2011-Q1 Gross Margin Analysis Q1 2011_For Deloitte.xls" | PIFIV0497814 | | Robinson, Mark | | | |
| DX-0490 | Native spreadsheet "2011-Q2 Gross Margin Analysis Q2 2011_For Deloitte.xls" | PIFIV0497815 | | Robinson, Mark | | | |
| DX-0491 | Native spreadsheet "2011-Q3 Gross Margin Analysis Q3 2011_For Deloitte.xls" | PIFIV0497816 | | Robinson, Mark | | | |
| DX-0492 | Native spreadsheet "2011-Q4 Gross Margin Analysis Q4 2011_For Deloitte.xls.xlsx" | PIFIV0497817 | | Robinson, Mark | | | |
| DX-0493 | Native spreadsheet "2012-Q1 K1 K2 - GM Analytic_Q1 2012_For Deloitte.xlsx" | PIFIV0497818 | | Robinson, Mark | | | |
| DX-0494 | Native spreadsheet "2012-Q2 Revenue and Gross Margin Analysis_Excluding Concept_Q2 2012_For Deloitte.xlsx" | PIFIV0497819 | | Robinson, Mark | | | |
| DX-0495 | Native spreadsheet "2012-Q3 Revenue and GM flux for Deloitte.xlsx" | PIFIV0497820 | | Robinson, Mark | | | |
| DX-0496 | Native spreadsheet "2012-Q4 N5 Revenue and GM flux for Deloitte_Q4 2012.xlsx" | PIFIV0497821 | | Robinson, Mark | | | |
| DX-0497 | Email chain from Richard Chung to Jason Gao, Brian Johnson, Yaxiao Qin regarding PI's Web Course for a Family of FL7731 Type Devices | FSGV0185318 | FSGV0185319 | Lee, James | 5 | 11/13/2010 | F6 |
| DX-0498 | Document Entitled: Top 5 Project Review - Power Conversion Korea | FSGV0254675 | FSGV0254701 | | | 8/4/2011 | |
| DX-0499 | LinkSwitch-LP (LNK562-564) Link-LP Schematics | PIB 013802-20 | | | | | |
| DX-0500 | LinkZero-LP Schematics | PIF6 0549300-17 | | | | | |
| DX-0501 | LinkSwitch-LP (LNK562-564) Link-LP Datasheet - Oct 2005 | PIF 331621-636 | | | | | |
| DX-0501.1 | LNK562-564 Datasheet, October 2005 | | | Yang, Ta-Yung | 48 | 12/13/2013 | F6 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0502 | TinySwitch-PK (TNY375-380) Family Datasheet | PIFIV0129754-775 | | | | | |
| DX-0503 | TinySwitch-II TNY263-268 datasheet | PIF 876292-315 | | | | | |
| DX-0504 | TinySwitch TNY256 Schematic Diagrams | PIF78050 – 061 | | | | | |
| DX-0505 | LinkZero-AX schematics | PIF6 0549318-35 | | | | | |
| DX-0506 | LinkZero-AX Datasheet | PIF6 0590585-600 | | | | | |
| DX-0507 | LinkZero-AX LNK584-586 datasheet | PIF6 0567108-123 | | | | | |
| DX-0508 | LinkZero-LP LNK574 datasheet | PIF6 0590601-616 | | | | | |
| DX-0509 | CapZero Datasheet | PIF60590316-23 | | | | | |
| DX-0510 | CapZero Schematics | PIF6 0549296-99 | | | | | |
| DX-0511 | CapZero Application Note AN-48 | PIF6 0590324-31 | | | | | |
| DX-0512 | LNK500 LinkSwitch Family Datasheet - Nov 2002 | PIF 333721-740 | | | | | |
| DX-0513 | LNK501 LinkSwitch Family Datasheet - April 2003 | PIF 1092656-75 | | | | | |
| DX-0514 | Power Integrations website | PIF 131300 | | | | | |
| DX-0515 | LNK603-606/613-616 LinkSwitch-II Family Datasheet - Jan 2008 | PIB 013973-92 | | | | | |
| DX-0516 | LNK403-410/413-420 LinkSwitch-PH LED Driver IC Family Datasheet - May 2012 | PIF6 0000915-934 | | Kelley, Arthur | | | |
| DX-0516.1 | LNK403-414/413-420 LinkSwitch-PH LED Driver IC Family Datasheet, May 2012 | PIF6 0000915 | PIF6 0000934 | Collins, Edward | 14 | 1/7/2015 | F6 |
| DX-0516.2 | LNK403-414/413-420 LinkSwitch-PH LED Driver IC Family Datasheet, May 2012 | PIF6 0000915 | PIF6 0000934 | Weirich, Michael | 17 | 12/11/2013 | F6 |
| DX-0517 | LinkSwitch-PH RDR-193 | FSGV3561489-529 | | Kelley, Arthur | | | |
| DX-0518 | LinkSwitch-PH RDR-195 | FSGV3561530-569 | | Kelley, Arthur | | | |
| DX-0519 | LinkSwitch-II (LNK632DG) Datasheet | FSG01324336-345 | | Kelley, Arthur | | | |
| DX-0520 | Power Integrations 2008 Annual Report March 2008 | | | Kelley, Arthur | | | |
| DX-0521 | Power Integrations 2013 Annual Report March 2013 | | | Kelley, Arthur | | | |
| DX-0522 | Power Integrations Design Idea DI-186 LinkSwitch-II Sept 2008 | | | Kelley, Arthur | | | |
| DX-0523 | Power Integrations Design Example Report DER-318 | | | Kelley, Arthur | | 2/5/2013 | |
| DX-0524 | Power Integrations Design Example Report DER-340 | | | Kelley, Arthur | | 8/22/2012 | |
| DX-0525 | Power Integrations Design Example Report DER-341 | | | Kelley, Arthur | | 9/14/2012 | |
| DX-0526 | Power Integrations Design Example Report DER-344 | | | Kelley, Arthur | | 10/19/2012 | |
| DX-0527 | Power Integrations Design Example Report DER-356 | | | Kelley, Arthur | | 12/6/2012 | |
| DX-0528 | Power Integrations LinkSwitch-LP Datasheet (LNK562-564) Nov 2008 | | | Kelley, Arthur | | | |
| DX-0529 | Power Integrations LinkSwitch Family Datasheet (LNK500) Feb 2005 | | | Kelley, Arthur | | | |
| DX-0530 | Power Integrations Reference Design Report RDR-257 | | | Kelley, Arthur | | 1/6/2011 | |
| DX-0531 | Fairchild Reference Design RD-336 for PWM Controller | | | Kelley, Arthur | | | |
| DX-0532 | FAN102 2009 | | | Kelley, Arthur | | | |
| DX-0533 | Fairchild Reference Design L020H_FL7730 2012 | | | Kelley, Arthur | | | |
| DX-0534 | Fairchild Reference Design L020L_FL7730 2012 | | | Kelley, Arthur | | | |
| DX-0535 | Fairchild Reference Design L021L_FL7730 2013 | | | Kelley, Arthur | | | |
| DX-0536 | TinySwitch Plus (TNY256) Datasheet | PIF 203684-703 | | Kelley, Arthur | | | |
| DX-0537 | Fairchild FSDH321, FSDL321 Datasheet | PIF 2036081-100 | | Kelley, Arthur | | | |
| DX-0538 | Fairchild FL7730 Datasheet | FSGV0028445-457 | | Kelley, Arthur | | | |
| DX-0538.1 | Datasheet - FL7730MY - Single-State Primary-Side-Regulation PWM Controller or PFC and LED Dimmable Driving, October 2011 | FSGV0028445 | FSGV0028457 | Yang, Ta-Yung | 9 | 12/12/2013 | F6 |
| DX-0539 | Fairchild FAN102 Datasheet | FSGV3558027-042 | | Kelley, Arthur | | | |
| DX-0540 | POWI 2011 Investor Presentation | PIF2291918-2291949 | | | | Sep-11 | |
| DX-0541 | POWI 2014 Investor Presentation | | | | | Jul-14 | |
| DX-0542 | POWI 2015 Investor Presentation | | | | | | |
| DX-0543 | Collection of PI Weekly Reports 2008-2009 | PIF203197-203504 | | | | | |
| DX-0544 | 908 and '398 Invention Disclosure Form - Balakrishnan | PI0081634-45 | | | | | |
| DX-0545 | LinkZero Design Binders | PIF6 0548152 | PIF6 0549227 | | | | |
| DX-0546 | LinkSwitch-CV Application Note AN-45 Design Guide | PIF6 0549248-65 | | | | | |
| DX-0547 | LinkSwitch-CV Schematic for LNK623 | PIF 203017-49 | | | | | |
| DX-0548 | LinkSwitch-PH Application Note AN-49 | PIF6 0006536-53 | | | | | |
| DX-0549 | LinkSwitch-PL Application Note AN-50 | PIF6 0549284-95 | | | | | |
| DX-0550 | LinkSwitch-PL Datasheet | PIF6 0001212-31 | | | | | |
| DX-0551 | LinkSwitch-HP Schematics | PIF6 0001127-211 | | | | | |
| DX-0552 | LinkSwitch-HP Datasheet, August 2012 | PIF6 0001037 | PIF6 0001060 | | | | |
| DX-0552.1 | LinkSwitch-HP Datasheet, August 2012 | PIF6 0001037 | PIF6 0001060 | Weirich, Michael | 16 | 12/11/2013 | F6 |
| DX-0553 | LinkSwitch-CV Datasheet LNK623-626 Nov 2008 | PIF 884550-69 | | | | | |
| DX-0554 | LinkSwitch-II LNK632DG Datasheet Feb 2009 | PIF 230985-94 | | | | | |
| DX-0555 | LNK632 schematics | PIF203507-39 | | | | | |
| DX-0556 | LNK500 & LNK501 schematics | PIF203540-59 | | | | | |
| DX-0557 | Right of Appeal Notice from the United States Patent and Trademark Office during the Inter Partes Reexamination of Fairchild's asserted U.S. Patent No. 7,259,972 ("the '972 patent"), dated December 10, 2014. | | | | | | |
| DX-0558 | Printed version of the DataSheets page from Power Integrations' website on June 10, 2004, available via the InternetArchive at the following url: http://web.archive.org/web/20040610225107/http://www.powerint.com/datasheetsframe.htm | | | | | | |
| DX-0559 | FAN6756_BSMH Functional Test Report | FSGV0016679-725 | | | | | |
| DX-0560 | FAN6756_CMMH Functional Test Report | FSGV0016734-79 | | | | | |
| DX-0561 | FAN6756_DMMH Functional Test Report | FSGV0016817-77 | | | | | |
| DX-0562 | Fairchild Presentation: FAN6756 mWSaver PWM Controller for NB Adaptors | FSGV0016956-92 | | | | | |
| DX-0563 | Fairchild Presentation:  Flyback PWM IC Introduction | FSGV0016993-7017 | | | | | |
| DX-0564 | Fairchild Presentation: PwrConv Consumption Sales Analysis | FSGV0517373 | | | | Aug-09 | |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| | | FSGIV00086691 | | | | | |
| DX-0565 | Email from KE Hong dated 5/24/11 Re: SBP Alignment with European Region - please send the current versions of your SBP thanks | | | | | | |
| DX-0566 | Document Entitled: Power Conversion 2011 SBP | FSGIV00086693 | | | | | |
| DX-0567 | TNY253/254/255 TinSwitch Family Datasheet Feb 1999 | PI 179592-607 | | | | | |
| DX-0568 | LED Professional Review - July/Aug 2010 Issue | | | | | | |
| DX-0569 | U.S. Patent No. 6,226,190 | | | | | | |
| DX-0570 | U.S. Patent No. 7,764,520 | | | | | | |
| DX-0571 | U.S. Patent No. 8,098,506 | | | | | | |
| DX-0572 | U.S. Patent No. 8,537,582 | | | | | | |
| DX-0573 | Fairchild responses to Interrogatories Nos. 6, 8, 9, 13 | | | | | | F1 |
| DX-0574 | FSQ0365RN_EVT1_Q1 Schematics | FCS1700150 | FCS1700186 | | | | F1 |
| DX-0575 | FSQ0170RNA Schematics FSQ0270RNA Schematics FSQ0370RNA Schematics | FCS1700329 | FCS1700359 | | | | F1 |
| DX-0576 | FAN7602B Schematics | FCS1700219 | FCS1700277 | | | | F1 |
| DX-0577 | FSQ211 Schematics | FCS1700278 | FCS1700301 | | | | F1 |
| DX-0578 | FSQ100 Schematics | FCS1700302 | FCS1700328 | | | | F1 |
| DX-0579 | LNK603, LNK613 LinkSwitch-II schematics | PIB 013821 | PIB 013853 | | | | |
| DX-0580 | LinkSwitch-II Datasheet (LNK603-606) | PIFIV0156801-18 | | Kelley, Arthur | | | |
| DX-0581 | LinkSwitch-II Application Note-44 | PIF2184849 | PIF2184868 | | | | |
| DX-0582 | LNK-PH OTS Report | PIF6 0000935 | PIF6 0000998 | | | | |
| DX-0583 | LTY4 Schematic | PIF6 0876576 | PIF6 0876614 | | | | |
| DX-0584 | LTY4 Schematic | PIF6 0876615 | PIF6 0876653 | | | | |
| DX-0585 | LinkSwitch-PH Schematics | PIF6 0000999-1036 | | | | | |
| DX-0586 | LinkSwitch-PL Schematics | PIF6 0001300-69 | | | | | |
| DX-0587 | Avnet Abacus Newsletter - Focus - Issue Seven - Winter 2011 | PIF6 0876491-506 | | | | | |
| DX-0588 | Power Integrations Energy Efficient Awards | PIF6 0876507-535 | | | | | |
| DX-0589 | LYTSwitch-4 low-line family datasheet | PIF6 0876536-55 | | | | | |
| DX-0590 | LYTSwitch-4 high-line family datasheet | PIF6 0876556-75 | | Kelley, Arthur | | | |
| DX-0591 | Power Integrations Press Release dated January 22, 2003 'Power Integrations Receives Product of the Year Award from Electronic Products Magazine' | | | | F1 Trial Exhibit PX-699 | | |
| DX-0592 | Power Integrations Press Release dated July 31, 2001 'Power Integrations Receives Product of the Year Award from Electronic Products Magazine' | | | | F1 Trial Exhibit PX-700 | | |
| DX-0593 | Power Integrations Press Release dated March 9, 2004 'Power Integrations Awarded 'Product of the Year' in 'Green' Technology 'Best Power Supply Design' Award from analogZONE Recognizes Tool for Speedy Design of 'Green' Power Supplies | | | | F1 Trial Exhibit PX-698 | | |
| DX-0594 | Power Integrations Press Release dated July 11, 2001 'Power Integrations to be featured on 'Business Now' Television this weekend' | | | | F1 Trial Exhibit PX-701 | | |
| DX-0595 | Power Integrations Press Release dated April 29, 1999 'Power Integrations Selected as Finalist in 1999 Discover Awards for Technological Innovation' | | | | F1 Trial Exhibit PX-705 | | |
| DX-0596 | Springer, "Innovator's TinySwitch Nabs Environment Award," INDIA-WEST | PIF 20833-34 | | | F1 Trial Exhibit PX-706 | | |
| DX-0597 | "Electronics and IT Industry Leaders Meet to Share Technologies and Strategies for Improving Energy Efficiency in Power Supplies," Energy Star News Archive | PIF 62655 | | | F1 Trial Exhibit PX-707 | | |
| DX-0598 | 2009 Tech America Innovator Award | | | | F2 Trial Ex PX-045 | | |
| DX-0599 | Email from Dujari to Matthews re TOP233 beta site Plan with Pace | PI 0170880 | | | | | F6 |
| DX-0600 | E-mail from B. Balakrishnan to M. Matthews Re: Top-FX | PIEM 0258815 | PIEM 0258816 | | | | F6 |
| DX-0601 | E-mail from A. Squeri to M. Matthews Re: Updating | PIEM 0258817 | PIEM 0258817 | | | | F6 |
| DX-0602 | E-mail from M. Powell to M. Matthews Re: Pace Top-FX pricing | PIEM 0258818 | PIEM 0258819 | | | | F6 |
| DX-0603 | E-mail from S. Baeurle to: M. Matthews Re: TOPFX | PIEM 0258820 | PIEM 0258821 | | | | F6 |
| DX-0604 | TOPSwitch-FX Overview | PIEM0258845 | PIEM0258852 | | | | F6 |
| DX-0605 | Email from Baeurle to Matthews Re: TOPFX | PIEM0258853 | PIEM0258854 | | | | F6 |
| DX-0606 | Email from Baeurle to Matthews and Vaughn Re: TOPFX presentation at FRIWO | PIEM0258855 | PIEM0258856 | | | | F6 |
| DX-0607 | Compilation of Weekly Status Report Emails from Kung to Balakrishnan spanning January 1998 to April 2000 | PIF 517557 | PIF 517747 | | | | F6 |
| DX-0608 | E-mail J. Sridhar to M. Matthews Attaching May 2009 Metrics | PIF6 0317237 | | | | | F6 |
| DX-0609 | Power Integrations May 2009 Metrics Data | PIF6 0317238 | PIF6 0317240 | | | | F6 |
| DX-0610 | X Cap Discharge IC Overview | PIF6 0566405 | PIF6 0566411 | | | | F6 |
| DX-0611 | OTS X-Cap Discharge IC | PIF6 0566440 | PIF6 0566440 | | | | F6 |
| DX-0612 | Power Integrations, OTS Xcap Discharge IC, June 2009, Revision A | PIF6 0566448 | PIF6 0566472 | | | | F6 |
| DX-0613 | X Cap Discharge IC Kick Off | PIF6 0566726 | PIF6 0566738 | | | | F6 |
| DX-0614 | X Cap Discharge IC Overview | PIF6 0590638 | PIF6 0590644 | | | | F6 |
| DX-0615 | X-Cap Bleeder Preliminary Design | PIF6 0590663 | PIF6 0590678 | | | | F6 |
| DX-0616 | Active X Cap Bleed Circuit | PIF6 0876654 | PIF6 0876654 | | | | F6 |
| DX-0617 | Mike Matthews Inventor Notebook - June 2005 - June 2006 | PIFIV0052298 | PIFIV0052456 | | | | F6 |
| DX-0618 | Mike Matthews Inventor Notebook - June 2006 - Aug 2007 | PIFIV0052457 | PIFIV0052624 | | | | F6 |
| DX-0619 | Mike Matthews Inventor Notebook - Aug 2007 - Nov 2008 | PIFIV0052625 | PIFIV0052797 | | | | F6 |
| DX-0620 | Mike Matthews Inventor Notebook - Dec 2008 - April 2010 | PIFIV0052798 | PIFIV0052958 | | | | F6 |
| DX-0621 | Mike Matthews Inventor Notebook - May 2010 - March 2012 | PIFIV0052959 | PIFIV0053117 | | | | F6 |
| DX-0622 | Power Integrations COG Planning Session - 3/24/2009 | PIFIV0115239 | PIFIV0115321 | | | Mar-09 | F6 |
| DX-0623 | Email from Matthews to Bailey re Presentation at 2pm | PIFIV0117114 | | | | | F6 |
| DX-0624 | Power Integrations COG Planning - New Product Interim Update - 4/13/2009 | PIFIV0117115-22 | | | | | F6 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0625 | Email chain from Mike Matthews to Doug Bailey regarding Competition in PC Stby | PIFIV0117893 | PIFIV0117894 | | | | F6 |
| DX-0626 | E-mail from M. Manley to: Group Re: Process Technology Weekly Report 7/2/09 | PIFIV0128774 | PIFIV0128776 | | | | F6 |
| DX-0627 | Power Integrations - Product Strategy - Mike Matthews - July 27, 2009 | PIFIV0165239-84 | | | | | F6 |
| DX-0628 | Memo From M. Matthews to D. Bailey Re: Weekly Status Report | PIFIV0322150 | PIFIV0322156 | | | | F6 |
| DX-0629 | Memo From M. Matthews to D. Bailey Re: Weekly Status Report | PIFIV0322158 | PIFIV0322164 | | | | F6 |
| DX-0630 | Memo From M. Matthews to D. Bailey Re: Weekly Status Report | PIFIV0322166 | PIFIV0322171 | | | | F6 |
| DX-0631 | Memo From M. Matthews to D. Bailey Re: Weekly Status Report | PIFIV0322189 | PIFIV0322195 | | | | F6 |
| DX-0632 | Memo From M. Matthews to D. Bailey Re: Weekly Status Report | PIFIV0322254 | PIFIV0322260 | | | | F6 |
| DX-0633 | Memo From M. Matthews to D. Bailey Re: Weekly Status Report | PIFIV0322262 | PIFIV0322268 | | | | F6 |
| DX-0634 | Memo From M. Matthews to D. Bailey Re: Weekly Status Report | PIFIV0322291 | PIFIV0322297 | | | | F6 |
| DX-0635 | Memo From M. Matthews to D. Bailey Re: Weekly Status Report | PIFIV0322466 | PIFIV0322472 | | | | F6 |
| DX-0636 | Memo From M. Matthews to D. Bailey Re: Weekly Status Report | PIFIV0322474-80 | | | | | F6 |
| DX-0637 | Fairchild video - mWSaver® Technology -- Deep Burst Mode & AXCAP® Discharge Method | | | | | | |
| DX-0638 | Fairchild video - mWSaver® Technology -- Deep Burst Mode & AXCAP® Discharge Method transcription | | | | | | |
| DX-0639 | Fairchild  video - mWSaver® Technology -- FAN6756FSB1x7H | | | | | | |
| DX-0640 | Fairchild video - mWSaver® Technology -- FAN6756FSB1x7H transcription | | | | | | |
| DX-0641 | Fairchildsemi.com video - mWSaver® Technology – Dual Switch Flyback Solution | | | | | | |
| DX-0642 | Fairchildsemi.com video - mWSaver® Technology – Dual Switch Flyback Solution transcription | | | | | | |
| DX-0643 | Fairchildsemi.com video - mWSaver® Technology – FAN302HL | | | | | | |
| DX-0644 | Fairchildsemi.com video - mWSaver® Technology – FAN302HL transcription | | | | | | |
| DX-0645 | Fairchildsemi.com video - mWSaver® Technology – FAN6756FSB1x7H | | | | | | |
| DX-0646 | Fairchildsemi.com video - mWSaver® Technology – FAN6756FSB1x7H transcription | | | | | | |
| DX-0647 | Fairchildsemi.com video - mWSaver® Technology#related – Deep Burst Mode & AXCAP® Discharge Method | | | | | | |
| DX-0648 | Fairchildsemi.com video - mWSaver® Technology#related – Deep Burst Mode & AXCAP® Discharge Method transcription | | | | | | |
| DX-0649 | Ming-Chang Tsou, Tim Lee, Kenny Chan, An Innovative Solution for Flyback Converters that Offer Low Standby Power Cons | FSGV0049298 | FSGC0049307 | Chan, Kenny | 4 | 5/16/2014 | F6 |
| DX-0649.1 | Ming-Chang Tsou, Tim Lee, Kenny Chan, An Innovative Solution for Flyback Converters that Offer Low Standby Power Cons | FSGV0049298 | FSGC0049307 | Huang, WH | 14 | 12/13/2013 | F6 |
| DX-0650 | Fairchild Power IC Presentation | FSGIV00091526 | FSGIV00091549 | Chan, Kenny | 5 | 5/16/2014 | F6 |
| DX-0651 | Fairchild Semiconductor: 2012 SBP Computing & Communication Segment, June 2012, Kenny Chan | FSGIV00128517 | FSGIV00128529 | Chan, Kenny | 6 | 5/16/2014 | F6 |
| DX-0652 | Weekly Update_W01 Computing and Communication by Kenny Chan | FSGIV00141031 | FSGIV00141061 | Chan, Kenny | 9 | 5/16/2014 | F6 |
| DX-0653 | Fairchild "Green" Technology Brand Backgrounder, August 2010 | FSGV0183975 | FSGV0183979 | Chan, Kenny | 10 | 5/16/2014 | F6 |
| DX-0654 | Email from Vivek Arora to Sandy Chang re FAN6922MRM OOB Material | FSGV0083309 | FSGV0083313 | Chan, Kenny | 7 | 5/16/2014 | F6 |
| DX-0655 | Email from Todd Moyer to Aziz Kishani re 200W Power Supply | FSGV0155324 | FSGV0155343 | Chan, Kenny | 8 | 5/16/2014 | F6 |
| DX-0656 | Email from Daniel Hsu to Hangseok Choi re Please update me the status of FAN6300H Ddatasheet revision and specs | FSGV0471597 | FSGV0471606 | Chan, Kenny | 11 | 5/16/2014 | F6 |
| DX-0657 | Philips Integrated Circuits Data Sheet, TEA1401T, Power Plug for the Universal Mains, March 7, 1997 | PIF6 0001506 | PIF6 0001527 | Collins, Edward | 9 | 1/7/2015 | F6 |
| DX-0658 | U.S. Patent No. 6,480,399 | | | Collins, Edward | 5 | 1/7/2015 | F6 |
| DX-0658.1 | U.S. Patent No. 6,480,399 | PI 0171021 | PI 0171036 | Weirich, Michael | 10 | 12/11/2013 | F6 |
| DX-0659 | LNK603-606/613-616, LinkSwitch-II Family Datasheet, January 2012 | PIF6 0001370 | PIF6 0001387 | Collins, Edward | 17 | 1/7/2015 | F6 |
| DX-0659.1 | LNK603-606/613-616, LinkSwitch-II Family Datasheet, January 2012 | PIF6 0001370 | PIF6 0001387 | Weirich, Michael | 18 | 12/11/2013 | F6 |
| DX-0660 | LNK632DG, LinkSwitch-II Family datasheet, September 2009 | FSGIV00214532 | FSGIV0021454 | Collins, Edward | 18 | 1/7/2015 | F6 |
| DX-0661 | Steven Fu LinkedIn Profile | | | Fu, Steven | 1 | 5/30/2014 | F6 |
| DX-0662 | Fairchild, Porter Forces Analysis, Steven Fu, May 2013 | FSGV0222186 | FSGV0222197 | Fu, Steven | 2 | 5/30/2014 | F6 |
| DX-0663 | Fairchild, ISF-LED Lighting, December 2013 | FSGV3508019 | FSGV3508046 | Fu, Steven | 4 | 5/30/2014 | F6 |
| DX-0664 | Fairchild Semiconductor Form 10-K for the Fiscal Year Ended 12/29/13 | | | Fu, Steven | 11 | 5/30/2014 | F6 |
| DX-0665 | Plaintiff Fairchild Semiconductor Corporation and System General's Response to Defendant Power Integrations' Interrogatories (Nos. 1-23) | | | Fu, Steven | 14 | 5/30/2014 | F6 |
| DX-0666 | Email chain From Jay Lee to James Lee, Brian Johnson, Shawn Back regarding LED ISF Review with Vijay | FSGV0224050 | FSGV0224082 | Fu, Steven | 3 | 5/30/2014 | F6 |
| DX-0667 | Email from Gang Lui to Steven Fu regarding Chronicle of China/Taiwan Trip | FSGV3544552 | FSGV3544558 | Fu, Steven | 5 | 5/30/2014 | F6 |
| DX-0668 | Email from Donghye Cho to Steven Fu regarding Material Today | FSGV3534507 | FSGV3534528 | Fu, Steven | 6 | 5/30/2014 | F6 |
| DX-0669 | Email from Kenney Chan to Steven Fu regarding Computing Strategy | FSGV3534623 | FSGV3534646 | Fu, Steven | 7 | 5/30/2014 | F6 |
| DX-0670 | Email chain from Steve Fu to Wei-Chuung Wang regarding BOD Presentation | FSGV3536481 | FSGV3536500 | Fu, Steven | 8 | 5/30/2014 | F6 |
| DX-0671 | Email from Gary Lin to Mark Thompson regarding Power Conversion Review Material | FSGV3543997 | FSGV3544029 | Fu, Steven | 9 | 5/30/2014 | F6 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0672 | Email chain from Vijay Ullal to Steve Fu regarding Materials from Yesterday | FSGV3534145 | FSGV3534148 | Fu, Steven | 10 | 5/30/2014 | F6 |
| DX-0673 | Email chain from Pete Groth to Steven Fu regarding Info You Wanted | FSGV3531971 | FSGV3532063 | Fu, Steven | 12 | 5/30/2014 | F6 |
| DX-0674 | Series of Testing Plots | FSGV3490768 | FSGV3490795 | Huang, WH | 2 | 12/13/2013 | F6 |
| DX-0675 | Plaintiffs Fairchild Semiconductor Corporation and System General's Response to Defendant Power Integrations' Second Set of Interrogatories (Nos. 24-33) | | | Huang, WH | 4 | 12/13/2013 | F6 |
| DX-0676 | Start-up Circuit to Discharge EMI Filter for Power Saving of Power Supplies | | | Huang, WH | 6 | 12/13/2013 | F6 |
| DX-0677 | PowerPoint Presentation of FAN6756 | FSGV0016881 | FSGV0016955 | Huang, WH | 11 | 12/13/2013 | F6 |
| DX-0678 | PowerPoint Presentation of FAN6756 H Discharge Time Analysis | FSGV0015232 | FSGV0015236 | Huang, WH | 13 | 12/13/2013 | F6 |
| DX-0679 | FAN6755W and FAN755UW Datasheet | | | Huang, WH | 10 | 12/13/2013 | F6 |
| DX-0680 | FSB137HL Schematic | FSGIV0212868 | FSGIV0212972 | Huang, WH | 12 | 12/13/2013 | F6 |
| DX-0681 | FSB137HL Datasheet, May 2013 | FSGIV0212855 | FSGIV0212867 | Huang, WH | 16 | 12/13/2013 | F6 |
| DX-0682 | SG6841 Datasheet, May 22, 2003 | FSGV0043139 | FSGV0043152 | Huang, WH | 18 | 12/13/2013 | F6 |
| DX-0683 | LED Lighting Business Plan by Brian Johnson | FSGV0216116 | FSGV0216123 | Johnson, Brian | 2 | 10/23/2013 | F6 |
| DX-0684 | Fairchild Presentation: "IC-Bench" Web Design Tool: Program Review | FSGV018330 | FSGV0183355 | Johnson, Brian | 13 | 10/23/2013 | F6 |
| DX-0685 | Brian Johnson email to Jay Lee regarding LED Lighting Biz Environment Improvement Plan | FSGV0216115 | FSGV0216115 | Johnson, Brian | 1 | 10/23/2013 | F6 |
| DX-0686 | Email from Jason Tao to Brian Johnson regarding LOA Projects Update | FSGIV00126542 | FSGIV00126547 | Johnson, Brian | 3 | 10/23/2013 | F6 |
| DX-0687 | Brian Johnson email to Chris Cheonwith regarding FCS LED Lighting Training for Sales and Tech Marketing | FSGV00126542 | FSGV00126547 | Johnson, Brian | 4 | 10/23/2013 | F6 |
| DX-0688 | Email chain from Brian Johnson to Jay Lee regarding Power Integrations 4Q Results | FSGV2818682 | FSGV2818687 | Johnson, Brian | 5 | 10/23/2013 | F6 |
| DX-0689 | Email chain from Dan Peck to Brian Johnson regarding Power Integrations Competition | FSGV0214440 | FSGV0214441 | Johnson, Brian | 6 | 10/23/2013 | F6 |
| DX-0690 | Email from John Purtell to Chris Cheonwith regarding Power Integrations Competition | FSGV0214368 | FSGV0214369 | Johnson, Brian | 7 | 10/23/2013 | F6 |
| DX-0691 | Email chain from Brian Johnson to John Pellerin regarding Power Integrations Competition | FSGV0214438 | FSGV0214439 | Johnson, Brian | 8 | 10/23/2013 | F6 |
| DX-0692 | Email chain from Van Niemela to Richard Chung regarding Green Room on POWI Site | FSGV0181156 | FSGV0181156 | Johnson, Brian | 9 | 10/23/2013 | F6 |
| DX-0693 | Email from Brian Johnson to Duane Hughes regarding Cree | FSGV0198094 | FSGV0198095 | Johnson, Brian | 10 | 10/23/2013 | F6 |
| DX-0694 | Email chain from Brain Johnson to Van Niemela regarding K Factor Plot | FSGV0186074 | FSGV0186076 | Johnson, Brian | 11 | 10/23/2013 | F6 |
| DX-0695 | Email chain from Brian Johnson to Carl Walding regarding Fairchild Visit Follow-up | FSGV0219670 | FSGV0219673 | Johnson, Brian | 12 | 10/23/2013 | F6 |
| DX-0696 | Email chain from Brian Johnson to Van Niemela regarding Board Meeting Slides | FSGV0188256 | FSGV0188257 | Johnson, Brian | 14 | 10/23/2013 | F6 |
| DX-0697 | Email chain from Brian Johnson to Michael Pena regarding Fairchild - Power Integrations | FSGV2817957 | FSGV2817958 | Johnson, Brian | 15 | 10/23/2013 | F6 |
| DX-0698 | Email from Duane Hughes to Brian Johnson regarding Are You Sure | FSGV0216641 | FSGV0216641 | Johnson, Brian | 16 | 10/23/2013 | F6 |
| DX-0699 | Email from Frank Greco to Cynthia Zhang regarding News Release: Fairchild Semiconductor Reports Favorable Results in Lawsuit Appeal Against Power Integrations | FSGV2819240 | FSGV2819242 | Johnson, Brian | 17 | 10/23/2013 | F6 |
| DX-0700 | Email chain from Brian Johnson to Nichael Petraskiewicz regarding New TOPSwitch-JX Refernce Designs Now Available | FSGV0182384 | FSGV0182386 | Johnson, Brian | 18 | 10/23/2013 | F6 |
| DX-0701 | Email from Brian Johnson to Jay Lee regarding Updates - LOA - BR30 EMI Filter Question | FSGV0217123 | FSGV0217129 | Johnson, Brian | 19 | 10/23/2013 | F6 |
| DX-0702 | Email chain from Alex Craig to Richard Chung regarding AC/DC Devices | FSGIV00144269 | FSGIV00144273 | Johnson, Brian | 20 | 10/23/2013 | F6 |
| DX-0703 | Email from Richard Chung to Brian Johnson regarding FL7730 - Big Delay | FSGIV00143648 | FSGIV00143651 | Johnson, Brian | 21 | 10/23/2013 | F6 |
| DX-0704 | Email from Alex Craig to Brian Johnson regarding FL7730 Demoboards | FSGIV00100357 | FSGIV00100361 | Johnson, Brian | 22 | 10/23/2013 | F6 |
| DX-0705 | Email from Suzanne Bowser to Brian Johnson regarding FL7730-FL7732 Key Message Form | FSGV0198650 | FSGV0198653 | Johnson, Brian | 23 | 10/23/2013 | F6 |
| DX-0706 | Email from Brian Johnson to James Lee regarding PI LinkSwitch-PH | FSGV0187692 | FSGV0187694 | Johnson, Brian | 24 | 10/23/2013 | F6 |
| DX-0707 | Email from Jim Friedrich to Dan Peck regarding Cree and Request for a Product Line Management Meeting | FSGV0503863 | FSGV0503868 | Johnson, Brian | 25 | 10/23/2013 | F6 |
| DX-0708 | Email from Brian Johnson to Jon Sheburne regarding Soraa Meeting Summary | FSGV0510268 | FSGV0510270 | Johnson, Brian | 26 | 10/23/2013 | F6 |
| DX-0709 | CD Containing native Excel Spreadsheets | | | Kim, Richard | 4 | 5/20/2014 | F6 |
| DX-0710 | Plaintiff's Fairchild Semiconductor Corporation and System General's Second Supplemental Response to Defendant Power Integrations' Interrogatories | | | Kim, Richard | 5 | 5/20/2014 | F6 |
| DX-0711 | Email from Richard Kim to Jongwoo Lee regarding SEMCO LED MNT (30W) 19" - 23" | FSGV00104055 | FSGV00104056 | Kim, Richard | 6 | 5/20/2014 | F6 |
| DX-0712 | Email from Jay Lee to Brian Johnson regarding PCIA Staff Package Week 24 | FSGV0222101 | FSGV0222104 | Kim, Richard | 7 | 5/20/2014 | F6 |
| DX-0713 | Email from Jacky Chan to Richard Kim regarding LED Opp Review for SAP | FSGIV00140112 | FSGIV00140120 | Kim, Richard | 8 | 5/20/2014 | F6 |
| DX-0714 | Email from Richard Kim to Donghye Cho, Jian Wang regarding Direction to Digital Video Broadcasting Business Related With EMI Issue & Competition with POWI | FSGIV00130988 | FSGIV00130992 | Kim, Richard | 9 | 5/20/2014 | F6 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0715 | Plaintiffs Fairchild Semiconductor Corporation and System General's Second Supplemental Response to Defendant Power Integrations' First Set of Interrogatories | | | Lee, James | 3 | 5/19/2014 | F6 |
| DX-0716 | Email from Brian Johnson to James Lee regarding PI LinkSwitch-PH | FSGV0187692 | FSGV0187693 | Lee, James | 7 | 5/19/2014 | F6 |
| DX-0717 | Email chain from Richard Chung to Brian Johnson regarding FL7730 Demoboards | FSGV0184753 | FSGV0184757 | Lee, James | 4 | 5/19/2014 | F6 |
| DX-0718 | Email chain from Richard Chung to Jason Gao, Brian Johnson, Yaxiao Qin regarding PI's Web Course for a Family of FL7731 Type Devices | FSGV0185318 | FSGV0185319 | Lee, James | 5 | 5/19/2014 | F6 |
| DX-0719 | Email chain from James Lee to Richard Chung, Carl Walding, Jay Lee regarding PI - LnkSwitch-PH | FSGV0187644 | FSGV0187646 | Lee, James | 6 | 5/19/2014 | F6 |
| DX-0720 | Email chain from James Lee to Jay Lee regarding WW25 James | FSGV0189746 | FSGV0189746 | Lee, James | 8 | 5/19/2014 | F6 |
| DX-0721 | Email chain from James Lee to Wesley Hsu regarding The Presentation File of Fairchild LED Solution for Delta | FSGV0253102 | FSGV0253103 | Lee, James | 9 | 5/19/2014 | F6 |
| DX-0722 | Email from Seonghui Choi to Michael Jangm Sang Tae Im, Chris Yeo, Kyunghee Jang, Seungpil Yoo, Jay Lee, GS Lee regarding WW 33, Ley NPD Meeting File Update | FSGV0254674 | FSGV0254701 | Lee, James | 10 | 5/19/2014 | F6 |
| DX-0723 | Email chain from Jay Lee to Brian Johnson, James Lee, Soonjong Park, Shawn Black regarding PC BU Q2 Review Material | FSGV0209951 | FSGV0209952 | Lee, James | 11 | 5/19/2014 | F6 |
| DX-0724 | Email chain from James Lee to Jay Lee regarding 7 Growth - LED | FSGV0253981 | FSGV0254004 | Lee, James | 12 | 5/19/2014 | F6 |
| DX-0725 | Email chain from Jay Lee to James Lee regarding SBP Warming Up | FSGV0250676 | FSGV0250681 | Lee, James | 13 | 5/19/2014 | F6 |
| DX-0726 | Email chain from Henry Shen to Jacky Chan, CH Yeam regarding AECO Update File | FSGV2824970 | FSGV2824971 | Lee, James | 14 | 5/19/2014 | F6 |
| DX-0727 | Email chain from Jacky Chan to Pavan Balachandra regarding Benstar Status and South Asia Customer's Key Spec | FSGV0533437 | FSGV0533452 | Lee, James | 15 | 5/19/2014 | F6 |
| DX-0728 | Email chain from Jay Lee to Brian Johnson, Sonnjong Park, Shawn Black regarding AP Visit Report - James Lee | FSGV0201673 | FSGV0201682 | Lee, James | 16 | 5/19/2014 | F6 |
| DX-0729 | Email chain from James Lee to SE Han regarding GE Meeting Minutes 20121213 | FSGV2825775 | FSGV2825778 | Lee, James | 17 | 5/19/2014 | F6 |
| DX-0730 | October 19th, 2012 Power Conversion Presentation | FSGV0540689 | FSGV0540761 | Lin, Gary | 4 | 12/12/2013 | F6 |
| DX-0731 | Plaintiffs Fairchild Semiconductor Corporation and System General's Response to Defendant Power Integrations' Interrogatories | | | Lin, Gary | 5 | 12/12/2013 | F6 |
| DX-0732 | July 20, 2010 Power Conversion 2010 SBP Presentation | FSGV0548102 | FSGV0548191 | Lin, Gary | 6 | 12/12/2013 | F6 |
| DX-0733 | June 19th, 2012 Power Conversion 12 Business Team Q2 Review | FSGV0209953 | FSGV0209973 | Lin, Gary | 8 | 12/12/2013 | F6 |
| DX-0734 | October 21, 2011 2012 AOP Power Conversion Presentation | FSGV0198357 | FSGV0198448 | Lin, Gary | 9 | 12/12/2013 | F6 |
| DX-0735 | Document re Wafer IDs | | | Lin, Gary | 10 | 12/12/2013 | F6 |
| DX-0736 | August 4, 2011, Fairchild,Top 5 Project Review | FSGIV00104867 | FSGIV00104893 | Lin, Gary | 14 | 12/12/2013 | F6 |
| DX-0737 | Email from G. Lin to S. Chang (1-13-2012) regarding FAN6922MRM OOB Material | FSGV0083611 | FSGV0083615 | Lin, Gary | 7 | 12/12/2013 | F6 |
| DX-0738 | Email from G. Lin to T. Yang (5-9-2011) regarding Considerations for new product selection | FSGIV00121766 | FSGIV00121768 | Lin, Gary | 11 | 12/12/2013 | F6 |
| DX-0738.1 | Email from G. Lin to T. Yang (5-9-2011) regarding Considerations for new product selection | FSGIV00121766 | FSGIV00121768 | Yang, Ta-Yung | 50 | 12/13/2013 | F6 |
| DX-0739 | Email from G. Lin to T. Yang (2-5-2011) regarding POWI Lighting | FSGIV00102659 | FSGIV00102660 | Lin, Gary | 12 | 12/12/2013 | F6 |
| DX-0739.1 | Email from G. Lin to T. Yang (2-5-2011) regarding POWI Lighting | FSGIV00102659 | FSGIV00102660 | Yang, Ta-Yung | 49 | 12/13/2013 | F6 |
| DX-0740 | Email from G. Lin to J. Lee (7-29-2011) regarding LED driver EVB | FSGIV00115796 | FSGIV00115804 | Lin, Gary | 13 | 12/12/2013 | F6 |
| DX-0741 | Email from G. Lin to Jay Lee (7-28-2011) regarding "Urgent" request your feedback regarding residential LED driver | FSGIV00082552 | FSGIV00082557 | Lin, Gary | 15 | 12/12/2013 | F6 |
| DX-0742 | Email from A. Craig to B. Johnson (10-25-2010) re FL7730 demo boards | FSGV0184774 | FSGV0184778 | Lin, Gary | 16 | 12/12/2013 | F6 |
| DX-0743 | Email from Jay Lee to G. Lee (9-6-2010) regarding FL7700 Project Direction Proposal | FSGV0068067 | FSGV0068070 | Lin, Gary | 17 | 12/12/2013 | F6 |
| DX-0744 | Email from I. Sandtae to G. Lin (6-17-2010) re FAN7346 pricing strategy | FSGV0064271 | FSGV0064273 | Lin, Gary | 18 | 12/12/2013 | F6 |
| DX-0745 | Email from Justin Chiang to Gary Lin regarding Feedback from NA | FSGIV00144329 | FSGIV144329 | Lin, Gary | 19 | 12/12/2013 | F6 |
| DX-0746 | Email from J Chiang to G. Lin (5-20-2010) regarding Discussion on LED landing page with new products | FSGIV00110238 | FSGIV00110240 | Lin, Gary | 20 | 12/12/2013 | F6 |
| DX-0747 | Email from G. Lin to D. Janson (8-9-2012) regarding chain re POWI: Mixed Results with Respectable Guide; Tax Benefit | FSGIV00195471 | FSGIV0019475 | Lin, Gary | 21 | 12/12/2013 | F6 |
| DX-0748 | Appendix C to Robinson Opening Report | | | Malackowski, James | 6 | 1/20/2015 | F6 |
| DX-0749 | Power Integrations LYT4211-4218/4311-4318, LYTswitch-4 Datasheet, October 2013 | | | Malackowski, James | 5 | 1/20/2015 | F6 |
| DX-0750 | Power Integrations Inc. v. Fairchild Semiconductor Int'l, Case No. 04-1371, Declaration of Gu-Yeon Wei in Support of Fairchild's Opposition to Motion for Permanent Injunction | | | Park, YB | 5 | 5/19/2014 | F6 |
| DX-0751 | U.S. Patent No. 8,242,755 | | | Park, YB | 7 | 5/19/2014 | F6 |
| DX-0752 | U.S. Patent No. 7,848,124 | | | Park, YB | 8 | 5/19/2014 | F6 |
| DX-0753 | U.S. Patent No. App. No. 13/027,013 | | | Park, YB | 9 | 5/19/2014 | F6 |
| DX-0754 | Power Integrations, Inc. v. Fairchild Semicondcutor Int'l, Case No. 04-1371, Declaration of Hang-Seok Choi | | | Park, YB | 22 | 5/19/2014 | F6 |
| DX-0755 | Schematics with handwritten notes of Y.B. Park | FCS026915 | FCS026960 | Park, YB | 14 | 5/19/2014 | F6 |
| DX-0756 | FSDL0365RNB schematics | FCS0077092 | FCS0077124 | Park, YB | 18 | 5/19/2014 | F6 |
| DX-0757 | Fairchild, Low-Power Flyback Solutions and Corss Reference Products, July 2012 | FSGV0549151 | FSGV0549185 | Tu, Aung | 2 | 6/5/2014 | F6 |
| DX-0758 | Fairchild, FAN301HL OTP Troubleshooting | FSGV3535811 | FSGV3535870 | Tu, Aung | 4 | 6/5/2014 | F6 |
| DX-0759 | Fairchild, LG Smart ighting Tear Down, April 04 | FSGV3556425 | FSGV3556432 | Tu, Aung | 6 | 6/5/2014 | F6 |
| DX-0760 | David Marsh, Linnear Regulators Face Extinction, EDN Europe | | | Tu, Aung | 7 | 6/5/2014 | F6 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0761 | Fairchild, mWSaver Technology Solutions for Ultra Low Standby Power and Higher Average Efficiency, Attachment to Exhibit 12 email | FSGV3525422 | FSGV3525440 | Tu, Aung | 13 | 6/5/2014 | F6 |
| DX-0762 | Fairchild, Comments on Draft 1 Version 2.0 Energy Star External Power Supply Specification by Aung Tu | | | Tu, Aung | 17 | 6/5/2014 | F6 |
| DX-0763 | Email chain from Aung Tu to Kenny Chan, Gary Lin, Cho Donghye regarding MTC Power Electronics Newsletter #202 | FSGV0420748 | FSGV0420751 | Tu, Aung | 1 | 6/5/2014 | F6 |
| DX-0764 | Email chain from Aug Tu to Hang Seok Choi regarding 0417 OTP Material | FSGV3535809 | FSGV3535810 | Tu, Aung | 3 | 6/5/2014 | F6 |
| DX-0765 | Email chain from James Lee to Aung Tu, Yong Ann Ang regarding And Now Samsung Turns an Ordinary Litghtbulb into a Connected Gadget | FSGV3556419 | FSGV3556423 | Tu, Aung | 5 | 6/5/2014 | F6 |
| DX-0766 | Email chain from Aung Tu to Hang Seok Choi regarding FAN6756 Material for Delta-NC | FSGV3523323 | FSGV3523332 | Tu, Aung | 8 | 6/5/2014 | F6 |
| DX-0767 | Email chain from Kenny Chan to Hang Seok Choi regarding PI CAPZero Solution | FSGV3522705 | FSGV3522077 | Tu, Aung | 9 | 6/5/2014 | F6 |
| DX-0768 | Email chain from Han Seok Choi to David Pan regarding Feedback on Press Release Presentation Material of mWSaver | FSGV3525417 | FSGV3525421 | Tu, Aung | 12 | 6/5/2014 | F6 |
| DX-0769 | Email chain from Augn Tu to Jon Harper regarding IC Chip ProposalTest Data from Fairchild | FSGV3539558 | FSGV3539583 | Tu, Aung | 14 | 6/5/2014 | F6 |
| DX-0770 | Email chain from Pierfranco Vanelli to Aung Tu regarding Quasi-resonant Controller for Vestel | FSGV3547356 | FSGV3547369 | Tu, Aung | 15 | 6/5/2014 | F6 |
| DX-0771 | Email chain from Michael Petraskiewicz to Steven Mappus regarding NCP1901 | FSGIV00141103 | FSGVIV99141193 | Tu, Aung | 16 | 6/5/2014 | F6 |
| DX-0772 | Email chain from Aung Tu to Richard Chung regarding Energy Efficient Standards Update Meetings in U.S. in Oct. 2010 | FSGV00100452 | FSGV00100455 | Tu, Aung | 18 | 6/5/2014 | F6 |
| DX-0773 | Email chain from Aung Tu to Stephen Jensen, Roya Colwell, Duane Hughes, Carl Walding, Robert Kirch regarding PI/FCS Lawsuit Update Communications Meeting - Americas | FSGV00194789 | FSGV00194789 | Tu, Aung | 19 | 6/5/2014 | F6 |
| DX-0774 | Email from S. Mappus to A. Tu regarding Power Integrations Wins Another Patent Case Against Fairchild - Yahoo Finance | FSGV3509215 | FSGV3509215 | Tu, Aung | 20 | 6/5/2014 | F6 |
| DX-0775 | Email from A. Tu to S. Mappus regarding Power Integrations Wins Another Patent Case Against Fairchild - Yahoo Finance | FSGV3509215 | FSGV3509215 | Tu, Aung | 21 | 6/5/2014 | F6 |
| DX-0776 | Power Integrations, Application Note AN-48, CAPZero Family Datasheet, September 2010 | FSGV3522078 | FSGV3522085 | Tu, Aung | 10 | 6/5/2014 | F6 |
| DX-0777 | CAPZero Family Datasheet, June 2010 | FSGV3522086 | FSGV3522093 | Tu, Aung | 11 | 6/5/2014 | F6 |
| DX-0778 | Vijay Ullal LinkedIn Profile | | | Ullal, Vijay | 1 | 5/29/2014 | F6 |
| DX-0779 | BusinessWeek Executive Profile of Vijay Ullal | | | Ullal, Vijay | 2 | 5/29/2014 | F6 |
| DX-0780 | Fairchild, Make Samsung More Successful, R&D Team at MWC | FSGV2808302 | FSGV2808325 | Ullal, Vijay | 3 | 5/29/2014 | F6 |
| DX-0781 | Fairchild Litigation Update | | | Ullal, Vijay | 14 | 5/29/2014 | F6 |
| DX-0782 | Letter from Vijay Ullal and Chris Allexandre to Customers | | | Ullal, Vijay | 15 | 5/29/2014 | F6 |
| DX-0783 | Letter from Dongyhe Cho to Customers | | | Ullal, Vijay | 17 | 5/29/2014 | F6 |
| DX-0784 | Fairchild, Employee Engagement Survey Feedback Resultsm December 2012 | FSGV0469671 | FSGV0469726 | Ullal, Vijay | 20 | 5/29/2014 | F6 |
| DX-0785 | Interview of Vijay Ullal by EE Times Europe | | | Ullal, Vijay | 21 | 5/29/2014 | F6 |
| DX-0786 | Fairchild Press Release, Fairchild Semiconductor Announces New No Obsolete Product and Lifetime Supply Policies | | | Ullal, Vijay | 22 | 5/29/2014 | F6 |
| DX-0787 | Email from Dae Young Jung to Vijay Ullal regarding MWC Meeting Minutes - Samsung R&D - Mr. TM Roh | FSGV0471429 | FSGV0471429 | Ullal, Vijay | 4 | 5/29/2014 | F6 |
| DX-0788 | Email from Vijay Ullal to Matt Johnson regarding MWC Meeting Minutes - Samsung R&D - Mr. TM Roh | FSGV3534542 | FSGV3534545 | Ullal, Vijay | 5 | 5/29/2014 | F6 |
| DX-0789 | Email from Justin Chiang to Vijay Ullal regarding Korea Sales Bi-Weekly | FSGV0099998 | FSGV0100002 | Ullal, Vijay | 6 | 5/29/2014 | F6 |
| DX-0790 | Email from Vijay Ullal to Gary Lin, Michael Dube, Seomeng Goh, Barry O'Connell, Srinath Athur regarding 16/Oct. SMCOS17P Meeting Minutes - Samsung | FSGV3545078 | FSGV3545078 | Ullal, Vijay | 7 | 5/29/2014 | F6 |
| DX-0791 | Email from KE Hong to Vijay Ullal regarding Daily Progress Report for Samsung Adaptive Charger Project | FSGV3546691 | FSGV3546694 | Ullal, Vijay | 8 | 5/29/2014 | F6 |
| DX-0792 | Email from Vijay Ulla to Manisha Pandya regarding FAN301 History | FSGV3596658 | FSGV3506673 | Ullal, Vijay | 9 | 5/29/2014 | F6 |
| DX-0793 | Email from Vijay Ullal to Steve Fu, David Kunst, Donghye Cho regarding Power Integrations' CEO Discusses Q4 2013 Results - Earnings Call Transcript | FSGV3550472 | FSGV3550472 | Ullal, Vijay | 10 | 5/29/2014 | F6 |
| DX-0794 | Email chain from Denny Kim to Richard Kim regarding KNPR - Next Actions | FSGIV00097533 | FSGIV00097541 | Ullal, Vijay | 11 | 5/29/2014 | F6 |
| DX-0795 | Email chain from Donghye Cho to Gary Lin regarding FL7734 Concept Overview Meeting | FSGV0094925 | FSGV0094928 | Ullal, Vijay | 12 | 5/29/2014 | F6 |
| DX-0796 | Email from Salesforce Chatter to Brian Johnson regarding Your Dailey Chatter Digest | FSGV0217076 | FSGV0217076 | Ullal, Vijay | 13 | 5/29/2014 | F6 |
| DX-0797 | Email from Vijay Ullal to Justin Chiang and Claudia Innes regarding Dashboard: Opportunities Management Dashboard-HV | FSGV3536950 | FSGV3536956 | Ullal, Vijay | 18 | 5/29/2014 | F6 |
| DX-0798 | Email from Andrew Forbes to Vijay Ullal regarding Sales and Marketing Engagement Survey Results | FSGV0469629 | FSGV0469629 | Ullal, Vijay | 19 | 5/29/2014 | F6 |
| DX-0799 | FAN6756-mWSaver tm PWM Controller Datasheet, January 2013 | | | Ullal, Vijay | 16 | 5/29/2014 | F6 |
| DX-0800 | U.S. Patent No. 5,903,452 | | | Wei, Gu-Yeon | 25 | 1/15/2015 | F6 |
| DX-0801 | Linear technology, LT1070/LT1071 Datasheet | | | Wei, Gu-Yeon | 24 | 1/15/2015 | F6 |
| DX-0802 | Patent Owner's Response to Action Closing Prosecution - 972 ReExam | | | Wei, Gu-Yeon | 10 | 1/15/2015 | F6 |
| DX-0803 | Unitrode Application Note U-133, UCC 3800/1/2/3/4/5 BiCMOS Current Mode Control Ics | BSTZ 010542 | BSTZ 010560 | Wei, Gu-Yeon | 12 | 1/15/2015 | F6 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0804 | F.J. Stasi, T. Szepesi, A 5A 100 KHZ Monolithic Bipolar DC/DC Converter, European Power Electronics Association | FCS0524438 | FCS0524445 | Wei, Gu-Yeon | 15 | 1/15/2015 | F6 |
| DX-0805 | U.S. Patent No. 4,806,842 | FSGV0050814 | FSGV0050819 | Wei, Gu-Yeon | 16 | 1/15/2015 | F6 |
| DX-0806 | U.S. Patent No. 7,498,788 | | | Wei, Gu-Yeon | 23 | 1/15/2015 | F6 |
| DX-0807 | Fairchild, User Guide for FEBFAN6756MR_T03U065A Evaluation Board | | | Wei, Gu-Yeon | 7 | 1/15/2015 | F6 |
| DX-0808 | U.S. Patent No. 6,999,429 | | | Wei, Gu-Yeon | 9 | 1/15/2015 | F6 |
| DX-0809 | FSB137HL Datasheet | FSGIV00212855 | FSGIV00212867 | Wei, Gu-Yeon | 6 | 1/15/2015 | F6 |
| DX-0810 | U.S. Patent No. 6,611,439 | | | Wei, Gu-Yeon | 20 | 1/15/2015 | F6 |
| DX-0811 | Fairchild, Prototype Report AC/DC Converter (Power Supply) using FSDH321BM Fairchild Power Switch | | | Weirich, Michael | 3 | 12/11/2013 | F6 |
| DX-0812 | Bill of Materials Charger Revised: Friday May 27, 2005 | FSGV3490704 | FSGV3490705 | Weirich, Michael | 4 | 12/11/2013 | F6 |
| DX-0813 | Fairchild, Primary Side Regulated Charger with Fairchild Power Switch | FSGV3490712 | FSGV3490720 | Weirich, Michael | 6 | 12/11/2013 | F6 |
| DX-0814 | Stephen Klier, Current Source for LED Drive with FPS | FSGV3490491 | FSGV3490500 | Weirich, Michael | 7 | 12/11/2013 | F6 |
| DX-0815 | Fairchild, Current Source for LED drive with FPS by Stephen Klier | FSGV3490470 | FSGV3490490 | Weirich, Michael | 8 | 12/11/2013 | F6 |
| DX-0816 | Email from J. Andre to J. Harperregarding CR et actions Fairchild de Notre meeting | FSGV0388482 | FSGV0388485 | Weirich, Michael | 19 | 12/11/2013 | F6 |
| DX-0817 | Email from J. Andre to M. Weirich regarding SMPS Status at SOMFY (And Questions) | FSGV0388514 | FSGV0388516 | Weirich, Michael | 20 | 12/11/2013 | F6 |
| DX-0818 | Email from C. Walding to M. Weirich regarding Dimmable led controller for Salcomp. | FSGV0403935 | FSGV0403949 | Weirich, Michael | 21 | 12/11/2013 | F6 |
| DX-0819 | Email from P. Vanelli to J. Ryuregarding Low Standby FPS Solution in DIP for Indesit HA | FSGV0405869 | FSGV0405876 | Weirich, Michael | 22 | 12/11/2013 | F6 |
| DX-0820 | Email from M. Feldstrdt to M. Weirich regarding Ferryster - transformer and other inductive components producer | FSGV0408438 | FSGV0408442 | Weirich, Michael | 23 | 12/11/2013 | F6 |
| DX-0821 | Email from: M. Weirich to J. Grulich regarding New design projects | FSGV0382863 | FSGV0382864 | Weirich, Michael | 24 | 12/11/2013 | F6 |
| DX-0822 | Email from M. Weirich to G. Williams regarding Landis and Gyr Transformer | FSGV0383235 | FSGV0383236 | Weirich, Michael | 25 | 12/11/2013 | F6 |
| DX-0823 | Email from M. Weirich to J. Bailey regarding Transformer ringing / good news | FSGV0384704 | FSGV0384707 | Weirich, Michael | 26 | 12/11/2013 | F6 |
| DX-0824 | Email from M. Weirich to R. Dunipace regarding Demo board for Metering | FSGV0388414 | FSGV0388417 | Weirich, Michael | 27 | 12/11/2013 | F6 |
| DX-0825 | Exhibit DX-825 not used | | | | | | |
| DX-0826 | Fairchild, FSDH321, FSDL321 Datasheet | PIF 2030681 | PIF 2036100 | Weirich, Michael | 2 | 12/11/2013 | F6 |
| DX-0827 | Schematics | FSGV3490708 | FSGV3490708 | Weirich, Michael | 5 | 12/11/2013 | F6 |
| DX-0828 | LNK623-626 LinkSwitch-CV Family Datasheet, September 2009 | FSGIV00209451 | FSGIV00209468 | Weirich, Michael | 15 | 12/11/2013 | F6 |
| DX-0829 | FAN103 Datasheet | FSGIV00011888 | FSGIV00011903 | Yang, Ta-Yung | 3 | 12/12/2013 | F6 |
| DX-0830 | U.S. Patent No. 7,116,090 | | | Yang, Ta-Yung | 4 | 12/12/2013 | F6 |
| DX-0830.1 | U.S. Patent No. 7,116,090 | | | Yang, Ta-Yung | 43 | 12/13/2013 | F6 |
| DX-0831 | Email from T. Yang to C. Hangseok regarding Congratulation for the recent jury decision that PI infringed your PSR patent | FSGV0420596 | FSGV0420597 | Yang, Ta-Yung | 10 | 12/12/2013 | F6 |
| DX-0832 | System General Web Page - News & Events - February-25-2004 | | | Yang, Ta-Yung | 12 | 12/12/2013 | F6 |
| DX-0833 | U.S. Patent No. 6,674,656 | | | Yang, Ta-Yung | 13 | 12/12/2013 | F6 |
| DX-0834 | U.S. Patent No. 6,721,192 | | | Yang, Ta-Yung | 14 | 12/12/2013 | F6 |
| DX-0835 | Datasheet - FAN302UL - PWM Controller for Low Standby Power Battery-Charger Applications - mWSaver Technology | FSGIV00076219 | FSGIV00076237 | Yang, Ta-Yung | 20 | 12/12/2013 | F6 |
| DX-0836 | U.S. Patent No. 7,362,593 | | | Yang, Ta-Yung | 36 | 12/13/2013 | F6 |
| DX-0837 | U.S. Patent No. 7,592,790 | | | Yang, Ta-Yung | 39 | 12/13/2013 | F6 |
| DX-0838 | U.S. Patent No. 6,611,439 | | | Yang, Ta-Yung | 40 | 12/13/2013 | F6 |
| DX-0839 | U.S. Patent No. 7,778,051 | | | Yang, Ta-Yung | 41 | 12/13/2013 | F6 |
| DX-0840 | U.S. Patent No. 6,768,655 | | | Yang, Ta-Yung | 42 | 12/13/2013 | F6 |
| DX-0841 | U.S. Patent No. 7,983,061 | | | Yang, Ta-Yung | 44 | 12/13/2013 | F6 |
| DX-0842 | U.S. Patent No. 6,661,679 | | | Yang, Ta-Yung | 45 | 12/13/2013 | F6 |
| DX-0843 | SG6841 Datasheet | | | Yang, Ta-Yung | 46 | 12/13/2013 | F6 |
| DX-0844 | U.S. Patent No. 7,834,605 | | | Yang, Ta-Yung | 47 | 12/13/2013 | F6 |
| DX-0845 | Email from T. Yang to C. Carinalli (5/19/2010) regarding IP/Patent Information & Report | FSGV0051912 | FSGV0051912 | Yang, Ta-Yung | 51 | 12/13/2013 | F6 |
| DX-0846 | 972 Patent ReExam Office Action dated October 9, 2013 | | | Yang, Ta-Yung | 52 | 12/13/2013 | F6 |
| DX-0847 | Spreadsheet: Customer data re Lite-On, Astec, Bestec, Delta | | | Chan, Kenny | 1 | 12/10/2009 | F2 |
| DX-0848 | E-mail: from Kenny Chan re Liteon FAN4801 replacement meeting memo | FSG00343839 - 840 | | Chan, Kenny | 2 | 12/10/2009 | F2 |
| DX-0849 | E-mail thread: Gary Tu to Jesse Wang re FSQ0270 status in SPI | FSG00345075 - 076 | | Chan, Kenny | 3 | 12/10/2009 | F2 |
| DX-0850 | Presentation: System General Printer solutions SG6846XX | FSG00035082 - 096 | | Chan, Kenny | 4 | 12/10/2009 | F2 |
| DX-0851 | Presentation: C0/C1 of EZ1016 by Kenny Chan | FSG00093647 - 655 | | Chan, Kenny | 5 | 12/10/2009 | F2 |
| DX-0852 | Presentation: Fairchild Semiconductor FAN102_3.5W | FSG00068414 - 464 | | Chan, Kenny | 6 | 12/10/2009 | F2 |
| DX-0853 | E-mail thread: SK Kim to Kenny Chan re LG's 4lamp LCD monitor | FSG00354931 - 935 | | Chan, Kenny | 7 | 12/10/2009 | F2 |
| DX-0854 | E-mail thread: Erick Wu to Amos Chen re SG6846F spec and schedule | FSG00357771 - 772 | | Chan, Kenny | 8 | 12/10/2009 | F2 |
| DX-0855 | Fairchild notice to customers re lawsuit initiated against Power Integrations, by Allan Lam | | | Chan, Kenny | 9 | 12/10/2009 | F2 |
| DX-0856 | System General Phase Out Notice from Kenny Chan to Sirtec International re ver. A of SG5842JASZ | FSG00223345 | | Chan, Kenny | 10 | 12/10/2009 | F2 |
| DX-0857 | Meeting Minutes prepared by Kenny Chan re SG6848TZ1, DAP02A, SG6842J | FSG00223201 - 202 | | Chan, Kenny | 11 | 12/10/2009 | F2 |
| DX-0858 | SG6841 Product Specification | | | Chan, Kenny | 1 | 5/7/2013 | F4 |
| DX-0859 | Email from Gordon Wang re: FSB117H_F116 modify for Chicony Xbox | FSGIV00135584 | | Chan, Kenny | 2 | 7/26/2012 | F4 |
| DX-0860 | Document Entitled: NB Product Presentation | FSGIV00044643-FSGIV00044650 | | Chan, Kenny | 3 | | F4 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0861 | Document Entitled: PLM Weekly Report | | | Chan, Kenny | 4 | 10/1/2007 | F4 |
| DX-0862 | Email from Sofia Lin re: Visit HP and Dell (FSR510R15 pricing guidance and FSQ0365RN pricing | FSG02099159-FSG02099171 | | Chan, Kenny | 5 | 1/19/2009 | F4 |
| DX-0863 | Document Entitled: mWSaver Biz Status Review | FSGIV0095033-FSGIV0095040 | | Chan, Kenny | 6 | 3/13/2012 | F4 |
| DX-0864 | Document Entitled: 2009 SBP Computing Segment Update | FSGIV0080516-FSGIV0080549 | | Chan, Kenny | 7 | 5/1/2009 | F4 |
| DX-0865 | Document Entitled: TOP 10 Customers Analysis- Power Conversion, Version 8 | FSGIV00100484-FSGIV00100506 | | Chan, Kenny | 8 | 7/15/2010 | F4 |
| DX-0866 | Email from Kenny Chan re: Power Conv C&C Product Roadmap Update for NA Team @ Wed 2012-02-29 8:30pm-10pm | FSGIV0094902-FSGIV0094907 | | Chan, Kenny | 9 | 3/6/2012 | F4 |
| DX-0867 | Email from Van Niemela re: Marketing term for green technology | FSGIV00115095 | | Chan, Kenny | 10 | 4/7/2010 | F4 |
| DX-0868 | Email from Alan Choi re: PI PR material | FSGIV00117103-FSGIV00117106 | | Chan, Kenny | 11 | 3/11/2011 | F4 |
| DX-0869 | Email from Justin Chiang to Hangseok Choi re PCIA Organizational Announcement | FSG01322126 - 127 | | Choi, Hangseok | 1 | 12/3/2008 | F2 |
| DX-0870 | Email from Youngman Cho to Hangseok Choi re Korea Regional Marketing & FAE Weekly WW04 | FSG01321650 - 656 | | Choi, Hangseok | 2 | | F2 |
| DX-0871 | Email from Youngman Cho to Hangseok Choi re Korea Regional Marketing & FAE Weekly WW24 | FSG01321725 - 731 | | Choi, Hangseok | 3 | | F2 |
| DX-0872 | Email from Jonathan Harper to Hangseok Choi re Weekly Report WW2109: Power Conversion & Industrial Product Group | FSG01323459 - 462 | | Choi, Hangseok | 4 | 5/23/2009 | F2 |
| DX-0873 | Evaluation Board of FSEZ1016, Primary-side-control PWM Controller FSEZ1016 7V/800mA Mobile phone battery charger with PSR (SGP100) | FSG00153152 - 170 | | Choi, Hangseok | 5 | 12/27/2007 | F2 |
| DX-0874 | Email from Gary Lin to Hangseok Choi re Aligning to the new PCIA structure | FSG01316335 - 337 | | Choi, Hangseok | 6 | 4/14/2009 | F2 |
| DX-0875 | Email from Tom Yang to Kenny Chan re Technical analysis of LinkSwitch-II | FSG01252109 - 110 | | Choi, Hangseok | 7 | 5/15/2009 | F2 |
| DX-0876 | Email from Gary Lin to Hangseok Choi re Border line Datasheet renovation | FSG01252111 - 131 | | Choi, Hangseok | 8 | 3/31/2009 | F2 |
| DX-0877 | Power Integrations Engineering Prototype Report for EP-16-2.75 W Charger/Adapter Using LNK501 (LinkSwitch) | FSG01322553 - 588 | | Choi, Hangseok | 9 | 5/17/2004 | F2 |
| DX-0878 | Power Integrations Design Example Report, 3.25 W CV/CC Charger Using LNK632DG | FSG01322514 - 552 | | Choi, Hangseok | 10 | 2/25/2009 | F2 |
| DX-0879 | Presentation Entitled: Fairchild 2009 Low Power PCIA, Low Power PLM Power Conversion | FSG00013473 - 494 | | Choi, Hangseok | 11 | Jan-09 | F2 |
| DX-0880 | Presentation Entitled: Fairchild FAN103, FSEZ1307, 1317 technical material for Charger and low power, V1.1, Power Conversion, PLM_Adaptor | FSG01321262 - 304 | | Choi, Hangseok | 12 | Jul-09 | F2 |
| DX-0881 | Presentation Entitled: Fairchild Past and Future of Integrated Power Solution, Hangseok Choi, Power Conversion Team | FSG01323869 - 889 | | Choi, Hangseok | 13 | Jan-07 | F2 |
| DX-0882 | Email from Tom Yang to Hangseok Choi re Flextronics: Mobile Charger IC (17 Jul Conf-call Summary) EAU=120mil | FSG01314791 - 795 | | Choi, Hangseok | 14 | 7/24/2009 | F2 |
| DX-0883 | Email from Hangseok Choi to Aung Tu re Fairchild homepage Application tab renovation proposal | FSG01320896 - 907 | | Choi, Hangseok | 15 | 8/27/2009 | F2 |
| DX-0884 | Email from Tom Yang to Hangseok Choi re Application note and papers on PSR of PCT | FSG00198660 - 661 | | Choi, Hangseok | 16 | 10/8/2008 | F2 |
| DX-0885 | Email from Tom Yang to Hangseok Choi re Application note and papers on PSR of PCT | FSG00198662 - 663 | | Choi, Hangseok | 17 | 10/11/2008 | F2 |
| DX-0886 | Email from Hangseok Choi to Leon Lee re Problems of FAN102 loop compensation | FSG00208526 - 530 | | Choi, Hangseok | 18 | 11/7/2008 | F2 |
| DX-0887 | Email from Gary Lin to Hangseok Choi re Proposal for PCT products Data Sheet renovation | FSG00209875 - 876 | | Choi, Hangseok | 19 | 3/10/2009 | F2 |
| DX-0888 | Email from Jason Guo to Hangseok Choi re Task for new product preparation | FSG01321096 - 1098 | | Choi, Hangseok | 20 | 7/24/2009 | F2 |
| DX-0889 | Datasheet: Fairchild SG5841 - Highly Integrated Green-Mode PWM Controller | | | Choi, Hangseok | 21 | Oct-08 | F2 |
| DX-0890 | Datasheet: Fairchild FAN103 Primary-Side-Control PWM Controller | | | Choi, Hangseok | 22 | Aug-09 | F2 |
| DX-0891 | Datasheet: Fairchild FAN102 Primary-Side-Control PWM Controller | | | Choi, Hangseok | 23 | Aug-08 | F2 |
| DX-0892 | Datasheet: Fairchild FSEZ1016A (EZSWITCH, EZ) Primary-Side-Regulation PWM Integrated Power MOSFET | | | Choi, Hangseok | 24 | Jun-09 | F2 |
| DX-0893 | Email from Peter Hsieh to Hangseok Choi re FSEZ1016AMY for 3.3V(0.35A) LED power-high line input | FSG01321512 - 529 | | Choi, Hangseok | 25 | 5/18/2009 | F2 |
| DX-0894 | Fairchild FEB226 User's Guide, Universal Input 12W LED Ballast, Featured Fairchild Product: FAN102SZ | | | Choi, Hangseok | 26 | Jul-06 | F2 |
| DX-0895 | Email from Hangseok Choi to Andy Huang re FSBH0x70 Datasheet issue | FSG01321404 - 405 | | Choi, Hangseok | 27 | | F2 |
| DX-0896 | Application Note: Fairchild AN-5841, Applying SG5841 to Control a Flyback Power Supply | | | Choi, Hangseok | 28 | 4/24/2008 | F2 |
| DX-0897 | Application Note: Fairchild AN-6067, Design and Application of Primary-Side Regulation (PSR) PWM Controller and EZ-Switch | | | Choi, Hangseok | 29 | 3/21/2008 | F2 |
| DX-0898 | Presentation Entitled: Fairchild AS1003 (Astec 5V/0.6A Demo Board Issue) CC Kick Out | FSG00055526 - 535 | | Choi, Hangseok | 30 | 11/11/2008 | F2 |
| DX-0899 | Email from Jennie Susanto to Hangseok Choi re Dept Spend budget | FSG01316262 - 267 | | Choi, Hangseok | 31 | 1/22/2009 | F2 |
| DX-0900 | U.S. Patent No. 7,110,270, Balakrishnan et al. | | | Choi, Hangseok | 32 | 9/19/2006 | F2 |
| DX-0901 | FSD210, FSD200 Datasheet | FCS0558997-FCS0559014 | | Choi, Hangseok | 1 | | F1 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0902 | FSDH321,FSDL321 Datasheet | FCS0326006-FCS0326025 | | Choi, Hangseok | 2 | | F1 |
| DX-0903 | Email dated 11/13/2003 re 'Green FPS task force minutes and preliminary definitions | FCS0313542-FCS0313543 | | Choi, Hangseok | 3 | | F1 |
| DX-0904 | Presentation Entitled: "Green FPS Biz Review" November 6, 2003 Power Conversion | FCS1023669-FCS1023700 | | Choi, Hangseok | 4 | | F1 |
| DX-0905 | Presentation Entitled: "Design Tools: Green FPS Task Force" Oscar Freitas Jan 2004 | FCS1174554-FCS1174565 | | Choi, Hangseok | 5 | | F1 |
| DX-0906 | Email dated 2/6/2004 re 're: reqeust for a Transformer supplier list' | FCS1113480-FCS1113481 | | Choi, Hangseok | 6 | | F1 |
| DX-0907 | FSD210 demo board 2004. Feb. 2 | FCS0616095-FCS0616105 | | Choi, Hangseok | 7 | | F1 |
| DX-0908 | FSD210 demo board 2004. Aug. 17 | FCS0298666-FCS0298670 | | Choi, Hangseok | 8 | | F1 |
| DX-0909 | FSD210 Engineering Evaluation Demo Board Report 2004.08.28 | FCS0394490-FCS0394520 | | Choi, Hangseok | 9 | | F1 |
| DX-0910 | FSDH0265RN schematic diagram | FCS0546374-FCS0546375 | | Choi, Hangseok | 10 | | F1 |
| DX-0911 | FSDL0365RN schematic diagram | FCS0589740-FCS0589741 | | Choi, Hangseok | 11 | | F1 |
| DX-0912 | Email dated 10/21/2003 re 're: Presentation Entitled: material for STB (FSDM0565R) with attachments | FCS01117236-FCS01117256 | | Choi, Hangseok | 12 | | F1 |
| DX-0913 | Email dated 9/26/2003 re "re: Target FPS for Set Top Box" with attachment | FCS0307788-FCS0307796 | | Choi, Hangseok | 13 | | F1 |
| DX-0914 | Email dated 3/15/2004 re "REL FSDM05/0765R and Inverter IC Promotion plan with attachment | FCS0312387-FCS0312412 | | Choi, Hangseok | 14 | | F1 |
| DX-0915 | Email dated 12/08/2003 re "re: FPS with Frequency Modulation for White Goods" | FCS0676000-FCS0676035 | | Choi, Hangseok | 15 | | F1 |
| DX-0916 | Email dated 8/3/2003 | FCS0692406 | | Choi, Hangseok | 16 | | F1 |
| DX-0917 | Email dated 7/14/2003 re "re: FPS Customer visits for Dr. Choi" | FCS0316343-FCS0316349 | | Choi, Hangseok | 17 | | F1 |
| DX-0918 | Analog Application Engineering Group Weekly Report 2003-08-14 | FCS0643256-FCS0643274 | | Choi, Hangseok | 18 | | F1 |
| DX-0919 | Email dated 11/23/2003 re "SPI for Samsung" | FCS0654269 | | Choi, Hangseok | 19 | | F1 |
| DX-0920 | Email dated 10/27/2004 re "re: Samsung LCD Monitor Project" | FCS648715-FCS0648716 | | Choi, Hangseok | 20 | | F1 |
| DX-0921 | Email dated 12/5/2003 re "FPS with Frequency Modulation for White Goods" | FCS0698339-FCS0698341 | | Choi, Hangseok | 21 | | F1 |
| DX-0922 | Email dated 12/8/2003 re "re: Motorola Power Supply Teardown" | FCS0315727-FCS0315728 | | Choi, Hangseok | 22 | | F1 |
| DX-0923 | Presentation Entitled: "Taiwan / South China Business Trip Report" Jan2 - Jan 9, 2005 - Power Supply Group | FCS0415811-FCS0415815 | | Choi, Hangseok | 23 | | F1 |
| DX-0924 | Presentation Entitled: "Fairchild Semiconductor Fairchild Power Switch (FPS)" June 2003  PDD Analog | FCS0396284-FCS0396481 | | Choi, Hangseok | 24 | | F1 |
| DX-0925 | Presentation Entitled: "Fairchild Semiconductor Green FPS" April 2004, PC Power Supply Group | FCS1038171-FCS1038424 | | Choi, Hangseok | 25 | | F1 |
| DX-0926 | Email from Becky Aceto to Allan Lam re Announcement - Ultra Portable Segment Update | FSG01396640 - 641 | | Chung, Richard | 1 | 5/20/2009 | F2 |
| DX-0927 | Email from Richard Chung to Justin Chiang, Allan Lam re PCIA WW Marketing bi-weekly WWk25 | FSG01396506 - 508 | | Chung, Richard | 2 | 6/29/2009 | F2 |
| DX-0928 | Email from Richard Chung to Kenny Chan re PCIA Demo Boards | FSG01251437 - 439 | | Chung, Richard | 3 | 5/23/2009 | F2 |
| DX-0929 | Email from Richard Chung to KE Hong re Power Conversion: EVBs for your lab | FSG01260491 - 496 | | Chung, Richard | 4 | 4/21/2009 | F2 |
| DX-0930 | Email from Richard Chung to KE Hong re PCIA WW Marketing WWk17 bi-weekly | FSG01260443 - 444 | | Chung, Richard | 5 | 5/3/2009 | F2 |
| DX-0931 | Email from Richard Chung to KE Hong re Electrolux Refrigerator: PSR Datasheet | FSG01260423 - 431 | | Chung, Richard | 6 | 4/28/2009 | F2 |
| DX-0932 | Email from James Sheen to Kevin Hsueh re SG6859A Opportunity at Sensus NC - electric meter PS - EAU2M+ | FSG01240609 - 620 | | Chung, Richard | 7 | 1/14/2009 | F2 |
| DX-0933 | Presentation Entitled: Fairchild Key Account Market Share Report, WW Sales & Marketing | FSG01395283 - 290 | | Chung, Richard | 9 | | F2 |
| DX-0934 | Email from Richard Chung to KE Hong re FSEZ1216 requote NEED PRICING: Intelbras 300mA SMPS - Meeting | FSG01254795 - 796 | | Chung, Richard | 11 | 2/11/2009 | F2 |
| DX-0935 | Email from KE Hong to Richard Chung re Power Supply accounts: Status of PI x Fairchild in Brazil | FSG01245323 - 324 | | Chung, Richard | 12 | 4/13/2009 | F2 |
| DX-0936 | Email from Sofia Lin to KE Hong re Intelbras - Hot | FSG01254797 - 801 | | Chung, Richard | 13 | 1/27/2009 | F2 |
| DX-0937 | Email from Kenny Chan to Sofia Lin re SG6742 and PI Lawsuits against Fairchild - Black & Decker design | FSG01243808 - 817 | | Chung, Richard | 15 | 2/6/2009 | F2 |
| DX-0938 | Email from Richard Chung to Kenny Chan re SG6742 and PI Lawsuits against Fairchild - Black & Decker design | FSG01243818 - 849 | | Chung, Richard | 16 | 12/19/2009 | F2 |
| DX-0939 | Letter: Allan Lam to Devin Zeng (Chicony) re Fairchild FSBH Series & Power Integrations Lawsuit (other letter and Email froms attached) | FSG01244543 - 550 | | Chung, Richard | 14 | 2/20/2009 | F2 |
| DX-0940 | Fairchild notice to customers re lawsuit initiated against Power Integrations, by Allan Lam | | | Chung, Richard | 10 | | F2 |
| DX-0940.1 | Fairchild notice to customers re lawsuit initiated against Power Integrations, by Allan Lam | | | Hong, KE | 21F2 | | F2 |
| DX-0940.2 | Fairchild notice to customers re lawsuit initiated against Power Integrations, by Allan Lam | | | Lam, Allan | 3 | | F2 |
| DX-0941 | Email from Richard Chung re: PCIA EVB boards sold thru wwk49 | FSGIV00145463-FSGIV00145464 | | Chung, Richard | 3 | 12/18/2012 | F4 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0942 | Email from Alex Craig re: FL7730 demoboards | FSGIV00100357-FSGIV00100361 | | Chung, Richard | 4 | 10/25/2010 | F4 |
| DX-0943 | Email from Richard Chung re: Dell adapter specification (forward-looking projects) | FSG01397588-FSG01397593 | | Chung, Richard | 5 | 6/30/2009 | F4 |
| DX-0944 | Email from Sangtae Im re: POWI: Reports Q1 Upside, a Strong Q2 Guide and New Product Design Wins | FSGIV00179011-FSGIV00179016 | | Chung, Richard | 6 | 4/28/2009 | F4 |
| DX-0945 | Email from KE Hong re: your new organization | FSGIV00188678-FSGIV00188690 | | Chung, Richard | 7 | 4/19/2011 | F4 |
| DX-0946 | Email from Justin Chiang re: Competitive analysis | FSGIV00100536-FSGIV00100537 | | Chung, Richard | 8 | 6/20/2010 | F4 |
| DX-0947 | Email from KE Hong re: Smart Power Meter | FSGIV00099463-FSGIV00099465 | | Chung, Richard | 9 | 11/16/2009 | F4 |
| DX-0947.1 | Email from KE Hong re: Smart Power Meter | FSGIV00099463-FSGIV00099465 | | Lin, Gary | 21 | 11/16/2009 | F4 |
| DX-0948 | Email from Jason Guo re: Xsformer design review | FSGIV00115597 | | Chung, Richard | 10 | 9/22/2011 | F4 |
| DX-0949 | Power Integrations Flyback Transformer Design powerpoint | FSGIV00115608-FSGIV00115617 | | Chung, Richard | 11 | | F4 |
| DX-0950 | Email from James Sheen re: GE review power conversion | FSGIV00103930-FSGIV00103934 | | Chung, Richard | 12 | 8/16/2010 | F4 |
| DX-0951 | Email from Richard Chung re: PI Pipeline Newsletter | FSGIV00141168-FSGIV00141173 | | Chung, Richard | 13 | 11/5/2009 | F4 |
| DX-0952 | Email from James Lee re: PI-Link switch-PH | FSGIV00088898-FSGIV00088900 | | Chung, Richard | 14 | 4/13/2011 | F4 |
| DX-0953 | Email from James Lee re: PI-Link switch-PH | FSGIV00090748-FSGIV00090751 | | Chung, Richard | 15 | 4/13/2011 | F4 |
| DX-0954 | Email from Mike McPoland re: Power Supply Web Designer-Usage Alert | FSGIV00138010-FSGIV00138011 | | Chung, Richard | 16 | 7/26/2012 | F4 |
| DX-0955 | Redacted Email String from Pond to Kim re Product Marketing Hold dated 11/2/2007 with attachments | | | Conrad, Robert | DX-791 | | F1 |
| DX-0956 | Fairchild Press Release dated December 12, 2008 'Fairchild Semiconductor Announces Restructuring and Updated Guidance for the Fourth Quarter of 2008' | FCS1725123-125 | | Conrad, Robert | 39 | | F1 |
| DX-0957 | Declaration of Robert Conrad dated 12/20/2007 attaching exhibits A-D | | | Conrad, Robert | 38 | | F1 |
| DX-0958 | Email String from Kim re Customer Letter Request dated 1-15-2009 | FCS1725762-65 | | Conrad, Robert | 37 | | F1 |
| DX-0959 | Technical Report in Korean | FCS0354603-43 | | Conrad, Robert | 32 | | F1 |
| DX-0960 | Technical Report in Korean | FCS1330824-33 | | Conrad, Robert | 33 | | F1 |
| DX-0961 | Patent License Agreement between Fairchild Semiconductor and Intersil Corporation dated March 30, 2006 | I 000704-09 | | Conrad, Robert | 34 | | F1 |
| DX-0962 | Document Provided to Power Integrations' Counsel by Fairchild's litigation counsel | FCS1693193-227 | | Conrad, Robert | 35 | | F1 |
| DX-0963 | Letter from Beaver to Dongyang Instrument Ind. Co., Ltd., dated November 16, 2004 | FCS1688393 | | Conrad, Robert | 27 | | F1 |
| DX-0964 | Letter from Bristow to Williams (Dyson Ltd.) dated January 12, 2006 | FCS1689450-51 | | Conrad, Robert | 26 | | F1 |
| DX-0965 | Fairchild Supplemental Responses to Power Integrations Interrogatory Nos. 1-3, 6, 8-13 | | | Conrad, Robert | 10 | | F1 |
| DX-0966 | Email String from Jintae Kim to Kyongmin Kim re: WW50 Weekly update for greenFPS | FCS1311754-55 | | Conrad, Robert | 1 | | F1 |
| DX-0967 | Email String from Kim to Conrad re: FPS Cost Analysis | FCS0476719-21 | | Conrad, Robert | 2 | | F1 |
| DX-0968 | Email String from Kim to Conrad re: Green FPS Support for design wins | FCS1121139-141 | | Conrad, Robert | 3 | | F1 |
| DX-0969 | Document Entitled: FSCM0565RD Production Development Project Business Case 09/17/2004 | FCS0039327-344 | | Conrad, Robert | 6 | | F1 |
| DX-0970 | Document Entitled: ICG AOP R&D Overview Bob Conrad | FCS0491013-034 | | Conrad, Robert | 7 | | F1 |
| DX-0971 | Email String from Lim to Conrad re: The requirement for SDG5 | FCS0519459-490 | | Conrad, Robert | 8 | | F1 |
| DX-0972 | Email String from Kim to Kim re: WW47 weekly update for green FPS | FCS0717502-505 | | Conrad, Robert | 9 | | F1 |
| DX-0973 | Email String from Kim to Huh re: Green FPS support for design wins | FCS1111927-929 | | Conrad, Robert | 4 | | F1 |
| DX-0974 | Email String from Kim to Kim re: The requirement for SDG5 | FCS1190656-59 | | Conrad, Robert | 5 | | F1 |
| DX-0975 | Email from KE Hong re: Visit Foxlink H.K...by Aeco Henry | FSGIV00092716-FSGIV00092731 | | Hong, KE | 28 | 8/29/2011 | F4 |
| DX-0976 | Email from KE Hong re: your new organization | FSGIV00189603-FSGIV00189616 | | Hong, KE | 29 | 4/24/2011 | F4 |
| DX-0977 | Email from KE Hong re: Please see my plan in U.S. | FSGIV00116766-FSGIV00116767 | | Hong, KE | 30 | 5/2/2011 | F4 |
| DX-0978 | Email from KE Hong re: your new organization | FSGIV00183091-FSGIV00183097 | | Hong, KE | 33 | 4/10/2011 | F4 |
| DX-0979 | Email from KE Hong re: MWC Meeting Minutes-Samsung R&D-Mr. TM Roh | FSGIV00097355-FSGIV00097360 | | Hong, KE | 32 | 3/2/2013 | F4 |
| DX-0980 | Email from KE Hong re: Superior-Updated notes for 10W Charger | FSGIV00131630-FSGIV00131634 | | Hong, KE | 34 | 5/11/2012 | F4 |
| DX-0981 | Email from KE Hong re: 301 | FSGIV00136704-FSGIV00136706 | | Hong, KE | 23 | 2/9/2012 | F4 |
| DX-0982 | Email from KE Hong re: Meeting confirmed-Superior Communications-10am June 1st-Presentation Entitled:s form PL given during visit to Taiwan | FSGIV00189501-FSGIV00189508 | | Hong, KE | 25 | 5/25/2011 | F4 |
| DX-0983 | Document Entitled: Power Conversion Executive_Summary Weekly Report WW07, 2013 | FSGIV00207049-FSGIV00207067 | | Hong, KE | 26 | | F4 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-0984 | Email from KE Hong re: Merlot project status | FSGIV00116929-FSGIV00116933 | | Hong, KE | 27 | 4/1/2011 | F4 |
| DX-0985 | Presentation Entitled: Fairchild PSR and EZSwitch for Charger and low power off-line LED, Power Conversion, PLM_Adaptor | FSG00068386 - 409 | | Hong, KE | 16 | Jul-08 | F2 |
| DX-0986 | Email from Sheng-Fu Hsu to Jason Lai re QRA report | FSG00326455 - 456 | | Hong, KE | 3F2 | 7/6/2009 | F2 |
| DX-0987 | Fairchild notice to customers re lawsuit initiated against Power Integrations, by Allan Lam | | | Hong, KE | 21F2 | | F2 |
| DX-0988 | Email from Becky Aceto to KE Hong re Announcement - Ultra Portable Segment Update | FSG1256619 | | Hong, KE | 1F2 | 5/19/2009 | F2 |
| DX-0989 | Email from KE Hong to Jonathan Harper re Braun Electric Toothbrush | FSG01240638 - 656 | | Hong, KE | 2F2 | 4/29/2009 | F2 |
| DX-0990 | Email from KE Hong to Sheng-Fu Hsu re Issues found on new revision AS1207 | FSG00326438 - 454 | | Hong, KE | 4F2 | 7/9/2009 | F2 |
| DX-0991 | Email from Steven Huang to Helena Chang re Salcomp FAN103 for <30mW mobile battery charger project meeting update 3rd of Dec Finland | FSG00174549 - 570 | | Hong, KE | 5F2 | 12/15/2008 | F2 |
| DX-0992 | Email from KE Hong to Marko Hagstrom re FAN103 CC-loop delay issue in Salcomp (Urgent) | FSG00058215 - 232 | | Hong, KE | 6F2 | 2/24/2009 | F2 |
| DX-0993 | Email from KE Hong to Justin Ahn re FAN 102 IPR | FSG01260844 - 850 | | Hong, KE | 7F2 | 10/9/2008 | F2 |
| DX-0994 | Email from Celio Santos to KE Hong re Fairchild vs PI | FSG01254772 - 778 | | Hong, KE | 8F2 | 1/17/2009 | F2 |
| DX-0995 | Email from Tom Yang to Gary Lin re Korea (LG Charger) Biz trip and Charger Biz report | FSG00177591 - 593 | | Hong, KE | 9F2 | 4/30/2008 | F2 |
| DX-0996 | Email from Gary Lin to KE Hong re PI law sue status in Korea | FSG01280945 - 946 | | Hong, KE | 10F2 | 11/3/2008 | F2 |
| DX-0997 | Email from Gary Lin to KE Hong re POWI downgrade | FSG01254784 - 792 | | Hong, KE | 11F2 | 3/16/2009 | F2 |
| DX-0998 | Email from KE Hong to Samsung re Customer Letter Re PI Suit | FSG01238981 - 982 | | Hong, KE | 12F2 | 11/25/2008 | F2 |
| DX-0999 | Email from KE Hong to Naver attaching PI litigation Customer Letter, December 17, 2008 | FSG01271209 - 210 | | Hong, KE | 13F2 | 4/15/2009 | F2 |
| DX-1000 | Presentation Entitled: Fairchild PLM_Low Power_Products, Power Conversion | FSG00324229 - 321 | | Hong, KE | 14F2 | 6/29/2009 | F2 |
| DX-1001 | Presentation Entitled: Fairchild 2009 Low Power PCIA, Low Power PLM Power Conversion | FSG00013451 - 472 | | Hong, KE | 15F2 | Jan-09 | F2 |
| DX-1002 | Presentation Entitled: Fairchild 6V 800mA built in EZ1016, Salcomp Charger Demo | FSG00061950 - 962 | | Hong, KE | 17F2 | 8/31/2007 | F2 |
| DX-1003 | Email from KE Hong to Leon Lee re PI just released a new LNK632 LNKII switch | FSG01254793 - 794 | | Hong, KE | 18F2 | 2/28/2009 | F2 |
| DX-1004 | Email from KE Hong to Justin Kim re PI PSR device analysis | FSG01254618 - 618 | | Hong, KE | 19F2 | 4/23/2009 | F2 |
| DX-1005 | Email from Youngman Cho to KE Hong re Korea Regional Marketing & FAE Weekly WW43 | FSG01285623 - 628 | | Hong, KE | 20F2 | | F2 |
| DX-1006 | FAN302UL PWM Controller for Low Standby Power Battery-Charger Applications-mWSaver Technology | None | | Huang, WH | 2 | Dec. 2011 | F4 |
| DX-1007 | System General High-Integrated Green-mode PWM Controller product specification (SG6841) | FSGV0043116-FSGV0043129 | | Huang, WH | 3 | 5/22/2003 | F4 |
| DX-1008 | SG Schematic (SG6841) | FSGIV0000053-FSGIV0000093 | | Huang, WH | 4 | 5/3/2002 | F4 |
| DX-1009 | FAN100 Primary-Side-Control PWM Controller Data Sheet | FSGIV00010969-FSGIV00010982 | | Huang, WH | 5 | Aug. 2008 | F4 |
| DX-1010 | FAN100 Schematics | FSG01168033-FSG0168166 | | Huang, WH | 6 | 4/3/2008 | F4 |
| DX-1011 | FAN301UL schematic | FSGIV00015944 | | Huang, WH | 7 | 3/21/2011 | F4 |
| DX-1012 | System General High-Integrated Green-mode PWM Controller product specification (SG6846) | None | | Huang, WH | 9 | 1/23/2006 | F4 |
| DX-1013 | SG6846 Schematics | FSGIV00003783-FSGIV00004004 | | Huang, WH | 10 | 5/6/2004 | F4 |
| DX-1014 | Fairchild SG6846A Highly Integrated Green-mode PWM Controller Data Sheet | FSG00035477-FSG00035491 | | Huang, WH | 11 | Sept. 2008 | F4 |
| DX-1015 | SG6846A Schematics | FSG00005383-FSG00005436 | | Huang, WH | 12 | 10/4/2006 | F4 |
| DX-1016 | Highly-Integrated Green-Mode PWM Controller LTA504SGZFA Data Sheet | FSG02192077-FSG02192089 | | Huang, WH | 13 | 8/20/2008 | F4 |
| DX-1017 | LTA504SG Schematics | FSGIV00028906-FSGIV00028953 | | Huang, WH | 14 | 5/6/2004 | F4 |
| DX-1018 | Highly-Integrated Green-Mode PWM Controller SG6842J Data Sheet | FSGV0044050-FSGV0044062 | | Huang, WH | 15 | 12/6/2005 | F4 |
| DX-1019 | SG6842J Schematics | FSGV0044167-FSGV0044211 | | Huang, WH | 16 | 12/30/2004 | F4 |
| DX-1020 | Highly-Integrated Green-Mode PWM Controller SG5842J Data Sheet | FSG00029505-FSG00029516 | | Huang, WH | 17 | 3/20/2006 | F4 |
| DX-1021 | SG5842J Schematics | FSG00028169-FSG00028216 | | Huang, WH | 18 | 6/9/2006 | F4 |
| DX-1022 | Highly-Integrated Green-Mode PWM Controller SG5841J Data Sheet | FSG00028127-FSG00028141 | | Huang, WH | 19 | 8/18/2008 | F4 |
| DX-1023 | SG5841J Schematics | FSG00004719-FSG00004769 | | Huang, WH | 20 | 8/7/2006 | F4 |
| DX-1024 | FAN6747 Schematics | FSG02094790-FSG02094861 | | Huang, WH | 22 | 6/18/2009 | F4 |
| DX-1025 | SG6742 Schematics | FSGIV0042805-FSGV0042853 | | Huang, WH | 26 | 6/26/2008 | F4 |
| DX-1026 | SG6849 Schematics | FSG02211702-FSG02211747 | | Huang, WH | 27 | 5/22/2006 | F4 |
| DX-1027 | Low-Power Green-Mode PWM Flyback Power Controller Without Secondary-Side Feedback SG6849 Data Sheet | FSG00386151-FSG00386163 | | Huang, WH | 28 | 4/23/2003 | F4 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-1028 | SG6859A Low-Cost, Green-Mode PWM Controller for Flyback Converters Data Sheet | FSGIV00069565-FSGIV00069576 | | Huang, WH | 29 | Mar. 2008 | F4 |
| DX-1029 | SG6859A Schematics | FSG00006227-FSG00006486 | | Huang, WH | 30 | 7/25/2007 | F4 |
| DX-1030 | Defendant Fairchild Semiconductor Int'l, Inc.'s Responses to Plaintiff Power Integrations' Second Set of Interrogatories (Nos. 11-23) | None | | Huang, WH | 8 | 3/29/2013 | F4 |
| DX-1031 | Declaration of W.H. Huang in support of Fairchild's Opposition to Power Integrations' Motion to Exclude Testiony of Dr. Gu-Yeon Wei and Dr. Jonathan Wood (Case No. 09-5235-MMC "*Fairchild IV*" Dkt. No. 284-4) | | | Huang, WH | | | F4 |
| DX-1032 | Organizational Chart, Power Conversion, HK Kim, | FCS0524280 | | Im, San-Tae | 1 | May-05 | F1 |
| DX-1033 | Korean Sales & Marketing Organization | FCS0524276 – 77 | | Im, San-Tae | 2 | Mar-05 | F1 |
| DX-1034 | Power Supply Strategy, Power Conversion | FCS0640957 – 1009 | | Im, San-Tae | 5 | 7/28/2004 | F1 |
| DX-1035 | Project/Customer Spreadsheet | FCS0683113 – 22 | | Im, San-Tae | 6 | | F1 |
| DX-1036 | Green FPS (Power Saver) Launching Plan | FCS0641675 – 93 | | Im, San-Tae | 7 | 8/29/2003 | F1 |
| DX-1037 | PD Analog Business Review | FCS0507189 – 223 | | Im, San-Tae | 8 | 3/10/2003 | F1 |
| DX-1038 | Product Strategies for SPS & STD ICs | FCS0503931 – 80 | | Im, San-Tae | 10 | 5/9/2000 | F1 |
| DX-1039 | Power Conversion Regional Marketing Meeting at Bucheon Korea | FCS0681900 – 2017 | | Im, San-Tae | 11 | 4/21/2004 | F1 |
| DX-1040 | AP FPS Plan | FCS0682646 – 68 | | Im, San-Tae | 12 | 12/15/2002 | F1 |
| DX-1041 | Power Conversion Biz Review, HK Kim | FCS0083906 – 819 | | Im, San-Tae | 15 | Jul-04 | F1 |
| DX-1042 | Spreadsheet re Opportunity for PDD Analog over WW | FCS0705368 – 83 | | Im, San-Tae | 16 | 1/9/2004 | F1 |
| DX-1043 | Power Conversion Weekly Report WW05 | FCS1015860 – 89 | | Im, San-Tae | 17 | | F1 |
| DX-1044 | Spreadsheet re Bill & BKG_CY04 | FCS0558111 – 28 | | Im, San-Tae | 18 | 8/5/2004 | F1 |
| DX-1045 | E-mail from Seunghwan Lee to Taehyun Kim re Green FPS | FCS0669312 – 40 | | Im, San-Tae | 20 | 8/11/2003 | F1 |
| DX-1046 | E-mail from Seunghwan Lee to HK Kim re TOP 12 Program | FCS1118480 – 97 | | Im, San-Tae | 21 | 3/4/2004 | F1 |
| DX-1047 | E-mail from Sangtae Im to Atman Chau re SPI for Samsung | FCS0660739 – 42 | | Im, San-Tae | 22 | 11/28/2004 | F1 |
| DX-1048 | E-mail from Alan Hu to Atman Chau re SPI/Supreme | FCS0659728 – 30 | | Im, San-Tae | 23 | 12/26/2004 | F1 |
| DX-1049 | E-mail from Robin Zhang to Sangtae Im re 10watt charger | FCS0339576 | | Im, San-Tae | 24 | 11/10/2004 | F1 |
| DX-1050 | E-mail from Chuil Park to Danny Lin re PL for PC | FCS0676533 – 40 | | Im, San-Tae | 25 | 5/10/2004 | F1 |
| DX-1051 | E-mail from Seunghwan Lee to Atman Chau re Green FPS | FCS0648686 – 87 | | Im, San-Tae | 26 | 8/14/2003 | F1 |
| DX-1052 | E-mail from HK Kim to Changsik Lim re Hughes FSCM0765RD | FCS0520709 – 12 | | Im, San-Tae | 27 | 8/29/2003 | F1 |
| DX-1053 | E-mail from Brent Markman to Sangtae Im et al. re Xbox | FCS0309575 | | Im, San-Tae | 28 | 5/12/2003 | F1 |
| DX-1054 | Fairchild Semiconductor FSDH0165 | FCS0146190 – 99 | | Jang, K.O. | 1 | 9/21/2000 | F1 |
| DX-1055 | Technical Report | FCS0354603 – 43 | | Jang, K.O. | 2 | 3/24/1999 | F1 |
| DX-1056 | Fairchild Semiconductor FSD200 Fairchild Power Switch (FPS) | FCS0562318 – 29 | | Jang, K.O. | 3 | 11/20/2003 | F1 |
| DX-1057 | Fairchild Semiconductor FSD200, FSD201 Fairchild Power Switch | FCS0619789 – 9800 | | Jang, K.O. | 4 | 7/9/2003 | F1 |
| DX-1058 | Fairchild Semiconductor FSD210H Green Mode 700 V | FCS0597922 – 37 | | Jang, K.O. | 5 | 10/7/2004 | F1 |
| DX-1059 | Fairchild Semiconductor FSDM311 Fairchild Power Switch (FPS) | FCS0553036 – 45 | | Jang, K.O. | 6 | 11/11/2003 | F1 |
| DX-1060 | Fairchild Semiconductor FSDL365RN, FSDM365RN datasheet | FCS0344990 – 5011 | | Jang, K.O. | 7 | 6/17/2004 | F1 |
| DX-1061 | Fairchild Semiconductor FSDL0365RNB, FSDM0365RNB datasheet | | | Jang, K.O. | 8 | 4/26/2005 | F1 |
| DX-1062 | Fairchild Semiconductor FSD210 Fairchild Power Switch (FPS) | FCS0471645 – 52 | | Jang, K.O. | 9 | 2/26/2003 | F1 |
| DX-1063 | Fairchild Semiconductor FSD21x-Series FSD210, FSD211 | FCS0617260 – 71 | | Jang, K.O. | 10 | 7/9/2003 | F1 |
| DX-1064 | FSD210 schematics | FCS0026915 – 60 | | Jang, K.O. | 11 | 7/18/2003 | F1 |
| DX-1065 | R&D Plan | FCS0128753 – 75 | | Jang, K.O. | 12 | 9/17/2003 | F1 |
| DX-1066 | The Power Franchise booklet | FCS0015443 – 70 | | Jang, K.O. | 13 | | F1 |
| DX-1067 | FSD211H Design Review2 | FCS0123427 – 36 | | Jang, K.O. | 14 | 1/19/2005 | F1 |
| DX-1068 | FSDH321 schematics | FCS0077290 – 317 | | Jang, K.O. | 15 | 12/12/2003 | F1 |
| DX-1069 | Technical Report | FCS0010192 – 229 | | Jang, K.O. | 17 | 5/7/2004 | F1 |
| DX-1070 | Product Development Tracking | FCS0129047 – 49 | | Jang, K.O. | 18 | | F1 |
| DX-1071 | FSDM311 schematics | FCS0077017 – 40 | | Jang, K.O. | 19 | 11/9/2004 | F1 |
| DX-1072 | Technical Report | FCS0002902 – 39 | | Jang, K.O. | 20 | 7/7/2004 | F1 |
| DX-1073 | Fairchild Semiconductor FSDM0265RNC | FCS0546429 – 46 | | Jang, K.O. | 21 | 2/26/2004 | F1 |
| DX-1074 | Fairchild PWM Control IC (FAN7602) | FCS0618772 – 86 | | Jang, K.O. | 22 | Oct-03 | F1 |
| DX-1075 | Frequency Modulation for the EMI (Electromagnetic Interference) | FCS0142533 – 48 | | Jang, K.O. | 23 | | F1 |
| DX-1076 | Frequency Modulation for the EMI (Electromagnetic Interference) | FCS0099595 – 610 | | Jang, K.O. | 24 | | F1 |
| DX-1077 | The 24th Weekly Report of SPS Group 2001 6. 16. | FCS0486685 – 89 | | Jang, K.O. | 25 | 6/16/2001 | F1 |
| DX-1078 | Extending Power Capability While Simplifying Design Process | FCS1173125 – 27 | | Jang, K.O. | 26 | Mar-01 | F1 |
| DX-1079 | E-mail re Frequency Jitter with US Patent attached, Patent number 6,229,366 | FCS0704049 – 67 | | Jang, K.O. | 28 | 6/13/2001 | F1 |
| DX-1080 | Oscillator and DAC in FPS | WOO 00001 – 00005 | | Jang, K.O. | 30 | | F1 |
| DX-1081 | Introduction of SDG3/ SDG4 Process HV Part | FCS0468204 – 36 | | Jeon | 21 | Apr-03 | F1 |
| DX-1082 | Design/Process Change Notification – Final | FCS1661316 – 1317 | | Kim, HK | 1 | | F1 |
| DX-1083 | E-mail from HK Kim | FCS0415484 – 513 | | Kim, HK | 2 | 2/4/2005 | F1 |
| DX-1084 | E-mail from Jonathan Harper | FCS0307103 – 108 | | Kim, HK | 3 | 12/8/2003 | F1 |
| DX-1085 | Power Conversion Workshop booklet | FCS0502443 – 530 | | Kim, HK | 4 | 7/16/2004 | F1 |
| DX-1086 | E-mail from HK Kim to Sangtae Im | FCS1111840 – 841 | | Kim, HK | 5 | 10/27/2004 | F1 |
| DX-1087 | E-mail from Robert Gendron to Brent Rowe | FCS0307176 – 181 | | Kim, HK | 6 | 7/14/2003 | F1 |
| DX-1088 | E-mail from Chau to Kang; HK Kim | FCS0645563 – 566 | | Kim, HK | 7 | 11/4/2003 | F1 |
| DX-1089 | E-mail from Soonhong Park | FCS0517053 – 54 | | Kim, HK | 8 | 1/23/2005 | F1 |
| DX-1090 | E-mail from Dan Godbout to Sangtae Im | FCS0307884 – 887 | | Kim, HK | 9 | 8/21/2003 | F1 |
| DX-1091 | E-mail from HK Kim to Terry Johnson | FCS1119566 – 567 | | Kim, HK | 10 | 10/28/2003 | F1 |
| DX-1092 | E-mail from HK Kim | FCS0652361 – 363 | | Kim, HK | 11 | 2/10/2005 | F1 |
| DX-1093 | E-mail from Jintae Kim to Robert Gendron | FCS1666591 | | Kim, HK | 12 | 2/6/2005 | F1 |
| DX-1094 | E-mail from Sangtae Im to Seunghwan Lee | FCS0651431 – 432 | | Kim, HK | 13 | 8/17/2003 | F1 |
| DX-1095 | Fairchild Worldwide Org Chart | FSG00324210-12 | | Lam, Allan | 1 | | F2 |
| DX-1096 | Fairchild & SG Parts Newly Accused in Fairchild II Lawsuit | | | Lam, Allan | 2 | | F2 |
| DX-1097 | Fairchild notice in foreign language to customers re lawsuit initiated against Power Integrations, by Allan Lam | | | Lam, Allan | 4 | | F2 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-1098 | Fairchild notice in foreign language to customers re lawsuit initiated against Power Integrations, by Allan Lam | | | Lam, Allan | 5 | | F2 |
| DX-1099 | Letter: Fairchild to customers re Patent infringement lawsuits with Power Integrations | FSG00205791 - 795 | | Lam, Allan | 6 | 6/4/2008 | F2 |
| DX-1100 | Email from Yasuhiko Itoh to Allan Lam re WW29 Japan weekly report | FSG01396454 - 458 | | Lam, Allan | 8 | | F2 |
| DX-1101 | Email from Gary Lin to Justin Chiang re Power Conversion Taiwan, WW34 weekly Aug. 25th, 2008 | FSG00371312 - 318 | | Lam, Allan | 9 | 8/25/2008 | F2 |
| DX-1102 | Email from Allan Lam to Kevin Emmons re The Two-way Street | FSG01394740 - 741 | | Lam, Allan | 10 | 1/20/2009 | F2 |
| DX-1103 | Email from Gary Lin to Justin Chiang re Power Conversion Taiwan, WW44 weekly Nov. 3 2008 | FSG01302891 - 899 | | Lam, Allan | 11 | 11/3/2008 | F2 |
| DX-1104 | Email from Gary Lin to Justin Chiang re Power Conversion Taiwan, WW45 weekly Nov. 10 2008 | FSG00363052 - 060 | | Lam, Allan | 12 | 11/10/2008 | F2 |
| DX-1105 | Email from Gary Lin to Justin Chiang re Power Conversion Taiwan, WW36 weekly Sept. 8 2008 | FSG00371287 - 295 | | Lam, Allan | 13 | 9/8/2008 | F2 |
| DX-1106 | BCD SPS Development Plan | FCS0494668 – 72 | | Lim, C.S. | 1 | 7/15/2002 | F1 |
| DX-1107 | E-mail from HK Kim to Changsik Lim re: FPS 2004 development | FCS0518029 – 34 | | Lim, C.S. | 2 | 8/21/2003 | F1 |
| DX-1108 | E-mail from Terry Johnson to Sangtae IM re: Green FPS update | FCS0514354 – 59 | | Lim, C.S. | 3 | 7/8/2003 | F1 |
| DX-1109 | E-mail from Oscar Freitas to Terry Johnson re: San Jose trip report | FCS0520806 – 09 | | Lim, C.S. | 4 | 8/15/2003 | F1 |
| DX-1110 | E-mail from Changsik Lim to Oscar Freitas re: AN-4137 edits | FCS1010471 – 74 | | Lim, C.S. | 5 | 12/17/2003 | F1 |
| DX-1111 | E-mail from Bob Conrad to Changsik Lim re: requirement for SDG5 | FCS1002109 – 14 | | Lim, C.S. | 6 | 1/6/2005 | F1 |
| DX-1112 | E-mail from C.S. Lim to DeokJung Kim re: list of relevant patents | FCS1006486 – 87 | | Lim, C.S. | 7 | 2/3/2003 | F1 |
| DX-1113 | Comparison & Analysis of Patent PI (US 6,249,876) vs. FSC (Frequency Modulation) | FCS0577195 – 198 | | Lim, C.S. | 8 | | F1 |
| DX-1114 | Combined Declaration and Power of Attorney - Switching Control Circuit with Variable Switching Frequency for Primary-Side-Controlled Power Converters ('780 patent file history) | | | Lin, Gary | 1 | 12/17/2009 | F2 |
| DX-1115 | Email re: power conversion group reorganization | FSG01322128 | FSG01322130 | Lin, Gary | 10 | 12/17/2009 | F2 |
| DX-1116 | Emails re: Fairchild efforts to sell LTA703 to Lite-On | FSG01295234 | FSG01295237 | Lin, Gary | 11 | 12/17/2009 | F2 |
| DX-1117 | Fairchild 2009 investor presentation | | | Lin, Gary | 12 | 12/17/2009 | F2 |
| DX-1118 | New product schedule spreadsheet | FSG00156665 | FSG00156665 | Lin, Gary | 13 | 12/17/2009 | F2 |
| DX-1119 | Email re: Technical Analysis of LinkSwitch-II | FSG01252109 | FSG01252110 | Lin, Gary | 14 | 12/17/2009 | F2 |
| DX-1120 | Invoice from SG to Emerson Network Power | FSG00250321 | FSG00250321 | Lin, Gary | 15 | 12/17/2009 | F2 |
| DX-1121 | Email re: Potential for over 100-200 million PWM controllers/power switches for metering | FSG01240568 | FSG01240573 | Lin, Gary | 16 | 12/17/2009 | F2 |
| DX-1122 | Email re: Potential for over 100-200 million PWM controllers/power switches for metering (feasibility of FAN103 for power meters) | FSG01244524 | FSG01244542 | Lin, Gary | 17 | 12/17/2009 | F2 |
| DX-1123 | Email re: Charger Market Survey attachment | FSG00173456 | FSG00173477 | Lin, Gary | 18 | 12/17/2009 | F2 |
| DX-1124 | Email re: NDA Process (inquiry from Phihong about Fairchild/PI litigation) | FSG01244552 | FSG01244561 | Lin, Gary | 19 | 12/17/2009 | F2 |
| DX-1125 | SG584x Replacement Solutions for SG684x | FSG00049853 | FSG00049864 | Lin, Gary | 2 | 12/17/2009 | F2 |
| DX-1126 | Email re: Fairchild filing suit against Power Integrations | FSG01244551 | FSG01244551 | Lin, Gary | 20 | 12/17/2009 | F2 |
| DX-1127 | Email re: Border line datasheet renovation | FSG01244500 | FSG01244520 | Lin, Gary | 22 | 12/17/2009 | F2 |
| DX-1128 | Power Integrations TopTOP323-234 datasheet | | | Lin, Gary | 3 | 12/17/2009 | F2 |
| DX-1129 | TNY256 datasheet, July 2001 | | | Lin, Gary | 4 | 12/17/2009 | F2 |
| DX-1130 | U.S. Patent 7,110,270 | | | Lin, Gary | 5 | 12/17/2009 | F2 |
| DX-1131 | SG primary-side control chip versus prior art | FSG00149035 | FSG00149156 | Lin, Gary | 6 | 12/17/2009 | F2 |
| DX-1132 | SG/FCS Merger Update | FSG00194030 | FSG00194080 | Lin, Gary | 8 | 12/17/2009 | F2 |
| DX-1133 | Email re: Korea (LG Charger) | FSG00177597 | FSG00177599 | Lin, Gary | 9 | 12/17/2009 | F2 |
| DX-1134 | Letter from Allan Lam to customers regarding Patent litigation against Power Integrations | FSGIV00080511-FSGIV00080515 | | Lin, Gary | 12 | 6/1/2012 | F4 |
| DX-1135 | Letter from Gary Lin to customers regarding Patent litigation against Power Integrations | FSGIV00080509-FSGIV00080510 | | Lin, Gary | 13 | 9/6/2012 | F4 |
| DX-1136 | Email from KE Hong re: Smart Power Meter | FSGIV00099463-FSGIV00099465 | | Lin, Gary | 21 | 11/16/2009 | F4 |
| DX-1137 | Email from Gary Lin re: power conversion Taiwan, WW34 weekly Aug. 27 | FSG02042733-FSG02042735 | | Lin, Gary | 3 | 8/27/2007 | F4 |
| DX-1138 | Document Entitled: 2009 SBP Power Conversion | FSGIV00178961-FSGIV00179000 | | Lin, Gary | 4 | 5/19/2009 | F4 |
| DX-1139 | Email from Adrian Chu re: Today's biz team review | FSGIV00100481-FSGIV00100506 | | Lin, Gary | 5 | 7/15/2010 | F4 |
| DX-1140 | Email from KE Hong re: please see my opinion for my plan | FSGIV00184367-FSGIV00184369 | | Lin, Gary | 6 | 4/24/2011 | F4 |
| DX-1141 | Document Entitled: Consumer Power Conversion 2011 SBP | FSGIV00084453-FSGIV00084482 | | Lin, Gary | 7 | Apr. 2011 | F4 |
| DX-1142 | List of System General customers who received letters associated with ITC matter | SG0225089 | | Lin, Gary | 8 | | F4 |
| DX-1143 | Letter of Intellectual Property Rights Warranty from System General to Flextronics Int'l USA | SG0402149-SG0402150 | | Lin, Gary | 10 | 9/2/2005 | F4 |
| DX-1144 | Document Entitled: 2009 SBP Power Conversion | FSGIV00178485-FSGIV00178559 | | Lin, Gary | 11 | 7/13/2009 | F4 |
| DX-1145 | Email from Donghye Cho re: FS501S related projects | FSGIV00100862-FSGIV00100863 | | Lin, Gary | 14 | 5/26/2010 | F4 |
| DX-1146 | List of Fairchild product IDs and Fab locations | None | | Lin, Gary | 15 | | F4 |
| DX-1147 | Document Entitled: Weekly update - Consumer Product line Presentation | FSGIV00082791-FSGIV00082814 | | Lin, Gary | 16 | | F4 |
| DX-1148 | Email from Sangtae Im re: POWI analysis | FSGIV00099814-FSGIV00099829 | | Lin, Gary | 17 | 7/30/2009 | F4 |
| DX-1149 | Email from Kenny Chan re: invitation: competitor analysis review @ Mon May 31 3pm-4:30pm | FSGIV00100867-FSGIV00100868 | | Lin, Gary | 18 | 5/12/2010 | F4 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-1150 | Email from Michael Mandracchia re: Oki wafer quote | FSGIV00100824 | | Lin, Gary | 19 | 6/8/2010 | F4 |
| DX-1151 | Email from Gary Lin re: Infineon benchmarking | FSGIV00081775-FSGIV00081799 | | Lin, Gary | 20 | 9/7/2009 | F4 |
| DX-1152 | System General Presentation Entitled: "Infineon Technologies, Welcome & Introduction" (Various Bates Nos. starting at SG0040797) | SG0040797 | | Lin, Gary | 63 | | ITC |
| DX-1153 | System General Management Presentation Entitled: by: Gary Lin/VP Power IC Div | SG0036409-SG0036475 | | Lin, Gary | 64 | | ITC |
| DX-1154 | System General Document Entitled: Customer Design Service Report for Kodak Adapter using SG6842 | SG0205456-SG0205484 | | Lin, Gary | 65 | | ITC |
| DX-1155 | System General Document Entitled: Customer Design Support | SG0203384-SG0203406 | | Lin, Gary | 66 | | ITC |
| DX-1156 | System General Document Entitled: Customer Design Service Report LCD Adapter using SG6842J | SG0204418-SG0204469 | | Lin, Gary | 67 | | ITC |
| DX-1157 | System General Document Entitled: Customer Design Service Report Adapater using SG6842J | SG0203569-SG0203696 | | Lin, Gary | 68 | | ITC |
| DX-1158 | System General Document Entitled: Customer Design Service Repor, Printer Adapater using SG6848 (mixed Bates Nos. starting at SG0199042) | SG0199042 | | Lin, Gary | 69 | | ITC |
| DX-1159 | System General Document Entitled: Customer Design Support documents (various Bates Nos. starting at SG0004345) | SG0004345 | | Lin, Gary | 70 | | ITC |
| DX-1160 | System General Document Entitled: Power IC Roadmap (2003-2005) by Gary Lin | SG0042614-SG0042639 | | Lin, Gary | 71 | | ITC |
| DX-1161 | DPA423-426 DPA-Switch Family - July 2005 | | | Lin, Gary | 74 | | ITC |
| DX-1162 | Email dated 2005/3/4 | SG0070237-SG0070238 | | Lin, Gary | 75 | | ITC |
| DX-1163 | U.S. Patent No. 6,304,462 to Balakrishnan | | | Lin, Gary | 77 | | ITC |
| DX-1164 | U.S. Patent No. 6,366,481 to Balakrishnan | | | Lin, Gary | 78 | | ITC |
| DX-1165 | U.S. Patent No. 6,351,398 to Balakrishnan | | | Lin, Gary | 79 | | ITC |
| DX-1166 | System General Document Entitled: Semiconductor BU | SG0035878-SG0035920 | | Lin, Gary | 80 | | ITC |
| DX-1167 | System General Document Entitled: "Power Supply Design Competitions" California Energy Commission EPA Energy Star | SG0037487-SG0037495 | | Lin, Gary | 81 | | ITC |
| DX-1168 | Document bearing Bates Nos. SG0205409-SG0205454 | SG0205409-SG0205454 | | Lin, Gary | 82 | | ITC |
| DX-1169 | System General Quality/Reliability Report of SG384x & SG1384x IC Products | SG0236007-SG0236049 | | Lin, Gary | 83 | | ITC |
| DX-1170 | Fairchild Corporate Organizational Chart | SG0033447 | | Lu, Ruihong | 35 | | ITC |
| DX-1171 | Chart and picture | SG0209598-SG0209599 | | Lu, Ruihong | 37 | | ITC |
| DX-1172 | System General Design Specification SG5848X5 | SG0376522-SG0376529 | | Lu, Ruihong | 38 | | ITC |
| DX-1173 | Presentation Entitled: By: Rui-Hong  1/25/2005 | SG0033730-SG0033750 | | Lu, Ruihong | 42 | | ITC |
| DX-1174 | Documents bearing Bates Nos. SG0024848; SG0110109; SG0110065; SG0131802; SG0115235; SG0247448; SG0247446 | SG0024848; SG0110109; SG0110065; SG0131802; SG0115235; SG0247448; SG0247446 | | Lu, Ruihong | 43 | | ITC |
| DX-1175 | SG6846 Design Review 103003 | SG0197999-SG0198003 | | Lu, Ruihong | 45 | | ITC |
| DX-1176 | Email dated 2005/3/11 | SG0219412-SG0219427 | | Lu, Ruihong | 46 | | ITC |
| DX-1177 | System General R&D note | SG011054 | | Lu, Ruihong | 47 | | ITC |
| DX-1178 | Presentation: FAN103ASMD Tapeout Summary, S.-F. Hsu | FSG00077093 - 150 | | Lu, Ruihong | 2 | 8/13/2008 | F2 |
| DX-1179 | Presentation Entitled: Fairchild Primary side regulated PWM controller, Competitor Analysis (LinkSwitch II), Hangseok Choi/PCIA/Technology Group | FSG00193510 - 520 | | Lu, Ruihong | 3 | Apr-09 | F2 |
| DX-1180 | Digi-Key Corp. & Fairchild Semiconductor Corp. Distribution Agreement | FSGIV00203446-FSGIV00203461 | | Norman, Mark | 4 | 12/22/2005 | F4 |
| DX-1181 | Purchase Agreement between Fairchild Semiconductor Corp. and Rochester Electronics Inc. | FSGIV00203388-FSGIV00203299 | | Norman, Mark | 5 | 3/25/2003 | F4 |
| DX-1182 | Fairchild Semiconductor Corp. and Mouser Electronics, Inc. Catalog Supplier Agreement | FSGIV00203525-FSGIV00203540 | | Norman, Mark | 6 | 3/2/2006 | F4 |
| DX-1183 | Amendment to Fairchild Semiconductor Corp. and Mouser Electronics, Inc. Catalog Supplier Agreement | FSGIV00203541 | | Norman, Mark | 7 | 7/8/2011 | F4 |
| DX-1184 | Amendment to Fairchild Semiconductor Corp. and Mouser Electronics, Inc. Catalog Supplier Agreement | FSGIV00203542 | | Norman, Mark | 8 | 1/1/2011 | F4 |
| DX-1185 | Amendment to Fairchild Semiconductor Corp. and Mouser Electronics, Inc. Catalog Supplier Agreement | FSGIV00203523-FSGIV00203524 | | Norman, Mark | 10 | 1/3/2006 | F4 |
| DX-1186 | Professional Sample(s) Fulfillment Global Management Agreement between Fairchild Semiconductor Corp. and Mouse Electronics, Inc. | FSGIV00203609-FSGIV00203621 | | Norman, Mark | 9 | 2/1/2009 | F4 |
| DX-1187 | Email from KN Kim re: Korea sales & marketing weekly report (week 08) | FSGIV00097383-FSGIV00097391 | | Norman, Mark | 13 | 2/28/2013 | F4 |
| DX-1188 | Fairchild Website Screenshot: Request Free Samples/Buy Products Online, www.Fairchildsemi.com/support/request-free-samples-buy-products-online | None | | Wiles, Robert | 6 | 5/27/2013 | F4 |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-1189 | Fairchild Website Screenshot: Stock Check for part number SG6841 from Fairchild website | None | | Wiles, Robert | 7 | 5/27/2013 | F4 |
| DX-1190 | Rochester Website Screenshot: Inventory parts matching SG6841SZ, Rochester Electronics website | None | | Wiles, Robert | 8 | | F4 |
| DX-1191 | Fairchild Semiconductor Corp. SG6841SZ specs: viewing Rochester Electronics' details for part SG6841SZ | None | | Wiles, Robert | 9 | | F4 |
| DX-1192 | Fairchild Website Screenshot: Stock Check for part number SG6842 from Fairchild website | None | | Wiles, Robert | 10 | 5/27/2013 | F4 |
| DX-1193 | Fairchild Website Screenshot: Stock Check for part number fan7602 from Fairchild website | None | | Wiles, Robert | 11 | 5/27/2013 | F4 |
| DX-1194 | Fairchild Semiconductor Corp. FAN7602MX Specs: Description: 0.6A Switching Controller, 73kHz Switching FREQ-MAX, PDSOB | None | | Wiles, Robert | 12 | | F4 |
| DX-1195 | Fairchild Website Screenshot: Stock Check for part number 'FSD' from Fairchild website | None | | Wiles, Robert | 13 | 5/27/2013 | F4 |
| DX-1196 | Fairchild Semiconductor Corp. FSDH321L Specs: Description: 1.5A Switching Regulator, 110kHz Switching FREQ-MAX, PDS08 | None | | Wiles, Robert | 14 | | F4 |
| DX-1197 | FSDH321, FSDL321 Green Mode Fairchild Power Switch (FPS) Data Sheet | None | | Wiles, Robert | 15 | | F4 |
| DX-1198 | Fairchild Website Screenshot: Stock Check for part number 'FSC' from Fairchild website | None | | Wiles, Robert | 16 | 5/27/2013 | F4 |
| DX-1199 | Fairchild Semiconductor Corp. FSCM0465RGWDTU Specs: Description: Switching Regulator, 72kHz Switching FREQ-MAX, SFM6 | None | | Wiles, Robert | 17 | | F4 |
| DX-1200 | Avnet Express Website Screenshot: SG6842 part number search results | None | | Wiles, Robert | 18 | 5/27/2013 | F4 |
| DX-1201 | Avnet Express Website Screenshot: SG6842 part number search results | None | | Wiles, Robert | 19 | 5/27/2013 | F4 |
| DX-1202 | Fairchild Website Screenshot: Die & Wafer Products, www.Fairchildsemi.com/products/die-wafer-products | None | | Wiles, Robert | 20 | 5/24/2013 | F4 |
| DX-1203 | Email from Heather Brogna to Neil Warren re: RFQ Follow-up | None | | Wiles, Robert | 21 | 5/31/2012 | F4 |
| DX-1204 | Letter from Allan Lam to customers regarding Patent litigation against Power Integrations | None | | Wiles, Robert | 22 | 6/29/2009 | F4 |
| DX-1205 | Fairchild Website Screenshot: Power Integrations Litigation Information, www.Fairchildsemi.com/about-Fairchild/media-center/litigation | None | | Wiles, Robert | 23 | 5/24/2013 | F4 |
| DX-1206 | Primary-side-control PWM Controller SGP100 Data Sheet | None | | Yang, Ta-Yung | 3 | 9/26/2007 | F4 |
| DX-1207 | U.S. Patent No. 7,855,899 to Yang | None | | Yang, Ta-Yung | 11 | 12/21/2010 | F4 |
| DX-1208 | U.S. Patent No. 7,940,035 to Yang | None | | Yang, Ta-Yung | 12 | 5/10/2011 | F4 |
| DX-1209 | U.S. Patent No. 6,545,882 to Yang | None | | Yang, Ta-Yung | 13 | 4/8/2003 | F4 |
| DX-1210 | Schematics | FCS1700187-218 | | | | | F4 |
| DX-1211 | U.S. Patent No. 6,674,656 to Yang | None | | Yang, Ta-Yung | 16 | 1/6/2004 | F4 |
| DX-1212 | Press Release Entitled: System General Awarded Primary-Side PWM Controller Patent, www.sg.com.tw/aboutsg/pr-02-25-04_E.asp | None | | Yang, Ta-Yung | 17 | 2/25/2004 | F4 |
| DX-1213 | US Patent No. 5,418,410 to Tisinger | None | | Yang, Ta-Yung | 5 | | F4 |
| DX-1214 | US Patent No. 6,144,245 to Balogh | None | | Yang, Ta-Yung | 6 | | F4 |
| DX-1215 | US Patent No. 6,219,262 to Burgyan | None | | Yang, Ta-Yung | 7 | 4/17/2001 | F4 |
| DX-1216 | US Patent No. 6,862,194 to Yang et al. | None | | Yang, Ta-Yung | 10 | 3/1/2005 | F4 |
| DX-1217 | US Patent No. 7,151,679 to Strijker | None | | Yang, Ta-Yung | 8 | 12/19/2006 | F4 |
| DX-1218 | US Patent No. 7,161,816 to Shteynberg et al. | None | | Yang, Ta-Yung | 9 | 1/9/2007 | F4 |
| DX-1219 | US Patent No. 7,362,593 to Yang et al. | None | | Yang, Ta-Yung | 4 | 4/22/2008 | F4 |
| DX-1220 | System General Schematics | SG0364390-SG0364568 | | Yang, Ta-Yung | 4 | | ITC |
| DX-1221 | U.S. Patent No. 6,597,159 | | | Yang, Ta-Yung | 5 | | ITC |
| DX-1222 | Schematics | SG0366507-SG0366651 | | Yang, Ta-Yung | 7 | | ITC |
| DX-1223 | Schematics | SG0366797-SG0366941 | | Yang, Ta-Yung | 11 | | ITC |
| DX-1224 | Schematics | SG0370991-SG0371183 | | Yang, Ta-Yung | 12 | | ITC |
| DX-1225 | Schematics | SG0376083-SG0376374 | | Yang, Ta-Yung | 13 | | ITC |
| DX-1226 | Schematics | SG0376421-SG0376512 | | Yang, Ta-Yung | 15 | | ITC |
| DX-1227 | U.S. Patent No. 6,721,192 | | | Yang, Ta-Yung | 16 | | ITC |
| DX-1228 | U.S. Patent No. 6,768,657 | | | Yang, Ta-Yung | 18 | | ITC |
| DX-1229 | Schematic SG6848 | SG0373911-SG0373948 | | Yang, Ta-Yung | 19 | | ITC |
| DX-1230 | Schematics | SG0375042-SG0373948 | | Yang, Ta-Yung | 20 | | ITC |
| DX-1231 | U.S. Patent No. 6,661,679 | | | Yang, Ta-Yung | 21 | | ITC |
| DX-1232 | Schematics | SG0372516-SG0372737 | | Yang, Ta-Yung | 22 | | ITC |
| DX-1233 | Schematics | SG0376535-SG0376581 | | Yang, Ta-Yung | 23 | | ITC |
| DX-1234 | Schematics | SG0364748-SG0364926 | | Yang, Ta-Yung | 24 | | ITC |
| DX-1235 | U.S. Patent No. 4,766,328 | | | Yang, Ta-Yung | 25 | | ITC |
| DX-1236 | U.S. Patent No. 4,415,960 | | | Yang, Ta-Yung | 26 | | ITC |
| DX-1237 | U.S. Patent No. 4,037,271 | | | Yang, Ta-Yung | 27 | | ITC |
| DX-1238 | U.S. Patent No. 4,772,995 | | | Yang, Ta-Yung | 28 | | ITC |

| Ex. # | DESCRIPTION | Beg Bates | End Bates | Source | Exhibit # (if applicable) | Date | Case |
|---|---|---|---|---|---|---|---|
| DX-1239 | U.S. Patent No. 4,459,651 | | | Yang, Ta-Yung | 29 | | ITC |
| DX-1240 | U.S. Patent No. 4,823,070 | | | Yang, Ta-Yung | 30 | | ITC |
| DX-1241 | U.S. Patent No. 5,657,215 | | | Yang, Ta-Yung | 31 | | ITC |
| DX-1242 | U.S. Patent No. 5,414,342 | | | Yang, Ta-Yung | 32 | | ITC |
| DX-1243 | U.S. Patent No. 6,134,123 | | | Yang, Ta-Yung | 33 | | ITC |
| DX-1244 | Datasheet: TOP200-4/14 TOPSwitch Family | | | Yang, Ta-Yung | 1F2 | Jul-96 | F2 |
| DX-1245 | Datasheet: LNK501 LinkSwitch Family | | | Yang, Ta-Yung | 2F2 | Apr-03 | F2 |
| DX-1246 | Datasheet: LNK603-606/613-616 LinkSwitch-II Family | | | Yang, Ta-Yung | 3F2 | May-08 | F2 |
| DX-1247 | Datasheet: Fairchild FSD210 Fairchild Power Switch (FPS) | | | Yang, Ta-Yung | 4F2 | 2003 | F2 |
| DX-1248 | Datasheet: Philips TEA1401T Power plug for the universal mains | | | Yang, Ta-Yung | 5F2 | 3/7/1997 | F2 |
| DX-1249 | Product Specification: System General SG6741 Highly-Integrated Green-Mode PWM Controller | | | Yang, Ta-Yung | 6F2 | 10/30/2007 | F2 |
| DX-1250 | Datasheet: Fairchild SG6741A Highly Integrated Green-Mode PWM Controller | | | Yang, Ta-Yung | 7F2 | Oct-08 | F2 |
| DX-1251 | Product Specification: System General SG6742 Highly Integrated Green-Mode PWM Controller | | | Yang, Ta-Yung | 8F2 | 9/24/2007 | F2 |
| DX-1252 | Datasheet: Fairchild SG6742HL/HR Highly Integrated Green-Mode PWM Controller | | | Yang, Ta-Yung | 9F2 | Jan-09 | F2 |
| DX-1253 | Product Specification: System General SG6848 Low Cost Green-Mode PWM Controller for Flyback Converters | | | Yang, Ta-Yung | 10F2 | 4/8/2004 | F2 |
| DX-1254 | Product Specification: System General SG6849 Low-Power Green-Mode PWM Flyback Power Controller without Secondary Feedback | | | Yang, Ta-Yung | 11F2 | 11/25/2004 | F2 |
| DX-1255 | Preliminary Specification: System General SG6849A/B Low-Power Green-Mode PWM Flyback Power Controller without Secondary Feedback | | | Yang, Ta-Yung | 12F2 | 9/14/2006 | F2 |
| DX-1256 | Product Specification: System General SGP400 Low-Power Green-Mode PWM Flyback Power Controller without Secondary Feedback | | | Yang, Ta-Yung | 13F2 | 9/24/2007 | F2 |
| DX-1257 | Product Specification: System General SG6858 Low Cost Green-Mode PWM Controller for Flyback Converters | | | Yang, Ta-Yung | 14F2 | 9/25/2007 | F2 |
| DX-1258 | Product Specification: System General SG6859 Low Cost Green-Mode PWM Controller for Flyback Converters | | | Yang, Ta-Yung | 15F2 | 9/28/2007 | F2 |
| DX-1259 | Product Specification: System General SG5701 Low Cost Green-Mode PWM Controller for Flyback Converters | | | Yang, Ta-Yung | 16F2 | 3/28/2006 | F2 |
| DX-1260 | Product Specification: System Genera/Fairchild SG5841/J Highly Integrated Green-Mode PWM Controller | | | Yang, Ta-Yung | 17F2 | 9/20/2007 | F2 |
| DX-1261 | Product Specification: System General/Fairchild SGP100 Primary-side-control PWM Controller | | | Yang, Ta-Yung | 18F2 | 9/26/2007 | F2 |
| DX-1262 | Datasheet: Fairchild FSEZ1016A Primary-Side-Regulation PWM Integrated Power MOSFET | | | Yang, Ta-Yung | 19F2 | Mar-09 | F2 |
| DX-1263 | Datasheet: Fairchild FSEZ1216 Primary-Side-Regulation PWM Integrated Power MOSFET | | | Yang, Ta-Yung | 20F2 | Sep-08 | F2 |
| DX-1264 | Patent Application Docs 10/065532 | | | Yang, Ta-Yung | 22F2 | | F2 |
| DX-1265 | Combined Declaration and Power of Attorney, PWM Controller Having a Saw-Limited for Output Power Limit Without Sensing Input Voltage | | | Yang, Ta-Yung | 23F2 | 8/23/2002 | F2 |
| DX-1266 | Schematics | FSG00000331 - 381 | | Yang, Ta-Yung | 24F2 | | F2 |
| DX-1267 | U.S. Patent No. 6,611,439, Yang et al. | | | Yang, Ta-Yung | 25F2 | 8/26/2003 | F2 |
| DX-1268 | U.S. Patent No. 7,026,851, Yang et al. | | | Yang, Ta-Yung | 26F2 | 4/11/2006 | F2 |
| DX-1269 | U.S. Patent No. 7,203,079, Yang et al. | | | Yang, Ta-Yung | 27F2 | 4/10/2007 | F2 |
| DX-1270 | U.S. Patent No. 7,184,283, Yang et al. | | | Yang, Ta-Yung | 28F2 | 2/27/2007 | F2 |
| DX-1271 | Patent Application Docs 10/893,389 | | | Yang, Ta-Yung | 29F2 | 11/1/2006 | F2 |
| DX-1272 | U.S. Patent No. 7,061,780, Yang et al. | | | Yang, Ta-Yung | 30F2 | 6/13/2006 | F2 |
| DX-1273 | U.S. Patent No. 6,249,876, Balakrishnan et al. | | | Yang, Ta-Yung | 31F2 | 6/19/2001 | F2 |
| DX-1274 | U.S. Patent No. 6,229,366, Balakrishnan et al. | | | Yang, Ta-Yung | 32F2 | 5/8/2001 | F2 |
| DX-1275 | U.S. Patent No. 7,259,972, Yang | | | Yang, Ta-Yung | 33F2 | 8/21/2007 | F2 |
| DX-1276 | U.S. Patent No. 7,352,595, Yang et al. | | | Yang, Ta-Yung | 34F2 | 4/1/2008 | F2 |
| DX-1277 | Effects of Switching Frequency Modulation on EMI Performance of a Converter Using Spread Spectrum Approach (M. Rahkala, T. Suntio, K. Kalliomaki) | | | Yang, Ta-Yung | 1 | 2002 | F2 |
| DX-1278 | Datasheet: TNY256 TinySwitch Plus | | | Yang, Ta-Yung | 2 | Jul-01 | F2 |
| DX-1279 | U.S. Patent No. 6,480,399, Balakrishnan et al. | | | Yang, Ta-Yung | 3 | 11/12/2002 | F2 |
| DX-1280 | Email from Edmund Chang to Sam Cheng re New Patent, Switching Circuit | FSG00145963 - 6006 | | Yang, Ta-Yung | 5 | 7/23/2004 | F2 |
| DX-1281 | Email from Tom Yang to Edmund Chang re Revised 0001 Patent Application, Switching Circuit | FSG00146051 - 094 | | Yang, Ta-Yung | 6 | 8/29/2004 | F2 |
| DX-1282 | Reply to Office Action, 10/959,188 | | | Yang, Ta-Yung | 7 | 4/30/2007 | F2 |
| DX-1283 | Email from Tom Yang to Sam Cheng re important Patent Application, PSC-switching regulator | FSG00146139 - 176 | | Yang, Ta-Yung | 8 | 10/6/2005 | F2 |

| DPX # | Description | Bates Range | PIF4 Trial Exhibit | Admitted at Trial |
|---|---|---|---|---|
| DPX-001 | Mouser Electronics Invoice dated January 2, 2013 | PIFIV0497873-74 | PX-1770 | 2/11/2014 (Kelley) |
| DPX-002 | Mouser Electronics Invoice dated May 21, 2012 | PIFIV0497857-58 | PX-1769 | 2/11/2014 (Kelley) |
| DPX-003 | 65W Notebook  Adapter for Fairchild Power Management IC Development Tools containing: FEBFAN6754WAMR_CP450VA | PIFIV0497876 | PX-1100 (photograph) PX-1100A (physical) | |
| DPX-004 | Fairchild Evaluation Board Kit containing: FEBFAN6756MR_T03U065A | PIFIV0497865 | PX-1078 (photograph) PX-1078A (physical) | |
| DPX-005 | 65W Notebook  for Fairchild Power Management IC Development Tools containing: FEBFAN6756MR_T03U065A | PIFIV0497877-79 | PX-1101 (photograph) PX-1101A (physical) | 2/11/2014 (Kelley) |
| DPX-006 | Evaluation Board for Fairchild Power Management IC Development Tools containing: FEBFAN6863W_CP452V1 | PIFIV0497880 | PX-1103 (photograph) PX-1103A (physical) | |
| DPX-007 | CBM PFC 120W w/Sync for Fairchild Power Management IC Development Tools containing: FEBFAN6920MR_T02U120A | PIFIV0497881 | PX-1107 (photograph) PX-1107A (physical) | |
| DPX-008 | 16W PC Auxiliary Fairchild Power Management IC Development Tools containing: FEBFSB127H_T001 | PIFIV0497887 | PX-1110 (photograph) PX-1110A (physical) | |
| DPX-009 | Compact 2W Auxiliary for Fairchild Power Management IC Development Tools containing: FEBFSQ500L_H257V1 | PIFIV0497891 | PX-1105 (photograph) PX-1105A (physical) | |
| DPX-010 | LNK-II chip | | | |
| DPX-011 | LNK-PH chip | | | |
| DPX-012 | LYY-4 chip | | | |
| DPX-013 | CAPZero chip | | | |
| DPX-014 | CAPZero demo board (RDK252) | | | |
| DPX-015 | LinkZero-LP chip | | | |
| DPX-016 | TOPSwitch-FX chip | | | |
| DPX-017 | TOPSwitch-GX chip | | | |
| DPX-018 | TOPSwitch-HX chip | | | |
| DPX-019 | TOPSwitch-JX chip | | | |

EXHIBIT 6A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

              Plaintiffs,

    v.

POWER INTEGRATIONS, INC.,

              Defendant.

C.A. No. 12-540-LPS

**Highly Confidential**

**FAIRCHILD'S MOTION *IN LIMINE* NO. 1 TO PRECLUDE ANY REFERENCE TO
ANY PENDING REEXAMINATION PROCEEDING OR COMPLETED
REEXAMINATION OF ANY ASSERTED PATENT**

Counsel for Plaintiffs


Blair M. Jacobs
Christina A. Ondrick
PAUL HASTINGS LLP
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

Dated: April 10, 2015

Fairchild Semiconductor Corporation and Fairchild (Taiwan) Corporation ("Fairchild") move *in limine* to preclude any reference to the reexamination proceeding currently pending at the Patent Office for Fairchild's '972 patent, as well as using the word "reexamination" to describe the issuance of a reexamination certificate in the completed proceeding for PI's '366 patent.  References to reexamination proceedings have little probative value and are unduly prejudicial to Fairchild for several reasons, including that (1) pending reexamination proceedings are not final, (2) different legal burdens and claim construction standards apply in a reexamination proceeding, and (3) limited evidence is available at the Patent Office.

Precluding reference to pending reexamination proceedings is consistent with this Court's previous rulings in Case No. 08-cv-309 ("*Fairchild II*") between these parties.  In *Fairchild II*, this Court recognized that "[t]he PTO, as we all know, applies different standards to different evidence for different purposes in a reexamination than will be in front of the jury for the jury's purposes."  (*Fairchild II* D.I. 561 at 31:25-32:16.)  In *Fairchild II*, the Court precluded not only any mention of a pending reexamination, but also the utterance of the words "reexam" or "reexamination."  (*Id.* at 29:15-30:7.)

Similar to this Court's ruling in *Fairchild II*, the Federal Circuit has noted that reexamination proceedings are "unrelated to a defendant's burden to prove invalidity by clear and convincing evidence at trial" and are severely prejudicial.  *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008).

While information relating to a non-final review process at the Patent Office has little probative value at trial, it risks significant prejudice to the patentee and opportunity for confusion for the jury.  Recognizing those risks, the Federal Circuit has repeatedly held that this prejudice greatly outweighs any probative value in referencing pending reexamination proceedings.

"[R]egardless of the evidence's relevance to a fact at issue at trial, the district court would still not have abused its discretion in finding that the probative value was substantially outweighed by the risk of unfair prejudice to the patentee, confusion with invalidity (on the merits), or misleading the jury, thereby justifying exclusion under Federal Rule of Evidence 403." *VirnetX, Inc., v. Cisco Systems, Inc.*, 767 F.3d 1308, 1324-25 (Fed. Cir. 2014).  District courts, including courts in this district, have routinely excluded such evidence on prejudice grounds.  *See, e.g.*, *SRI Int'l Inc.  v. Internet Sec. Sys., Inc.*, 647 F. Supp. 2d 323, 356 (D. Del. 2009); *see also i4i Limited P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 588 (E.D. Tex. 2009) ("Even if it was [probative], its probative value is substantially outweighed by its prejudicial effect in suggesting to the jury that it is entitled to ignore both the presumption of validity and the defendant's clear and convincing burden at trial.").

In addition to precluding any reference to pending, non-final reexamination proceedings, the Court should also prevent Power Integrations from referring to any completed reexamination proceeding as a "reexamination."  In particular, Power Integrations should not be permitted to mention the completed reexamination of the '366 patent, nor should it be permitted to use any variation of the term "reexamination."  The risk of prejudice to Fairchild and jury confusion is much too high, and greatly outweighs any probative value.  Precluding references to reexaminations, whether pending or completed, is proper as the determination of validity in district court is a completely different legal standard.  As this Court recognized in *Fairchild II*, the standard at the Patent Office is a ***preponderance of the evidence***, while at trial, patents are entitled to a ***statutory presumption of validity*** and a challenger bears the burden of proving invalidity by ***clear and convincing evidence***.  *See Am. Calcar, Inc. v. Am.  Honda Motor Co., Inc.*, 651 F.3d 1318, 1334-35 (Fed. Cir. 2011).  Allowing introduction of reexamination

proceedings will result in jury confusion as to which invalidity standard applies.  Moreover, the Patent Office considers a limited record, whereas the jury is able to assess a much broader array of evidence, and this is yet another reason why references to any reexaminations should be precluded.

Further, reference to a completed reexamination as a "reexamination" suggests that a patent with a reexamination certificate is afforded an enhanced presumption of validity. However, this is not correct.  All patents, whether issued through original prosecution or by virtue of a reexamination proceeding, are afforded the same statutory presumption under 35 U.S.C. § 282.  The presumption of validity does not get stronger as a result of the issuing of a reexamination certificate.  If Power Integrations were permitted to reference completed reexamination proceedings as a separate and second confirmation of the patent's validity, Fairchild would be prejudiced because the jury would be confused, believing that Fairchild has an even higher burden than clear and convincing evidence to invalidate the '366 patent.

As this Court ruled in *Fairchild II*, this preclusion should extend to prohibit "use . . . of what was said in connection with the reexamination for purposes of impeachment," which would be "a backdoor way of trying to get in [the] fact" and result of reexamination.  (*Fairchild II* D.I. 561 at 32:9 – 16.)  Fairchild does not object to Power Integrations referencing the documents, records and files generated and prior art considered during reexamination proceedings, provided reference is made only to the "prosecution history" of the patent.[1]

For the foregoing reasons, Fairchild respectfully requests that the Court bar all reference to pending and completed reexamination proceedings for any asserted patent.

---

[1] As this Court recognized in *Fairchild II*, this ruling "might require redactions of some exhibits," such as the text of the '366 patent, to remove any explicit "reexamination" label. (*Fairchild II* D.I. 561 at 29:18.)

Dated: April 10, 2015

ASHBY & GEDDES

/s/ *John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

PAUL HASTINGS LLP
Blair M. Jacobs
Christina A. Ondrick
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

        Plaintiffs,

        v.

POWER INTEGRATIONS, INC.,

        Defendant.

C.A. No. 12-540 LPS

**HIGHLY CONFIDENTIAL**

**POWER INTEGRATIONS' OPPOSITION TO FAIRCHILD MOTION *IN LIMINE* NO. 1**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for**
**POWER INTEGRATIONS, INC.**

Dated:  April 15, 2015

Fairchild's motion to preclude reference to the reexaminations of Fairchild's '972 patent and PI's '366 patent relies on inapposite case law and ignores their direct relevance to the claims and defenses in this case.  For the '972 patent, after instituting the reexamination, and after full consideration of both Fairchild's and PI's submissions, the PTO repeatedly rejected all asserted claims.  [Ex. 1A (2013-10-09 Office Action); Ex. 1B (2014-06-18 Action Closing Prosecution); Ex. 1C (2014-12-10 Right of Appeal Notice).]  The fact that the PTO agreed with PI and finally rejected all asserted claims is central to the "specific intent" element (or the lack thereof) of Fairchild's inducement claim—the only cause of action asserted as to the '972 patent.  It shows PI's good-faith belief of invalidity, which "may negate the requisite intent for induced infringement."  *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1368 (Fed. Cir. 2013).[1] For the same reasons, the '972 patent reexamination is also relevant to PI's willfulness defense.[2]

Fairchild's reliance on this Court's decision in *Fairchild II* is misplaced.  There, Fairchild never argued that the reexamination of PI's '876 patent was relevant to Fairchild's defense to inducement.  [*See* Ex. 1E (*Fairchild II*, Fairchild's Opp'n to MIL No. 3).]  Instead, Fairchild argued that it only intended "to impeach Power Integrations' witnesses with any contradictory representations regarding the scope of the '876 inventions."  [*Id.* at 1-2.]

Nor are Fairchild's other cases applicable here, as they either involved a situation where reexam was just instituted, or the proponent of the reexam evidence intended to use the evidence

---

[1]  On March 31, 2015, the Supreme Court heard oral arguments in *Commil*.  A copy of the transcript is attached as Exhibit 1D.

[2]  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir 2007) (willfulness requires a showing that "an infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent"); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012) ("[T]he objective prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement.").

to prove invalidity, or both.  *See Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d

842, 848 (Fed. Cir. 2008) (cautioning that "the 'substantial new question of patentability'

standard for whether reexamination should take place" is different than "the '***substantial***

***question of validity***' standard by which a defendant may prevent a patentee seeking a

preliminary injunction from demonstrating a likelihood of success on the merits); *VirnetX, Inc.,*

*v. Cisco Systems, Inc.*, 767 F.3d 1308, 1324-25 (Fed. Cir. 2014) (no abuse of discretion in

excluding evidence of "***initial rejections***"[3] of asserted claims); *SRI Int'l Inc. v. Internet Sec. Sys.,*

*Inc.*, 647 F. Supp. 2d 323, 356 (D. Del. 2009) (rejecting defendants' request to modify ***the***

***burden of proof on invalidity*** in view of the co-pending reexamination); *i4i Limited P'ship v.*

*Microsoft Corp.*, 670 F. Supp. 2d 568, 588 (E.D. Tex. 2009) ("***At the time of trial, the PTO had***

***granted reexamination*** … The simple fact that a reexamination decision has been made by the

PTO is not evidence probative of any element regarding any ***claim of invalidity***.") (all emphasis

added).  Here, the PTO has repeatedly confirmed its rejections of all asserted claims of the '972

patent, and the advanced stage of the proceedings on the '972 patent undermines Fairchild's

reliance on case law where reexam proceedings were in their infancy.

    For the '366 patent, Fairchild admits the reexamination is complete and does not even

attempt to dispute its relevance.  Indeed, it was Fairchild who petitioned for the '366 patent

---

[3]  The timing and posture of the reexamination proceeding is relevant to the assessment of its
probative value.  *See Procter & Gamble*, 549 F.3d at 847-848 (instructing trial court to consider
on remand "the current posture" of the reexamination proceedings "when evaluating P&G's
likelihood of success on the merits").  The "initial rejections" in *VirnetX* referred to the PTO's
decisions instituting reexam for some of the patents-in-suit.  *VirnetX*, 767 F.3d at 1313.  By the
time of trial on October 31, 2012 (*see id.* at 1316), the PTO had only recently instituted reexam
for two of the patents-in-suit, the '135 and '151.  [*See* Ex. 1F (transactional histories).]
    The Federal Circuit in *VirnetX* also emphasized that it was not deciding whether *Commil*
justifies reliance on reexam evidence to establish a good faith belief of invalidity; it only
concluded that the district court did not ***abuse its discretion*** in finding that the probative value
was substantially outweighed by the 403 dangers in that case.  *VirnetX*, 767 F.3d at 1324-25.

reexamination and provided all the prior art—including art that is the same as or virtually identical to the prior art Fairchild relies upon in this case—that the PTO said does not invalidate even under a *lower* threshold for finding invalidity.[4]  The fact that the PTO took a second look at the patent, considered and allowed the claims over the same or virtually identical art Fairchild asserts here, is relevant to Fairchild's invalidity defense.  *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2251 (whether PTO had considered the same evidence goes to the weight of the evidence) (citing *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984)).  In addition, the fact that Fairchild continued to infringe even after the validity of the '366 patent was confirmed in the reexamination may be relevant to inducement and willfulness. *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1571 (Fed. Cir. 1996).

Because the reexam evidence Fairchild is trying to exclude is highly relevant to the claims and defenses in this case, Fairchild's motion should be denied.  Any purported prejudice to Fairchild is Fairchild's own doing—the result of continuing to press unfounded claims—and is not "unfair."  On the other hand, excluding highly relevant reexam evidence would necessarily unfairly prejudice PI.  Fairchild's motion should be denied.

---

[4]  As Fairchild correctly points out, the standard for invalidating a patent at the PTO is the lower, *preponderance* standard, whereas at trial, a patent can only be invalidated with ***clear and convincing evidence***.  [*See* FCS Br. at 2.]  But Fairchild's logic is backwards; if a prior art reference cannot invalidate under an easier standard, logic suggests it would not invalidate the same claims under a higher standard in District Court proceedings.

Dated:  April 15, 2015          FISH & RICHARDSON P.C.


By:  _____

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for**
**POWER INTEGRATIONS, INC.**

# EXHIBIT 1A

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/002,009 | 06/01/2012 | 7259972 | TW-IIA-0744 | 5565 |

181          7590          10/09/2013
MILES & STOCKBRIDGE PC
1751 PINNACLE DRIVE
SUITE 500
MCLEAN, VA 22102-3833

| EXAMINER |
|---|
| MENEFEE, JAMES A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/09/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| **Transmittal of Communication to Third Party Requester** *Inter Partes* **Reexamination** | Control No. 95/002,009 | Patent Under Reexamination 7259972 | |
|---|---|---|---|
| | Examiner JAMES MENEFEE | Art Unit 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

┌────── (THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS) ──────┐

FISH & RICHARDSON P.C. (SD)
P.O. BOX 1022
MINNEAPOLIS, MN 55440-1022

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination prceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

| *OFFICE ACTION IN* **INTER PARTES** *REEXAMINATION* | Control No. 95/002,009 | Patent Under Reexamination 7259972 |
|---|---|---|
| | Examiner JAMES MENEFEE | Art Unit 3992 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on <u>27 September, 2012</u>
Third Party(ies) on <u>29 October, 2012</u>

**RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:**

*For Patent Owner's Response*:
    <u>2</u> MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☒ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

**PART II. SUMMARY OF ACTION:**

1a. ☒ Claims <u>1,2,5-7,11,12,15,17-19,22,32,34 and 52-66</u> are subject to reexamination.

1b. ☒ Claims <u>3,4,8-10,13,14,16,20,21,23-31,33 and 35-51</u> are not subject to reexamination.

2. ☐ Claims _____ have been canceled.

3. ☐ Claims _____ are confirmed. [Unamended patent claims]

4. ☐ Claims _____ are patentable. [Amended or new claims]

5. ☒ Claims <u>1,2,5-7,11,12,15,17-19,22,32,34 and 52-66</u> are rejected.

6. ☐ Claims _____ are objected to.

7. ☐ The drawings filed on _____        ☐ are acceptable        ☐ are not acceptable.

8. ☐ The drawing correction request filed on _____ is:        ☐ approved.        ☐ disapproved.

9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
    ☐ been received.        ☐ not been received.        ☐ been filed in Application/Control No <u>95002009</u>.

10. ☐ Other _____

Application/Control Number: 95/002,009                                          Page 2
Art Unit: 3992

## NON-FINAL REJECTION

This is an *inter partes* reexamination of U.S. Patent No. 7,259,972 ("the '972 patent")

based on a request filed 6/1/2012 ("Request").  In an Order mailed 7/27/2012, the examiner

granted the Request in part, and in a concurrent first action on the merits rejected all pending

claims.  The third party requester petitioned the partial denial of the Request and the Director

determined in a decision mailed 4/22/2013 that additional parts of the Request should have been

granted.  Now before the examiner are the proposals for which it was determined that the third

party showed a reasonable likelihood of prevailing, either by the examiner in the Order or the

Director in the 4/22/2013 decision, and the new proposals discussed herein.  Other proposals

which were denied by the examiner and were not petitioned are not before the examiner.  This

action is also responsive to patent owner's response filed 9/27/2012 ("Response"), amending

claim 12 and adding new claims 52-66 and the third party's comments filed 10/29/2012.  Claims

1, 2, 5-7, 11, 12, 15, 17-19, 22, 32, 34 and 52-66 are subject to reexamination.  This action

includes new grounds of rejection therefore it is not an action closing prosecution.


### *References*

U.S. Patent No. 6,229,366 to Balakrishnan et al. ("Balakrishnan 366").

U.S. Patent No. 6,249,876 to Balakrishnan et al. ("Balakrishnan 876").

U.S. Patent No. 5,956,242 to Majid et al. ("Majid").

Philips Semiconductors, TEA1401T Datasheet (3/7/1997) ("TEA1401T").

Philips Semiconductors, TEA1504 Datasheet (12/7/1999) ("TEA1504").

Fairchild Semiconductor, FSD210 Fairchild Power Switch (2003) ("FSD210").

Application/Control Number: 95/002,009                                           Page 3
Art Unit: 3992

### *Notification of Other Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a), to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the

'972 patent throughout the course of this reexamination proceeding. The third party requester is

also reminded of the ability to similarly apprise the Office of any such activity or proceeding

throughout the course of this reexamination proceeding. See MPEP § 2686 and 2686.04.

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes*

reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant"

and not to the patent owner in a reexamination proceeding.  Patent owner extensions of time in

*inter partes* reexamination proceedings are provided for in 37 CFR 1.956.  Extensions of time

are not available for third party requester comments, because a comment period of 30 days from

service of patent owner's response is set by statute.  35 U.S.C. 314(b)(3).

### *Claim Rejections - 35 USC §§ 102 & 103*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in
public use or on sale in this country, more than one year prior to the date of application for patent in the
United States.

Application/Control Number: 95/002,009                                    Page 4
Art Unit: 3992

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
> manner in which the invention was made.

1.  Claims 12, 52, 53, 55, and 56 are rejected under 35 U.S.C. 102(b) as being anticipated

by Balakrishnan 366.  This rejection was proposed by the third party and is adopted.  Claim 54 is

not rejected and the proposed rejection of this claim is not adopted.

Regarding claim 12, the rejection is modified from the original rejection in the Request as

it now relies on the Fig. 8-9 embodiment due to the claim amendment.

Balakrishnan 366 discloses in Figs. 8-9:

**A power converter comprising:**

**input terminals and output terminals; a transformer to transfer electrical power**

**from the input terminals to the output terminals;**

Fig. 8 shows a power converter with input terminals at the left of box 700 and output

terminals at load 780, and a transformer 730 to transfer power from the input to output.


**a switch to control the transformer in response to a switching signal having a**

**switching frequency; and a controller to generate the switching signal and to allow the**

**switching frequency to hop from frequency to frequency according to a digital pattern,**

**wherein the controller is configured to generate the switching signal in response to a**

**feedback signal associated with a current control loop on a primary-side of the**

**transformer.**

Application/Control Number: 95/002,009                                          Page 5
Art Unit: 3992

      Note that Fig. 9 is a more detailed depiction of the regulation circuit 850 of Fig. 8.  The

regulation circuit includes a switch 435 to control the transformer in response to a switching

signal 610.  The remainder of Fig. 9 is a controller to generate the switching signal, and it allows

the switching frequency to hop from frequency to frequency according to a digital pattern, as

discussed by the third party at Comments pp. 13-14 (discussing similar limitations of claim 52).

The switching signal is generated in response to a feedback signal associated with a current

control loop on the primary side—the current limit signal discussed at col. 11 lines 16-25.

      Regarding claims 52, 53, 55, and 56, see Comments pp. 10-17, which are incorporated by

reference as to these claims.

      The proposed rejection of claim 54 is not adopted because it relies on Figs. 8-9 to meet

the limitations of parent claim 52, but Fig. 2 to show the auxiliary winding of the transformer.

These are clearly separate embodiments, and one cannot mix and match from separate

embodiments in an anticipation rejection.  The third party seems to acknowledge this, but merely

states that since both types of transformer are disclosed, even in separate embodiments, they may

be used interchangeably.  This is not a correct statement of the law of anticipation.


    2.  Claim 54[1] is rejected under 35 U.S.C. 103(a) as being unpatentable over Balakrishnan

366.  This rejection was proposed by the third party and <u>is adopted</u>.  See Comments pp. 17-18,

which are incorporated by reference.

---

[1] The Comments refers to several times to claim 53, but this is a clear typo as the claim chart refers to claim 54.

Application/Control Number: 95/002,009                                    Page 6
Art Unit: 3992

    3.  Claims 1, 2, 5, 12, 15, 17, 22, 32, 34, and 52-56 are rejected under 35 U.S.C. 102(b)[2]

as being anticipated by FSD210.  This rejection was proposed by the third party and is adopted.

See Request pp. 19-27 and Comments pp. 19-24, which are incorporated by reference.


    4.  Claim 12 is not rejected under 35 U.S.C. 102(b) as being anticipated by Balakrishnan

876.  This rejection was proposed by the third party and is not adopted.  See Request pp. 27-30

for the proposal.  See Response to Arguments, *infra*, for reasons for not adopting.


    5.  Claims 1, 2, 5-7, 11, 12, 15, 17-19, and 52-66 are rejected under 35 U.S.C. 103(a) as

being unpatentable over TEA1401T in view of Balakrishnan 876.  This rejection was proposed

by the third party and is adopted.  See Request pp. 31-43 and Comments pp. 69-91, which are

incorporated by reference.


    6.  Claims 1, 2, 5-7, 11, 15, and 17-19 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Majid in view of Balakrishnan 876.  This rejection was proposed by the third

party and is adopted.  See Request pp. 50-62, which are incorporated by reference.


    7.  Claims 12 and 52-66 are rejected under 35 U.S.C. 103(a) as being unpatentable over

TEA1504 in view of Balakrishnan 876.  This rejection was proposed by the third party and is

adopted.  See Comments pp. 24-46, which are incorporated by reference.

---

[2] The examiner previously called this a 102(a) rejection, stating there is no evidence the reference was published over a year before the filing of the '972 patent, but page 14 of the reference gives a date of "8/28/03".

Application/Control Number: 95/002,009                                    Page 7
Art Unit: 3992

8.   Claims 12 and 52-66 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Majid in view of TEA1504, and further in view of Balakrishnan 876.  This rejection was

proposed by the third party and is adopted.  See Comments pp. 46-69, which are incorporated by

reference.


### *Response to Arguments*

The arguments presented in the Response and Comments have been fully considered.


Balakrishnan 366 (Rejections 1 and 2)

Patent owner argues that Balakrishnan 366 does not anticipate claim 12 as amended

because it does not include "the controller is configured to generate the switching signal in

response to a feedback signal associated with a current control loop on a primary-side of the

transformer."  Response pp. 9-11.  These arguments are also relevant to the new rejections of

new claims 52-56, which also include nearly the same limitation.  The patent owner pointed to

Fig. 2 because that is what the prior rejection relied upon, and did not address the remainder of

the reference.  But the third party now argues that the reference does indeed describe these

features because in Figs. 8 and 9 the regulation circuit 850 is on the primary-side and includes a

current control loop.  Comments pp. 2-4; see also Comments pp. 12-13, which more clearly

shows the third party's position in reference to the proposed rejection of new claim 52.

The examiner agrees with the patent owner that Fig. 2 does not appear to meet claim 12

as amended, but also agrees with the third party that the Fig. 8-9 embodiment does seem to meet

the claim.  This rejection relies on a similar feature (i.e. a current limit circuit) as does the

Application/Control Number: 95/002,009                                    Page 8
Art Unit: 3992

rejections based on FSD210.  The parties have presented more developed arguments about that

reference, and the arguments appear to be similarly applicable to this reference, therefore the

examiner's position can be seen below.


FSD210 (Rejection 3)

The rejection relied upon the current limit circuit of FSD210 as the second feedback

circuit associated with a current control loop, as seen in exemplary claim 1.   Patent owner

argues that this current limit circuit cannot meet the claims for various reasons.  Response pp.

13-18.  The examiner instead agrees with the arguments of the third party found at Comments

pp. 4-9.

We have an odd situation where both sides seem to have argued the opposite position in

litigation that they do now; patent owner's expert argued that a current limit circuit met the

claim, while the third party's expert argued it did not.  See Response p. 16 and Comments p. 6.

As stated by the third party, this is an "inconvenient fact" for both parties.  Yet, to the extent

either should be bound in any way by their previous assertion, it is the patent owner who should

be bound.

This proceeding is not merely an adjudication of the disputes between the parties.  The

purpose is primarily to resolve the issues of patentability proposed in the request by examining

the claims for patentability based on the presented references.  35 U.S.C. 313-314; 37 CFR

1.906(a); 1.937(b).  In other words, it is the patent that is important.  The examiner therefore

does not particularly care what the third party has said in litigation, other than for the purpose of

determining its credibility in its current assertions.[3]  For example, the patent owner would no

doubt agree that the third party cannot make statements that unilaterally control the scope of the

patent owner's claims.  A third party cannot "admit" what the claims mean, binding the patent

owner and the Office.

It is the patent owner who has ownership and control over the patent, therefore its

statements as to the scope and content of the claims carry far greater importance than statements

made by others.  This is why admissions of the patent owner, even made in other proceedings,

may be useable during reexamination.  See MPEP 2617(III).  This is why a patent owner can in

some instances limit the scope of its claims during prosecution by merely saying so.

Furthermore, a third party cannot harm the public by changing its arguments about the patent

because its arguments have no effect on the patent itself.  A patent owner on the other hand could

harm the public if it could argue broadly for infringement purposes but narrowly for validity

purposes.

Further to the point of claim construction, the fact that the Office uses the broadest

reasonable interpretation standard, which is broader than that used in litigation, weighs in favor

of resolving this discrepancy in favor of the broader interpretation.  In other words, it is possible

for the third party's conflicting positions to be consistent—that a current limit circuit falls within

the claims under the broadest reasonable interpretation, but does not under the narrower standard

of litigation.  It is not possible to reconcile the patent owner's disparate positions.

Here, patent owner has acknowledged that its expert stated that a current limit circuit

could be characterized as the claimed feedback signal.  Response p. 16 n. 1.  Patent owner

---

[3] Of course, since both parties appear to take an opposing view from the one presented previously, credibility of one
side over the other is not really an issue here.

Application/Control Number: 95/002,009                                    Page 10
Art Unit: 3992

believes it is "important[]" that this position was not repeated and not pursued at trial.  To the

contrary, the examiner finds that it is more important that the patent owner, by its expert, put

forth such an interpretation in the first place, as it gives credence to the notion that this is a

reasonable interpretation.  If the patent owner felt that its expert was not setting forth a

reasonable interpretation of the claims, it would seem useful to have the expert withdraw that

interpretation, inform the court of such unreasonableness, or the like.  Accordingly, the examiner

finds that a current limit circuit falls within the scope of the claims, just as patent owner's expert

stated previously.

      Finally, the third party makes an important point that the existence of claim 3 tends to

show that a current limit circuit can be the claimed current control loop.  Claim 3 ultimately

depends from claim 1 and states that "the current control loop limits the peak current flowing

through the transformer."   The '972 patent also has a current limit circuit similar to FSD210

where a current is sensed, compared to a reference value, and the peak is limited by the reference

value.  See Fig. 3, comparator 74.  It is not clear what in the specification would support claim 3

other than this, therefore it is apparent that the drafter of the patent contemplated that the current

limit circuit as disclosed fell within the current control loop as claimed.

      The examiner therefore finds that third party's arguments persuasive and a current limit

circuit can constitute the claimed current control loop.  This finding is applicable at least to

FSD210 and Balakrishnan 366, which have current limit circuits which were relied upon in the

rejection.


      Balakrishnan 876 (Rejection 4)

Application/Control Number: 95/002,009                                    Page 11
Art Unit: 3992

Patent owner argues that Balakrishnan 876 does not anticipate claim 12 as amended

because it does not include "the controller is configured to generate the switching signal in

response to a feedback signal associated with a current control loop on a primary-side of the

transformer."  Response pp. 11-12.  The third party does not dispute this in the Comments, and

the examiner likewise does not see this feature in the reference.  The examiner agrees with the

patent owner that Balakrishnan 876 lacks this feature of the claims for the reasons given in the

Response, as any feedback is associated with the secondary side.  Rejection 3 is withdrawn.


Note that Rejections 5 and 6 were added in this action due to the 4/22/2013 petition

decision.  While not all of the claims of these rejections were subject to the petition decision, the

examiner has the discretion to add them, and does.  See 4/22/2013 Decision, p. 10 item 3.

Application/Control Number: 95/002,009                                      Page 12
Art Unit: 3992

*Conclusion*

In order to ensure full consideration of any amendments, affidavits or declarations, or

other documents as evidence of patentability, such documents must be submitted in response to

this Office action.  Submissions after the next Office action, which is intended to be an Action

Closing Prosecution (ACP), will be governed by 37 CFR 1.116(b) and (d), which will be strictly

enforced.  Patent owner is reminded that any proposed amendments must comply with 37 CFR

1.530(d)-(k).  If new claims are presented excess claim fees will be required.  37 CFR 1.20(c).

37 CFR 1.943(b) requires that "[r]esponses by the patent owner and written comments by

the third party requester shall not exceed 50 pages in length, excluding amendments, appendices

of claims, and reference materials such as prior art references."  This page limit will be strictly

enforced.

**All** correspondence relating to this *inter partes* reexamination proceeding should be directed:

By **U.S. Postal Service Mail** to:

> Mail Stop *Inter Partes* Reexam
> ATTN:  Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA  22313-1450


By FAX to:       (571) 273-9900
                 Central Reexamination Unit


By hand to:      Customer Service Window
                 Randolph Building
                 401 Dulany St.
                 Alexandria, VA  22314

Application/Control Number: 95/002,009                                      Page 13
Art Unit: 3992

Registered users of EFS-Web may alternatively submit correspondence via the electronic

filing system at https://efs.uspto.gov/efile/myportal/efs-registered

Any inquiry concerning this communication or as to the status of this proceeding, should

be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

/James Menefee/

Primary Examiner
Central Reexamination Unit 3992
October 8, 2013

Conferees: /Linh M. Nguyen/

Primary Examiner, Art Unit 3992


/Jennifer C McNeil/

Supervisory Patent Examiner, Art Unit 3992

# EXHIBIT 1B

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/002,009 | 06/01/2012 | 7259972 | T9111-20047US01 | 5565 |

181          7590          06/18/2014
MILES & STOCKBRIDGE PC
1751 PINNACLE DRIVE
SUITE 500
TYSONS CORNER, VA 22102-3833

| EXAMINER |
|---|
| MENEFEE, JAMES A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/18/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Transmittal of Communication to Third Party Requester** *Inter Partes* **Reexamination** | Control No. 95/002,009 | Patent Under Reexamination 7259972 | |
|---|---|---|---|
| | Examiner JAMES MENEFEE | Art Unit 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

┌──── (THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS) ────┐

FISH & RICHARDSON P.C. (SD)
P.O. BOX 1022
MINNEAPOLIS, MN 55440-1022

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination prceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

| *ACTION CLOSING PROSECUTION*<br>*(37 CFR 1.949)* | Control No.<br>95/002,009 | Patent Under Reexamination<br>7259972 |
|---|---|---|
| | Examiner<br>JAMES MENEFEE | Art Unit<br>3992 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

**Responsive to the communication(s) filed by:**
Patent Owner on <u>09 January, 2014</u>
Third Party(ies) on <u>10 February, 2014</u>

Patent owner may once file a submission under 37 CFR 1.951(a) within <u>1</u> month(s) from the mailing date of this Office action. Where a submission is filed, third party requester may file responsive comments under 37 CFR 1.951(b) within 30-days (not extendable- 35 U.S.C. § 314(b)(2)) from the date of service of the initial submission on the requester. **Appeal <u>cannot</u> be taken from this action.** Appeal can only be taken from a Right of Appeal Notice under 37 CFR 1.953.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.


**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☐ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

**PART II.  SUMMARY OF ACTION:**

1a. ☒ Claims <u>1,2,5-7,11,12,15,17-19,22,32,34 and 52-66</u> are subject to reexamination.
1b. ☒ Claims <u>3,4,8-10,13,14,16,20,21,23-31,33 and 35-51</u> are not subject to reexamination.
2.   ☐ Claims _____ have been canceled.
3.   ☐ Claims _____ are confirmed. [Unamended patent claims]
4.   ☐ Claims _____ are patentable.  [Amended or new claims]
5.   ☒ Claims <u>1,2,5-7,11,12,15,17-19,22,32,34 and 52-66</u> are rejected.
6.   ☐ Claims _____ are objected to.
7.   ☐ The drawings filed on _____      ☐ are acceptable      ☐ are not acceptable.
8    ☐ The drawing correction request filed on _____ is:   ☐ approved.  ☐ disapproved.
9    ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
        ☐ been received.      ☐ not been received.      ☐ been filed in Application/Control No _____
10. ☐ Other _____

Application/Control Number: 95/002,009                                      Page 2
Art Unit: 3992

## ACTION CLOSING PROSECUTION

This is an *inter partes* reexamination of U.S. Patent No. 7,259,972 ("the '972 patent")

based on a request filed 6/1/2012 ("Request").  As stated previously, claims 1, 2, 5-7, 11, 12, 15,

17-19, 22, 32, 34 and new claims 52-66 are subject to reexamination, and claims 3, 4, 8-10, 13,

14, 16, 20, 21, 23-31, 33, and 35-51 are not subject to reexamination.  Claim 12 has been

amended.  This action is responsive to patent owner's response filed 1/9/2014 ("1/9/2014

Response"),[1] and the requester's comments filed 2/10/2014 ("2/10/2014 Comments").  This

action may also reference patent owner's previous response filed 9/27/2012 ("9/27/2012

Response") and the requester's comments filed 10/29/2012 ("10/29/2012 Comments").


### *References*

U.S. Patent No. 6,229,366 to Balakrishnan et al. ("Balakrishnan 366").

U.S. Patent No. 6,249,876 to Balakrishnan et al. ("Balakrishnan 876").

U.S. Patent No. 5,956,242 to Majid et al. ("Majid").

Philips Semiconductors, TEA1401T Datasheet (3/7/1997) ("TEA1401T").

Philips Semiconductors, TEA1504 Datasheet (12/7/1999) ("TEA1504").

Fairchild Semiconductor, FSD210 Fairchild Power Switch (2003) ("FSD210").


### *Notification of Other Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a), to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the

---

[1] The 1/9/2014 Response is page-length compliant based on a petition decision mailed 6/9/2014.

Application/Control Number: 95/002,009                                      Page 3
Art Unit: 3992

'972 patent throughout the course of this reexamination proceeding. The third party requester is

also reminded of the ability to similarly apprise the Office of any such activity or proceeding

throughout the course of this reexamination proceeding. See MPEP § 2686 and 2686.04.


### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes*

reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant"

and not to the patent owner in a reexamination proceeding.  Patent owner extensions of time in

*inter partes* reexamination proceedings are provided for in 37 CFR 1.956.  Extensions of time

are not available for third party requester comments, because a comment period of 30 days from

service of patent owner's response is set by statute.  35 U.S.C. 314(b)(3).


### *Claim Rejections - 35 USC §§ 102 & 103*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in
public use or on sale in this country, more than one year prior to the date of application for patent in the
United States.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
such that the subject matter as a whole would have been obvious at the time the invention was made to a person
having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
manner in which the invention was made.

Application/Control Number: 95/002,009                                      Page 4
Art Unit: 3992

1.  Claims 12, 52, 53, 55, and 56 are rejected under 35 U.S.C. 102(b) as being anticipated

by Balakrishnan 366.  This rejection was proposed by the third party and is adopted.  Claim 54 is

not rejected and the proposed rejection of this claim is not adopted.

Regarding claim 12, the rejection is modified from the original rejection in the Request as

it now relies on the Fig. 8-9 embodiment due to the claim amendment.

Balakrishnan 366 discloses in Figs. 8-9:

**A power converter comprising:**

**input terminals and output terminals; a transformer to transfer electrical power**

**from the input terminals to the output terminals;**

Fig. 8 shows a power converter with input terminals at the left of box 700 and output

terminals at load 780, and a transformer 730 to transfer power from the input to output.


**a switch to control the transformer in response to a switching signal having a**

**switching frequency; and a controller to generate the switching signal and to allow the**

**switching frequency to hop from frequency to frequency according to a digital pattern,**

**wherein the controller is configured to generate the switching signal in response to a**

**feedback signal associated with a current control loop on a primary-side of the**

**transformer.**

Note that Fig. 9 is a more detailed depiction of the regulation circuit 850 of Fig. 8.  The

regulation circuit includes a switch 435 to control the transformer in response to a switching

signal 610.  The remainder of Fig. 9 is a controller to generate the switching signal, and it allows

the switching frequency to hop from frequency to frequency according to a digital pattern, as

Application/Control Number: 95/002,009                                    Page 5
Art Unit: 3992

discussed by the third party at 10/29/2012 Comments pp. 13-14 (discussing similar limitations of

claim 52). The switching signal is generated in response to a feedback signal associated with a

current control loop on the primary side—the current limit signal discussed at col. 11 lines 16-

25.

     Regarding claims 52, 53, 55, and 56, see 10/29/2012 Comments pp. 10-17, which are

incorporated by reference as to these claims.

     The proposed rejection of claim 54 is not adopted because it relies on Figs. 8-9 to meet

the limitations of parent claim 52, but relies on Fig. 2 to show the auxiliary winding of the

transformer.  These are clearly separate embodiments, and one cannot mix and match from

separate embodiments in an anticipation rejection.  The third party seemed to acknowledge this,

but merely stated that since both types of transformer are disclosed, even in separate

embodiments, they may be used interchangeably.  This is not a correct statement of the law of

anticipation.


     2.  Claim 54[2] is rejected under 35 U.S.C. 103(a) as being unpatentable over Balakrishnan

366.  This rejection was proposed by the third party and is adopted.  See 10/29/2012 Comments

pp. 17-18, which are incorporated by reference.


     3.  Claims 1, 2, 5, 12, 15, 17, 22, 32, 34, and 52-56 are rejected under 35 U.S.C. 102(b) as

being anticipated by FSD210.  This rejection was proposed by the third party and is adopted.

---

[2] The 10/29/2012 Comments refer several times to claim 53, but this is a clear typo as the claim chart refers to claim 54.

Application/Control Number: 95/002,009                                    Page 6
Art Unit: 3992

See Request pp. 19-27 and 10/29/2012 Comments pp. 19-24, which are incorporated by

reference.


4.    Claim 12 is <u>not</u> rejected under 35 U.S.C. 102(b) as being anticipated by Balakrishnan

876.  This rejection was proposed by the third party and <u>is not adopted</u>.  See Request pp. 27-30

for the proposal.  See 10/9/2013 Office action for reasons for not adopting.


5.    Claims 1, 2, 5-7, 11, 12, 15, 17-19, and 52-66 are rejected under 35 U.S.C. 103(a) as

being unpatentable over TEA1401T in view of Balakrishnan 876.  This rejection was proposed

by the third party and <u>is adopted</u>.  See Request pp. 31-43 and 10/29/2012 Comments pp. 69-91,

which are incorporated by reference.


6.    Claims 1, 2, 5-7, 11, 15, and 17-19 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Majid in view of Balakrishnan 876.  This rejection was proposed by the third

party and <u>is adopted</u>.  See Request pp. 50-62, which are incorporated by reference.


7.    Claims 12 and 52-66 are rejected under 35 U.S.C. 103(a) as being unpatentable over

TEA1504 in view of Balakrishnan 876.  This rejection was proposed by the third party and <u>is</u>

<u>adopted</u>.  See 10/29/2012 Comments pp. 24-46, which are incorporated by reference.


8.    Claims 12 and 52-66 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Majid in view of TEA1504, and further in view of Balakrishnan 876.  This rejection was

Application/Control Number: 95/002,009                                    Page 7
Art Unit: 3992

proposed by the third party and is adopted.  See 10/29/2012 Comments pp. 46-69, which are

incorporated by reference.


### *Response to Arguments*

The arguments presented in the 1/9/2014 Response and 2/10/2014 Comments have been

fully considered.


Balakrishnan 366 (Rejections 1 and 2)

Patent owner argues that Balakrishnan 366 does not include "a feedback signal associated

with a current control loop on a primary-side of the transformer" as in claim 12, and similar

limitations in claims 52-56.  The examiner relied upon the current limit shown in Fig. 9 and

described at col. 11 lines 16-25.  This element turns off the regulation circuit when the current

therein goes over a threshold.  Patent owner argues that this does not meet the claimed feedback

signal.  1/9/2014 Response pp. 10-15.  The examiner disagrees, and agrees with the third party

requester's rebuttal at 2/10/2014 Comments pp. 2-7.

Additionally, patent owner talks of admissions.  Regardless of whether the particular

claim construction can be considered an *admission* of patent owner, the point of this exercise is

to determine the broadest reasonable interpretation of the claims as understood by a person of

ordinary skill in the art.  Dr. Wei, the patent owner's own expert in litigation, argued in his

Opening Expert Report in litigation that a current limit circuit of a particular product (not at issue

here) could meet the feedback circuit of the claim.  It is acknowledged that the patent owner did

not advance this position at trial, and does not necessarily have to disavow its expert's opinions if

it decides to drop an argument before trial.  But the fact remains that Dr. Wei, a person that the

*patent owner* set forth as a person of ordinary skill in the art, understood that a current limit

circuit could provide the feedback signal of the claim.  There is no reason to limit Dr. Wei's

finding to only the particular circuit he was viewing at the time; patent owner says the allegedly

infringing item is nothing like Balakrishan 366.  But in their most basic sense, like Balakrishnan

366, Dr. Wei was looking at a current limit circuit which output to an AND gate so that a

MOSFET was turned off when the current therethrough exceeded a certain value.  Additionally,

Dr. Wei contradicts patent owner's general argument that a current limit cannot be a feedback

signal. The arguments tend to show that it was reasonable for a person of ordinary skill in the art,

such as Dr. Wei, to consider a current limit to meet the claimed feedback signal.  And even if

patent owner did not go forward with this position at trial, if it were so ludicrous to consider a

current limit to be a feedback signal then it is unclear why patent owner would file this paper

with the court to begin with.

Patent owner next argues that in Balakrishnan 366 the controller does not generate a

frequency hopping switching signal in response to a feedback signal associated with the current

control loop (i.e. the current limit signal).  1/9/2014 Response pp. 15-18.  The examiner again

agrees with the third party rebuttal at 2/10/2014 Comments pp. 7-8, particularly that patent

owner's arguments are not necessarily associated with the claim language.  Furthermore, the

current limit signal will turn off the regulation circuit if the current is over a threshold.   The

switching signal is therefore "in response to" the current limit signal.

Patent owner's argument as to claim 54, rejection 2, is merely the same as above and is

rebutted for the same reasons.  See 1/9/2014 Response pp. 18-19.

Application/Control Number: 95/002,009                                   Page 9
Art Unit: 3992

FSD210 (Rejection 3)

Patent owner first argues that FSD210 does not disclose a feedback signal associated with

a current control loop.  1/9/2014 Response pp. 19-20.  This argument is essentially the same as

that discussed above, that a current limit circuit cannot read on the claim.  The examiner

disagrees for the same reasons given above.

Patent owner next argues that FSD210 does not disclose a controller to generate and

control a frequency-hopping switching signal in response to a feedback signal associated with a

current control loop.  1/9/2014 Response pp. 20-25.  The examiner generally agrees with the

third party requester's rebuttal at 2/10/2014 Comments pp. 9-11, which is deemed to sufficiently

address the owner's arguments.


TEA1401T and Balakrishnan 876 (Rejection 5)

Patent owner argues that the references fail to teach all of the limitations of the claims.

1/9/2014 Response pp. 28-32.  Patent owner separately argues as to claims 1 et al., then claims

12 and 52-66, but the arguments appear to the substantially the same.

Patent owner first argues that there is no current control loop because the so-called loop

starts and ends at different places, and is broken up by switches.  The examiner disagrees.  As

pointed out by the requester, the loop starts and ends at the same place, and switches did not

seem to matter in the '972 patent so it is not seen why they matter in TEA1401T, as far as

preventing a "loop."  See 2/10/2014 Comments p. 13.

Application/Control Number: 95/002,009                                      Page 10
Art Unit: 3992

Patent owner next argues that the alleged feedback signal is not a feedback signal,

because it is not an output that is used as an input.  The examiner disagrees, because each of the

loops are based on sensed signals.  TEA1401T p. 3 explains that the current control loop starts

with the current through the main switch, and the voltage control loop starts with the voltage at

the auxiliary winding.  The control is ultimately based on these sensed signals.

Patent owner then argues that even if these things are shown, it is not shown how the

current control loop or feedback signal control the switching frequency of the circuit as required

by the claims.  The examiner disagrees that this is required by the claims, as shown by the

requester at 2/10/2014 Comments p. 12.  The generation and control of the switching signal is

merely required to be "in response to" the first and second feedback signals.  The switching

signal is certainly "in response to" these signals, as the signals ultimately lead back to the single

shot element as shown in the rejections.

Patent owner next argues that there is no explanation for the combination or how it would

work.  1/9/2014 Response pp. 29-30.  Patent owner also argues that no reason to combine the

references has been shown.  1/9/2014 Response pp. 32-35.  The examiner disagrees, and agrees

with the third party requester's rebuttal.  2/10/2014 Comment pp. 13-16.

Patent owner argues that adding the jitter circuit to TEA1401T would destroy the

functionality of TEA1401T.  1/9/2014 Response pp. 35-37.  The examiner agrees with the

requester that the patent owner, in delving into various unclaimed technical details, is primarily

arguing about the physical combination of the references, rather than the combination of the

teachings of the references.  See 2/10/2014 Comments pp. 16-17.  To the extent that patent

Application/Control Number: 95/002,009                                    Page 11
Art Unit: 3992

owner argues that adding an optocoupler would destroy TEA1401T, this is addressed in the next

paragraph.

Patent owner argues that adding the jitter circuit to TEA1401T would defeat the purpose

of TEA1401T and change its principle of operation because it would add an optocoupler on the

secondary side, and one of the purposes of TEA1401T was to remove electronics from the

secondary side.  1/9/2014 Response p. 37.  While Balakrishnan 876 does include an optocoupler

on the secondary side, the examiner disagrees that the combination requires addition of this part.

The point of the combination is to provide the jitter circuit, which is on the primary side of

Balakrishnan 876, to TEA1401T, not to add the optocoupler.  Nothing in Balakrishnan 876

indicates that the jitter circuit requires an optocoupler; that is simply the means of feedback used

in that reference.  There is no reason why we cannot merely keep the means of feedback used in

TEA1401T instead.

Patent owner argues that TEA1401T teaches away from adding a jitter circuit.  1/9/2014

Response p. 37.  This is clearly incorrect because the reference does not mention a jitter circuit.

Silence is not teaching away.    To the extent patent owner is arguing that the reference teaches

away from adding *anything* to the secondary side, regardless of whether this is true or not the

combination does not necessarily add anything to the secondary side, as discussed above.


Secondary Considerations

Patent owner argues that various secondary considerations support non-obviousness.

1/9/2014 Response pp. 38-42.  This discussion is applicable against all of the obviousness

rejections.  The examiner agrees with the third party that patent owner has not shown a sufficient

nexus between the evidence and the claims.

As to commercial success, patent owner states that 72 million units have been sold that

"practice the invention", worth over $10 million. But even if all of those units include the

invention, there is no evidence that any success was *because of* the claimed invention.

Furthermore, there is no evidence that 72 million units or $10 million is significant in this

particular market. There is no evidence at all about market share or what types of sales would be

expected without the claimed features.  See MPEP 716.03(b)(IV).

It was also stated, by sole inventor Yang in the related litigation, that Infineon wanted to

acquire the company for $80 million after the invention of the '972 patent.  1/9/2014 Response,

Exhibit B pp. 1822-23.  Importantly, nothing in this exhibit shows why Infineon offered $80

million to buy the company, that it necessarily was due to any particular claims of the '972

patent.  At best it is suggested that Infineon was interested in "accurate primary side control."

But there is no evidence to what extent Infineon valued the claims of the '972 patent; some or all

of that $80 million could have been based on other assets of the company.  Furthermore, only

some of the claims even say anything about the primary side of a transformer or primary side

control, so even this evidence would have no bearing on the rest of the claims.  The claims also

make no reference to "accuracy," and Yang acknowledged that primary control was known, but

that their goal was to achieve very accurate control on the primary side.  1/9/2014 Response,

Exhibit B pp. 1822-25.  In any event, this evidence is too vague to establish that the invention as

claimed was the cause of this offer to buy the company.

Application/Control Number: 95/002,009                                    Page 13
Art Unit: 3992

Patent owner next argues that there was a long-felt need in the industry which was met by

the invention.  The evidence tends to show that if there was a need, it was for accurate primary

side control, without an optocoupler.  The issue is that each of these arguments is based on

something that is not claimed.  Nothing in the claims requires an accurate power supply, the lack

of an optocoupler, or getting control "tight enough."  Even if patent owner's product satisfied all

of these needs, there is not a link between the needs and the claims.

Patent owner argues that the difficulty in achieving the invention supports non-

obviousness.  The evidence is that Yang stated that Infineon told him that providing an accurate

power supply without an optocoupler was "mission impossible."  1/9/2014 Response, Exhibit B

p. 1822.  Also, Mr. Renouard testified at trial that other companies took several years to develop

suitable products.  1/9/2014 Response, Exhibit A pp. 696-97, 700-01, 721-23, 738.  It is further

stated that the delay was caused in part by the difficulty in getting the current control tight

enough within acceptable levels.  Again, each of these arguments is based on something that is

not claimed.  Nothing in the claims requires an accurate power supply, the lack of an

optocoupler, or getting control "tight enough."  Many of the claims do not even recite "primary

side" or the like, and none of the claims are drawn to removal of an optocoupler.  Additionally,

product development is not necessarily linked to the difficulty of the claimed invention; it can

take years to develop a product for many reasons, not necessarily just because it is difficult to

make.  Nothing in Mr. Renourd's testimony reveals why a product took several years for

development.

Patent owner finally argues that the lapse in time between the publication of the

references (late 1990's) and the filing of the '972 patent, and that no one combined such

references in that time, indicates non-obviousness.  This argument has similar problems as those

presented above.  Particularly, patent owner argues that the lapse in time is important "In view of

the long-felt need established above and resulting commercial success" and also that the time

"verifies its difficulty."  1/9/2014 Response p. 42.  This argument is essentially predicated upon

the previous arguments, and those have the nexus issues described above.


　　Majid and Balakrishnan 876 (Rejection 6)

　　Patent owner argues that the references fail to teach all of the limitations of the claims.

1/9/2014 Response pp. 44-45.  Patent owner again argues that an over-current protection cannot

be the claimed feedback loop; this has already been addressed above as to Balakrishnan 366 and

FSD210.   To the extent patent owner argues that turning a switch off is not controlling the

switch, this is rebutted by the third party at 2/10/2014 Comments pp. 18-19.  Patent owner next

argues that there is no loop because it does not start and stop in the same place.  This is also

sufficiently rebutted by the third party at 2/10/2014 Comments p. 18.

　　Patent owner next argues that there is no reason to combine the references.  1/9/2014

Response pp. 46-48.  The examiner disagrees, and agrees with the third party requester's

rebuttal.  2/10/2014 Comment pp. 19-20.

　　Patent owner argues that adding the jitter circuit to Majid would destroy the functionality

of Majid.  1/9/2014 Response pp. 48-50.  Patent owner also argues that adding the jitter circuit to

Majid would defeat the purpose of Majid because it would provide an unknown behavior and

significant experimentation, whereas Majid's purpose is to reliably provide controlled output.

1/9/2014 Response pp. 50.  Each argument is essentially that the rejection did not provide any

Application/Control Number: 95/002,009                                        Page 15
Art Unit: 3992

guidance as to how to combine the references, and that it is too confusing and unclear how the

references would work together.  The examiner agrees with the requester that the patent owner is

primarily arguing about the physical combination of the references, rather than the combination

of the teachings of the references, and also that sufficient guidance has been provided.  See

2/10/2014 Comments pp. 20-22.  .

     Patent owner argues that Majid teaches away from adding a jitter circuit.  1/9/2014

Response p. 51.  This is clearly incorrect because the reference does not mention a jitter circuit.

Patent owner appears to argue that Majid would not suffer from an EMI problem because it

mentions a TV, and Balakrishnan 876 suggests that EMI causes problems affecting TVs.  This

argument does not make sense to the examiner.  Just because Majid mentions TVs does not mean

that such TVs definitely would not suffer from EMI and would not benefit from the Balakrishnan

876 teachings.  It is not as if TVs did not exist prior to the Balakrishnan 876 EMI solution.


    <u>TEA1504 and Balakrishnan 876 (Rejection 7)</u>

     Patent owner's arguments against TEA1504 appear to be substantially similar to those it

presented against Majid.  1/9/2014 Response pp. 51-61.  They are rebutted for the same reasons.

Additionally, see 2/10/2014 Comments pp. 22-24 for additional discussion which sufficiently

rebuts the patent owner's arguments.


    <u>Majid, TEA1504 and Balakrishnan 876 (Rejection 8)</u>

     The arguments here are no different than those already addressed above.  See 1/9/2014

Response pp. 61-64 and 2/10/2014 Comments p. 24.

Application/Control Number: 95/002,009                                    Page 16
Art Unit: 3992

*Conclusion*

**This is an ACTION CLOSING PROSECUTION (ACP)**; see MPEP § 2671.02.

(1) Pursuant to 37 CFR 1.951(a), the patent owner may once file written comments

limited to the issues raised in the reexamination proceeding and/or present a proposed

amendment to the claims which amendment will be subject to the criteria of 37 CFR 1.116 as to

whether it shall be entered and considered. Such comments and/or proposed amendments must

be filed within <u>a time period of 30 days or one month (whichever is longer) from the mailing</u>

<u>date of this action</u>.  Where the patent owner files such comments and/or a proposed amendment,

the third party requester may once file comments under 37 CFR 1.951(b) responding to the

patent owner's submission within <u>30 days from the date of service</u> of the patent owner's

submission on the third party requester.

(2) If the patent owner does not timely file comments and/or a proposed amendment

pursuant to 37 CFR 1.951(a), then the third party requester is precluded from filing comments

under 37 CFR 1.951(b).

(3) Appeal **cannot** be taken from this action, since it is not a final Office action.

37 CFR 1.943(b) requires that "[r]esponses by the patent owner and written comments by

the third party requester shall not exceed 50 pages in length, excluding amendments, appendices

of claims, and reference materials such as prior art references."  This page limit will be strictly

enforced.

**All** correspondence relating to this *inter partes* reexamination proceeding should be directed:

By **U.S. Postal Service Mail** to:

> Mail Stop *Inter Partes* Reexam
> ATTN:  Central Reexamination Unit

Application/Control Number: 95/002,009                                    Page 17
Art Unit: 3992

       Commissioner for Patents
       P.O. Box 1450
       Alexandria, VA  22313-1450


By FAX to:     (571) 273-9900
              Central Reexamination Unit


By hand to:    Customer Service Window
              Randolph Building
              401 Dulany St.
              Alexandria, VA  22314

       Registered users of EFS-Web may alternatively submit correspondence via the electronic

filing system at https://efs.uspto.gov/efile/myportal/efs-registered

       Any inquiry concerning this communication or as to the status of this proceeding, should

be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

       Signed:

       /James Menefee/

       Primary Examiner
       Central Reexamination Unit 3992
       June 17, 2014

       Conferees: /Linh M. Nguyen/

       Primary Examiner, Art Unit 3992


       /JENNIFER MCNEIL/

       Supervisory Patent Examiner, Art Unit 3992

# EXHIBIT 1C

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/002,009 | 06/01/2012 | 7259972 | T9111-20047US01 | 5565 |

181          7590          12/10/2014
MILES & STOCKBRIDGE PC
1751 PINNACLE DRIVE
SUITE 1500
TYSONS CORNER, VA 22102-3833

| EXAMINER |
|---|
| MENEFEE, JAMES A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/10/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Transmittal of Communication to Third Party Requester** ***Inter Partes*** **Reexamination** | **Control No.** 95/002,009 | **Patent Under Reexamination** 7259972 | |
|---|---|---|---|
| | **Examiner** JAMES MENEFEE | **Art Unit** 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

┌───── (THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS) ─────┐

        FISH & RICHARDSON P.C. (SD)
        P.O. BOX 1022
        MINNEAPOLIS, MN 55440-1022

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination prceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

| *Right of Appeal Notice*<br>*(37 CFR 1.953)* | Control No.<br><br>95/002,009 | Patent Under Reexamination<br><br>7259972 |
|---|---|---|
| | Examiner<br><br>JAMES MENEFEE | Art Unit<br><br>3992 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on <u>16 September, 2014</u>
Third Party(ies) on <u>18 August, 2014</u>

Patent owner and/or third party requester(s) may file a notice of appeal with respect to any adverse decision with payment of the fee set forth in 37 CFR 41.20(b)(1) within **one-month or thirty-days (whichever is longer)**. See MPEP 2671. In addition, a party may file a notice of **cross** appeal and pay the 37 CFR 41.20(b)(1) fee **within fourteen days of service** of an opposing party's timely filed notice of appeal. See MPEP 2672.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

If no party timely files a notice of appeal, prosecution on the merits of this reexamination proceeding will be concluded, and the Director of the USPTO will proceed to issue and publish a certificate under 37 CFR 1.997 in accordance with this Office action.

The proposed amendment filed _____        ☐ will be entered    ☐ will not be entered*

*Reasons for non-entry are given in the body of this notice.

1a. ☒ Claims <u>1,2,5-7,11,12,15,17-19,22,32,34 and 52-66</u> are subject to reexamination.

1b. ☒ Claims <u>3,4,8-10,13,14,16,20,21,23-31,33 and 35-51</u> are not subject to reexamination.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are confirmed. [Unamended patent claims].

4. ☐ Claims _____ are patentable. [Amended or new claims].

5. ☒ Claims <u>1,2,5-7,11,12,15,17-19,22,32,34 and 52-66</u> are rejected.

6. ☐ Claims _____ are objected to.

7. ☐ The drawings filed on _____ ☐ are acceptable.  ☐ are not acceptable.

8. ☐ The drawing correction request filed on _____ is ☐ approved.  ☐ disapproved.

9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d) or (f). The certified copy has:
   ☐ been received.   ☐ not been received.   ☐ been filed in Application/Control No. _____.

10. ☐ Other _____

**<u>Attachments</u>**

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☐ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

Application/Control Number: 95/002,009                                          Page 2
Art Unit: 3992

## RIGHT OF APPEAL NOTICE

This is an *inter partes* reexamination of U.S. Patent No. 7,259,972 ("the '972 patent")

based on a request filed 6/1/2012 ("Request").  As stated previously, claims 1, 2, 5-7, 11, 12, 15,

17-19, 22, 32, 34 and new claims 52-66 are subject to reexamination, and claims 3, 4, 8-10, 13,

14, 16, 20, 21, 23-31, 33, and 35-51 are not subject to reexamination.  Claim 12 has been

amended.  This action is responsive to patent owner's response filed 8/18/2014 ("ACP

Response"), and the requester's comments filed 9/16/2014 ("ACP Comments").  This action may

also reference patent owner's previous responses filed 9/27/2012 ("9/27/2012 Response") and

1/9/2014 ("1/9/2014 Response"), and the requester's comments thereon filed 10/29/2012

("10/29/2012 Comments") and 2/10/2014 ("2/10/2014 Comments").

### References

U.S. Patent No. 6,229,366 to Balakrishnan et al. ("Balakrishnan 366").

U.S. Patent No. 6,249,876 to Balakrishnan et al. ("Balakrishnan 876").

U.S. Patent No. 5,956,242 to Majid et al. ("Majid").

Philips Semiconductors, TEA1401T Datasheet (3/7/1997) ("TEA1401T").

Philips Semiconductors, TEA1504 Datasheet (12/7/1999) ("TEA1504").

Fairchild Semiconductor, FSD210 Fairchild Power Switch (2003) ("FSD210").

### Supplemental Response

Patent owner filed a supplemental response under 37 CFR 1.945(b) on 10/6/2014.  The

examiner finds that the filing of this paper is acceptable under 37 CFR 1.945(b).  The paper

consists of the curriculum vitae of Jonathan Wood, which was apparently inadvertently omitted

from his declarations as filed on 8/18/2014, and is not substantive in nature.  Under 1.945(b), a

supplemental response must include: (1) an explanation of how the requirements of

1.111(a)(2)(i) are satisfied; (2) an explanation of why the supplemental response was not

presented with the original response; and (3) a compelling reason for entry.   As to (1), the patent

owner argues that 1.111(b)(2)(i)(E) is met as this is a correction of informalities.  As to (2), the

patent owner explains the material was not submitted earlier due to inadvertent omission, and as

to (3) patent owner argues that the CV would provide the examiner further details of Dr. Wood's

qualifications with no new arguments or prejudice to requester.  The examiner is satisfied that

the apparently inadvertent omission of this non-substantive information relating only to the

qualifications of the declarant sufficiently satisfies the requirements for a supplemental response,

therefore the material is potentially available for consideration.  Note that this has nothing to do

with whether the underlying material may be *entered*, which must be considered separately as

this is a filing after ACP.  This is dealt with in the next section.


### Admissibility of Declarations

Patent owner filed two declarations with its ACP Response, the first and second

declarations of Dr. Johnathan R. Wood.[1]  Any declaration filed after ACP is subject to the

requirements of 37 CFR 1.116(e), which states that "An affidavit or other evidence submitted

after . . . an action closing prosecution . . . may be admitted upon a showing of good and

sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented."

---

[1] Note that the following analysis is the same for the entry of the CV of Dr. Wood, filed with the 10/6/2014
supplemental response.  The CV is merely information about the qualifications of the declarant and its entry clearly
stands or falls with the underlying declarations.

Application/Control Number: 95/002,009                                      Page 4
Art Unit: 3992

The problem here is that the patent owner has not even attempted to supply any reason

why the declarations are necessary and were not earlier presented.   There is therefore no

"showing" as required by 37 CFR 1.116(e).  As the rule has not been satisfied, the declarations

cannot be entered.

Additionally, even if it had tried to do so, it is not apparent that patent owner could have

made a showing satisfying 37 CFR 1.116(e), because there is no clear reason why the

declarations could not have been presented earlier.  The declarations are drawn to reasons why

the applied references allegedly do not describe various claimed features.  But all of the currently

applied rejections were on the record at least as of the 10/9/2013 non-final Office action, and

many of the same issues have been of record even longer.  There were no new arguments in the

ACP that Dr. Wood is now only capable of addressing for the first time.  The arguments by Dr.

Wood address issues that were present at least as of that Office action, and the declarations

therefore clearly could have and should have been filed with patent owner's 1/9/2014 Response,

prior to the close of prosecution.


### Notification of Other Proceedings

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a), to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the

'972 patent throughout the course of this reexamination proceeding. The third party requester is

also reminded of the ability to similarly apprise the Office of any such activity or proceeding

throughout the course of this reexamination proceeding. See MPEP § 2686 and 2686.04.

Application/Control Number: 95/002,009                                      Page 5
Art Unit: 3992

### *Claim Rejections - 35 USC §§ 102 & 103*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in
public use or on sale in this country, more than one year prior to the date of application for patent in the
United States.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
such that the subject matter as a whole would have been obvious at the time the invention was made to a person
having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
manner in which the invention was made.

1.  Claims 12, 52, 53, 55, and 56 are rejected under 35 U.S.C. 102(b) as being anticipated

by Balakrishnan 366.  This rejection was proposed by the third party and is adopted.  Claim 54 is

not rejected and the proposed rejection of this claim is not adopted.

Regarding claim 12, the rejection is modified from the original rejection in the Request as

it now relies on the Fig. 8-9 embodiment due to the claim amendment.

Balakrishnan 366 discloses in Figs. 8-9:

**A power converter comprising:**

**input terminals and output terminals; a transformer to transfer electrical power**

**from the input terminals to the output terminals;**

Fig. 8 shows a power converter with input terminals at the left of box 700 and output

terminals at load 780, and a transformer 730 to transfer power from the input to output.

Application/Control Number: 95/002,009                                    Page 6
Art Unit: 3992

**a switch to control the transformer in response to a switching signal having a switching frequency; and a controller to generate the switching signal and to allow the switching frequency to hop from frequency to frequency according to a digital pattern, wherein the controller is configured to generate the switching signal in response to a feedback signal associated with a current control loop on a primary-side of the transformer.**

Note that Fig. 9 is a more detailed depiction of the regulation circuit 850 of Fig. 8.  The regulation circuit includes a switch 435 to control the transformer in response to a switching signal 610.  The remainder of Fig. 9 is a controller to generate the switching signal, and it allows the switching frequency to hop from frequency to frequency according to a digital pattern, as discussed by the third party at 10/29/2012 Comments pp. 13-14 (discussing similar limitations of claim 52). The switching signal is generated in response to a feedback signal associated with a current control loop on the primary side—the current limit signal discussed at col. 11 lines 16-25.

Regarding claims 52, 53, 55, and 56, see 10/29/2012 Comments pp. 10-17, which are incorporated by reference as to these claims.

The proposed rejection of claim 54 is not adopted because it relies on Figs. 8-9 to meet the limitations of parent claim 52, but relies on Fig. 2 to show the auxiliary winding of the transformer.  These are clearly separate embodiments, and one cannot mix and match from separate embodiments in an anticipation rejection.  The third party seemed to acknowledge this, but merely stated that since both types of transformer are disclosed, even in separate

Application/Control Number: 95/002,009                                    Page 7
Art Unit: 3992

embodiments, they may be used interchangeably.  This is not a correct statement of the law of

anticipation.


      2.  Claim 54[2] is rejected under 35 U.S.C. 103(a) as being unpatentable over Balakrishnan

366.  This rejection was proposed by the third party and is adopted.  See 10/29/2012 Comments

pp. 17-18, which are incorporated by reference.


      3.  Claims 1, 2, 5, 12, 15, 17, 22, 32, 34, and 52-56 are rejected under 35 U.S.C. 102(b) as

being anticipated by FSD210.  This rejection was proposed by the third party and is adopted.

See Request pp. 19-27 and 10/29/2012 Comments pp. 19-24, which are incorporated by

reference.


      4.  Claim 12 is not rejected under 35 U.S.C. 102(b) as being anticipated by Balakrishnan

876.  This rejection was proposed by the third party and is not adopted.  See Request pp. 27-30

for the proposal.  See 10/9/2013 Office action p. 11 for reasons for not adopting.


      5.  Claims 1, 2, 5-7, 11, 12, 15, 17-19, and 52-66 are rejected under 35 U.S.C. 103(a) as

being unpatentable over TEA1401T in view of Balakrishnan 876.  This rejection was proposed

by the third party and is adopted.  See Request pp. 31-43 and 10/29/2012 Comments pp. 69-91,

which are incorporated by reference.

---

[2] The 10/29/2012 Comments refer several times to claim 53, but this is a clear typo as the claim chart refers to claim 54.

Application/Control Number: 95/002,009                                    Page 8
Art Unit: 3992

6.  Claims 1, 2, 5-7, 11, 15, and 17-19 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Majid in view of Balakrishnan 876.  This rejection was proposed by the third

party and <u>is adopted</u>.  See Request pp. 50-62, which are incorporated by reference.


7.  Claims 12 and 52-66 are rejected under 35 U.S.C. 103(a) as being unpatentable over

TEA1504 in view of Balakrishnan 876.  This rejection was proposed by the third party and <u>is</u>

<u>adopted</u>.  See 10/29/2012 Comments pp. 24-46, which are incorporated by reference.


8.  Claims 12 and 52-66 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Majid in view of TEA1504, and further in view of Balakrishnan 876.  This rejection was

proposed by the third party and <u>is adopted</u>.  See 10/29/2012 Comments pp. 46-69, which are

incorporated by reference.


***Response to Arguments***

The arguments presented in the ACP Response and ACP Comments have been fully

considered.  Note that any citation to the Wood declarations is ignored as these declarations are

not entered and thus not of record.  Many of the arguments are substantially the same as those

presented in patent owner's previous 1/9/2014 Response, and thus the discussions from the ACP

remain relevant.


<u>Balakrishnan 366 (Rejections 1 and 2) (ACP Response at 2-13; ACP Comments at 4-8)</u>

Application/Control Number: 95/002,009                                    Page 9
Art Unit: 3992

Patent owner argues that Balakrishnan 366 does not include "a feedback signal associated with a current control loop on a primary-side of the transformer" as in claim 12, and similar limitations in claims 52-56.  The examiner relied upon the current limit shown in Fig. 9 and described at col. 11 lines 16-25.  This element turns off the regulation circuit when the current therein goes over a threshold.  Patent owner argues that this does not meet the claimed feedback signal.  The examiner disagrees, for reasons that should already be clear on the record from the ACP and 10/9/2013 Office Action.

The examiner's position furthermore is (and has been throughout this proceeding) supported in part by the Wei expert report, which was presented by patent owner to the court in related litigation.  Dr. Wei analyzed a similar portion of a circuit and determined that a similar current limit circuit constituted the claimed feedback signal.  The examiner concluded that if patent owner's own expert was willing to call a current limit circuit a feedback circuit, then that must fit within the broadest reasonable interpretation of the claim.

Patent owner's arguments are therefore based primarily on the notion that intrinsic evidence is favored over extrinsic evidence, and its belief that the intrinsic evidence supports its position.  Patent owner is correct that in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the Federal Circuit sitting en banc stated the general proposition that intrinsic evidence (i.e. the specification, claims, and file history) is usually more important and valuable in construing the claims than extrinsic evidence.  It would not be proper to rely on extrinsic evidence "that is clearly at odds with" the intrinsic evidence.  *Phillips*, 415 F.3d at 1318.  But patent owner seems to ignore that the court explicitly authorized the use of extrinsic evidence, so long as its flaws are recognized and it is viewed in the proper context.  *Id.* at 1319.

Application/Control Number: 95/002,009                                Page 10
Art Unit: 3992

     Importantly, the patent owner has not shown how the examiner's findings are inconsistent with the specification.  The examiner agrees with the requester's explanation as to how the reference meets the claim, under the broadest reasonable interpretation and consistent with the specification.  ACP Comments at 4-5; 2/10/2014 Comments at 2-7.  Patent owner has also not persuasively shown how any reliance on the Wei expert report is inconsistent with the specification.  For example, the requester explains how the Wei report may be considered to be consistent with the intrinsic evidence.  ACP Comments at 6.  In any case, the point is whether the reference meets the broadest reasonable interpretation of the claims.  Wei helps to show us what falls under the broadest reasonable interpretation, and indicates that items such as those in Balakrishnan 366 do.

     Patent owner now argues the Wei expert report is unreliable and subject to bias because it was prepared for litigation.  Patent owner cites *Phillips* for the notion that extrinsic evidence like expert reports can suffer from bias and may be unreliable due to it being generated for litigation.  Patent owner seems to have missed the point.  The court is clearly cautioning against the reliance on expert reports due to their selection bias—an expert report is not an opinion of some random person of skill in the art.  It is submitted by a party in furtherance of that party's position in the case.  A patent owner is not going to submit an expert report that is fatal to its case; it would likely instead submit a different report from another expert, or none at all.  This is not to suggest that experts are inherently untrustworthy, just that courts must be mindful of this in evaluating an expert report.  The examiner is mindful of this fact; he just gives it little weight due to the particular context of this proceeding.  The selection bias matters less when the report is being relied upon in a way that is counter to the interest of its proponent, here the patent owner.

Application/Control Number: 95/002,009                                          Page 11
Art Unit: 3992

     The Wei expert report is not merely extrinsic evidence; the key point here is that Dr. Wei

was <u>patent owner's</u> expert, and the report was submitted to the court by the <u>patent owner</u>.[3]

While the potential for bias and unreliability is still present, it takes on a different air in this

context.  An expert report may be biased because it is likely only going to be submitted if its

conclusions are favorable to its proponent.  Here, where its conclusions are not favorable to its

proponent, the fear of bias is mitigated.  All we are doing is preventing the patent owner from

making one argument to the court and making a different argument to the Office.

     In some sense this is analogous to the admission exception to the hearsay rule.  Hearsay

is generally inadmissible in court due to the belief that it is unreliable, and due to the inability to

test its truth by cross-examination.  This is similar to the Federal Circuit's warning as to expert

reports.  Yet, admissions by a party opponent are not considered hearsay, even if they otherwise

fit the definition.  Fed. R. Evid. 801(d)(2).[4]  Whether such statements are reliable, it is thought

that the adversarial process and fairness compel a party's prior admissions to be admissible. Just

as the examiner finds here, a party should be held to their prior statements.[5]  Thus, the examiner

finds that Wei's expert report, prepared for litigation and submitted to a court by the patent

owner, is relevant and useful in considering whether Balakrishnan 366 meets the claims.

     Patent owner next argues that Balakrishnan 366 does not disclose a controller to generate

a frequency hopping switching signal in response to a feedback signal associated with the current

---

[3] Patent owner has argued previously that Dr. Wei was merely analyzing infringement and not the claims.  An
infringement analysis necessarily requires two steps: "determining the meaning and scope of the patent claims
asserted to be infringed," and "comparing the properly construed claims to the device accused of infringing."
*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).
[4] This paragraph should not somehow be construed as <u>relying upon</u> the Federal Rules of Evidence, hearsay
exceptions, or the like.  It is an example to illustrate the soundness of giving weight to Wei's opinion.
[5] The examiner already explained why the patent owner's expert's prior statements are much more important and
relevant than the requester's expert's.  10/9/2013 Office Action at 8-10.

Application/Control Number: 95/002,009                                    Page 12
Art Unit: 3992

control loop (i.e. the current limit signal).  ACP Response pp. 9-12.  The examiner again agrees

with the third party, which sufficiently rebuts this argument at ACP Comments at 6-8.

Patent owner's argument as to claim 54, rejection 2, is merely the same as above and is

rebutted for the same reasons.  See ACP Response at 13.


FSD210 (Rejection 3) (ACP Response at 13-19; ACP Comments at 8-11)

Patent owner first argues that FSD210 does not disclose a feedback signal associated with

a current control loop.  ACP Response pp. 13-15.  This argument is essentially the same as that

discussed above, that a current limit circuit cannot read on the claim.  The examiner disagrees for

the same reasons already given above and in the ACP.

Patent owner next argues that FSD210 does not disclose a controller to generate and

control a frequency-hopping switching signal in response to a feedback signal associated with a

current control loop.  ACP Response pp. 15-19.  The examiner generally agrees with the third

party requester's rebuttal at ACP Comments at 8-11, as well as at 2/10/2014 Comments at 9-11,

which are deemed to sufficiently address the owner's arguments.


TEA1401T and Balakrishnan 876 (Rejection 5) (ACP Response at 19-31; ACP

Comments at 12-19)

Patent owner argues that the references fail to teach all of the limitations of the claims.

Patent owner sets forth four arguments: (1) there is no current control loop in TEA1401T

because of open switches, (2) the current limit function of TEA1401T is not the claimed

feedback signal, (3) the references do not disclose both generation and control of the switching

Application/Control Number: 95/002,009                                    Page 13
Art Unit: 3992

signal in a manner according to the claims, and (4) the references would not suggest combination

of the elements by a person skilled in the art.

As to (1), patent owner argues that there is no current control loop because the so-called

loop starts and ends at different places, and is broken up by switches.  ACP Response at 19-20.

This point was already addressed in the ACP, where it was pointed out by the examiner, agreeing

with the requester's position, that the existence of switches did not seem to matter in the '972

patent so it is not seen why they matter in TEA1401T, as far as preventing a "loop."  The patent

owner now states that it does not matter what the '972 patent says, all that matters is what the

reference discloses.  The examiner disagrees that the '972 patent is irrelevant, for it shows us that

in the context of the invention switches do not prevent a loop.  Patent owner further argues that,

because the schematic drawings of TEA1401T show the switches as open, it is not clear whether

they would ever be closed, and the reference operates such that the switches are toggled.  With

the switches toggled such that one is always open, the loop will never be completed and there is

therefore not a loop as claimed. The examiner disagrees, and agrees with the requester's rebuttal,

which explains that the reference itself refers to the relevant parts of the circuit as loops, and that

the reference itself and common sense indicate that the switches would operate to form a loop.

ACP Comments at 12-13.

As to (2), the patent owner states that the current limit of TEA1401T is not the claimed

feedback signal, then acknowledges that neither the requester nor the Office ever asserted that it

was.  ACP Response at 21.  As all parties apparently agree on this point, there is nothing to

discuss.

Application/Control Number: 95/002,009                                    Page 14
Art Unit: 3992

As to (3), patent owner argues that it is not shown how the current control loop or

feedback signal both generate and control the switching frequency of the circuit as required by

the claims.  ACP Response at 21-23.  The examiner agrees with the requester that the patent

owner has not actually discussed the references and therefore has not shown how the references

lack the limitations.  ACP Comments at 13-14.

As to (4), patent owner argues that no reason to combine the references has been shown.

ACP Response at 24-28.  The examiner disagrees, and agrees with the third party requester's

rebuttal.  ACP Comment pp. 14-18.

Patent owner argues that adding the jitter circuit to TEA1401T would destroy the

functionality of TEA1401T.  ACP Response at 28-30.  The examiner agrees with the requester

that the patent owner, in delving into various unclaimed technical details, is primarily arguing

about the physical combination of the references, rather than the combination of the teachings of

the references.  See ACP Comments pp. 18-19.  To the extent that patent owner argues that

adding an optocoupler would destroy TEA1401T, this is addressed in the next paragraph.

Patent owner argues that adding the jitter circuit to TEA1401T would defeat the purpose

of TEA1401T and change its principle of operation because it would add an optocoupler on the

secondary side, and one of the purposes of TEA1401T was to remove electronics from the

secondary side.  ACP Response at 30-31.  The examiner explained in the ACP why he disagreed

that the Balakrishnan 876 optocoupler would remain as a part of the combination.  Patent owner

states that the combination would *require* inclusion of the optocoupler as that is all that provides

the claimed control of a frequency-hopped switching signal.  The examiner disagrees, and the

patent owner has not sufficiently explained why the Balakrishnan 876 optocoupler would be

Application/Control Number: 95/002,009                                      Page 15
Art Unit: 3992

required to meet the claims.  Instead the examiner again agrees with the requester, that the

Balakrishnan 876 jitter circuit, which is the relevant part of the combination, has nothing to do

with and would function without the optocoupler, whose purpose is to provide feedback from the

secondary to primary side.  In modifying TEA1401T to include the jitter circuit, there would be

no need to also include the optocoupler, rather than rely on the feedback already present in

TEA1401T.

   Patent owner argues that TEA1401T teaches away from adding a jitter circuit.  ACP

Response at 31.  The examiner explained previously that silence does not constitute teaching

away, and nothing in the reference actually does teach away.  Patent owner argues that a person

of ordinary skill would be discouraged by TEA1401T from adding the Balakrishnan 876

optocoupler to the TEA1401T secondary side, thus TEA1401T teaches away from the

combination.  Again, the examiner disagrees that the combination requires adding an optocoupler

to TEA1401T, thus the argument is not persuasive.


   Secondary Considerations (ACP Response at 32; ACP Comments at 31)

   Patent owner argues that various secondary considerations support non-obviousness.

Patent owner does not actually make any argument here, but merely incorporates by reference its

discussion from the 1/9/2014 Response.  This discussion was already addressed by the examiner

in the ACP, therefore the examiner incorporates by reference his previous discussion from ACP

at 11-14.   Note this applies to all of the obviousness rejections.

Application/Control Number: 95/002,009                                        Page 16
Art Unit: 3992

Majid and Balakrishnan 876 (Rejection 6) (ACP Response at 32-40; ACP Comments at

20-26)

Patent owner argues that the references fail to teach all of the limitations of the claims.

ACP Response at 33-34.  Patent owner again argues that an over-current protection cannot be the

claimed feedback loop; this has already been addressed above as to Balakrishnan 366 and

FSD210.   The remaining arguments are sufficiently rebutted by the requester.  See ACP

Comments at 20-22.

Patent owner next argues that there is no reason to combine the references.  ACP

Response pp. 34-36.  The examiner disagrees, and agrees with the third party requester's

rebuttal.  ACP Comment at 22-24.

Patent owner argues that adding the jitter circuit to Majid would destroy the functionality

of Majid.  ACP Response pp. 36-38.  Patent owner also argues that adding the jitter circuit to

Majid would defeat the purpose of Majid because it would provide an unknown behavior and

significant experimentation, whereas Majid's purpose is to reliably provide controlled output.

ACP Response at 38-39.  Each argument is essentially that the rejection did not provide any

guidance as to how to combine the references, and that it is too confusing and unclear how the

references would work together.  The examiner maintains the previous agreement with the

requester that the patent owner is primarily arguing about the physical combination of the

references, rather than the combination of the teachings of the references, and also that sufficient

guidance has been provided.  See 2/10/2014 Comments pp. 20-22.  The examiner further agrees

that the patent owner's arguments are speculative and conclusory.  ACP Comments at 24-26.

Application/Control Number: 95/002,009                                    Page 17
Art Unit: 3992

    Patent owner argues that Majid teaches away from adding a jitter circuit.  ACP Response

at 39-40 (was 51).  This is clearly incorrect because the reference does not mention a jitter

circuit.  Patent owner appears to argue that Majid would not suffer from an EMI problem

because it mentions a TV, and Balakrishnan 876 suggests that EMI causes problems affecting

TVs.  This argument does not make sense to the examiner.  Just because Majid mentions TVs

does not mean that such TVs definitely would not suffer from EMI and would not benefit from

the Balakrishnan 876 teachings.  See also ACP Comments at 26.


    <u>TEA1504 and Balakrishnan 876 (Rejection 7) (ACP Response at 40-48; ACP Comments</u>

<u>at 26-30)</u>

    Patent owner's arguments against TEA1504 appear to be substantially similar to those it

presented against Majid.  They are rebutted for the same reasons.  Additionally, the arguments

are largely the same as those presented previously, see 1/9/2014 Response at 51-61.  Thus, see

2/10/2014 Comments at 22-24 for additional discussion which sufficiently rebuts the patent

owner's arguments.  Otherwise, see ACP Comments at 26-30 for additional rebuttal with which

the examiner agrees.  For example, the patent owner places much emphasis on the facts that the

TEA1504 frequency of 100 kHz may not be sufficiently "high" such that the Balakrishnan 876

teachings are relevant, and also that TEA1504 already provides some solutions to the EMI

problem, such as a filter.  As to the former point, it is true that Balakrishnan 876 is concerned

with EMI caused by frequencies that are "high" relative to the AC power line.  Col. 1 lines 19-

22.  Given that the AC power lines are typically 50-60 Hz, the examiner finds that 100 kHz

would be deemed sufficiently high relative to such a line.  It is also true that Dr. Kelley used 1

Application/Control Number: 95/002,009                                      Page 18
Art Unit: 3992

MHz as an example of a problematic high frequency in his 10/29/2012 declaration, at ¶ 5, but

there is no indication that this is anything but exemplary and excludes lower frequencies.

Furthermore, 100 kHz is much more similar to 1 MHz than to 50 Hz.  Additionally, the fact that

TEA1504 already recognizes that its system suffers from EMI, by using an EMI filter, tends to

show that Balakrishnan's teachings are indeed relevant.  As to the latter point, Balakrishnan 876

already recognizes that other solutions such as EMI filters are known, but the reference indicates

that the jitter solution is still more advantageous.  See col. 1 lines 50-63.


   Majid, TEA1504 and Balakrishnan 876 (Rejection 8) (ACP Response at 49-51; ACP

Comments at 30-31)

        Patent owner argues that there is no reason to combine the references "because the

reasons provided do not assert that the combination teaches elements of the claims, but rather the

combination of one reference purportedly enlightens another reference."  ACP Response at 49.

Patent owner explains that "TEA1504 is combined with Majid to argue that the oscillator in

TEA1504 is the same as the oscillator in Majid for the purpose of describing the operation of the

oscillator in Majid.  This is an improper combination of references."  Id. at 48-49.  This is merely

a conclusory statement of law, and patent owner provides no authority or other showing why

such a combination would be improper.  Lacking that, patent owner has not shown that the

rejections are improper.

        Patent owner's remaining arguments are said to be the same as those already presented

above, therefore they have already been rebutted.

Application/Control Number: 95/002,009                                          Page 19
Art Unit: 3992

*Conclusion*

**This is a RIGHT OF APPEAL NOTICE (RAN)**; see MPEP § 2673.02 and § 2674. The

decision in this Office action as to the patentability/unpatentability of any original patent claim,

any proposed amended claim and any new claim in this proceeding is a FINAL DECISION.

No amendment can be made in response to the Right of Appeal Notice in an *inter partes*

reexamination. 37 CFR 1.953(c). Further, no affidavit or other evidence can be submitted in an

*inter pa*rtes reexamination proceeding after the right of appeal notice, except as provided in  37

CFR 1.981 or as permitted by 37 CFR 41.77(b)(1). 37 CFR 1.116(f).

Each party has a thirty-day or one-month time period, whichever is longer, to file a notice

of appeal. The patent owner may appeal to the Patent Trial and Appeal Board with respect to any

decision adverse to the patentability of any original or proposed amended or new claim of the

patent by filing a notice of appeal and paying the fee set forth in 37 CFR 41.20(b)(1).  The third

party requester may appeal to the Patent Trial and Appeal Board with respect to any decision

favorable to the patentability of any original or proposed amended or new claim of the patent by

filing a notice of appeal and paying the fee set forth in 37 CFR 41.20(b)(1).

In addition, a patent owner who has not filed a notice of appeal may file a notice of cross

appeal within **fourteen days of service** of a third party requester's timely filed notice of appeal

and pay the fee set forth in 37 CFR 41.20(b)(1).  A third party requester who has not filed a

notice of appeal may file **a notice of cross appeal within fourteen days of service** of a patent

owner's timely filed notice of appeal and pay the fee set forth in 37 CFR 41.20(b)(1).  The time

periods for filing a notice of appeal or cross appeal may not be extended.  37 CFR 41.61(e).

Application/Control Number: 95/002,009                                          Page 20
Art Unit: 3992

Any appeal in this proceeding must identify the claim(s) appealed, and must be signed by

the patent owner (for a patent owner appeal) or the third party requester (for a third party

requester appeal), or their duly authorized attorney or agent.

Any party that does not file a timely notice of appeal or a timely notice of cross appeal

will lose the right to appeal from any decision adverse to that party, but will not lose the right to

file a respondent brief and fee where it is appropriate for that party to do so. If no party files a

timely appeal, the reexamination prosecution will be terminated, and the Director will proceed to

issue and publish a certificate under 37 CFR 1.997 in accordance with this Office action.


**All** correspondence relating to this *inter partes* reexamination proceeding should be directed:

By **U.S. Postal Service Mail** to:

      Mail Stop *Inter Partes* Reexam
      ATTN:  Central Reexamination Unit
      Commissioner for Patents
      P.O. Box 1450
      Alexandria, VA  22313-1450


By FAX to:     (571) 273-9900
               Central Reexamination Unit


By hand to:    Customer Service Window
             Randolph Building
             401 Dulany St.
             Alexandria, VA  22314

Registered users of EFS-Web may alternatively submit correspondence via the electronic

filing system at https://efs.uspto.gov/efile/myportal/efs-registered

Application/Control Number: 95/002,009                                             Page 21
Art Unit: 3992

      Any inquiry concerning this communication or as to the status of this proceeding, should

be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

      Signed:

/James Menefee/

Primary Examiner
Central Reexamination Unit 3992
December 9, 2014

Conferees: /Linh M. Nguyen/
Primary Examiner, Art Unit 3992

/JENNIFER MCNEIL/
Supervisory Patent Examiner, Art Unit 3992

# EXHIBIT 1D

1

```
 1      IN THE SUPREME COURT OF THE UNITED STATES
 2   - - - - - - - - - - - - - - - - - x
 3   COMMIL USA, LLC,                    :
 4        Petitioner            : No. 13-896
 5      v.                      :
 6   CISCO SYSTEMS, INC.        :
 7   - - - - - - - - - - - - - - - - - x
 8          Washington, D.C.
 9          Tuesday, March 31, 2015
10
11      The above-entitled matter came on for oral
12   argument before the Supreme Court of the United States
13   at 10:13 a.m.
14   APPEARANCES:
15   MARK S. WERBNER, ESQ., Dallas, Tex.; on behalf of
16      Petitioner.
17   GINGER D. ANDERS, ESQ., Assistant to the Solicitor
18      General, Department of Justice, Washington, D.C.; for
19      United States, as amicus curiae, supporting
20      Petitioner.
21   SETH P. WAXMAN, ESQ., Washington, D.C.; on behalf of
22      Respondent.
23
24
25
```

2

## C O N T E N T S

```
 2   ORAL ARGUMENT OF                              PAGE
 3   MARK S. WERBNER, ESQ.
 4      On behalf of the Petitioner                  3
 5   ORAL ARGUMENT OF
 6   GINGER D. ANDERS, ESQ.
 7      For United States, as amicus curiae,
 8      supporting Petitioner                        15
 9   ORAL ARGUMENT OF
10   SETH P. WAXMAN, ESQ.
11      On behalf of the Respondent                  26
12   REBUTTAL ARGUMENT OF
13   MARK S. WERBNER, ESQ.
14      On behalf of the Petitioner                  43
```

```
15
16
17
18
19
20
21
22
23
24
25
```

3

```
 1         P R O C E E D I N G S
 2              (10:13 a.m.)
 3      CHIEF JUSTICE ROBERTS:       We'll hear argument
 4   first this morning in Case 13-896, Commil USA v. Cisco
 5   Systems.
 6      Mr. Werbner.
 7      ORAL ARGUMENT OF MARK S. WERBNER
 8      ON BEHALF OF PETITIONER
 9      MR. WERBNER:       Mr. Chief Justice, and may it
10   please the Court:
11      This case concerns whether an infringer, who
12   bypasses myriad means of adjudicating patent validity
13   and who then actively induces infringement, can escape
14   responsibility simply by claiming that they believe the
15   patent was invalid.
16      JUSTICE KENNEDY:       Well, not claiming, but by
17   proving.
18      MR. WERBNER:       Well, they would have to prove
19   that, Your Honor.  But we submit that the presumption of
20   validity, especially because of that, it would be wrong
21   to allow the infringer to escape liability in those
22   instances.  If there's a mistake, it should be borne by
23   the infringer who made the mistake.
24      CHIEF JUSTICE ROBERTS:       You mentioned the
25   presumption of validity.  What percentage of patents
```

4

```
 1   that are challenged are found to be valid?
 2      MR. WERBNER:       Well, Your Honor, from the
 3   briefing, it appears a high number; 40 percent was an
 4   estimate.  I don't know how --
 5      CHIEF JUSTICE ROBERTS:       Well, 40 -- 40
 6   percent of the patents are -- are found to be valid?
 7   Invalid.
 8      MR. WERBNER:       Invalid.
 9      CHIEF JUSTICE ROBERTS:       Invalid.  So only
10   60 percent are upheld.  That's not much of a presumption
11   of validity.
12      MR. WERBNER:       Mr. Chief Justice, I would
13   submit that it would be for Congress to change the
14   presumption of validity, if -- if it's out of line.  The
15   presumption has been part of patent law for several
16   hundred years, even before the codification in 1952.
17   And it's more than just a procedural mechanism, it's a
18   message that patents are presumed valued.  They should
19   be respected not just by judges and juries, but by the
20   public who are told that until proven otherwise, patents
21   are presumed valid.  And someone who wishes to gamble on
22   their belief that it's invalid should bear the
23   consequences if they're wrong.
24      JUSTICE GINSBURG:       This question would come
25   up only if the patent had been held valid, right?  And
```

5

1  the defense is although the patent is valid, we had a
2  good faith belief that it was invalid.
3       MR. WERBNER:        That's right, Justice
4  Ginsburg.  It would basically give the accused infringer
5  a second bite at the apple because they would have to
6  have the patent found valid.  And then, if that went
7  against them, then they would want a second chance to
8  say even though they were mistaken, they believed that
9  it was invalid.
10      And we think that giving them that second
11 bite at the apple will eviscerate the effectiveness of
12 Section 271(b), which is vital to protect the interest
13 of patent owners.  And the --
14      JUSTICE SOTOMAYOR:       The court below believed
15 that there was no good faith basis to distinguish a good
16 faith belief in lack of infringement from a good faith
17 belief in -- in validity.  How do you address that
18 difference?
19      MR. WERBNER:        Justice Sotomayor --
20      JUSTICE SOTOMAYOR:       Or is there one and why?
21      MR. WERBNER:        There is a substantial
22 difference, Your Honor, as we can see that -- that
23 validity and infringement are different.  I'd like to
24 start with the statutory basis that makes that clear.
25 271(b) says that whoever shall actively induce

6

1  infringement shall be liable as an infringer.  It speaks
2  not at all to validity.  Validity is in a completely
3  separate section of the Patent Act, section --
4       JUSTICE SCALIA:        No, but it's a -- it's a --
5  it's a type of aiding and abetting liability and both
6  at -- in tort law and in criminal law.  At the common
7  law, it was clear that you're not liable as an aider and
8  abetter unless you have a wrongful intent.  If indeed
9  your -- and you acknowledge that -- that part of this
10 depends upon -- upon wrongful intent, don't you?  You --
11 you say that it can't hinge upon the belief that the
12 patent is invalid, but do you not acknowledge that you
13 have to -- you -- you have to believe that you are
14 inducing infringement of -- of the invalid patent?
15      MR. WERBNER:        Well, indeed, Justice --
16      JUSTICE SCALIA:        Where do you get that
17 requirement from?
18      MR. WERBNER:        Well, indeed, Justice Scalia,
19 those are two separate.  The -- and I acknowledge that,
20 as the Court said in the Global-Tech matter, that some
21 intent is required and that was found from the words
22 "actively induce" in Section 271(b).
23      JUSTICE SCALIA:        Well, why just some intent?
24 What -- what good does it do to say, well, you know,
25 you're really not a bad actor, but you're, you know --

7

1  you're half a bad actor, that's enough.  It -- it seems
2  to me that -- that if you don't know that you're
3  infringing or that you're encouraging somebody to
4  infringe is -- is no -- no worse than you're not knowing
5  that the patent is valid.
6       MR. WERBNER:        Well, under the court's Aro 2
7  case that the Court described in Global-Tech's as a
8  fixture of patent law, the Court specifically there
9  recognized that once an accused infringer received
10 actual notice of the patent and is put on notice of the
11 infringing conduct, that that -- that creates no defense
12 to that person.
13      And I think the policy reason for that is
14 that having actual knowledge of the patent goes a very
15 long way in -- in -- in putting the person who then goes
16 forward with knowledge of the patent different than in
17 Global-Tech, and they infringe and they were on notice,
18 they should be the ones, if I might say, who should have
19 stopped when they had that notice, Your Honor, and gone
20 to the myriad means of adjudicating patent validity.
21      Now under the America Invents Act, for
22 example, there are streamlined procedures available.  So
23 the wrongdoing arises when someone who has actual
24 knowledge of the patent and is on notice from the patent
25 owner of infringement, if they don't go to the

8

1  streamline procedures -- and they can do a declaratory
2  judgment, they can do the IPR, the inter-parties review
3  at the Patent Office -- then they are gambling on their
4  belief.  And as between the patent owner and the accused
5  who was on notice, it's wrong if the infringer with --
6  with that chooses not to pursue those methods.
7       JUSTICE SCALIA:        Well, you have a cause of
8  action against the person who infringes, right?  And it
9  doesn't matter whether he thinks the patent is invalid
10 or not.  You -- you got that person, don't you?  So this
11 is sort of a supplemental cause of action against --
12 against somebody who induces, who aids and abets.
13      MR. WERBNER:        Yes, Your Honor, that's --
14 that's true.  And the 271(a), the direct infringer, has
15 strictly liability.  But I submit that when we look at
16 271(b) and (c), there shouldn't be this yawning gap
17 between the aider and abetter and the -- the direct
18 infringer.  There should be more required --
19      JUSTICE SCALIA:        But there is a common
20 law -- I mean, there -- there was a common law, both
21 civil and criminal.  The aider and abetter was really
22 a -- way beyond what it took to -- to convict the person
23 who committed the tort or -- or committed the crime.
24      MR. WERBNER:        Justice Scalia, it's true.
25 But if we look at the restatement dealing with aiding

9

```
1  and abetting, we see that it depends.  There are several
2  provisions that -- that deal with aider and abetter, and
3  the one that has the word "induce" in it requires a much
4  lower scienter and intent, does the one who is
5  assisting.  And -- and that makes sense.
6      If I could point out one other statutory
7  aspect, and I'm referring to what was -- what is
8  Footnote 6 on page 22 of the government's brief, there's
9  an example there of three statutes that are very
10 powerful in telling us what was meant by Congress in
11 271(b), Footnote 6 on page 22.
12     The first, when we try to discern the
13 textual meaning of 271(b), we need go no further than
14 271(e)(5), that very same section.  And there, at the
15 very end of that section, it talks about "the courts of
16 the United States shall have subject matter jurisdiction
17 for declaratory judgment that such patent" -- this is
18 the brand name patent -- "is invalid or not infringed."
19 And I'll give two more examples where we see where
20 Congress knows the difference between invalidity and
21 infringement.  Where Congress is addressing both, it
22 says both.  And that was the first of three examples.
23     JUSTICE KAGAN:      Mr. Werbner, suppose I have
24 a product and I'm trying to figure out whether, if I
25 sell this product, I'll have liability.  And there are
```

11

```
1  just inherent in patent litigation.
2      If the person makes a judgment, as they have
3  to, about what the claim constructions are and they
4  think the patent doesn't infringe, then they are in a
5  different situation if they have a question about
6  validity.  And they have options.  Contrary to what my
7  opponent says, there are options at that point.  If the
8  person is not certain about claim construction as to
9  whether there will be validity or not, they can do an
10 IPR before the Patent Office, a new procedure that was
11 part of the America Invents Act which can be resolved in
12 18 months, and -- and often stay the litigation.  They
13 could go for declaratory judgment.
14     So my -- my answer would -- would be that,
15 regardless of what leads them to their confusion, if
16 they assumed the risk by -- by proceeding, then -- then
17 if it turns out they're wrong, they -- they should bear
18 the risk as between --
19     JUSTICE SCALIA:      Well, you -- you could say
20 the same thing about -- about whether they were
21 infringing or not.  They could bring a declaratory
22 judgment action as to whether they're fringing or not.
23 And therefore, they don't have to gamble that they're --
24 that they're not infringing.  They can get a declaratory
25 judgment.  So, you know, put the burden on them.
```

10

```
1  two ways to construe a statute -- construe a patent; one
2  is narrow and one is broad.  And if the patent is
3  construed narrowly, I won't be infringing it.  But if
4  the patent is construed broadly, it's not valid.  Right?
5  So I have two possible defenses, depending on whether
6  the patent is construed narrowly or the patent is
7  construed broadly.
8      Now, Global-Tech says that I have a good
9  faith defense as to non-infringement, but you're
10 suggesting I don't have that good faith defense as to
11 invalidity.  And I guess I don't understand quite why
12 that would make sense in the context that I'm talking
13 about, which I think is a pretty typical context.  But
14 it would seem that the two defenses are so intertwined
15 and so two sides of the same coin that they should be
16 treated in the same way.
17     MR. WERBNER:      Justice Kagan, I -- I
18 understand the question.  And -- and one of judges in
19 the court below said in dissent they're not two sides of
20 the same coin, they're actually two separate coins.  And
21 I -- I see the -- the -- where the issue arises in claim
22 construction, but every party to a patent litigation is
23 uncertain about claim construction, plaintiff and
24 defendant.  And until a Markman hearing is had, no party
25 knows for sure how the claim will be construed.  That's
```

12

```
1  Why do you do it for the one and not for the
2  other?  That's -- that's what I don't understand.
3      MR. WERBNER:      Well, Your Honor, I would say
4  that with respect to beliefs and invalidity, it's deeply
5  ingrained in American law that there is a difference.
6  And -- for example, in the Cheek v. United States case,
7  that distinction was made very clear, that's in the
8  context of a criminal statute where the accused for tax
9  evasion, raising all sorts of mistakes of law and the
10 like, this Court held in that Cheek decision that one
11 accused of violating the prohibition was not heard
12 to say they thought the prohibition was invalid or
13 unconstitutional.
14     JUSTICE KAGAN:      But that really does get
15 back to the Chief Justice's opening question, because
16 you're quite right in your reply brief when you say that
17 this is a tradition in American law, that we assume that
18 statutes are constitutional, that we assume that
19 contracts are valid, that's right, but it's because they
20 really are.  You know, almost all statutes are
21 constitutional.  And here we're in a different universe
22 entirely, aren't we?  Where, you know, you could flip a
23 coin as to whether a patent is valid or invalid and be
24 pretty close, right?  It's about 50/50.
25     MR. WERBNER:      Well, the Congress has said
```

13

1 that there should be a presumption of validity and
2 that's been the law and in the Court's opinion in i4i
3 quoting Justice Cardozo about the force of the
4 presumption and Judge Rich who explained the basis
5 when -- when the government acts to presume that it did
6 so properly.  So maybe there is some step, but that's --
7 what I mean to say a -- a gap between the current
8 presumption and certain practices.
9     CHIEF JUSTICE ROBERTS:      Is that a -- is that
10 an historical development?  Did more of them used to be
11 valid, however many decades ago and, it's sort of
12 changed recently?
13     MR. WERBNER:      I think more recently,
14 there -- there is more of an issue.  I'm not certain,
15 Mr. Chief Justice, how -- how the statistics were
16 further back.  But I do know that Congress has responded
17 very recently and the PTO is responding to the various
18 issues, and that should be the mechanism, congressional
19 action and -- and PTO action, and not prejudice patent
20 owners, who have not done anything wrong, who have
21 gained their patent.  And, of course, in this case, it
22 is a valid patent and Cisco was found to be
23 infringing a valid patent, they went to the PTO to
24 re-exam this patent and it was found --
25     JUSTICE KENNEDY:      But you -- you seem to be

14

1 arguing that notice is all that's needed.  But the whole
2 point of Global-Tech was inquiry was encouraged.  And it
3 seems to me that there's not a parallel or a symmetry
4 between what you're arguing and what Global-Tech said.
5 Global-Tech said, we want you to inquire.  You say, once
6 you get a notice -- and I'm sure these letters just come
7 all the time, they're form letters -- that that's it.
8     MR. WERBNER:      Justice Kennedy, I don't think
9 that it would be sufficient to be a form letter.  I know
10 that the Respondent has raised questions about that, but
11 I -- I don't submit that it -- it can just be a form
12 letter or inadequate.  But -- but I want to make my
13 point clear as a matter of Global-Tech and infringement,
14 because that's really different from the validity.
15 There, I think, it would be helpful if the Court could
16 clarify Global-Tech.  It was dealing with a situation
17 where there wasn't knowledge of the patent.  So I think
18 some of the statements there might -- might, in the
19 context of not knowing of the patent and willful
20 blindness, be different.
21     I think Aro II, where there was knowledge of
22 the patent, and this Court held very clearly that there
23 would be no defense available once this person received
24 the notice in the patent, I think that should guide the
25 Court in the cases where there is knowledge of the

15

1 patent.
2     If I may reserve the rest of my time.
3     CHIEF JUSTICE ROBERTS:      Thank you, counsel.
4     MR. WERBNER:      Thank you.
5     CHIEF JUSTICE ROBERTS:      Ms. Anders.
6     ORAL ARGUMENT OF GINGER D. ANDERS
7     FOR UNITED STATES, AS AMICUS CURIAE
8       SUPPORTING PETITIONER
9     MS. ANDERS:      Mr. Chief Justice, and may it
10 please the Court:
11     Neither a good faith belief in
12 non-infringement, nor a good faith belief in invalidity
13 should preclude liability for inducing enforcement.
14     JUSTICE SOTOMAYOR:      Are you asking us to
15 overturn Global-Tech and --
16     MS. ANDERS:      No.
17     JUSTICE SOTOMAYOR:      -- Aro?
18     MS. ANDERS:      No.  We don't think that the
19 Court should overturn Global-Tech.  We think that
20 Global-Tech clearly resolved the issue.
21     JUSTICE SOTOMAYOR:      So if we read all the
22 texts to mean that you have to have knowledge of the
23 patent and knowledge that your activity infringes it,
24 then your argument doesn't hold up.
25     MS. ANDERS:      If that's how the Court

16

1 understands Global-Tech, then we would say, like
2 Petitioner, that -- that even if you think that -- that
3 knowledge of the infringing nature of the acts is
4 necessary, knowledge of invalidity is not also
5 necessary.
6     JUSTICE SOTOMAYOR:      So break up your
7 argument if you would for me addressing both
8 presumptions.  Because I think those are different
9 arguments.
10     MS. ANDERS:      Well, so we think that if you
11 look at Global-Tech, it doesn't clearly resolve the
12 issue about whether knowledge of infringement --
13 knowledge of the infringing nature of the acts is
14 necessary.  There's language in the opinion that states
15 that knowledge of the patent would be sufficient to
16 satisfy knowledge of the infringement.  The court also
17 did not have to resolve the question about whether a
18 good faith belief in non-infringement would be necessary
19 because that was not presented in Global-Tech.  The
20 defendant there had no arguments that even if he knew
21 about the patent --
22     JUSTICE SOTOMAYOR:      Well, there was an
23 argument there that he didn't know that someone
24 replacing a top infringed.
25     MS. ANDERS:      I -- if Your Honor --

17

```
1     JUSTICE SOTOMAYOR:      The fabric --
2     MS. ANDERS:      -- is talking about Aro II in
3  that case, what the Court said was that you need
4  knowledge that the -- the use is infringing and the
5  Court held that that knowledge was conclusively
6  satisfied by the defendant's knowledge of the patent and
7  knowledge of the link between the patent and the
8  conduct.  I think there was no plausible argument there
9  that the defendant had a good faith belief or -- I'm
10  sorry, that the defendant lacked a good faith belief
11  that his conduct was not infringing.  The question of
12  whether direct infringement was occurring was hotly
13  contested.  It was litigated all the way up to the
14  Supreme Court and back, and it closely divided the
15  Justices 5/4.  So I think anyone would say that in that
16  case, the defendant had a good faith belief in -- in
17  non-infringement.
18     Now, if I could just address why it makes
19  sense, I think, to read Global-Tech and Aro this way and
20  to not require knowledge of the --
21     JUSTICE KAGAN:      Before you do that, Ms.
22  Anders, I mean, it just does seem whatever the factual
23  circumstances of that case were, we could not have been
24  more clear about the breadth of the holding.  I mean, we
25  just said, we now hold that induced infringement under
```

18

```
1  271(b) requires knowledge that the induced acts
2  constitute patent infringement.  And your brief
3  essentially puts a "not" in that sentence.
4     MS. ANDERS:      With respect, Justice Kagan, I
5  don't think that's so.  I think the -- the sentence that
6  immediately preceded the sentence that Your Honor just
7  read said that it would be strange to hold that
8  knowledge of the patent is needed under 271(c), but not
9  271(b).  Accordingly, we now hold that knowledge that
10  the induced acts constitute a patent infringement is
11  necessary.  So I think that the Court may have equated
12  the two things.
13     But -- but just to go back to why I think it
14  would make sense to read --
15     JUSTICE SCALIA:      Excuse me, I don't
16  understand what you just said.  He equated what two
17  things?
18     MS. ANDERS:      It may have acknowledged the
19  patent --
20     JUSTICE SCALIA:      Knowledge of the patent and
21  knowledge that the patent is -- is being infringed?
22     MS. ANDERS:      Yes.  Yes.  This is what the
23  Court did in Aro II.  I think the Court --
24     JUSTICE SCALIA:      Are we that dumb, that --
25  that -- that we would say those two things in successive
```

19

```
1  sentences?
2     MS. ANDERS:      Well, no.  I think it comes
3  from Aro II, Your Honor.  What the Court said in Aro II
4  was the knowledge of infringement is necessary and the
5  Court said the defendant has no defense that he lacked
6  knowledge of infringement when he possessed knowledge of
7  the patent and knowledge of the accusation of
8  infringement.  So I think that's where this language
9  comes from.
10     But again, just to address both why this
11  makes sense and why I think it makes sense to say that a
12  good faith belief in invalidity is not a defense even --
13  even though 40 percent of patents may be invalid.
14     JUSTICE GINSBURG:      I hope you'll spend --
15  concentrate on that because that's the crux of this
16  case.  I mean, that's what the Federal circuit majority
17  said, that there's no principal difference between the
18  two.  And if you could make sure that you -- if you
19  think there is a principal difference, tell us what it
20  is.
21     MS. ANDERS:      Yes, Justice Ginsburg, I'll
22  address that.  But first I'd like to say that I think a
23  key point here is that if the inducer is right that the
24  patent is invalid, or that it's not infringed, he will
25  not be liable because the Court will find that the
```

20

```
1  patent was invalid or not infringed.  And so in that
2  case, you don't have to worry about liability.  So the
3  question is really what should happen when the defendant
4  is wrong?  Right.  Who should bear the risk of the
5  defendants being wrong that the patent is invalid or --
6  or not infringed?  And we think the inducer should bear
7  the burden.  This is -- this is someone who knows about
8  the patent, who has considered it, who has decided not
9  to challenge, not to use the statutory mechanisms that
10  Congress has provided to challenge the patent.
11     JUSTICE SCALIA:      The patentee has a cause of
12  action against the person who -- who violates the
13  patent, right?  You're just talking about supplemental
14  liability for somebody who induced that -- that
15  violation.  And generally, for that kind of liability,
16  we have required mens rea.  We have required knowledge
17  that you're doing something wrong.
18     MS. ANDERS:      Well, two points with respect
19  to that.  The first point is that certainly in the
20  criminal law, you may need wrongful intent you're an
21  aider and abetter, but you do not need knowledge that
22  the principal offense is illegal.  So, for instance, if
23  you're aiding and abetting a felon to possess a gun, you
24  need to know that you're selling them a gun and that
25  they're a felon.  You don't need to know that it's
```

21

```
1    illegal for the -- for a felon to possess a gun.  So we
2    think that's analogous here.
3          The second point I would make is that 271(b)
4    is not some simply supplemental liability, it is an
5    important means of enforcing --
6          JUSTICE SCALIA:        Have we held that, what you
7    just said?  Has this Court held that?  Do we have a case
8    in this Court that says that?
9          MS. ANDERS:        I think that's a --
10         JUSTICE SCALIA:        You -- you can be liable
11   for aiding and abetting a felony when you don't know
12   that it's a felony?
13         MS. ANDERS:        You don't have to know that the
14   underlying conduct is illegal, yes, that's right.  I
15   think that's a principle of the common law.  I -- I
16   think you see that in the criminal law treatises for
17   certainly.
18         But -- but 271(b), I think, is -- Congress
19   intended that to be available to enforce patent rights
20   when it would be impracticable for patentholders to --
21   to file suit directly against a direct infringer.  So
22   situations like the Grokster scenario where you have
23   millions of direct infringers, you need to go after the
24   person who is inducing that conduct
25         But to go back to Justice Ginsburg's point
```

22

```
1    about why would it make sense to treat the two issues
2    differently, I think there are three reasons that --
3    that you would do so.  The first is that even though,
4    as -- as Justice Kagan said, claim construction can be a
5    common subsidiary issue in both non-infringement
6    questions and invalidity issues, I don't think it's
7    anomalous to still treat the two issues as separate.
8          For instance, in Chief v. United States, the
9    Court -- it -- it's clear that in -- in the statutory
10   context, you might have a question about statutory
11   construction that would be relevant to whether you're
12   violating the statute, and that same question might be
13   relevant to the validity of the statute, but the Court
14   still said that your belief that you -- that -- that the
15   statute was invalid did not negate your stand with
16   respect to whether you're violating the law.
17         And as to --
18         CHIEF JUSTICE ROBERTS:        You said on a -- a
19   couple of times about the idea of -- of difficulty of
20   going after all the little people.  But why is that?  It
21   would seem to me that once you have a few successful
22   suits against the users rather than inducers, both the
23   users and the inducer will get the message and not --
24   not continue on with the infringement.
25         MS. ANDERS:        Well, I'm not sure that's
```

23

```
1    -- that's always going to be the case as a practical
2    matter.  I think there may be situations in -- in which,
3    you know, the -- the users may have -- the direct users
4    may have immunities.  For instance, the Patent Act
5    provides, in the context of surgical materials, that
6    doctors can't be directly liable for infringement, so
7    the only -- the only course there is to go after the
8    inducer.
9          So I think that Congress anticipated in the
10   Patent Act that inducement would be an independent means
11   of imposing liability.
12         But to go back to the -- the two reasons
13   that it may make sense as a policy matter to treat
14   invalidity and non-infringement differently, I think one
15   of them is that invalidity questions can be even harder
16   and more complex to determine.  I think it's important
17   to keep in mind here that -- that what we're saying is
18   that the defendant would have a -- he would be able to
19   immunize himself from liability based on his good faith
20   belief with respect to anticipation, whether there's
21   prior art that -- that may make it obvious to a person
22   skilled in the art --
23         JUSTICE SCALIA:        Of course, that -- that's
24   not your position, is it?  I mean, the United States
25   would treat the both the same, right?
```

24

```
1          MS. ANDERS:        That is our --
2          JUSTICE SCALIA:        The United States says you
3    don't have to know either one.  You -- you -- it doesn't
4    matter.
5          MS. ANDERS:        That is our frontline position,
6    but we -- we --
7          JUSTICE SCALIA:        Yes.
8          MS. SANDERS:        -- of course acknowledge that
9    the Court may understand Global-Tech differently than we
10   do, and in that case we think that there are -- there
11   are reasons --
12         JUSTICE SCALIA:        The differences are not
13   enough to persuade you, but you think they should be
14   enough to persuade us.  Is that it?
15         MS. ANDERS:        No.  I think as a -- I think
16   our -- our primary point is that it's not usually the
17   case in the law that we require defendants to have
18   knowledge that they will ultimately be held liable, that
19   they have no good faith arguments about, you know,
20   complex legal questions, technical factual questions,
21   claim construction questions.  That is not usually the
22   way it works in the law.
23         But even when a defendant may need knowledge
24   that his conduct is illegal, it is not the case that --
25   that a belief that -- that the underlying legal duty is
```

1  invalid, would -- would negate that scienter.
2      CHIEF JUSTICE ROBERTS:      What you just said
3  does sound like an argument that Global-Tech was -- was
4  wrong.
5      MS. ANDERS:      Again, I don't think it is,
6  Your Honor, because, again, even if you understand
7  Global-Tech to require knowledge of infringement, we
8  think there are reasons to treat infringement
9  differently.
10      And I go back to the statute here.      If you
11  assume that 271(b) requires knowledge with respect to
12  the fact that the acts constitute infringement,
13  infringement is defined in 271(a).  Infringement is
14  defined as practicing the elements of the patent without
15  authorization.  The validity of the patent is not an
16  element of the plaintiff's cause of action, so it is
17  possible to establish infringement without establishing
18  the validity of the patent.
19      JUSTICE SCALIA:      You have infringed a
20  nonpatent, right?  I mean, it -- I guess you could say
21  that, but --
22      MS. ANDERS:      No.
23      JUSTICE SCALIA:      -- and we have many cases
24  that say you can't infringe an invalid patent.
25      MS. ANDERS:      I think --

1      JUSTICE SCALIA:      We say that often.
2      MS. ANDERS:      I think Congress made clear
3  that infringe -- that invalidity is something that
4  prevents liability from infringement.  It does not
5  prevent infringement from occurring.  Once the PTO has
6  granted a patent, that patent exists and it can be
7  infringed.  271(a) says --
8      JUSTICE SOTOMAYOR:      There are two different
9  burdens, aren't there, for infringement and for
10  invalidity?  Infringement, the patent owner bears the
11  burden of proving that the other is fringing; and for
12  invalidity, the -- the other side bears the burden.  So
13  they are treated differently --
14      MS. ANDERS:      That's correct.  I --
15      JUSTICE SOTOMAYOR:      -- in the law.
16      CHIEF JUSTICE ROBERTS:      Briefly.
17      MS. ANDERS:      I think 271(a) makes clear that
18  because of the presumption of validity, infringement and
19  invalidity are separate issues.  The patentee does not
20  have to prove validity in order to establish
21  infringement.
22      CHIEF JUSTICE ROBERTS:      Thank you, counsel.
23  Mr. Waxman.
24      ORAL ARGUMENT OF SETH P. WAXMAN
25      ON BEHALF OF THE RESPONDENT

1      MR. WAXMAN:      Mr. Chief Justice, and may it
2  please the Court:
3      As this Court explained in Grokster and in
4  Global-Tech, the linchpin of scienter for inducement
5  liability is knowledge that the induced acts, quote,
6  "violate the rights of the patentee."  Because
7  practicing an invalid patent violates no such right of a
8  patentee, an accused inducer who reasonably believes in
9  good faith that a patent is void lacks the scienter
10  required for liability under Section 271(b).
11      JUSTICE SOTOMAYOR:      So what does that do to
12  the presumption?
13      MR. WAXMAN:      The --
14      JUSTICE SOTOMAYOR:      If the presumption is
15  that a patent is invalid until you prove, you have the
16  burden -- that a patent is valid, you have the burden to
17  prove it's invalid, your position basically says, no, I
18  don't have to prove it, I just have to show I had a good
19  faith basis.
20      MR. WAXMAN:      Well, no, no, no.  I mean, in
21  order to invalidate a patent in court, the party urging
22  that the patent is invalid bears the burden of proving
23  invalidity by clear and convincing evidence.  That's
24  actually not the burden if you challenge it before the
25  PTO.

1      But it is a high burden, and it's
2  appropriately high because once a patent is declared
3  invalid, it is unenforceable against anybody for all
4  time and under principles of -- under the Blonder-Tongue
5  principles, a patentee who loses once is gone.  And
6  there -- this case, of course, and the issue in this
7  case only arises, as all specific intent cases arise,
8  only where there is otherwise established a cause of
9  action.
10      So, in other words, the good faith belief
11  either that the patent wasn't being infringed by the
12  direct infringers or was a void patent will arise only
13  when a court or the PTO has concluded that the patent is
14  indeed valid.  And when -- and the only issue in this
15  case is will it -- that it is the -- the plaintiff's
16  duty, the plaintiff's burden to prove scienter.  And
17  as -- as Aro suggests, and Global-Tech affirms, if the
18  plaintiff comes forward and says, I sent him a letter
19  identifying the patent and expressing my belief that the
20  patent is infringed, if the -- if the defendant doesn't
21  have anything else to say, that can be viewed as
22  permitting the jury to conclude that, in fact, the
23  defendant had scienter.
24      The only issue in this case is what the
25  defendant can say in response to the scienter element,

29

```
1   an element that does apply, as Justice Scalia was
2   pointing out, at common law for aiding and abetting
3   liability.  And the -- jury will certainly be told
4   after the --
5       JUSTICE SOTOMAYOR:    But you're not aiding
6   and abetting.  You're --
7       MR. WAXMAN:      I'm sorry?
8       JUSTICE SOTOMAYOR:      -- induce -- you're not
9   aiding and abetting.  You're inducing.
10      MR. WAXMAN:      So --
11      JUSTICE SOTOMAYOR:      You're -- you're --
12  actually it's like I want -- you're -- you're appointing
13  a surrogate and you're saying, you do it for me, but you
14  do it.
15      MR. WAXMAN:      Well, I -- I want to get to my
16  last point about what the jury will be instructed, but
17  let me first, with all due respect, take on that
18  assertion.
19      When Congress enacted Section 271(b) and
20  Section 271(c) in 1952, both the House report and the
21  Senate report said two things about those provisions:
22  Number one, that they were enacted to reflect common law
23  principles of aiding and abetting liability, and that
24  they were thus, quote, "an expression of law and
25  morals."
```

30

```
1       And this Court in Global-Tech precisely
2   recognized that these provisions are, in fact, the
3   modern day statutory version of civil aiding and
4   abetting.  The Federal Circuit has always recognized it.
5   And aiding and abetting at common law absolutely require
6   knowledge of wrongdoing.
7       And just to get to your original question,
8   in a case in which the jury has found that the patent is
9   valid and the plaintiff goes on to say, you know, and
10  there was appropriate scienter because -- and it's quite
11  unlike this case because there was no letter -- a letter
12  was sent saying, I have this, the '395 patent, and
13  here's why you infringe it, you've heard the defendant
14  explain why he or she or it nonetheless had a reasonable
15  good faith belief that the patent was void.
16      In -- in evaluating the reasonableness and
17  good faith of that expressed belief, you need to take
18  into account that under the patent laws, patents --
19  issued patents are presumed valid and that in order
20  to -- in order to establish the invalidity of a patent
21  in court, as I have otherwise instructed you, the
22  defendant has to prove invalidity by clear and
23  convincing evidence, and that's what you should take
24  into account when you are evaluating the defendant's
25  profession of a good faith belief.  And --
```

31

```
1       CHIEF JUSTICE ROBERTS:      If you -- go ahead.
2       MR. WAXMAN:      No -- I'm sorry.  I was just
3   going to -- just going to Justice Kagan's point, the --
4   about, you know, the two sides of the coin or two
5   different coins, whatever metaphor you want to use, what
6   the -- what happens in the paradigmatic case -- and it
7   actually happened in this case when the lawsuit was
8   filed is the defendant looks at the claim that it has a
9   method that is violating this patent and it may seek
10  legal counsel.  And what it found in this case and what
11  it would testify to if it were allowed is we looked at
12  these -- at this patent.  This patent seems to, by all
13  intents and purposes, claim Bluetooth technology, and if
14  the patent is construed narrowly as we think it should
15  be, our customers are not practicing the steps.
16      CHIEF JUSTICE ROBERTS:      Well, that seems
17  to me to go to the application in your case.  But to step
18  back, if you regard the patent as law, it seems to me
19  that your position is really just ignorance of the law
20  as an excuse.
21      MR. WAXMAN:      No, no, no.  We are not -- not
22  at all, Mr. Chief Justice.  We are not arguing at all
23  for a freestanding defense of a mistake of law.  We're
24  not arguing here -- or there was a reference to Cheek.
25  We're not claiming that there is a reasonable good faith
```

32

```
1   defense in a belief that the patent laws are
2   unconstitutional or that they don't imply -- apply
3   secondary liability or even, we don't -- it wouldn't be
4   a reasonable good faith belief.
5       CHIEF JUSTICE ROBERTS:      No.  But if the
6   patent -- you don't have to say the patent laws are
7   unconstitutional, but if you regard the patent more as
8   law rather than -- than contract, and it does apply
9   against the whole confer legal rights against the whole
10  world --
11      MR. WAXMAN:      Yes.
12      CHIEF JUSTICE ROBERTS:      -- and you say,
13  well, even if we turn out to have been wrong about what
14  that law means, what that patent means, we still have a
15  valid defense.
16      MR. WAXMAN:      Well, what the law means and
17  what a patent means are two very different things.  And
18  I think that really is the crux of what I should have
19  started saying.  There's no dispute that practicing all
20  of the steps of a patented invention is unlawful and a
21  defense of a belief that it wasn't wouldn't be a
22  defense.  But invalidity defenses are not disputes about
23  the -- the parameters or the scope of the -- of Section
24  102 or 103 or 112.  Invalidity defenses are utterly
25  factual.  Several of them the Supreme Court -- the
```

33

1  Federal circuit has said are purely factual, and the
2  other ones that aren't are questions of law that
3  depend -- that are resolved completely by resolution of
4  facts.  And the government, in its brief at Page 30,
5  acknowledges and extolls this.  So a contention that
6  there is a reasonable good faith that a patent is void
7  is not arguing about the legality of good faith.  It
8  argues about the force of the issued document.
9        JUSTICE KAGAN:       I guess I'm not sure what
10 you're saying.  I mean, even take a typical contract
11 case.  Typical contract cases, somebody sues you for
12 breach of contract and you say, oh, I thought that the
13 contract was invalid.  I would have breached
14 it if it were valid, but I thought the contract was
15 invalid.  That usually does not allow -- that's not a
16 good defense.  I mean, if it turns out that the contract
17 was invalid, you win.  But if the contract was valid,
18 you lose even though you thought the contract was
19 invalid.  And so, too, here it would seem to me.
20      MR. WAXMAN:       And that is exactly the rule
21 that -- I mean, contract breach is a -- it's not a tort,
22 but it's the analogy to a direct tort.  It's analogous
23 to the direct infringer.  On the contrary, at common
24 law, tortious interference required an act that was not
25 only intentional but, quote, "improper."  And that's

34

1  reflected in Section 766 of the first restatement of
2  torts under tortious interference.
3        And there are -- many, many courts have
4  understood and construed that word "improper" to require
5  a belief that the contract -- that you were tortiously
6  interfering with a contract that is, in fact, valid, and
7  many courts have allowed the third party, the
8  aider -- essentially, the aider and abettor a defense
9  that they believe that, you know, this was a contract
10 for the supply of alcohol during prohibition.  And
11 juries have found a lack of scienter and a lack of
12 third-party liability at common law for the absence of
13 that belief.
14      I mean, at common law -- and this Court
15 in -- in the Court's Central Bank of Denver v. First
16 Interstate Bank of Denver, which was a private
17 securities action, has a long treatment of the history
18 of civil aiding and abetting liability and underscores
19 what the treatises reflect, which is that third-party
20 liability for a non-culpable wrongful act was
21 exceptionally rare.
22      JUSTICE GINSBURG:       But as Ms. Anders made
23 the point that in -- in the patent context, it's the
24 aider and abettor or the inducer is the mastermind and
25 then the aider and abettor is selling the allegedly

35

1  infringing device to a lot of customers.  And as between
2  those two, it's much more effective to go after the
3  person who is supplying the alleged -- the infringing
4  device.
5        MR. WAXMAN:       Well, Justice Ginsburg, in some
6  contexts it is; in some contexts it isn't.  When, you
7  know, Walmart or McDonald's get a letter from Commil
8  saying that you are infringing our patent because you're
9  using the -- you know, Cisco provided wide area network,
10 a couple things happen.  We're talking about the
11 practicalities of things.
12      In the first place, companies like Cisco
13 all -- it is a commonplace to have an indemnification
14 for customers saying if you're sued for patent
15 infringement, we will take over the defense and we are
16 liable.  And even if they don't have that, it obviously
17 is going to do a company like Cisco or, heaven forbid, a
18 smaller, you know, innovative company to say, well, you
19 know, they can't really reach us.  They're just suing
20 our customers.  And in practice, what sometimes happens,
21 even in the absence of an indemnification agreement, is
22 the manufacturer, whether it's Cisco or Apple or
23 whoever, will intervene in the action or file an
24 individual dec action to take on the very question.  And
25 so in the real world of litigation, this issue is

36

1  resolved.
2        Now, on the Chief Justice's question about
3  how valid are patents, I mean, the -- the answer is the
4  statistics have changed over time.
5        At -- at page 49 of our brief, we cite a
6  1998 study that showed that patents were invalidated 46
7  percent of the time.  In 2002, a study was done of
8  Federal circuit decisions between 2003 and 2009 and
9  found that patents -- challenged patents were
10 invalidated 60 percent of the time.  And I do think that
11 in light of this Court's explication of the bounds of
12 certain validity principles in Alice Corp. as to
13 business method patents, Nautilus as to indefiniteness,
14 Mayo as to patentable subject matter, KSR as to
15 obviousness, there's no question that that number is
16 going to go up.
17      JUSTICE KAGAN:       Well, but that might be a
18 very good reason for Congress to take a new look at this
19 presumption of validity.  But your problem is that this
20 presumption of validity exists and that this question of
21 validity functions in a patent suit only as an
22 affirmative defense.
23      MR. WAXMAN:       So I don't -- I -- maybe I'm
24 seeing this wrong, but I don't actually see the
25 presumption of validity as a problem.  The presumption

37

1   of the validity raises the bar of proving to a jury that
2   you had a reasonable good faith belief that this patent
3   would be invalidated; that you have to -- it wouldn't be
4   reasonable to assume, oh, I think I can prove by 51
5   percent that it's invalid, or I think it's 51 percent
6   likely.
7        The -- the reasonableness in good faith of
8   your profession has to be evaluated against the high bar
9   that you will face in court.  And the -- the flip side
10  of the coin is so one of these letters comes in and --
11  and Cisco -- I mean, we've seen the government's
12  statistics are 60 to -- 60 to 100,000 of these letters a
13  year.  Cisco gets way more than one letter every day.  I
14  mean, they're sued twice a year.  Every time they get a
15  letter, according to the government and according to
16  Commil, what they are supposed to do is shut down the
17  production line, tell all of the customers who've bought
18  their technology, oh, no, no, no, the patent is presumed
19  valid, you should stop; otherwise, you'll be infringing
20  while they do what they did, which is to file an action
21  in the PTO to seek a declaration of invalidity.
22       CHIEF JUSTICE ROBERTS:      That's only a
23  problem if you turn out to be wrong.
24       MR. WAXMAN:      Exactly.
25       CHIEF JUSTICE ROBERTS:      Right?  I mean, so

38

1   why shouldn't you bear that risk?  Why do you require
2   the patent holder to lose the value of his patent until
3   you get around to deciding the validity or the -- the
4   infringement suit is solved?
5        MR. WAXMAN:      So I think a couple of answers.
6   First of all, it is not the -- I mean, you could
7   establish an a priori rule that says, since all we're
8   talking about here is retrospective damages looking back
9   from the adjudication of invalidity, and then that
10  the -- that the direct infringers are practicing all of
11  the steps.
12       And the question just is, whose -- who bears
13  the burden of that -- of those retrospective damages.
14  Where the common law put it under aiding and abetting
15  liability, and where 271(b) and 271(c) put it, as this
16  Court has explained in Grokster and in Global-Tech, is
17  to leave it for the jury.  The jury is told, this entity
18  is accused of inducing infringement or contributory
19  infringement, and you therefore need to find, in the
20  first instance, that some entity was, in fact -- could
21  be, quote, immersed as a direct infringer, to quote this
22  Court's opinion in Aro.  If you do that, aiding and
23  abetting liability will follow if the plaintiff
24  establishes three separate tests, one of which is
25  scienter.

39

1        And the jury will -- and you need to
2   evaluate whether, in fact, the plaintiff has established
3   scienter.  If the plaintiff establishes scienter, then
4   the alleged -- the alleged inducer is an adjudicated
5   inducer and is, in fact, responsible for all of those
6   damages.
7        JUSTICE SOTOMAYOR:      I -- I still don't
8   understand.  I mean, you posit that you know that your
9   steps, if the patent is valid, infringe.
10       MR. WAXMAN:      I'm sorry, I didn't hear you.
11       JUSTICE SOTOMAYOR:      You know, an -- for
12  inducement, you have to prove that the person knows that
13  they're infringing.  The next question is, are they
14  liable for it, and that issue has to do with validity; a
15  second question.
16       So I don't know why the patent owner has to
17  suffer the loss of royalties to your gamble that the
18  patent is void, because presumably they've proven that
19  you knew your steps infringed.
20       MR. WAXMAN:      So I --
21       JUSTICE SOTOMAYOR:      So you knew that, at
22  least on the terms of the patent as it exists, you
23  violated.
24       MR. WAXMAN:      I have a doctrinal -- my answer
25  has a doctrinal portion and a practical, real-world

40

1   portion.  The doctrinal portion is simply the statement
2   that was made by somebody on the bench, and -- and I'll
3   just quote Justice Black in his dissenting opinion in
4   Exhibit Supply, which began with a statement that was
5   agreed -- was -- was started as common ground, where
6   he -- he said, there can be no infringement of a void
7   patent.  And if you -- and -- and there are --
8        JUSTICE GINSBURG:      May I -- may I stop you
9   at that point and ask how does that compare with what
10  Charles Rich said, which is -- and I think this is in
11  the government's brief and I'm sure that you know it --
12  assertion that invalid claims can't be infringed is a
13  nonsense statement.
14       What do you suppose he meant by that?
15       MR. WAXMAN:      Okay.  First of all, Charles
16  Rich, Judge Rich, Chief Judge Rich, held for the court
17  in Richdel, which was, which was decided in 1983 at the
18  very outset of the Federal Circuit's creation, this was
19  the holding of Richdel, that if a claim is invalid,
20  there is nothing to be infringed.
21       JUSTICE GINSBURG:      Well, that --
22       MR. WAXMAN:      What he meant -- what he meant
23  when he made the statement that you've quoted was
24  accurate in the very peculiar context of that case.
25  Because in that case, there was, in fact, a claim of

41

1  invalidity under best mode, and there was a claim that
2  the steps of the method or the combination were not
3  being practiced.
4      JUSTICE GINSBURG:      Well, then what's --
5  what's --
6      MR. WAXMAN:      But because of -- may I just --
7      JUSTICE GINSBURG:      You're making this
8  case-specific.  But he also said, courts constantly hold
9  claims infringed, but invalid.
10     MR. WAXMAN:      So what that means is, if I an
11 just finish my point on the case that he was deciding,
12 and what it -- why it made sense for -- because of
13 a reason of the quirk of the case, the best mode defense
14 of invalidity was not presented to the jury.  And he was
15 simply saying that it was wrong to say that by having
16 found the -- the question of whether all the steps were
17 practiced or in that case, not, he necessarily -- the
18 jury necessarily made a finding on invalidity.
19     What -- what the more general statement,
20 Justice Ginsburg, reflects is the fact that infringement
21 can be referred to -- I mean, it -- there are, as was
22 pointed out, separate defenses.  One is the first -- in
23 271(a) or 282(a) -- (a)(1), is you're not practicing all
24 of the steps of the claimed invention, and that is
25 vernacularly referred to as noninfringement.

42

1      The claim that a patent is valid depends on
2  a -- or invalid depends on a showing that it doesn't
3  satisfy Sections 102, 103, or 112 of the Patent Act, and
4  is a -- is a showing that, if made, will invalidate the
5  patent against everybody, not just the defendant in the
6  case.
7      JUSTICE GINSBURG:      I thought -- and maybe
8  correct me if I'm wrong -- that what this meant was
9  thinking of how it comes up in litigation.  So you're in
10 the district court, and you have -- let's say you're the
11 alleged infringer or contributory infringer or inducer,
12 so you say, number one, the patent is invalid; and,
13 number two, if it's valid, it was not infringed.
14     So in the court of first instance, both of
15 those issues are discrete in the sense that I am arguing
16 it's not valid, so no patent is out of it; but if I'm
17 wrong about that, it wasn't infringed.  So though --
18 those are discrete inquiries.
19     MR. WAXMAN:      There's -- there's -- we're not
20 disputing that they're discrete inquiries.  The validity
21 of the -- a -- a finding of infringement, the ability
22 to, as this Court put it in Aro 1, immerse a defendant
23 as an infringer presupposes that there is, in fact --
24 someone is practicing all the steps of a valid patent.
25 That is -- that's indisputable.

43

1      It's simply -- it is a nonsense statement to
2  say that you can be immersed as an infringer of a void
3  patent.  The patent provides rights.  The rights to
4  exclude; the right to withhold authorization within the
5  meaning of 271(a), defining infringement.  If you have
6  no ability, no legal right to withhold authorization,
7  you don't have a legal right that's being violated if
8  somebody practices the claimed steps.
9      Now, I do want to make a couple of points --
10 well, first, I should go back to the -- let me try to
11 remember my practical side of Justice -- the answer to
12 Justice Sotomayor's question.  I wish I could remember
13 it, because it was really good.  Maybe I'll -- maybe
14 I'll --
15     JUSTICE SOTOMAYOR:      Your answer -- your
16 answer was really good or my question?
17     MR. WAXMAN:      No, no, your question was good,
18 but my answer was also good, and it will probably come
19 to me on the walk back to my office.
20     JUSTICE SCALIA:      I have forgotten the
21 question.  What was -- what was the question?
22     MR. WAXMAN:      So I think the question was --
23 well, what was the question?
24     JUSTICE KAGAN:      Mr. Waxman, as a -- as a
25 company that's in this position, the company has other

44

1  alternatives.  It can go to court and seek a declaratory
2  judgment, it can go to the PTAB, it can go to the PTO,
3  it can do all of these things essentially to figure out
4  whether the patent is valid.  And those things also have
5  the side benefit of getting invalid patents struck so
6  that nobody else will have to deal with them either.
7      So why isn't that the right way to
8  understand this system, is that you, no, rather than come --
9  rather than allow a company to come in and do what we
10 don't allow in any other context, as far as I can see,
11 which is to plead a good faith belief in the invalidity
12 of the patent, that no, we -- we say to them, yes, we
13 understand you have a question, Congress has set up many
14 mechanisms for you to get an answer to that question,
15 use one of those mechanisms.
16     MR. WAXMAN:      Okay.  So, I mean, look, I'm --
17 our argument isn't principally a policy argument, but
18 I'll give you the policy answer to your question.  The
19 legal answer is that 271(b) and (c) liability is a
20 validly and recognized as a statutory instantiation of
21 civil aiding and abetting liability.  And third-party
22 liability at common law was a rarity and a particular
23 rarity in the absence of culpability.
24     But as to your question, so Cisco is a big
25 company and it has a lot of resources.  It's true that

45

1   it gets hundreds or thousands of these letters every
2   year.  And if the notion that it should run into court
3   and institute an action every time somebody with a
4   business method patent that seems now pretty clearly
5   invalid under this Court's decision in Alice has to
6   begin patent litigation and stop -- stop the production
7   line and tell all of its customers not to do it, I
8   think, would be an odd practical remedy.
9       The question here is:        What about a company
10  that's perhaps a less -- that's Cisco 20 years ago.  You
11  know, an innovative company that is making products that
12  people can use.  It gets a letter and it looks at this
13  letter and says, gee, you know, if the patent is
14  construed the way we think it should be construed, we
15  don't think our customers are violating it, and if it's
16  construed broadly, it's probably void because of X, Y,
17  or Z.
18      If we go to court -- first of all, we will
19  have to shut down our only means of -- you know, we have
20  to shut down our production line, we have to tell our
21  customer to stop using it and we get to go to court and
22  litigate what probably will be a $1 million to
23  $10 million case, which if we don't shut our production
24  line, we will be retrospectively liable for all the
25  damages that occurred.  And the paradigm of what happens

46

1   here is -- again, this is getting back to a point that I
2   do remember you you made, which is the two sides of the
3   coin -- what the lower court held -- what the trial
4   court held was that under Global-Tech, it had to allow
5   Cisco in -- on the issue of scienter to explain why it
6   had a good faith belief that the patent was not
7   infringed.  But it was not allowed to explain why, if
8   the -- all the steps -- if the claim -- if the patent
9   were construed so as to encompass what Cisco does, it
10  would be invalid for lack of enablement or written
11  description.  And -- which is exactly what happened.
12      And so the defense that Cisco was allowed to
13  make at trial was the sound of one hand clapping
14  whereas what Cisco did, once it received notice of this
15  suit, was to -- to do an analysis and say, this appears
16  to claim only Bluetooth, we don't do Bluetooth, so our
17  customers are not practicing the steps.  But if this
18  were construed broadly enough to include the protocols
19  that we are involved in, it would be anticipated and in
20  any event, there's no enablement or a written
21  description of how to do it.
22      JUSTICE SOTOMAYOR:        That goes to -- that
23  goes to rolling the dice.
24      MR. WAXMAN:       Well, yes.
25      JUSTICE SOTOMAYOR:       Meaning if you --

47

1       MR. WAXMAN:        But --
2       JUSTICE SOTOMAYOR:        Infringement is one
3   thing.  If you have a good faith belief, you've done the
4   inquiry, the one that Justice Kennedy talked about, that
5   was the premise of Global-Tech, which is there's a valid
6   patent out there, you have to give a reason why your
7   steps don't infringe their steps.
8       MR. WAXMAN:        You have to give --
9       JUSTICE SOTOMAYOR:        If you can do that,
10  that's fine.  If you can't, if -- once you've done,
11  you've lost on that, then you've rolled the dice.  Why
12  should the patent owner now be deprived of the value?
13      MR. WAXMAN:       Justice Sotomayor, you are
14  rolling the dice no matter what.  Because if you can't
15  convince -- you need to be able to convince a jury that
16  notwithstanding the -- whatever proof the plaintiff has
17  that you were on notice of the patent and a claim of
18  infringement, that your scienter, which after all is
19  measured by what you believe, not why what the other
20  side tells you to believe, you are -- if the jury can
21  only evaluate half of the thought process of the
22  defendant, the defendant says, if it's narrowly
23  construed, the -- the steps aren't practiced; if it's
24  broadly construed, it's invalid.  But when you get to
25  the jury, the only thing you're allowed to tell the jury

48

1   is, well, I believed that if it was narrowly construed,
2   we wouldn't be practicing this.  That's not a real --
3   that's not giving the jury the benefit of what you
4   believed.
5       And again, all this case is about, it's not
6   about immunizing anything.  It's about what the jury
7   will hear if the defendant has anything to say about its
8   scienter in response to a prima facia showing by the
9   plaintiff that the defendant knew of the patent and that
10  it -- the patent was being infringed.
11      JUSTICE KAGAN:        Is there -- this is -- we
12  have no question, right, that validity or invalidity is
13  an affirmative defense?
14      MR. WAXMAN:        Correct.
15      JUSTICE KAGAN:        Is that correct?  I mean, is
16  there any other area of law where the defendant gets to
17  say, I thought an affirmative defense would be
18  available?  It turned out I was wrong, but I thought an
19  affirmative defense would be available.
20      MR. WAXMAN:        Oh, I think, if you -- may I --
21      CHIEF JUSTICE ROBERTS:        Sure.
22      MR. WAXMAN:        Quickly.  Any of the common
23  law, any of the -- if you go back to the common law and
24  look at instances where aiding and abetting liability,
25  which as this Court pointed out is referenced in 876(b)

49

```
 1   of the first restatement, that defense was available.
 2   Because someone who didn't have that belief was not
 3   culpable and, quote, "morally wrong."
 4        Thank you.
 5        CHIEF JUSTICE ROBERTS:        Thank you, counsel.
 6        Mr. Werbner, you have four minutes left.
 7        REBUTTAL ARGUMENT OF MARK S. WERBNER
 8        ON BEHALF OF PETITIONER
 9        MR. WERBNER:        Thank you, Mr. Chief Justice.
10        Justice Kagan, to your question just now, I
11   know of no other area of the law where a defendant, if
12   it turns out they're right, they win, and if it turns
13   out they're wrong, they win.  That's the position that
14   Cisco is seeking.
15        And the parade of horribles of having to
16   shut down the factory --
17        JUSTICE SOTOMAYOR:        You're argument goes too
18   far, because that's the same for infringement.  If you
19   don't think you're infringing and you have a good faith
20   basis, you're right.
21        MR. WERBNER:        Well, there -- there is the --
22   in my mind, the fact is, is that Cisco in their amici
23   pressed Congress to create through the PTO the IPR
24   procedures.  It's not a million dollar lawsuit, and it's
25   not one that goes on forever.  They have many lawyers
```

50

```
 1   that can evaluate the risk and go to the PTO.  That's
 2   where they should go if they're seeking validity.
 3   Infringement you can't go to the PTO, but the IPR allows
 4   that.
 5        JUSTICE SCALIA:        Of course your response to
 6   the -- the assertion that your -- your argument goes too
 7   far is well, we don't -- we don't agree that -- that it
 8   applies to whether you've infringed, right?  I mean,
 9   your argument is even -- even the question of
10   infringement, despite what we said in Global-Tech, that
11   is not a defense either, right?  So at least you're
12   consistent.
13        MR. WERBNER:        Well, Justice Scalia, I do
14   want to point out that Cisco cannot point to a single
15   statutory provision that suggests that Congress thought
16   that the validity of the patent was an element of
17   271(b).
18        So, no matter how the Court comes out on the
19   non-infringement scienter and the Global-Tech,
20   regardless, our position doesn't depend on it and -- and
21   there's no statutory support for validity being a
22   component of a 271(b).  And the reference was to
23   Blonder-Tongue?  That -- that case that this Court
24   decided back in, I think, the early '70s said that a
25   jury finding or a judge that a patent is invalid doesn't
```

51

```
 1   wipe it out.  It's not -- it doesn't become void or
 2   canceled.  It's a matter of collateral estoppel that has
 3   to be pled under Rule 8(c).  And if a defendant later
 4   does not, then that patent was infringing an invalid
 5   patent because it's an affirmative defense.
 6        So I think the Blonder-Tongue case really
 7   completely undermines the position that -- that
 8   infringement presupposes validity.  It's quite separate,
 9   it's quite distinct and for the reasons we stated, we
10   would ask that the case be reversed and remanded to the
11   Federal circuit unless there are questions.
12        Thank you.
13        CHIEF JUSTICE ROBERTS:        Thank you, counsel.
14        The case is submitted.
15        (Whereupon, at 11:14 a.m., the case in the
16   above-entitled matter was submitted.)
```

52

**A**

$1 45:22
$10 45:23
a.m 1:13 3:2 51:15
abets 8:12
abetter 6:8 8:17 8:21 9:2 20:21 34:8,24,25
abetting 6:5 9:1 20:23 21:11 29:2,6,9,23 30:4,5 34:18 38:14,23 44:21 48:24
ability 42:21 43:6
able 23:18 47:15
above-entitled 1:11 51:16
absence 34:12 35:21 44:23
absolutely 30:5
account 30:18 30:24
accurate 40:24
accusation 19:7
accused 5:4 7:9 8:4 12:8,11 27:8 38:18
acknowledge 6:9,12,19 24:8
acknowledged 18:18
acknowledges 33:5
act 6:3 7:21 11:11 23:4,10 33:24 34:20 42:3
action 8:8,11 11:22 13:19,19 20:12 25:16 28:9 34:17 35:23,24 37:20 45:3

actively 3:13 5:25 6:22
activity 15:23
actor 6:25 7:1
acts 13:5 16:3,13 18:1,10 25:12 27:5
actual 7:10,14 7:23
address 5:17 17:18 19:10,22
addressing 9:21 16:7
adjudicated 39:4
adjudicating 3:12 7:20
adjudication 38:9
affirmative 36:22 48:13,17 48:19 51:5
affirms 28:17
ago 13:11 45:10
agree 50:7
agreed 40:5
agreement 35:21
ahead 31:7
aider 6:7 8:17 8:21 9:20 21 34:8,8,24,25
aiding 6:5 8:25 20:23 21:11 29:2,5,9,23 30:3,5 34:18 38:14,22 44:21 48:24
aids 8:12
alcohol 34:10
Alice 36:12 45:5
alleged 35:3
allegedly 34:25
allow 3:21 33:15 44:9,10 46:4
allowed 31:11

34:7 46:7,12 47:25
allows 50:3
alternatives 44:1
America 7:21 11:11
American 12:5 12:17
amici 49:22
amicus 1:19 2:7 15:7
analogous 21:2 33:22
analogy 33:12
analysis 46:15
Anders 1:17 2:6 15:5,6,9,16,18 15:25 16:10,25 17:2,22 18:4 18:18,22 19:2 21:9,13 22:25 24:1,5,15 25:5 25:22,25 26:2 26:14,17 34:22 46:19
anomalous 22:7
answer 11:14 36:3 39:24 43:11,15,16,18 44:14,18,19
answers 38:5
anticipated 23:9 46:19
anticipation 23:20
anybody 28:3
APPEARAN... 1:14
appears 4:3 46:15
apple 5:5,11 35:22
application 31:17
applies 50:8
apply 29:1 32:2

32:8
appointing 29:12
appropriate 30:10
appropriately 28:2
argues 33:8
arguing 14:1,4 31:22,24 33:7 42:15
argument 1:12 2:2,5,9,12 3:3 3:7 15:6,24 16:7,23 17:8 25:3 26:24 44:17,17 49:7 49:17 50:6,9
arguments 16:9 16:20 24:19
arises 7:23
art 23:21,22
Aro 7:6 14:21 15:17 17:2,19 18:23 19:3,3 28:17 38:22
asking 15:14
aspect 9:7
assertion 29:18 44:12 50:6
Assistant 1:17
assisting 9:5
assume 12:17,18 25:11 37:4
assumed 11:16
authorization 25:15 43:4,6
available 7:22 14:23 21:19 48:18,19 49:1

**B**

back 12:15

13:16 17:14 18:13 21:25 23:12 25:10 31:18 38:8 43:10,19 46:1 48:23 50:24
bad 6:25 7:1
Bank 34:15,16
bar 37:1,8
based 23:19
basically 5:4 27:17
basis 5:15,24 13:4 27:19 49:20
bear 4:22 11:17 20:4,6 38:1
bears 26:10,12 27:22 38:12
began 40:4
behalf 1:15,21 2:4,11,14 3:8 26:25 49:8
belief 4:22 5:2 5:16,17 6:11 8:4 15:11,12 16:18 17:9,10 17:16 19:12 22:14 23:20 24:25 28:20,19 30:15,17,25 32:1,4,21 34:5 34:13 37:2 44:11 46:6 47:3 49:2
beliefs 12:4
believe 3:14 6:13 34:9 47:19,20
believed 5:8,14 48:1,4
believes 27:8
bench 40:2
benefit 44:5 48:3
best 41:1,13
beyond 8:22

# EXHIBIT 1E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation, | |
| Plaintiff, | C.A. No. 08-309 LPS |
| v. | FILED UNDER SEAL |
| FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., FAIRCHILD SEMICONDUCTOR CORPORATION, and SYSTEM GENERAL CORPORATION, | CONTAINS HIGHLY CONFIDENTIAL INFORMATION – TRIAL COUNSEL ONLY SUBJECT TO PROTECTIVE ORDER |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO POWER INTEGRATIONS'
MOTION *IN LIMINE* NO. 3**

Counsel for Defendants

John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
jday@ashby-geddes.com

Blair M. Jacobs
Christina A. Ondrick
Rose S. Whelan
MCDERMOTT WILL & EMERY
600 13th Street, N.W.
Washington, D.C. 20005-3096
202-756-8000

Terrence P. McMahon
Michael F. Martin
MCDERMOTT WILL & EMERY
275 Middlefield Road
Menlo Park, CA 94025
650-815-7400

Leigh J. Martinson
MCDERMOTT WILL & EMERY
28 State Street
Boston, MA 02109
317-535-4000

Dated:  March 9, 201

Power Integrations asks the Court to preclude Fairchild from "raising in any manner" the now-completed reexamination of its '876 patent. (Power Integrations' Motion *In Limine* No. 3, "Motion" at 3). Power Integrations' request is, at a minimum, far too broad.

As the Court is aware, the PTO initiated reexamination of the '876 patent in December 2006 based on substantial new questions of patentability presented by, among other references, the Martin patent ("Martin"), the Wang article ("Wang"), and the Habetler article ("Habetler")— none of which had been before the Examiner during the original examination of what issued as the '876 patent. After the Examiner rejected claim 1—asserted in this action—as anticipated by all three references, Power Integrations appealed to the Board of Patent Appeals and Interferences ("Board"). On December 22, 2010, the Board affirmed the Examiner's findings that "Habetler, Martin, and Wang each teaches a digital to analog converter coupled to a counter," and thus anticipate claim 1. (12/22/10 Board Decision at 12).[1] The proceedings before the PTO had come to an end.[2]

As part of the Pretrial Order, Fairchild has identified for potential use at trial several documents from the reexamination proceeding before the PTO. Power Integrations now seeks to impose an absolute bar on any mention of those documents specifically or the '876 reexamination generally. Before addressing Power Integrations' sweeping arguments, however, Fairchild would like to clarify the limited purpose for which it intends to offer the listed documents or any testimony regarding the reexam. Fairchild will ***not*** argue to the jury that the

---

[1] The Board further affirmed the Examiner's rejection of claims 17-19 as anticipated by Habetler. *Id.*

[2] On July 11, 2011, Power Integrations sought review of the Board's Order under 35 U.S.C. § 145 in the United States District Court for the District of Columbia. The PTO moved the district court on September 21, 2011 to dismiss that action for lack of subject matter jurisdiction, or alternatively, to transfer to the Court of Appeals for the Federal Circuit. That motion remains pending.

1

'876 is invalid for anticipation because both the PTO Examiner and the Board have so found. Instead, Fairchild intends to use the reexam materials to impeach Power Integrations' witnesses with any contradictory representations regarding the scope of the '876 inventions. *See Boston Sci. Corp. v. Johnson & Johnson Inc.,* 679 F. Supp. 2d 539, 548 n.12 (D. Del. 2010) (permitting parties to discuss at pretrial hearing admissibility of expert's statements made during co-pending reexamination for impeachment purposes), aff'd, 647 F.3d 1353 (Fed. Cir. 2011).  Such targeted use of any reexamination evidence will assist the jury in evaluating the credibility of the witnesses before them without yielding confusion.

The bulk of the case law cited by Power Integrations is not to the contrary.  The better part of the cases deal with initial results of reexamination proceedings, rather than a final rejection by the Examiner and affirmance on appeal to the Board.  *See, e.g., Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1584 (Fed. Cir. 1996) (discussing relevance of granted *reexamination request* to validity); *Acoustical Design, Inc., v. Control Elecs. Co.,* 932 F.2d 939, 942 (Fed. Cir. 1991) (discussing relevance of *initial rejection* of original claims later confirmed on reexam to state of mind for willfulness); *Callaway Golf Co. v. Acushnet Co.,* 576 F.3d 1331, 1342-43 (Fed. Cir. 2009) (affirming exclusion of office actions at trial that were not the subject of objection at trial); *Presidio Components Inc. v. Am. Tech. Ceramics Corp.,* 2009 WL 3822694, at *2 (S.D. Cal. Nov. 13, 2009) (excluding presentation of *grant of reexamination request* from jury trial).  "To be sure, the initiation of reexamination and the customary first office action prove little; but here, the examiners have gone to the end of their process.  It would be wrong to conceal this important information from the jury." *Oracle Am., Inc. v. Google Inc.,* 2012 U.S. Dist. LEXIS 688, at *10-12 (N.D. Cal. Jan. 4, 2012) (Alsup, J.) ("The decisions cited

2

in opposition to this ruling did not involve re-examinations that had reached a final rejection by the examiner.").

Contrary to Power Integrations' arguments, introducing reexamination evidence will not undermine from the statutory presumption of validity, already diminished as the Martin, Wang, and Habetler prior art was not before the PTO during the original prosecution of the '876 patent. As another district court recently explained:

> The presumption of validity is based on the expertise of the examiner, but now the examiner has come out in favor of rejection on two patents in suit. The recent rejections are based, in part, on prior art not previously supplied to the examiner. Juries can take into account the extent to which the prior art reference was raised or not in the procedure leading to approval. *Microsoft Corp. v. i4i Ltd. Partnership,* 131 S. Ct. 2238, 2251, 180 L. Ed. 2d 131 (2011). This is because the rationale underlying the presumption of validity is much diminished where the evidence before the factfinder was not before the PTO during the reexamination process. *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 426, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007).

*Oracle Am.,* 2012 U.S. Dist. LEXIS 688, at *11-12. The rationale for the presumption of validity—PTO Examiner expertise—has now been eroded by the reexamination Examiner's final rejection *and* by the PTO Board's affirmance of that rejection. Instructing the jury on the presumption of validity under these circumstances would be "misleading." *Id.* at *12.

Moreover, it is precisely because the jury will evaluate "a much broader array of evidence" than the PTO, "including the testimony of live witnesses" that it deserves to consider any inconsistent statements made by those witnesses. (Motion at 2). Introducing reexamination evidence for such a circumscribed purpose will further the interests of justice yet avoid jury confusion.

For these reasons, Fairchild respectfully requests that the Court deny Power Integrations' motion *in limine* to preclude Fairchild from raising in any manner the reexamination of the '876 patent.

Dated:  March 9, 2012

ASHBY & GEDDES

  _/s/ John G. Day_____
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

MCDERMOTT WILL & EMERY LLP
Blair M. Jacobs
Christina A. Ondrick
Rose S. Whelan
600 13th Street, N.W.
Washington, D.C. 20005-3096
202-756-8000
bjacobs@mwe.com
condrick@mwe.com

MCDERMOTT WILL & EMERY LLP
Terrence P. McMahon
Michael F. Martin
275 Middlefield Rd., Ste. 100
Menlo Park, CA 94025
650-815-7400

MCDERMOTT WILL & EMERY LLP
Leigh J. Martinson
28 State Street
Boston, MA 02109
317-535-4000

*Attorneys for Defendants*

DM_US 32173504-1.060948.0020

4

# EXHIBIT 1F





## Transaction History

| Date | Transaction Description |
|------|------------------------|
| 04-03-2015 | RX - Mail Reexam - Action Closing Prosecution. |
| 03-31-2015 | Information Disclosure Statement considered |
| 10-01-2014 | Information Disclosure Statement Filed |
| 10-01-2014 | Certificate of Service |
| 10-01-2014 | Information Disclosure Statement (IDS) Filed |
| 09-29-2014 | RX - Mail Petition Decision - Dismissed |
| 09-17-2014 | RX - Mail Petition Decision - Dismissed |
| 09-17-2014 | RX - Mail Petition Decision - Granted |
| 07-22-2014 | RX - Mail Petition Decision - Dismissed |
| 06-26-2014 | Certificate of Service |
| 06-26-2014 | Receipt of Petition in a Reexam |
| 06-17-2014 | Certificate of Service |
| 06-17-2014 | Receipt of Petition in a Reexam |
| 06-12-2014 | Certificate of Service |
| 06-12-2014 | Receipt of Petition in a Reexam |
| 06-12-2014 | Ready for Examiner Action after ACP |
| 06-09-2014 | Certificate of Service |
| 06-09-2014 | Third Party Requester Comments after Action Closing Prosecution |
| 06-04-2014 | Certificate of Service |
| 06-04-2014 | Receipt of Petition in a Reexam |
| 06-04-2014 | RX - Mail Petition Decision - Granted |
| 05-19-2014 | Certificate of Service |
| 05-19-2014 | Receipt of Petition in a Reexam |
| 04-23-2014 | RX - Mail Petition Decision - Denied |
| 04-23-2014 | RX - Mail Petition Decision - Granted |
| 04-09-2014 | Ready for Examiner Action after ACP |
| 04-09-2014 | Certificate of Service |
| 04-09-2014 | Third Party Requester Comments after Action Closing Prosecution |
| 03-24-2014 | Receipt of Petition in a Reexam |
| 03-24-2014 | Certificate of Service |
| 03-10-2014 | Patent Owner Comments after Action Closing Prosecution |
| 03-19-2014 | RX - Mail Petition Decision - Dismissed |
| 03-10-2014 | Certificate of Service |
| 03-10-2014 | Receipt of Petition in a Reexam |
| 01-23-2014 | RX - Mail Extension of Time Period for Response Granted |
| 01-21-2014 | Certificate of Service |
| 01-21-2014 | Request for Extension of Time |
| 01-10-2014 | RX - Mail Reexam - Action Closing Prosecution. |
| 03-13-2013 | RX - Mail Inter Partes Non-Final Office Action |
| 03-11-2013 | RX - Mail Petition Decision - Dismissed |
| 12-24-2013 | RX - Mail Reexam - Action Closing Prosecution. |

| Date | Description |
|---|---|
| 08-15-2013 | Ready for Examiner Action after Nonfinal |
| 08-01-2013 | RX - Mail Petition Decision - Dismissed |
| 07-17-2013 | RX - Mail Petition Decision - Granted |
| 07-09-2013 | Third Party Requester Comments after Non-final Action |
| 07-09-2013 | Certificate of Service |
| 06-11-2013 | Affidavit(s), Declaration(s) and/or Exhibit(s) Filed |
| 06-11-2013 | Receipt of Petition in a Reexam |
| 06-11-2013 | Response after non-final action - owner - timely |
| 06-11-2013 | Certificate of Service |
| 06-10-2013 | RX - Concurrent Proceedings Notice |
| 06-10-2013 | Certificate of Service |
| 04-03-2013 | Reexam - Opposition filed in response to petition |
| 04-03-2013 | Certificate of Service |
| 04-04-2013 | RX - Mail Extension of Time Period for Response Granted |
| 04-02-2013 | Request for Extension of Time |
| 04-02-2013 | Certificate of Service |
| 03-13-2013 | RX - Mail Petition Decision - Dismissed |
| 03-13-2013 | RX - Mail Petition Decision - Dismissed |
| 03-11-2013 | RX - Mail Inter Partes Non-Final Office Action |
| 02-27-2013 | Receipt of Petition in a Reexam |
| 02-27-2013 | Certificate of Service |
| 02-22-2013 | Reexam - Opposition filed in response to petition |
| 02-22-2013 | Certificate of Service |
| 09-20-2012 | Information Disclosure Statement considered |
| 04-25-2012 | Information Disclosure Statement considered |
| 02-15-2013 | Certificate of Service |
| 02-15-2013 | Receipt of Petition in a Reexam |
| 01-17-2013 | Certificate of Service |
| 01-17-2013 | Reexam - Opposition filed in response to petition |
| 01-24-2013 | RX - Mail Improper Letter Destroyed |
| 01-11-2013 | Receipt of Petition in a Reexam |
| 01-11-2013 | Receipt of Petition in a Reexam |
| 01-11-2013 | Certificate of Service |
| 01-11-2013 | Reexam - Opposition filed in response to petition |
| 01-11-2013 | Certificate of Service |
| 01-04-2013 | Certificate of Service |
| 01-04-2013 | Receipt of Petition in a Reexam |
| 12-13-2012 | Certificate of Service |
| 12-13-2012 | Reexam - Opposition filed in response to petition |
| 12-13-2012 | RX - Mail Decision Merging Reexam and Reissue Proceedings -- Reexam |
| 12-05-2012 | Certificate of Service |
| 12-05-2012 | Receipt of Petition in a Reexam |
| 12-05-2012 | Change in Power of Attorney (May Include Associate POA) |
| 12-03-2012 | Change in Power of Attorney (May Include Associate POA) |
| 12-03-2012 | Certificate of Service |
| 09-20-2012 | Information Disclosure Statement Filed |
| 09-20-2012 | Information Disclosure Statement (IDS) Filed |
| 06-14-2012 | Receipt of Petition in a Reexam |
| 06-14-2012 | Certificate of Service |
| 06-20-2012 | Ready for Examiner Action after Nonfinal |
| 06-14-2012 | Third Party Requester Comments after Non-final Action |
| 06-14-2012 | Certificate of Service |
| 05-18-2012 | Receipt of Petition in a Reexam |
| 05-18-2012 | Certificate of Service |
| 05-15-2012 | Receipt of Petition in a Reexam |
| 05-15-2012 | Response after non-final action - owner - timely |
| 05-15-2012 | Certificate of Service |
| 04-25-2012 | Information Disclosure Statement (IDS) Filed |
| 03-09-2012 | Request for Extension of Time |

| 03-09-2012 | Certificate of Service |
| 11-18-2011 | Receipt of Petition in a Reexam |
| 11-18-2011 | Certificate of Service |
| 11-04-2011 | Receipt of Petition in a Reexam |
| 11-04-2011 | Certificate of Service |
| 11-04-2011 | RX - Concurrent Proceedings Notice |
| 11-04-2011 | Certificate of Service |
| 11-02-2011 | Correspondence Address Change |
| 11-01-2011 | Change in Power of Attorney (May Include Associate POA) |
| 11-01-2011 | Certificate of Service |
| 07-08-2011 | Information Disclosure Statement considered |
| 08-23-2011 | Notice of Reexam Published in Official Gazette |
| 07-15-2011 | Reexam Litigation Search Conducted |
| 07-14-2011 | Case docketed to examiner |
| 07-14-2011 | Case Docketed to Examiner in GAU |
| 07-12-2011 | Completion of pre-processing - released to TC |
| 07-12-2011 | Notice of reexamination request filing date |
| 07-12-2011 | Notice of assignment of reexamination request |
| 07-08-2011 | Reexamination requested by third party requester |
| 07-12-2011 | Title Report |
| 07-13-2011 | Reexamination Formalities Notice Mailed |
| 07-13-2011 | Reexamination Formalities Notice Mailed |
| 07-08-2011 | Information Disclosure Statement Filed |
| 07-08-2011 | Certificate of Service |
| 07-08-2011 | Receipt of Original Inter Partes Reexam Request |
| 07-08-2011 | Information Disclosure Statement (IDS) Filed |
| 07-08-2011 | Information Disclosure Statement (IDS) Filed |

If you need help:

- Contact the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov for specific questions about Patent Application Information Retrieval (PAIR).
- If you experience technical difficulties or problems with PAIR outside normal Patent Electronic Business Center hours (M-F, 6AM to 12AM ET), please call 1 800-786-9199.
- Send general questions about USPTO programs to the USPTO Contact Center (UCC) .



- Accessibility
- Privacy Policy
- Terms of Use
- Security
- Emergencies/Security Alerts
- Information Quality Guidelines

- Federal Activities Inventory Reform (FAIR) Act
- Notification and Federal Employee Antidiscrimination and Retaliation (NoFEAR) Act
- Budget & Performance
- Freedom of Information Act (FOIA)

- Department of Commerce NoFEAR Act Report
- Regulations.gov
- STOPIFakes.gov
- Department of Commerce
- USA.gov

- Strategy Targeting Organized Piracy (STOP!)
- Careers
- Site Index
- Contact Us
- USPTO Webmaster

http://portal.uspto.gov/pair/PublicPair[4/12/2015 11:40:27 AM]



## uspto.GOV

### Patent Application Information Retrieval

The United States Patent and Trademark Office
an agency of the Department of Commerce

| Home | Patents | Trademarks | Other |
|------|---------|------------|-------|

**Patent eBusiness**

- Electronic Filing
- Patent Application Information (PAIR)
- Patent Ownership
- Fees
- Supplemental Resources & Support

**Patent Information**

Patent Guidance and General Info
- Codes, Rules & Manuals
- Employee & Office Directories
- Resources & Public Notices

**Patent Searches**

Patent Official Gazette
- Search Patents & Applications
- Search Biological Sequences
- Copies, Products & Services

**Other**

Copyrights
Trademarks
Policy & Law
Reports

---

**Patent Application Information Retrieval**

ℹ Order Certified Application As Filed   Order Certified File Wrapper   🛒 View Order List

**95/001,697**   ESTABLISHMENT OF A SECURE COMMUNICATION LINK BASED ON A DOMAIN NAME SERVICE (DNS) REQUEST   **41484-80130**

| Select New Case | Application Data | Transaction History | Image File Wrapper | Continuity Data | Address & Attorney/Agent | Assignments | Display References |
|---|---|---|---|---|---|---|---|

## Transaction History

| Date | Transaction Description |
|------|-------------------------|
| 04-06-2015 | Certificate of Service |
| 04-06-2015 | Reexam - Opposition filed in response to petition |
| 03-23-2015 | Certificate of Service |
| 03-23-2015 | Receipt of Petition in a Reexam |
| 10-01-2014 | Information Disclosure Statement (IDS) Filed |
| 10-01-2014 | Information Disclosure Statement Filed |
| 10-01-2014 | Certificate of Service |
| 07-07-2014 | RX - Mail Petition Decision - Denied |
| 04-30-2014 | Reexam - Correspondence Address Change for Third Party Requester |
| 04-30-2014 | Certificate of Service |
| 04-21-2014 | Certificate of Service |
| 04-21-2014 | Receipt of Petition in a Reexam |
| 02-20-2014 | RX - Mail Petition Decision - Dismissed |
| 07-31-2013 | RX - Mail Petition Decision - Dismissed |
| 07-09-2013 | Certificate of Service |
| 07-09-2013 | Receipt of Petition in a Reexam |
| 06-10-2013 | Certificate of Service |
| 06-07-2013 | RX - Concurrent Proceedings Notice |
| 05-24-2013 | RX - Mail Petition Decision - Denied |
| 03-12-2013 | RX - Mail Petition Decision - Dismissed |
| 03-12-2013 | RX - Mail Petition Decision - Dismissed |
| 02-27-2013 | Certificate of Service |
| 02-27-2013 | Receipt of Petition in a Reexam |
| 02-22-2013 | Certificate of Service |
| 02-22-2013 | Reexam - Opposition filed in response to petition |
| 02-15-2013 | Certificate of Service |
| 02-15-2013 | Receipt of Petition in a Reexam |
| 01-24-2013 | RX - Mail Improper Letter Destroyed |
| 01-17-2013 | Certificate of Service |
| 01-17-2013 | Reexam - Opposition filed in response to petition |
| 01-11-2013 | Certificate of Service |
| 01-11-2013 | Receipt of Petition in a Reexam |
| 12-13-2012 | Certificate of Service |
| 12-13-2012 | Reexam - Opposition filed in response to petition |
| 12-06-2012 | Change in Power of Attorney (May Include Associate POA) |
| 12-05-2012 | Correspondence Address Change |
| 12-05-2012 | Certificate of Service |
| 12-05-2012 | Receipt of Petition in a Reexam |
| 12-03-2012 | Certificate of Service |
| 12-03-2012 | Change in Power of Attorney (May Include Associate POA) |
| 11-29-2012 | Certificate of Service |

| | |
|---|---|
| 11-29-2012 | Receipt of Petition in a Reexam |
| 10-26-2012 | Ready for Examiner Action after Nonfinal |
| 10-25-2012 | Certificate of Service |
| 10-25-2012 | Third Party Requester Comments after Non-final Action |
| 09-20-2012 | Information Disclosure Statement (IDS) Filed |
| 09-20-2012 | Information Disclosure Statement (IDS) Filed |
| 09-20-2012 | Information Disclosure Statement (IDS) Filed |
| 09-20-2012 | Information Disclosure Statement (IDS) Filed |
| 10-09-2012 | Certificate of Service |
| 10-09-2012 | Receipt of Petition in a Reexam |
| 09-27-2012 | Certificate of Service |
| 09-27-2012 | Receipt of Petition in a Reexam |
| 09-25-2012 | RX - Mail Petition Decision - Granted |
| 09-25-2012 | RX - Mail Petition Decision - Granted |
| 08-18-2012 | Ready for Examiner Action after Nonfinal |
| 08-17-2012 | Certificate of Service |
| 08-17-2012 | Third Party Requester Comments after Non-final Action |
| 08-17-2012 | Receipt of Petition in a Reexam |
| 07-20-2012 | Certificate of Service |
| 07-20-2012 | Response after non-final action - owner - timely |
| 07-20-2012 | Receipt of Petition in a Reexam |
| 04-25-2012 | Information Disclosure Statement (IDS) Filed |
| 04-25-2012 | Information Disclosure Statement (IDS) Filed |
| 05-08-2012 | Certificate of Service |
| 05-08-2012 | Request for Extension of Time |
| 04-20-2012 | Certificate of Service |
| 04-20-2012 | Receipt of Petition in a Reexam |
| 04-03-2012 | Receipt of Petition in a Reexam |
| 04-03-2012 | Certificate of Service |
| 11-21-2011 | Certificate of Service |
| 11-21-2011 | Receipt of Petition in a Reexam |
| 11-08-2011 | Certificate of Service |
| 11-07-2011 | Certificate of Service |
| 11-07-2011 | Receipt of Petition in a Reexam |
| 11-04-2011 | ReExam Litigation Found |
| 11-04-2011 | RX - Concurrent Proceedings Notice |
| 08-17-2011 | Case docketed to examiner |
| 08-17-2011 | Case Docketed to Examiner in GAU |
| 09-06-2011 | Notice of Reexam Published in Official Gazette |
| 08-09-2011 | Completion of pre-processing - released to TC |
| 08-10-2011 | Notice of assignment of reexamination request |
| 08-10-2011 | Notice of reexamination request filing date |
| 08-10-2011 | Reexamination Formalities Notice Mailed |
| 08-10-2011 | Reexamination Formalities Notice Mailed |
| 08-08-2011 | Title Report |
| 07-25-2011 | Reexam - Information Disclosure Statement Filed by Third Party Requester |
| 08-05-2011 | Reexam Litigation Search Conducted |
| 07-25-2011 | Receipt of Original Inter Partes Reexam Request |

If you need help:

- *Contact the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail* EBC@uspto.gov *for specific questions about Patent Application Information Retrieval (PAIR).*
- *If you experience technical difficulties or problems with PAIR outside normal Patent Electronic Business Center hours (M-F, 6AM to 12AM ET), please call 1 800-786-9199.*
- *Send general questions about USPTO programs to the* USPTO Contact Center (UCC) *.*

» Accessibility
» Privacy Policy
» Terms of Use
» Security

» Federal Activities Inventory Reform (FAIR) Act
» Notification and Federal Employee Antidiscrimination and Retaliation (NoFEAR) Act

http://portal.uspto.gov/pair/PublicPair[4/12/2015 11:51:14 AM]



» Emergencies/Security Alerts

» Information Quality Guidelines

» Department of Commerce NoFEAR
  Act Report

» Regulations.gov

» STOPIFakes.gov

» Department of Commerce

» USA.gov

» Budget & Performance

» Freedom of Information Act (FOIA)

» Strategy Targeting Organized Piracy
  (STOP!)

» Careers

» Site Index

» Contact Us

» USPTO Webmaster



**uspto**.GOV

**Patent Application Information Retrieval**

The United States Patent and Trademark Office
an agency of the Department of Commerce

| Home | Patents | Trademarks | Other |

### Patent eBusiness

- Electronic Filing
- Patent Application Information (PAIR)
- Patent Ownership
- Fees
- Supplemental Resources & Support

### Patent Information

Patent Guidance and General Info
- Codes, Rules & Manuals
- Employee & Office Directories
- Resources & Public Notices

### Patent Searches

Patent Official Gazette
- Search Patents & Applications
- Search Biological Sequences
- Copies, Products & Services

### Other

Copyrights
Trademarks
Policy & Law
Reports

**Patent Application Information Retrieval**

ⓘ Order Certified Application As Filed   Order Certified File Wrapper   🛒 View Order List

| 95/001,714 | ESTABLISHMENT OF A SECURE COMMUNICATION LINK BASED ON A DOMAIN NAME SERVICE (DNS) REQUEST | 43614.99 |

| Select New Case | Application Data | Transaction History | Image File Wrapper | Continuity Data | Address & Attorney/Agent | Assignments | Display References |

## Transaction History

| Date | Transaction Description |
|------|------------------------|
| 04-06-2015 | Certificate of Service |
| 04-06-2015 | Reexam - Opposition filed in response to petition |
| 03-23-2015 | Certificate of Service |
| 03-23-2015 | Receipt of Petition in a Reexam |
| 10-01-2014 | Information Disclosure Statement (IDS) Filed |
| 10-01-2014 | Information Disclosure Statement (IDS) Filed |
| 10-01-2014 | Information Disclosure Statement Filed |
| 10-01-2014 | Certificate of Service |
| 07-07-2014 | RX - Mail Petition Decision - Denied |
| 04-30-2014 | Reexam - Correspondence Address Change for Third Party Requester |
| 04-30-2014 | Certificate of Service |
| 04-21-2014 | Certificate of Service |
| 04-21-2014 | Receipt of Petition in a Reexam |
| 02-20-2014 | RX - Mail Petition Decision - Dismissed |
| 07-31-2013 | RX - Mail Petition Decision - Dismissed |
| 07-09-2013 | Certificate of Service |
| 07-09-2013 | Receipt of Petition in a Reexam |
| 06-10-2013 | Certificate of Service |
| 06-07-2013 | RX - Concurrent Proceedings Notice |
| 05-24-2013 | RX - Mail Petition Decision - Denied |
| 03-12-2013 | RX - Mail Petition Decision - Denied |
| 03-12-2013 | RX - Mail Petition Decision - Dismissed |
| 02-27-2013 | Certificate of Service |
| 02-27-2013 | Receipt of Petition in a Reexam |
| 02-22-2013 | Certificate of Service |
| 02-22-2013 | Reexam - Opposition filed in response to petition |
| 02-15-2013 | Certificate of Service |
| 02-15-2013 | Receipt of Petition in a Reexam |
| 01-24-2013 | RX - Mail Improper Letter Destroyed |
| 01-17-2013 | Certificate of Service |
| 01-17-2013 | Reexam - Opposition filed in response to petition |
| 01-11-2013 | Certificate of Service |
| 01-11-2013 | Receipt of Petition in a Reexam |
| 12-19-2012 | Reexam - Opposition filed in response to petition |
| 12-19-2012 | Certificate of Service |
| 12-13-2012 | Certificate of Service |
| 12-13-2012 | Reexam - Opposition filed in response to petition |
| 12-06-2012 | Change in Power of Attorney (May Include Associate POA) |
| 12-05-2012 | Certificate of Service |
| 12-05-2012 | Receipt of Petition in a Reexam |
| 12-03-2012 | Certificate of Service |

| Date | Description |
|------|-------------|
| 12-03-2012 | Change in Power of Attorney (May Include Associate POA) |
| 12-05-2012 | Correspondence Address Change |
| 11-29-2012 | Certificate of Service |
| 11-29-2012 | Receipt of Petition in a Reexam |
| 10-26-2012 | Ready for Examiner Action after Nonfinal |
| 10-25-2012 | Certificate of Service |
| 10-25-2012 | Third Party Requester Comments after Non-final Action |
| 10-09-2012 | Certificate of Service |
| 10-09-2012 | Receipt of Petition in a Reexam |
| 09-27-2012 | Certificate of Service |
| 09-27-2012 | Receipt of Petition in a Reexam |
| 09-25-2012 | RX - Mail Examiner Interview Summary Record |
| 09-26-2012 | Change in Power of Attorney (May Include Associate POA) |
| 09-25-2012 | Correspondence Address Change |
| 09-25-2012 | RX - Mail Examiner Interview Summary Record |
| 09-25-2012 | RX - Mail Petition Decision - Granted |
| 09-25-2012 | RX - Mail Petition Decision - Granted |
| 08-18-2012 | Ready for Examiner Action after Nonfinal |
| 08-17-2012 | Certificate of Service |
| 08-17-2012 | Third Party Requester Comments after Non-final Action |
| 08-17-2012 | Receipt of Petition in a Reexam |
| 07-31-2012 | Ready for Examiner Action after Nonfinal |
| 07-20-2012 | Certificate of Service |
| 07-20-2012 | Response after non-final action - owner - timely |
| 07-20-2012 | Receipt of Petition in a Reexam |
| 04-25-2012 | Information Disclosure Statement (IDS) Filed |
| 05-08-2012 | Certificate of Service |
| 05-08-2012 | Request for Extension of Time |
| 04-20-2012 | Certificate of Service |
| 04-20-2012 | Receipt of Petition in a Reexam |
| 04-03-2012 | Receipt of Petition in a Reexam |
| 04-03-2012 | Certificate of Service |
| 11-18-2011 | Receipt of Petition in a Reexam |
| 11-18-2011 | Reexam - Affidavit(s), Declaration(s) and/or Exhibit(s) Filed by Third Party Requester |
| 11-18-2011 | Certificate of Service |
| 11-18-2011 | Receipt of Petition in a Reexam |
| 11-18-2011 | Certificate of Service |
| 11-09-2011 | RX - Concurrent Proceedings Notice |
| 11-09-2011 | Receipt of Petition in a Reexam |
| 11-09-2011 | Certificate of Service |
| 11-09-2011 | Receipt of Petition in a Reexam |
| 11-09-2011 | Certificate of Service |
| 11-03-2011 | Change in Power of Attorney (May Include Associate POA) |
| 11-03-2011 | Correspondence Address Change |
| 11-01-2011 | Change in Power of Attorney (May Include Associate POA) |
| 11-01-2011 | Certificate of Service |
| 08-16-2011 | Information Disclosure Statement considered |
| 10-04-2011 | Notice of Reexam Published in Official Gazette |
| 08-26-2011 | Case docketed to examiner |
| 08-26-2011 | Case Docketed to Examiner in GAU |
| 08-26-2011 | Completion of pre-processing - released to TC |
| 08-26-2011 | Notice of assignment of reexamination request |
| 08-26-2011 | Notice of reexamination request filing date |
| 08-26-2011 | Title Report |
| 08-17-2011 | Reexam Litigation Search Conducted |
| 08-16-2011 | Information Disclosure Statement Filed |
| 08-16-2011 | Certificate of Service |
| 08-16-2011 | Reexamination requested by third party requester |
| 08-29-2011 | Reexamination Formalities Notice Mailed |

| 08-29-2011 | Reexamination Formalities Notice Mailed |
| 08-16-2011 | Receipt of Original Inter Partes Reexam Request |
| 08-16-2011 | Information Disclosure Statement (IDS) Filed |

*If you need help:*

- *Contact the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail* [EBC@uspto.gov](mailto:EBC@uspto.gov) *for specific questions about Patent Application Information Retrieval (PAIR).*
- *If you experience technical difficulties or problems with PAIR outside normal Patent Electronic Business Center hours (M-F, 6AM to 12AM ET), please call 1 800-786-9199.*
- *Send general questions about USPTO programs to the* [USPTO Contact Center (UCC)](#) *.*



- [Accessibility](#)
- [Privacy Policy](#)
- [Terms of Use](#)
- [Security](#)
- [Emergencies/Security Alerts](#)
- [Information Quality Guidelines](#)

- [Federal Activities Inventory Reform (FAIR) Act](#)
- [Notification and Federal Employee Antidiscrimination and Retaliation (NoFEAR) Act](#)
- [Budget & Performance](#)
- [Freedom of Information Act (FOIA)](#)

- [Department of Commerce NoFEAR Act Report](#)
- [Regulations.gov](#)
- [STOPIFakes.gov](#)
- [Department of Commerce](#)
- [USA.gov](#)

- [Strategy Targeting Organized Piracy (STOPI)](#)
- [Careers](#)
- [Site Index](#)
- [Contact Us](#)
- [USPTO Webmaster](#)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

           Plaintiffs,

    v.

POWER INTEGRATIONS, INC.,

           Defendant.

C.A. No. 12-540-LPS

**Highly Confidential**

### FAIRCHILD'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1
### TO PRECLUDE ANY REFERENCE TO ANY PENDING
### REEXAMINATION PROCEEDING OR COMPLETED REEXAMINATION
### OF ANY ASSERTED PATENT

Counsel for Plaintiffs

Blair M. Jacobs
Christina A. Ondrick
PAUL HASTINGS LLP
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

Dated: April 17, 2015

The Federal Circuit has rejected the same argument PI makes here.  In *VirnetX*, the Court upheld a district court's exclusion of incomplete reexam results and confirmed the extreme prejudice caused by the introduction of an ***incomplete*** reexam, even where an accused infringer purports to rely upon the reexam to support a defense to inducement under *Commil*.  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1324-25 (Fed. Cir. 2014).  As *VirnetX* cautioned, "the court's precedent has often warned of the ***limited value*** of actions by the PTO when used for" the purpose of "negating the requisite intent for inducement."  *Id.* (emphasis added).  Here, as with all non-final PTO proceedings, the pending reexam of the '972 patent has little to no probative value, with a statistically significant likelihood of a different result from the Patent Board or Federal Circuit on appeal.  Any probative value of the reexam is substantially outweighed by the risk of unfair prejudice to Fairchild, the potential for confusion about the validity of the patent, and likelihood of misleading the jury.  The reexam should thus be excluded under FRE 403.

Moreover, introduction of the reexam would result in a mini trial contrasting the reexam with the *Fairchild II* jury finding of validity and this Court's JMOL ruling that substantial evidence supported that validity verdict.  Lengthy explanations of the different standards of proof applied by the Patent Office and courts would also be necessary, resulting in yet further confusion.  PI's contention that only recently initiated reexams are excludable is legally incorrect.  *SRI Int'l Inc. v. Internet Sec. Sys., Inc.*, 647 F. Supp. 2d 323, 356 (D. Del. 2009) ("non-final decisions made during reexamination are not binding, moreover, they are more prejudicial (considering the overwhelming possibility of jury confusion) than probative of validity," defining "non-final" as "[d]ecisions not vetted by the Federal Circuit").

As for the '366 patent, eliminating any reference to the fact of a "reexamination" avoids the incorrect suggestion the patent is entitled to a greater presumption of validity.

Dated: April 17, 2015

ASHBY & GEDDES

/s/ *John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

PAUL HASTINGS LLP
Blair M. Jacobs
Christina A. Ondrick
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

*Attorneys for Plaintiffs*

EXHIBIT 6B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

　　　　　　　Plaintiffs,

　　v.

POWER INTEGRATIONS, INC.,

　　　　　　　Defendant.

C.A. No. 12-540-LPS

**Highly Confidential**

---

**FAIRCHILD'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE LAY WITNESS
TESTIMONY ON ULTIMATE ISSUES OF INFRINGEMENT AND VALIDITY**

Counsel for Plaintiffs


Blair M. Jacobs
Christina A. Ondrick
PAUL HASTINGS LLP
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

Dated: April 10, 2015

Fairchild Semiconductor Corporation and Fairchild (Taiwan) Corporation ("Fairchild") move *in limine* to preclude Power Integrations from eliciting testimony from lay witnesses, including the inventors of the asserted patents, on the ultimate issues in this case.  The inventors of the asserted patents, Mr. Balakrishnan, Mr. Matthews, Mr. Kung, Mr. Weirich and Mr. Yang, are all lay witnesses and cannot testify on legal issues, such as claim scope, infringement and validity.  Such testimony has little probative value, as their subjective belief on these issues has no bearing on the ultimate issues in this case, no probative value, and is unfairly prejudicial to Fairchild as the jury will likely afford their testimony greater weight and be confused.

The Court should preclude Power Integrations from eliciting testimony on the ultimate issues of validity and infringement from its executive, Mr. Balakrishnan, and the inventors of its asserted patents.  Past practice demonstrates that Power Integrations will likely attempt to elicit opinion testimony from Mr. Balakrishnan on the ultimate issues of infringement and validity in this case.  For example, in the parties' previous case, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Case No. 09-cv-05235 (N.D. Cal.) (*Fairchild IV*), Mr. Balakrishnan testified in great detail that Power Integrations' asserted patents were valid over the alleged prior art based upon his opinion that they were "totally different."  (Ex. A at 2718:6-2722:4.) Similarly, Mr. Balakrishnan testified Fairchild infringed Power Integrations' patent and its counsel emphasized the jury should decide whether to credit Mr. Balakrishnan or Fairchild's technical expert as this was "a credibility issue."  (*Id*. at 3116:13-3117:7, 3102:22-3103:6.)  As such, Power Integrations has proven it intends to elevate Mr. Balakrishnan's testimony to that of an expert without properly certifying him as an expert.  The Court should exclude any such opinions.

As a lay witness, Mr. Balakrishnan may only testify regarding matters about which he has

personal knowledge personally perceived.  Fed. R. Evid. 602; Fed. R. Evid 701.  Legal opinions

on the ultimate issue of infringement or validity are beyond this scope and the Court should

exclude any such opinions.  Power Integrations never disclosed Mr. Balakrishnan as an expert

witness or submitted an expert report for him; any effort to now repackage his testimony as that

of an expert should be precluded.  This limitation should also preclude Mr. Balakrishnan from

offering opinions comparing the accused devices to the asserted patents, including Power

Integrations' and Fairchild's patents.  *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701,

714 (Fed. Cir. 2005) (affirming district court's exclusion of inventor's testimony regarding the

operation of the accused product for being improper expert testimony).  That Mr. Balakrishnan is

the named inventor of several patents in suit "does not necessarily mean he also has

particularized knowledge and experience in the structure and workings of the accused device."

*Id.* (upholding district court's exclusion of inventor's improper expert testimony about accused

devices); *see also Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1340 (Fed.

Cir. 2010) (affirming the district court's decision to "limit[] inventor testimony to factual

testimony that did not require expert opinion").  Moreover, neither Mr. Weirich nor Mr. Yang

has familiarity with the Court's claim construction, so their testimony on the meaning of legal

terminology in the patents is partial, unhelpful and confusing to the jury.  Power Integrations

already has a technical expert for its asserted patents, Dr. Kelley, who will offer testimony on the

infringement and validity of these patents.  The Court should not allow Power Integrations to

submit Mr. Balakrishnan and Dr. Kelley as two purported experts on the exact same subject

matter at trial.

Similarly, Power Integrations apparently intends to elicit testimony from the inventors of

Fairchild's asserted patents on the ultimate issues of infringement and validity.  For example,

2

Power Integrations' expert, Dr. Kelley, relies on the deposition testimony of Mr. Weirich and Mr. Yang as purportedly confirming that alleged prior art references disclose each claim limitation.  (*See, e.g.*, Ex. B at Exhibit 4.)  However, Mr. Weirich and Mr. Yang are lay witnesses and cannot testify on validity of the patent or the scope of the claim limitation, and their subjective belief on claim scope has no bearing these issues.  *Verizon Servs. Corp.*, 602 F.3d at 1340.  As such, the Court should preclude Power Integrations from eliciting testimony, whether live or through deposition designation, from Mr. Weirich and Mr. Yang on validity or infringement of Fairchild's asserted patents.

In addition to lacking probative value, lay witness testimony on the ultimate issue of infringement and validity is unfairly prejudicial.  As the Supreme Court noted in *Daubert*, "[e]xpert evidence can be both ***powerful*** and quite ***misleading*** because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (emphasis added).  Power Integrations' attempt to circumvent the Court's gatekeeping role by eliciting ***expert*** testimony from the fact witnesses, including inventors, will assuredly result in jury confusion and prejudice Fairchild.  The jurors will likely believe that an inventor has the same credentials as an expert witness and so must be an authority on infringement and validity.  This is clearly not legally permissible and the Court must preclude such testimony.

For the foregoing reasons, Fairchild respectfully requests that the Court preclude Power Integrations from eliciting testimony from lay witnesses, including the inventors of the asserted patents, on the ultimate issues of infringement and validity in this case.

Dated: April 10, 2015

ASHBY & GEDDES

/s/ *John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

PAUL HASTINGS LLP
Blair M. Jacobs
Christina A. Ondrick
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

*Attorneys for Plaintiffs*

# EXHIBIT A

VOLUME 11

PAGES 2506 - 2813

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MAXINE M. CHESNEY, JUDGE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| A DELAWARE CORPORATION, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. C 09-05235 MMC |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| INTERNATIONAL, INC., A | ) | |
| DELAWARE CORPORATION, ET AL. | ) | |
| | ) | |
| DEFENDANTS. | ) | SAN FRANCISCO, CALIFORNIA |
| _____ | ) | TUESDAY, FEBRUARY 25, 2014 |

TRANSCRIPT OF TRIAL PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:            FISH & RICHARDSON, P.C.
                         500 ARGUELLO STREET, SUITE 500
                         REDWOOD CITY, CALIFORNIA  94063
                    BY:  FRANK SCHERKENBACH, ESQ.
                         HOWARD G. POLLACK, ESQ.
                         MICHAEL R. HEADLEY, ESQ.
                         ENRIQUE DUARTE, ESQ.
                         JONATHAN J. LAMBERSON, ESQ.


REPORTED BY:             BELLE BALL, CSR #8785, CRR, RDR
                         OFFICIAL REPORTER, U.S. DISTRICT COURT


(APPEARANCES CONTINUED, NEXT PAGE)

## Page 2716

```
02:23:55   1   ORIGINALLY I UNDERSTOOD THAT NO DEMONSTRATIVE WOULD BE SHOWN,
           2   SO TO SPEAK -- AND THIS IS A DEMONSTRATIVE, IN SO MANY
           3   WORDS -- WITHOUT IT BEING APPROVED IN ADVANCE OR GETTING
           4   APPROVAL TO SHOW
02:24:10   5       AND I ASSUME IT IS BEING OBJECTED TO NOT BECAUSE OF HOW
           6   IT MIGHT HAVE BEEN USED AT SOME POINT, IF IT WAS USED EARLIER,
           7   BUT BECAUSE IT IS BEING USED NOW
           8       MR. JACOBS:  EXACTLY, YOUR HONOR
           9       THE COURT:  WELL --
02:24:21  10       MR. SCHERKENBACH:  IT WAS DISCLOSED
          11       THE COURT:  OKAY
          12       MR. JACOBS:  AND WE OBJECTED TO IT
          13       MR. SCHERKENBACH:  NO
          14       MR. JACOBS:  YES, WE DID
02:24:25  15       THE COURT:  WELL, THAT I DON'T REMEMBER
          16       MR. JACOBS:  WE DID  WE SAID --
          17       THE COURT:  WAIT A SECOND  ALL RIGHT
          18       MR. SCHERKENBACH:  I'LL DO IT WITHOUT THE
          19   DEMONSTRATIVE, YOUR HONOR
02:24:32  20       THE COURT:  OKAY
          21       MR. SCHERKENBACH:  WE CAN'T GET IT --
          22       THE COURT:  LET'S TAKE DR. WEI DOWN
          23   (DOCUMENT TAKEN OFF DISPLAY)
          24       MR. SCHERKENBACH:  OKAY
02:24:37  25       THE COURT:  ALL RIGHT  AT LEAST IN PICTORIAL FORM
```

## Page 2717

```
02:24:40   1   HERE, AND NOW YOU CAN KEEP GOING
           2       MR. SCHERKENBACH:  RIGHT  LET ME JUST ASK THE
           3   QUESTION
           4       THE COURT:  ALL RIGHT
02:24:43   5   BY MR. SCHERKENBACH:
           6   Q  YOU HAVE BEEN HERE THROUGHOUT THE TRIAL  YES?
           7   A  YES  I HAVE BEEN HERE FROM THE BEGINNING
           8   Q  HAVE YOU HEARD TESTIMONY SUGGESTING THAT YOUR '908 PATENT
           9   DOESN'T COVER THE CIRCUITS SHOWN IN THE PATENT?
02:24:57  10   A  YES
          11   Q  HAS ANYONE EVER SUGGESTED THAT TO YOU PRIOR TO THIS
          12   LAWSUIT?
          13   A  NO
          14   Q  DID YOU HEAR TESTIMONY IN THIS CASE THAT YOUR PATENT
02:25:07  15   DOESN'T COVER THE CHIPS THAT YOU BUILT IMPLEMENTING YOUR
          16   PATENT?
          17   A  YES
          18   Q  HAVE YOU EVER HEARD ANYONE SUGGEST THAT TO YOU BEFORE THIS
          19   CASE?
02:25:16  20   A  NO
          21   Q  BASED ON WHAT YOU'VE HEARD SO FAR IN THIS CASE, DO YOU
          22   HAVE ANY REASON TO DOUBT THAT YOU -- THAT YOUR CIRCUITS
          23   DISCLOSED IN YOUR PATENT AND THE CHIPS YOU BUILT TO IMPLEMENT
          24   YOUR PATENT, IN FACT, ARE COVERED BY YOUR PATENT?
02:25:34  25   A  YES  OF COURSE  THAT'S THE WHOLE REASON FOR FILING A
```

## Page 2718

```
02:25:37   1   PATENT
           2   Q  NOW, THERE'S ALSO BEEN SOME TESTIMONY IN THIS CASE ABOUT
           3   THE VALIDITY OF YOUR '908 PATENT  DO YOU REMEMBER THAT?
           4   A  YES
02:25:51   5   (DOCUMENT DISPLAYED)
           6   Q  ALL RIGHT  AND, HOW MANY TIMES HAS THE PATENT OFFICE
           7   LOOKED AT THE VALIDITY OF YOUR '908 PATENT?
           8   A  ACTUALLY, THREE TIMES  THE FIRST TIME IS WHEN WE FILED
           9   FOR THE PATENT  THE PATENT OFFICE REVIEWED ALL OF THE
02:26:08  10   MATERIAL WE SENT THEM, INCLUDING REFERENCES   AND THEY ISSUED
          11   THE PATENT  AND AFTER THAT, IT WAS REEXAMINED TWICE
          12   Q  AND THE RESULT?
          13   A  OH, THE RESULT WAS THEY CONFIRMED IT  IN FACT, I BELIEVE
          14   IN THIS CASE, THERE WERE MORE THAN 150 REFERENCES ALONG WITH
02:26:28  15   ARGUMENTS THAT THE PATENT OFFICE CONSIDERED BEFORE CONFIRMING
          16   THAT THIS PATENT IS VALID, ONCE AGAIN  TWICE AGAIN
          17   Q  AND WERE YOU HERE FOR DR. WEI'S DISCUSSION OF THIS BARROW
          18   PATENT WHICH HE SAYS ANTICIPATES YOUR '908 PATENT?
          19   (DOCUMENT DISPLAYED)
02:26:46  20   A  YES, I WAS
          21   Q  DID HEARING HIS TESTIMONY CAUSE YOU COULD TO QUESTION IN
          22   ANY WAY IN YOUR MIND THE VALIDITY OF YOUR '908 PATENT?
          23       MR. JACOBS:  OBJECTION, YOUR HONOR  LAY OPINION
          24   CONTRASTING WITH AN EXPERT OPINION ON CLAIM CONSTRUCTION,
02:27:00  25   LEGAL ISSUES
```

## Page 2719

```
02:27:02   1       THE COURT:  WELL, I THINK IT MAY BE JUST AN
           2   ARGUMENTATIVE QUESTION  I'LL SUSTAIN ON THOSE GROUNDS
           3       MR. JACOBS:  THANK YOU
           4       THE COURT:  IN OTHER WORDS, OTHERWISE YOU CAN JUST
02:27:13   5   ASK HIM OF EVERY WITNESS THAT TESTIFIED CONTRARY TO THE
           6   POSITION BEING TAKEN BY POWER INTEGRATIONS
           7   "DO YOU AGREE WITH IT?"
           8   "NO "
           9   "DID YOU HEAR WHAT THEY SAID?"
02:27:24  10   BY MR. SCHERKENBACH:
          11   Q  ALL RIGHT  SO YOU HEARD DR. WEI'S TESTIMONY  RIGHT?
          12   A  YES, I DID
          13   Q  ABOUT HIM SAYING, IN HIS OPINION, YOUR '908 PATENT IS
          14   ANTICIPATED BY THIS BARROW PATENT  RIGHT?
02:27:32  15   A  YES  I HEARD THAT
          16   Q  DO YOU AGREE?
          17   A  NO  I DON'T
          18       MR. JACOBS:  OBJECTION, YOUR HONOR  OBJECTION
          19       THE COURT:  YES  THAT'S WHAT I MEANT  YOU CAN'T DO
02:27:37  20   THAT
          21       MR. JACOBS:  YES  COMPLETELY IMPROPER  COMPLETELY
          22   IMPROPER
          23       THE COURT:  EXCUSE ME  I'M GOING TO SUSTAIN THE
          24   OBJECTION  KEEPING IN MIND THIS IS REBUTTAL, ALSO
02:27:48  25   THE QUESTIONS REALLY SHOULD BE IF SOMEBODY'S TESTIFIED TO
```

## Page 2720

02:27:52 1 SOME FACT THAT THIS WITNESS CAN DISAGREE WITH AS A FACT AS
2 OPPOSED TO AN OPINION  I THINK THAT THAT -- OBVIOUSLY, HE
3 DISAGREES WITH ANYBODY'S OPINION THAT THINKS HIS PATENT IS
4 INVALID
02:28:06 5    BUT, THAT'S GOING TO HAVE TO BE LEFT TO CLOSING ARGUMENT,
6 AND NOT USE THE WITNESSES FOR THAT PURPOSE
7    MR SCHERKENBACH:  ALL RIGHT
8 BY MR SCHERKENBACH:
9 Q  HAVE YOU -- HAVE YOU REVIEWED THE BARROW PATENT?
02:28:19 10 A  YES, I HAVE
11 Q  INCLUDING THE PART THAT DR  WEI RELIED ON?
12 A  YES I HAVE
13 Q  DO YOU AGREE THAT THE BARROW PATENT DISCLOSES WHAT DR  WEI
14 SAYS IT DISCLOSES?
02:28:42 15    THE COURT:  EXCUSE ME  THERE'S NO POINT IN RUSHING
16 UP HERE TO THE PODIUM, MR  JACOBS  ALL RIGHT
17    MR  JACOBS:  JUST WANTED TO MAKE SURE I CAN BE HEARD,
18 YOUR HONOR
19    THE COURT:  OH, I CAN HEAR YOU FINE ALMOST ANYWHERE
02:28:52 20 IN THE COURTROOM
21    MR  JACOBS:  THANK YOU
22    MR  JACOBS  OKAY  NOW, THE QUESTION --
23 IT IS VERY DISTRACTING IF SOMEBODY RUNS UP IN THE MIDDLE OF A
24 QUESTION
02:29:01 25    MR  JACOBS:  SURE

## Page 2721

02:29:02 1    THE COURT:  OKAY  SO LET ME JUST SEE HERE WHAT THE
2 QUESTION WAS  IF I CAN READ IT IN ITS -- WHATEVER FORM IT WAS
3 IN
4    WELL, WE'RE BACK TO "DO YOU AGREE?"
02:29:18 5    I THINK THE QUESTION IS NOT WHETHER HE AGREES  IF HE CAN
6 SHOW WHY HIS INVENTION IS DIFFERENT  YOU MIGHT BE ABLE TO ASK
7 HIM WHY THERE'S A DIFFERENCE THAT HASN'T BEEN POINTED OUT, IF
8 HE IS ABLE TO DO THAT  BUT JUST, IF YOU AGREE, NO, HE
9 DOESN'T  OKAY
02:29:37 10    MR SCHERKENBACH:  ALL RIGHT
11 BY MR SCHERKENBACH:
12 Q  DO YOU BELIEVE YOUR INVENTION IS DIFFERENT FROM WHAT'S
13 SHOWN IN THE BARROW PATENT?
14 A  YES  IT IS TOTALLY DIFFERENT
02:29:43 15 Q  WHY?
16 A  THIS IS ACTUALLY A POWER FACTOR CORRECTION CIRCUIT, WHICH
17 IS, YOU KNOW, WELL KNOWN  AND IT USES A MULTIPLIER TO
18 MULTIPLY TWO QUANTITIES  AND A MULTIPLIER IS NOT A
19 MULTI-FUNCTION CIRCUIT, JUST BECAUSE IT HAS "MULTI" IN FRONT
02:30:01 20 OF IT
21 A MULTI-FUNCTION CIRCUIT HAS MULTIPLE FUNCTIONS  THE ONLY
22 FUNCTION THIS MULTIPLIER HAS IS MULTIPLICATION  SO THAT'S ONE
23 POINT
24 NUMBER TWO:  THERE IS NO CURRENT LIMIT ADJUSTMENT GOING ON
02:30:13 25 HERE  THIS IS -- THIS IS CLOSED LOOP CONTROL OF POWER FACTOR

## Page 2722

02:30:19 1 CORRECTION, SO THERE IS NO CURRENT LIMIT ADJUSTMENT
2 FOR THOSE TWO REASONS I BELIEVE THIS -- THIS IS NOT EVEN
3 RELATED TO WHAT WE DO IN '908 PATENT  AND I THINK EVEN
4 DR  WEI AGREED THAT THERE WAS ONLY ONE FUNCTION
02:30:35 5 Q  LET'S GO ON TO YOUR '079 PATENT
6    (DOCUMENT DISPLAYED)
7 Q  THIS IS THE FREQUENCY REDUCTION PATENT, RIGHT?
8 A  YES
9 Q  REMIND US OF THE FIRST POWER INTEGRATIONS PRODUCT THAT IN
02:30:49 10 YOUR UNDERSTANDING USED THE '079 PATENT
11 A  IT'S THE TOPSWITCH-GX
12 Q  TOPSWITCH-GX?
13    (DOCUMENT DISPLAYED)
14 A  YES
02:30:58 15 Q  IS THAT WHAT WE ARE SHOWING HERE ON PD1114?
16 A  YES  THIS IS THE DATASHEET OF TOPSWITCH-GX WHICH TALKS
17 ABOUT THE BENEFITS OF THE '079 PATENT
18 Q  AND HOW DOES THE IMPLEMENTATION OF YOUR INVENTION IN THE
19 '079 -- EXCUSE ME -- IN TOPSWITCH-GX COMPARE TO THE EXAMPLES
02:31:19 20 IN THE '079 PATENT ITSELF?
21 A  IT'S ACTUALLY THE SAME CIRCUIT  WE FIRST IMPLEMENTED THE
22 INVENTION IN THE TOPSWITCH-GX, AND WE TOOK THAT CIRCUIT AND
23 FILED THE PATENT BASED ON THE CIRCUIT
24    SO THAT EXACT CIRCUIT IS SHOWN IN THE '079 PATENT
02:31:38 25 Q  OKAY  AND WE'RE SHOWING HERE ON PD 1115, OR ASK YOU, WHAT

## Page 2723

02:31:45 1 ARE WE SHOWING ON PD 1115?
2 A  WELL, ON THE RIGHT-HAND SIDE YOU HAVE THE '079 PATENT
3 SHOWING THE TWO REGIONS, THE FIXED FREQUENCY REGION AND A
4 VARIABLE FREQUENCY REGION, WHICH IS A LIGHT LOAD REGION, AND
02:31:56 5 THE THIRD REGION, WHICH IS THE CYCLE-SKIPPING REGION
6    (DOCUMENT DISPLAYED)
7 A  THAT EXACT FIGURE IS SHOWN IN THE TOPSWITCH-GX DATASHEET
8 AND , THIS FUNCTIONALITY GIVES YOU THE BENEFIT OF INCREASED
9 EFFICIENCY AT LIGHT LOAD  IT GIVES YOU THE BENEFIT OF NO
02:32:14 10 AUDIBLE NOISE  IT ALSO GIVES YOU THE BENEFIT OF LOW RIPPLE ON
11 THE OUTPUT
12 Q  REMIND US, DOES THE INVENTION DISCLOSURE FORM FOR YOUR
13 '079 INVENTION REFER TO ANY PARTICULAR PRODUCT?
14 A  IT ACTUALLY REFERS TO THE TOPSWITCH-GX PRODUCT, BECAUSE
02:32:31 15 THAT'S WHERE IT CAME FROM
16    (DOCUMENT DISPLAYED)
17 Q  AND IS THAT WHAT WE ARE LOOKING AT ON PD1116 HERE?
18 A  YES
19 Q  NOW, IN ADDITION, TO THE FREQUENCY REDUCTION FEATURE, DOES
02:32:44 20 THE TOP-DX INCLUDE YOUR OTHER INVENTION, AS WELL, THE '908?
21 A  YES, IT DOES
22    (DOCUMENT DISPLAYED)
23 Q  AND, ON -- ACTUALLY, ONE OTHER QUESTION ON THE GX  SO,
24 YOUR TOPSWITCH-GX PART, IT HAS JITTER  IS THAT RIGHT?
02:33:06 25 A  YEAH  IT HAS FIXED FREQUENCY WITH JITTER

Page 2812

1                    INDEX
2    PLAINTIFF'S WITNESSES            PAGE  VOL
3    PUTNAM, JONATHAN
     (RECALLED)                      2576   11
4    CROSS EXAMINATION BY MR  WALTERS      2576   11
     REDIRECT EXAMINATION BY MR  HEADLEY    2605   11
5    RECROSS EXAMINATION BY MR  WALTERS     2617   11
6    BALAKRISHNAN, BALU
     (RECALLED)                      2708   11
7    DIRECT EXAMINATION BY MR  SCHERKENBACH   2708   11
     CROSS EXAMINATION BY MR  JACOBS        2740   11
8    REDIRECT EXAMINATION BY MR  SCHERKENBACH  2760   11
     RECROSS EXAMINATION BY MR  JACOBS      2765   11
9
     MATTHEWS, DAVID MICHAEL HUGH
10   (SWORN)                         2767   11
     DIRECT EXAMINATION BY MR  POLLACK     2767   11
11
12   DEFENDANT'S WITNESSES           PAGE  VOL
     WOOD, PH D , JONATHAN R
13   (RECALLED)                      2530   11
     CROSS EXAM RESUMED BY MR  POLLACK     2530   11
14   REDIRECT EXAMINATION BY MR  MARTINSON    2563   11
     RECROSS EXAMINATION BY MR  POLLACK     2571   11
15
16   MALACKOWSKI, JAMES
     (SWORN)                         2620   11
17   DIRECT EXAMINATION BY MR  WALTERS      2620   11
     CROSS EXAMINATION BY MR  HEADLEY      2674   11
18   REDIRECT EXAMINATION BY MR  WALTERS     2707   11
19   JOINTLY-DESIGNATED TESTIMONY
20   TOMLIN, JOHN
     VIDEOTAPED DEPOSITION TESTIMONY PLAYED   2573   11
21
     RENOUARD, BRUCE
22   VIDEOTAPED DEPOSITION TESTIMONY PLAYED   2574   11
23
24
25

Page 2813

1
           E X H I B I T S
2
3    TRIAL EXHIBITS          IDEN  VOL  EVID  VOL
4    5354                    2561   11
     3488                    2574   11
5    5642                    2649   11
     2469                    2650   11
6    5482                    2650   11
     4911                    2662   11
7    3794                    2666   11
     3923                    2666   11
8    5465                    2666   11
     5843                    2673   11
9    5844                    2673   11
     1776                    2684   11
10   4872                    2688   11
     5472                    2697   11
11   1560                    2734   11
     1737                    2734   11
12   1738                    2734   11
     2450                    2751   11
13   2458                    2754   11
14
15
16
17
18
19
20
21
22
23
24
25

Page 2014

CERTIFICATE OF REPORTER

I, BELLE BALL, OFFICIAL REPORTER FOR THE UNITED

STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF

PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

/S/ BELLE BALL,_____

WEDNESDAY , FEBRUARY 26,

BELLE BALL, CSR 8785, CRR, RDR

VOLUME 13

PAGES 3079 - 3317

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MAXINE M. CHESNEY, JUDGE

```
POWER INTEGRATIONS, INC.,   )
A DELAWARE CORPORATION,     )
                            )
          PLAINTIFF,        )
                            )
   VS.                      )        NO. C 09-05235 MMC
                            )
FAIRCHILD SEMICONDUCTOR     )
INTERNATIONAL, INC., A      )
DELAWARE CORPORATION, ET AL.)
                            )
          DEFENDANTS.       )    SAN FRANCISCO, CALIFORNIA
_____)    THURSDAY, FEBRUARY 27, 2014
```

TRANSCRIPT OF TRIAL PROCEEDINGS

APPEARANCES:

```
FOR PLAINTIFF:           FISH & RICHARDSON, P.C.
                         500 ARGUELLO STREET, SUITE 500
                         REDWOOD CITY, CALIFORNIA  94063
                   BY:   FRANK SCHERKENBACH, ESQ.
                         HOWARD G. POLLACK, ESQ.
                         MICHAEL R. HEADLEY, ESQ.
                         ENRIQUE DUARTE, ESQ.
                         JONATHAN J. LAMBERSON, ESQ.
                         NEIL A. WARREN, ESQ.

REPORTED BY:             BELLE BALL, CSR #8785, CRR, RDR
                         OFFICIAL REPORTER, U.S. DISTRICT COURT
```

(APPEARANCES CONTINUED, NEXT PAGE)

Page 3101

09:24:06 1         AND SO HERE ARE A FEW THINGS I TRIED TO SINGLE OUT TO HELP

2    YOU MAKE SENSE OF THE EXPERTS

3    FIRST, DR. KELLEY, HE IS AN EXPERT IN SWITCHED MODE POWER

4    SUPPLY INTEGRATED CIRCUIT DESIGN.  HE HAS DESIGNED EXACTLY THE

09:24:25 5    SORT OF CHIPS THAT ARE AT ISSUE IN THIS CASE.  HE DID IT FOR

6    SEVEN YEARS AT A COMPANY CALLED "LINEAR TECHNOLOGY," WHICH

7    MAKES SWITCHING REGULATORS.  THREE OF HIS PRODUCTS ACTUALLY

8    ENDED UP SELLING IN COMMERCIAL VOLUMES DURING THE TIME HE WAS

9    THERE.

09:24:45 10    I SUBMIT TO YOU, THAT'S SORT OF AN IMPORTANT QUALIFICATION

11    IN A CASE THAT'S ABOUT SWITCHING CONTROLLER ICS.  OKAY?

12    NOW, DR. WEI, DR. WOOD, NEVER.  THEY'RE NOT IC DESIGN

13    PEOPLE.  NOW, DOES THAT MEAN YOU SHOULD INSTANTLY DISCOUNT

14    EVERYTHING THEY HAVE TO SAY?  NO.  BUT YOU CAN TAKE IT INTO

09:25:09 15    ACCOUNT.  AND YOU MIGHT ASK YOURSELF:  GEE, YOU KNOW,

16    DR. KELLEY, HE TALKED A LOT ABOUT THE SCHEMATICS FOR THE

17    PARTS.  AND HE DID.  BECAUSE, YOU KNOW WHAT?  I'M GOING TO GET

18    TO THIS LATER, TOO, BUT EVEN FAIRCHILD'S WITNESSES ACKNOWLEDGE

19    THE SCHEMATICS ARE THE BLUEPRINTS FOR THESE CHIPS.

09:25:32 20    YOU WANT TO KNOW HOW ONE OF THESE CHIPS WORKS?  IT'S IN

21    THE SCHEMATICS.  YOU WANT TO KNOW HOW YOUR HOUSE IS BUILT?

22    YOU WANT TO KNOW WHERE THE PLUMBING IS, WHERE THE WIRING IS?

23    IT'S IN THE BLUEPRINTS.  AND, DR. KELLEY DESIGNS AND BUILDS

24    DR. WEI, DR. WOOD, ZERO DISCUSSION OF A SCHEMATIC IN THIS

09:25:57 25    CASE.  ZERO.  THE CLOSEST THEY GOT WAS PUTTING UP A

Page 3102

09:26:01 1    DEMONSTRATIVE SAYING "THERE'S A SCHEMATIC.  TRUST ME, I LOOKED

2    AT IT."  NO ANALYSIS OF THE SCHEMATICS WAS PRESENTED TO YOU.

3    ALL RIGHT.  SOME OF THESE OTHER THINGS (INDICATING), IN

4    SUMMARY FASHION.  DR. KELLEY, HE NOT ONLY SHOWED YOU THE

09:26:20 5    SCHEMATICS, HE SHOWED YOU THE DATASHEETS AND HOW THEY WERE

6    CONSISTENT WITH HIS OPINIONS.

7    WHERE HE THOUGHT TESTING WAS EVEN, YOU KNOW, NECESSARY, HE

8    DID HIS OWN.  BUT THE ONLY PLACE HE DID HIS OWN WAS IN

9    RESPONSE TO DR. WOOD'S TESTING WHEN DR. WOOD CREATED NEW POWER

09:26:39 10    SUPPLIES THAT THE WORLD HAD NEVER SEEN BEFORE.  RIGHT?

11    SO WHY IS IT THAT DR. KELLEY DIDN'T REALLY DO HIS OWN

12    AFFIRMATIVE TESTING AND FAIRCHILD'S WITNESSES RELY ON ALL

13    THIS -- ON ALL THE TESTING THEY DID?  WELL, THERE IS A VERY

14    SIMPLE ANSWER FOR THAT.  BECAUSE, THEY DID TESTING SPECIALLY

09:26:55 15    FOR PURPOSES OF LITIGATION.  THEY HAD TO.  WE DIDN'T.  BECAUSE

16    IF YOU LOOK AT THE DATASHEETS AND YOU LOOK AT THE SCHEMATICS

17    AND YOU LOOK AT THE APPLICATION NOTES, IT ALL POINTS IN ONE

18    DIRECTION.

19    AND THEN, THERE'S THIS CLAIM CONSTRUCTION ISSUE.

09:27:18 20    DR. KELLEY APPLIED THE COURT'S CLAIM CONSTRUCTION, EXPLAINED

21    HOW THEY SUPPORTED HIS CONCLUSIONS.

22    AND JUST TO GO IN REVERSE ORDER, DR. WEI, HE INTERPRETS

23    THE COURT'S CONSTRUCTIONS OF BOTH POWER INTEGRATIONS' PATENTS

24    TO EXCLUDE WHAT'S SHOWN IN THE PATENTS, THEMSELVES.

09:27:48 25    I'M GOING TO REPEAT THAT, BECAUSE YOU ALMOST CAN'T BELIEVE

Page 3103

09:27:50 1    IT.

2    HE INTERPRETED THE COURT'S CONSTRUCTIONS OF BOTH OF OUR

3    PATENTS TO EXCLUDE WHAT THE PATENTS SHOW.

4    NOW, YOU NEED TO HAVE EXACTLY NO EXPERIENCE IN A PATENT

09:28:05 5    CASE TO THINK THAT CAN'T BE RIGHT.  IT'S NOT RIGHT.  THE COURT

6    DIDN'T DO THAT.  WHEN YOU SEE THE JURY INSTRUCTIONS, YOU ARE

7    NOT GOING TO SEE AN INSTRUCTION FROM THE COURT SAYING "I

8    INTERPRET THE CLAIMS IN THESE -- IN BOTH OF THESE PATENTS IN A

9    WAY THAT DOESN'T COVER THE PREFERRED EMBODIMENTS.  DOESN'T

09:28:24 10    COVER WHAT'S SHOWN."  THAT IS NOT WHAT HAPPENED.  THAT IS

11    THEIR SPIN ON WHAT HAPPENED.

12    OKAY?  AND IT'S WORSE THAN THAT.  HE SAYS NOT ONLY DO THE

13    CLAIMS NOT COVER WHAT'S IN THE PATENTS, THEY DON'T COVER ANY

14    PRODUCT IN THE REAL WORLD IN THE CASE OF THE '079 PATENT

09:28:43 15    BECAUSE OF THE WAY HE HAS INTERPRETED "FIXED FREQUENCY,"

16    NOTHING ON THE PLANET, IN DR. WEI'S VIEW, HAS FIXED FREQUENCY.

17    YOU COULD NOT BUILD A DEVICE THAT MET THAT REQUIREMENT IF YOU

18    TRIED.

19    AND, WHEN CONFRONTED WITH THE FACT THAT MR. BALAKRISHNAN

09:29:06 20    SAYS, "WHAT ARE YOU TALKING ABOUT?  I INVENTED THESE THINGS.

21    I INVENTED THEM IN THE CONTEXT OF DEVELOPING REAL PRODUCTS,

22    TOPSWITCH-FX, TOPSWITCH-GX.  I BUILT THE PRODUCTS.  CUSTOMERS

23    LOVED THE FEATURES.  I GOT MY PATENTS.  AND YOU'RE TELLING ME

24    WHAT?  THAT NOT ONLY ARE MY PATENTS NOT COVERING WHAT YOU DO,

09:29:28 25    THEY DON'T COVER ANYTHING I DO?  OR ANYTHING ANYONE ELSE

Page 3104

09:29:31 1    DOES?"

2    FINAL WORD ABOUT DR. WOOD, AND I -- I MENTIONED THIS

3    ALREADY.  BUT THE KEY TO DR. WOOD'S ANALYSIS IS THAT IT RELIES

4    ENTIRELY ON TESTING OF SOMETHING HE MADE UP.  IT'S NOT

09:29:55 5    ANYTHING POWER INTEGRATIONS MAKES OR SELLS.  IT'S NOT ANYTHING

6    ANY POWER INTEGRATIONS' CUSTOMER EVER MADE OR SOLD.  IT'S

7    SOMETHING THAT WAS MADE UP FOR PURPOSES OF THIS LITIGATION.

8    (DOCUMENT DISPLAYED)

9    MR. SCHERKENBACH:  ALL RIGHT.  NOW, LET'S GET TO SOME

09:30:15 10    OF THE SPECIFICS.  OH, SORRY.  I WAS GOING TO SHOW YOU --

11    THEY'RE ACTUALLY ON THIS EXPERT ISSUE.  THIS IS IN THE JURY

12    INSTRUCTIONS.  BASICALLY, YOU ARE NOT REQUIRED TO ACCEPT ANY

13    EXPERT OPINION.  IT IS UP TO YOU.  THEY ARE NO -- THEY'RE NOT

14    ENTITLED TO ANY MORE WEIGHT OR DEFERENCE THAN ANY OTHER

09:30:36 15    WITNESS IN THE CASE.  OKAY?  ALL RIGHT.

16    (DOCUMENT DISPLAYED)

17    MR. SCHERKENBACH:  '908, THE MULTI-FUNCTION CIRCUIT

18    PATENT.  SO HERE'S FAIRCHILD'S DEFENSE IN A NUTSHELL.

19    IT'S TRUE THAT WE DO -- THAT FAIRCHILD DOES EXACTLY WHAT

09:30:54 20    IS SHOWN IN THE PATENT.  NO DISPUTE ABOUT THAT.  YOU TAKE

21    FIGURE 4 FROM THE PATENT, THE PIECES OF IT THAT IMPLEMENT

22    CURRENT LIMIT ADJUSTMENT.  YOU PUT IT NEXT TO THE FAIRCHILD

23    CIRCUITS.  IT'S THE SAME.  WE SHOWED YOU THAT.  THEY HAVE NO

24    RESPONSE TO THAT.  THEY DON'T DISPUTE THAT.

09:31:14 25    THEY SAY, "WELL, MAYBE SO.  BUT THE CLAIMS DON'T COVER

## Page 3113

```
09:42:47  1        AND THEY USE A VOLTAGE, ANOTHER VOLTAGE TO REPRESENT THE
          2   CURRENT IN THE SWITCH, IN GREEN  EXACTLY  AND THEY CALL IT
          3   "SENSE" FOR "CURRENT SENSE SIGNAL" (INDICATING)  IT IS
          4   EXACTLY THE SAME AS THE PATENT
09:42:59  5        (DOCUMENT DISPLAYED)
          6        MR. SCHERKENBACH:  I ALREADY SAID IT'S IN THE
          7   DATASHEETS  WE WILL MOVE ON HERE
          8        (DOCUMENT DISPLAYED)
          9        MR. SCHERKENBACH:  ALL RIGHT  SO, BUT EVEN IF YOU
09:43:10 10   DON'T BELIEVE IT'S LITERALLY THE SAME, LITERALLY THE SAME,
         11   THERE ARE TWO FLAVORS OF INFRINGEMENT  AND THIS IS SOMETHING
         12   YOU WERE NOT TOLD BY FAIRCHILD IN ITS OPENING STATEMENT
         13   OKAY?
         14        IT'S NOT THE CASE THAT IF THEY MAKE SOME SMALL CHANGE THAT
09:43:28 15   THEY GET OFF SCOT-FREE  THE LAW TAKES CARE OF THAT  AND IT
         16   TAKES CARE IT THROUGH A PRINCIPLE CALLED "THE DOCTRINE OF
         17   EQUIVALENTS," WHICH IS NOT REALLY A COMPLICATED LEGAL CONCEPT,
         18   BECAUSE AT THE END OF THE DAY, THE TEST FOR EQUIVALENCE IS
         19   WHETHER THE DIFFERENCES BETWEEN THE PART OR STEP THAT'S
09:43:54 20   ACCUSED AND THE REQUIREMENT IN THE CLAIM WERE NOT SUBSTANTIAL
         21        IS THE DIFFERENCE SUBSTANTIAL (INDICATING QUOTATION MARKS)
         22   OR NOT?
         23        AND THERE'S VARIOUS WAYS TO MEASURE THIS  YOU CAN ASSESS
         24   WHETHER SOMETHING IS INTERCHANGEABLE WITH SOMETHING ELSE
09:44:13 25   THERE'S OTHER STUFF IN THE JURY INSTRUCTIONS ON THIS  I
```

## Page 3114

```
09:44:16  1   DIDN'T PUT IT ALL UP
          2        YOU CAN DO WHAT'S CALLED A "FUNCTION/WAY/RESULT TEST" AND
          3   BOTH THE EXPERTS ON BOTH SIDES DID THAT WITH YOU  YOU MAY
          4   HAVE SAID, WHY?  WHY?  WHAT IS THAT, AND WHY ARE PEOPLE DOING
09:44:27  5   IT?  THAT'S A WAY TO ASSESS EQUIVALENCE, THAT SOMETHING
          6   PERFORMS SUBSTANTIALLY THE SAME FUNCTION IN SUBSTANTIALLY THE
          7   SAME WAY, TO ACHIEVE SUBSTANTIALLY THE SAME RESULT  THAT'S
          8   ANOTHER WAY OF ASSESSING THE DIFFERENCES
          9        (DOCUMENT DISPLAYED)
09:44:49 10        MR. SCHERKENBACH:  AND, AGAIN, WE THINK THE EVIDENCE
         11   SHOWS THAT THEIR IMPLEMENTATION IS EXACTLY THE SAME  BUT EVEN
         12   IF YOU DON'T, THEIR ARGUMENT FOR NONEQUIVALENCE, I SUBMIT TO
         13   YOU, IS -- LET'S JUST SAY IT'S INCOMPLETE
         14        THEY SAY THEY ONLY USE VOLTAGES, LIKE THE '908 PATENT,
09:45:15 15   LIKE PI'S PRODUCTS THAT USE THE '908 PATENT, LIKE EVERY OTHER
         16   PART YOU HAVE SEEN IN THIS CASE FROM THIRD PARTIES  THAT'S
         17   THE WAY IT'S DONE  IT'S EQUIVALENT  IT HAS EXACTLY THE SAME
         18   RESULT, WHICH IS TO ADJUST THAT CURRENT LIMIT  TO LIMIT THE
         19   CURRENT PASSING THROUGH THE SWITCH
09:45:41 20        (DOCUMENT DISPLAYED)
         21        MR. SCHERKENBACH:  ALL RIGHT  I'VE GOT TO MOVE AHEAD
         22   IN THE INTEREST OF TIME  DR. KELLEY WENT THROUGH HIS
         23   FUNCTION/WAY/RESULT TEST IN DETAIL
         24        NOT TRYING TO HIDE ANYTHING FROM YOU HERE, BUT WE HAVE GOT
09:45:51 25   A LOT OF GROUND TO COVER, SO I'M GOING TO MOVE ON
```

## Page 3115

```
09:45:53  1        (DOCUMENTS DISPLAYED)
          2        MR. SCHERKENBACH:  THIS IS THE LAST SLIDE I WANTED TO
          3   SHOW YOU ON '908  JUST SO, AGAIN, YOU'RE NOT TAKING MY WORD
          4   FOR IT
09:46:04  5   DR. WEI ADMITTED, YOU KNOW, STRAIGHT UP (AS READ):
          6        "THE DISCLOSED EMBODIMENT IN FIGURE 4 IS NOT COVERED BY
          7   THE ASSERTED CLAIM AS YOU'VE APPLIED IT IN THIS CASE "
          8        "RIGHT "
          9        "THE EMBODIMENT IN FIGURE 7, ALSO NOT COVERED "
09:46:17 10        "CORRECT "
         11        "THE WAY YOU'VE APPLIED THE CLAIMS THEY DON'T COVER ANY
         12   EMBODIMENT THAT IS DESCRIBED IN THE PATENT  RIGHT?"
         13        "YES "
         14        (DOCUMENT DISPLAYED)
09:46:29 15        MR. SCHERKENBACH:  LET'S GO ON TO THE FREQUENCY
         16   REDUCTION PATENT  NOW, THERE'S A LITTLE BIT MORE MATERIAL
         17   HERE BECAUSE THEY HAVE MADE A COUPLE OF NON-INFRINGEMENT
         18   ARGUMENTS  OKAY?
         19        (DOCUMENT DISPLAYED)
09:46:45 20        MR. SCHERKENBACH:  LIGHT LOAD FREQUENCY REDUCTION,
         21   OKAY, IS SORT OF THE CORE OF WHAT WE ARE TALKING ABOUT HERE
         22   CONTRIBUTES TO ENERGY EFFICIENCY, SAVES POWER  ALL RIGHT?
         23        (DOCUMENT DISPLAYED)
         24        MR. SCHERKENBACH:  AND IT TURNS OUT, YOU KNOW,
09:46:59 25   THERE'S A SAYING WE'RE ALL FAMILIAR WITH, "LIGHTNING NEVER
```

## Page 3116

```
09:47:03  1   STRIKES TWICE "  WELL, APPARENTLY IT HAS  BECAUSE, AS LUCK
          2   WOULD HAVE IT, IN THIS PATENT, TOO, THE COURT -- THE COURT DID
          3   IT AGAIN, ACCORDING TO FAIRCHILD  TWICE  CONSTRUED THE
          4   CLAIMS TO EXCLUDE WHAT'S SHOWN IN THE PATENT, ALL THE POWER
09:47:22  5   INTEGRATIONS' PRODUCTS THAT PRACTICE THE PATENT, OR SO WE
          6   THOUGHT BEFORE THIS TRIAL STARTED, ALL OF FAIRCHILD'S
          7   PRODUCTS, EVERY PRODUCT IN THE REAL WORLD  THIS PATENT, THIS
          8   PATENT, IN PARTICULAR, (INDICATING), IS REALLY NOT WORTH THE
          9   PAPER IT'S WRITTEN ON  THAT'S WHAT THEY'RE TELLING YOU  YOU
09:47:40 10   KNOW  WHY BOTHER?
         11        NO SUCH THING HAPPENED
         12        (DOCUMENT DISPLAYED)
         13        MR. SCHERKENBACH:  DR. WEI ADMITS, THOUGH, THAT
         14   THAT'S HIS THEORY  THAT IS HIS THEORY  IF YOU ARE GOING TO
09:48:00 15   FIND FOR FAIRCHILD, YOU HAVE TO AGREE THAT NO REAL WORLD
         16   COMMERCIAL POWER SUPPLY WOULD MEET THAT CONSTRUCTION OF FIXED
         17   FREQUENCY  NOTHING ON THE PLANET HAS A FIXED FREQUENCY,
         18   THEREFORE, NO ONE AND NOTHING CAN EVER PRACTICE THE '079
         19   PATENT (INDICATING)  WE CAN ALL GO HOME
09:48:22 20        "WHAT'S SHOWN AS THE PREFERRED EMBODIMENT IN THE '079
         21   PATENT, THAT DOESN'T SATISFY  RIGHT?"
         22        "YEAH "
         23        (DOCUMENT DISPLAYED)
         24        MR. SCHERKENBACH:  MR. BALAKRISHNAN, WHEN HE SAYS --
09:48:36 25   YOU KNOW, WHEN HE SAYS WHAT HIS INVENTION IS ABOUT, WHEN HE
```

## Page 3117

```
09:48:39  1    SAYS HE HAS PRODUCTS THAT PRACTICE HIS INVENTION, WELL, HE
          2    DOESN'T KNOW WHAT HE'S TALKING ABOUT  STRAIGHT UP  "HE'S
          3    WRONG "
          4       NOW, THAT'S A CREDIBILITY ISSUE FOR YOU  YOU ARE BETTER
09:48:55  5    SITUATED THAN ANYBODY IN THE COURTROOM TO SORT THAT ONE OUT,
          6    BECAUSE YOU SAW MR BALAKRISHNAN  YOU SAW DR WEI  AND YOU
          7    CAN ASSESS THAT
          8       (DOCUMENT DISPLAYED)
          9       MR SCHERKENBACH: DR KELLEY WENT THROUGH THE CLAIMS
09:49:11 10    IN DETAIL  MAYBE MORE DETAIL THAN YOU WANTED, I'M SURE  BUT,
         11    YOU KNOW, IT IS OUR BURDEN  WE HAVE TO SHOW THE PRESENCE OF
         12    ALL THE ELEMENTS, AND WE BELIEVE WE DID
         13       (DOCUMENT DISPLAYED)
         14       MR SCHERKENBACH: NOW, THERE IS ANOTHER LEGAL
09:49:33 15    PRINCIPLE HERE THAT IS IMPORTANT  AND HERE IT IS  IF YOU
         16    HAVE EVERYTHING THAT IS IN A PATENT CLAIM, YOU HAVE ALL THE
         17    ELEMENTS -- LET ME GO BACK
         18       (DOCUMENT DISPLAYED)
         19       MR SCHERKENBACH: YOU HAVE ALL THOSE ELEMENTS, AND
09:49:46 20    YOU ADD SOMETHING, YOU KNOW, YOU HAVE GOT -- WHATEVER, HALF A
         21    DOZEN ELEMENTS IN GENERAL TO THESE CLAIMS, AND YOU HAVE A
         22    SEVENTH ONE, IT DOESN'T MATTER  YOU STILL INFRINGE
         23       (DOCUMENT DISPLAYED)
         24       MR SCHERKENBACH: THAT'S THE LAW  IF YOU FIND THE
09:50:04 25    PRODUCT HAS ALL THE ELEMENTS, THE FACT THAT IT MAY INCLUDE AN
```

## Page 3118

```
09:50:07  1    ADDITIONAL COMPONENT DOESN'T MATTER  YOU CAN'T ESCAPE
          2    INFRINGEMENT BY DOING WHAT THE PATENT DESCRIBES, AND THEN
          3    SAYING, "OH, WE ARE GOING TO ADD THIS BELL  WE ARE GOING TO
          4    ADD THIS WHISTLE  WE ARE GOING TO DO SOMETHING ELSE, TOO "
09:50:18  5    OKAY?
          6       (DOCUMENT DISPLAYED)
          7       MR SCHERKENBACH: AND THAT'S WHERE JITTER COMES IN
          8    THIS WHOLE DUST-UP OVER FREQUENCY HOPPING OR JITTER  ALL
          9    RIGHT?
09:50:29 10    IT'S AN ADDED FEATURE  IT DOESN'T MEAN THEY ESCAPE
         11    INFRINGEMENT
         12       CONCEPTUALLY, IT IS THAT SIMPLE  AND, IN FACT, THAT'S
         13    THE VERY WAY THEY DESCRIBE IT IN THEIR DATASHEETS  AGAIN, THE
         14    PRELITIGATION EVIDENCE  THEY -- SEPARATE BULLETS, EVEN
09:50:44 15    OKAY? THE GREEN MODE, WHICH IS THE LINEARLY DECREASING PWM
         16    FREQUENCY, RIGHT? AT LIGHT LOAD, THEY DECREASE THE FREQUENCY
         17    TO SAVE POWER, TO SAVE ENERGY  SORT OF THE CORE OF THE
         18    PATENT  THEY DO THAT
         19       OH, HEY, WE HAVE THIS OTHER THING, TOO, FREQUENCY HOPPING
09:51:03 20    AND THEY EVEN SAY -- LOOK AT THIS  "FIXED PWM FREQUENCY
         21    WITH FREQUENCY HOPPING "
         22       IT'S FIXED, BUT WE ALSO HAVE THIS HOPPING THING, WHICH IS
         23    ADDED FOR A COMPLETELY DIFFERENT PURPOSE  IT IS TO SOLVE AN
         24    ELECTROMAGNETIC RADIATION PROBLEM  AND IT DOES NOT MEAN TO
09:51:28 25    PEOPLE OF SKILL IN THE ART THAT THE PART DOESN'T HAVE A FIXED
```

## Page 3119

```
09:51:33  1    FREQUENCY
          2       (DOCUMENT DISPLAYED)
          3       MR SCHERKENBACH: DR WEI SAYS, YEAH, FREQUENCY
          4    HOPPING IS YET ANOTHER FEATURE  IT'S AN ADDED FEATURE
09:51:42  5    DR WEI AGREES
          6       (DOCUMENT DISPLAYED)
          7       MR SCHERKENBACH: PRELITIGATION, AGAIN  I JUST
          8    SHOWED THIS TO YOU, BUT, ESSENTIALLY -- SO BEFORE THIS CASE,
          9    THE DATASHEET SAID THINGS LIKE THIS BOTTOM BULLET HERE  THIS
09:51:55 10    IS -- THIS IS FROM PX 1658  "FIXED FREQUENCY WITH FREQUENCY
         11    HOPPING "
         12       NOW, IN LITIGATION, THEIR ARGUMENT IS THAT ANYTHING -- ANY
         13    REFERENCE TO "FIXED", DON'T -- "WE'RE NOT GOING TO TALK ABOUT
         14    THAT  THAT'S NOT REALLY RIGHT  WE SAID THAT, BUT WE DIDN'T
09:52:18 15    MEAN IT "  APPARENTLY, THEY DIDN'T MEAN WHAT THEY SAID THEN
         16       (DOCUMENT DISPLAYED)
         17       MR SCHERKENBACH: WHAT MATTERS IS THAT THE FREQUENCY
         18    IS FIXED RELATIVE TO FEEDBACK VALUES  THIS IS NOT SOME
         19    METAPHYSICAL DEBATE ABOUT WHETHER, REGARDLESS OF WHAT YOU DO
09:52:41 20    TO ONE OF THESE CHIPS, OKAY?  STRIKE IT WITH LIGHTNING IN A
         21    SURGE TEST  SMASH IT WITH A HAMMER  I DON'T KNOW  THROW IT
         22    OUT OF A BUILDING  MIGHT IT SKIP?  MIGHT THE FREQUENCY VARY
         23    SOMEWHAT?  PUT IT IN AN OVEN  YEAH, PROBABLY
         24       WHAT DOES THAT HAVE TO DO WITH ANYTHING?  EXACTLY
09:53:01 25    NOTHING  THIS IS A COMMON-SENSE POINT  YOU DON'T NEED
```

## Page 3120

```
09:53:04  1    ENGINEERS TO TELL YOU THIS, YOU DON'T NEED LAWYERS TO TELL YOU
          2    THIS  IT IS A COMMON-SENSE POINT
          3       AND IT'S NOT JUST THE CLAIM SAYS SO  "FIXED FOR A FIRST
          4    RANGE OF FEEDBACK SIGNAL VALUES "  THAT'S THE WHOLE POINT
09:53:17  5    RIGHT?  WHEN YOU ARE IN ONE -- ONE RANGE OF FEEDBACK, THAT
          6    FREQUENCY IS BASICALLY FIXED (INDICATING)
          7       WHEN YOU GO TO LIGHT LOAD, THE FREQUENCY IS GOING TO
          8    DECLINE (INDICATING) TO SAVE POWER  IT'S NOT ABOUT
          9    TEMPERATURE VARIATION OR PART-TO-PART VARIATION BECAUSE OF
09:53:42 10    MANUFACTURING TOLERANCES OR ANY OF THIS OTHER STUFF THAT THEY
         11    SPENT ALL THIS TIME ON
         12       (DOCUMENT DISPLAYED)
         13       MR SCHERKENBACH: THE CLAIM CONSTRUCTION HERE IS
         14    "NONVARYING NUMBER OF SWITCHING CYCLES PER SECOND "  ANOTHER
09:53:57 15    ONE WHERE THE EXPERTS DISPUTE WHAT THE CONSTRUCTION MEANS
         16    OKAY?
         17       DR KELLEY SAYS IT SAYS "NONVARYING NUMBER," YEAH  IT
         18    SAYS "NONVARYING  OF SWITCHING CYCLES PER SECOND "  SO YOU
         19    LOOK AT THEM OVER A SECOND  AND IF THEY DON'T VARY IN A
09:54:18 20    PERIOD OF A SECOND -- PICK ANY SECOND YOU WANT -- THAT
         21    LITERALLY COMPLIES
         22       (DOCUMENT DISPLAYED)
         23       MR SCHERKENBACH: DR WEI SAYS "NO, THAT'S NOT
         24    RIGHT "  HE SAYS, WHAT YOU DO IS YOU LOOK AT THE INSTANTANEOUS
09:54:35 25    RATE OF THE PULSES AT ANY GIVEN POINT IN TIME
```

Page 3317

```
 1
 2                    INDEX
 3                    PAGE  VOL
 4   CLOSING ARGUMENT BY MR  SCHERKENBACH      3093   13
     CLOSING ARGUMENT BY MR  JACOBS            3160   13
 5   REBUTTAL ARGUMENT BY MR  SCHERKENBACH     3234   13
     REBUTTAL ARGUMENT BY MR  JACOBS           3247   13
 6   INSTRUCTIONS BY THE COURT                 3257   13
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 2014

CERTIFICATE OF REPORTER

I, BELLE BALL, OFFICIAL REPORTER FOR THE UNITED

STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF

PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.


        /S/  BELLE BALL,_____

        FRIDAY, FEBRUARY 28,

        BELLE BALL, CSR 8785, CRR, RDR

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION, and  SYSTEM GENERAL CORPORATION,<br><br>        Plaintiffs,<br><br>    v.<br><br>POWER INTEGRATIONS, INC.,<br><br>        Defendant. | C.A. No. 12-540 LPS |

**OPENING EXPERT REPORT OF DR. ARTHUR W. KELLEY REGARDING INVALIDITY OF FAIRCHILD'S U.S. PATENT NOS. 7,525,259, 7,259,972, AND 7,286,123**

("Swanson '578") and, in the alternative, are obvious under 35 U.S.C. § 103 over

Swanson '578 in view of the knowledge of a person of ordinary skill in the art as shown

in Exhibit 9.

## XII.   MATERIALS CONSIDERED

126.   My opinions are based on reviewing the patents and their prosecution

histories, the opinions of the District Court regarding the proper construction of terms

used in the claims, various prior art, and trial and deposition testimony.  Attached as

Exhibit 10 is a listing of the materials I considered in forming the opinions set forth in

this report.  This study is ongoing, and I may supplement or amend these opinions based

on the results of further analysis and in rebuttal to positions taken by Fairchild.

## XIII.   EXHIBITS TO BE USED

127.   I may rely on any of the information identified in this report, or other

documents or testimony as may be appropriate to rebut Fairchild's contentions.  I may

also create and rely on demonstrative exhibits, which may include enlargements and/or

color-coded versions of documents I have reviewed.  I may also rely on the deposition

testimony, deposition exhibits, and trial testimony and trial exhibits of PI and Fairchild

witnesses.

128.   I reserve the right to supplement this report based on any information

which I receive from Fairchild after the date of this report.

Dated: September __11__, 2014          Arthur Kelley

Arthur Kelley

# EXHIBIT 4

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
OPENING EXPERT REPORT OF DR. ARTHUR W. KELLEY REGARDING INVALIDITY OF FAIRCHILD'S
U.S. PATENT NOS. 7,525,259, 7,259,972, AND 7,286,123



















IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

            Plaintiffs,

        v.

POWER INTEGRATIONS, INC.,

            Defendant.

C.A. No. 12-540 LPS

**HIGHLY CONFIDENTIAL**

**POWER INTEGRATIONS' OPPOSITION TO FAIRCHILD MOTION *IN LIMINE* NO. 2**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for
POWER INTEGRATIONS, INC.**

Dated:  April 15, 2015

Fairchild's second motion *in limine*, styled as a motion to "preclude Power Integrations from eliciting testimony from lay witnesses . . . on the ultimate issues in this case," relies on a straw man argument and is in fact a motion to exclude ***all factual testimony*** from lay witnesses—including admissions by Fairchild's own inventors—that contradicts or undermines Fairchild's case.  Indeed, the real motive behind Fairchild's motion is to exclude detrimental deposition testimony from its own witnesses.  Fairchild's motion should be denied.

As Fairchild knows full well, PI does not intend to offer any lay witnesses as expert witnesses or have them testify "on legal issues" or the "ultimate issues" of infringement or invalidity.  But that does not mean that fact witnesses' "subjective belief on these issues has no bearing on the ultimate issues in the case," as Fairchild suggests.  [FCS Br. at 1.]  PI's witnesses' factual testimony regarding their subjective beliefs on non-infringement and invalidity of Fairchild's patents—including Mr. Balakrishnan and Mr. Matthews—is directly relevant to assessing both the inducement and the willfulness claims Fairchild has brought against PI.  *See Global–Tech Appliances v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011); *Commil USA v. Cisco Sys.*, 720 F.3d 1361, 1368 (Fed. Cir. 2013) (evidence of good-faith belief of invalidity "may negate the requisite intent for induced infringement); *Bard Peripheral Vascular v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012) ("[T]he objective prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement.").  Likewise, factual testimony of Fairchild's inventors—each of whom Fairchild claims qualifies as "a person of ordinary skill in the art"—regarding what they believed their inventions covered (and did not) is also relevant to assessing the reasonableness of PI's and PI's witnesses' beliefs.

Moreover, "[a]n inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims."  *Voice Tech. Group,*

*Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999); see *also Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1339 (Fed. Cir. 2010) (trial court "properly allowed testimony from the witnesses about the patents they invented based on their personal knowledge").  Indeed, as Fairchild acknowledges, fact witnesses—including inventors—are allowed to testify regarding matters about which they have personal knowledge.  [FCS Br. at 1-2.]  This certainly includes PI fact witnesses' testimony about the operation of PI's accused products,[1] how they developed these products, their belief certain PI products incorporate PI's patented inventions, and why they believe PI's products are different from the inventions claimed in Fairchild's patents, as well as Fairchild's inventors' testimony about what they viewed as being covered by the claims of their own patents.

Contrary to Fairchild's assertion, Mr. Balakrishnan did not offer testimony "on the ultimate issues of infringement and validity" in *Fairchild IV* (or any other prior litigation).  Fairchild has not pointed to anything in Mr. Balakrishnan's testimony regarding Fairchild's accused products; he testified about how PI's products work and how PI's products used his own inventions.  [*See* Ex. A to FCS MIL No. 2.]  Mr. Balakrishnan did testify about the prior art, but as the California court recognized in allowing the testimony, an inventor's testimony about how he understands the prior art is admissible and is not an opinion on an ultimate issue.  *See also Voice Tech. Group.*, 164 F.3d at 615 ("The testimony of the inventor may also provide

---

[1]  PI is not presenting *PI* inventors' testimony about *Fairchild's* products.  In that regard, Fairchild's citation to *Air Turbine Tech. v. Atlas Copco AB*, 410 F.3d 701, 714 (Fed. Cir. 2005) and *Verizon Servs*, 602 F.3d at 1340, is inapposite.  In *Air Turbine*, the Federal Circuit affirmed the trial court's exclusion of the inventor's testimony about the operation of the accused products—not his own invention—for lack of "particularized knowledge and experience in the structure and workings of the accused device." *Air Turbine*, 410 F.3d at 713-714.  Likewise, *Verizon Services* stands for the uncontroversial proposition that a fact witness's testimony must be limited to "factual testimony that did not require expert opinion." *Verizon Servs.*, 602 F.3d at

background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems."). The same is true of the Fairchild inventors' understanding of the state of the art relevant to their own patents.

On the other hand, Fairchild's entire motion runs contrary to the way it used Mr. Yang's testimony in the *Fairchild II* trial, during which Mr. Yang testified at length about the technology at issue, his patents and what he believed they covered, and the products that were accused of infringing PI's patents, including his views on non-infringement. [*See, e.g.*, Exs. 2A at 1114:4-1143:5; 2B at 1181:10-1200:4; 2C at 1810:24-1832:15.] It is also disingenuous for Fairchild to criticize PI's expert's consideration of the inventors' testimony about their understanding of their own inventions, while at the same time Fairchild's expert selectively relies on the testimony of Mr. Yang in this case when it apparently suits Fairchild to do so. [*See, e.g.*, Ex. 2D (2014-10-17 Collins Rebuttal) at ¶¶ 48-50, 295.]

There is no unfair prejudice to Fairchild or risk of jury confusion.[2] If Fairchild believes any specific testimony offered live or by designation is objectionable, it can raise an objection at that time. Fairchild is also free to cross-examine PI's witnesses if it believes they do not understand or have no personal knowledge about their patents or products they designed. Fairchild is also free to call its own witnesses if it believes an inventor's testimony about his invention or the art was somehow inaccurate. The fact that Fairchild will not bring its own inventors to trial—the real reason behind Fairchild's motion—is not a basis for precluding PI from offering factual testimony, nor does it provide a basis for excluding Fairchild's witnesses' prior admissions. As such, Fairchild's motion *in limine* must be denied.

---

1340. That does not mean that inventors cannot offer factual testimony based on their personal knowledge, including testimony "about the patents they invented." *See id.* at 1339.

[2] Fairchild's citation to *Daubert* is a red herring; PI is not offering any fact witness as an expert.

Dated:  April 15, 2015          FISH & RICHARDSON P.C.


By:  _____

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for**
**POWER INTEGRATIONS, INC.**

4

# EXHIBIT 2A

899

1                        IN THE UNITED STATES DISTRICT COURT

2                        IN AND FOR THE DISTRICT OF DELAWARE

3                                 - - -
     POWER INTEGRATIONS, INC.,
4                                              :   CIVIL ACTION
                   Plaintiff,                  :
5      v                                       :
                                               :
6    FAIRCHILD SEMICONDUCTOR INTERNATIONAL,    :
     INC., FAIRCHILD SEMICONDUCTOR CORPORATION,:
7    and SYSTEM GENERAL CORPORATION,           :
                                               :   NO. 08-309-LPS
8                  Defendants.        - - -

9                             Wilmington, Delaware
                            Monday, April 16, 2012
10                          *Jury Trial - Volume D*

11                                - - -

12   BEFORE: HONORABLE LEONARD P. STARK, U.S.D.C.J., and a jury

13   APPEARANCES:                    - - -

14                   FISH & RICHARDSON, P.C.
                     BY:  WILLIAM J. MARSDEN, JR., ESQ.
15
                          and
16
                     FISH & RICHARDSON, P.C.
17                   BY:  FRANK E. SCHERKENBACH, ESQ.
                          (Boston, Massachusetts)
18
                          and
19
                     FISH & RICHARDSON, P.C.
20                   BY:  HOWARD POLLACK, ESQ.,
                          MICHAEL HEADLEY, ESQ.,
21                        JOHN M. FARRELL, ESQ.
                          KEELEY I. VEGA, and
22                        NEIL A. WARREN, ESQ.
                          (Redwood City, California)
23
                              Counsel for Power Integrations, Inc.
24
                              Brian P. Gaffigan Valerie Gunning
25                            Official Court Reporters

900

```
 1   APPEARANCES:  (Continued)

 2
              ASHBY & GEDDES, P.A.
 3            BY:  JOHN G. DAY, ESQ.

 4            and

 5       McDERMOTT, WILL & EMERY, LLP
         BY:  LEIGH J. MARTINSON, ESQ.
 6            (Boston, Massachusetts)

 7            and

 8       McDERMOTT, WILL & EMERY, LLP
         BY:  TERRENCE P. McMAHON, ESQ., and
 9            MICHAEL F. MARTIN, ESQ.
              (Menlo Park, California)
10
              and
11
         McDERMOTT, WILL & EMERY, LLP
12       BY:  BLAIR M. JACOBS, ESQ.,
              CHRISTINA ONDRICK, ESQ., and
13            ROSE WHELAN, ESQ.
              (Washington, District of Columbia)
14
                   Counsel for Fairchild Semiconductor
15                 International, Inc., Fairchild
                   Semiconductor Corporation, and
16                 System General Corporation

17

18

19

20

21

22

23

24

25
```

901

```
 1                        - oOo -

 2                  P R O C E E D I N G S

 3        (REPORTER'S NOTE:  Trial proceedings were held

 4   in open court, beginning at 9:36 a.m.)

 5        THE COURT:  Good morning, everyone.

 6        (The attorneys respond, "Good morning, your

 7   Honor.")

 8        THE COURT:  I see my criminal proceeding went a

 9   little longer than anticipated but we are all yours now.  I

10   understand whether is one issue, Mr. Scherkenbach.

11        MR. SCHERKENBACH:  There is, your Honor.  It

12   relates to Mr. Kelley who is our expert being the first

13   witness I.  I want to frame it.  If we have to get into the

14   details, Mr. Pollack will deal with that.

15        The question is -- back up a minute.  You recall

16   Dr. Kelley came in to help us after Mr. Blauschild had to

17   basically retire for health reasons.  The issue is whether

18   Dr. Kelley can be cross-examined with Mr. Blauschilds' prior

19   opinions.  We think it is inappropriate.

20        In general, we think it would not really be that

21   relevant because they're not his opinions, they are somebody

22   else's opinions.  In particular, we say the guy was too ill

23   to carry on and so forth.

24        If you are inclined to let that in, there is

25   sort of a flip side issue which is that Fairchild switched
```

902

```
 1   experts, too, for a different reason.  In the first case,

 2   their expert was Dr. Horowitz and Dr. Wei, who is the expert

 3   in this case, supported Dr. Horowitz in the first case and

 4   his opinions differ in some significant respects.  We

 5   actually are going to stay away from that but it seems to me

 6   if they're allowed to do it, we should be allowed to cross

 7   Dr. Wei with Dr. Horowitz.

 8        THE COURT:  Okay.  Let me hear from Fairchild.

 9        Good morning.

10        MR. JACOBS:  Good morning, your Honor.  It's

11   apples and oranges.

12        We have a sworn deposition of Mr. Blauschild in

13   this case dealing with all of the issues of this case.

14   Dr. Kelley, in his deposition, said that he had reviewed

15   Mr. Blauschild's opinions and that he did not disagree

16   with any of his opinions.  So what we did in his deposition

17   was we asked him more or less, well, do you agree with

18   Mr. Blauschild as follows, in that Mr. Blauschild offered

19   explanations, a basis for some of his opinions that was a

20   little bit more extensive, perhaps, than Dr. Kelley's.

21        Perfectly permissible.  He can answer yes or no.

22   He doesn't have to be bound by Mr. Blauschild's testimony.

23   But Mr. Blauschild was an expert on the same issues employed

24   by Power Integrations and provided opinions in this case

25   dealing with these accused products relating to the exact
```

903

```
 1   same issues.

 2        It's simple.  "Do you agree with Mr. Blauschild

 3   when he says blank" type of questioning.  It's not using it

 4   to impeach:  "Well, Mr. Blauschild said blank and you said

 5   blank so you are wrong" type of questioning.

 6        THE COURT:  Well, then what is the point then?

 7   Why is it helpful to you?

 8        MR. JACOBS:  It's helpful in that there is an

 9   additional basis offered by Mr. Blauschild, and we're just

10   saying would you agree with Mr. Blauschild's basis when he

11   said blank?  Yes or no.

12        More often than not, since the opinions have

13   been agreed with, the answer is going to be yes.  But

14   oftentimes it's very difficult to give that testimony

15   unless Mr. Blauschild, who has already testified under oath

16   relating to the issues, is there with regard to what he

17   believes, as Power Integrations' expert, the issue is to be

18   from an explanation standpoint.

19        Talking about Dr. Wei and what went on with the

20   last trial, that would violate, in our opinion, your motion

21   in limine ruling.  Dr. Wei testified only on copying in the

22   last case.  There is no evidence of copying in this case.

23   Copying has been carved out completely from this case so it

24   is a completely a separate and different issue.  And using

25   the testimony of Mr. Horowitz about products that aren't
```

1112

Kelley - redirect

1    it's G4 of the schematic.  It's an input to logic gate I38?"
2            And he responded:
3        "Answer:  In early design, earliest design,
4    there was no I84 comparator.  So in the absence of the I84
5    comparator, the pulse, as you said, would determine the
6    maximum on time or maximum duty cycle."
7            Is that consistent with your opinion on where
8    the maximum duty cycle signal is found in the accused
9    products?
10   **A.    Yes, we agree.**
11           MR. POLLACK:  That's all I have.
12           THE COURT:  Okay.  Thank you very much.
13           We'll give the jury their afternoon break at
14   this point.  Fifteen minutes.  No talking about the case and
15   we'll see you back then.
16           (Jury left courtroom.)
17           THE COURT:  Doctor, you are free to step down.
18   We'll take our afternoon recess.
19           (Brief recess taken.)
20           *    *    *
21           (Proceedings reconvened after recess.)
22           THE COURT:  Let's bring the jury in.
23           (Jury returned.)
24           THE COURT:  Welcome back.
25           What is next?

1113

1            MR. SCHERKENBACH:  Your Honor, Power
2    Integrations at this time has concluded calling its live
3    witnesses in this phase of the case.  And,
4            Ladies and gentlemen, we'll provisionally rest
5    our case as discussed.  We are going to be cross-examining
6    some of Fairchild's witnesses on issues relevant to our case
7    so we're going to pass the baton for now over to our
8    colleagues.
9            THE COURT:  Okay.  Thank you.
10           Mr. McMahon.
11           MR. McMAHON:  Thank you, your Honor.  Motions
12   reserved.
13           THE COURT:  Right.
14           MR. McMAHON:  Thank you, your Honor.
15           Ladies and gentlemen, I'm Terry McMahon.  We're
16   going to start our case now, our defense, to show that we
17   don't infringe and that the patents are invalid.
18           Our first witness will be Tom Yang.
19           Your Honor, might I bring him forward?
20           THE COURT:  Yes, you may.
21           TOM YANG, having been first duly sworn, was
22   examined and testified as follows ...
23           THE COURT:  Good afternoon, Mr. Yang.
24           THE WITNESS:  (Nodding yes.)
25           THE COURT:  Mr. McMahon, you may proceed when

1114

Yang - direct

1    you are ready.
2            MR. McMAHON:  Thank you, your Honor.
3                    DIRECT EXAMINATION
4    BY MR. McMAHON:
5    **Q.**    Would you please give us your full name?
6    **A.    Tom Yang.**
7    **Q.**    And what is your Chinese name?
8    **A.    Ta-yung Yang.**
9    **Q.**    Okay.  Where do you live?
10   **A.    Taiwan.**
11   **Q.**    Where did you grow up?
12   **A.    In Taiwan.**
13   **Q.**    Okay.  What is your first language?
14   **A.    Chinese.**
15   **Q.**    Okay.
16   **A.    Mandarin.**
17   **Q.**    What is your second language?
18   **A.    English.**
19   **Q.**    Okay.  Are you married?
20   **A.    I'm married.**
21   **Q.**    Do you have children?
22   **A.    I have two kids.**
23   **Q.**    Okay.  Grandchildren?
24   **A.    One.**
25   **Q.**    Good.  All right.  So what is your current position?

1115

Yang - direct

1    **A.    I am Senior Vice President, Technology, PCIA.**
2    **Q.**    What is the name of your company?
3    **A.    Fairchild Semiconductor.**
4    **Q.**    Before you were with Fairchild Semiconductor, where
5    did you work?
6    **A.    System General.**
7    **Q.**    Okay.  And what was your job there?
8    **A.    I am the Chairman.**
9    **Q.**    And was System General merged with Fairchild
10   Semiconductor?
11   **A.    2007.**
12   **Q.**    And I'm going to get you some water.  I think that is
13   what you were looking for.  Is that what you were looking
14   for?
15   **A.    Thank you.**
16           MR. McMAHON:  Excuse me, your Honor.  If I can?
17           THE COURT:  That's fine.
18           (Bottle of water passed forward.)
19           THE WITNESS:  Thank you.
20           MR. McMAHON:  You bet.
21   BY MR. McMAHON:
22   **Q.**    What are your responsibilities at your position now
23   at Fairchild?
24   **A.    I take responsibility for anneal productive role.**
25   **Q.**    Is there anything else?

Yang - direct

1  A.    The anneal productive role.
2  Q.    And could you -- I'm sure the jury noticed that you
3  have a pronounced limp.  It's difficult to get around.
4  Could you just briefly tell the jury how you got that
5  injury?
6  A.    When I work late in the lab and I ride the motorcycle
7  back home, and I hit by a car, the people drunk.
8  Q.    All right.  And that is what makes it difficult for
9  you to get around?
10 A.    Yes.
11 Q.    All right.  Can you please tell us, where did you go
12 to high school?
13 A.    You mean a college?
14 Q.    Yes, college.
15 A.    Yes.  For double E in Taiwan.
16 Q.    Thank you.  Then after you got your double E, what
17 did you do then?
18 A.    I passed the test to be a communication officer in,
19 for my military service.
20 Q.    I'm just going to back up.  Double E.  Could you tell
21 the jury what a double E is?
22 A.    Electronic engineering.
23 Q.    All right.  So you were saying that you passed the
24 test and became a communications officer?
25 A.    Yes.

Yang - direct

1  A.    Yes.
2  Q.    And what did you learn there?
3  A.    I learned, I learned the power supply for my
4  profession.  My professor, he was an expert of a power
5  supply.  He work for Hewlett-Packard.
6  Q.    Okay.  While you were in school working with your
7  professor who had worked at Hewlett-Packard, did you build
8  power supplies?
9  A.    I build, I developed a 400 watt power supply.
10 Q.    Do you go back and teach now at the, the National
11 Institute of Technology, National Taiwanese Institute of
12 Technology?
13 A.    NTIT, yeah.  I am teaching the master degree student
14 for power electronics and power supply.
15 Q.    Okay.  Now, after you graduated from the National
16 Taiwanese Institute of Technology, what did you do?
17 A.    I work for my professor for develop switchable power
18 supply, test the system for testing the power supply for
19 IBM.
20 Q.    For IBM.  International Business Machines here in the
21 U.S.?
22 A.    Yes.
23 Q.    Okay.  And after you worked with your professor, what
24 did you do then?
25 A.    I start a company with my classmate.

Yang - direct

1  Q.    So then what did you do?
2  A.    I have to make sure, to ensure that, in my unit, the
3  telecommunication is unimpeded.
4  Q.    And did you have any experience while you were in
5  the Taiwanese Army as a communications officer with power
6  supplies?
7  A.    I fix the power supply of that telecommunication
8  equipment.  I read the manual, and fix the machine.  That
9  machine is a U.S. Army machine.
10 Q.    Okay.  But you fixed it?
11 A.    I fixed it.
12 Q.    Okay.  And did that get you interested in power
13 supplies?
14 A.    Oh, yeah.  I first have to learn power supplies in
15 the military and fix the telecommunication machine.
16 Q.    After you got out of the Army, what did you do then?
17 A.    I went back to university again.
18 Q.    What university?
19 A.    NTIT is the national -- National Institute of
20 Technology, Taiwan.
21 Q.    Okay.  Taiwan?
22 A.    Taiwan.
23 Q.    Is that equivalent to anything in the U.S.?
24 A.    It's equivalent to MIT in the U.S.
25 Q.    It's a technical school?

Yang - direct

1  Q.    What was that company called?
2  A.    System General.
3  Q.    Okay.  And did you make testing equipment for power
4  supplies there when you started System General?
5  A.    You mean the same as I work with my professor?
6  Q.    Yes.  Did you do that?
7  A.    No, no, is impossible.  I don't compete.  I don't
8  compete in business with my professor.  It's impossible, no.
9  Q.    Okay.  But what did you do?
10 A.    I doing the business to provide a consultant and a
11 design service to power supply manufacturer.  And also we
12 develop a machine called device for wiring system to program
13 the memory.
14 Q.    A device programming system?
15 A.    Yes, for fresh memory.
16 Q.    Okay.  Now, do you still sell those programming
17 machines today even at Fairchild?
18 A.    Yes.  We sell to -- I can take examples.  Every Appel
19 iPhone, iPad or Sony Ericsson mobile phone or the Volkswagen
20 automotive included a Bosch.  Oh, yes, Bosch is our big
21 customer.  They program the memory devices using our
22 machines.
23 Q.    Those aren't power supplies, they are a different
24 machine?
25 A.    Different.

1120

Yang - direct

1  Q.   But still successful even 30 years later?
2  A.   Oh, yes.  Quite successful.
3  Q.   Okay.  Now, at some point, did -- let me back up for
4  a second.  Do you have patents in your name, Mr. Yang?
5  A.   Yes.
6  Q.   How many patents do you have?
7  A.   I have 180 United States patent.
8  Q.   Okay.  And have you gotten any awards for your work
9  in technology in Taiwan?
10  A.   Yes.
11       MR. McMAHON:  Your Honor, may I approach, show
12  the witness these?
13       THE COURT:  You may.  You may approach.
14  BY MR. McMAHON:
15  Q.   Can you very briefly just tell the jury what those
16  two awards are, Mr. Yang?
17  A.   This is the Innovation Award from our government, and
18  it's achiever award for the best design.
19  Q.   And the other?
20  A.   It's a -- the award for the System General.  The
21  company encouraged the employee for innovation.  So that
22  is a very good result.  So we've got an award from
23  government.
24  Q.   At System General, did you and do you encourage, you,
25  yourself, and your employees, to innovate?

1121

Yang - direct

1  A.   Yes.
2  Q.   Why?
3  A.   A patent is important.  We respect the patent.  When
4  the company spend a lot of money in the resources for the
5  research and development and the patent that results, the
6  patent then become property of the company.  So it is
7  important.
8  Q.   All right.  Now your Honor at some point did you meet
9  a man named Gary Lin?
10  A.   Yes.
11  Q.   Okay.  How did you meet Mr. Lin?
12  A.   He's my partner.  My brother actually introduced Gary
13  to me.
14  Q.   All right.  When were you introduced to him?
15  A.   1999.
16  Q.   Okay.  And in 1999, when you met Mr. Lin, what kind
17  of products was System General making?
18  A.   We make device programmer, and we have the House
19  Pride product for the -- looked like Cable TV, and the
20  telecommunication machine.
21  Q.   Did your company and Mr. Lin's company merge?
22  A.   Yes.
23  Q.   Why did you merge with Mr. Lin's company?
24  A.   Gary's company know IC very well.  They know how to
25  do the IC design, including the production, and the System

1122

Yang - direct

1  General know very well about the House Pride.  So if System
2  General merge with Gary Lin's company, then we can start to
3  do the power IC business.
4  Q.   Okay.  And why did you think it would be a benefit to
5  have the two companies join together by a merger?
6  A.   I can -- we can do more business and it's a benefit
7  for both parties.
8  Q.   Okay.  And what was Mr. Lin best at and what were you
9  best at at that time?
10  A.   Excuse me?
11  Q.   That's okay.  What was Mr. Lin good at in his company
12  that made sense to join with you in your company?
13  A.   Gary Lin's company know IC very well.  And System
14  General know House Pride very well.  So we can make a --
15  System General can make a definition for the power IC, and
16  Gary, he can take the system definition and make IC to the
17  market.
18  Q.   So he could implement the -- on an IC your power
19  supply designs?
20  A.   Correct.
21  Q.   All right.  Now, there are two products that we've
22  heard a lot about today and other days here, the 5841J and
23  the 6842J.
24       You know about these parts?
25  A.   I know.

1123

Yang - direct

1  Q.   Okay.  Who designed them?
2  A.   I did.
3  Q.   Are they covered by patents?
4  A.   Yes.
5  Q.   Patents that System General has?
6  A.   Yes.  Every System General product covered by our
7  patent.
8  Q.   Okay.
9  A.   And this took part, I think, at least three patent
10  covered products.
11  Q.   All right.  Now, you told the ladies and gentlemen of
12  the jury a little while ago that you had 180 patents.
13  A.   Yes.
14  Q.   Correct?
15  A.   Yes.
16  Q.   So I'm not going to go through all of them, but is
17  this a collection of your patents?  I'm holding a box here
18  with five binders with 180 patents.
19       Are these your patents?
20  A.   I didn't read it.
21  Q.   I know you didn't read them all.  But are these your
22  patents?  We put these together.
23  A.   Could be.
24  Q.   All right.  Okay.
25       MR. McMAHON:  May I hand up some binders, your

1124

Yang - direct

1 Honor?

2          THE COURT:  You may.

3          MR. McMAHON:  May I approach?

4          THE COURT:  You may.

5 BY MR. McMAHON:

6 **Q.**     Before I ask you any specific questions, I would like

7 to ask you, on the 5841J, is that a primary side controlled

8 product?

9 **A.     No.**

10 **Q.**     On the 6842J, is that a primary side controlled

11 patent -- I'm sorry -- primary side controlled product?

12 **A.     No.**

13 **Q.**     I'm not used to talking slowly, so I don't do it very

14 well.

15 **A.     Thank you.**

16 **Q.**     So it's not a primary side controlled product; is

17 that right?

18 **A.     No.**

19 **Q.**     All right.  Okay.  I'm going to ask you to look at

20 some pages in that book.  All right?

21 **A.     Okay.**

22 **Q.**     So in your book, there is a label for a Demonstrative

23 513.

24          Can you find that, please?

25 **A.     DX?**

1125

Yang - direct

1 **Q.**     DEMO 513.

2          THE COURT:  Demonstratives are at the beginning

3 of the book; correct?

4          MR. McMAHON:  Yes, your Honor.

5          THE WITNESS:  Sir, I need your help.

6          MR. McMAHON:  Yes.  I will find it for you.

7          THE WITNESS:  Yes.

8 BY MR. McMAHON:

9 **Q.**     Why don't you go behind the first tab, and it's

10 labeled "Demonstratives."

11          Do you see that?

12 **A.     Okay.  Yes.**

13 **Q.**     Okay.  And then the second page in, it's the SG5841J

14 oscillator schematic.

15          Can you see that?

16 **A.     Yes.**

17 **Q.**     All right.

18          MR. McMAHON:  Your Honor, this has been earlier

19 admitted as PX-377.  We have our own DX numbers, but for

20 simplicity, at least for today, we'll do it this way and

21 we'll get our own in later, if that's okay.

22          THE COURT:  Any objection, Mr. Scherkenbach?

23          MR. SCHERKENBACH:  No objection.

24          THE COURT:  All right.  Proceed.

25 BY MR. McMAHON:

1126

Yang - direct

1 **Q.**     So what do we see here, just very briefly, and at a

2 high level?

3 **A.     Oscillator circuit has capacitor rate.**

4 **Q.**     What is a schematic?

5 **A.     Oscillator.**

6 **Q.**     Okay.  What is a schematic?

7 **A.     Okay.  Schematic is a circuit diagram, and the**

8 **engineer can use this circuit diagram to make ICs.**

9 **Q.**     Okay.  And then this is a schematic of an oscillator,

10 as soon as it's back up again.

11          Tell us, while we're waiting, what is an

12 oscillator?

13 **A.     Oscillator is used to generate a clock signal, and a**

14 **clock signal will use to determine the frequency of the**

15 **switching signal for a switching power supply.**

16 **Q.**     So how often the switch goes on and off in the

17 oscillator?

18 **A.     100,000 times per second.**

19 **Q.**     All right.  Does the oscillator operate on only one

20 frequency?

21 **A.     No.**

22 **Q.**     Do the oscillator frequencies vary?

23 **A.     Yes, it varies.**

24 **Q.**     Okay.  Does the oscillator frequency provide -- this

25 varied frequency, does it provide a benefit?

1127

Yang - direct

1 **A.     The varied frequency can spread the energy of the**

2 **switching signal and can help to reduce the EMI.**

3 **Q.**     What's EMI?

4 **A.     It actually is called magnetic interference.  It's a**

5 **noise.**

6 **Q.**     Noise?

7 **A.     Noise.**

8 **Q.**     That's what EMI is?

9 **A.     Yes.**

10 **Q.**     All right.  Now, does both the 5841, which we see

11 here, and the 6842J both have jitter?

12 **A.     Yes.**

13 **Q.**     How does, very briefly, from a very high level, how

14 does the 5841J provide jitter?

15 **A.     We switch the capacitor rate.**

16 **Q.**     Okay.  Does the 6842J have the same switch oscillator

17 configuration as the 5841?

18 **A.     Yes.**

19 **Q.**     Now, I want to ask you a question.

20          MR. McMAHON:  If we could go, please, to DEMO

21 515.

22 BY MR. McMAHON:

23 **Q.**     There is another page, Mr. Yang.

24          MR. McMAHON:  515, please.  Great.

25 BY MR. McMAHON:

1128

Yang - direct

1   Q.   I want to talk about symbols, or symbology.  We heard
2   about that today.
3        The signal, the one that the arrow is pointing
4   towards, if there wasn't any letters in there, if you
5   assumed there weren't any letters, it was just empty, what
6   would that symbol mean?
7   **A.   Output.  Output signal.**
8   Q.   All right.  Output.  Okay.
9        Now, the pulse signal that we see there, the
10  second signal, what is that?
11  **A.   It's a clock signal oscillator.**
12  Q.   Clock signal.  What is a clock signal?
13  **A.   Clock signal is used to determine the frequency of**
14  **the switching signal for switching power supply.  It turn**
15  **on -- it's used to turn on the switching signal and once in**
16  **awhile it's to turn off the switching signal.**
17  Q.   All right.  Do all power supplies have to have a
18  pulse signal like that, a clock signal like that?
19  **A.   Yes.**
20  Q.   Why?
21  **A.   The switching signal is on and off, so the clock**
22  **signal is used to turn on and off the switching signal.**
23  **Otherwise, it's not a switching signal.**
24  Q.   All right.  If there wasn't a pulse signal or a clock
25  signal or this switching signal, would it work?

1129

Yang - direct

1   **A.   It won't work.**
2   Q.   Why not?
3   **A.   No signal, how to make a switching signal.**
4   Q.   All right.  And what is the COSC signal?
5   **A.   It's the ramp signal.  The signal go up step by step**
6   **and go down step by step.**
7   Q.   All right.  Where does the COSC and the pulse signal
8   go?
9   **A.   Two signal --**
10  Q.   Let's go to 518, please.
11  **A.   Yes.  Two signal connect to the PWM block.**
12  Q.   All right.  I want to ask you now about in your book,
13  if you can go, in the lower right-hand corner, 519.  This is
14  part of PX-379.  379.
15       Can you tell me what we're looking at here?
16  What is this?
17  **A.   This is the PWM circuit.**
18  Q.   All right.  And for what part?
19  **A.   For 5841J.**
20  Q.   Okay.  And how do you know it's the PWM circuit?
21  **A.   Because it is used to generate the PWM signal.**
22  Q.   All right.  But how do you know this is -- this is a
23  diagram or a schematic of the PWM circuit?
24  **A.   I designed it.**
25  Q.   Is there anything written on this that tells you?

1130

Yang - direct

1   **A.   Excuse me?**
2   Q.   Is there anything written on this that tells you it's
3   the PWM circuit?
4   **A.   Sorry?  I'm not following you.**
5   Q.   That's okay.
6        MR. McMAHON:  May I approach this, your Honor?
7        THE COURT:  You may.
8   BY MR. McMAHON:
9   Q.   What does this tell you, Mr. Yang?
10  **A.   PWM 5841X5.**
11  Q.   And that tells you what kind of circuit is it?  That
12  tells you what the diagram is referring to; right?
13  **A.   Yes.**
14  Q.   All right.  So I have to ask you a question, then.
15       Looking at the 5841J, this -- this schematic, is
16  this schematic with the circuits that we see on here, the
17  blue one there we'll talk about in a minute and this yellow
18  one -- is this the same as the PWM schematic looks like with
19  the 6842?
20  **A.   The blue one make it different.**
21  Q.   I know.  But is this -- if you looked at the 6842J
22  signal, I mean, the 6842 schematic, will you see the exact
23  same schematic?
24  **A.   It's different.**
25  Q.   How is it different?

1131

Yang - direct

1   **A.   The 6842J is without the blue-colored circuit, is**
2   **without.**
3   Q.   Okay.  What is that blue-colored circuit, the one
4   we've outlined in blue?  And it may be hard to see and I'm
5   sorry.
6        MR. McMAHON:  So if we could highlight the front
7   end of that, Daniel.  There we go.
8   BY MR. McMAHON:
9   Q.   We'll trace this along.  Daniel has made it big for
10  us, Mr. Yang.
11  **A.   Okay.**
12  Q.   What is this blue line that we see?
13  **A.   It is a signal used to determine the maximum duty of**
14  **the switching signal.**
15  Q.   All right.  How does it determine the maximum duty?
16  **A.   It is used -- the ramp signal to compel with voltage**
17  **in the comparator to generate maximal duty cycle signal.**
18  Q.   Where is the comparator here?
19       MR. McMAHON:  Daniel, can you go in --
20       THE WITNESS:  Yes.
21  BY MR. McMAHON:
22  Q.   Is this funny-looking kind of triangle at the end of
23  a box, is that the comparator?
24  **A.   Yes.**
25  Q.   All right.  If we could back out a little bit now,

1132

Yang - direct

1 please.

2 **A.   The B22 is a reference.**

3 **Q.**   Okay.  Now, the signal that -- oh, good.  I'm going

4 to trace this.

5        Now, this signal that starts up here, right here

6 by this device here comes down (indicating), straight down

7 the page, and then comes into the middle here, over, all

8 right, and then it goes up into this device here.

9        Can you tell us what this device is here

10 (indicating)?

11 **A.   This is the latch used to generate the switching**

12 **signal.**

13 **Q.**   And when you say "generate the switching signal,"

14 what do you mean?

15 **A.   Okay.  The red-colored signal will turn on from the**

16 **CK, that symbol, to turn on the switching signal, and the**

17 **symbol RN is a reset of that flip-flop.  It's used to turn**

18 **off the switching signal.**

19 **Q.**   All right.  Under what conditions does this blue

20 line, which you called the maximum duty cycle -- under what

21 conditions does that blue signal turn off this latch

22 (indicating)?

23 **A.   One turns on, one is a wire.  If the feedback signal**

24 **is not going to reset it, that -- this signal is going to**

25 **reset the switching signal.**

1133

Yang - direct

1 **Q.**   All right.  Great.  Okay.

2        So this is the signal we've been talking about,

3 the blue one.

4        Now, just for a minute, let's talk about this

5 yellow one here.

6        MR. McMAHON:  If we can blow this one up,

7 Daniel, please.

8 BY MR. McMAHON:

9 **Q.**   There it is.  There's the pulse signal.  If we can

10 back off so we can see the whole length of the signal.  What

11 does this pulse signal do?

12 **A.   The pulse signal connects to that free flow through**

13 **an inverter to turn on the switching signal.**

14 **Q.**   Now, earlier you told me when we were looking at the

15 oscillator schematic, that the pulse --

16 **A.   Pulse.**

17 **Q.**   -- the pulse signal was a clock signal.

18 **A.   Correct.**

19 **Q.**   Now, what does it do with this latch here, as you've

20 described it?  Both of these signals, the yellow signal and

21 the blue signal, go to the latch.  What does the yellow

22 pulse signal do in the latch?

23 **A.   That is connected to turn on that latch.**

24 **Q.**   Turns it on?

25 **A.   Turns it on.**

1134

Yang - direct

1 **Q.**   Okay.  Now, if you didn't have this pulse signal,

2 would this circuit work (indicating)?

3 **A.   Won't work.**

4 **Q.**   Okay.  Now?

5        MR. McMAHON:  Now, we can back out, Daniel,

6 please, so we can look at the whole thing.  Excellent.

7 BY MR. McMAHON:

8 **Q.**   So there are two signals here, the yellow signal and

9 the blue signal.

10        And the blue signal you called the max duty

11 cycle?

12 **A.   Correct.**

13 **Q.**   Right.  So you have both a max duty cycle here and a

14 pulse and they can both turn on and off this switch here; is

15 that right?

16 **A.   Yes.**

17 **Q.**   Okay.  You have both on this one?

18 **A.   Yes.  The pulse signal further coupled to the output**

19 **of the ledge also can be used to turn off the switch.**

20        MR. McMAHON:  All right.  What I would like to

21 do is find 521.  Lower right-hand corner.  521, please.

22 BY MR. McMAHON:

23 **Q.**   Mr. Yang, can you tell us what is the schematic for

24 what part?

25 **A.   SG6842J.**

1135

Yang - direct

1 **Q.**   Okay.  And this is the PWM circuit?

2 **A.   Yes.**

3        MR. McMAHON:  Okay.  I need to go back.  I

4 forgot something.  Forgive me?  Can we go back to the prior

5 slide for a minute, please?  The one that has both the blue

6 and the -- I think it's 18.  Yes.  Yes.

7 BY MR. McMAHON:

8 **Q.**   Okay.  Now, this blue signal which you have described

9 as the max duty cycle, what block is this in?  What part of

10 the -- what block is it in?

11 **A.   PWM block.**

12 **Q.**   Is this the oscillator block?

13 **A.   No.**

14        MR. McMAHON:  Now we can go to 521.

15 BY MR. McMAHON:

16 **Q.**   Now, this is the 6842J.  Earlier, you told us the

17 6842J of PWM schematic was not the same as the 5841J.  What

18 is different?

19 **A.   6842J without the maximum duty signal cycle.**

20 **Q.**   So it's the blue signal that was on the 5841J is not

21 here on the schematic of the 6842J; is that right?

22 **A.   Yes.**

23 **Q.**   Does this still work?

24 **A.   It work.**

25 **Q.**   Okay.

1136

Yang - direct

1  A.    Because of that clock signal is connected to turn on
2  that block.  You call it a ledge.
3  Q.    I'll call it anything you want me to.
4  A.    Yes, okay.  Turn on that block.
5  Q.    Okay.
6  A.    Also you can turn on this ledge.
7  Q.    Okay.
8  A.    And then, yeah.  It further coupled to a single
9  called N gate.  The N gate, it can turn off the switching
10  signal.
11  Q.    Okay.  Let me ask you this.  Can we go to 522,
12  please?  Can you find 522 in your book?  Or maybe you don't
13  need it.
14  A.    Yes, I can see it.
15  Q.    Now, I've got here, up on the screen on the left, I
16  have the 5841J schematic and on the right, I have the 6842J.
17  Can you briefly tell -- do you have a pointer up there?
18  A.    No.
19        MR. McMAHON:  I'll give this one to Mr. Yang.
20  May I, your Honor?  Thank you.
21        THE COURT:  You may freely approach.
22        MR. McMAHON:  I'm sorry.  I should have let you
23  use this.  I was mean, no good.  (Handing laser pointer to
24  witness.)
25        THE WITNESS:  Thank you.

1137

Yang - direct

1        MR. McMAHON:  Thank you.
2  BY MR. McMAHON:
3  Q.    Just briefly point to the differences on these
4  schematics.
5  A.    The difference is here (indicating).  The color.
6  Yeah, the color is blue color, the circuit that generate the
7  maximum duty cycle signal.
8  Q.    Now, let's look at the other now.  This is the 6842.
9  Is that signal on the 6842?
10  A.    Yes.
11  Q.    Now, is the blue signal on the 6842?
12  A.    Without.  Without blue circuit.
13  Q.    Okay.  But it still has the pulse signal?
14  A.    Yes.
15  Q.    Does the part work without the maximum duty cycle?
16  A.    Yes.
17  Q.    Without the blue signal?
18  A.    Yes.
19  Q.    But do you have to have this pulse signal or the
20  clock signal?
21  A.    This circuit has been in the market over 20 years.
22  Q.    This pulse signal?
23  A.    Yes.
24  Q.    How do you know --
25  A.    This kind of design.

1138

Yang - direct

1  Q.    How do you know that?
2  A.    There are parts called UCC3842.  That is a Unitrol
3  part that have been in the market over 20 years.  I think
4  almost 30.  That part is very, very popular for power supply
5  market.  Every power supply engineer know these parts, is
6  developed by a company called Unitrol.
7  Q.    How long ago?
8  A.    Since I'm a student.  Okay.
9  Q.    That long?
10  A.    Yeah.  And this company is excellent company and they
11  was acquired by Texas Instruments.
12        MR. McMAHON:  All right.  So I'm going to move
13  from that for a moment.  And if we could go to Demonstrative
14  525.
15        This is a portion of a datasheet that is in
16  evidence, PX-377, your Honor.
17  BY MR. McMAHON:
18  Q.    Could you tell the ladies and gentlemen of the jury
19  what we're looking at here, Mr. Yang?
20  A.    Constant output power limit.
21  Q.    Now, what is the significance of that in the 5841J?
22  A.    5841J provide constant output power limit.
23  Q.    Okay.  Does it provide constant current?
24  A.    No.
25        MR. McMAHON:  Let me go to the next slide,

1139

Yang - direct

1  please.
2  BY MR. McMAHON:
3  Q.    Why doesn't it provide constant current?
4  A.    This is not a useful battery charger.  It is useful
5  like printer, monitor, such kind of application.
6  Q.    Okay.  Mr. Yang, we're looking at 526, demo 526.  Did
7  you draw this diagram?
8  A.    Yes.
9  Q.    Can you tell the ladies and gentlemen of the jury
10  briefly what this is?
11  A.    Okay.  I briefly make a definition.  Actually, it's a
12  theory about power.  Power is equal to voltage times
13  current.  And this curve, the power mean, I mean the
14  constant output power limit is made when the voltage goes
15  down, the current goes up.
16        So when voltage from 10 volt goes down to 5
17  volt, the current will, from 1N to 2N is almost 100 percent
18  change.  So this curve (indicating) is developed for 5841J.
19  5841J without constant current.
20        I make a brief explanation.
21  Q.    If it's brief.
22  A.    Okay.  So if you use 5841J parts to charge your
23  battery, the battery will be overheat and explode.  So 5841J
24  without constant current characteristics so cannot be use
25  for charger.

**Q.** All right. I want to go back -- just one last question here. So this line here is constant output power limit?
**A.** **Constant output power limit.**
**Q.** And what is this one that goes back the other way (indicating)?
**A.** **Okay. Is a voltage. The output voltage. When output voltage under a threshold, the control IC will be turn off in the battery because if the voltage is too low, that controller will operate improperly. So we must turn off the controller when is supply voltage is too low. So this mean the controller is turn off and the whole power supply is shut down.**
MR. McMAHON: Okay. Thank you. I'm going to go back to a slide we looked at just a bit ago. We're almost done.
517, please, Daniel.
Now, this is a portion of PX-377 in evidence, your Honor.
BY MR. McMAHON:
**Q.** We talked about this a few minutes ago. And could you tell the ladies and gentlemen of the jury of --
Daniel, can we highlight this area here?
Can you make it a little bit smaller and you can go on over to the left a little bit. Excellent. A little

more. Just to the edge of those comparators right there. Bring it up. Thank you.
Okay. Now, can you blow up these guys?
No, no, no. Leave that one there. Can you do that? I'm sorry, I'm having you do two things.
Super. Excellent. Excellent.
BY MR. McMAHON:
**Q.** Okay. Mr. Yang, there are some devices here. What are these? There are four devices here. One, two, three, four.
Go all the way down to the bottom, Daniel. Well, just to here (indicating). There you go.
Could you please tell the ladies and gentlemen of the jury what those are?
**A.** **Is capacitor array and a 8 switch.**
**Q.** And a what switch?
**A.** **Switch.**
**Q.** And a switch. Okay. Now, where is the switch? Can you use your laser pointer?
**A.** **(Indicating). At the top of the capacitor symbol is a switch here.**
**Q.** Okay. And then where are the capacitors?
**A.** **Down the switch is the capacitor. Yes.**
**Q.** Down there (indicating)?
**A.** **Yes.**

**Q.** Okay. Now, up here I have had Daniel highlight some devices up here. What are these?
**A.** **A digital signal.**
**Q.** Okay. And they are labeled "JB." We heard about this earlier today. What does that mean?
**A.** **Is input signal.**
**Q.** Input signal. Okay. Now, is this an A-to-D converter here?
**A.** **No.**
**Q.** What is it?
**A.** **It's a digital signal connect to the switch, turn off the switch. That is all.**
**Q.** All right. Now, ultimately, is there an analog signal that comes out somewhere?
**A.** **The output, the output of oscillator. That ramp signal is the output of the oscillator.**
**Q.** Okay. But the digital signal that comes in here simply, I think you said, does what to these switches here?
**A.** **The switch for the on and off the capacitor.**
The switch on/off, the capacitor, and the capacitance of the capacitor will be varied. So because of capacitance different, that will generate different frequency.
**Q.** I see. What does that cause? What does that make happen?

**A.** **That would make jitter.**
**Q.** Okay. And the jitter does what again?
**A.** **Reduce the EMI and noise.**
MR. McMAHON: That is all my questions. Thank you.
THE COURT: Thank you. Cross-examination.
MR. SCHERKENBACH: Yes, your Honor.
CROSS-EXAMINATION
BY MR. SCHERKENBACH:
**Q.** Hello, Dr. Yang.
**A.** **Hi, sir.**
**Q.** How are you doing? Okay? I know it's late in the afternoon. It can be a little tough for you.
**A.** **I'm okay. Thank you.**
**Q.** Are you all right?
**A.** **Yes.**
**Q.** I'll try to go slowly. You let me know if I go too fast.
**A.** **I appreciate it.**
**Q.** I just have a couple of preliminary things, and then I'm actually going to ask you about your testimony on those schematics. Okay?
**A.** **Okay.**
**Q.** All right. First of all, congratulations on your 180 U.S. patents. You must be proud of that. Right?

# EXHIBIT 2B

1167

1                   IN THE UNITED STATES DISTRICT COURT

2                   IN AND FOR THE DISTRICT OF DELAWARE

3                            - - -
    POWER INTEGRATIONS, INC.,
4                                          :  CIVIL ACTION
               Plaintiff,                  :
5    v                                     :
                                           :
6    FAIRCHILD SEMICONDUCTOR INTERNATIONAL,    :
     INC., FAIRCHILD SEMICONDUCTOR CORPORATION,:
7    and SYSTEM GENERAL CORPORATION,       :
                                           :  NO. 08-309-LPS
8            Defendants.          - - -

9                        Wilmington, Delaware
                        Tuesday, April 17, 2012
10                      *Jury Trial - Volume E*

11                           - - -

12   BEFORE: HONORABLE LEONARD P. STARK, U.S.D.C.J., and a jury

13   APPEARANCES:                    - - -

14               FISH & RICHARDSON, P.C.
                 BY:  WILLIAM J. MARSDEN, JR., ESQ.
15
                     and
16
                 FISH & RICHARDSON, P.C.
17               BY:  FRANK E. SCHERKENBACH, ESQ.
                     (Boston, Massachusetts)
18
                     and
19
                 FISH & RICHARDSON, P.C.
20               BY:  HOWARD POLLACK, ESQ.,
                     MICHAEL HEADLEY, ESQ.,
21                   JOHN M. FARRELL, ESQ.
                     KEELEY I. VEGA, and
22                   NEIL A. WARREN, ESQ.
                     (Redwood City, California)
23
                        Counsel for Power Integrations, Inc.
24
                        Brian P. Gaffigan Kevin Maurer
25                      Official Court Reporters

1180

1       Mr. Jacobs is now saying that Dr. Wei will
2 interpret the scope of what was given up during prosecution
3 in the Patent Office during reexam.  That was claim
4 construction.
5       THE COURT:  I am sustaining the objection to
6 this slide.  I think it does amount to arguing claim
7 construction.  It puts upon the jury issues that I don't
8 think belong in front of the jury.  I think what I am saying
9 today is consistent with what I ruled earlier.  If it isn't,
10 then what I am saying today is what governs how the trial
11 will go.
12       Any other issues from Power?
13       MR. HEADLEY:  No, your Honor, thank you.
14       THE COURT:  Any issues from Fairchild?
15       MR. JACOBS:  No, your Honor.  Thank you.
16       THE COURT:  Let's bring the jury in.
17       (Jury enters courtroom at 9:40 a.m.)
18       THE COURT:  Good morning, ladies and gentlemen
19 of the jury.  Welcome back.  Obviously, I was not much more
20 efficient this morning than yesterday.  But we are ready to
21 proceed.
22       I will turn to Mr. McMahon.
23       MR. McMAHON:  Thank you, your Honor.  We would
24 recall Mr. Yang.  If I may assist him up.
25       THE COURT:  You may.

1181

Yang - redirect

1       TOM YANG, having been previously sworn as a
2 witness, was examined and testified further as follows ...
3       THE COURT:  Good morning, Mr. Yang.
4       I remind you that you remain under oath to tell
5 the truth.
6       You may proceed.
7       MR. McMAHON:  Thank you.
8       REDIRECT EXAMINATION (Continued)
9 BY MR. McMAHON:
10 **Q.**    Good morning, Mr. Yang.
11       Yesterday, you were asked some questions by Mr.
12 Scherkenbach about the box of patents.  Do you remember
13 that?
14 **A.**    **Yes.**
15 **Q.**    So I showed you this box of patents.  I am going to
16 just lift it up.  Have you looked through this box last
17 night and this morning?
18 **A.**    **Yes.**
19 **Q.**    Are these all of your 180 patents?
20 **A.**    **Yes.**
21 **Q.**    Thank you.
22       Mr. Scherkenbach then asked you about two
23 specific patents that were in this group.  I am going to
24 hand these up.
25       MR. McMAHON:  Your Honor, may I approach the

1182

Yang - redirect

1 witness?
2       THE COURT:  You may, yes.
3 BY MR. McMAHON:
4 **Q.**    Mr. Yang, I have handed you up the '595 and the '972.
5 Would you take a look at those two patents, please?
6 **A.**    **Yes.**
7 **Q.**    Are those two of your 180 patents?
8 **A.**    **Yes.**
9 **Q.**    Now, are those two patents that are asserted in
10 this case by your company and Fairchild against Power
11 Integrations?
12 **A.**    **Yes.**
13       MR. McMAHON:  Your Honor, the '972 is already
14 in.  But the '595 isn't.  I would offer DX-5 into evidence,
15 the '595 patent.
16       MR. SCHERKENBACH:  No objection.
17       THE COURT:  It's admitted.
18       (DX-5 received in evidence.)
19 BY MR. McMAHON:
20 **Q.**    Would you first look at the '595.  Would you read the
21 title of the '595 patent into the record?  It's on the right
22 side at line 54.
23       MR. SCHERKENBACH:  Objection.  This is beyond
24 the scope of anything I did.  It pertains to their case, not
25 to our case.  He will have his chance later.

1183

Yang - redirect

1       THE COURT: Mr. McMahon what are we doing here?
2       MR. McMAHON:  I am going to identify these for
3 the record, what he was waving around yesterday.  He brought
4 these two patents and showed him and compared them to these
5 180 patents.
6       THE COURT:  If all you want is the title, go
7 ahead.
8       THE WITNESS:  Primary side control switching
9 regulator.
10 BY MR. McMAHON:
11 **Q.**    Primary side control patent?
12 **A.**    **Yes.**
13 **Q.**    Would you be good enough to read to the ladies and
14 gentlemen the '972 patent title?
15 **A.**    **It is Primary Side Control Power Converter having**
16 **Switching Controller using Frequency Hopping and Voltage and**
17 **Current Control Loops.**
18 **Q.**    This is also an accurate primary side patent control?
19 **A.**    **Yes.**
20 **Q.**    Mr. Scherkenbach asked you about some situations
21 where Power Integrations, they claim, is first.  Do you
22 believe that System General was first with an accurate tight
23 primary side control device?
24 **A.**    **Yes.**
25 **Q.**    Now, I want to ask you -- Daniel, could you please

1184

Yang - redirect

1   put up 513?

2          Mr. Yang, what is a schematic used for?

3   **A.     Used to build the parts.**

4   **Q.     What do you mean used to build the parts?**

5   **A.     Engineer, you will use this schematic to build the**

6   **integrated circuit.**

7          MR. McMAHON:  May I approach the screen?

8          THE COURT:  Yes, you may.

9          MR. McMAHON:  Thanks.

10  BY MR. McMAHON:

11  **Q.**     If we look here and look at the signals that come out

12  on the right here, this schematic is used by engineers that

13  actually build the part?

14  **A.     Yes.**

15  **Q.**     Is this like the recipe to help build the part?

16  **A.     Yes.  One of the recipes.**

17  **Q.**     So it is important that the engineers understand

18  whether something is, for example, an input or an output

19  because if it wasn't properly on the schematic the part

20  wouldn't be built correctly?

21  **A.     Correct.**

22  **Q.**     And you can't just change a signal from, say, an

23  output to an input without adversely affecting the way the

24  part would be built?

25  **A.     It is an output signal.  If you treat it as an input,**

1185

Yang - redirect

1   **the whole IP chip will disorder.**

2   **Q.**     The whole chip will disorder?

3   **A.     Yes.**

4   **Q.**     Not work?

5   **A.     Not work.**

6   **Q.**     Now, let's go to 517, please.  We looked at this

7   yesterday.  You testified yesterday that the COSC signal is

8   an output of the oscillator block.  Is that correct?

9   **A.     Correct.**

10  **Q.**     So if we could blow that up, please, and I think if

11  we go to the next slide -- just blow up the slide.

12         It is not that clear.  I will come over here

13  again.

14         This is the COSC?

15  **A.     Yes.**

16  **Q.**     Now, this is part of PX-377.

17         If we could go to 518.  Where does the COSC

18  signal go?  First of all, what block are we looking at here?

19  **A.     Oscillator.**

20  **Q.**     Quick question about blocks.  On the set of

21  schematics for this part, it is about an inch thick.

22  Correct?

23  **A.     Yes.**

24  **Q.**     There are a lot of pages of schematics.  Right?

25  **A.     Yes.**

1186

Yang - redirect

1   **Q.**     And why are there a lot of different pages of

2   schematics?

3   **A.     Basically, that related to the IC process.  Each**

4   **individual block, the function correlated.**

5          So the circuit, internally, the circuit must

6   work properly.  And then any components in between each

7   other must be correlated.

8          So the engineer will have the schematic and

9   during the layout, just look like they are doing the

10  building blocks, when doing the layout, those circuits must

11  be dramatically mentioned.  Otherwise, IC won't work.  This

12  is a very fundamental technology of integrated circuits.

13  **Q.**     Thank you.  So this schematic is for what block?

14  **A.     Oscillator block.**

15  **Q.**     The COSC signal that was over here, we have blown it

16  up in the middle, is this an output or an input?

17  **A.     Output signal.**

18  **Q.**     It is an output from what block?

19  **A.     Oscillator block.**

20  **Q.**     What block does the output from the oscillator block

21  go to?

22  **A.     PWM block.**

23  **Q.**     Can we go to the PWM block quickly, please.  I think

24  that's 521.  It's hard to see.  Can you see right up here,

25  sir, what signal is that?

1187

Yang - redirect

1   **A.     COSC signal.**

2   **Q.**     And that signal is in what block here?  Can you tell

3   us what block we are looking at?

4   **A.     PWM block.**

5   **Q.**     So that COSC signal is not a control input into the

6   oscillator block, is it?

7   **A.     It's not.**

8   **Q.**     Can we go back to the prior slide, 518.  Have you

9   traced the -- first of all, you designed this part, did you

10  not?

11  **A.     I know very well.**

12  **Q.**     Have you traced the COSC block, the signal from the

13  oscillator block to the PWM block, traced it to see where it

14  goes?

15  **A.     Yes, I did.  But, you know, I know these parts very**

16  **well.**

17  **Q.**     Does the COSC signal ever become an input, control

18  input into the oscillator block?

19  **A.     It is impossible.  I did the design to this chip.**

20  **This is impossible to input to the oscillator.**

21  **Q.**     So the COSC signal is never an input into the

22  oscillator block.  Is that right?

23  **A.     Yes.**

24  **Q.**     Thank you.

25         Can we go to 521, please.

1188

Yang - redirect

1    MR. McMAHON:  I'll tell you what.  First can we
2  go to 519?
3    There we go.
4  BY MR. McMAHON:
5  **Q.**    Okay.  What block are we looking at now?
6  **A.**    **PWM block.**
7  **Q.**    Okay.  And we know that because it's listed right
8  down here on the schematic (indicating)?
9  **A.**    **Yes.**
10  **Q.**    Okay.  Now, yesterday we talked about the blue signal
11  here.  What is that signal?
12  **A.**    **Maximum duty cycle signal.**
13  **Q.**    All right.  So it starts here, after the COSC, and
14  then it goes over.  And what is this block here (indicating)?
15  **A.**    **Comparator.**
16  **Q.**    That is I -- could you tell us what block that is?
17  Is it I84?
18  **A.**    **Yes.**
19    MR. McMAHON:  Can we back out, please, Daniel?
20  Good.  Just like it like that for a second.
21  BY MR. McMAHON:
22  **Q.**    Now, is this a maximum duty cycle?  The blue line?
23  **A.**    **Yes.**
24  **Q.**    And the yellow line we talked about yesterday is the
25  pulse, and that is what kind of signal?

1189

Yang - redirect

1  **A.**    **Clock signal.**
2  **Q.**    Okay.  What does the blue line do?  What is its
3  function?
4  **A.**    **To limit maximum duty cycle.**
5  **Q.**    Can you just briefly tell us what a maximum duty
6  cycle is?
7  **A.**    **The maximum duty cycle is mean the maximum on time of**
8  **the switching signal.  This mean when the switch turn off**
9  **for a charge the transformer, the maximum turn on time, that**
10  **divided by the period of switching signal.  That is a**
11  **definition of maximum duty cycle.**
12  **Q.**    What block is this maximum duty cycle, this blue
13  line?  What block is this in?
14  **A.**    **PWM block.**
15  **Q.**    Not the oscillator block?
16  **A.**    **No.**
17  **Q.**    Why is this signal in your part in the PWM block and
18  not the oscillator block?
19  **A.**    **Okay.  This signal is used to limit maximum duty.**
20  **And for some of the application, that require different**
21  **maximum duty in order to prevent the transformer being**
22  **saturate.**
23  **Q.**    Saturated?
24  **A.**    **Saturation.  So for some of the application, the**
25  **maximum duty must be under control.  So this block, we use**

1190

Yang - redirect

1  **the comparator here to compare the oscillation signal and**
2  **then we can adjust the transport part, the comparator to**
3  **change the maximum duty cycle so that can fit different**
4  **application needs.**
5  **Q.**    So a customer wants the part or this switch to turn
6  off before this pulse signal would turn it off and so you
7  added this signal?  Is that it?
8  **A.**    **Yes.**
9  **Q.**    Okay.  So if you didn't have the maximum duty cycle,
10  this blue signal, would the part eventually be turned off by
11  the pulse or clock signal?
12  **A.**    **Yes.  This is so-called dead time of the switching**
13  **signal.**
14  **Q.**    Dead time?
15  **A.**    **D-e-a-d.**
16  **Q.**    Okay.
17  **A.**    **That is so-called dead time.  That, you know, Unitrol**
18  **parts use this term.  So this is dead time of the switching**
19  **signal.**
20  **Q.**    Okay.  Is the maximum duty cycle, here this blue
21  signal, a special signal?
22  **A.**    **Is a special.**
23  **Q.**    Now, under what circumstances do you have this blue
24  signal or maximum duty cycle in your parts?
25  **A.**    **When we require, when the customer require or**

1191

Yang - redirect

1  **application require that the maximum duty should be under**
2  **the control, that shorter than the dead time.**
3  **Q.**    Now, will the part still perform and work if the blue
4  maximum duty cycle is not in the part?
5  **A.**    **For the most of the application, yes.  But for some**
6  **specific applications that require accurate limit for**
7  **maximum duty, then it won't work properly.**
8  **Q.**    Would it be fair to say that the maximum duty cycle,
9  the blue signal over here, turns the part off sooner than
10  the pulse signal would if the customer is concerned about
11  damaging the electrical part that is attached to it?
12  **A.**    **Yes.**
13  **Q.**    So it's a special signal that helps turn it off
14  sooner if the customer wants it to protect the device?
15  **A.**    **Yes.**
16  **Q.**    Now, between the PWM circuit or block and the
17  oscillator block, is one simpler than the other?
18  **A.**    **The oscillator circuit is most complicated circuit in**
19  **this part.**
20  **Q.**    Is the PWM circuit then less complicated than the
21  oscillator?
22  **A.**    **Yes.**
23  **Q.**    Why didn't you put this blue line, this maximum duty
24  cycle in the oscillator block?
25  **A.**    **Is too complicate.  The oscillator circuit, we**

1192

Yang - redirect

1   must have trip, so-called.  We have a fuse inside the IC,
2   very tiny fuse.  So in the oscillator, we must trip the
3   frequency.
4           So we want that circuit to complicate.  If the
5   customer require different maximum duty cycle, then we can
6   simply make it happen in PWM block.  We don't want to
7   tune --
8   Q.      Tune?
9   A.      -- the oscillator.  That is not easy to control.
10  Q.      So let me ask you a question then.  We're going to
11  talk about the PWM block.  We have the blue signal here
12  which is the maximum duty cycle.  And this can get changed.
13  Is there something here that allows the engineer to adjust
14  it or change it depending on customer desires?
15  A.      Just a simple change, the threshold voltage.  I
16  remember that is 2.2 volt.  You can change it to 1.2, you
17  can change it to 2, change the threshold voltage of this
18  comparator will allow to adjust the maximum duty cycle.
19  Q.      And that depends on what the customer wants for the
20  part they're seeking to hookup to this?
21  A.      Yes.
22  Q.      Okay.  Now, why would you have this maximum duty
23  cycle blue line here and also the yellow line with the pulse
24  or clock signal?  Why have both?
25  A.      The pulse signal is a clock signal, is a very

1193

Yang - redirect

1   fundamental signal.  Is must because clock signal is used to
2   turn on the PWM signal, the switching signal, and it must
3   work for switching signal.  So pulse, that clock signal, is
4   a must signal.
5   Q.      Would the part work without the pulse signal?
6   A.      No.
7   Q.      But would the part work without a maximum duty cycle?
8   A.      Yes.
9   Q.      So this is an additional signal, if the customer
10  wants it, to be able to turn the part off after a shorter
11  amount of time?
12  A.      Correct.
13          MR. McMAHON:  Okay.  Now I'd like to go to 521.
14          I think that is it.  Thanks.
15  BY MR. McMAHON:
16  Q.      So what part is this a schematic for?
17  A.      The 6842.
18  Q.      You also designed this one?
19  A.      Yes.
20  Q.      And this is what circuit?
21  A.      PWM circuit.
22  Q.      Now, as we saw yesterday, it has the pulse signal,
23  the clock signal?
24  A.      Yes.
25  Q.      Because it must or it won't work?

1194

Yang - redirect

1   A.      Yes.
2   Q.      But this one, Mr. Yang, doesn't have the maximum duty
3   cycle blue line?
4   A.      Because application not require this signal.
5   Q.      Okay.  And we're still talking about the PWM block
6   here, not the oscillator block; correct?
7   A.      Correct.
8   Q.      Is there another signal here that the customers
9   wanted that you put in this block instead of a maximum duty
10  cycle?
11  A.      Overvoltage protection signal.
12  Q.      So the answer is, yes, there is another signal here
13  that took the place of the maximum duty cycle signal instead
14  of?
15  A.      Yes.
16  Q.      And what is that called?
17  A.      Overvoltage protection signal.
18  Q.      Now, that is not a maximum duty cycle, is it?
19  A.      No.
20  Q.      What does it do?  Tell be what that is again, please.
21  A.      Okay.  Overvoltage protection.
22          MR. McMAHON:  Now, it's hard to see.  Can you
23  blow this up right here, Daniel?  Just this (indicating).
24  Okay.
25  BY MR. McMAHON:

1195

Yang - redirect

1   Q.      Is that the signal we're talking about?
2   A.      OVP means overvoltage protection.
3   Q.      So what does the overvoltage protection do?
4           MR. McMAHON:  And if we can take the big view
5   again, please?  There we go.  So that little guy is right
6   there (indicating).
7   BY MR. McMAHON:
8   Q.      So what does that do?
9   A.      Every control IC must have a power supply, power
10  source to let the parts operate.  If this voltage over
11  maximum threshold, will kill the product.  And then signal
12  will be out of order.  So before reach that maximum
13  threshold of that so-called VCC, is a power source of this
14  IC, we must turn it off.  That will make sure the part is,
15  will not be permanent damaged and also protect the power
16  supply.  I mean the unit provide power by that power supply
17  can be protected.  So that is one of the important features,
18  overvoltage protection.
19  Q.      Okay.  So the overvoltage protection -- now, is that
20  a maximum duty cycle signal?
21  A.      No.
22  Q.      And you don't have a maximum duty cycle blue line
23  here (indicating)?
24  A.      No.
25  Q.      And does this part still work?

1196

Yang - redirect

1    A.    Yes.

2    Q.    And why is it that you have the OVP and not a maximum

3    duty cycle in this part?

4    A.    Customer requirement.

5    Q.    Still works?

6    A.    Still work.

7    Q.    I want to ask you about some datasheets that we heard

8    about yesterday. The first one I would look at, I believe

9    it's in evidence, is PX-288.

10            MR. McMAHON: That's in evidence, your Honor.

11            And this is for the 5841. It's a datasheet.

12    And I would direct your attention please to page 6.

13            Now, if we can blow that up.

14    BY MR. McMAHON:

15    Q.    So this is a datasheet, and we know what those are

16    now. We don't need to get a definition.

17            Which part is this?

18    A.    The 5841J.

19    Q.    Now, this says date and section here. Then it says

20    DCY-max, maximum duty cycle. It doesn't say signal there.

21    It just says maximum duty cycle?

22    A.    Yes.

23    Q.    Why doesn't it say signal?

24    A.    That is a specification, just to let the customer

25    know, the maximum duty, it could be for the switching

1197

Yang - redirect

1    signal.

2    Q.    Okay. What is -- can you tell the ladies and

3    gentlemen of the jury what the maximum duty cycle is for the

4    5841?

5    A.    It is in between 60 percent to 70 percent.

6    Typically, you would be 65 percent.

7    Q.    What does that mean, 65 or 70 percent of what?

8    A.    The maximum duty is the maximum divided by the period

9    of the signal. This means the maximum duty cycle is limited

10    under 65 percent.

11    Q.    So it is only going to be on for 65 percent of what

12    it could be on?

13    A.    It would be turned off.

14    Q.    At 65 percent?

15    A.    Yes.

16    Q.    Okay. Let's look at PX-381. I believe it's in

17    evidence. If we could look at page 6 also on that.

18            What part is this for?

19    A.    6842J.

20    Q.    6842J was the part that doesn't have that blue

21    maximum duty cycle. Correct?

22    A.    Without that maximum duty cycle signal.

23    Q.    Right. And it had the OVP, the over-voltage

24    protection.

25    A.    Yes.

1198

Yang - redirect

1    Q.    So I want to look at that same line that we looked at

2    for the 5841, I want to look at that same line here for the

3    6842J. So this is DCY-max and it says maximum duty cycle.

4    Do you see that?

5    A.    Yes.

6    Q.    It doesn't say maximum duty cycle, does it?

7    A.    No.

8    Q.    Why not?

9    A.    No need. It just shows the maximum duty cycle for

10    that switching signal.

11    Q.    Could you read over here to the right, if you could,

12    please, and tell us what the percentages are with the 6842J

13    that doesn't have a maximum duty cycle in it, that blue

14    signal?

15    A.    Yes. 85 percent typical.

16    Q.    Now, if I remember right, on the 5841, and I am sorry

17    for all these numbers, but in the 5841, the maximum was 65,

18    was the typical.

19    A.    Yes.

20    Q.    And this one is 85?

21    A.    Yes.

22    Q.    Now, why is this, the 6842J part, does that have a

23    higher typical maximum duty cycle than the 5841 that did

24    have that blue signal in it? Why is that?

25    A.    Before the clock signal turns off, the switching

1199

Yang - redirect

1    signal, and that maximum duty signal turns off in advance

2    the switching signal.

3    Q.    I am going to see if I understand this. So this part

4    doesn't have the blue line or the maximum duty cycle like

5    the 5841 does. So this stays on longer?

6    A.    Yes.

7    Q.    The other one stayed on, it was typical 65 percent?

8    A.    Yes.

9    Q.    So the blue signal, the maximum duty cycle, keeps the

10    part from staying on, so it cuts it off at 65 percent

11    instead of 85 percent?

12    A.    For 5841, maximum duty cycle signal, they can adjust

13    that maximum duty cycle from zero percent to in between 85

14    percent. So that is adjusting, just adjusting the voltage

15    of the comparator.

16    Q.    Let's look at these two parts side by side. So on

17    the left we have the 5841 with the blue maximum duty cycle,

18    and on the right we have the 6842J no maximum duty cycle,

19    but we have the OVP, or over-voltage protection. On this

20    part, it can run all the way to 85 percent, typically. Is

21    that right?

22    A.    Yes.

23    Q.    And in this part, it shuts off sooner at 65 percent

24    and that's what this blue signal does. Right?

25    A.    Correct.

1200

Yang - redirect

1  Q.    So this blue signal, if the customer wants it, is an
2  extra-special different signal to turn the part off sooner
3  if the customer wants it?
4  A.    Yes.
5        MR. McMAHON:  Thank you, your Honor.  No more
6  questions.
7        THE COURT:  Okay.  Do you want to help him step
8  down.
9        MR. McMAHON:  Yes, I do, if I may.
10       (Witness excused.)
11       THE COURT:  Who do we have next?
12       MR. McMAHON:  Just a second, your Honor.
13       We will next call Dr. Gu Wei, who has his Ph.D.
14  from Stanford, a professor from Harvard University, who is
15  our expert in this case, and will testify on both
16  noninfringement and that the four patents in this case are
17  invalid.
18       Mr. Jacobs will do the examination.
19       MR. JACOBS:  Your Honor, may I approach?
20       THE COURT:  You may.  Dr. Wei, you may come
21  forward.
22       GUYEON WEI, having been duly sworn as a witness,
23  was examined and testified as follows ...
24       THE COURT:  Good morning, Dr. Wei.
25       MR. JACOBS:  May I approach the witness, your

1201

Wei - direct

1  Honor?
2        THE COURT:  Yes.
3        DIRECT EXAMINATION
4  BY MR. JACOBS:
5  Q.    Good morning, Dr. Wei.  Could you please introduce
6  yourself to the judge and the jury?
7  A.    Good morning.  My name is Guyeon Wei.  I am a
8  professor of electrical engineering, computer science, at
9  the School of Engineering and Applied Sciences at Harvard
10  University.  I also currently serve as the associate dean
11  for academic programs there.
12  Q.    Dr. Wei, please tell the ladies and gentlemen of the
13  jury a little bit about your background?
14  A.    My background.  I was born in Seoul, Korea.  Then I
15  went to elementary school in McClean, Virginia, not too far
16  away from here.  Then I went to junior high school in the
17  Philippines and came back to the U.S., went to high school
18  in New Hampshire and went all the way across the coast to
19  California to go to college at Stanford.
20  Q.    And you went to college at Stanford.  Did you also
21  tend to any graduate studies there?
22  A.    Yes.  I spent quite a bit of time at Stanford.  I was
23  there for ten years.  I did my Bachelor's of science, my
24  Master's of science, and Ph.D., all in electrical
25  engineering.

1202

Wei - direct

1  Q.    And did you obtain a Ph.D. during your time at
2  Stanford?
3  A.    Yes, I did get a Ph.D.  That required me to write a
4  thesis.
5  Q.    What was the subject of your thesis?
6  A.    My thesis was entitled Efficient Parallel I-O Using
7  Adaptive Voltage Supply Regulation.
8        The basic concept there was, in order to have
9  two chips communicating with one another, like the chips you
10  might find in your computer, in order for them to
11  communicate with one another in an efficient manner, what we
12  did was to implement a power supply that will adjust the
13  frequency and the voltage such that when there is not much
14  communication going on, things will slow down, use less
15  energy.  And then when there is a lot of communication going
16  on, the voltage and frequency increases in order to get that
17  maximum performance.
18       So it was a very energy-efficient mechanism for
19  chip-to-chip communication.
20  Q.    What did you do after you received your Ph.D. in
21  electrical engineering?
22  A.    So as I was finishing up my dissertation, I applied,
23  actually, to teach and got my -- got a job offer to teach,
24  but I felt like, you know, I have been in school for so long
25  I should go out to industry and work for a little bit.  So I

1203

Wei - direct

1  went to a small startup company in Beaverton, Oregon, where
2  I worked on the design of various chips, for about a year
3  and three months, before I went to Harvard to teach.
4  Q.    And how long have you been a professor at Harvard for
5  now?
6  A.    So I have been a professor since January of 2002.  A
7  little over ten years.
8  Q.    Can you please summarize your activities as a
9  professor at Harvard?
10  A.    So there is a lot of things that go on.  I have to
11  teach there.  I teach classes, I teach one undergraduate
12  course, then I also teach a graduate course, both in circuit
13  designs of various types.  I also do a fair amount of
14  research.  I have roughly ten graduate students, what are
15  called post-docs, people who already have Ph.D.'s, I advise
16  them on various research activities.  I write proposals to
17  the government in order to get research funding and also get
18  some research funding from industry.
19       Then about another third of my time is spent on
20  administrative duties, especially since these days I am the
21  associate dean, I have to oversee that all the classes are
22  being taught.  Currently, we are bringing on new majors for
23  electrical engineering or chemical engineering.  So I
24  oversee that whole process.  And then we also brought on a
25  new Master's program in computational science engineering.

# EXHIBIT 2C

1661

1       IN THE UNITED STATES DISTRICT COURT

2       IN AND FOR THE DISTRICT OF DELAWARE

3                   - - -

POWER INTEGRATIONS, INC.,

4                                        :   CIVIL ACTION
            Plaintiff,                   :
5       v                                :
                                         :
6       FAIRCHILD SEMICONDUCTOR INTERNATIONAL,    :
        INC., FAIRCHILD SEMICONDUCTOR CORPORATION,:
7       and SYSTEM GENERAL CORPORATION,          :
                                         :   NO. 08-309-LPS
8           Defendants.        - - -

9                       Wilmington, Delaware
                        Tuesday, April 24, 2012
10                      *Jury Trial - Volume G*

11                  - - -

12   BEFORE: HONORABLE LEONARD P. STARK, U.S.D.C.J., and a jury

13   APPEARANCES:              - - -

14           FISH & RICHARDSON, P.C.
             BY:  WILLIAM J. MARSDEN, JR., ESQ.
15
                 and
16
             FISH & RICHARDSON, P.C.
17           BY:  FRANK E. SCHERKENBACH, ESQ.
                 (Boston, Massachusetts)
18
                 and
19
             FISH & RICHARDSON, P.C.
20           BY:  HOWARD POLLACK, ESQ.,
                 MICHAEL HEADLEY, ESQ.,
21               JOHN M. FARRELL, ESQ.
                 KEELEY I. VEGA, and
22               NEIL A. WARREN, ESQ.
                 (Redwood City, California)
23
                     Counsel for Power Integrations, Inc.
24
                     Brian P. Gaffigan/Kevin Maurer
25                   Official Court Reporters

1810

Yang - direct

1  I hope and believe that lunch is here, ladies and gentlemen
2  of the jury.  Of course, no talking about the case during
3  the break.  We will get you back here as soon as we can.
4              (Jury leaves courtroom at 12:45 p.m.)
5              THE COURT:  We will be in recess.
6              (Luncheon recess taken.)
7              THE COURT:  Anything before we bring the jury
8  in?
9              MR. McMAHON:  No, Your Honor.
10             THE COURT:  We will bring them in.
11             (Jury enters courtroom at 1:23 p.m.)
12             THE COURT:  Welcome back.  I hope you all had a
13 nice lunch.
14             Mr. McMahon.
15             MR. McMAHON:  Thank you, Your Honor.  System
16 General/Fairchild would next call Tom Yang.
17             TOM YANG, having been previously sworn as a
18 witness, was examined and testified further as follows ...
19             THE COURT:  Welcome back, Mr. Yang.  Good
20 afternoon.  I remind you, you remain under oath.  Okay?
21             THE WITNESS:  Thank you.
22                  DIRECT EXAMINATION
23 BY MR. McMAHON:
24 Q.    Good afternoon, Mr. Yang.  Let me --
25             MR. McMAHON:  If I may approach?

1811

Yang - direct

1              THE COURT:  Yes.
2  BY MR. McMAHON:
3  Q.    Mr. Yang, have you prepared a series of slides to
4  help with your testimony?
5  A.    **Yes.**
6  Q.    If we could put up, please, the 500 series.
7              Could you tell the ladies and gentlemen of the
8  jury what you have done here?
9  A.    **I will show why we need a power supply and why we**
10 **need the primary side control.**
11 Q.    Okay.  What do we see here on Slide No. 1 -- Demo
12 501?
13 A.    **We see that small cubic-sized charger adapter is a**
14 **five watts to tens watt with constant current output, and**
15 **that piece at the right-hand side, a big adapter that**
16 **normally is a 65 watt, for printer, monitor, or laptop.**
17             It is, in general, constant power output.
18             So in order to charge the battery inside the
19 laptop, the laptop inside requires extra battery charger
20 constant current circuit.
21 Q.    All right.  Then what do -- let's go to the next
22 page, please.  What are we showing here, briefly?
23 A.    **We show why we need a power supply.  The power supply**
24 **can regulate the output.**
25 Q.    Okay.  Then on the left, that squiggly line with the

1812

Yang - direct

1  90 and 264, what do we see here?
2  A.    **In the United States, the utility power in the wall**
3  **part is 120.  But it could change from 90 to 132.  But in**
4  **Europe, a 220 system, it will change from 180 to 260 volt.**
5              So when you carry a charger, in the United
6  States, or go to Europe, even go to China, you don't worry
7  about the wall part voltage if the charger adapter can allow
8  it to perform 90 to 264 volt.  That is very useful.
9  Q.    Next slide, please.  What are we showing here, Mr.
10 Yang?
11 A.    **The most important thing for a power supply is**
12 **safety.  They provide a safety to protect the user from**
13 **electrical shock.**
14 Q.    Why is -- showing a little electrical shock here --
15 but why is there a shock occurring here?
16 A.    **The power, the wall part, the voltage is very high,**
17 **and the same ground as our ground would stand.  So if there**
18 **is no isolation, it is very possible to have an electrical**
19 **shock.**
20 Q.    Let's go to the next slide, please?
21             I am sorry, I am going a little fast, but we are
22 getting to the end of things, we need to use our time well.
23             So what does this have to do with the safety
24 issue you were just telling the jury about?
25 A.    **Yes.  Every power supply inside has a transformer.**

1813

Yang - direct

1  **The transformer is a magnetic part, an electrical isolation**
2  **part.  That provides an isolation barrier from the input**
3  **wall part to the output of a power supply.  That can protect**
4  **the user from electrical shock.**
5  Q.    Can you use your laser pointer and point us to the
6  transformer, please?
7  A.    **Yes.  The transformer, like this.**
8  Q.    Okay.  So what does that transformer do, then, to
9  help safety?
10 A.    **Because there is a magnetic part, that is electrical**
11 **already, so it provides an isolation barrier.**
12 Q.    Let's go to the next slide.
13             So what are we showing here and why is this
14 going to help prevent -- we don't see the electrical shock
15 on the right side there.  Why is that?
16 A.    **The most important thing for a power supply is to**
17 **protect you from electrical shock.  That is the major**
18 **purpose.**
19             **The second purpose is to provide a regulated**
20 **output.**
21 Q.    If we go to the next slide, please, what are we
22 seeing here, Mr. Yang?
23 A.    **In order to provide a regulated output, the**
24 **controller, the controller inside the power supply, like**
25 **this, is a chip.  It will receive the information from the**

Yang - direct

**1** output of the power supply, so-called feedback signal,

**2** detect a feedback signal, and then generate a PWM signal.

**3** The PWM means pulse width modulation.  It will generate a

**4** pulse width modulation signal to regulate that output.  When

**5** output voltage goes down, the pulse width of the signal will

**6** widen to increase the power to the output and then the

**7** output will go up.

**8**        Once the output voltage goes up, the controller

**9** will detect, the signal does go up, and then will shorten

**10** the pulse width and then the power delivered to the output

**11** will be lower.

**12**        So once in a while the power at the output will

**13** be stable and under-regulated.

**14** **Q.**    Now what do we see here?  I am putting a little

**15** electronic circle around that you have labeled PWM Control.

**16** **A.**    Yes, the PWM control, this is the pulse width, the

**17** wider pulse width and shorter pulse width.  A wider pulse

**18** width will increase the output and the shorter pulse width

**19** will decrease the output.  That is pulse width modulation.

**20** We see the curve go up here.

**21** **Q.**    That is because why?

**22** **A.**    Because of the power delivery to the output.

**23** **Q.**    Is higher or lower?

**24** **A.**    Yes.

**25** **Q.**    Is it higher or lower when it goes up like this?

Yang - direct

**1** **A.**    Going up means higher.  Going down means lower.

**2** **Q.**    What controls all of this?

**3** **A.**    PWM controller.

**4** **Q.**    Is that what your company makes?

**5** **A.**    Yes.

**6**        MR. McMAHON:  Your Honor, I have shown it to

**7** counsel.  I have a 6842J on my fingertip here.  May I

**8** approach the witness?  I want him to show the jury so they

**9** get a sense.

**10**        THE COURT:  You may do so.

**11** BY MR. McMAHON:

**12** **Q.**    Can you tell the ladies and gentlemen of the jury

**13** what that is?

**14** **A.**    This is the chip, very small.

**15** **Q.**    Can you try to show it, put it against your finger

**16** somehow so the jury can see?

**17** **A.**    And in the future, even smaller.

**18** **Q.**    So that little thing is what we are talking about

**19** here?

**20** **A.**    Yes.

**21**        THE COURT:  Maybe for the record we could

**22** estimate the size of it or compare it to the fingernail.

**23** BY MR. McMAHON:

**24** **Q.**    Can you estimate the size of this?  His Honor is

**25** suggesting based on your fingernail.  Just the size?

Yang - direct

**1** **A.**    It's smaller than fingernail.  It's about a quarter

**2** size of a fingernail.

**3**        THE COURT:  Thank you.

**4**        THE WITNESS:  It is the brains of the power

**5** supply.

**6** BY MR. McMAHON:

**7** **Q.**    It is the what?

**8** **A.**    Brains.

**9** **Q.**    If we can go to the next slide, please.  What are we

**10** showing here now, talking about the PWM controller?

**11** **A.**    I want to show what is a PWM more clear.  So this is

**12** an example to show how a PWM controller operates.

**13**        I take the temperature control of the living

**14** room as an example.  When the living room temperature goes

**15** down, and then the PWM controller will work like a

**16** thermostat.  It will sense the temperature goes down, and

**17** turn on the heat switch, heater switch, for a longer time.

**18** And then the temperature will go up.

**19**        Once the temperature goes up, the thermostat

**20** will detect, okay, the temperature is higher than the

**21** specific temperature, and then will turn the heater switch a

**22** shorter time, turn on the heater switch a shorter time.

**23**        Then, after while, the temperature will go

**24** steady in the living room.

**25**        The difference in between the power supply PWM

Yang - direct

**1** controller and the single-state PWM controller, what is the

**2** difference in the power supply PWM signal is switched on and

**3** off about 100,000 times per second, very high frequency.

**4** And the thermostat change is minutes, very slow.  That is

**5** the difference.

**6** **Q.**    Like mine, not at all?

**7**        Okay.  So if we go to the next slide, please?

**8** **A.**    No.  Here.  Yes, here is the signal that connects to

**9** the output, to the PWM controller.  It is just a concept.

**10** This connection will cause electrical shock, because no

**11** isolation in this connection.

**12** **Q.**    I have got my red pointer here.  You are talking

**13** about this signal here that comes down, it's close to the

**14** point V-sub-zero right here?

**15** **A.**    Yes.

**16** **Q.**    Why would that cause an electric shock?

**17** **A.**    No oscillation.

**18** **Q.**    And then how do you deal with that?

**19** **A.**    Okay.  That's the next page.

**20** **Q.**    Next slide, please.  How do we fix that?

**21** **A.**    Okay.  So we need a component called an opto-coupler.

**22** **Q.**    We have it labeled right here.  Is that it?

**23** **A.**    Opto-coupler.  Opto-coupler will connect to the

**24** output of the power supply, and generate an isolating

**25** feedback signal connected to the PWM controller and the

1818

Yang - direct

1  controller will generate the PWM signal to regulate the
2  output.
3          And the opto-coupler inside includes two parts.
4  One is a light transmitter.  And the other one is a light
5  receiver.
6  Q.   Why do you have -- first of all, let me ask you
7  question:  What is this signal here?  What do you learn from
8  this line here or this signal coming down?
9  A.   It is a feedback.
10 Q.   Why do you have feedback?
11 A.   Once we have a feedback, we will know the output
12 voltage or output current is higher or lower.
13 Q.   That's kind of like your thermostat, you know if it's
14 working right?
15 A.   Yes.
16 Q.   So, again, so you use light here instead of an
17 electronic signal.   Why?
18 A.   Isolation, to provide isolation.
19 Q.   So you have a flashlight here.  But this signal comes
20 down here into something that creates light?
21 A.   Yes.  It will have a control that controls the
22 intensity of the light in accordance with the output voltage
23 of current.  So just like a dimming, a dimming.
24 Q.   Dimming?
25 A.   Yes.  And the light receiver, that part, will receive

1819

Yang - direct

1  the light, and convert the light to be an electrical signal
2  and connect to the PWM controller.
3  Q.   Okay.  Then it can tell if the thermostat needs to
4  change or not?
5  A.   Yes.
6  Q.   Okay.  So, now what kind of a part is this?  How
7  could you describe this generally with the optocoupler in
8  here and the two parts of the optocoupler?
9  A.   The so-called secondary side control power supply.
10        MR. McMAHON:  And can we go to the next slide,
11 please?
12 BY MR. McMAHON:
13 Q.   What does this slide show, Mr. Yang?
14 A.   The market, the customer, particularly for power
15 supply manufacturer, they require to remove the optocoupler
16 and its control circuit.
17        There is three reason.  The first reason is the
18 cost.  Charger adapter is the big.  I mean the market is,
19 demand is very, very high.  Is almost 1 billion unit
20 required in the market per year.
21        If we can set 10 cents for each and then we can
22 set $100 million US dollars yearly, so this is a lot of
23 money.  This is first reason.
24 Q.   Okay.
25 A.   The second reason.  The reduced optocoupler and its

1820

Yang - direct

1  control circuit can reduce the size of the power supply, so
2  we can make adapter smaller.  The size is request for Nokia.
3  I remember is about 2001 and 2002.  They require not to use
4  optocoupler because the optocoupler has a potential risk to
5  have leakage, electrical leakage current from the input to
6  the output and that electrical leakage current is a
7  possible, it is possible -- it is impossible to code the
8  tech-maker mail function (phonetic).
9          So there is the three reason that require to
10 remove the optocoupler.
11 Q.   How did you find out that you said Nokia wanted to
12 essentially get rid of the optocoupler and everything
13 related to it?
14 A.   Yeah.  Because they tell their supplier.  And one of
15 the company, their supplier call Astec/Emerson.
16 Q.   Astec/Emerson?
17 A.   Emerson, yes.
18 Q.   Okay.
19 A.   They told us.
20 Q.   And what did Astec/Emerson tell you?
21 A.   They want us to provide an accurate primary-side
22 control solution without optocoupler.
23 Q.   And then what did you do when you heard from
24 Astec/Emerson that Nokia wanted an accurate primary-side
25 controller?

1821

Yang - direct

1  A.   Yeah.  We work very hard to find a solution.
2          We can see next, please?
3  Q.   Okay.  Let's go to the next-page.
4          So what did you do?
5  A.   Yeah.  Without optocoupler, how we get the feedback
6  signal from the output?  How we regulate the output of the
7  power supply?
8          First signal, the transformer signal, the
9  waveform signal can be used to generate the feedback signal
10 but it require more complicate algorithm for the controller.
11 Q.   A complicated algorithm?  What is an algorithm?
12 A.   It's how we measure the waveform.  The waveform
13 inside include the information of the output voltage and
14 output current.  And so we need to find out and use the
15 signal process to find it out, to detect that signal and
16 then convert to feedback signal.
17 Q.   Can you just briefly show us where in the transformer
18 you get the signal from the primary side that you can test
19 that used to be on the secondary side?
20 A.   You see that transformer there, that winding, that
21 green color, that waveform is coupled to the feedback of the
22 controller.
23 Q.   It's the squiggly line between Na and Np on demo 510?
24 A.   Yes.
25 Q.   Okay.

1822

Yang - direct

1    A.    But -- excuse me.  But the customer, actually the
2    power supply manufacturer, they require without -- the
3    optocoupler.  They still require the power charger have the
4    same performance with the optocoupler.
5          So when the Nokia issue this request, I remember
6    the company in Europe, very big company, called Infineon,
7    they say this is mission impossible.
8    Q.    What was mission impossible?
9    A.    It's mission impossible to provide very accurate
10   primary-side control.
11   Q.    How do you know that Infineon thought that providing
12   accurate primary-side control was mission impossible?
13   A.    They told me.
14   Q.    How was it that they told you?
15   A.    Okay.  Infineon, they want to acquire System General.
16   And when they try to contact us, they tell me this is
17   mission impossible.
18   Q.    But you -- at the time you talked to them, you had
19   done it?
20   A.    Yes.
21   Q.    It wasn't mission impossible for you?
22   A.    To provide accurate primary-side control.
23   Q.    Okay.  You did it?
24   A.    We did it.
25   Q.    Okay.  Now, Infineon, did they actually offer a sum

1823

Yang - direct

1    of money to buy System General?  And when was this?
2    A.    You mean how much money?
3    Q.    Yes.
4    A.    Around $80 million, U.S. dollar.
5    Q.    And when did they make that offer?
6    A.    I don't recall.  Is 2004.
7    Q.    Okay.
8    A.    2003-2004.
9    Q.    Please, if we could, could you tell me what did you
10   and your engineers at System General do to comply with
11   Nokia's request to have an accurate primary-side controller?
12   What did you do?
13   A.    We struggle to find out solution.  We took more than
14   one year to test and develop the solution.  I still remember
15   it.  Is back to 2003, in the wintertime, so cold.  And we
16   have four engineer, including myself.  We work in the back.
17   We work until around 3:00 a.m. in the morning, so it's
18   midnight.
19         One engineer is winding the transformer and
20   another solder the IC.  We test the output.  Is it accurate?
21   The component inside look like transformer.  That the
22   primary variation, how did that happen?  We have to make
23   sure that we can have very accurate control.
24         We work until midnight, and we test it.  And we
25   fail to achieve that spec, that requirement.  We very tired

1824

Yang - direct

1    and discouraged.  So I tell engineers let's go home.  Let's
2    do it tomorrow or after tomorrow.
3          And I, I really tired.  I walk back to my office
4    and I sit down and ask myself why I need to stop in that old
5    technology?  And, suddenly, idea come to my mind.  Why I
6    don't just use the output current to control output current?
7    And what is the relation in between the output current and
8    the primary side current, that switching current?
9          I sit down, I write down the transformer
10   function.  I write down equation.  And I find is possible,
11   so I continue to work.  And I find it's very possible to
12   find other solution.  So actually I didn't go home.  I work
13   until the morning, and then I work with the engineer for
14   simulation.  We can make it according to the equation I
15   wrote down that night.
16   Q.    And did you make it?
17   A.    Yeah, we make it.  This invention is very important
18   for my life.  For my life.
19         But more important is this invention give me
20   lesson.  The lesson is I don't need to stop at old
21   technology, old stop, and my thought used to be.  I need to
22   break through.  I need to break through inertia.  I overcome
23   the inertia and I can have invention.  I can have a better
24   life.  This is very important for me.
25   Q.    Now, these equations that you talked about that you

1825

Yang - direct

1    drew up that late -- well, early that morning and into the
2    day, did those end up into patents?
3    A.    Yes.
4    Q.    And are we going to see some of those equations
5    today?
6    A.    Yes.
7    Q.    Okay.
8    A.    Sure.
9    Q.    So could you please tell me -- so you didn't invent
10   primary-side control?
11   A.    No.
12   Q.    No.  Did you invent primary-side control?
13   A.    I did.
14   Q.    The concept of primary-side control?
15   A.    I did.
16   Q.    Pardon me?
17   A.    I develop that concept?
18   Q.    Yes.
19   A.    No.  Primary-side control, particularly for output
20   voltage control, that technology for the power supplies is
21   over 30 years.  More than 30 years.  What I know the
22   primary-side control was, when I in the school.
23   Q.    Okay.  So you're aware of patents that covered
24   primary-side control?
25   A.    Yes.

1830

Yang - direct

1    Q.    Is frequency hopping also known as jitter?
2    A.    Yes.
3    Q.    And is it also known as spread spectrum?
4    A.    Yes.
5    Q.    Okay.  Sorry.
6    A.    So we don't want the output change.  Even we have a
7    frequency jitter or frequency hopping, we want the output
8    current as stable.
9          So we show that this is the output current.
10   That is, this signal is feedback signal of the output
11   current.  And this feedback signal correlated to output
12   current is a control by parameter called M.  And that is
13   the M.
14         Can we?  Okay.  Yes (indicating).
15         So the M show a lot of the parameter.  So, for
16   example, when we change the C910, in order to generate the
17   frequency hopping, same time, at the same time, if we change
18   the C930 at the same time, in the same ratio, and then the
19   M will keep as a constant.  So output current won't change
20   in response to the frequency hopping.
21   Q.    It would stay constant?
22   A.    Constant current.
23   Q.    Okay.  I'm going to shift gears, if I may.
24   A.    Yes.
25         MR. McMAHON:  I'm going to talk about another

1831

Yang - direct

1    patent.  I want to talk about, if we could, please, it's
2    already in evidence, DX-005, please.  Front page.
3          And if you could just blow up the first top
4    half.
5    BY MR. McMAHON:
6    Q.    Is this your patent?
7    A.    Yes, this is my patent for cable compensation.
8    Q.    Can you just read the title of it, please?
9    A.    Primary-side controlled switching regulator.
10   Q.    Okay.  Can we look at the bottom half of that,
11   please, now.  Can you tell the ladies and gentlemen of the
12   jury what this patent covers, what your invention is here?
13   A.    Okay.  The symbol 46, the symbols mean the output
14   cable, that cable, of the power adapter.
15   Q.    I am going to use -- what is this talking about?
16   This over here?
17   A.    Your right hand carries the cable.
18   Q.    What happens in what's between this block here and my
19   right hand?
20   A.    For most of the power adapters, you can only control
21   its voltage in the output terminal, in that one, yes.
22   Q.    This here?
23   A.    Yes.  But cannot control the voltage at the end of
24   the cable.  So when the current goes higher, the voltage
25   drops higher in that cable.

1832

Yang - cross

1          So the request from the market is, can we have
2    an accurate upper voltage control at the end of the cable.
3          So this invention, this patent, shows we can
4    have an accurate output voltage control at the end of the
5    cable.
6    Q.    It says load there.  What is the load?
7    A.    The load is like a charger for the computer.
8    Q.    So if you can control for the loss of power in this
9    line here, does it make the power to the load more accurate?
10   A.    Yes.  And also, it is important, without a cable
11   compensation, and then that output cable, the wire should be
12   thick, very thick.  So when we have the cable compensation
13   technology, that cable, the wire can be smaller, instead,
14   and send to the computer.
15         MR. McMAHON:  No more questions.  Thank you,
16   Your Honor.
17         THE COURT:  Cross-examination.
18         MR. SCHERKENBACH:  Yes, Your Honor.  Thank you.
19              CROSS-EXAMINATION
20   BY MR. SCHERKENBACH:
21   Q.    Good afternoon, Mr. Yang.
22   A.    Good afternoon, sir.
23   Q.    I want to try to understand the timeline here of when
24   you first came up with your primary side concept, as you
25   told the jury about.  Okay?

1833

Yang - cross

1          Can I have the opening Slide 6 from Fairchild,
2    please.
3          MR. McMAHON:  Do you have one for the witness?
4          MR. SCHERKENBACH:  Sure.  Sorry about that.
5          May I approach, Your Honor?
6          THE COURT:  You may.
7    BY MR. SCHERKENBACH:
8    Q.    Mr. Yang, you were here for the openings.  Right?
9    A.    Yes.
10   Q.    I just want to try to square what you just testified
11   to to some of the dates on this timeline that were talked
12   about earlier.
13   A.    Okay.
14   Q.    You told us on direct, I think, about the part, the
15   2001 entry, where you were asked by Nokia to develop a
16   primary side solution.
17   A.    At that time Nokia issued their request to their
18   vendors.  And one of their vendors is Astec-Emerson.  They
19   told us that they required such kind of solution.
20   Q.    And so that relates to the 2001 entry on this
21   timeline?
22   A.    It was around 2001 and 2002.
23   Q.    Okay.  And then, I thought I understood you to say on
24   direct it took you a year or so to figure out that problem,
25   the solution to that problem.  Right?

# EXHIBIT 2D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION, and SYSTEM GENERAL CORPORATION, | |
| Plaintiffs, | C.A. No. 12-540-LPS |
| v. | |
| POWER INTEGRATIONS, INC., | |
| Defendant. | |

**REBUTTAL EXPERT REPORT OF DR. EDWARD R. COLLINS, JR.
REGARDING VALIDITY OF U.S. PATENT NOS.
7,286,123, 7,525,259, AND 7,259,972**

October 17, 2014













**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

    Plaintiffs,

  v.

POWER INTEGRATIONS, INC.,

    Defendant.

C.A. No. 12-540-LPS

**Highly Confidential**

**FAIRCHILD'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 2 TO
PRECLUDE LAY WITNESS TESTIMONY ON ULTIMATE ISSUES OF
<u>INFRINGEMENT AND VALIDITY</u>**

Counsel for Plaintiffs


Blair M. Jacobs
Christina A. Ondrick
PAUL HASTINGS LLP
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

Dated: April 17, 2015

PI has a well-established pattern of presenting fact witnesses to provide testimony cloaked as faux-expert opinion.  PI did it in *Fairchild IV* with Mr. Balakrishnan (Opening, Ex. A), and is poised to do it again (Opening, Ex. B).  In fact, PI's opposition concedes that PI intends to present fact witness testimony about "why [fact witnesses] believe PI's products are different from the inventions claimed in Fairchild's patents, as well as Fairchild's inventors' testimony about what they viewed as being covered by the claims of their own patents."  (Opp. at 2).  As PI readily admits, PI will suffer no prejudice from granting Fairchild's motion.  The Court must grant Fairchild's motion to prevent PI from eliciting improper fact witness testimony about legal patent issues.

PI's argument that fact witnesses can provide testimony on the operation of products and the background of an invention misses the point completely.  PI has shown a clear pattern of elevating their fact witness, Mr. Balakrishnan, to that of an expert by arguing that his testimony should be compared to that of Fairchild's expert.  (Opening, Ex. A at 2721:12-13.)  Such arguments conflate fact witness testimony with that of expert testimony and are unfairly prejudicial to Fairchild.  *See Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1340 (Fed. Cir. 2010).  PI fails to cite any case to support its proposition that inventor testimony is proper on patent claim scope *in front of a jury*.  In *Voice Techs.*, the Federal Circuit merely stated that inventors may provide testimony during *claim construction* on "background information."  164 F.3d at 615.  At the same time, however, the Federal Circuit explained that judges "are not novices in receiving and weighing expertise on both sides of an issue."  *Id*.  As jurors are clearly novices, confusion will reign supreme when they are presented with improper lay witness testimony on purely legal issues, thus exposing Fairchild to unfair prejudice.  Fairchild's MIL No. 2 should be granted.

Dated: April 17, 2015

ASHBY & GEDDES

/s/ *John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

PAUL HASTINGS LLP
Blair M. Jacobs
Christina A. Ondrick
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

*Attorneys for Plaintiffs*

EXHIBIT 6C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

              Plaintiffs,

v.

POWER INTEGRATIONS, INC.,

              Defendant.

C.A. No. 12-540-LPS

**Highly Confidential**

**FAIRCHILD'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE TESTIMONY THAT THE SOFT START CIRCUITS ACCUSED OF INFRINGEMENT IN THIS CASE ARE THE SAME AS CIRCUITS FOUND TO INFRINGE IN EARLIER LITIGATION**

Counsel for Plaintiffs


Blair M. Jacobs
Christina A. Ondrick
PAUL HASTINGS LLP
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

Dated: April 10, 2015

Fairchild Semiconductor Corporation and Fairchild (Taiwan) Corporation (collectively, "Fairchild") move *in limine* to preclude Power Integrations from eliciting testimony from its technical expert, Dr. Arthur Kelley, and from making arguments through its counsel that the soft start circuits accused of infringement in this case are "essentially the same" as the circuits found to infringe during the *Fairchild I* case.[1]

Such testimony has little probative value, is demonstrably false, and is offered only to provide a prejudicial bridge to Power Integrations' malicious and inflammatory arguments concerning findings of "blatant copying" and a "corporate culture of copying" by a subsidiary of Fairchild (Fairchild Korea), involving parts that are intentionally different than those at issue in this case.  (*See* D.I. 226 at 11-14.)  Moreover, such testimony is unfairly prejudicial to Fairchild as the jury will likely place undue emphasis on the unfair allegations of "copying," eschewing obligations to decide *this* case, once inflamed by Power Integrations' programmatic and misleading rhetoric.

The undisputed evidence is that numerous structural differences exist in the Fairchild products accused of infringing.  As an example, the functional block diagram of the representative FAN6756 product confirms the lack of a soft start latch and a soft start AND-gate. (D.I. 194 at 15.)  Beyond this, the soft start circuit of the FAN6756 does not receive a frequency variation signal, a pulse width modulation frequency signal, a power up signal, or soft start signal as an input.  (*Id.*)  In contrast, the inputs to the accused soft start comparator are a one-time increasing ramp signal (labeled "soft start") and the "sense" signal, which represent the current flowing through the switch.  (*Id.*)  In short, the soft start comparator in the accused products

---

[1] The Court is currently resolving a summary judgment motion filed by Fairchild that Fairchild's accused products contain circuit structures previously ***disclaimed*** by Power Integrations through the testimony of its former expert, Mr. Robert Blauschild.  (D.I. 194 at 12.)

1

compares completely different signals than the signals being compared in the '366 patent.  This is true for all accused product groupings.

Given these prior concessions, Power Integrations' attempt to argue that the circuits in this case are "essentially the same" as those previously found to infringe is both nonsensical and extremely prejudicial.  Indeed, Power Integrations' effort to describe Fairchild's design-around circuit using a one-time ramp signal as "structurally equivalent" to the claimed "soft start circuit means" cannot be probative, as Power Integrations has previously conceded that use of a circuit with "a one-time digital ramp, rather than a repetitive signal…has ***no structure corresponding to the latch and AND gate*** shown in the '366 Patent; ***nor does it have an equivalent structure*** because such structure is not necessary to prevent repetitive soft start."  (Ex. C at ¶ 70; Ex. D at 1054:12-1056:16.)  Power Integrations' prior admission formed the basis of Fairchild's design-around products, currently accused of infringement by Power Integrations here.

Power Integrations' stated contention that the accused products in this case are "essentially the same" as those found to infringe claims of the same scope in *Fairchild I* is a highly prejudicial effort to distort the record and to confuse the jury.  Indeed, as seen directly above, Power Integrations has previously conceded that a circuit such as the one used in Fairchild's accused products cannot be structurally equivalent, much less "essentially the same."

In addition to the fact that Power Integrations' position lacks probative value and contradicts its own prior admissions, Power Integrations intends to advance that position through the expert testimony of Dr. Kelley, which only exacerbates the prejudicial impact.  This is particularly true because Dr. Kelley offers nothing other than bare conclusory testimony to support his purported conclusion that the products accused in this case are "essentially the same" as the products that Fairchild has now designed around.  (Ex. E at 307:9-308:6.)  As the Supreme

Court noted in *Daubert*, "[e]xpert evidence can be both **powerful** and quite **misleading** because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (emphasis added).

Power Integrations' attempt to circumvent the Court's gatekeeping role by eliciting conclusory unsupported testimony from Dr. Kelley will undoubtedly result in jury confusion and prejudice Fairchild.  The risk of confusion is great, particularly if the testimony is teamed with Power Integrations' bombastic allegations of "blatant copying."   But most importantly, the entire line of testimony from Dr. Kelley is false, and there is simply no evidence of copying in this case.  To the contrary, Fairchild's engineers relied upon Power Integrations' disclaimer of soft start circuits using a one-time ramp signal in creating new design-around products which, according to Power Integrations' own admissions, ***do not have equivalent structure*** in the '366 patent.  The Court should thus preclude Power Integrations from arguing that the Fairchild design-around products are "essentially the same" as the products in *Fairchild I.*  Moreover, the Court should preclude Power Integrations from arguing that Fairchild raised the "same non-infringement arguments" in that case, as the products in this case are admittedly structurally different and resulted from a design-around solution that did not exist in *Fairchild I.*

Dated: April 10, 2015

ASHBY & GEDDES

/s/ *John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

PAUL HASTINGS LLP
Blair M. Jacobs
Christina A. Ondrick
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

*Attorneys for Plaintiffs*

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC., a
Delaware corporation,

        Plaintiff,

   v.

FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., a Delaware
corporation, and FAIRCHILD
SEMICONDUCTOR CORPORATION,  a
Delaware corporation,

        Defendants.

C.A. No. 04-1371-JJF

## SUPPLEMENTAL REBUTTAL EXPERT REPORT OF ROBERT BLAUSCHILD

1.     I, Robert Blauschild, am being offered as an expert to testify on behalf of Plaintiff Power Integrations, Inc. ("PI") in the above captioned matter.  I previously submitted reports regarding the infringement of U.S. Patent Nos. 6,229,366 B1 (the '366 patent), 6,249,876 B1 (the '876 patent), and 6,107,851 (the '851 patent) by Defendants Fairchild Semiconductor Corporation and Fairchild Semiconductor International, Inc. ("Fairchild"), and the validity of those same patents.  I am submitting this report in rebuttal to the supplemental report regarding PI's patents submitted by Dr. Paul Horowitz on December 29, 2006.

## I.    QUALIFICATIONS AND PROFESSIONAL EXPERIENCE

2.     My qualifications and professional experience are set forth in my initial expert report.

70.     The structure of the SMP260 is further different, and not equivalent to the soft start circuit structure shown in the patent. The signal that drives the soft start function in the SMP260 is a one-time digital ramp, rather than a repetitive signal. Because of that, and unlike the Fairchild parts wherein their soft start function was driven by a *repeating counter*, the SMP260 has no structure corresponding to the latch and AND gate shown in the '366 patent; nor does it have an equivalent structure because such structure is not necessary to prevent repetitive soft start.

71.     In paragraph 84 of his Supplemental Report, Dr. Horowitz refers to a "3-input bubbled-AND gate," but the thing he is describing is specifically shown in the SMP260 data sheet as an NOR gate. Even though the data sheet shows a NOR gate, Dr. Horowitz confirmed during his deposition that he thinks the SMP260 really incorporates an AND gate, drawn poorly, because the drafters were lazy. [Horowitz 1/31/07 deposition at 16-17.] Dr. Horowitz clearly wants there to be an AND gate because the patent has an AND gate, but that is not what's shown, and the only way for Dr. Horowitz to reach his opinion is to ignore what is shown in favor of something that is not shown.

72.     As with many of his contentions, Dr. Horowitz does not address the claimed function for the soft start circuit at all in his report regarding the SMP260. Specifically, he fails to identify any signal instructing the drive circuit to disable the drive signal during "at least a portion of said maximum time period." This may be because no such signal is present. Because the SMP260 effectuates soft start in a fundamentally different way, with a fundamentally different circuit structure using summed currents to alter the feedback signal, the claimed signal is simply not present.

skill in the art to do so in the manner set forth in Claim 14 of the '366 patent and all the objective

facts and secondary considerations support that conclusion.

## X.    CONCLUSION

135.    In view of the above, it is my opinion that Claim 1 of the '876 patent, Claims 1

and 4 of the '851 patent, and Claims 9 and 14 of the '366 patent have not been shown to be

invalid in view of any of the references or arguments presented in Dr. Horowitz's report.

136.    In view of Dr. Horowitz's multiple changes of position during the course of this

case, I reserve the right to offer additional opinions to respond to any new or modified arguments

Dr. Horowitz may make, up to and including at the validity trial.  For trial, I may prepare

diagrams, charts and demonstrations that illustrate the issues presented.

Date: February 17, 2007

_____

Robert Blauschild

# EXHIBIT D

*Fairchild Semiconductor International, et al.   v.*
*Power Integrations, Inc.*

*Trial Volume 4*
*September 20, 2007*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE   19801*
*(302) 658-6697*

*Original File POWERI~1.TXT, 394 Pages*
*Min-U-Script® File ID: 0049547332*

**Word Index included with this Min-U-Script®**

make that combination, anyway.

[4] The PI and Fairchild parts using [5] the invention are commercially successful. [6] People, a lot of companies working in the field, [7] and it had been a general problem. Prior art [8] had been around a long time. Martin had been [9] around since 1987, that's more than a decade [10] before the patent. The 211 was the early [11] '90s, [11] I believe, so these things were out there for a [12] long time, and nobody put them together until [13] Dr. Horowitz did for the jury, basically. And [14] the last thing is Fairchild copied PI.

[15] Q: Let's now turn to the '366 patent, [16] which is exhibit PX 3 in your book. Have you [17] studied the '366 patent as part of your work on [18] this case?

[19] A: I have.

[20] Q: And have you come to an [21] understanding of what is claimed in the '366 [22] patent?

[23] A: I have.

[24] Q: Before we go into the details,

---

Page 1048

[1] what is the '366 patent generally about?

[2] A: It's about the integrated soft [3] start feature.

[4] Q: Now, we've spoken in some detail [5] about soft start, and the function of soft [6] start. Was soft start functionality in general [7] known before the '366 patent?

[8] A: It was.

[9] Q: And can you describe how soft [10] start was typically achieved before the '366 [11] invention?

[12] A: Yeah. Soft start was typically [13] achieved by fooling the circuit. In the — the [14] problem comes up and it's been discussed before [15] that when you first turn on the power supply the [16] output is at zero, it hasn't been powered up [17] yet. The circuit sees that as a big error. The [18] feedback from the output says this is bad, we [19] need to charge the output very fast. And so it [20] provides a lot of current which can overstress [21] components, it can cause overshoot on the [22] output.

[23] So what conventional soft start [24] did was it mess with that feedback, so to trick the

---

Page 1049

[1] circuit into thinking the feedback was different [2] than it really was, and shortening the pulses or [3] the drive to the circuit accordingly.

[4] Q: And was that sort of conventional [5] feedback — feedback soft start shown in the [6] patent itself?

[7] A: It was.

---

[8] Q: This is Figure 1 of the patent. [9] Is that showing a conventional prior art soft [10] start?

[11] A: Yes. Figure 1 shows capacitor 110 [12] which is soft start capacitor. The feedback [13] from the output, here is the output over on the [14] upper right. The feedback from the output comes [15] through what we call an optical feedback through [16] here back into the chip. What happens when we [17] first turn on the chip is this capacitor charges [18] slowly, that messes with this feedback here, [19] tricks the circuit into thinking that the error [20] isn't as big as it really is, so it doesn't put [21] out the maximum current right away.

[22] Q: Did the patent examiner have any [23] other examples of conventional soft start when [24] he was considering the '366 patent?

---

Page 1050

[1] A: He did. I think in my report I [2] listed three of them that I pulled from those [3] cited references on the patent. Here I'll just [4] show one of them.

[5] This is an article by an a man [6] named Pelly. I showed that the optical feedback [7] comes into the chip. In this chip the feedback [8] from the output comes into what we call an error [9] amplifier over here. The feedback path goes [10] from the output into the chip along here.

[11] There is an external capacitor, a [12] soft start capacitor that the person would use [13] with this integrated cir- [14] cuit, that would be [14] outside the package, that's used with soft start [15] circuitry to clamp the error signal at the [16] output of this error amplifier, so it's [17] cutting again into the feedback loop to trick the [18] circuit.

[19] Q: In your opinion, was one of the [20] goals of the '366 patent to have an integrated [21] soft start capability?

[22] A: It was. We can see that in a [23] couple of places. Title, integrated soft start, [24] the patent was says an object of an aspect of

---

Page 1051

[1] the present invention is directed to a pulse [2] width modulated switch that has integrated soft [3] start capability.

[4] Q: Let's look at Claim 9. Do your [5] opinions on validity focus on any particular [6] element?

[7] A: Yes. I think the major dispute is [8] the soft start circuit.

[9] Q: And has the Court construed the [10] soft start circuit?

[11] A: It has. The term soft start [12] circuit, the Court construed the soft start [13] circuit as being a means plus function element. [14] Now, what that means is that you have to — when [15] you're doing a

---

comparison, you have to look at [16] the circuits disclosed in the patent for [17] performing the claimed function, and compare [18] those structures to the prior art to see if [19] they're the same or equivalent to the disclosed [20] structures.

[21] Q: Can you explain for us what the [22] structure of the claimed soft start circuit is [23] and how it differs from the conventional way of [24] doing soft start?

---

Page 1052

[1] A: Uh-huh. Okay. The conventional [2] way of doing soft start is where we have the [3] feedback path, the output would be somewhere [4] else, providing a feedback signal that goes into [5] the switch logic through a PWM comparator that [6] determines when to turn off the switch each [7] switching cycle.

[8] As I said, conventional soft start [9] has a time varying clamp that cuts into the [10] feedback loop and tricks the circuit. That's [11] the conventional way it was done.

[12] Now, we can compare that to the [13] patent. Now, the patent we've heard mention of [14] internal soft start. The patent is more than [15] just internal soft start, it's about a [16] particular way of doing a soft start circuit. [17] And that's shown on the bottom of my slide here.

[18] Three structures, and we'll see in [19] the patent where these are, but there is a [20] latch, an AND gate and a separate soft start [21] comparator. In addition, the soft start in the [22] patent works with a repeat, slow repeating ramp [23] as one of its inputs.

[24] Note that this is different down

---

Page 1053

[1] here. We now have these soft start structures [2] sitting outside the feedback path. It gives you [3] a nice advantage in that this is sort of a [4] self-contained solution. It can sit off to the [5] side and do its thing independent of the type of [6] feedback that you have, so you can use voltage [7] mode or digital control or what we call current [8] mode control, all with the same soft start [9] circuit.

[10] Q: Now, I'll show you Figures 3 and 9 [11] of the patent. Does that illustrate what you [12] just said?

[13] A: It does. This has been talked [14] about before, but the soft start circuit is in [15] box, I can't read it, but I think it's 410, from [16] my recollection. Here is the separate soft [17] start comparator. Here is the latch. Here is [18] the AND gate.

[19] Note that in Figure 3, the soft [20] start is used with voltage mode control. Here [21] is a separate comparator that's comparing the [22] oscillation signal with the field variable [23] threshold signal, that's the voltage mode [24] control we talked

---

about.

Page 1054

[1] Same exact stuff here, same [2] structures, same soft start circuit. In Figure [3] 9 is used with digital control. The patent also [4] says you can use the circuit with current mode [5] control.

[6] Q: Let's look at the allegation about [7] the SMP260, which is I believe what Dr. Horowitz [8] claims invalidates Claim 9.

[9] Do you agree that the SMP260 part [10] anticipates Claim 9 of the '366 patent?

[11] A: No, I do not.

[12] Q: Let's look at the structures [13] side-by-side. On the left, and this is PD 1533, [14] on the left is the '366 patent, Figure 3, and on [15] the right, the datasheet block diagram from the [16] SMP260. Can you explain why you believe the [17] structures in these two are different?

[18] A: Sure. Let me first start with [19] talking about one fundamental difference, which [20] is single ramp versus repeating cyclic frequency [21] variation signal. In the patent we've talked [22] about the soft start circuit working with a [23] frequency variation signal or a signal that goes [24] up and down, cycles up and down.

Page 1055

[1] Because of that, you have the [2] structures in the soft start circuit that limit [3] the soft start action to just the first part of [4] that up and down signal. [5] In the prior art, in fact, all of [6] the prior art that Dr. Horowitz ever relied on [7] in here or I think found throughout this case, [8] is what I call a single ramp soft start. And [9] that's where you have one ramp, you don't have a [10] repeating signal, you just have a single ramp. [11] And as a result, you don't need the latch and [12] the AND gate that are in the patented soft [13] start.

[14] In addition, because we want a [15] separate soft start circuit, we have this [16] separate soft start comparator that allows you [17] to operate with all different types of circuits. [18] That's not in the 260. Notice that there is [19] only one comparator and that's the PWM [20] comparator. It doesn't have a soft start [21] comparator. So this is pretty different. It [22] doesn't have any of the pieces of the soft start [23] circuit.

[24] Q: Well, does the SMP260 have any

Page 1056

[1] structures inside it that you believe are [2] equivalent to the soft start circuit?

[3] A: No. Because it's a single ramp [4] circuit, you don't need the latch and the AND [5] gate and it doesn't have anything equivalent to [6] that. Because it's — it has

the separate [7] comparator because it's conventionally cutting [8] into the feedback loop.

[9] Can we go back to the last slide. [10] Here, here is the feedback path. [11] Again, it's a single ramp cutting into the [12] feedback path just like all of the other prior [13] art. Because of that, we don't need a separate [14] soft start comparator. That's why it doesn't [15] have anything equivalent, these are totally [16] different things.

[17] Q: Well, do you believe it would be [18] obvious to modify what's shown in the SMP260 to [19] obtain the invention of Claim 9?

[20] A: I can't imagine why you would do [21] it, because this circuit, 260, already has a [22] soft start circuit. It doesn't have anything [23] close to the soft start circuit in the patent, [24] but it has one, so I don't see why you would

Page 1057

[1] change it.

[2] And even if you did change it, it [3] would end up being a single ramp system that [4] cuts into the feedback loop, clamps the [5] feedback, just conventional. I don't see any [6] reason why you would change from what's there to [7] have a repeating signal in the structures of the [8] soft start circuit or their equivalent. And you [9] would have to also design, redesign other blocks [10] as well, if you wanted to change that.

[11] Q: Okay. I have just put up PD [12] 1535A. Does that summarize your opinion on — [13] that the SMP260 would not be modified?

[14] A: Yeah. It has something that [15] works. It does SoftStart. I don't see why you [16] would change that other than to try to add the [17] stuff from the patent. You don't need to do it.

[18] And if you did change what was [19] there, you'd follow the prior art which all cuts [20] into the feedback loop and clamps the feedback. [21] So it wouldn't have that extra comparator.

[22] Q: Have you also considered the [23] secondary consideration in the context of the [24] SoftStart claims?

Page 1058

[1] A: I did. The SMP211 was around for [2] many years. I think six years.

[3] Is that right? Six years. [4] No one ever modified that to [5] change it to do the claimed SoftStart.

[6] Again, many companies in this [7] space, no one came up with this particular [8] internal SoftStart circuit.

[9] There was a conventional way to do [10] it. Everybody did — well, I wouldn't say [11] everybody, but people who did SoftStart did it [12] that way by tricking

the feedback.

[13] In fact, today there's still [14] companies that still do that way. The parts [15] from Fairchild and Power Integrations that have [16] this feature are successful.

[17] And, again, it's just — it's [18] amazing to me that Fairchild has these two [19] features, the integrated — it would be amazing [20] if it was not copying — that Fairchild has the [21] integrated frequency jitter and the integrated [22] SoftStart, both driven with the same signal.

[23] Q: Okay. Let's talk just briefly [24] about the dependent claims. What's your

Page 1059

[1] understanding about what the dependent claims of [2] the '851 and the '366 patent claim?

[3] A: Well, we just talked about in the [4] '851, the frequency jitter and the '366, the [5] SoftStart. The dependent claims combine both [6] inventions in one claim.

[7] Q: Okay. Well, we'll just look at [8] Claim 4. Is it your understanding that Dr. [9] Horowitz has asserted that you could combine the [10] Martin patent and the PI SMP 260, the two [11] references we've talked about, you could combine [12] them and result in Claim 4?

[13] A: I understand that. I disagree [14] with that.

[15] I mean, even if he combined them, [16] you wouldn't have the SoftStart circuit.

[17] Q: Okay. Okay. [18] Is your opinion on the alleged [19] combination similar to what we discussed with [20] regards to the SMP211 and Martin?

[21] A: Yeah. There's a couple of things [22] here.

[23] I would say you wouldn't do the [24] combination. If you did, it wouldn't have the

Page 1060

[1] underlying things you need.

[2] For example, Claim 4 is dependent [3] on Claim 1. So you have to have the internal [4] frequency variation signal. That's missing in [5] the combination.

[6] Claim 4 adds the SoftStart [7] circuit, and you have to have the SoftStart that [8] we've discussed. I said it's very different in [9] the 260.

[10] Your question was 211?

[11] Q: 260 and Martin.

[12] A: Yeah, 260, we just discussed, [13] doesn't have any of the pieces. It doesn't have [14] anything equivalent to that.

[15] Martin has no SoftStart circuit. [16] There's no disclosure of SoftStart.

[17] So putting them together, you [18] can't have the SoftStart circuit. So you can't [19] have Claim 4.

# EXHIBIT E



**MERRILL LAD**
1325 G Street NW, Suite 200, Washington, DC
Phone: 800.292.4789  Fax:202.861.3425



Page 307

oning2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

             Plaintiffs,

             v.

POWER INTEGRATIONS, INC.,

             Defendant.

C.A. No. 12-540 LPS

**HIGHLY CONFIDENTIAL**

**POWER INTEGRATIONS' OPPOSITION TO FAIRCHILD MOTION *IN LIMINE* NO. 3**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for**
**POWER INTEGRATIONS, INC.**

Dated:  April 15, 2015

Fairchild's third motion *in limine* again seeks to exclude highly relevant evidence simply because it undermines Fairchild's defenses.  Because willfulness, inducement, and obviousness are all at issue in this case, the fact that Fairchild copied the patented circuit and the similarities between the accused circuit and the one previously found to infringe are both relevant.

First, whether an accused "soft start circuit" is "the same" or "essentially the same" as the circuit found to infringe by the *Fairchild I* Jury is quintessentially a fact issue and directly relevant to whether Fairchild had a good-faith or reasonable belief that its allegedly "designed around" circuit no longer infringes the '366 patent—a question relevant to both the requisite intent for induced infringement and the objective prong of willful infringement, both of which are at issue here.  *Global–Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011) (induced infringement "requires knowledge that the induced acts constitute patent infringement"); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012) ("[T]he objective prong of Seagate tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement.").  Fairchild is the party who injected this issue into the case, by claiming it "designed around" the '366 patent in view of the prior finding of infringement.  Having done so, Fairchild cannot now claim prejudice when PI points out the flaws in Fairchild's assertion.

Second, this Court's and the Federal Circuit's prior findings of Fairchild's "blatant copying" and "corporate culture of copying" are also relevant evidence of secondary consideration of non-obviousness and willfulness.  In *Fairchild I*, in concluding that Fairchild willfully infringed PI's patents – including the '366 patent – the Court found that Fairchild "engaged in a meticulous study of products made with the patented features through detailed reverse engineering efforts and then blatantly copied the products without any regard to the high

likelihood of infringement that would arise from such blatant copying[.]" [*Fairchild I*, D.I. 750 at 4; *see also Fairchild I*, D.I. 795 at 13.] Specifically, the Court found that Fairchild proceeded "with its 'industrial stalking' measures . . . , not to avoid infringement and design around the patented feature which would have been legitimate competitive behavior, but rather to copy them in violation of Power Integrations' patent rights." [*Fairchild I*, D.I. 750 at 9; *see also Fairchild I*, D.I. 795 at 14.] Fairchild's copying of the '366 patent invention is relevant to the issues of obviousness and willfulness. *See Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1196 (Fed. Cir. 2003) (evidence of copying relevant to obviousness inquiry); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996) (evidence of copying relevant to willfulness inquiry).[1]

In addition, the Court's prior findings of "industrial stalking" and "blatant copying" are relevant to Fairchild's defenses on inducement and willful infringement of the '366 patent. In particular, the evidence shows that Fairchild's alleged "belief" of non-infringement is neither reasonable nor credible, when the same or essentially the same circuit already found to infringe was blatantly copied from PI's innovation, and where the alleged "design around" – which, even if it occurred, changed only aspects of the device irrelevant to the operation of the claimed "soft start circuit" – did nothing to cure its prior "industrial stalking."

Contrary to Fairchild's assertion, Dr. Kelley's testimony regarding the similarities between some of the accused circuits and those previously found to infringe is not conclusory,[2]

---

[1]   The appeal in the prior case did not disturb the prior findings of copying; those findings were made applying a construction of "soft start circuit" as a means-plus-function element, just as it's written in the claims at issue here, and the Court in this case adopted an identical construction and recitation of corresponding structure. [D.I. 87 at 14-16.]

[2]   Fairchild's motion engages in further misdirection by pointing to its FAN6756, which has never been asserted by PI to have been derived from the previous infringing products. Dr.

but instead based on the relevant evidence in the record—including the schematics for the various products, the testimony of Fairchild's corporate witness on the alleged design around, and Dr. Kelley's own knowledge and expertise.[3]  [Ex. 3A (2014-09-11 Kelley Infringement Report) at 37-41; *see also* Ex. E to FCS Motion (2015-01-13 Kelley Tr.) at 307:9-309:16.]  To the extent Fairchild thinks either Dr. Kelley's expert testimony or its bases (including Fairchild's own corporate witness's testimony) is "demonstrably false," Fairchild is free to attempt to try to establish as much at trial.  In that regard, to the extent the Court allows Fairchild's so called "disclaimer" evidence allegedly based on the prior testimony of PI's expert in *Fairchild I*, whether PI had "disclaimed" anything is also a fact issue for the Jury.[4]

"Virtually all evidence is prejudicial or it isn't material."  *Old Chief v. United States*, 519 U.S. 172, 193 (1997).  To exclude evidence under FRE 403, "the prejudice must be 'unfair.'"  *Id.*  Here, no *unfair* prejudice to Fairchild would result from allowing Dr. Kelley to testify based on his evaluation of the evidence of record.[5]  On the other hand, PI will be unfairly prejudiced if it is not allowed to present its expert's testimony regarding the similarities between the accused circuit and the circuit previously found to infringe to support its inducement and willful infringement claims and to rebut Fairchild's argument of obviousness.  Therefore, Fairchild's motion *in limine* must be denied.

---

Kelley's opinion is about parts designed in Korea based on the previous circuit; the FAN6756 was designed in Taiwan and has a different (although still infringing) circuit.

[3] To the extent Fairchild seeks to raise a *Daubert* challenge to Dr. Kelley's opinion in the guise of a motion *in limine*, it is untimely and should be denied for that reason as well.

[4] Fairchild's "disclaimer" argument based on its mischaracterization of inadmissible prior testimony of Mr. Blauschild is the subject of PI's Motion *in Limine* No. 1.  As PI explained in that motion, there was no "disclaimer" or "admission" by PI or its expert.

[5] Indeed, it is Fairchild who put forward a "design around" story to try to avoid findings of inducement and willfulness.  Fairchild cannot have it both ways – presenting its "design around" story while at the same time precluding PI's response.

Dated:  April 15, 2015          FISH & RICHARDSON P.C.


By:  _____

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for
POWER INTEGRATIONS, INC.**

4

# EXHIBIT 3A







**B.** ███████████████████████

███ ███████████████████████████

█████████████████████████████████
█████████████████████████

█
███████████████████████████████
█████████████████████████
█████████████









**C.**



42





125

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

              Plaintiffs,

    v.

POWER INTEGRATIONS, INC.,

              Defendant.

C.A. No. 12-540-LPS

**Highly Confidential**

**FAIRCHILD'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 3 TO
PRECLUDE TESTIMONY THAT THE SOFT START CIRCUITS ACCUSED OF
INFRINGEMENT IN THIS CASE ARE THE SAME AS CIRCUITS
<u>FOUND TO INFRINGE IN EARLIER LITIGATION</u>**

Counsel for Plaintiffs


Blair M. Jacobs
Christina A. Ondrick
PAUL HASTINGS LLP
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

Dated: April 17, 2015

PI's Opposition is telling.  Nowhere in the Opposition does PI even attempt to deny that the current accused products are different from the products in *Fairchild I*.  Instead, PI dedicates its entire opposition to a discussion of inflammatory and irrelevant copying allegations related to circuitry from a ***different case*** involving ***different products*** that were designed to avoid the scope of the '366 patent claims.  The Court should grant Fairchild's MIL No. 3 to avoid unfair prejudice resulting from those inflammatory allegations.

There is no dispute that the products in this case are different from the prior case—they lack a soft start latch and AND-gate and do not receive the required signals.  Given these differences, any past findings regarding "copying" are irrelevant and prejudicial.  PI's argument that copying is relevant to issues in this case is misguided.  The objective prong of the willfulness inquiry is a legal issue to be decided by the Court.  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1006 (Fed. Cir. 2012).  Secondary considerations are not relevant because Fairchild is not asserting an obviousness defense on the '366 patent.  As to inducement, PI has no evidence of any "copying" regarding the currently accused products.  PI cannot use copying from 2004 on a different product to demonstrate specific intent today.

The highly inflammatory nature of the outdated statements outweighs any potential probative value, and the admission of such statements can only unfairly prejudice Fairchild.  Presentation of this evidence through PI's expert, Dr. Kelley, would only increase the prejudicial impact, as a jury may give greater weight to the testimony and be further inflamed and confused.  As a result, PI should be precluded from presenting testimony, or making arguments through counsel, that the soft start circuits accused of infringement in this case are "essentially the same" as the circuits found to infringe in *Fairchild I* or that Fairchild was found to copy.

Dated: April 17, 2015

ASHBY & GEDDES

/s/ *John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

PAUL HASTINGS LLP
Blair M. Jacobs
Christina A. Ondrick
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

*Attorneys for Plaintiffs*

2

EXHIBIT 7A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION and FAIRCHILD (TAIWAN) CORPORATION,<br><br>        Plaintiffs,<br><br>        v.<br><br>POWER INTEGRATIONS, INC.,<br><br>        Defendant. | C.A. No. 12-540 LPS<br><br>**HIGHLY CONFIDENTIAL** |

**POWER INTEGRATIONS' MOTION *IN LIMINE* NO. 1**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for**
**POWER INTEGRATIONS, INC.**

Dated:  April 10, 2015

## I.   FAIRCHILD SHOULD BE PRECLUDED FROM INTRODUCING PRIOR TESTIMONY AND OPINIONS OF A DIFFERENT PI EXPERT IN A DIFFERENT CASE ABOUT PRIOR ART NOT AT ISSUE IN THIS CASE

Fairchild has indicated that it intends to call Power Integrations' prior expert, Mr. Robert Blauschild, as a witness at trial by designation.  In particular, it wants to play for the Jury his prior trial testimony (including using his demonstratives) from a different litigation, C.A. No. 04-1371 ("*Fairchild I*").  This evidence is inadmissible and should be excluded.

First, Mr. Blauschild did not provide an expert report in this case as required by Rule 26(a)(2), and thus he cannot be called at trial to testify as an expert.  Fairchild cannot escape the requirements of Rule 26 by calling Mr. Blauschild by designation.  *See* Fed. R. Civ. P. 32 (a)(1)(B).  Further, Fairchild cannot circumvent the expert disclosure requirement of Rule 26 by calling Mr. Blauschild as a "fact" witness, which Fairchild has indicated it intends to do.  Not only did Mr. Blauschild not offer any "fact" testimony previously, he was not listed on Fairchild's Rule 26 discourses as a fact witness with personal knowledge relevant to this case, and he was not deposed in this case regarding any such factual knowledge.  [Ex. A.]  Given Fairchild's non-compliance with the requirements of Rule 26, Mr. Blauschild's testimony is not admissible and should be excluded.  *See* Fed. R. Civ. P. 37.

Nor can Fairchild side-step the requirements of Rule 26 and simply have its expert, Dr. Wei, "rely" on the testimony.  If the Court agrees that Mr. Blauschild's testimony is "otherwise inadmissible," then Fairchild is relegated to supporting the disclosure to the jury of the testimony under Fed. R. Evid. 703, and must show that the "probative value" of the evidence substantially outweighs its prejudicial effect.  Fairchild cannot meet this burden; the evidence has such little probative value (if any) that it is excludable under Fed. R. Evid. 403, as the prejudicial effect will, in fact, substantially outweigh any possible probative value.[1]

---

[1]  In addition, opinions in the form of expert reports and demonstratives used by an expert are inadmissible hearsay, warranting exclusion under Fed. R. Evid. 801-804.

The evidence at issue lacks probative value.  In *Fairchild I*, PI's then-expert, Mr. Blauschild, testified about specific embodiments described in the '366 patent and the differences between the claimed soft-start circuit and the prior art asserted in that case. Fairchild apparently intends to use Mr. Blauschild's testimony about that prior art to support an alleged "design-around" story.  In particular, Fairchild apparently intends to offer Mr. Blauschild's testimony (and related demonstratives) in which he distinguished prior art circuits for various reasons, including on the basis that they used a "single ramp" or "one-time ramp" signal.  (*See* D.I. 194 at 14, 17; D.I. 236 at 6; D.I. 203-3 at ¶ 51; D.I. 203-12 (Wei Revised Opening Rpt) at ¶ 473.)  Latching on to this testimony, Fairchild wants to argue that its alleged "design-around" products use a "one-time ramp" signal and that, based on Mr. Blauschild's testimony, do not infringe.  This argument plays word games with the testimony by taking it out of the context of the original prior art being discussed (which is not raised in this case), and it intentionally confuses the issues actually raised in *Fairchild I* versus here.

Fairchild should not be allowed to rely on Mr. Blauschild's testimony for any purpose.  First, the "design-around" was not created or developed based on Mr. Blauschild's testimony—the design predates his testimony.  Moreover, the Jury in *Fairchild I* already heard and rejected essentially the same "we use a one-time ramp signal" argument from Fairchild based on what is essentially the same circuitry in the accused products (the minor changes made as the "design-around" do not implicate this issue as shown by the fact that the substantive argument made in *Fairchild I* was the same).  (*See* D.I. 227-1, Ex. 6 (*Fairchild I* Trial Tr.) at 1079:4-14; 1096:7-11; 1160:22-1162:10.)  Similarly, Fairchild and Dr. Wei are not contending that Fairchild's accused products incorporate the prior art circuitry Mr. Blauschild was addressing.  Rather, Fairchild's lawyers are simply trying to argue *post hoc* that their design does not infringe, confusingly using sound bites out of context from testimony discussing different issues in a different case.

The prejudice to Power Integrations from allowing this evidence is manifest.  That is, another apparent reason for Fairchild's insistence on introducing Mr. Blauschild's prior testimony is to suggest some inconsistency on the part of Power Integrations that simply is not there, and thus divert the Jury's attention from the actual merits.  Indeed, the risk of confusion and misleading the Jury is extremely high.  To correct or mitigate the risk, Power Integrations would be forced to introduce additional evidence—including prior art not at issue in this case—to put the testimony in context and rebut any innuendo about Mr. Blauschild's testimony regarding different prior art somehow being an admission about the accused products in this case.  This would no doubt cause undue delay and waste everyone's time.  The unfair prejudice to Power Integrations is also heightened by the fact – as Fairchild well knows – that Mr. Blauschild's health precludes him from appearing live to correct any misinterpretations of his prior testimony.

Power Integrations has discussed this matter with Fairchild, but Fairchild maintains that it should be permitted to rely on Mr. Blauschild's past testimony, opinions and demonstratives.  Fairchild has identified Mr. Blauschild as a "fact witness" and has included Mr. Blauschild's expert report and exhibits on its exhibit list (PX-0117, PX-2009–PX-2110).  PI therefore seeks an order, under Fed. R. Evid. 402, 403, 703, 801-804, and/or Fed. R. Civ. P 26 and 37, preventing Fairchild from relying on Mr. Blauschild's past testimony, opinions, and/or demonstratives in any manner, including but not limited to through attorney argument, on direct examination of Fairchild's experts, or on cross-examination of Power Integrations' witnesses.

Dated:  April 10, 2015          FISH & RICHARDSON P.C.

By: _____

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for Plaintiff**
**POWER INTEGRATIONS, INC.**

4

Exhibit A

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and SYSTEM GENERAL
CORPORATION

              **Plaintiffs,**

v.

POWER INTEGRATIONS, INC.

              **Defendant.**

Case No.: 12-540-LPS

## PLAINTIFFS' INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs Fairchild Semiconductor Corporation ("Fairchild") and System General Corporation ("System General") (collectively "Plaintiffs") make the following initial disclosures:

Plaintiffs' investigation of claims and defenses in this action is ongoing, and the disclosure below is based on information reasonably available to Plaintiffs at this time, following a good faith inquiry. By making these disclosures, Plaintiffs do not represent that they are identifying every document, tangible thing, or witness possibly relevant to this action. Plaintiffs reserve the right to supplement further this initial disclosure, produce additional information, and to rely on such information as evidence in this action after receiving discovery from Power Integrations, Inc. ("Power Integrations"), including, but not limited to, information relating to Power Integrations' products and Power Integrations' infringement contentions, after Plaintiffs complete their discovery efforts, after the Court rules on Plaintiffs' pending Motion to Dismiss Power Integrations' Counterclaims (D.I. 13), and after receiving any amended counterclaims filed by Defendant. Plaintiffs do not know what Power Integrations patent claims are asserted by

1

Defendant, nor do Plaintiffs know what Fairchild and/or System General products are accused of infringement given Power Integrations deficient counterclaims. Additionally, as Plaintiffs' Motion to Dismiss Power Integrations' Counterclaims (D.I. 13) is currently pending, Plaintiffs have not filed any defenses and counterclaims to Power Integrations' counterclaims. Plaintiffs' reserve the right to supplement further after their Motion to Dismiss is decided and any defenses and counterclaims are properly filed by Plaintiff.

## I.     Rule 26(a)(1)(A)(i)

Plaintiffs' investigation is ongoing and Plaintiffs reserve the right to identify additional individuals at a later date. In making these disclosures, Plaintiffs do not waive their right to object, pursuant to the applicable Local and Federal Rules, to the deposition testimony of any of the individuals listed below. After conducting such inquiry and investigation as is reasonable under the circumstances, Plaintiffs believe that the following individuals are likely to have discoverable information relevant to disputed facts:

| Name/Title | Contact Information | Topics |
|---|---|---|
| Michael Weirich<br><br>Manager, Global Power Resource Center, Europe Fairchild | Contact through counsel for Plaintiffs | Conception, reduction to practice and prosecution of U.S. Patent No. 7,525,259 ("the '259 patent" or "the Fairchild patent-in-suit"); knowledge of products practicing the invention(s) of the '259 patent |
| Ta-yung "Tom" Yang<br><br>Senior Vice President, Technology, Power Conversion, Industrial and Automotive Products Group, Fairchild | Contact through counsel for Plaintiffs | Conception, reduction to practice and prosecution of U.S. Patent Nos. 7,286,123 ("the '123 patent"), 7,259,972 ("the '972 patent"), 7,616,461 ("the '461 patent") (collectively "the System General patents-in-suit"); design and operation of Plaintiffs' products; knowledge of products practicing the System General patents-in-suit |

| Name/Title | Contact Information | Topics |
|---|---|---|
| Chien-Yuan Lin

Taiwan FAE manager, Fairchild | Contact through counsel for Plaintiffs | Conception, reduction to practice and prosecution of the '461 patent; knowledge of products practicing the '461 patent |
| Gary Lin

Vice President of the Power Conversion Business Unit, Fairchild | Contact through counsel for Plaintiffs | Design and operation of Plaintiffs' products; sales, marketing and channels of distribution of Plaintiffs' products; knowledge of products practicing the inventions of the System General patents-in-suit |
| Justin Chiang

Executive Vice President and General Manager, Power Conversion, Industrial and Automotive Products Group, Fairchild | Contact through counsel for Plaintiffs | Sales, marketing and channels of distribution of Plaintiffs' products |
| Mark Norman

Senior Vice President, Worldwide Sales & Marketing, Fairchild | Contact through counsel for Plaintiffs | Sales, marketing and channels of distribution of Plaintiffs' product |
| Ole-Petter Brusdal

Senior Vice President, Worldwide Sales & Marketing, Fairchild | Contact through counsel for Plaintiffs | Sales, marketing and channels of distribution of Plaintiffs' product |
| Brian Johnson

Lighting Specialist, Fairchild | Contact through counsel for Plaintiffs | Plaintiffs' LED products and patents |
| Jay Lee

Director, Lighting Segment, Fairchild | Contact through counsel for Plaintiffs | Plaintiffs' LED products and patents |

| Name/Title | Contact Information | Topics |
|---|---|---|
| James Lee,<br><br>Senior Product Marketing, Lighting Segment, Fairchild | Contact through counsel for Plaintiffs | Plaintiffs' LED products and patents |
| Kenny Chan<br><br>Product Line Manager System General | Contact through counsel for Plaintiffs | Design, operation and distribution of Plaintiffs' products |
| KE Hong<br><br>Product Line Manager System General | Contact through counsel for Plaintiffs | Design, operation and distribution of Plaintiffs' products |
| Sophia Lin<br><br>Business Marketing System General | Contact through counsel for Plaintiffs | Sales, marketing and channels of distribution of Plaintiffs' products |
| Ruihong Lu<br><br>R & D Manager System General | Contact through counsel for Plaintiffs | Design and operation of Plaintiffs' products |
| Jiawei Huang and other patent attorneys at JC Patents who were involved in the prosecution of the '123 patent | J.C. Patents<br>4 Venture, Suite 250<br>Irvine, CA 92618 | Prosecution of the '123 patent |
| Philip W. Woo and other patent attorneys at Sidley Austin LLP who were involved in the prosecution of the '259 patent | Sidley Austin LLP<br>San Francisco<br>555 California Street<br>San Francisco, California 94104<br>415.772.1200 | Prosecution of the '259 patent |
| Richard V. Burgujian and other attorneys involved in the prosecution of the '972 patent | Finnegan, Henderson, Farabow, Garrett & Dunner LLP<br>Two Freedom Square<br>11955 Freedom Drive<br>Reston, VA 20190-5675<br>571.203.2700 | Prosecution of the '972 patent |

| Name/Title | Contact Information | Topics |
|---|---|---|
| Morton J. Rosenberg and other patent attorneys at Rosenberg, Klein & Lee who were involved in the prosecution of the '461 patent | Patent Attorney Rosenberg, Klein & Lee 3458 Ellicott Center Drive - Suite 101 Ellicott City, MD 21043 410.465.6678 | Prosecution of '461 patent |
| Balu Balakrishnan<br><br>President and CEO, Power Integrations | Power Integrations San Jose, California | Conception, reduction to practice and prosecution of U.S. Patent Nos. 6,229,366 ("the '366 patent"), 7,876,587 ("the '587 patent"), and 8,115,457 ("the '457 patent") and any related patents; licensing and assignment of the '366 patent, the '587 patent, the '457 patent, U.S. Patent No. 7,995,359 ("the '359 patent"), and U.S. Patent No. 7,952,895 ("the '895 patent") (collectively "the Power Integrations patents"); Power Integrations' sales, design and operation of Power Integrations' products using the Power Integrations patents; and the accused Power Integrations products; reasonable royalties and licensing practices of Power Integrations; licenses Power Integrations has entered with third parties; other litigation involving the Power Integrations patents; Power Integrations' patent prosecution policies; knowledge of Plaintiffs' patents |
| Alex Djenguerian<br><br>Senior Design Engineering Manager Power Integrations | Power Integrations San Jose, California | Conception, reduction to practice and prosecution of the '366 patent, the '359 patent, and the '587 patent, and any related patents; licensing and assignment of the '366 patent, the '359 patent, and the '587 patent; design and operation of Power Integrations' products using the Power Integrations patents |

| Name/Title | Contact Information | Topics |
|---|---|---|
| David Kung<br><br>Director, New Product Development, Power Integrations, Inc. | Power Integrations San Jose, California | Conception, reduction to practice and prosecution of the '457 patent and any related patents; licensing and assignment of the '457 patent; design and operation of Power Integrations' products using the Power Integrations patents |
| Leif Lund<br><br>Senior Staff Design Engineer, Power Integrations | Power Integrations San Jose, California | Conception, reduction to practice and prosecution of the '366 patent, the '359 patent, the '587 patent, and any related patents; licensing and assignment of the '366 patent, the '359 patent, the '587 patent; design and operation of Power Integrations' products using the Power Integrations patents |
| David Michael Hugh Matthews<br><br>Vice President of Product Planning Power Integrations | Power Integrations San Jose, California | Conception, reduction to practice, and prosecution of the '895 patent, the '457 patent and any related patents; licensing and assignment of the '895 patent and the '457 patent; sales, design and operation of Power Integrations' products using the Power Integrations patents |
| Raymond Orr<br><br>Inventor of the '457 patent | Power Integrations San Jose, California | Conception, reduction to practice and prosecution of the '457 patent and any related patents; licensing and assignment of the '457 patent; design and operation of Power Integrations' products using the Power Integrations patents |
| Bruce Renouard<br><br>Former Vice President of Worldwide Sales, Power Integrations | 4941 Cremshaw Court Raleigh, NC 27614 | Sales and distribution channels of Power Integrations' products using the Power Integrations patents and the accused Power Integrations products |

| Name/Title | Contact Information | Topics |
|---|---|---|
| Ben Sutherland<br><br>Vice President of Worldwide Sales Power Integrations | Power Integrations San Jose, California | Sales and distribution channels of Power Integrations' products using the Power Integrations patents and the accused Power Integrations products |
| Douglas Bailey<br><br>Vice President of Marketing Power Integration | Power Integration San Jose, California | Marketing and distribution channels of Power Integrations' products using the Power Integrations patents and the accused Power Integrations products |
| Clifford Walker<br><br>Vice President of Corporate Development Power Integrations | Power Integrations San Jose, California | Sales of Power Integrations' products using the Power Integrations patents and the accused Power Integrations products; reasonable royalties and licensing practices of Power Integrations; licenses Power Integrations has entered with third parties; other litigation involving the Power Integrations patents; Power Integrations' patent prosecution policies; knowledge of Plaintiffs' patents |
| Derek Bell<br><br>Vice President of Engineering Power Integrations | Power Integrations San Jose, California | Knowledge of Power Integrations' accused products |
| John Tomlin<br><br>Vice President of Operations Power Integrations | Power Integrations San Jose, California | Knowledge of Power Integrations' accused products and distribution channels |
| Employees and former employees of Power Integrations involved in the research, development, design, testing, operation, sales or marketing of the accused Power Integrations' product, | Power Integrations San Jose, California | Knowledge of Power Integrations' accused products |

| Name/Title | Contact Information | Topics |
|---|---|---|
| including the LinkSwitch-PH products, LinkSwitch II products, and the LinkSwitch-CV products | | |
| James Y. Go and other patent attorneys at Blakely, Sokoloff, Taylor & Zafman LLP who were involved in the prosecution of the Power Integrations' patents | Blakely, Sokoloff, Taylor & Zafman LLP Two Union Square Suite 3000 601 Union Street Seattle, WA 98101-1365 206.292.8600 | Prosecution of the Power Integrations patents |

Plaintiffs have identified individuals to the best of their ability without knowing Power Integrations' specific infringement contentions at issue. This identification should not be taken as a representation that the identified individuals are necessarily knowledgeable about whichever devices, products, or process Power Integrations ultimately accuses and, depending on the identification of the accused devices and products, the individuals identified may or may not have knowledge relevant to this action. To the extent additional individuals with knowledge relevant to this dispute are identified, Plaintiffs will identify them, as necessary, pursuant to the Federal Rules of Civil Procedure and the Local Rules.

**II.     Rule 26(a)(1)(A)(ii)**

Plaintiffs identify the following categories of documents located to date that Plaintiffs presently believe they may use to support their claims or defenses. Plaintiffs reserve their right to supplement this list. The categories of documents listed below are relevant to disputed facts and are within the possession, custody or control of Plaintiffs or Plaintiffs' attorneys of record:

1.  The System General and Fairchild patents-in-suit;

2.  The prosecution histories of the System General and Fairchild patents-in-suit;

3.  Cited prior art to the System General and Fairchild patents-in-suit;

4.  Research and development documents relating to the invention of the System General and Fairchild patents-in-suit;

5.  Documents reflecting the conception and reduction to practice of the System General and Fairchild patents-in-suit;

6.  Technical documents showing the design and operation of products that practice the invention(s) of the System General and Fairchild patents-in-suit;

7.  Documents reflecting the sales and marketing of System General and Fairchild products, including revenue and profits for such products;

8.  Sales documents, invoices, quotations, purchase orders, and promotional materials concerning Power Integrations' products and devices;

9.  Schematics, specifications, process documents, and other technical documents illustrating the design and operation of Power Integrations' products and devices;

10. Documents reflecting the damages due to Power Integrations' infringement of the System General and Fairchild patents-in-suit.

11. The Power Integrations patents and their prosecution and related prior art;

12. Documents reflecting prior art to the Power Integrations patents;

13. Documents reflecting invalidity of the Power Integrations patents;

14. Sales documents, invoices, quotations, purchase orders, and promotional materials concerning Plaintiffs' products and devices; and

15. Schematics, specifications, process documents, and other technical documents illustrating the design and operation of Plaintiffs' products and devices.

To the extent additional documents are later identified, Plaintiffs will make them available for inspection and copying pursuant to the supplementation procedures under the Federal Rules of Civil Procedure, consistent with any applicable protective orders or other Court orders.  Nothing in this Initial Disclosure should be interpreted to limit Plaintiffs' ability to provide such information at the times specified by the Federal Rules of Civil Procedure, Local

9

Rules or by Court order. These categories are in no way admissions that any specific documents within a specified category exist or that they are within the custody or control of Plaintiffs.

## III.      Rule 26(a)(1)(A)(iii)

Plaintiffs believe they are entitled to damages for Power Integrations' infringement, potentially including lost profits from lost sales, lost profits from price erosion and, at a minimum, a reasonable royalty for those infringing sales/offers not resulting in an award of lost profits, in addition to prejudgment interest, an accounting, enhanced damages resulting from Power Integrations' willful infringement, and attorneys' fees and costs.  Plaintiffs in addition intend to seek attorneys' fees and expenses in this matter pursuant to 35 U.S.C. § 285.  Because this case is still at an early stage, Plaintiffs do not yet have a computation of such damages, fees and expenses.  Plaintiffs reserve the right to supplement, modify, or add to this response as circumstances dictate and in accordance with the Federal Rules and orders issued by the Court.

## IV.      Rule 26(a)(1)(A) (iv)

Plaintiffs are not party to any insurance agreement which would be liable to satisfy part or all of a judgment in this action.

Dated:  September 11, 2012

By: _____
MCDERMOTT WILL & EMERY LLP
Blair M. Jacobs
Christina A. Ondrick
Rose S. Whelan
600 13th Street, N.W.
Washington, D.C. 20005-3096
202-756-8000
bjacobs@mwe.com
condrick@mwe.com
rwhelan@mwe.com

10

MCDERMOTT WILL & EMERY LLP
Terrence P. McMahon
Michael F. Martin
275 Middlefield Rd., Ste. 100
Menlo Park, CA 94025
650-815-7400
tmcmahon@mwe.com
mfmartin@mwe.com

MCDERMOTT WILL & EMERY LLP
Leigh J. Martinson
28 State Street
Boston, MA 02109-1775
617-535-4000
lmartinson@mwe.com

ASHBY & GEDDES
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2012 the foregoing **PLAINTIFFS' INITIAL DISCLOSURES** was served upon the below named counsel of record via e-mail:

William J. Marsden, Jr.
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070
Email: marsden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906
E-mail: scherkenbach@fr.com

Howard G. Pollack
Michael R. Headley
Enrique Duarte
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
E-mail: pollack@fr.com
E-mail: headley@fr.com
E-mail: duarte@fr.com

*Attorneys for Defendant*

Dated: September 11, 2012

*/s/ Rose S. Whelan*
Rose S. Whelan
rwhelan@mwe.com
MCDERMOTT WILL & EMERY LLP
600 13th Street, NW
Washington, DC  20005-3096
Telephone:  202-756-8000
Facsimile:  202-756-8087

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FAIRCHILD SEMICONDUCTOR CORPORATION and FAIRCHILD (TAIWAN) CORPORATION,<br><br>                Plaintiffs,<br><br>     v.<br><br>POWER INTEGRATIONS, INC.,<br><br>                Defendant. | C.A. No. 12-540-LPS<br><br>**Highly Confidential** |

**FAIRCHILD'S RESPONSE TO POWER INTEGRATIONS' MOTION *IN LIMINE* NO. 1
– PRIOR EXPERT TESTIMONY IS ADMISSIBLE AND NOT PREJUDICIAL**

Counsel for Plaintiffs


Blair M. Jacobs
Christina A. Ondrick
PAUL HASTINGS LLP
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com


Dated: April 15, 2015

Fairchild respectfully requests that Power Integrations' ("PI") Motion *in Limine* No. 1 be denied. There can be no question that Mr. Blauschild's prior testimony is relevant to Fairchild's non-infringement and willfulness positions. PI thus requests preclusion of fundamentally important testimony. In fact, the testimony PI seeks to preclude may be the most probative evidence supporting Fairchild's willfulness defense, as Mr. Blauschild's testimony provided the basis for Fairchild's design-around product implementation with regard to the '366 patent. Fairchild's design-around products now stand accused of infringing the '366 patent in this case. As such, Mr. Blauschild's prior testimony provides probative evidence directly relevant to Fairchild's objective and subjective beliefs.

Mr. Blauschild's former testimony is also relied upon by Fairchild's expert, Dr. Wei, to support his opinions regarding non-infringement. The motion should be denied because Dr. Wei's reliance on this testimony from the *Fairchild I* case is relevant both to impeach PI's expert and to support Dr. Wei's positions. As to the former, the revelation that Mr. Blauschild previously testified that certain aspects of Fairchild's design-around product would fall outside of the scope of the claims of the '366 patent may help the jury to assess the credibility of PI's current technical expert, Dr. Kelley, and to assess his opinions in this case. As to the latter, the fact that Dr. Wei relies on prior testimony of PI's own technical experts could bolster Dr. Wei's credibility and mitigate any argument by PI that his opinions are not credible.

Specifically, Dr. Wei rebuts infringement of the '366 patent, as shown in his expert report, by demonstrating that certain elements of the asserted claims are missing in Fairchild's products. Dr. Wei's opinions are buttressed by the prior testimony of Mr. Blauschild. PI argues that the inconsistencies between Dr. Kelley's current infringement analysis and the former testimony of Mr. Blauschild are not relevant. (Mot. at 2.) But PI has no legal authority to

1

support this bare attorney argument, and Mr. Blauschild's past concessions provide highly

probative impeachment evidence that the fact-finder will consider in assessing the weight to give

the experts in this case.

Mr. Blauschild's prior testimony is central to a critical issue in this case.  In explaining

why the '366 patent was not invalid in view of prior art, Mr. Blauschild testified in *Fairchild I*

that a "***fundamental difference***" exists between the patented soft start circuit and a circuit using

a one-time ramp signal for soft start.  Fairchild's products accused of infringement in this case

use circuitry implementing the one-time ramp signal for soft start.  (D.I. 194, Ex. N at 1054:19-

21.)  Mr. Blauschild further testified that the concept embodied by the '366 patented soft start

circuit *requires* a separate comparator, which one-time ramp circuits do not need, so that the two

circuits are "totally different things."  (*Id.* at 1056:9-16.)  Fairchild relied on this testimony in

creating a design-around product that employs a one-time ramp signal for soft start.  Now, PI

tries to argue that Fairchild's design-around products fall within the very same claim scope that

PI's expert previously disclaimed.

PI argues that Fairchild is playing "word games with the testimony by taking it out of the

context of the original prior art."  (Mot. at 2.)  PI, however, fails to explain exactly how plain

testimony from its expert on the scope of asserted patent claims is being used out of context.

Claim scope is claim scope, and the literal words of Mr. Blauschild's testimony confirm that he

has testified that a circuit implementing a one-time ramp signal falls outside of the scope of the

claims of the '366 patent.

PI cites to no authority supporting its position that Mr. Blauschild's testimony is

irrelevant or prejudicial.  Perhaps the lack of authority is because courts confronted with similar

motions have consistently held that testimony from prior cases is relevant and does not result in

undue prejudice.  In the *Apple II* case, for example, the court denied a patentee's motion seeking to prevent the accused infringer from offering expert testimony the patentee had used in prior litigations between the parties.  *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *11-13 (N.D. Cal. Feb. 25, 2014).  The court held that the past expert opinions were relevant for impeachment of the patentee's current expert testimony and *to support the accused infringer's expert testimony.  See id.*  The court rejected the patentee's challenge to the expert testimony under both FRE 403 and 703, calling the past opinions "highly probative impeachment evidence."  *Id.*  In another similar case, a court denied a patentee's motion *in limine* seeking to exclude expert affidavits submitted to the EPO, because the patentee, by submitting the expert's statements to the EPO, had made them adoptive admissions under FRE 801(d)(2)(B).  *See Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.*, Civ. A. No. 04-754, 2006 WL 3041102, at *5 (D.N.J. Oct. 26, 2006).

Here, Fairchild is not relying on just any former expert witness.  Because the prior expert was PI's expert, his testimony is especially crucial to reinforce Fairchild's good faith belief of non-infringement.  Moreover, Fairchild is not relying on the testimony as expert testimony in this case, but as factual impeachment evidence, so it need not have been disclosed under Rule 26.  And the evidence cannot prejudice PI; it is the testimony of its own expert in prior litigation involving the same patent.  But if PI's motion were granted, it would be able to attack Dr. Wei's technical analysis and the evidence on which he relies to support his opinions, while shielding from the jury the fact that it was PI's own prior expert who blessed Fairchild's design as a non-infringing alternative.  *That* would be prejudicial.

Because Dr. Blauschild's testimony is both highly probative and admissible, PI's motion to preclude Fairchild's experts from testifying about PI's prior expert opinions should be denied.

Dated: April 15, 2015                    ASHBY & GEDDES

                                         /s/ *John G. Day*
                                         John G. Day (#2403)
                                         Lauren E. Maguire (#4261)
                                         Andrew C. Mayo (#5207)
                                         500 Delaware Avenue, 8th Floor
                                         P.O. Box 1150
                                         Wilmington, DE  19899
                                         (302) 654-1888
                                         jday@ashby-geddes.com
                                         lmaguire@ashby-geddes.com
                                         amayo@ashby-geddes.com

                                         PAUL HASTINGS LLP
                                         Blair M. Jacobs
                                         Christina A. Ondrick
                                         875 15th Street, Northwest
                                         Washington, DC  20005
                                         (202) 551-1700
                                         blairjacobs@paulhastings.com
                                         christinaondrick@paulhastings.com

                                         *Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

        Plaintiffs,

        v.

POWER INTEGRATIONS, INC.,

        Defendant.

C.A. No. 12-540 LPS

**HIGHLY CONFIDENTIAL**

**POWER INTEGRATIONS' REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys**
**POWER INTEGRATIONS, INC.**

Dated:  April 17, 2015

Fairchild's opposition confirms that it intends to present the prior trial testimony of

Power Integrations' prior expert in a prior case completely out of context, in an attempt turn it

into a "blessing" by "PI's own expert" of "Fairchild's design as a non-infringing alternative."

[FCS Opp'n at 3.]  Mr. Blauschild did no such thing.  The alleged "design around" was *not* at

issue in the *Fairchild I* trial, and it was *not* in front of Mr. Blauschild when he testified.  Indeed,

Mr. Blauschild's testimony related to prior art circuits *not* at issue in this case.[1]  The lack of

relevance of Mr. Blauschild's testimony is amply demonstrated by the facts that Fairchild does

not dispute in its opposition.  Fairchild does not dispute that (a) the alleged "design around"

*predated* Mr. Blauschild's testimony; (b) Mr. Blauschild's testimony was in the context of prior

art not asserted here; and (c) neither Fairchild nor Dr. Wei is contending that Fairchild's accused

products incorporate the prior art circuitry Mr. Blauschild was addressing.  Thus, Fairchild's

products in this case cannot possibly be the result of any "design around" based on Mr.

Blauschild's testimony.  As such, Mr. Blauschild's prior trial testimony has no probative value.[2]

Fairchild's attempt to confuse the Jury with irrelevant prior testimony taken out of context will

no doubt prejudice PI and must be rejected.

---

[1]  Fairchild's suggestion that there is "inconsistency" between Dr. Kelley's opinions in this case and Mr. Blauschild's testimony in the prior case is unfounded.  Dr. Kelley is not even addressing the same issues Mr. Blauschild was, and vice versa, so there is nothing "inconsistent" at all.

[2]  The cases Fairchild relies on are inapposite.  The portion of the *Pfizer* opinion Fairchild cites concerned a hearsay objection (which is not an objection PI raised with respect to Mr. Blauschild's prior testimony), not a relevance objection.  *See Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.*, Civ. A. No. 04-754, 2006 WL 3041102, at *5 (D.N.J. Oct. 26, 2006).  The court specifically stated that it did "not have sufficient information to make an informed decision as to the relevance of any of the documents."  *Id.* at 2.  In *Apple*, the court found Apple's damages' expert's opinions in a prior case relevant because the approach he used in the prior case was allegedly "inconsistent" with the approach he took in the present case.  *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *11-13 (N.D. Cal. Feb. 25, 2014).  Here, not only was the prior testimony from a different PI expert, there is no inconsistency between Dr. Kelley's opinions and Mr. Blauschild's prior testimony.

Dated:  April 17, 2015          FISH & RICHARDSON P.C.


By: _____


FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for**
**POWER INTEGRATIONS, INC.**

2

EXHIBIT 7B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

        Plaintiffs,

        v.

POWER INTEGRATIONS, INC.,

        Defendant.

C.A. No. 12-540 LPS

**HIGHLY CONFIDENTIAL**

**POWER INTEGRATIONS' MOTION *IN LIMINE* NO. 2**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for
POWER INTEGRATIONS, INC.**

Dated:  April 10, 2015

I.    **FAIRCHILD SHOULD BE PRECLUDED FROM USING FOR ANY PURPOSE
      IN THIS CASE PRIOR ART OR EXPERT OPINIONS ALREADY EXCLUDED
      OR STRICKEN BY THE COURT**

This motion seeks to preclude Fairchild from violating the spirit of this Court's Orders

striking as untimely material in Fairchild's supplemental contentions and expert reports.

Fairchild has continued to try to rely on this material despite its failure to provide adequate

disclosure during fact discovery.  The Court already twice struck Fairchild's experts' opinions

that were founded on Fairchild's untimely contentions, and in doing so the Court precluded

Fairchild from using new and untimely opinions and prior art references.  (D.I. 162; D.I. 183.)

Each time, however, Fairchild sought to avoid the Court's Order, continued to offer the stricken

opinions and to rely on the excluded materials in its experts' "revised" reports – forcing PI to re-

litigate the merits the motions to strike again and again.  Even after the Special Master

implemented the Court's Order and confirmed that the belated opinions and materials were

indeed stricken (D.I. 269; D.I. 270), Fairchild served partially-redacted versions of its revised

expert reports that continued to violate both the letter and the spirit of the Court's and the Special

Master's rulings.  Although Fairchild recently served yet another version of its experts' reports,

Fairchild has made clear that it intends to challenge the prior rulings and will continue to try and

sidestep the Court's clear and unambiguous Orders based on the same arguments already

rejected repeatedly by the Court—that Fairchild's experts' belated opinions are somehow

"consistent" with its timely disclosed contentions.  They are not, and Fairchild should be

prohibited from any further attempts at circumventing the Court's Orders.

The parties' prior briefing on the merits of PI's motions to strike is extensive, and the

Court is already all too familiar with this dispute.  (*See* D.I. 150; D.I. 153; D.I. 157; D.I. 158;

D.I. 168; D.I. 169; D.I. 173; D.I. 174.)  Briefly, on September 29, 2014, PI brought its initial

motion to strike Fairchild's untimely infringement and invalidity contentions served after the

close of fact discovery, along with additional new contentions in Fairchild's opening expert reports. (D.I. 150.)   After reviewing the parties' submissions and hearing argument on the issues, on October 22, 2014, the Court granted PI's motion. (D.I. 162.) The Court found that PI "would be prejudiced by allowing Fairchild to proceed on its untimely contentions, which would likely lead to loss of the current trial date and the necessity for additional expensive discovery, and could potentially require additional claim construction proceedings." (*Id.*)

Rather than complying with the Court's Order, however, Fairchild served "revised" expert reports that contained the same opinions (often verbatim) stricken by the Court, prompting PI's motion to enforce the Court's prior Order. (D.I. 168.) On January 13, 2015, the Court again struck Fairchild's untimely materials, noting that "this issue was already decided when the Court evaluated the parties' dispute over Fairchild's contentions." (D.I. 183.) The Court also noted that although Fairchild had "fair warning" the Court "would adopt whichever side's position was the more reasonable as a whole," Fairchild continued to argue that "nothing be stricken." (*Id.*) The Court very clearly rejected Fairchild's arguments, noting that "Fairchild's interpretation of the Court's prior order is unconvincing, for reasons including that the analysis of the *Pennypack* factors contained in the prior order plainly contemplated that the untimely contentions were no longer to be asserted in this proceeding **in any form**." (*Id*. (emphasis added).) The Court then directed the parties to submit a proposed form of order implementing the Court's rulings "with the level of detail provided in PI's previously-proposed form of order." (*Id.*) Fairchild objected to PI's proposed order so, on January 31, 2015, the Court appointed Special Master Terrell to resolve the dispute over the form of order to implement the January 13, 2015 Order (D.I. 205).

Additional briefing and argument ensued – with Fairchild arguing to the Special Master that material should not be stricken because it was allegedly "consistent" with the timely served

2

contentions.  After reviewing the parties' submissions and the record, the Special Master issued

Orders Nos. 4 and 5 (D.I. 269; D.I. 270), confirming the Court's prior rulings striking Fairchild's

untimely material and in particular identifying each and every paragraph to be stricken in the

relevant reports.  (D.I. 269 at 10-11.)  The Special Master directed Fairchild to provide redacted

versions of its "revised" expert reports in accordance with its order.  (D.I. 270 at 2-3.)

Disregarding the clear directive of these orders, and without leave, Fairchild served selectively-

redacted versions of its reports that still included many references to its untimely contentions and

a wide range of material in paragraphs the Special Master expressly found, after a full review of

the record, "are also stricken."  (D.I. 270 at 2.)

When PI objected again, Fairchild changed course and served another set of redacted

reports.  At the same time, however, Fairchild made clear that it intends to try to find ways to

circumvent the Court's Orders and in fact rely on the untimely contentions and materials at trial.

For example, Fairchild has listed the excluded prior art on its trial exhibit list (PX-0083, PX-

0811, PX-0814, PX-0818, PX-2098).  PI therefore seeks an Order precluding Fairchild from

using the excluded prior art (specifically, U.S. Patent Nos. 4,638,417; 4,806,842; 5,523,665;

7,719,860; U.S. Pub. 2002/0075085; and the Maxim 1630-1635 Datasheet) – or the stricken

opinions – at trial in any manner, including in attorney argument, on rebuttal through Fairchild's

own witnesses, or on cross-examination or "impeachment" of any PI witness who does not

himself address the stricken material during direct examination and thereby open the door.  In

view of the Court's prior orders and the recognition that the proper result was to exclude the

stricken material, Power Integrations can conceive of no justification for allowing Fairchild to

back door into the trial the very same untimely material and opinions the Court already

determined would be unfair to allow Fairchild to assert "in this proceeding in any form."

Dated:  April 10, 2015        FISH & RICHARDSON P.C.

By: _____

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for Plaintiff
POWER INTEGRATIONS, INC.**

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

                Plaintiffs,

     v.

POWER INTEGRATIONS, INC.,

                Defendant.

C.A. No. 12-540-LPS

**Highly Confidential**

## FAIRCHILD'S RESPONSE TO POWER INTEGRATIONS' MOTION *IN LIMINE* NO. 2 – THE STRIKING OF EXPERT REPORTS DOES NOT FORECLOSE THE USE OF PROPER TESTIMONY AND EXHIBITS

Counsel for Plaintiffs


Blair M. Jacobs
Christina A. Ondrick
PAUL HASTINGS LLP
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com


Dated: April 15, 2015

Power Integrations' ("PI") Motion *in Limine* No. 2 should be denied for several reasons. First, the motion is premature; it relies on the Special Master's orders before they are final, as Fairchild has timely filed objections to these rulings.  Even if the Special Master's rulings stand, the striking of expert opinions does not extend to prohibit otherwise proper use of testimony and exhibits.  PI's motion simply seeks to broadly expand the scope of the Special Master's ruling to exclude wholly proper, independently admissible, evidence at trial.

PI's motion is not ripe because it relies on the Special Master's orders at a time when objections to those orders remain pending before this Court.  (D.I. 286; D.I. 287.)  PI's motion is devoted to rehashing the details of the dispute before the Special Master, (Mot. 1-3), and as a result it is plainly evident that the fundamental premise of the motion hinges on the as-yet undecided outcome of that dispute, which makes the timing of the motion improper.  In addition, the motion is simply an attempt to generate an unnecessary dispute while this issue is pending before the Court, and where the details of that dispute have no relevance to whether Fairchild may present *fact witness* testimony and *appropriate rebuttal expert testimony*, even if that evidence was cited in a struck paragraph.

Even if the Special Master's orders stand and portions of Fairchild's expert reports are struck, this motion should not be granted.  The striking of portions of expert reports would have no bearing here on the presentation of otherwise proper testimony and evidence from any witness on similar subject matter.  For example, PI's motion would seek to exclude Fairchild from eliciting *factual* testimony from PI's witnesses on the operation of the accused products, where those witnesses already gave testimony on this topic as Fed. R. Civ. P. 30(b)(6) designees at deposition.  There is no legal basis for this position, as it is nonsensical.

The operation of the accused products is, of course, a key issue in this patent case and

Fairchild has the right to call a PI witness who has *already given* factual testimony as a Rule 30(b)(6) witness for PI on the accused products and on corresponding schematics.  PI cites no legal authority that would preclude this testimony, as there is none.  Fairchild has every right to elicit factual testimony on the operation of the accused products and other factual issues in this case.  Whether Fairchild's experts cited this testimony in a struck paragraph has no bearing on its admissibility at trial from a PI Rule 30(b)(6) witness.  In addition, PI's motion would prohibit cross-examination and impeachment questions on the operation of the accused products in this regard, even though impeachment and cross-examination are afforded a broad scope to allow the witness's knowledge to be fully tested.  Here, preventing a PI witness from being cross-examined or impeached with evidence regarding important aspects of those products would be profoundly unjust.  The fact that PI Rule 30(b)(6) witnesses have already testified on these matters points out the illogic of PI's position.

Moreover, PI's motion is an attempt to improperly expand the reach of the Special Master's order into contexts that this Court did not ask the Special Master to determine.  PI's motion would extend the scope of the Special Master's ruling to *any testimony by any witness* on similar subject matter, even though the Special Master's ruling pertained only to certain expert testimony.  This is wrong.  Striking paragraphs in an expert report does not affect other proper use of exhibits referenced in these paragraphs or testimony cited in these paragraphs.  Instead, it affects only whether the expert can introduce these exhibits or testimony.  PI's attempt to preclude Fairchild's use of other foundational witnesses for this evidence is wholly impermissible and is clearly a case of a bridge too far.

Finally, PI fails to show any unfair prejudice whatsoever from Fairchild's use of this testimony and exhibits.  First, this testimony is all relevant to the case and much of it is from PI's

own Rule 30(b)(6) witnesses.  Second, all of this testimony was elicited in depositions in this case.  PI cannot claim prejudice from its use in trial, as it was properly provided in fact discovery. PI can suffer no prejudice if Fairchild simply takes testimony from PI's own witnesses about the operation of its products or about PI's documents.  Similarly, the testimony of Fairchild's witnesses on this topic cannot unfairly prejudice PI.  Additionally, PI is seeking to exclude evidence of personal knowledge or subjective belief of fact witnesses in this case.  Such testimony is clearly admissible.

Because PI's motion is simply an attempt to create another dispute regarding an issue already pending before this Court in the form of objections and which does not need to be briefed yet again, it is premature.  Moreover, even if portions of Fairchild's expert reports are struck, PI has no support for the proposition that Fairchild cannot present testimony consistent with Fairchild's timely contentions, or about the operation of PI's accused products.  The motion *in limine* should be denied.

Dated: April 15, 2015

ASHBY & GEDDES

/s/ *John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

PAUL HASTINGS LLP
Blair M. Jacobs
Christina A. Ondrick
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

        Plaintiffs,

        v.

POWER INTEGRATIONS, INC.,

        Defendant.

C.A. No. 12-540 LPS

**HIGHLY CONFIDENTIAL**

**POWER INTEGRATIONS' REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 2**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for
POWER INTEGRATIONS, INC.**

Dated:  April 17, 2015

All PI seeks through this motion *in limine* is an Order precluding Fairchild from trying to circumvent this Court's previous Orders.  The fact that this is even controversial—and that it is necessary for PI to bring this motion—is a testament to Fairchild's pattern of ignoring the Court's clear Orders and re-litigating, over and over, what the Court has already decided.[1]

PI's motion is not premature.  Fairchild acts as if the Special Master's orders are the only orders addressing Fairchild's untimely contentions.  They are not.  As PI stated in its motion: "The Court already twice struck Fairchild's experts' opinions that were founded on Fairchild's untimely contentions, and in doing so the Court precluded Fairchild from using the untimely opinions and prior art references.  (D.I. 162; D.I. 183.)"  (PI MIL-2 at 1.)  Fairchild was precluded from using the contentions "in any form."  (D.I. 183.)  Indeed, it is Fairchild's repeated violations of the Court's prior Orders that forced PI to bring this motion.

Nor is PI seeking to broaden the Court's preclusion Orders.  It is disingenuous for Fairchild to suggest at length that PI somehow seeks to exclude PI fact witnesses' testimony about the operation of PI's accused products.  PI does not.  Fairchild is free to cross-examine PI's fact witnesses (and PI's expert witness) within the scope of direct, including with the witnesses' prior testimony about the operation of the accused products.  What Fairchild cannot do is to elicit testimony from fact witnesses[2] (or from Dr. Kelley) in an attempt to back door infringement or validity contentions – whether made by Fairchild's expert, fact witnesses, or just argued by its counsel – that Fairchild is prohibited from making pursuant to the Court's orders.

---

[1]  For example, in its opposition to PI's Motion *in Limine* No. 3, Fairchild continues to argue that its "contentions of infringement of the '972 patent in this case have, from the filing of the Complaint forward, included doctrine of equivalents allegations"—even though the Court has repeatedly found otherwise.  (*See* FCS Opp'n to PI MIL-3 at 3; D.I. 162; D.I. 183.)

[2]  Fairchild certainly cannot elicit testimony from its own fact witnesses about PI's accused products – particularly if such testimony is just used to make, in some other form, the same infringement contentions that Fairchild's expert is precluded from offering.

Dated:  April 17, 2015          FISH & RICHARDSON P.C.


By: _____

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for**
**POWER INTEGRATIONS, INC.**

EXHIBIT 7C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

        Plaintiffs,

        v.

POWER INTEGRATIONS, INC.,

        Defendant.

C.A. No. 12-540 LPS

**HIGHLY CONFIDENTIAL**

**POWER INTEGRATIONS' MOTION *IN LIMINE* NO. 3**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for
POWER INTEGRATIONS, INC.**

Dated:  April 10, 2015

I.      **FAIRCHILD SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR ARGUMENT REGARDING THE PRIOR FINDING OF DIRECT INFRINGEMENT OF THE '972 PATENT BY POWER INTEGRATIONS**

In all of the parties' litigation over the years, the only affirmative claim that Fairchild has prevailed upon was a single, narrow finding of infringement: Power Integrations was found to infringe the '972 patent under the Doctrine of Equivalents (not literal infringement), and only directly based on sales of its own complete demonstration power supplies – the chips by themselves cannot infringe, and the jury rejected Fairchild's inducement claim.  (*Fairchild II* D.I. 577 at 10-11.)  The Court should not allow Fairchild to introduce evidence or argument regarding the narrow prior finding of direct infringement from the *Fairchild II* case, as it is not relevant to any issue before the Jury in <u>this</u> case, and any possible marginal relevance is substantially outweighed by the risk of unfair prejudice, confusion, and the potential for misleading the jury.  Exclusion is warranted under FRE 402 and/or 403.

Four days after the verdict in the *Fairchild II* case, Fairchild filed this suit to bring a new inducement claim against PI.  (D.I. 1 at 5-6.)  The present claim is based on PI's alleged inducement of direct infringement in the U.S. by third-party customers occurring ***after*** the verdict in *Fairchild II*.  (*Id.*)  Yet, Fairchild now seeks to rely on the prior finding of direct infringement, despite the fact that the prior finding was about: (1) different power supplies (PI's power supplies versus its customers'), (2) different claim scope, (3) a different legal theory, and (4) a different time period.  As such, the narrow prior finding of infringement has no bearing on the limited issue of inducement in this case (the only claim Fairchild pleaded with respect to the '972), or any other issue before the Jury.

***Different power supplies and different timeframe***.  The asserted claims of the '972 patent are not directed to chips by themselves; as the Court may recall, the claims are directed to power converters (claims 6, 7) and a method for regulating power in power converters (claims

18, 19), all of which require the use of specific power supply topologies with a transformer.  It is undisputed that PI's chips alone cannot infringe.  While the prior verdict of direct infringement was against Power Integrations' own demonstration power supplies (*Fairchild II* D.I. 577 at 10), Fairchild's claim in this case is based solely on inducement related to third party power supplies allegedly using LinkSwitch-II chips.  Fairchild's claim in this case is also directed solely to third party power supplies for which Power Integrations allegedly induced infringement beginning <u>after</u> the prior verdict.  Power Integrations disputes Fairchild's claims in this case.

*Different claim scope*.  Although the same claims of the '972 patent are asserted in this case, the scope of the claims has changed since the verdict in *Fairchild II* as a result of Fairchild's contentions and disclaimers in both the current litigation and the '972 reexamination. First, Fairchild's disclaimer during the '972 reexamination led the Court to modify its prior construction of the "second feedback signal" limitation found in all asserted claims.  In doing so, the Court found this limitation excludes the use of a current limit comparator in the associated current control loop.  (D.I. 87 at 5-6.)  Next, the claim construction disputes led to the Court identifying a new issue of material fact not previously litigated related to the sampling limitation in all the asserted claims.  (*Id.* at 7.)  These new issues raise previously-unaddressed defenses, rendering the prior verdict of direct infringement inapplicable.

*Different legal theory*.  Fairchild was unable to establish literal infringement in the prior case.  (*Fairchild II* D.I. 577 at 10-11.)  In this case, Fairchild's only timely contention relates to literal infringement; Fairchild's belated efforts to add a claim under the doctrine of equivalents were twice rejected by the Court.  (D.I. 162, 183.)  Because a prior verdict under the doctrine of equivalents against different power supplies does not tend to show that the claims are <u>literally</u> met by the new, third party power supplies at issue in this case, it is therefore irrelevant.

Even if the prior verdict had any marginal relevance, it should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]"  FRE 403.  Because the prior verdict of direct infringement was based on different power supplies, different claim scope, and a different legal theory, it would only confuse and mislead the Jury if it were introduced in this case.  The prior verdict would suggest the Jury can decide this case on an improper basis, and the Jury would likely feel compelled to assign weight to the prior finding where none is warranted.  The danger of unfair prejudice is especially acute—it would tar Power Integrations in the Jury's eyes as a violator of intellectual property, even though the Jury in the prior case expressly found no literal infringement and no inducement.  *See Ingratta v. Easley*, No. 12–cv–11104, 2014 WL 5605071, at \*3 (E.D. Mich. Nov. 4, 2014) (granting motion to exclude the verdict form and judgment in a different case); *Brennan v. Paul Revere Life Ins. Co.*, Case No. 00-C-0725, 2002 WL 1284385, at \*4 (N.D. Ill. June 10, 2002) (granting motion to exclude verdicts and court decisions from other cases because the probative value is "slight" and the "marginal probative value is far outweighed by the unfair prejudice that would result to the defendants from the bare admission of the results of other lawsuits, or the extraordinary confusion of the issues and waste of time that would result if the particulars of those cases had to be aired before the jury").

Power Integrations has conferred on this matter with Fairchild; Fairchild maintains that it should be permitted to introduce evidence or argument regarding the prior finding of direct infringement.  Power Integrations therefore seeks an order, under FRE 402 and 403, preventing Fairchild from offering evidence, or raising in any manner, the prior finding of direct infringement of the '972 patent, including but not limited to as "impeachment" evidence or on cross-examination.

Dated:  April 10, 2015                FISH & RICHARDSON P.C.


By: _____

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for Plaintiff**
**POWER INTEGRATIONS, INC.**

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

        Plaintiffs,

    v.

POWER INTEGRATIONS, INC.,

        Defendant.

C.A. No. 12-540-LPS

**Highly Confidential**

**FAIRCHILD'S RESPONSE TO POWER INTEGRATIONS' MOTION *IN LIMINE* NO. 3
– THE FINDING OF INFRINGEMENT OF THE '972 PATENT IS RELEVANT TO
FAIRCHILD'S INDUCED INFRINGEMENT AND WILLFULNESS CLAIMS**

Counsel for Plaintiffs


Blair M. Jacobs
Christina A. Ondrick
PAUL HASTINGS LLP
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com


Dated: April 15, 2015

Power Integrations' ("PI") Motion *in Limine* No. 3 should be denied. The finding of infringement of the '972 patent from *Fairchild II* is highly relevant to Fairchild's induced infringement allegations, not to mention Fairchild's willfulness allegations relating to the '972 patent. First, as discussed in a pending summary judgment motion, preclusion law bars PI from event challenging direct infringement because PI previously litigated and lost factual challenges on validity and infringement of the ***same*** claims of the ***same*** '972 patent and the ***same*** accused product in the *Fairchild II* case. So with infringement and invalidity already established, the only remaining issue for the jury regarding the '972 patent is whether PI actively induces customers to infringe and whether such infringement is willful.

The prior finding of infringement is highly relevant to both issues. "To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer ***knowingly*** induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (emphasis supplied). In *Global-Tech Appliances, Inc. v. SEB S.A.*, the Supreme Court held that liability under § 271(b) requires specific intent—*i.e.*, that the accused inducer have knowledge that the induced acts constitute direct infringement. Power Integrations' conduct *with respect to the jury's finding in Fairchild II* establishes that it had the knowledge and specific intent to encourage direct infringement by third parties. After the verdict, PI issued a press release informing customers and others that the verdict did not prevent customers from continuing to use the LinkSwitch-II in power supplies with transformers. (D.I. 233, Ex. A.) There were no geographical limitations on PI's encouragement of continued use of the infringing product. Thus, PI's conduct made the verdict in *Fairchild II* relevant here, and PI should not now be able to preclude Fairchild from providing this highly probative evidence to the jury.

1

The prior finding of infringement from *Fairchild II* is also directly relevant to Fairchild's willfulness allegations. The second prong of the *Seagate* test requires Fairchild to present evidence concerning PI's subjective intent and state of mind. *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Evidence concerning the prior finding of direct infringement goes directly to PI's state of mind, as it shows that PI knew that it infringed and made no changes to the infringing products, thus demonstrating subjectively willful conduct. The prior finding confirms that PI's LinkSwitch-II product, when put into a power supply with a transformer, infringes the claims of the '972 patent, and that PI knows of this infringement. There is no dispute that PI has chosen not to alter the design of its infringing LinkSwitch-II product subsequent to the jury's finding of infringement. There is also no evidence that PI has instructed foreign customers to cease importation of the infringing product. It is further undisputed that the LinkSwitch-II product is almost always used in power supplies with a transformer. So, in the end analysis, this case is practically identical to *Fairchild II* and the prior finding of direct infringement by a power supply with a transformer is highly relevant.

PI argues that the verdict is irrelevant because this is a different time with different power supplies. (Mot. at 1-2.) PI is wrong. Indeed, PI's argument should be disregarded because issue and claim preclusion apply here. The fact that the inducement allegations here include facts and events occurring after the *Fairchild II* jury verdict does not render that verdict irrelevant. Indeed, a finding of inducement requires pre-existing knowledge of infringement and specific intent, so facts and events occurring *after* the jury verdict are highly probative. Because the LinkSwitch-II infringing design has not changed and because the invention of the '972 patent relates to circuitry on the chip, it is apparent that PI's products are today being used in in the same manner that was previously found to directly infringe.

2

PI's argument that the claim scope in this case is different from the claim scope in *Fairchild II* fares no better.  First, PI concedes that the claims in this case are the same as the claims in *Fairchild II*.  Yet despite this concession, PI contends that an admittedly "minor" difference in claim construction, concerning the "second feedback signal," somehow makes the prior verdict irrelevant.  Not so.  In previously arguing that preclusion applied to the jury's finding of no literal infringement, PI **admitted** that the changes to the claim construction were inconsequential to the infringement analysis and urged that preclusion should not be affected. (D.I. 197 at 27-28.)  PI should be held to its prior admission.  PI also wrongly contends that "claim construction disputes" led this Court to identify new issues of fact raising "previously-unaddressed defenses" related to sampling.  (Mot. at 2.)  But contrary to PI's argument, the Court has not determined that the sampling phrase should be presented to the jury as a fact issue. Rather, the Court stated that PI improperly raised an infringement argument, not a claim construction issue, during the Markman process. (D.I. 87 at 7.)  And the construction of the sampling phrase is the same in both cases. (*Fairchild II* D.I. 51-2 at 2; D.I. 87 at 6-7.)

Finally, PI's argument that a different legal standard warrants exclusion is a red herring. Fairchild's contentions of infringement of the '972 patent in this case have, from the filing of the Complaint forward, included doctrine of equivalents allegations.  Given the highly probative nature of the prior finding to inducement, any slight prejudice to PI from its admission is easily outweighed here.  Indeed, PI has failed to present evidence of any *real* prejudice that would outweigh the clearly probative value of the verdict.

Because the jury's verdict in *Fairchild II* is directly relevant to Fairchild's induced infringement theory in this case, and because admission of the verdict will not unduly prejudice PI, this court should deny PI's third motion *in limine*.

Dated: April 15, 2015

ASHBY & GEDDES

/s/ *John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

PAUL HASTINGS LLP
Blair M. Jacobs
Christina A. Ondrick
875 15th Street, Northwest
Washington, DC  20005
(202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FAIRCHILD SEMICONDUCTOR
CORPORATION and FAIRCHILD
(TAIWAN) CORPORATION,

          Plaintiffs,

      v.

POWER INTEGRATIONS, INC.,

          Defendant.

C.A. No. 12-540 LPS

**HIGHLY CONFIDENTIAL**

**POWER INTEGRATIONS' REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 3**

FISH & RICHARDSON P.C.
William J. Marsden, Jr. (#2247)
Joseph B. Warden (#5401)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
Telephone: (302) 652-5070
Email: marsden@fr.com; warden@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Howard G. Pollack
Michael R. Headley
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070

**Attorneys for
POWER INTEGRATIONS, INC.**

Dated:  April 17, 2015

Fairchild does not deny that the prior Jury found **no** inducement, or that inducement is the only cause of action on the '972 patent in this case.  Nor does Fairchild deny that the prior Jury found **no** literal infringement of the '972.  Fairchild argues, however, that its "contentions of infringement of the '972 patent in this case have, from the filing of the Complaint forward, included doctrine of equivalents allegations."  [FCS Opp'n at 3.]  Not so.  Fairchild did not allege infringement under the doctrine of equivalents ("DOE") in its complaint [*see* D.I. 1], and while Fairchild specifically called out DOE for the '259, '123, and the since-dropped '461 patent in its amended complaint, Fairchild did not provide any such analysis for the '972.  [*Compare* D.I. 9, ¶¶ 17-18, 25, 35-36, 43, 53-54, 61 *with* ¶¶ 68-75.]  Nor did Fairchild's timely contentions evaluate DOE infringement—as the Court has twice recognized when striking Fairchild's untimely efforts to have its expert provide DOE analysis.  [D.I. 162, 183.]  Having never provided any timely DOE analysis in this case, and having previously failed to prove literal infringement, Fairchild should not be allowed to bootstrap an infringement claim at this stage.

Moreover, Fairchild's briefing repeatedly makes reference to PI's "infringing products," but there is no dispute that PI's chips by themselves cannot infringe the asserted claims of the '972.  PI's chips could only infringe the '972 when used in a power supply specifically configured with a transformer, which is not a required configuration.  The Jury in the prior case rejected the notion that any such infringement was shown with respect to third party power supplies.  Having rejected the notion of any infringement by others, there is too high a likelihood of prejudice in the introduction of *de minimis* infringement by PI with its own internal power supplies.  The limited prior finding of infringement should not be introduced at trial.[1]

---

[1]    The Court has requested further briefing on the pending preclusion motions, but if preclusion applies as broadly as Fairchild appears to suggest, then Fairchild's inducement claim should be precluded in its entirety as well, eliminating the '972 patent from this case altogether.

Dated:  April 17, 2015          FISH & RICHARDSON P.C.


                          By:  _____


                          FISH & RICHARDSON P.C.
                          William J. Marsden, Jr. (#2247)
                          Joseph B. Warden (#5401)
                          222 Delaware Avenue, 17th Floor
                          P.O. Box 1114
                          Wilmington, DE  19899-1114
                          Telephone: (302) 652-5070
                          Email: marsden@fr.com; warden@fr.com

                          Frank E. Scherkenbach
                          One Marina Park Drive
                          Boston, MA 02210
                          Telephone: (617) 542-5070

                          Howard G. Pollack
                          Michael R. Headley
                          500 Arguello Street, Suite 500
                          Redwood City, CA  94063
                          Telephone: (650) 839-5070

                          **Attorneys**
                          **POWER INTEGRATIONS, INC.**