IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-540-LPS |
| | ) | |
| FAIRCHILD SEMICONDUCTOR | ) | |
| CORPORATION and FAIRCHILD | ) | |
| (TAIWAN) CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS FAIRCHILD SEMICONDUCTOR
CORPORATION AND FAIRCHILD (TAIWAN) CORPORATION'S MOTION FOR
JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE A NEW TRIAL
<u>OR REMITTITUR</u>**

*Of Counsel:*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80212-5638
(303) 592-1500

Colette Reiner Mayer
Pieter S. de Ganon
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600

Dated: January 18, 2019

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants Fairchild
Semiconductor Corporation and Fairchild
(Taiwan) Corporation*

{01407881;v1 }

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................1

LEGAL STANDARDS...........................................................................................................2

ARGUMENT...........................................................................................................................3

I.      THE COURT SHOULD GRANT FAIRCHILD JMOL OR A NEW TRIAL ON INDUCEMENT OF INFRINGEMENT..........................................................................3

      A.      PI failed to present sufficient evidence from which a reasonable jury could find third-party direct infringement ...................................................................3

            1.      No proof of specific instances of direct infringement ............................3

            2.      No proof that Dell directly infringed.......................................................4

            3.      No specific proof that anyone else directly infringed .............................6

      B.      PI failed to present sufficient evidence from which a reasonable jury could conclude that Fairchild induced any third-party direct infringement ...................7

            1.      No proof of successful communication .....................................................7

             2.      No proof that Fairchild, rather than someone else, actually caused any third-party direct infringement ...........................................................8

            3.      PI's theory of induced infringement is contrary to law ...........................9

            4.      No proof of infringement "as a class" ....................................................10

II.     THE COURT SHOULD GRANT FAIRCHILD JMOL OR A NEW TRIAL ON DAMAGES .......................................................................................................................11

      A.      The award does not reflect evidence of actual infringement.............................11

      B.      PI did not present sufficient evidence from which a reasonable jury could conclude that a reasonable royalty rate was greater than Fairchild's profit attributable to the infringement .......................................................................13

III.    ERROR IN THE JURY INSTRUCTION JUSTIFIES A NEW TRIAL.........................15

CONCLUSION......................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015)...................................................................................11

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
  802 F. Supp. 2d 555 (D. Del. 2011) .............................................................................3

*Brown v. Duchesne*,
  60 U.S. 183 (1856) .......................................................................................................3

*Cortez v. Trans Union, LLC*,
  617 F.3d 688 (3d Cir. 2010) .........................................................................................3

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001)....................................................................................7

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006)..........................................................................5, 6, 7

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
  363 F.3d 1263 (Fed. Cir. 2004)..........................................................................3, 9, 10

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
  262 F. Supp. 3d 424 (E.D. Tex. 2017) .......................................................................12

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
  909 F.3d 398 (Fed. Cir. 2018)....................................................................................11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)..................................................................................13

*Evans v. Port Auth. of New York & New Jersey*,
  273 F.3d 346 (3d Cir. 2001) .........................................................................................3

*GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*,
  313 F. Supp. 3d 582 (D. Del. 2018) .............................................................................8

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  134 S. Ct. 2111 (2014) .................................................................................................5

*Lind v. Schenley Indus., Inc.*,
  278 F.2d 79 (3d Cir. 1960) ...........................................................................................3

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)............................................................................11, 12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)................................................................................12

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005)................................................................................10

*Microsoft Corp. v. DataTern, Inc.*,
   755 F.3d 899 (Fed. Cir. 2014)....................................................................................9

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998)..................................................................................2

*Perkin-Elmer Corp. v. Computervision Corp.*,
   732 F.2d 888 (Fed. Cir. 1984)....................................................................................2

*Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013)..............................................................................3, 12

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   843 F.3d 1315 (Fed. Cir. 2016)............................................................................*passim*

*Takeda Pharm. U.S.A., Inc. v. WestWard Pharm. Corp.*,
   785 F.3d 625 (Fed. Cir. 2015)....................................................................................9

*Takeda Pharm., U.S.A., Inc. v. WestWard Pharm. Corp.*,
   No. Civ. 14-1268-RGA-SRF, 2018 WL 6521922 (D. Del. Dec. 12, 2018)...........................8

*Williamson v. Consol. Rail Corp.*,
   926 F.2d 1344 (3d Cir. 1991)......................................................................................2

**Statutes**

35 U.S.C. § 271(b) .......................................................................................................7, 10

**Other Authorities**

Fed. R. Civ. P.
   50...................................................................................................................................1
   50(a)(1) ..........................................................................................................................2
   59...................................................................................................................................1

## INTRODUCTION

Fairchild renews its Rule 50 motion for judgment as a matter of law ("JMOL") on the two issues presented to the jury—induced infringement and damages.  Alternatively, Fairchild moves pursuant to Rule 59 for a new trial on induced infringement and damages, because the verdict was contrary to the clear weight of the evidence.

Power Integrations' ("PI") case relies on a chain of unsupported inferences:  that ODMs in Asia used the FAN6756 to manufacture power supplies for Dell; that Dell, a non-party to this action, purchased those power supplies and packaged them with Dell notebooks; that Dell sold notebooks packaged with those power supplies into the United States; that Fairchild not only communicated with, but actually caused the relevant Dell entity to sell Dell notebooks with power supplies containing the FAN6756 into the United States; that *all* Dell notebooks shipped to the United States were packaged with a power supply incorporating the FAN6756; that the unidentified "at least one third-party infringer" found by a prior jury was, in fact, the same Dell entity that Fairchild allegedly communicated with about the use of the FAN6756; that Fairchild's design win for a power supply for certain Dell notebooks took sales from PI even though the relevant PI chip is not, as PI admits, used for notebook power supplies; and that Fairchild, negotiating as a reasonable licensee, would agree to a royalty rate five times greater than what PI's expert identified as the portion of profit attributable to infringement.

In part because PI never even bothered to seek third-party discovery from the relevant ODMs or Dell, not one of these inferences is supported by sufficient evidence from which a reasonable jury could find for PI and award the damages PI sought.  Several are contrary to law.  The failure of any warrants JMOL in Fairchild's favor or, absent that, a new trial.

## BACKGROUND

Following an eight-day jury trial in 2015, in which each party asserted patents against the other, the jury returned a verdict.  (D.I. 402.)  Relevant here, the jury found that Fairchild had directly and indirectly infringed claims 29 and 31 of PI's U.S. Patent No. 7,995,359 (the "'359 patent").  (*Id.* at 2.)  On December 12, 2016, the Federal Circuit vacated the jury's verdict on

induced infringement in a related case, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc. et al.*, C.A. No. 08-309-LPS (D. Del.), because the Court's jury instructions on induced infringement misstated the law. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330 (Fed. Cir. 2016). The same jury instructions were used in this case. (D.I. 400.) As a result, this Court ordered a new jury trial on whether Fairchild induced infringement of the '359 patent. (D.I. 565, 566.)

A three-day trial commenced on November 13, 2018. At the close of evidence, Fairchild moved for JMOL and the Court reserved judgment. (Trial Transcript ("Tr.") 389:24-391:3, 550:1-9.) On November 15, 2018, Fairchild renewed its motion for JMOL. (Tr. 550:1-9; D.I. 634.) The jury subsequently returned a verdict of induced infringement and awarded PI $719,029.10 in damages. Fairchild submits this brief in support of its motions.

## LEGAL STANDARDS

JMOL is appropriate if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party on [the] issue." Fed. R. Civ. P. 50(a)(1). JMOL should be granted when "the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (formatting omitted). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

A new trial is proper even if substantial evidence supporting the verdict may bar judgment as a matter of law, where "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991). On a new trial motion, the Court need not presume that the verdict was correct; nor need it view the evidence in the light most favorable to the party in whose favor the verdict was rendered. *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 802 F. Supp. 2d 555, 562 (D. Del. 2011). Where the trial "deals with a subject matter not lying

within the ordinary knowledge of jurors a verdict should be scrutinized more closely by the trial judge than is necessary where the litigation deals with material which is familiar and simple." *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90–91 (3d Cir. 1960).  A new trial is warranted if there was, for example, an erroneous jury instruction.  *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 843 F.3d 1315, 1326 (Fed. Cir. 2016).

Remittitur is appropriate where "the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715 (3d Cir. 2010); *see also Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*, 711 F.3d 1348, 1356 (Fed. Cir. 2013) (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir. 1995).  "The use of remittitur clearly falls within the discretion of the trial judge." *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 354 (3d Cir. 2001) (citation omitted).  The remitted damages should be the maximum permissible in light of the evidence.  *Id.* at 354–55.

## ARGUMENT

### I.     THE COURT SHOULD GRANT FAIRCHILD JMOL OR A NEW TRIAL ON INDUCEMENT OF INFRINGEMENT

#### A.     PI failed to present sufficient evidence from which a reasonable jury could find third-party direct infringement.

PI's case concerns one chip model: Fairchild's FAN6756.  To succeed on its allegation of induced infringement, PI was required to demonstrate a predicate act of third-party direct infringement.  PI was required, in other words, to demonstrate that a specific third party imported or sold the FAN6756 into the United States.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004).  PI failed to do so.

##### 1.     No proof of specific instances of direct infringement.

There was no dispute that Fairchild manufactured the FAN6756 chips in Asia, and sold 99.9% of them outside the United States.  (Tr. 449:24-450:2.)  And there can be no dispute that those chips did not infringe at the time of manufacture or sale outside the United States.  *Brown*

*v. Duchesne*, 60 U.S. 183, 195–196 (1856).  While PI alleged that 30% of the 99.9% Fairchild sold overseas ultimately reached the United States, PI's expert on inducement, Dr. Arthur Kelley, admitted that had neither purchased nor seen a single third-party power supply incorporating the FAN6756 in the United States.  (Tr. 330:24-332:13, 333:4-8.)  More specifically, although Dr. Kelley repeatedly suggested that three ODMs manufactured more than 20 million power supplies containing the FAN6756, Dr. Kelley did not obtain or examine one.  (Tr. 330:24-332:9.)  Likewise, although Dr. Kelley repeatedly suggested that Dell sold more than 7 million notebooks into the United States that had power supplies incorporating the FAN6756, Dr. Kelley did not obtain or examine one.  (Tr. 332:10-333:8.)  PI presented no evidence that a reasonable jury could rely upon to find that any chip sold by Fairchild outside the United States ultimately resulted in an infringing act.

### 2.     No proof that Dell directly infringed.

PI's case focused on only one third-party direct infringer: Dell.  PI suggested throughout that Dell was the relevant third-party direct infringer—claiming that Fairchild sold the FAN6756 to ODMs in Asia who manufactured power supplies, and that Dell in turn purchased those power supplies from the ODMs, packaged them with Dell notebook computers, and sold the notebooks in the United States.  But PI failed to present any evidence that any specific Dell entity, or even Dell generally, actually purchased and used power supplies incorporating the FAN6756 for its notebooks, much less notebooks imported into or sold in the United States.

Despite having various third-party discovery tools at its disposal, PI never served Dell with a subpoena and never spoke to a Dell representative.  PI's inducement expert never bothered to do any research on Dell, analyze publicly available information about Dell's supply chain, or speak to anyone from Dell.  (Tr. 312:7-9, 313:13-24, 316:19-20, 320:12-14.)  The evidence, moreover, was undisputed that Dell has numerous entities, many overseas, and thus there was no support for PI's assumption that "Dell" could be treated as a single entity for purposes of either direct infringement or inducement—let alone that any "Dell" activity was

necessarily related to the United States.  (Tr. 465:11-466:1.)

In other words, PI failed to present any evidence—much less sufficient evidence—that Dell infringed by importing into or selling in the United States notebooks with power supplies incorporating the FAN6756.  This is fatal to its claim, because "the patentee always has the burden to show direct infringement for each instance of indirect infringement."  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2115 (2014) (holding that a defendant may not be liable for inducing infringement without proof of directly infringement).

Despite presenting evidence regarding specific Dell notebooks models that purportedly were packaged with specific power supplies including the FAN6756 (Tr. 297:24-298:4, 345:9-347:10; PD-415), PI offered no evidence that they were ever imported into or sold in the United States.  And because relevant power supplies had voltages compatible with use in China—230V—PI could not (and did not) claim that these adapters were necessarily (much less exclusively) intended for sale or use in the United States.  (Tr. 400:11-23, 410:16-411:7, 434:3-25, 461:10-16, 487:8-16; DX-131.1; PD-415.)

PI's evidence regarding Dell's purported direct infringement consisted entirely of a 2012 Fairchild "design win" for use of the FAN6756 in the power supplies for certain Dell notebook computers.  But a design win does not necessarily mean that Fairchild ultimately secured the business—much less that it ever made a single sale of the FAN6756 to ODMs in Asia for those purposes.  (Tr. 408:21-409:23.)  What a design win "means typically is that [Fairchild] ha[s] passed a certain threshold that they've qualified the board." (*Id.*)  PI agrees that a design win does not necessarily guarantee large volume sales, let alone exclusive sales.  (Tr. 192:20-22, 193:3-5.)

But even assuming the 2012 Dell design win resulted in sales, PI failed to demonstrate a nexus with any actual importation into or sale in the United States of the relevant Dell notebook models.  While Dr. Kelley testified that Fairchild's sales data shows that "the issue with UL was actually resolved so that [Fairchild] could sell [the FAN6756] in the U.S." (Tr. 298:5-21), the

data does not show any actual sales by Dell into the United States of notebook computers with power supplies incorporating the FAN6756. (Tr. 302:4-304:14; DX-374; PD-330.) Likewise, it does not show FAN6756 sales to Dell, nor is there anything in the data that would allow a reasonable juror to infer such sales. (Tr. 305:3-306:3, 325:24-326:1; DX-374; PD-330.)

All the data showed was that 90% of FAN6756 sales were to three ODMs in Asia—Lite-On, Acbel, and Chicony—which Fairchild identified as its "corporate customer[s]." (Tr. 301:16-19, 303:4-304:14.) PI presented no evidence showing how many power supplies incorporating the FAN6756, *if any*, these ODMs actually sold to Dell, much less to Dell for notebooks intended for sale into the United States.

Lacking evidence of direct infringement, PI's case depends on a chain of unsupported assumptions: that independent ODMs in Asia sold power supplies incorporating the FAN6756 to "Dell"; that "Dell" bundled these power supplies with its notebook computers in Asia; and that those particular notebook computers were ultimately imported into or sold into the United States by the same Dell entity with whom Fairchild communicated about the design win (rather than some other Dell entity, importer, distributor, or retailer).

Assumed direct infringement by Dell, however, is not enough. The "patentee always has the burden to *show* direct infringement for each instance of indirect infringement." *DSU*, 471 F.3d at 1303 (emphasis added). PI failed to present any evidence, much less substantial evidence, that a specific Dell entity directly infringed. And PI also did not make any attempt to show that any other third party directly infringed in connection with 99.9% of the FAN6756 chips sold overseas. With that, PI's inducement verdict must be set aside.

### 3. No specific proof that anyone else directly infringed.

The only evidence of a direct infringer that PI mustered was a finding from a prior jury trial, read into the record by the Court, that there was at least one instance of third-party direct infringement. (Tr. 155:15-17, 556:17-22.) PI was required, under the new jury instruction and the law, to link that finding to inducement. *See DSU*, 471 F.3d at 1303. But PI failed not only to

identify that third party, it also failed to present evidence of any specific act of direct

infringement attributable to that third party.  Having failed to identify this lone third party, PI

could not—as a matter of law and logic—have demonstrated that Fairchild induced it to do

anything, as required by the new jury instruction.  "Inducement only occurs if *the party being

induced* directly infringes the patent."  *Crystal Semiconductor Corp. v. TriTech Microelectronics

Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (emphasis added).  Absent an identifiable "party

being induced," PI could not have proven, and did not prove, inducement.

> **B.**      **PI failed to present sufficient evidence from which a reasonable jury could conclude that Fairchild induced any third-party direct infringement.**

In addition to proving the predicate third-party direct infringement, PI needed to prove

that Fairchild "actively induce[d]" the third-party direct infringement, 35 U.S.C. § 271(b),

intended to cause the direct infringement, and actually did cause the direct infringement.  *Power

Integrations,* 843 F.3d at 1331–32.  PI failed to present sufficient evidence on any of these

issues.

> **1.**      **No proof of successful communication.**

To meet its burden, PI needed to show that Fairchild "successfully communicated" with

the third-party direct infringer.  The Federal Circuit was unambiguously clear about this:

> This instruction left the jury with the incorrect understanding that a party may be liable for induced infringement even where it does not successfully communicate with and induce a third-party direct infringer.  The Supreme Court has explained [in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011)] that the term "induce" as it is used in § 271(b) "means '[t]o lean on; to influence; to prevail on; to move by persuasion.'"  <u>Each definition requires successful communication between the alleged inducer and the third-party direct infringer.</u>

*Power Integrations*, 843 F.3d at 1330–31 (emphasis added).  This requirement makes perfect

sense.  Absent physically compelling another to act, one party cannot induce another without

communicating.  One party cannot "prevail on" an independent third party to directly infringe

without communicating.  As this Court has said: "If the active step intended to induce

infringement is never communicated to the third-party direct infringer, then the active step has not caused infringement and inducement has not occurred." *Takeda Pharm., U.S.A., Inc. v. WestWard Pharm. Corp.*, No. Civ. 14-1268-RGA-SRF, 2018 WL 6521922, at *3 (D. Del. Dec. 12, 2018).

Yet PI failed to demonstrate communication by Fairchild—much less communication that persuaded—with any third-party direct infringer.  PI presented evidence that Fairchild communicated with a particular Dell entity with respect to a design win for the FAN6756, but not evidence that the same Dell entity actually infringed.  PI presented no evidence of communication with some other Dell entity, importer, distributor, or retailer that may have been a third-party direct infringer.  PI also relied on the finding from a related trial of one instance of third-party direct infringement, but failed to identify the infringer, much less offer any evidence of communication with this unidentified infringer.  JMOL is appropriate based solely on this failure to offer any evidence of "successful communication" with any third-party direct infringer.

### 2. No proof that Fairchild, rather than someone else, actually caused any third-party direct infringement.

Under the law, PI was obligated to demonstrate why Fairchild's actions, rather than something else, actually caused the alleged third-party direct infringement.  *See GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, 313 F. Supp. 3d 582, 596 (D. Del. 2018) (requiring proof that defendant's "actions, as opposed to the various other factors supported in the record," caused the direct infringement); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016) (quoting *Dynacore*, 363 F.3d at 1274) ("We have further held that '[t]o prevail under a theory of indirect infringement, [plaintiff] must first prove that the *defendants' actions* led to direct infringement.'" (emphasis added).).  PI failed to do so.  It failed to explain why, for instance, it was not independent decision-making by third parties about what to sell and where that caused any third-party direct infringement.

There was ample undisputed evidence that Fairchild does not control the ODMs to whom it sells the FAN6756, let alone the OEMs like Dell that might purchase power supplies from

ODMs that contain the FAN6756; and that these entities act for their own independent business reasons. (Tr. 431:11-432:5, 440:22-441:3, 450:25-451:9, 456:7-8, 457:9-12, 496:3-14.) PI's corporate representative, Mr. Mike Matthews, testified that ODMs—not Fairchild or PI or other chip manufacturers—play a central role in determining which power supply containing which chip an OEM will use as its power supply. (Tr. 190:1-191:17, 192:6-12.) PI's witnesses confirmed that OEMs have independent control over what they do with power supplies after purchasing them from ODMs. (Tr. 325:16-19, 431:11-432:5.) Accordingly, PI failed to present sufficient evidence that Fairchild's actions, rather than other factors, actually caused third-party direct infringement.

### 3.    PI's theory of induced infringement is contrary to law.

PI's theory in this case effectively boils down to the assumption that making a product suitable for use in the United States is sufficient to establish inducement. (Tr. 567:20-568:20.) Dr. Kelley, PI's inducement expert, testified as much: "[M]y inducement opinion," he stated, "is about Fairchild's activities making a product suitable for sale in the U.S." (Tr. 324:12-21, 330:5-14.) But contrary to Dr. Kelley's suggestion, the "sale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement." *Dynacore*, 363 F.3d at 1276 n. 6; *Takeda Pharm. U.S.A., Inc. v. WestWard Pharm. Corp.*, 785 F.3d 625, 630 (Fed. Cir. 2015) (citation omitted).

PI also suggested that because Fairchild sought to make as much money as possible, it "want[ed] [its] customers to import into the United States." (Tr. 567:1-12.) But "wanting" something is not the same as "causing" something. "Absent the knowledge and affirmative act of encouragement, no party could be charged with inducement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014). Regardless, PI's only support for this theory is Fairchild's indemnification of distributors (*id.*), but the law is clear an indemnity agreement or provision does not establish inducement where, as here, the evidence failed to show that the "primary purpose of the agreement was to induce," even though the provision or agreement

"may have facilitated the sale of the accused [product]." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378–79 (Fed. Cir. 2005).  Fairchild's contracts with its Asian distributors cannot satisfy PI's legal burden in any event, because PI did not present any evidence that those distributors were direct infringers, or that Fairchild's indemnification of its distributors somehow induced some other third-party direct infringer.

Finally, PI's suggestion that "by the time the chips leave the warehouse, Fairchild has already induced the infringement" (Tr. 568:11-20) misstates the law.  There can be no inducement without third-party direct infringement, *Power Integrations*, 843 F.3d at 1332; and there can be no third-party direct infringement while the FAN6756 chips sit in a warehouse in Hong Kong or are shipped to ODMs in Asia.  To find otherwise impermissibly applies United States patent law to purely foreign activity—selling a U.S.-patented product abroad.  Moreover, inducement requires that the defendant induce *direct* infringement, not indirect infringement. Insofar as PI's theory is that Fairchild induced ODMs, who in turn enabled OEMs or retailers to infringe—or induced OEMs like Dell, who in turn induced their distributors, importers, or retailers to infringe—that is not "induc[ing] infringement" but rather "inducing inducement," which is not what the statute prohibits.  *See* 35 U.S.C. § 271(b).

### 4.       No proof of infringement "as a class."

During closing, PI's counsel suggested that Fairchild induced a "class of Fairchild's customers, the ODMs, the OEMs." (Tr. 564:25-25:2.)  But PI presented *no* evidence that the ODMs in Asia—Acbel, Chicony, and Lite-On—to whom Fairchild sold the FAN6756 themselves directly infringed by selling power supplies incorporating the FAN6756 in the United States.  Likewise, PI presented no evidence of direct infringement by SPI, the only other OEM PI referenced in connection with Fairchild's sales of the FAN6756 in Asia.  (Tr. 300:4-25.)  Despite counsel's nod to "inducement as a class," PI's case focused entirely on Dell, rather than a class of "[Fairchild]'s customers" that all necessarily infringed.  *See Dynacore*, 363 F.3d at 1274–75 (recognizing option of proving induced infringement by proving all of its elements with respect

to an entire category of individuals who necessarily infringed).  Because PI did not identify a class of customers that all necessarily infringed, PI could not prove inducement as a class, and failed to present sufficient evidence on this issue to support the jury's verdict.

## II.     THE COURT SHOULD GRANT FAIRCHILD JMOL OR A NEW TRIAL ON DAMAGES

### A.     The award does not reflect evidence of actual infringement.

"The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284); *see also Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411–412 (Fed. Cir. 2018) (vacating damages award because royalty base included non-infringing activity).  But PI did not present sufficient evidence from which a reasonable jury could conclude that 30% of Fairchild's FAN6756 chips were ultimately imported into or sold in the United States by third parties, and thus directly infringed.  The Federal Circuit previously rejected (in another case) PI's calculation of a royalty base that did not actually measure the use of Fairchild's chips, but instead relied on generic importation rates of consumer electronics, because that would not reliably describe the rate at which the accused Fairchild chips actually entered the United States.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373–74 (Fed. Cir. 2013).  PI's damages theory in this case was likewise infirm.

At trial it was undisputed that there was no evidence to support a calculation of the portion of FAN6756 chips sold overseas that ultimately entered the United States.  (Tr. 330:15-19, 450:25-451:9.)  In fact, both of PI's experts made clear that they *did not even attempt* to estimate the actual number of Fairchild's FAN6756 chips that might ultimately reach the United States. (Tr. 328:3-6, 378:3-7.)  Lacking this evidence, PI's damages expert Mr. Robinson assumed that, during a hypothetical negotiation in 2011—*before infringement began*—PI and Fairchild would have agreed to use 30% as an importation rate.  (Tr. 375:5-25.)  But a hypothetical negotiation is not a license for speculation untethered to evidence of the parties'

conduct. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) (noting that expert improperly suggested to the jury that the parties to a hypothetical negotiation would have speculated about the future). Although there is room for limited uncertainty when an expert seeks to quantify *actual* infringement, experts may not substitute hypothesized numbers for valid estimates of how much infringement actually occurred. *See Eidos Display, LLC v. Chi Mei Innolux Corp.*, 262 F. Supp. 3d 424, 426–27 (E.D. Tex. 2017)[1]; *see also Lucent* 580 F.3d at 1334–35 (Fed. Cir. 2009) ("No evidence describes how many Microsoft Outlook users had ever performed the patented method or how many times. Lucent had the burden to prove that the extent to which the infringing method has been used supports the lump-sum damages award.").

PI also relied on testimony from one Fairchild employee, Guarang Shah, who opined on the possibility of a 20% to 30% importation rate for Fairchild products *generally*. However, Mr. Shah's testimony was not specific to the FAN6756, and was not based on evidence or data. Mr. Shah testified that although he did not "have a specific number" for importation of products containing Fairchild components, and lacked "any detailed data," he would give "a number between 20 to 30 [percent as] a fair estimate." (Tr. 208:16-209:17.)

PI also cited generic Dell importation rates that were not limited to Dell notebooks, let alone the relevant Dell notebook models or power supplies at issue here, but instead included Dell desktops which PI never even claimed included power supplies that incorporated the FAN6756. (Tr. 379:10-380:6.) As the Federal Circuit has held, generalized importation rates of products not at issue are legally insufficient evidence to support an importation rate for the purpose of inducement. *See Power Integrations*, 711 F.3d at 1373–74 (rejecting identical

---

[1] *Eidos* barred Eidos's expert from giving opinions that relied on industry-wide estimates not tied in any way to the accused products. It held that Eidos could not salvage the opinions "under the guise of a hypothetical negotiation." *Eidos*, 262 F. Supp. 3d at 426–27. The expert there, like Mr. Robinson, claimed the data did not "provide the level of precision the Court has required," but the court noted that the case had been pending for years and there had been plenty of opportunity for discovery. *Id.* at 427. This case is no different. There has been time and opportunity to generate a valid measure of direct infringement, if any. PI should not be permitted to benefit from its own failure to gather the necessary evidence to support its case.

approach used by PI's expert in a related case, because there was no basis to believe that company-wide US-revenue to worldwide-revenue ratios could reliably describe the rate at which power supplies containing accused Fairchild chips actually entered the United States). In contrast, importation rates identified by Gartner—which PI's damages expert admitted was a reputable, independent analyst, consistent with the testimony of Fairchild's damages expert— were 18% for notebooks (the type of Dell products at issue here) during the relevant period. (Tr. 378:15-17, 515:5-8.)[2]

Moreover, even assuming a 30% importation rate, PI did not present any evidence from which a reasonable jury could conclude what portion of any FAN6756 chips that ultimately reached the United States was the result of inducement by Fairchild, rather than other factors. (*See supra* pp. 7–11.) The various possible importation rates PI identified were for consumer electronics generally, not specific to the alleged inducement.

Accordingly, the only basis for an award on inducement is the prior finding of at least one instance of third-party direct infringement, and the minimal direct infringement by Fairchild, consisting of direct sales of 12,604 units to distributors in the United States. (Tr. 516:9-25.) Because the jury's verdict on these issues was also excessive and against the great weight of the evidence, the Court should grant Fairchild a new trial on these issues if the Court does not grant JMOL, or remittitur of the jury's damages award to the amount for direct infringement identified by Fairchild's damages expert.

> **B.     PI did not present sufficient evidence from which a reasonable jury could conclude that a reasonable royalty rate was greater than Fairchild's profit attributable to the infringement.**

A reasonable royalty for patent infringement is limited to the portion of the profit from the infringing product attributable to the infringement. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773

---

[2] PI also relied on fact witness testimony that roughly one-third of the world's electronics are consumed in the United States, but this estimate is not limited in any relevant way to power supplies, let alone to power supplies incorporating the FAN6756, and thus is insufficient to support an importation rate.

F.3d 1201, 1226 (Fed. Cir. 2014) ("[T]he ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."). Here, the jury verdict is inconsistent with the Court's instruction and relevant law.

There was no dispute that the FAN6756 had valuable features beyond the dormant mode technology of the '359 patent. (Tr. 370:5-7.) PI's corporate representative, Mr. Matthews, confirmed that PI's LinkZero had valuable features beyond the dormant mode technology of the '359 patent. (Tr. 197:14-22, 198:6-199:21, 200:12-15.) Mr. Matthews also confirmed that the '359 patent was built on top of, and merely improved on, the dormant mode technology covered by PI's '895 patent, which was not asserted in this case. (Tr. 204:2-11.) PI's damages expert identified the portion of the profit attributable to infringement of the '359 patent as $0.02 per FAN6756 chip. (Tr. 371:18-20, 373:14-21.) PI nonetheless sought and obtained a royalty rate of $0.10 per FAN6756 chip—five times the portion of the profit *its own expert* identified as attributable to the infringement. (Tr. 374:9-14.)

PI sought to justify this rate as a reflection of the profit on the entire FAN6756 chip upon its initial release. But there is no legal basis for such a royalty rate where it was undisputed that there were other features of the FAN6756 that drove demand. PI also sought to justify this rate based on the suggestion that PI lost sales from Fairchild's sales of the FAN6756. But the evidence was undisputed that the FAN6756 and PI's relevant product, the LinkZero-LP, were intended for different applications, and thus did not compete. (Tr. 187:22-188:4, 307:24-308:10; DX-508.)

Accordingly, the maximum royalty rate that the evidence could support was $0.02 per unit—20% of the 10 cent royalty PI sought and obtained. Because PI did not present sufficient evidence from which a reasonable jury could conclude that a reasonable royalty rate was $0.10 per unit, the Court should grant JMOL on that issue. Because the jury's royalty rate was also excessive and against the great weight of the evidence, the Court should grant Fairchild (1) a new trial on that issue if the Court does not grant JMOL, or (2) remittitur of the jury's damages award by 80% if the Court does not grant JMOL or a new trial.

## III.    ERROR IN THE JURY INSTRUCTION JUSTIFIES A NEW TRIAL

Induced infringement "requires successful communication between the alleged inducer and the third-party direct infringer." *Power Integrations*, 843 F.3d at 1331.  The Court should not have excluded the "successful communication" requirement from the jury instruction. Because the record lacks any evidence of successful communication with direct infringers, the prejudice to Fairchild was material, and in direct proportion to PI's reduced burden of proof. (*See supra* pp. 7–8.)  This omission justifies a new trial.

## CONCLUSION

For the foregoing reasons, this Court should grant Fairchild's motion for JMOL or, in the alternative, grant Fairchild a new trial or remittitur.

ASHBY & GEDDES

/s/ *John G. Day*

*Of Counsel:*

Scott F. Llewellyn
MORRISON & FOERSTER LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80212-5638
(303) 592-1500

Colette Reiner Mayer
Pieter S. de Ganon
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600

Dated: January 18, 2019

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants Fairchild Semiconductor Corporation and Fairchild (Taiwan) Corporation*